FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

2016 MAY 23  A 10: 04

CLERK US DISTRICT COURT
ALEXANDRIA VIRGINIA

ROSY GIRON DE REYES; JOSE
DAGOBERTO REYES; FELIX ALEXIS
BOLANOS; RUTH RIVAS; YOVANA
JALDIN SOLIS; ESTEBAN RUBEN MOYA
YRAPURA; ROSA ELENA AMAYA; and
HERBERT DAVID SARAVIA CRUZ,

Civil Action No. 1:16CV563

*Plaintiffs,*

vs.

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP; WAPLES PROJECT
LIMITED PARTNERSHIP; and A.J.
DWOSKIN & ASSOCIATES, INC.;

*Defendants.*

**PLAINTIFFS FELIX ALEXIS BOLANOS, ESTEBAN RUBEN MOYA YRAPURA, AND**
**HERBERT DAVID SARAVIA CRUZ'S MEMORANDUM IN SUPPORT OF MOTION**
**FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

    I.    This Lawsuit Brings Federal And State Law Claims Based On
        Defendants' Enforcement Of A Discriminatory Policy.............................2

    II.   This Motion Seeks Immediate Relief From An Imminent And
        Significantly Harmful Rent Increase ......................................................3

JURISDICTION ...................................................................................................................4

LEGAL STANDARD ...........................................................................................................5

ARGUMENT .........................................................................................................................6

    I.    The TRO Plaintiffs Likely Will Prevail On Their Claims For Breach Of
        Their Lease Agreements .........................................................................6

        A.    Breach Of Esteban Ruben Moya Yrapura's Lease Agreement ...................7

        B.    Breach Of Felix Alexis Bolanos's Lease Agreement .....................8

        C.    Breach Of Herbert David Saravia Cruz's Lease Agreement .........................8

    II.   The Impending Rent Increase Threatens Irreparable Harm In The Form Of
        Lost Housing, Lost Familial Time, Financial Anxiety, And Disruption Of
        Children's Education ...............................................................................9

    III.  The Balance Of The Equities Favors The TRO Plaintiffs Because, Absent
        An Injunction, They Face Greater Potential Harms Than Defendants ...................10

    IV.  An Injunction Preventing Defendants From Breaching The TRO
        Plaintiffs' Leases Serves The Public Interest...........................................11

    V.   The Court Should Set A Nominal Bond Amount ....................................11

CONCLUSION......................................................................................................................12

## INTRODUCTION

Plaintiffs Felix Alexis Bolanos, Esteban Ruben Moya Yrapura, and Herbert David Saravia Cruz (the "TRO Plaintiffs") are at risk of serious financial hardship from a rent increase Defendants cannot lawfully impose. The TRO Plaintiffs own manufactured homes and rent the lots their homes occupy from Defendants, the owners and managers of Waples Mobile Home Park (the "Park"). In early 2016, Defendants began unlawfully charging each of the TRO Plaintiffs so-called "month-to-month" rent premiums on top of the rates they already paid under their lease agreements. Beginning on June 1, 2016, the Park will nearly triple the TRO Plaintiffs' "month-to-month" premium to $300 above the rent rates set forth in their lease agreements. The TRO Plaintiffs require relief from Defendants' illegal demand.

Defendants' looming rent increase applies only to those residents, including the TRO Plaintiffs, who cannot meet the Defendants' unjustified and arbitrary demand for specific identification documents that prove either the residents' U.S. citizenship or legal status in the United States. Defendants have denied such residents the opportunity to renew existing one-year leases on the land underlying their homes. Defendants have, instead, shunted the TRO Plaintiffs and others into illegal "month-to-month" leases and are requiring the TRO Plaintiffs to pay additional fees, or "premiums." Through this brazen and unlawful conduct, Defendants have effectively turned discrimination into an engine of profit.

