# Exhibit A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ, <br><br> *Plaintiffs,* <br><br> vs. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC.; <br><br> *Defendants.* | Civil Action No. _____ |

## DECLARATION OF ESTEBAN RUBEN MOYA YRAPURA

I, Esteban Ruben Moya Yrapura, declare under penalty of perjury that the following is true:

1.    I am a resident of Fairfax, Virginia. I was born and raised in Bolivia. I moved to the United States from Bolivia over 22 years ago.

2.    I came to the United States in pursuit of better opportunities for me and my family. Since arriving in the United States, I have worked a variety of construction jobs. With the help of one of my former employers, I obtained legal permanent resident status in the United States. I am proud of the life I have built in the United States for me and my family.

3.    I currently own and live in a manufactured, or "mobile" home at Waples Mobile Home Park (the "Park"), which is located in Fairfax, Virginia. I live with my wife, Yovana Jaldin Solis; my 16-year-old son; and my 13-year-old daughter.

4.    I understand that the company that operates the Park is A.J. Dwoskin &
Associates, Inc ("Dwoskin & Associates"). Although I am not 100% certain, I also understand
that Waples Mobile Home Park Limited Partnership ("Waples L.P.") and Waples Project
Limited Partnership ("Waples Project L.P.") own the Park. Dwoskin & Associates, Waples L.P.,
and Waples Project L.P. are the Defendants in this lawsuit.

5.    I bought my home at the Park for approximately $25,000 in 2011. I bought it
from a departing resident of the park. The title to my home is in my and my wife's name. As of
today, my home is paid off in full.

6.    I am a proud homeowner. Since buying my home in the Park, I have spent
substantial amounts fixing and improving the plumbing, floors and bathrooms. I have also spent
substantial time painting and redecorating my home to best meet my family's needs.

7.    Although I own my home, I rent the land that it sits on from Dwoskin &
Associates, who I understand is an agent of the Park's owners. I submit lease payments for this
land specifically to representatives of Dwoskin & Associates, including Josephine Giambanco,
who is a property manager. I make these payments on a monthly basis. I pay my lease by
money order made out to "Waples Mobile Home Park."

8.    Even though I live in a "mobile home" park, I cannot easily move my home,
which is effectively permanently fixed in its location on the lot I rent from Dwoskin &
Associates.

9.    In February 2011, I entered into a one-year Lease Agreement with Dwoskin &
Associates for my lot at the Park. Each year after that, I renewed my lease with Dwoskin &
Associates for my lot. Specifically, I renewed my lease in 2012, 2013, 2014, and, most recently,
for a lease term beginning on February 1, 2015. This Lease Agreement has a monthly rent of

$745. (Attached as **Exhibit A-1** is a true and correct copy of my most recent Lease Agreement, which I signed on December 4, 2014.)

10.    Throughout my time at the Park, I have never missed any rent payments, or even made any late rent payments. Additionally, I believe I have always complied with all of the Park's rules and regulations, including, for example, by submitting to the annual inspections conducted by Defendants. I consider myself to be a respectful Park resident.

11.    In January 2016, I spoke to Ms. Giambanco about renewing my lease for another one-year term beginning on February 1, 2016. However, when I spoke to Ms. Giambanco, she explained that I could not renew my lease because my wife had not provided to the Park's management a Social Security card.

12.    I was shocked and confused by Ms. Giambanco's statement. My wife has been living with me in my home since I first moved into the Park. In fact, when I first moved in, I told Dwoskin & Associates that my family would be living with me, and someone in the leasing office said this was fine.

13.    In addition, Dwoskin & Associates has known that my wife has been living with me at the Park since I moved there. I know this because our lot is located close to the Park's management office; my wife frequently speaks to management, including Ms. Giambanco; and Dwoskin & Associates has conducted annual inspections of my home, at which my wife has always been present, and has acknowledged my wife's presence through those inspections. Both my wife and I are listed on the title to the trailer, of which the leasing office retains a copy.

