**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

ROSY GIRON DE REYES, *et al.*,

                Plaintiff,

v.

WAPLES MOBILE HOME PARK
LIMITED PARTNERSHIP, *et al.*,

                Defendants.

Civil No.:  1:16cv563-TSE-TCB

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited

Partnership, and A. J. Dwoskin & Associates, Inc. (collectively "Defendants"), by counsel,

pursuant to Fed. R. Civ. P. 12(b)(6) submit this memorandum of points and authorities in support

of Defendant's Motion to Dismiss Counts I, II, IV, and VI of Plaintiff's Complaint. As detailed

below, Defendants respectfully request the Court to dismiss Counts I, II, IV, and VI of Plaintiff's

Complaint with prejudice.

## <u>INTRODUCTION</u>

Plaintiffs contend that Defendants' facially neutral policy to facilitate criminal

background and credit checks discriminates against Latinos because they are allegedly the largest

group of undocumented aliens in Northern Virginia.  The gist of Plaintiffs' Complaint, however,

is not that the neutral policy discriminates against Latinos, or has a disproportionate impact on

them, but rather that the policy has a  disparate impact on undocumented and/or illegal aliens.

Four of the eight Plaintiffs – Messrs. Reyes, Bolanos, Yrapura and Saravia – are Latino, allege

legal status in the United States, complied with the landlord's policy and entered into leases.  The

remaining four plaintiffs who allege that they cannot comply with the policy -  Mrs. Reyes, Ms.

US_ACTIVE-127237562

Rivas, Ms. Jaldin, and Ms. Amaya – are distinguishable from the other four Plaintiffs by the fact that they appear to be in the United States illegally. There are no allegations in the Complaint that these Plaintiffs have legal status in the United States.  Thus, the Plaintiffs are asking this Court to create a cause of action based on the claimed protected status of being an undocumented, and perhaps, illegal alien.[1]

In their complaint, Plaintiffs seek to create a new protected class of unlawful aliens under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* ("FHA") and the Virginia Fair Housing Law, Va. Code § 36-96, *et seq.* ("VFHL"). The persons who have entered this category have done so by choice and done so unlawfully. Consequently, becoming an unlawful or undocumented alien is not an immutable category such as race or national origin. Yet, Plaintiffs hope to have this Court create this new protected class under the FHA, the VFHL and under 42 U.S.C. § 1981.  In order to surmount this obstacle, Plaintiffs couch their claims as adversely effecting Latinos by alleging that Latinos make up the majority of the undocumented population in Virginia. *See* Compl. ¶¶ 62-63. However, it is not Latinos but only undocumented and unlawful aliens that are allegedly affected by Defendants' neutral policy.

Plaintiffs' allegations acknowledge that Mrs. Reyes, Ms. Rivas, Ms. Jaldin, and Ms. Amaya are undocumented aliens because they are unable to provide documentation of their lawful status in the United States. *See* Compl.¶¶ 64-111. Plaintiffs even acknowledge the legitimate non-discriminatory reason for Defendants' neutral policy by alleging that Defendants' claim that the documentation is needed for criminal background and credit checks. *See* Compl. ¶¶ 32-36.  Plaintiffs suggest that an Individual Taxpayer Identification Number ("ITIN") is a sufficient substitute to the documentation requested under the policy, *see* Compl. ¶ 30, but

---

[1] The Complaint alleges that the male plaintiffs were able to enter into lease agreements.  Thus, the male plaintiffs are only injured because the female plaintiffs cannot comply with the policy.  Accordingly, the male plaintiffs' claims rise or fall with those of the female plaintiffs who cannot comply with the policy.

Plaintiffs do not question the rationale for the Policy to facilitate criminal background and credit checks.

Plaintiffs also fail to acknowledge that creating unlawful immigration status as a protected class under the FHA, VFHL and 42 U.S.C. § 1981 would place the FHA, VFHL and 42 U.S.C. § 1981 at odds with current federal immigration law under which a landlord can be potentially criminally liable for harboring an illegal alien with reckless disregard of the illegal aliens' status. As stated below in more detail, Plaintiffs' claims under Count I (Violation of the FHA), Count II (Violation of the VFHL), Count IV (Violation of 42 U.S.C. § 1981), and Count VI (Tortious interference with contract) should be dismissed as a matter of law.