Under Virginia law, when a one-year lease of a manufactured home lot expires, and the lessor fails to properly terminate the tenancy, a new one-year lease containing the identical terms and conditions of the expired lease forms by operation of law. Accordingly, by demanding the payment of a month-to-month premium without following Virginia's procedures for changing lease terms, Defendants have breached the TRO Plaintiffs' year-long leases that already renewed by operation of

1

Virginia law.

The TRO Plaintiffs' plight is urgent. These individuals and their families cannot afford the nearly 45 percent overall rent increase threatened by Defendants. Absent immediate relief from this Court, the TRO Plaintiffs and their families face significant economic harm, including being forced from their homes and uprooted from their communities. Contrary to popular belief, manufactured homes are essentially immobile: they cannot simply be driven off of their lots at the Park, and instead must be moved using expensive hauling equipment, if their age and condition permits moving at all.

Even if the TRO Plaintiffs seek to avoid Defendants' illegal rent increases by selling their homes, they risk losing hard-earned home equity in rushed sales. Accordingly, for the reasons set forth below, this Court should grant a temporary restraining order and preliminary injunction to prevent the Defendants from enforcing against the TRO Plaintiffs "month-to-month" premiums in excess of the rents set forth in their most recent written lease agreements, including the planned $300 "month-to-month" premium announced at Waples Mobile Home Park on or around March 11, 2016.

## FACTUAL BACKGROUND

**I.    This Lawsuit Brings Federal And State Law Claims Based On Defendants' Enforcement Of A Discriminatory Policy**

Plaintiffs in this lawsuit are residents of the Park who challenge Defendants' enforcement of a discriminatory policy that impermissibly requires all mobile home occupants over the age of 18 to prove either their U.S. citizenship or legal status in the United States. As designed and carried out, Defendants' enforcement of this policy is disproportionately ousting Hispanic or Latino ("Latino")[2]

---

[2]    "'Hispanic or Latino' refers to a person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin regardless of race." Karen R. Humes, Nicholas A. Jones, and Roberto R. Ramirez, U.S. Census Bureau, C2010BR-02, *Overview of Race and Hispanic Origin: 2010* (March 2011), *available at* http://www.census.gov/prod/cen2010/briefs/c2010br-02.pdf (last accessed May 22, 2016).

families from their homes and denying them one of the only affordable housing options in Fairfax County, Virginia.

In carrying out their illegal and racially discriminatory policy, Defendants are violating federal and state law while, at the same time, breaching their obligations under lease agreements with Plaintiffs.    Defendants have wrongfully driven longtime tenants from their homes, notwithstanding the fact that none have posed any problems to their neighbors or the Park's management.  Defendants have also forced families who remain at the Park to pay an extraordinary surcharge on their monthly rent and have pursued or threatened imminently to pursue their eviction.

Defendants knew, or should have known, that enforcing this policy would likely result in the forced and disproportionate displacement of Latino families in violation of the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and the Virginia Fair Housing Law, Va. Code § 36-96 *et seq.*  And Defendants' actions did, in fact, disproportionately displace and punish Latino families.  Defendants have also directly and intentionally discriminated against non-U.S. citizens in violation of 42 U.S.C. § 1981.    While U.S. citizens need only present a Social Security card to meet the Policy's requirements, non-U.S. citizens must either obtain and present a Social Security card or compile an arbitrary set of documents to prove their legal status in the country.  In addition, Defendants have violated the Manufactured Home Lot Rental Act, Va. Code § 55-248.41 *et seq.*, and have breached their lease agreements with Plaintiffs and other residents of the Park.

## II.    This Motion Seeks Immediate Relief From An Imminent And Significantly Harmful Rent Increase

Each of the TRO Plaintiffs (1) signed lease agreements with Defendants for manufactured home lots at the Park; and (2) suffered and continues to suffer from Defendants' breaches of those agreements.  Defendants' breaches are causing immediate and significant harm.

For several years, the TRO Plaintiffs lived peacefully at the Park and renewed their annual

3

leases without any problems. That all changed when Defendants began refusing one-year lease renewals for the TRO Plaintiffs on the grounds that one of their family members had not provided a Social Security card.