14.    On January 18, 2016, I received a letter from Ms. Giambanco stating that I could not renew my lease "due to unauthorized occupants living in [my] home." That letter also stated

3

that I would be put on a month-to-month lease at a "new monthly rent" of $870. (Attached as **Exhibit A-2** is a true and correct copy of this letter.)

15. I was shocked and confused by this letter. I told Ms. Giambanco that my wife did not have a Social Security card. My wife has an Individual Taxpayer Identification Number ("ITIN"), but my understanding is that Dwoskin & Associates will not accept this in order to conduct its background check and to "register" my wife.

16. The Park also requires that both my wife and I submit a rental application and identification in order to renew the lease. We are willing to do so, but after my January discussion with Ms. Giambanco, we were not offered the opportunity to even submit the application unless my wife could provide either a Social Security card or a valid passport, visa, and a arrival departure document called an I-94.

17. In March 2016, I received another letter stating that, as of June 1, 2016, my month-to-month rent premium would increase to $300 per month. (Attached as **Exhibit A-3** is a true and correct copy of this letter.) After totaling up all of the new fees, Dwoskin & Associates will be charging me $1,070 per month for my lease starting in June. This is $325 more per month than I have been paying since my last lease agreement.

18. My family and I cannot afford this rent increase. What my family is earning now is only enough to cover our basic living expenses. Paying $1,070 per month is far beyond my family's means.

19. My family has no savings.

20. I work in construction. If we had to pay $1,070 in rent, I would have to work significantly more than I do now. I would have to work as many hours as possible, both at night

4

and during weekends. Given the nature of my work, however, I am not sure I would be able to find enough work.

21.    My wife is a housekeeper. She will also have to work significantly more, and finding that work will be incredibly challenging. Currently, she has a fixed number of clients that she has had for many years. It would take her a significant amount of time to find new clients. In fact, I am not even sure that this may be possible because she finds clients by word of mouth.

22.    If my family had to pay this new $300 premium each month, we would have to make tremendous sacrifices just to pay our rent. I worry that, even if we were lucky enough to find some additional work here and there, we may not even have enough money leftover for food and other basic expenses, including for expenses related to my children's education, such as school supplies.

23.    My family has significant ties to the local community. Most important to me and my wife are the ties that my children have to their school communities. Both are thriving at their respective schools. They have many friends, and are leading fulfilling, happy lives. This is exactly the type of life that I wanted to create when I moved to the United States. My family's priority is ensuring that my children can continue attending their current schools.

24.    However, if we were unable to pay the higher rent, we would be forced to look for a new home somewhere else. As a result, my children would no longer be able to attend their current schools because other nearby communities are too expensive for us. We would also lose the substantial investments we have made in our home and into the local community.

5

25.     We are scared about these possible consequences, which is why we are asking the court for a temporary restraining order and preliminary injunction until the court can consider the full merits of our lawsuit.

26.     Everything that has happened since the beginning of 2016 has been very stressful for me and my family.  Every day, my wife and I worry about how we are going to make enough money to pay the new rent.  Because the $300 increase will start on June 1, we are even more stressed about our situation and about the hardships that the increase will impose on me and my family.

27.     Yo no leo inglés. Lo anterior me ha sido leído en español, antes de firmarlo.  Yo, Esteban Ruben Moya Yrapura, debidamente enterado de las penas de perjurio en que incurren los que declaran con falsedad, hago saber que lo que acabo de manifestar es verdadero y cierto. Cumplido y Firmado en esta fecha. *(I do not read English. The foregoing has been read to me in Spanish before I signed it. I, Esteban Ruben Moya Yrapura, declare under penalty of perjury that the foregoing is true and correct. Executed and Signed this date.)*

Executed in Fairfax, Virginia on the 20 day of May, 2016.

_____
Esteban Ruben Moya Yrapura

6