## SUMMARY OF COMPLAINT

Plaintiffs are four women and four men. Compl. ¶¶ 64, 80, 90, 100. All are alleged to be Latino and from El Salvador or Bolivia. According to Plaintiffs' allegations, the four male Plaintiffs are in the United States legally. Compl. ¶¶ 64, 80, 90, 100, 104 (Plaintiffs allege that Jose Reyes and Felix Bolanos have temporary protective status ("TPS") in the United States, Plaintiff Esteban Moya is a lawful permanent resident, and Plaintiff Herbert Saravia has a Social Security Number). The male Plaintiffs entered into leases with Defendants. Compl. ¶¶ 66, 83, 93, 104. Although Mrs. Reyes and Ms. Rivas are alleged to have Individual Taxpayer Identification Numbers ("ITIN"), *see* Compl. ¶¶ 70 and 80, Plaintiffs' allegations reveal that the four female Plaintiffs' cannot produce documentation of their legal status in the U.S. *See* Compl. ¶¶ 73-74, 86, 98, 108. Further, there are no allegations in the Complaint that the four female Plaintiffs are lawful residents in the United States. Accordingly, of the eight Latinos plaintiffs, only the four female Plaintiffs who do not possess documentation of their legal status in the United States are allegedly affected by the Defendants' policy.

The focus of Plaintiffs' allegations and claims, therefore, is the disparate impact of Defendant's policy on illegal and/or undocumented aliens. *See* Compl. ¶¶ 39 – 54.  The Complaint contains numerous allegations of the percentage of undocumented aliens in the United States, Virginia, and Fairfax County.   Paragraph 39 of the Complaint states the Plaintiffs' contention succinctly alleging that the policy: "serves no purpose other than to illegally and illegitimately identify and exclude undocumented immigrants from the Park."

In the Complaint, Plaintiffs acknowledge that it is reasonable for Defendants' to have a policy to provide for  criminal background and credit checks. *See* Compl. ¶¶ 32-36.  Plaintiffs allege that there are different methods of conducting criminal background and credit checks, but they do not challenge the legitimacy of such checks by a landlord.  In paragraph 34 of the Complaint, Plaintiffs refer to "screening companies hired by landlords" to conduct criminal background checks and then proceed to suggest that such background checks can be performed with information other than that required by the challenged policy.

## STANDARD OF REVIEW

When considering a Rule 12 (b)(6) motion, courts review the sufficiency of the complaint.  In order to survive such a motion, a plaintiff's complaint must allege a plausible claim for relief.  The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotations marks omitted).  The Supreme Court of the United States has explained the application of this standard as follows:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... Factual

allegations must be enough to raise a right to relief above the speculative level, …
on the assumption that all the allegations in the complaint are true (even if
doubtful in fact)) . . . .

*Id.* at 561 (internal citations and footnote omitted).  *Twombly* marked the "retirement" of the

language from *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief."  *Id*. at 561-62 (citing *Conley*, 355 U.S. 41, 45-46

(1957)).  Instead, the Supreme Court directed that the mere possibility is insufficient; well-pled

allegations must nudge the claim "across the line from conceivable to plausible" to survive a

motion to dismiss.  *Twombly*, 550 U.S. at 570.  A "claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*,

550 U.S. at 556 ).

The claim must be supported by "any set of facts consistent with the allegations in

the complaint."  *Kelley v. U.S.*, 580 F. Supp. 2d 490, 492 (E.D. Va. 2008) (quoting *Twombly*, 550

U.S. at 546).  The court must construe the complaint in the light most favorable to the plaintiff,

read the complaint as a whole, and take facts asserted therein as true.  *Id.*  The court need not,

however, accept the legal conclusions, inferences, or arguments that are drawn from the facts –

and it may take judicial notice of matters outside the pleadings.  *See Field v. Berman,* 526 Fed.

App'x. 287, 289 (4th Cir. 2013) ("In addition to considering the complaint itself, we must

consider any documents attached to the complaint as exhibits ... 'documents incorporated into the

complaint by reference, and matters of which a court may take judicial notice'" (quoting *Tellabs,*

*Inc.  v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see also Kelley*, 580 F. Supp. 2d

at 492.  In reviewing the dismissal of a complaint under Rule 12(b)(6), a court may take judicial

notice of public records, such as state court pleadings and orders, without converting the motion to dismiss into one for summary judgment. *Witthohn v. Federal Ins. Co.*, 164 Fed. Appx. 395, 396 (4th Cir. 2006); *American Int'l Specialty Lines Ins. Co, v. A.T. Massey Coal Co., Inc.,* 628 F. Supp. 2d 674, 678 (E.D. Va. 2009).

The pleading requirements discussed above are particularly important when the claim asserted is one of disparate impact under the FHA. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015). In *Texas Dep't of Hous. & Cmty. Affairs*, the Court held that "Courts must therefore examine with care whether a plaintiff has made out a prima facie case of disparate impact and prompt resolution of these cases is important. A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.* at 2523.

## SUMMARY OF ARGUMENT

Plaintiffs fail to state a claim under the FHA because unlawful and/or undocumented immigration status is not protected by the FHA, and Plaintiffs fail to identify a causal link between Defendants' policy and an alleged adverse impact on Latinos.

Plaintiffs fail to state a claim under the VFHL because the VFHL does not recognize a disparate impact claim. Even assuming *arguendo* that the Court interprets the VFHL, *sub silencio,* to allow for such a claim, unlawful immigration status is not a protected class under the VFHL, and Plaintiffs fail to allege a causal link between Defendants' policy and Latinos.