In early 2016, Defendants began demanding from the TRO Plaintiffs "month-to-month" rent premiums that exceeded the rents established in the TRO Plaintiffs' lease agreements by more than $100. *Compare* Moya Lease, Exhibit A-1 (setting monthly rent at $745) *with* Letter from A.J. Dwoskin & Associates, Inc. to Esteban Moya (Jan. 18, 2016), Exhibit A-2 (demanding higher "month-to-month" rent of $870 beginning Feb. 1, 2016); *compare* Bolanos Lease, Exhibit B-1 (setting monthly rent at $745) *with* Letter from A.J. Dwoskin & Associates, Inc. to Felix Bolanos (March 2, 2016) (demanding higher "month-to-month" rent of $870 beginning April 1, 2016). Defendants did not, however, provide any of the TRO Plaintiffs with the 60-day written notice required by Virginia law before imposing these changes to the TRO Plaintiffs' lease arrangements. On March 11, 2016, each of the TRO Plaintiffs received a letter stating Defendants' plan to nearly triple the "month-to-month premium" to $300 starting June 1, 2016. *See* Premium Increase Letter (March 11, 2016), Exhibits A-3, B-3, and C-2.

On May 16-17, 2016, the TRO Plaintiffs, through counsel, provided Defendants with notice of the potential legal claims now embodied in the Complaint filed contemporaneously with this Motion. The letter requested a response from Defendants by May 20, 2016. The TRO Plaintiffs have received no response as of the date of this Motion.

## JURISDICTION

This Court has jurisdiction to enjoin Defendants' planned rent increases. The planned increases constitute breaches of Plaintiffs' lease agreements under Virginia law. Plaintiffs' breach of contract claims are properly before the Court pursuant to 28 U.S.C. § 1367(a), because the

transactions and occurrences giving rise to both the federal law claims and state law claims in this lawsuit share a common nucleus of operative facts. *See* Complaint ¶¶ 9-10.

This Court has authority to issue injunctions related to state law claims over which it has supplemental jurisdiction. *See, e.g., Microsoft Corp. v. John Does 1-8*, No. 1:14-cv-811, 2015 WL 4937441, at **1-2, 11-12 (E.D. Va. Aug. 17, 2015) (converting preliminary injunction into permanent injunction prohibiting defendants from, among other things, committing common law torts including unjust enrichment); *Axiom Resource Mgmt., Inc. v. Alfotech Solutions, LLC*, No. 10-cv-1011, 2011 WL 2559806, at **1-2 (E.D. Va. June 3, 2011) (converting temporary restraining order and preliminary injunction into a permanent injunction and sanctioning defendants for violations of same in a civil case involving breach of contract claims over which the court asserted supplemental jurisdiction); *Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*, No. 10-cv-1011, 2011 WL 2560096, at *8 (E.D. Va. June 3, 2011) (magistrate's report and recommendation noting exercise of supplemental jurisdiction).

## LEGAL STANDARD

"The standard for granting either a [temporary restraining order] or a preliminary injunction is the same." *United States ex rel. $12,642.00 U.S. Currency v. Virginia*, No. 2:03-cv-724, 2003 WL 23710710, at *1 (E.D. Va. Dec. 10, 2003). A court may grant either form of relief where a plaintiff demonstrates the following four factors: (1) a likelihood of success on the merits of its case; (2) a likelihood of suffering irreparable harm absent relief; (3) that "the balance of equities tips in [Plaintiffs'] favor"; and (4) that "an injunction would be in the public interest." *Bristol Univ. v. Accrediting Council for Indep. Colleges and Schools*, No. 1:16-cv-307, 2016 WL 1688760, at *5 (E.D. Va. April 25, 2016). Courts may use injunctive relief to "preserve the relative positions of the parties until a trial on the merits can be held." *See G.G. ex. rel. Grimm v. Gloucester Cnty. Sch. Bd.*,

___ F.3d ___, 2016 WL 1567467, at *9 (4th Cir. April 19, 2016) ("The purpose of a preliminary injunction is . . . to preserve the relative positions of the parties until a trial on the merits can be held.") (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

## ARGUMENT

### I.  The TRO Plaintiffs Likely Will Prevail On Their Claims For Breach Of Their Lease Agreements

Defendants' planned rent increases breach the TRO Plaintiffs' lease agreements. Each TRO Plaintiff signed a one-year lease agreement with Defendants.