Plaintiffs fail to state a claim under 42 U.S.C. § 1981 because Plaintiffs do not allege intentional discrimination, illegal aliens are not a protected class under § 1981, and construing § 1981 to protect illegal aliens would put § 1981 at odds with federal immigration law.

Finally, Plaintiffs fail to state a claim for tortious interference because an agent acting within the scope of its agency cannot interfere with the contract of its principal.

Accordingly, Plaintiffs claims under Counts I, II, IV, and VI should be dismissed with prejudice.

## ARGUMENT

### I.    Plaintiffs Fail to State a Claim Under the FHA

Plaintiffs fail to state a claim under the FHA because 1) unlawful and/or undocumented immigration status is not protected by the FHA and 2) Plaintiffs fail to identify a causal link between Defendants' policy and an adverse impact on Latinos. As set out below, Plaintiffs' claim under the FHA should be dismissed.

### A.    Unlawful and/or Undocumented Immigration Status is Not Protected by the FHA

Plaintiffs' disparate impact claim under the FHA is entirely dependent on unlawful aliens being considered a protected class. Defendant's neutral policy of requiring 1) an "original social security card", or 2) an "original Passport, original U.S. Visa, and original Arrival/Departure Form (I-94 or I-94W)" prevents only one category of individuals from obtaining complying with the policy – aliens who are unlawfully present in the United States and/or who are undocumented.  The Plaintiffs who are properly documented and in the United States legally all allege that they were able to enter into lease agreements. These Plaintiffs are also all Latinos which shows that the policy does not impact Latinos - only undocumented aliens.  Unlawful and/or undocumented aliens, however, are not a protected class under the FHA. *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973) (holding that the FHA does not protect against discrimination on the basis of alienage or citizenship); *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 973 (8th Cir. 2012); *Espinoza v. Hillwood Square Mut. Ass'n*, 522 F. Supp. 559, 568 (E.D.

Va. 1981) ("This court holds, therefore, that the *Farah* ruling on national origin applies to the Fair Housing Act, as well as to Title VII."); *Martinez v. Partch*, No. CIV.A 07-CV-01237-RE, 2008 WL 113907, at *2 (D. Colo. Jan. 9, 2008) (FHA "does not prohibit discrimination on the basis of citizenship.") (citing cases). If neither alienage nor citizenship discrimination violates the FHA, it would be illogical to find that the FHA protects individuals from discrimination on the basis of "unlawful immigration status." *Keller v. City of Fremont*, 719 F.3d 931, 949 (8th Cir. 2013) ("It would be illogical to impose FHA disparate impact liability based on the effect an otherwise lawful ordinance may have on a sub-group of the unprotected class of aliens not lawfully present in this country.").

Immigration status is not an immutable characteristic like race or ethnicity--classes protected by the FHA. Indeed, it is the product of unlawful action. *See Plyler v. Doe*, 457 U.S. 202, 220 (1982) ("Nor is undocumented status an absolutely immutable characteristic since it is the product of conscious, indeed unlawful, action."). Undocumented and/or illegal aliens are not a protected class under the FHA.

Plaintiffs assert that Defendants' neutral housing policy has a disparate impact on Latinos in an attempt to shroud the true protected class they hope to create – a judicially created protected class of unlawful aliens. *See* Compl. ¶ 114. Plaintiffs allege that the Policy has a disproportionate effect on "Latinos as compared to similarly situated non-Latinos." *Id.* This allegation is untrue on its face. The "similarly situated non-Latinos" would be people of a different race or ethnicity who are also in the United States illegally or undocumented. They would confront the same issues alleged by the female Plaintiffs here as to the policy even though not Latino. This shows that the Defendants' neutral housing policy only affects those who cannot provide documentation of their lawful status in this country. As the *Keller* court

acknowledged, it would be "unsound" to create a cause of action based on a protected class of

"aliens not lawfully present in this country":

> We find no hint in the FHA's history and purpose that such a law or ordinance, *which is valid in all other respects,* violates the FHA if local statistics can be gathered to show that a disproportionate number of the adversely affected aliens are members of a particular ethnic group. In most cases today, that would of course be Latinos, but at various times in our history, and in various locales, the "disparate impact" might have been on immigrants from Ireland, Germany, Scandinavia, Italy, China, or other parts of the world. It would be illogical to impose FHA disparate impact liability based on the effect an otherwise lawful ordinance may have on a sub-group of the unprotected class of aliens not lawfully present in this country. *Cf. Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973). Whatever its statutory merit in other contexts, the cause of action urged by the Keller Plaintiffs is unsound.