The lease agreements incorporate by reference the Virginia Manufactured Home Lot Rental Act (the "MHLRA"), Va. Code § 55-248.41 *et. seq. See* Moya Lease, Exhibit A-1 at ¶ 16; Bolanos Lease, Exhibit B-1 at ¶ 16; Saravia Lease, Exhibit C-1 at ¶ 16.  The MHLRA sets procedures governing any changes mobile home park operators wish to make to their tenants' future leases.  In relevant part, Section 55-248.42:1(B) of the Virginia Code states:

> Upon the expiration of a rental agreement, such agreement shall be automatically renewed for a term of one year with the same terms unless the park operator provides written notice to the tenant of any change in the terms of the agreement at least sixty days prior to the termination date.

Va. Code § 55-248.42:1(B).

Thus, a park operator may not make *any* change to a tenant's lease terms without providing a written notice 60 days before the lease expires.  Absent such notice, an existing lease automatically renews by operation of the MHLRA "for a term of one year with the same terms." *Id.* Defendants have *not* provided a 60-day notice to any of the TRO Plaintiffs prior to their lease expiration dates, and yet have unilaterally declared that (1) the leases shall be on a month-to-month basis; and (2) the TRO Plaintiffs must pay a significant premium, or increased rent, because of Defendants' own arbitrary decision to convert the leases from annual to "month-to-month" tenancies.

Defendants have run roughshod over the MHLRA at the Park, and the TRO Plaintiffs have a

6

high likelihood of success on the merits of their resulting claims for breach of contract. Under the plain text of the MHLRA, each of the TRO Plaintiffs currently possesses a one-year lease automatically formed by operation of the statute when their previous leases expired without the required 60-day written notice of changes to their terms.[3]

### A.    Breach Of Esteban Ruben Moya Yrapura's Lease Agreement

Mr. Moya's previous year-long lease was scheduled to expire on January 31, 2016. *See* Moya Lease, Exhibit A-1. In order to change any terms of this lease, Defendants had to provide notice on or before December 2, 2015. *See* Va. Code § 55-248.42:1(B). They failed to do so.

Instead, Defendants waited until January 18, 2016 to inform Mr. Moya of their intention to both (1) raise his rent; and (2) require Mr. Moya to take up a month-to-month tenancy rather than offering a new year-long lease. *See* Letter from A.J. Dwoskin & Associates, Inc. to Esteban Moya (Jan. 18, 2016), Exhibit A-2.

As a result of Defendants' violation of the MHLRA notice provision, Virginia law provides that Mr. Moya's one-year lease automatically renewed for an additional year "with the same terms" as his previous lease—running from Febrauary 1, 2016 to January 31, 2017. And because Mr. Moya enjoys a year-long tenancy under the MHLRA, Defendants cannot lawfully impose the planned $300 "month-to-month premium" on Mr. Moya starting on June 1, 2016. *See* Rent Increase Letter, Exhibit A-3. To the contrary, Defendants owe Mr. Moya damages for overcharges on each monthly bill since February 2016.[4]

---

[3]    On April 8, 2016, the General District Court of Fairfax County ruled, consistent with this statutory interpretation, that a tenant's year-long lease automatically renewed for an additional year because the Park failed to provide the required 60-day notice. *Waples Mobile Home Park c/o A.J. Dwoskin & Associates, Inc. v. Renan Iporre, et al.*, No. GV15029451-00 (Fairfax Cnty. Gen. Dist. Ct. April 8, 2016) (eviction case filed by the Park against a current tenant) (currently on appeal to the Fairfax Circuit Court with argument set for July 20, 2016).