719 F.3d at 949.

Further, recognizing illegal or undocumented aliens as a protected class under the FHA

would conflict with the Immigration Reform and Control Act. *See* 8 U.S.C. § 1324, *et seq.*

("IRCA"). IRCA provides that it is illegal to harbor illegal aliens. 8 U.S.C. § 1324(a)(1)(A)(iii).

The Fourth Circuit has interpreted U.S.C. § 1324(a)(1)(A)(iii) broadly holding that a landlord

can be convicted of violating § 1324 if the landlord acts with reckless disregard of an

individual's status as an illegal immigrant. *See United States v. Aguilar*, 477 F. App'x 1000, 1002

(4th Cir. 2012) ("Circumstantial evidence alone can establish a defendant's knowledge or

reckless disregard that the people harbored are illegally in the country."). IRCA demonstrates

that Congress never intended under the FHA, or any other statute, to create a protected class of

illegal and/or undocumented aliens.[2]

Accordingly, the Court must reject Plaintiffs attempt to create a new protected

class under the FHA consisting of illegal and/or undocumented aliens and should dismiss count I

of the Complaint.

---

[2] This is also shown by 8 U.S.C. § 1324b that prohibits the employment of illegal aliens. That code section defines "protected individuals" not subject to the act to be citizens of the United States and legal aliens.

**B.** **Plaintiffs Fail to Identify A Causal Link Between Defendants' Policy and an Adverse Impact on Latinos**

Plaintiffs fail to state a claim under the FHA because Plaintiffs allegations do not meet the "robust causality" standard for a disparate impact claim under the FHA. The Supreme Court recently recognized a disparate impact claim under the FHA. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. at 2523. While recognizing disparate impact claims under the FHA, the Supreme Court cautioned that disparate-impact liability under the FHA cannot be imposed based on mere statistical disparities. *Id.* The Court stated that "a disparate-impact claim that relies on statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity. A robust causality requirement ensures that 'racial imbalance . . . does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create." *Id.* (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653 (1989)). The Court further held that "[T]he limitations on disparate-impact liability discussed here are also necessary to protect potential defendants against abusive disparate-impact claims. If the specter of disparate impact litigation causes private developers to no longer construct or renovate housing units for low income individuals, then the FHA would have undermined its own purposes as well as the free-market system." *Id.* at 2524.

Accordingly, in order to survive a motion to dismiss, Plaintiffs' allegations must demonstrate a robust causal connection between a challenged policy or action and the resulting statistical disparity. Courts applying the Supreme Court's decision in *Texas Dep't of Housing* have followed the Court's guidance on the robust causality requirement. *See City of Los Angeles v. Wells Fargo & Co.*, 2015 WL 4398858, at *8 (C.D. Cal. July 17, 2015); *Ellis v. City of Minneapolis*, No. 14-CV-3045 SRN/JJK, 2015 WL 5009341, at *10 (D. Minn. Aug. 24, 2015).

Indeed, in *City of Los Angeles*, the Court dismissed the plaintiff's disparate impact claim under the *Texas Dep't of Housing* decision in part because the plaintiff could not identify any policy that ***caused*** the racial disparity. 2015 WL 4398858, at *8.  Likewise in *Ellis*, the district court held that the plaintiffs failed to plead a prima facie case of disparate impact because "allegations of a statistical disparity alone are insufficient to make out a prima facie case," and the plaintiffs had failed to "allege facts that plausibly demonstrate a ***causal link*** between the challenged policy and that disparity."  2015 WL 5009341, at *10 (emphasis added). Even before the *Texas Dep't of Housing* decision, the Fourth Circuit, in affirming a decision from this Court, recognized that for a plaintiff's disparate impact claim to survive a motion to dismiss, a plaintiff must do more that demonstrate a statistical imbalance. *Edwards v. Johnston Cty. Health Dep't*, 885 F.2d 1215, 1223 (4th Cir. 1989) ("But merely demonstrating a statistical imbalance, without more, does not establish a greater discriminatory adverse effect on one race compared to another.") (dismissing FHA claim).

Here, it is clear that the policy is not the cause of the inability of the female Plaintiffs to comply, nor is their status as Latinos.  Rather, the cause is their status as undocumented and/or illegal aliens. The other Latino Plaintiffs in this case were and are able to comply with the policy. The only reason the female Plaintiffs cannot is because they are unable or unwilling to comply with federal law to obtain the documents identified in the Policy.  That is the cause of the alleged impact of the policy on the female Plaintiffs.  The male Plaintiffs who are alleged to be in the United States legally – and who are Latino – are not impacted at all by the policy.  Latinos who are legally in the United States are not impacted at all by the policy.  The required "robust causality" is not satisfied when the underlying policy causes no impact to any Latino who is a properly documented and resident alien.