[4]    Under the one-year lease that expired on January 31, 2016, and the new lease that automatically

### B.   Breach Of Felix Alexis Bolanos's Lease Agreement

Mr. Bolanos's previous year-long lease was scheduled to expire on March 31, 2016.  *See* Bolanos Lease, Exhibit B-1.  In order to change any terms of this lease, Defendants had to provide notice on or before January 31, 2016.  *See* Va. Code § 55-248.42:1(B).  They failed to do so.

Instead, Defendants waited until March 2, 2016 to inform Mr. Bolanos of their intention to both (1) raise his rent; and (2) require Mr. Bolanos to take up a month-to-month tenancy rather than offering a new year-long lease.  *See* Letter from A.J. Dwoskin & Associates, Inc. to Felix Bolanos (March 2, 2016), Exhibit B-2.

As a result of Defendants' violation of the MHLRA notice provision, Virginia law provides that Mr. Bolanos's one-year lease automatically renewed for an additional year "with the same terms" as his previous lease—running from April 1, 2016 to March 31, 2017.  And because Mr. Bolanos enjoys a year-long tenancy under the MHLRA, Defendants cannot lawfully impose the planned $300 "month-to-month premium" on Mr. Bolanos starting on June 1, 2016.  *See* Rent Increase Letter, Exhibit B-3.  To the contrary, Defendants owe Mr. Bolanos damages for overcharges on each monthly bill since February 2016.[5]

### C.   Breach Of Herbert David Saravia Cruz's Lease Agreement

Mr. Saravia's previous year-long lease was scheduled to expire on January 31, 2016.  *See* Saravia Lease, Exhibit C-1.  In order to change any terms of this lease, Defendants had to provide

---

renewed until January 31, 2017 on "the same terms" pursuant to the MHLRA, Mr. Moya owes Defendants $720 per month for the lease of his manufactured home lot.  Defendants have therefore wrongfully charged him $870 per month since February 1, 2016.  Plaintiffs seek damages based on this illegal overcharge in their Complaint.

[5]   Under the one-year lease that expired on March 31, 2016, and the new lease that automatically renewed until March 31, 2017 on "the same terms" pursuant to the MHLRA, Mr. Bolanos owes Defendants $745 per month for the lease of his mobile home lot.  Defendants have therefore wrongfully charged him $870 per month since April 1, 2016.  Plaintiffs seek damages based on this illegal overcharge in their Complaint.

notice on or before December 2, 2015. *See* Va. Code § 55-248.42:1(B). They failed to do so.

Instead, Defendants waited until January 2016 to inform Mr. Saravia of their intention to both (1) raise his rent; and (2) require Mr. Saravia to take up a month-to-month tenancy rather than offering a new year-long lease. *See* Saravia Declaration ¶¶ 12-15.

As a result of Defendants' violation of the MHLRA notice provision, Virginia law provides that Mr. Saravia's one-year lease automatically renewed for an additional year "with the same terms" as his previous lease—running from February 1, 2016 to January 31, 2017. And because Mr. Saravia enjoys a year-long tenancy under the MHLRA, Defendants cannot lawfully impose the planned $300 "month-to-month premium" on Mr. Saravia starting on June 1, 2016. *See* Rent Increase Letter, Exhibit C-2.

## II. The Impending Rent Increase Threatens Irreparable Harm In The Form Of Lost Housing, Lost Familial Time, Financial Anxiety, And Disruption Of Children's Education

Defendants' planned "month-to-month" rent premium increase would stretch the TRO Plaintiffs' limited financial means to a breaking point. *See* Moya Declaration ¶ 18; Bolanos Declaration ¶ 18; Saravia Declaration ¶ 19. The significant financial burden would force the TRO Plaintiffs and their spouses to forego time at home with their young families to seek extra income by working additional nights and weekends. *See* Moya Declaration ¶¶ 20-21; Bolanos Declaration ¶ 20; Saravia Declaration ¶ 20.