Further, Plaintiffs fail to allege a causal link between Defendants' policy and an adverse impact on Latinos because Plaintiffs fail to allege statistics on the percentages of undocumented aliens or Latinos in ***mobile homes*** either nationwide, in Virginia, or in Fairfax County. Plaintiffs make allegations regarding the percentage of mobile homes in Fairfax County and the percentage of mobile homes in Virginia. *See* Compl. ¶¶ 56-57. Plaintiffs then make allegations regarding the percentage of undocumented aliens in Virginia and in Fairfax County. Compl. ¶¶ 58-60. Plaintiffs also make allegations regarding how many Latinos are undocumented and how many undocumented aliens who are Latinos. Compl. ¶¶ 62-63.  Noticeably missing are any allegations regarding 1) percentages of Latinos in mobile home units nationwide, in Virginia, or in Fairfax County; 2) percentages of undocumented aliens in mobile home units nationwide, in Virginia, or in Fairfax County; or 3) percentages of undocumented aliens in mobile home units who are Latinos, nationwide, in Virginia, or in Fairfax County.

For the foregoing reasons, Plaintiffs fail to state a claim under the FHA.

**II.     Plaintiffs Fail to State a Claim Under the VFHL**

Plaintiffs fail to state a claim under the VFHL because A) the VFHL does not recognize a disparate impact claim; and B) even assuming *arguendo* that the Court interprets the VFHL to create a cause of action not identified in the VFHL unlawful immigration status is not a protected class and Plaintiffs fail to allege a causal link between Defendants' policy and Latinos.  As set out below, Plaintiffs' claim under the VFHL should be dismissed. *See* Compl. ¶¶ 118-23.

**A.     The VFHL Does Not Recognize a Disparate Impact Claim**

The express language of the VFHL does not provide for disparate impact claims. *See* Va. Code. 36-96.1, *et seq.* Va. Code  36-96.3 - Unlawful discriminatory housing practices - provides that it is unlawful "1. To refuse to sell or rent after the making of a bona fide offer or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any

person because of race, color, religion, national origin, sex, elderliness, or familial status; 2. To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in the connection therewith to any person because of race, color, religion, national origin, sex, elderliness, or familial status." The VFHL makes no reference to a disparate impact claim. Moreover, no Virginia court, state or federal, has recognized a disparate impact claim under the VFHL. Further, there is no statute in Virginia that has created a cause of action for disparate impact in any setting. There is simply no basis for a disparate impact claim under the VFHL.

Nor can the Court extrapolate from the decision of the United States Supreme Court in *Texas Dep't of Housing* to create a disparate impact claim under the VFHL as Plaintiffs will surely suggest. The decision in *Texas Dep't of Housing* was based upon the history of the enactment of the FHA and the existence of disparate impact claims under other federal statutes. There are no statutes in Virginia that allow for a disparate impact claim. The Supreme Court also noted with import that Congress rejected an amendment that would have eliminated disparate impact liability for certain zoning decisions even after nine Courts of Appeals have concluded that the FHA encompassed disparate impact claims. *Id.* at 2519. There is no equivalent Virginia precedent establishing disparate impact liability under the VFHL. Indeed, not a single court in Virginia has ever recognized such a cause of action. Accordingly, this Court should not create disparate impact liability under the VFHL.

Additionally, the courts in Virginia are extremely reluctant to create a cause of action not expressly identified in an underlying statute. Under Virginia law, "[o]ne of the basic principles of statutory construction is that where a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." *Sch.*

*Bd. of City of Norfolk v. Giannoutsos*, 380 S.E.2d 647, 649 (Va. 1989); *see Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 805 (4th Cir. 1996) ("We begin with the presumption that if a statute does not expressly create a private cause of action, one does not exist."). The VHFL and, indeed all of Virginia law, statutory or decisional, is bereft of any hint that disparate impact is a viable cause of action.

Plaintiffs do not allege intentional discrimination by Defendants. Rather Plaintiffs allege that Defendants' facially neutral policy has a disparate impact on undocumented aliens. *See* Compl. ¶ 120. Paragraph 119 of the Complaint contains a conclusory allegation that "Defendants' enforcement of the Policy constitutes a denial of housing and discrimination . . . on the basis of race and/or national origin…." This conclusory allegation is flat contrary to the facts alleged in the Complaint. The Policy is neutral on its face. There are no allegations that the Policy was enforced only against Latinos. Four of the Latino Plaintiffs entered into leases after complying with the Policy. The VFHL claim is based on disparate impact and must be dismissed because no such cause of action exists under the VFHL.

**B.      Even Assuming This Court Creates a New Cause of Action Under The VFHL, Plaintiffs VFHL Claim Fails**

Even if this Court were to create a new cause of action under Virginia law for disparate impact under the VHFL, Plaintiffs fail to state a claim under the VFHL for the same reasons that Plaintiffs fail to state a claim under the FHA. Unlawful and/or undocumented immigration status is not a protected class under the VFHL. *See supra*. Moreover, Plaintiffs fail to identify a robust causal link between Defendants' neutral policy and an adverse impact on Latinos. *See supra*. Accordingly, Plaintiffs' VFHL claim should be dismissed.