Even if the TRO Plaintiffs and their spouses attempt this incredible sacrifice, there is no guarantee that they will even be able to find extra work. For example, Mr. Moya and Mr. Bolanos work in construction, and both worry that they would not find enough additional work to pay the increased rent. *See* Moya Declaration ¶¶ 20; Bolanos Declaration ¶ 20. Mr. Saravia installs flooring and he, too, does not know whether he could find enough new projects to make the higher rent payments. *See* Saravia Declaration ¶ 20.

9

Without additional work, the TRO Plaintiffs will be unable to earn additional income. And without additional income, the TRO Plaintiffs will be *unable* to pay their rent and will have *no choice* but to leave their homes.

If the rent increase forces the TRO Plaintiffs from their homes,[6] they will suffer irreparable harm, such as the loss of safe, sanitary housing accessible to their jobs and the loss of a key wealth-building asset. *Cf. Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1424 (11th Cir. 1984) (noting in a housing discrimination case irreparable harms including "the loss of safe, sanitary, decent and integrated housing . . . the loss of housing which is accessible to jobs; and the loss of being unable to escape the never-ending and seemingly unbreakable cycle of poverty"). TRO Plaintiffs' children would suffer from their parents' financial stress and longer working hours, and if the families are forced out of the Park, several of the TRO Plaintiffs' school-aged children may be uprooted from their classes and meaningful friendships. *See* Moya Declaration ¶¶ 23-24; Bolanos Declaration ¶¶ 22-23.

### III.    The Balance Of The Equities Favors The TRO Plaintiffs Because, Absent An Injunction, They Face Greater Potential Harms Than Defendants

"In considering the balance of the equities . . ., the Court is obligated to make an assessment of the harms facing both parties." *Bristol Univ.*, 2016 WL 1688760, at *6 (quotations and citation omitted). Here, that balance favors the TRO Plaintiffs and dictates that the requested injunction be granted.

Absent an injunction, the TRO Plaintiffs face a sharp spike in rental fees for their manufactured home sites. As made clear above, the TRO Plaintiffs cannot afford to pay the

---

[6]    As a result of Defendants' rent increases, TRO Plaintiff Herbert David Saravia Cruz has listed his home for sale. Saravia Declaration ¶ 17. He has informed Defendants of this fact, but will remain at risk of unwarranted financial strain from the impending rent increase until he finds a buyer.

additional $300, which would impose irreparable injuries, including but not limited to forcing them out of the Park—and their homes—altogether.

By contrast, the relief the TRO Plaintiffs seek would have only limited impact on Defendants. If the Court restores and maintains the status quo of the TRO Plaintiffs' 2015-2016 lease agreements during the term of the requested injunctive relief—that is, enjoins Defendants from charging the TRO Plaintiffs a "month-to-month premium"—Defendants would still receive the year-long lease rent rates upon which they agreed.

## IV.   An Injunction Preventing Defendants From Breaching The TRO Plaintiffs' Leases Serves The Public Interest

The public interest will be well served by an injunction preventing Defendants from expanding their ongoing violations of the MHLRA. Defendants are, as described above, already breaching the MHLRA by wrongfully deeming the TRO Plaintiffs "month-to-month" tenants and demanding unwarranted premiums. The public interest in preventing violations of Virginia law and in requiring Defendants to comply with the same requirements Virginia has set forth for all mobile home park operators supports an injunction precluding Defendants from demanding even greater month-to-month premiums while this case is pending. *Cf. Deltek, Inc. v. Iuvo Sys., Inc.*, No. 1:09-cv-330, 2009 WL 1073196, at *9 (E.D. Va. Apr. 20, 2009) (finding the public's "strong interest in the enforcement of trademark law" supported injunctive relief).