### III.     Plaintiffs Fail to State a Claim Under 42 U.S.C. § 1981

Plaintiffs fail to state a claim under 42 U.S.C. § 1981 because A) illegal aliens are not a protected class under § 1981; B) Plaintiffs do not allege intentional discrimination by Defendants; C) Plaintiffs do not allege any circumstantial evidence of intentional discrimination and D) construing § 1981 as protecting illegal aliens would put § 1981 at odds with federal immigration law.  Therefore, Plaintiffs' § 1981 claim should be dismissed.

#### A.     Section 1981 Does Not Protect Illegal Aliens As a Class

Illegal aliens are not a protected class under § 1981.  The Supreme Court has held that Section 1981 applies to legal aliens discriminated against ion the basis of citizenship; however, it has never held that Section 1981 applies to illegal aliens. *Takahashi v. Fish and Game Commission*, 334 U.S. 410, 418-19 (1948). In *Takahashi*, the Supreme Court held that a state could not prevent "*lawfully* admitted aliens" within its borders from earning a living. *Id.* (emphasis added). Although the Court was not presented with the question of whether illegal aliens were protected under Section 1981, the Court's purposeful use of the phrase "*lawfully* admitted aliens" demonstrates that a different result likely would have occurred if the plaintiff had been an illegal alien. While there are cases prohibiting discrimination based on citizenship under § 1981, these cases all involved aliens who were lawfully in the United States. *Graham v. Richardson*, 403 U.S. 365, 367 (1971) ("[Appellee] is a lawfully admitted  resident alien."); *Duane v. GEICO*, 37 F.3d 1036, 1037 (4th Cir. 1994) ("Vincent Duane is a lawfully admitted, permanent resident alien of the United States and a citizen of Australia."); *Espinoza v. Hillwood Square Mut. Ass'n*, 522 F. Supp. 559, 560 (E.D. Va. 1981) (noting that plaintiffs are "alien residents of the United States").  Illegal and/or undocumented aliens are not a protected class under Section 1981.

The Second Circuit has confirmed that Section 1981 does not apply to illegal and/or undocumented aliens.  *Anderson v. Conboy*, 156 F.3d 167, 180 (2d Cir. 1998) ("If an employer refuses to hire a person because that person is in the country illegally, that employer is discriminating on the basis not of alienage ***but of noncompliance with federal law***.") (emphasis added); *see also Keller v. City of Fremont*, 719 F.3d 931, 949 (8th Cir. 2013) ("It would be illogical to impose FHA disparate impact liability based on the effect an otherwise lawful ordinance may have on a sub-group of the unprotected class of aliens not lawfully present in this country.").

Here the female plaintiffs who allege harm by Defendants' neutral policy are not harmed because they are Latinos as plaintiffs stridently suggest, but because they are illegal and/or undocumented aliens. Latinos can acquire the documents required by Defendants' policy, *see* Compl. ¶ 3, but only illegal aliens could not acquire the requisite documentation of legal status. Section 1981 refers to specific protected classes. Plaintiffs hope this Court will expand those specific classes to include illegal and/or undocumented aliens. This Court should resist Plaintiffs' efforts to have this Court rewrite the law. Because illegal aliens are not a protected class under 42 U.S.C. § 1981, the Court need not proceed any further in any analysis to determine if there was intentional discrimination and should dismiss count IV.

### B.        Plaintiffs Fail to Allege that Defendants Intended to Discriminate

Even assuming arguendo that illegal and/or undocumented aliens were a protected class under 42 U.S.C. § 1981, Plaintiffs fail to state a claim for intentional discrimination under 42 U.S.C. § 1981 because Plaintiffs make no allegations showing that Defendants intended to discriminate on the basis of alienage or race.

"To prove a § 1981 claim, therefore, a plaintiff must ultimately establish both that the ***defendant intended to discriminate on the basis of race***, and that the discrimination interfered

with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006) (emphasis added); *Wadley v. Park at Landmark, LP*, No. 1:06CV777(JCC), 2007 WL 201085, at *4 (E.D. Va. Jan. 24, 2007), *aff'd*, 264 F. App'x 279 (4th Cir. 2008) (citing *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006) and entering summary judgment against § 1981 claim because "Plaintiff has provided no credible evidence of intent to discriminate based on race."). It is well settled law that disparate impact claims are not available under § 1981. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination.") (holding that a disparate impact claim is not available under § 1981); *Bennett v. Nucor Corp.*, 656 F.3d 802, 817 (8th Cir. 2011) ("A showing of disparate impact through a neutral practice is insufficient to prove a violation of § 1981."); *Taylor v. Millennium Corp.*, No. 1:15-CV-1046, 2016 WL 927185, at *9 (E.D. Va. Mar. 4, 2016) ("Disparate impact claims are thus inherently not based on purposeful discrimination. Accordingly, a disparate impact claim is not viable under § 1981."). Therefore, the Complaint must allege facts that show intentional discrimination in order to state a viable claim under Section 1981.