## V.   The Court Should Set A Nominal Bond Amount

The Court should set a nominal bond in light of the minimal risk that an injunction will cause substantial harm to Defendants, as well as the TRO Plaintiffs' limited financial means. Federal Rule 65 requires the Court to set *some* bond amount, as "failure to require a bond upon issuing injunctive relief is reversible error." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999). However, the Federal Rules do not specify the amount of the bond. *See* Fed. R. Civ. P.

11

65(c) (providing discretionary authority to set bond at "an amount that the court considers proper"). The Fourth Circuit has recognized courts' discretionary authority to set *nominal* bonds where, as here, "the risk of harm is remote, or . . . the circumstances otherwise warrant it." *Hoechst*, 174 F.3d at 421, n.3.

The TRO Plaintiffs seek an injunction against a sharp spike in rental fees for their mobile home lots. The TRO Plaintiffs cannot afford to pay the threatened rate and will face substantial financial difficulty if the Court requires a bond at greater than a nominal rate. Any bond greater than a nominal amount will discourage the TRO Plaintiffs from advancing strong claims for relief due to the unmanageable potential financial impacts of an adverse ruling.

By contrast, the relief that the TRO Plaintiffs seek would have only limited impact on Defendants. Plaintiffs seek restoration of the rent rates provided in their 2015-2016 lease agreements during the term of the requested injunctive relief. Defendants would forego the additional "month-to-month" rent they seek, but only a nominal bond is needed where defendants plainly do not have a right to the money an injunction will prevent them from collecting. *Cf. Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*, 23 F. App'x 134, 139 (4th Cir. 2001) (affirming the use of a nominal bond where a trademark infringer "had no right to sell infringing [products] in the first instance"). Combined with the TRO Plaintiffs' limited financial means, the fact that the TRO Plaintiffs' requested relief would merely maintain the status quo by forestalling an illegal rate increase counsels in favor of a nominal bond.

## CONCLUSION

For the foregoing reasons, the Court should grant the TRO Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

DATED this 23rd day of May, 2016        Respectfully submitted,

LEGAL AID JUSTICE CENTER
Ivy Finkenstadt, VSB #84743
Simon Sandoval-Moshenberg, VSB #77110

6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454
ivy@justice4all.org
simon@justice4all.org

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Paul Brinkman, VSB # 35950
Jeanhee Hong (motion for *pro hac vice* forthcoming)
Ariel Wade Trajtenberg (motion for *pro hac vice* forthcoming)
Diego Duran de la Vega (motion for *pro hac vice* forthcoming)
Benjamin Cain (motion for *pro hac vice* forthcoming)
Jongwook Kim (motion for *pro hac vice* forthcoming)
Bill Margeson (motion for *pro hac vice* forthcoming)

777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001-3706
Phone: (202) 538-8000
Fax: (202) 538-8100
paulbrinkman@quinnemanuel.com
jeanheehong@quinnemanuel.com
arieltrajtenberg@quinnemanuel.com
diegoduran@quinnemanuel.com
benjamincain@quinnemanuel.com
wookiekim@quinnemanuel.com
billmargeson@quinnemanuel.com

*Attorneys for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I hereby certify that arrangements have been made to, on this date, serve a true and correct copy of the foregoing by hand delivery to the following parties, at the addresses below:

Waples Mobile Home Park Limited Partnership
9302 Lee Highway, Suite 300
Fairfax, Virginia 22031

Waples Project Limited Partnership
3050 Chain Bridge Road, Suite 200
Fairfax, Virginia 22030

A.J. Dwoskin & Associates, Incorporated
3201 Jermantown Road, Suite 700
Fairfax, Virginia 22030

Grayson P. Hanes
Reed Smith LLP
7900 Tysons One Place, Suite 500
McLean, Virginia 22102
*(Registered Agent for All Defendants)*

Dated this 23rd day of May, 2016.

LEGAL AID JUSTICE CENTER
Ivy Finkenstadt, VSB #84743
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454
ivy@justice4all.org

14