The Complaint does not allege that the policy intentionally targeted Latinos. The policy is neutral on its face. Plaintiffs do not allege that the policy was only applied to them or only to Latinos in general. Instead of alleging intentional discrimination by Defendants, Plaintiffs spend a significant portion of their Complaint attempting to establish the alleged disparate impact of this neutral policy. *See* Compl. ¶¶ 55-63. Plaintiffs' only allegations regarding Defendants' intent are conclusory. *See* Compl. ¶¶ 7, 132-137.[3] Plaintiffs are attempting to shoehorn in a

---

[3] Tellingly, Plaintiffs allegations under their § 1981 claim make no reference to Defendants' intent. *See* Compl. ¶¶ 132-37.

disparate impact theory into a claim under 42 U.S.C. § 1981 even though allegations of intentional discrimination are required to survive a motion to dismiss. *See Wadley v. Park at Landmark, LP*, 2007 WL 201085, at *4; *see Bennett*, 656 F.3d at 817.

Accordingly, Plaintiffs fail to state a claim for intentional discrimination under 42 U.S.C. § 1981.

### C. Plaintiffs Do Not Allege Any Circumstantial Evidence of Intentional Discrimination

Plaintiffs do not allege any facts to support even a circumstantial inference that the policy was enacted to purposefully discriminate. Absent direct evidence of intentional discrimination, a Court can evaluate allegations to determine if there is sufficient circumstantial evidence of discrimination "sufficient to satisfy the familiar *McDonnell Douglas* framework for proof." *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001). Although "circumstantial and direct evidence of intent" can sometimes support an inference of intentional discrimination, intentional discrimination is not created by pointing to a policy's disparate effects. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Under the familiar *McDonnell Douglas* framework, "the plaintiff must first establish a prima facie case of discrimination. Once the plaintiff establishes a prima facie case, the defendant must respond with evidence that it acted with a legitimate, nondiscriminatory reason. If the defendant makes this showing, the plaintiff must then present evidence to prove that the defendant's articulated reason was pretext for unlawful discrimination." *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d at 257 (citations omitted). "Although the evidentiary burdens shift back and forth under the McDonnell Douglas framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981)).

Plaintiffs do not allege any direct evidence of discrimination. Likewise, Plaintiffs do not make any allegations that provide circumstantial evidence of discrimination. Thus, they have not alleged a "prima facie case of discrimination."  Further, Plaintiffs' allegations demonstrate that the purpose for the Policy – criminal background and credit checks – serves a legitimate purpose. Plaintiffs do not allege that the Policy is a "pretext" for unlawful discrimination.  In fact, as to the four male Plaintiffs – Latinos lawfully in the United States - the Policy had no effect on their ability to execute the leases attached to the Complaint.  The crux of the allegations in the 150 paragraphs in the Complaint is the alleged disparate impact on Latinos because they allegedly make up the majority of undocumented aliens in the United States, Virginia and Fairfax County. The Plaintiffs here cannot allege circumstantial evidence of discrimination by solely alleging disparate effects.  *See Vill. of Arlington Heights*, 429 U.S. at 266. Accordingly, count IV must be dismissed.

**D.     Plaintiffs' Construction of § 1981 is Inconsistent With Federal Immigration Law**

Even if Section 1981 had covered illegal immigrants prior to 1986 when the Immigration Reform and Control Act was passed, construing Section 1981 as protecting illegal immigrants would be inconsistent with current federal immigration law. *See* 8 U.S.C. § 1324, *et seq*. ("IRCA").  Federal immigration law does not permit the harboring of illegal aliens. 8 U.S.C. § 1324(a)(1)(A)(iii). The Fourth Circuit has interpreted 8 U.S.C. § 1324(a)(1)(A)(iii) broadly finding that a landlord can be convicted of violating § 1324 if they act with reckless disregard of an individual's status as an illegal immigrant. *See United States v. Aguilar*, 477 F. App'x 1000, 1002 (4th Cir. 2012) ("Circumstantial evidence alone can establish a defendant's knowledge or reckless disregard that the people harbored are illegally in the country."). Accordingly, to

construe illegal immigrants as a protected class under § 1981 would put § 1981 at odds with federal immigration law.[4]

## IV.   An Agent Cannot Tortuously Interfere With The Principal's Contract While Acting Within the Scope of its Employment

Plaintiff's Count VI alleges that Defendant Dwoskin & Associates, Inc. tortuously interfered with the Lease Agreements between Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership and Plaintiffs. Compl. ¶ 148. However, as a matter of Virginia law, neither a party nor the party's agent can tortuously interfere with its own contract. *Fox v. Deese*, 362 S.E. 2d 699, 708 (Va. 1987).

Virginia common law recognizes a cause of action for tortious interference with contract rights or business expectancies.   *See Chaves v. Johnson*, 335 S.E. 2d 97 (Va. 1985).   The necessary elements to establish a prima facie case are:

> (1) the existence of a valid contractual relationship or business expectancy;
>
> (2) knowledge of the relationship or expectancy on the part of the interferor;
>
> (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and
>
> (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E. 2d 313, 318 (Va. 2014) (quoting *Chaves*, 335 S.3d 2d at 102) (internal quotation marks and additional citations omitted).

Under Virginia law it is well-settled that "'[a] person cannot intentionally interfere with his own contract' and, therefore, an agent acting within the scope of its agency cannot interfere with the contract of its principal." *Livia Properties, LLC v. Jones Lang LaSalle Americas, Inc.*, No. CIV.A. 5:14-00053, 2015 WL 4711585, at *6 (W.D. Va. Aug. 7, 2015), *aff'd sub nom. Livia*

---

[4] Likewise, adopting illegal aliens as a protected class under the FHA and the VFHL would put those statutes at odds with federal immigration law. *See supra*.

*Properties, II, LLC v. Jones Lang LaSalle Americas, Inc.*, No. 15-1996, 2016 WL 1622324 (4th

Cir. Apr. 25, 2016) (citing *Fox v. Deese*, 362 S.E. 2d 699, 708 (Va. 1987).

An agent may only be held liable for tortious interference with the contact of its principal

if the agent acts outside of the scope of her employment to tortiously interfere with the contract.

*See Fox*, 362 S.E.2d at 708; *see also Wenzel v. Knight*, No. 3:14–cv–432, 2015 WL 3466863, *8

(E.D. Va. June 1, 2015) (dismissing tortious interference claim where plaintiff failed to plead

facts showing that any agents acted outside the scope of their employment or agency

relationships with the principal); *Smith v. Purnell*, No. 1:11cv922, 2011 WL 6140868, *7 (E.D.

Va. Dec. 9, 2011) (noting that "*Fox* establishes a general principal-agent rule" that an agent

cannot be liable for tortious interference with a contract of which his principal was a party); *Neil

v. Wells Fargo Bank N/A*, Civil Action No. 1:13–cv–644, 2013 WL 4782030, *2 (E.D. Va. Sept.

4, 2013) (dismissing tortious interference with contract claim because "Wells Fargo serviced the

loan as an agent of the lender and acted within the scope of its agency when processing Plaintiffs'

request for a loan modification. Therefore, as an agent of the lender, Wells Fargo cannot interfere

with the relationship between the lender and borrower."), *vacated and remanded on other

grounds*, 596 F. App'x 194 (4th Cir. 2014); *Michigan Mutual Ins. Co. v. Smoot*, 128 F. Supp. 2d

917, 925 (E.D. Va. 2000) (dismissing tortious interference with contract claim because "*Fox v.

Deese* states the rule that an agent cannot as a matter of law interfere with his principal's contract

.... *Fox* establishes a general principal-agent rule. Because the Attorneys were in a principal-

agent relationship with the Worker, a claim of tortious interference with contract will not lie.");

*Brown v. Loudoun Golf and Country Club, Inc.*, 573 F. Supp. 399, 404 (E.D. Va. 1983) ("[O]nly

a third-party to the contract can be held liable for intentional interference. As to the Club, Bogle

was a not a third-party; he was acting as the Club's agent. The Court accordingly dismisses the intentional interference with contract claim.").

Plaintiffs allege that Dwoskin "signed the lease agreements in its capacity as agent for [Waples]" Compl. ¶ 145. Indeed, Plaintiffs admit in their allegations that "[t]hrough its management of the Park, Defendant Dwoskin & Associates and its employees serve as agents on behalf of Defendants Waples L.P. and Waples Project L.P." Compl. ¶ 23. The Lease agreements incorporated into Plaintiffs' Complaint, *see* Compl. Exs. B-E, all acknowledge on their very first page that Dwoskin is signing the Lease agreements as agent for Waples.[5]  Plaintiffs cannot and do not allege that Dwoskin was acting outside the scope of its employment in signing the Lease agreements or managing the park.  Accordingly, Plaintiffs' tortious interference claim must fail as a matter of law. *See Wenzel v. Knight*, 2015 WL 3466863, *8.

## CONCLUSION

For the reasons set forth above, Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A. J. Dwoskin & Associates, Inc. respectfully request this Court to dismiss Counts I, II, IV, and VI of Plaintiff's Complaint with prejudice and for such other relief as is just and proper.

Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT LIMITED
PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place

---

[5] The Court may consider documents attached to the Complaint as exhibits at the motion to dismiss stage. *See Field v. Berman,* 526 Fed. App'x. 289.

Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June, 2016, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
_____

Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
mdingman@reedsmith.com
jdebettencourt@reedsmith.com