IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

ROSY GIRON DE REYES, *et al.*,

          Plaintiffs,

v.

WAPLES MOBILE HOME PARK
LIMITED PARTNERSHIP, *et al.*,

          Defendants.

Civil No.:  1:16cv563-TSE-TCB

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO COMPEL

Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited

Partnership, and A. J. Dwoskin & Associates, Inc. (collectively "Defendants"), by counsel, and

pursuant to Federal Rules of Civil Procedure 26 and 37, submit this memorandum of points and

authorities in support of Defendants' Motion to Compel.  Defendants' respectfully request this

Court to compel Plaintiffs to produce the requested documents and answers.

## INTRODUCTION

Defendants served discovery requests on Plaintiffs seeking discovery regarding 1) ITIN

documents; 2) Passports, Visas and I-94 Forms; and 3) documents and information regarding the

female plaintiffs' immigration status. These discovery requests seek documents and information

that relate to the broad allegations in Plaintiffs' lengthy Complaint and the defenses that

Defendants will raise to Plaintiffs' allegations. In addition, Plaintiffs have provided non-

responsive answers to certain of Defendants' Requests for Admission by using qualified

language so that Plaintiffs may avoid admitting each Request.

Plaintiffs have alleged that Defendants have a policy in place at the Waples Mobile Home Park (the "Park"). Compl. ¶ 31. Under Plaintiffs' allegations, Defendants require every individual who lives at the Park or intends to live at the Park to present either 1) an original Social Security card or 2) an original Passport, original U.S. Visa, and original I-94 Form (the "Policy"). Compl. ¶ 26. [1] Plaintiffs allege that this Policy serves no purpose other than to illegally exclude undocumented immigrants from the Park because undocumented immigrants cannot provide the required documents. *Id.* ¶ 39. One of Defendants' primary defenses is that it is the female plaintiffs' status as undocumented aliens that causes them to be unable to comply with the Policy.

Four of the eight Plaintiffs, the male plaintiffs, Messrs. Reyes, Bolanos, Yrapura and Saravia, are Latino, allege legal status in the United States, complied with the landlord's policy and entered into leases. The remaining four plaintiffs who allege that they cannot comply with the policy, the male plaintiffs' wives, Mrs. Reyes, Ms. Rivas, Ms. Jaldin, and Ms. Amaya, are distinguishable from the other four Plaintiffs by the fact that they are ▬▬▬▬▬▬ ▬▬▬▬▬ in the United States illegally. Yet, they continue to contend that their illegal status in the United States is not the cause of their inability to comply with the Policy.

Plaintiffs allege that some Defendants offered to provide an Individual Taxpayer Identification Number instead of the required documents. *Id.* ¶ 30. Plaintiffs also allege that an Individual Taxpayer Identification Number ("ITIN") is a sufficient substitute to the documentation requested under the policy because "[a]s a form of identification, the ITIN is *as reliable and precise as a Social Security number.*" *Id.* ¶ 31 (emphasis added). Furthermore, Plaintiffs allege exactly what must be submitted to acquire an ITIN – tax returns and identity

---

[1] According to Plaintiffs' allegations, an I-94 Form is an Arrival/Departure Form. Compl. ¶ 27.

information – and allege that the IRS strictly enforces the requirement that identity documentation match the tax return information submitted to acquire an ITIN. *Id.*

In order to test these very allegations, Defendants have asked for documents Plaintiffs submitted to acquire an ITIN and documents that reference Plaintiffs' ITINs in order to determine if Plaintiffs submitted the correct documents and if an ITIN indeed is as reliable and precise as a Social Security number. As discussed below, a government publication has suggested that ITINs are not as reliable as Plaintiffs allege.

Furthermore, Plaintiffs allege that it would be futile for the female plaintiffs to attempt to comply with the Policy. Compl. ¶¶ 75, 86, 98, 108. As noted above, one of Defendants' defenses to Plaintiffs' claims is that it is the female plaintiffs' status as illegal immigrants that creates an issue with Defendants' Policy – it is not because Defendants are discriminating against Plaintiffs on the basis of race and/or citizenship. Defendants are entitled to discover why it would have been futile for the female plaintiffs to comply and whether it would have been futile because the female plaintiffs could never have acquired – or never had – the required documentation.

As a result, Defendants have asked for the original Passports in possession of Plaintiffs during the time from when they applied to live at the Park through their tenancy at the Park. Defendants have also asked for all U.S. Visas and I-94 Forms the female plaintiffs have ever possessed to determine why it would have been futile for the female plaintiffs to comply with the Policy.

Moreover, Defendants have asked for documents and information regarding the female plaintiffs' immigration status. Defendants have asked for this information and the U.S. Visas and I-94 Forms because Defendants are entitled to discover the history of the female plaintiffs' status

- 3 -

as illegal immigrants. Defendants may discover that when the female plaintiffs lacked a Visa or lacked an I-94 Form or when the female plaintiffs have been undocumented in the past, the female plaintiffs had difficulty signing other leases or opening up bank accounts. This is powerful evidence that Defendants' Policy does not discriminate against Plaintiffs on the basis of their race or citizenship. Rather, the female plaintiffs' undocumented status causes the non-compliance with the Policy.

As outlined below, Defendants request the Court compel Plaintiffs to provide this information.

## PROCEDURAL HISTORY

Plaintiffs filed their Complaint on May 23, 2016, and alleged claims for violations of the federal Fair Housing Act (Count I), violation of the Virginia Fair Housing Law (Count II), violation of the Virginia Manufactured Home Lot Rental Act (Count III), violation of 42 U.S.C. § 1981 (Count IV), breach of contract (Count V), and tortious interference with contract (Count VI). (Dkt. 1.) On June 13, 2016, Defendants filed a Motion to Dismiss, seeking dismissal of Counts I, II, IV, and VI. (Dkt. 25.) At the same time, the parties agreed to a dismissal of Count VI. (Dkt. 30 at 1 n.1 and Dkt 34 (Order dismissing Count VI).) Defendants argued their partial Motion to Dismiss on July 22, 2016, and the Court denied Defendants' Motion to Dismiss on September 1, 2016. (Dkts. 56-57.)

Plaintiffs served their initial discovery requests on September 1, 2016. **Exhibit A.** Defendants served their objections on September 16, 2016. **Exhibit B.** Defendants have only attached the requests and objections for just one male plaintiff and one female plaintiff as the

discovery requests directed to all male plaintiffs and the objections thereto are the same and the discovery requests directed to all female plaintiffs and the objections thereto are the same.[2]

**ARGUMENT**

Defendants served requests and interrogatories on Plaintiffs seeking discovery regarding 1) ITIN documents; 2) Passports, Visas and I-94 Forms; and 3) documents and information regarding the female plaintiffs' immigration status.

As outlined below, Plaintiffs have improperly refused to produce the requested documents and information.

In addition, Plaintiffs provided non-responsive answers to Defendants' Requests for Admissions ("RFAs").

## I.   ITIN DOCUMENTS

Defendants served document requests ("RFPs") seeking information regarding ITIN documents. There are two groups of ITIN requests: 1) documents referencing the ITIN numbers used by the male and female plaintiffs. **Exhibit A** (RFPs 7 and 8); and 2) documents they submitted to acquire any ITIN Plaintiffs have used. **Exhibit A** (RFP 9). Plaintiffs are withholding the female plaintiffs' tax returns which are responsive to both requests. As it stands now, Plaintiffs refuse to produce redacted versions of these tax returns even though they are responsive to these requests.

### A.   Tax Returns Referencing ITIN Numbers Used (RFPs 7 and 8)

Defendants are seeking a redacted version of the female plaintiffs' tax returns which reference their ITIN numbers.

---

[2] During the meet and confer, the parties examined the requests and objections for Jose Dagoberto Reyes and Rosy Giron de Reyes. Therefore, Defendants have only attached these requests and the related objections.

Plaintiffs allege in their Complaint that Defendants could have asked for ITINs instead of an original passport, original Visa, and an I-94 Form. Compl. ¶¶ 31-39. In order to buttress Plaintiffs' allegations, Plaintiffs allege in Paragraph 31 of their Complaint that "*[a]s a form of identification, the ITIN is as reliable and precise as a Social Security number.*" Compl. ¶ 31 (emphasis added). Defendants have served RFPs 7 and 8 in order to test this assertion. Defendants want to know if Plaintiffs have used multiple ITINs. If Plaintiffs have multiple ITINs or have used multiple ITINs, then an ITIN is not as reliable or pecise as a Social Security number as a form of identification. According to a 2009 U.S. Treasury report, "[t]here are also no controls to prevent an ITIN from being used by more than one taxpayer on multiple tax returns." **Exhibit C** at 2.[3] The U.S. Code notes that ITINs issued after 2012 can expire after 3 years. 26 U.S.C. § 6109 ("An individual taxpayer identification number issued after December 31, 2012, shall remain in effect unless the individual to whom such number is issued does not file a return of tax (or is not included as a dependent on the return of tax of another taxpayer) for 3 consecutive taxable years."). Accordingly, it is relevant to Defendants' defense to Plaintiffs' allegations if Plaintiffs have used multiple ITINs.

Plaintiffs indicated that the only documents they possess and are withholding that reference the female plaintiffs' ITIN numbers are their tax returns. **Exhibit D.** Defendants are not interested in Plaintiffs' financial information on their tax returns and do not have an issue if Plaintiffs redact any financial information on their tax returns. Nonetheless, Defendants should

---

[3] Available at https://www.treasury.gov/tigta/auditreports/2010reports/201040005fr.html. As Judge Ellis noted in the Memorandum Opinion denying the Motion to Dismiss (Dkt. 56), the Court can take judicial notice of governmental publications because they are sources whose accuracy cannot reasonably be questioned. Mem. Op. Denying Mot. Dismiss (Dkt. 56) (taking judicial notice of Plaintiffs' allegations regarding facts in Government websites) (citing Fed. R. Evid. Rule 201(b)(2) and *Tellabs, Inc. v. Makor Issues & Rights. Ltd.*, 551 U.S. 308, 322 (2007)).

be permitted to view the ITINs and identifying information listed on the female plaintiffs' tax returns to see if they used different ITINs.

Accordingly, Defendants ask that the Court compel the disclosure of the female plaintiffs' tax returns which reference the ITINs used by the female plaintiffs.

**B.    Tax Returns Submitted to Acquire an ITIN**

Defendants also asked for documents submitted by Plaintiffs to acquire an ITIN they used. **Exhibit A** (RFP 9). Plaintiffs have indicated that they are withholding the tax return documents submitted to acquire an ITIN.

In Paragraph 31 of the Complaint, Plaintiffs allege that "[t]o obtain an ITIN, an individual must submit IRS Form W-7, and attach thereto (1) a copy of his or her tax return; and (2) proof of his or her identity." Compl. ¶ 31. Paragraph 31 goes on: "The IRS *strictly enforces the rigorous* Form W-7 proof of identity requirement, under which an applicant must present original or certified documentation *of the information entered on* Form W-7." *Id.* (emphasis added). Further, as noted above, Plaintiffs allege that an ITIN is as reliable and precise as a Social Security Number. Compl. ¶ 31. Defendants' RFP 9 seeks documents that will permit Defendants to defend against the allegations in Paragraph 31 to determine if Plaintiffs submitted the documents as alleged in Paragraph 31. For example, Defendants want to know if Plaintiffs submitted identity documents that matched the identity on their tax return as required. A comparison of such documents could corroborate Plaintiffs' claims as to the preciseness and reliability of the ITIN or it could undercut Plaintiffs' claims.

Plaintiffs object to providing their tax returns and only agree to provide copies of the "identity documents they used to obtain their ITIN". **Exhibit D** at 2; **Exhibit B** at Objection to RFP 9. Plaintiffs prohibit Defendants from testing and defending against the allegations in

Paragraph 31. The U.S. Treasury Department issued a report in 2009 which stated that "[t]hirty-five percent… of the [ITIN] application packages sampled that were submitted directly to the IRS by mail or through Taxpayer Assistance Centers[] contained errors. The errors ranged from missing and illegible documents to *inconsistencies between the Forms W-7 and the supporting documents.*" **Exhibit C** at 2 (emphasis added). [4] Defendants want to determine if the allegations in Paragraph 31 are correct for Plaintiffs' ITIN submissions or if Plaintiffs' submissions contain the inconsistencies noted in the U.S. Treasury report. Of course, Plaintiffs may redact all financial information in their tax returns as Defendants do not seek that information.

Accordingly Defendants ask the Court compel Plaintiffs to produce the tax return documents the female plaintiffs submitted to acquire an ITIN – not just the identity documents Plaintiffs offered to produce.

## II.    PASSPORTS, VISAS, AND I-94 FORMS

Defendants have asked for all original passports Plaintiffs have ever possessed (RFP 11), all original U.S. Visas Plaintiffs have possessed (RFP 12), and all I-94 Forms Plaintiffs have ever possessed (RFP 13). Defendants have modified their request for all original passports by only requesting the passports Plaintiffs possessed in the relevant time frame – from when Plaintiffs applied to live at the Park through their tenancy at the Park. **Exhibit D** at 2. Defendants, however, still request that Plaintiffs produce all original Visas and I-94 Forms that the female plaintiffs have ever possessed because the female plaintiffs could not comply with the Policy. Plaintiffs have offered to provide only the passports, visas and I-94 forms that Plaintiffs possessed since they or their husbands applied to lease a lot at the Park *if they are valid.* **Exhibit D** at 2; **Exhibit B** at Objections to RFPs 11, 12, and 13.

---

[4] Available at https://www.treasury.gov/tigta/auditreports/2010reports/201040005fr.html.

As alleged by Plaintiffs, Defendants' Policy requires that everyone living at the Park present an original Passport, original U.S. Visa, and original I-94 Form. Compl. ¶ 26. Plaintiffs have claimed that enforcement of the Policy constitutes discrimination against undocumented immigrants. *Id.* ¶ 39. Plaintiffs allege that this Policy is discriminatory because undocumented immigrants cannot provide the required documentation. *See id.* ¶ 40. As for the female plaintiffs, Plaintiffs allege that the female plaintiffs could not comply with the Policy. *Id.* ¶ 75 (Ms. Reyes offered an ITIN, a criminal background report, and a copy of her passport); *Id.* ¶ 86 ("Had Ms. Rivas herself attempted to enter into an agreement to renew the lease with Defendants, her effort would have been futile because her application would have been refused on account of the Policy."); *Id.* ¶ 98 (Ms. Jaldin's efforts likewise would have been futile); *Id.* ¶ 108 (Ms. Amaya's efforts would have been futile). Accordingly, Defendants seek the passports in the female plaintiff's possession in the relevant time frame (whether valid or expired) and all Visas and I-94 forms the female plaintiffs have ever possessed. Defendants are entitled to see why the female plaintiffs' efforts to comply with the Policy would have been futile as Plaintiffs have alleged. Defendants are not limited at the discovery stage to see only the Visas and I-94 Forms that were valid because Defendants are entitled to present evidence on why the female plaintiffs efforts would have been futile.

Plaintiffs will inevitably argue that Defendants only are entitled to the Visas and I-94 Forms that were valid in the relevant time frame. This argument fails. Plaintiffs have alleged that the Policy discriminates against undocumented immigrants. Compl. ¶ 39. Plaintiffs allege that this Policy is discriminatory because Latinos make up a majority of undocumented immigrants in Virginia, *see* Compl. ¶ 63, and the Policy discriminates against non-U.S. Citizens. Pls.' Opp. to Mot. Dismiss at 2 ("The Complaint alleges facts evidencing Defendants' intentional

discrimination against lease applicants and current tenants on the basis of their alienage and citizenship.").

Because Plaintiffs' claims have now survived a motion to dismiss, Defendants are now entitled to present evidence that the Policy is for non-discriminatory purposes, then Plaintiffs presumably will attempt to rebut that position by asserting that such evidence is pre-textual. *See Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001) (citing the *McDonnell-Douglas* framework). One of Defendants' primary defenses to these allegations is that it is the female plaintiffs' status as illegal immigrants that presents the problem with the Policy – not their race or lack of U.S. citizenship.[5] Defendants are entitled to examine the documented status of the female plaintiffs in the past to determine if their undocumented status has affected their ability to sign leases in the past or to open bank accounts or to engage in other activities. If the female plaintiffs' undocumented status has kept them from signing leases in the past or opening bank accounts in the past, this is powerful evidence that Defendants' Policy does not discriminate against Plaintiffs on account of their race or citizenship.

Plaintiffs have asserted that one can come to the U.S. legally and then become undocumented, for example, if a person overstays their Visa; therefore, Defendants are not entitled to a Visa or I-94 Form that is from Plaintiffs' past. Defendants, however, are entitled to discovery on whether the female plaintiffs had any trouble signing leases or opening up bank accounts or engaging in other activities when they had a valid Visa or I-94 Form – if they did ever possess these documents. Such evidence would be powerful evidence that Defendants' Policy is non-discriminatory. Moreover, such evidence would be powerful evidence to rebut

---

[5] Indeed, as Judge Ellis recognized in the Memorandum Opinion denying Defendants' Motion to Dismiss (Dkt. 56), discrimination only against illegal aliens on their status as illegal aliens is permissible. Mem. Op. Denying Defs.' Mot. Dismiss at 21 n. 18 (Dkt. 56).

Plaintiffs' claims of pretext because it would show that it is the female plaintiffs' status as undocumented immigrants that prevents them from complying with the Policy.

## III.  PLAINTIFFS' IMMIGRATION STATUS

Along the same lines, Defendants have also requested discovery referencing the female plaintiffs' immigration status. *See* **Exhibit A**:

> Female Plaintiffs
> **RFP 14** – All documents sent to or received from any U.S. or state government referencing your immigration status in the United States.
> **RFP 16** – Any documents referencing when and where you entered the United States.
> **ROG 11** - State when, where, and how you entered the United States, including without limitation, whether you entered the United States legally.
> **RFA 12** – Admit that your husband entered the United States legally.
>
> Male Plaintiffs
> **RFP 15** – All documents sent to or received from any U.S. or state government referencing your wife's immigration status in the United States.
> **RFP 17** - Any documents referencing when and where your wife entered the United States.
> **ROG 11** - State when, where, and how your wife entered the United States, including without limitation, whether she entered the United States legally.
> **RFA 12** – Admit that you entered the United States legally.
> **RFA 13** – Admit that your wife entered the United States illegally.

In response to these document requests, Plaintiffs object to producing all documents sent to or received from any US or state government referencing the female plaintiffs' immigration status but agree to provide any passports, US visa or I-94s, if any, at any time during their tenancy at the Park or currently. *See* **Exhibit B** at Objections to RFPs 14 (female plaintiffs) 15 (male plaintiffs).  Regarding the Interrogatories and Requests for Admission cited above, Plaintiffs object to producing responses to the requests that ask for information on the female plaintiffs' legal or illegal entrance to the United States because Plaintiffs contend that such information is not relevant.

Plaintiffs have alleged that it would be futile for the female plaintiffs to attempt to comply with the Policy. Compl. ¶¶ 75, 86, 98, 108. As noted above, one of Defendants' defenses to Plaintiffs' claims is that it is the female plaintiffs' status as illegal immigrants that creates an issue with Defendants' Policy, it is not because Defendants are discriminating against Plaintiffs on the basis of race and/or citizenship. Defendants are entitled to discover why it would have been futile for the female plaintiffs to comply and whether it would have been futile because the female plaintiffs could never have acquired the required documentation. Discovery on whether the female plaintiffs have sent/received any correspondence to state or federal governments confirming their status as undocumented (or documented) immigrants helps Defendants answer that very question.[6]

Moreover, documents sent between the state or federal governments and the Plaintiffs referencing the female plaintiffs' immigration status may indicate whether the Plaintiffs have had trouble signing leases, opening bank accounts, or engaging in other activities due to the female plaintiffs' illegal status. Such information is relevant to Defendants' primary defense to Plaintiffs' allegations – that it is the female plaintiffs' status as illegal aliens that creates their problem with the Policy. If the female plaintiffs entered the United States illegally, it is relevant to whether the female plaintiffs could ever have acquired the documentation required by the Policy.

Plaintiffs may argue that because a person can move in and out of undocumented status – one can enter legally and become undocumented and one can enter illegally and become documented – that the female plaintiffs' previous status and entry to the United States has no

---

[6] To the extent Plaintiffs assert that it is unduly burdensome to collect "all" such documents sought by Defendants' document requests, Defendants cannot imagine that there are many documents, if any, that reference the female plaintiffs' immigration status nor many documents referencing when and where the female plaintiffs entered the United States.

relevance on whether they can comply with the Policy. This argument fails. As noted above, Defendants are entitled to discover if the female plaintiffs could have ever complied with the Policy. Further, Defendants are entitled to discover whether the female plaintiffs have been able to sign leases, open bank accounts or engage in other activities in the past to demonstrate whether it is indeed the female plaintiffs' status as illegal aliens that affects the female plaintiffs' ability to comply with the Policy.

Accordingly, Defendants seek the Court to compel Plaintiffs to produce the requested discovery regarding the female plaintiffs' immigration status.

## IV.    NON-RESPONSIVE RFA ANSWERS

Plaintiffs also provide non-responsive denials that do not fairly respond to the substance of Defendants' Requests for Admission ("RFAs"). Pursuant to Fed R. Civ. P. 36(a)(4), "[a] denial must fairly respond to the substance of the matter." Plaintiffs provide non-responsive denials to RFAs directed to Plaintiffs that inquire about **A)** Plaintiffs' compliance or non-compliance with the Policy and **B)** Plaintiffs' claims of discrimination on the basis of race and citizenship. Because these RFAs are directed at the heart of Plaintiffs' claims, Plaintiffs attempt to avoid answering the RFAs through their non-responsive answers.

### A.    RFAs Regarding Compliance With The Policy

Plaintiffs provide non-responsive denials in response to RFAs designed to inquire about the reason for Plaintiffs' compliance or non-compliance with the Policy. **Exhibit E** (female plaintiff RFAs 2-3, 6 and male plaintiff RFAs 1, 6).

> Female Plaintiff RFAs
> **RFA 2** – Admit that you were not able to comply with the Policy because you are not in the United States legally.
> **RFA 3** – Admit that you were not able to enter into Rental Agreements to rent a Lot at the Park because you are not in the United States legally.

- 13 -

**RFA 6** – Admit that the only reason you cannot enter into a Rental Agreement now is because you cannot produce documentation that you have legally entered the United States.

**RFA 14** - Admit that your husband was able to comply with the Policy because he is in the United States legally.

Male Plaintiff RFAs

**RFA 1** – Admit that you were able to comply with the Policy.

**RFA 6** – Admit that the only reason you cannot enter into a Rental Agreement now is because your wife cannot produce documentation that she has legally entered the United States.

**RFA 15** - Admit that your wife is not able to acquire any form of valid government-issued proof that she is legally present in the United States.

In response to each RFA, Plaintiffs provide a qualified answer that twists the language of the actual RFAs in order to avoid admitting the relevant RFAs. *See* **Exhibit E**. For example, in response to the female plaintiffs' RFA 2 and 3, the female plaintiffs deny the request because

███████████████████████████████████████████████████

██████████ *Id.* Likewise, in response to RFA 6, the female plaintiffs deny the RFA only because

Plaintiffs twist the actual language in the RFA. *Id.* They deny the RFA because Plaintiffs state

that the documents required by the Policy ███████████████████████████████

██████████ *Id.*[7]

These RFAs are designed to inquire about the heart of Plaintiffs' claims and Defendants' primary defense to Plaintiffs' claims – that it is the female plaintiffs' status as illegal immigrants that creates their problem with the Policy. Because the female plaintiffs now ████████████

█████████████████████████ *see* **Exhibit E** at female plaintiffs' Response to RFA 1, and

███████████████████████████ *see* **Exhibit E** at female plaintiffs'

Responses to RFAs 9-11, the female plaintiffs can only deny RFAs 2 and 3 based on their

---

[7] Similarly, the male Plaintiffs deny RFA 6 by twisting the words of the RFA and adding the "proxy" qualifier to the RFA. **Exhibit E.**

- 14 -

qualified language. Plaintiffs should not be permitted to avoid admitting factual requests by inserting legal argument into their responses.

In response to RFA 14 to the female plaintiffs, the female plaintiffs deny the RFA because the female plaintiffs ████████████ with their husbands, and therefore their husbands could not comply with the Policy. **Exhibit E**. This qualifying language permits Plaintiffs to avoid answering the RFA based on their decision of who "necessarily" lives with the male plaintiffs. Under such a construction, the male Plaintiffs get to decide who "necessarily" lives with him to avoid answering the RFA.

Likewise, in response to RFA 15, the Plaintiffs engage in similar gamesmanship. The male plaintiffs deny that their wives are ████████████████████████████ ████████████████████████████ because the female plaintiffs may obtain possible immigration relief in the future. Plaintiffs should not be able to qualify their denial to this RFA on the basis of a hypothetical event in the future. In essence, Plaintiffs are gaming the meaning of "is". Defendants' RFA 15 to the male Plaintiffs does not ask if the female plaintiffs may be able to acquire proof that they are here legally in the future – it asks if they presently are able to acquire that proof. Plaintiffs' qualified answer avoids directly answering this RFA.

As discussed above, gamesmanship with responses to Requests for Admission should not be countenanced and the Plaintiffs should be compelled to answer the Requests for Admission without adding qualifiers which twist the actual words of the Requests.

**B.    RFAs Regarding Disparate Treatment or Intentional Discrimination**

Likewise, Plaintiffs provide non-responsive denials in response to RFAs designed to inquire about Plaintiffs' claims of discrimination on the basis of race and citizenship. **Exhibit E** (female and male plaintiffs RFAs 4-5).

> Female and Male Plaintiffs
> **RFA 4** – Admit that you were never denied the right to enter into a Rental Agreement to rent a Lot at the Park because you are Latino.
> **RFA 5** – Admit that you were never denied the right to enter into a Rental Agreement for a Lot at the Park because you are not a citizen of the United States.

In response to each RFA, Plaintiffs deny the RFA and state that it is denied ███████████

████████████████████████████████████████████████████████████

their leases. **Exhibit E** (emphasis added).

First, such a qualified denial is completely non-responsive to the RFA 5, which asks about discrimination on the basis of citizenship, because the qualified response does not discuss citizenship at all. Plaintiffs have based their 42 U.S.C. § 1981 claim on their standing as non-citizens. Opp. to Mot. Dismiss at 24 ("…the Section 1981 claim is based on the fact that none of the Plaintiffs are U.S. citizens.") (Dkt. 29). Yet, Plaintiffs deny RFA 5 only on the basis of their qualified language discussing race.

Second, these qualified responses permit the Plaintiffs to avoid admitting the RFAs. In his Memorandum Opinion denying Defendants' Motion to Dismiss (Dkt. 56), Judge Ellis permitted Plaintiffs' claims to survive on the grounds of disparate treatment discrimination or intentional discrimination, not the disparate impact felt by Plaintiffs as the result of a neutral policy. Mem. Op. Denying Mot. Dismiss at 18 (Dkt. 56) (noting Plaintiffs must prove, in part, that the Policy discriminates "because of" race or citizenship). Yet, Plaintiffs only allege a disparate impact claim and Plaintiffs admit to only alleged a disparate impact claim. *See* Compl.

¶ 114. ("Defendants' acts, policies and practices inflict *disproportionate* harm on Latinos...") (emphasis added); Pls.' Opp. to Mot. Dismiss at 10 (Dkt. 29) ("Discrimination may occur either by disparate treatment or disparate impact... Here, *Plaintiffs bring a claim for discrimination by disparate impact.*") (citations omitted) (emphasis added).

These RFAs are designed to have Plaintiffs squarely admit (or deny) what they already stated in their brief opposing Defendants' Motion to Dismiss – Plaintiffs must admit that they have not been subject to discrimination "because" of their race or citizenship. **Exhibit E** (RFAs 4 and 5). Plaintiffs, however, know that such an admission will hurt their case because Judge Ellis has permitted their claims to survive only on the basis of disparate treatment/intentional discrimination. Consequently, Plaintiffs deny these RFAs only on the basis of their qualifying language about disparate impact in order to avoid answering them as to discrimination "because" of their race and/or citizenship. As noted above, such gamesmanship with responses to Requests for Admission should not be countenanced and the Plaintiffs should be compelled to answer the Requests for Admission

## CONCLUSION

For the reasons set forth above, Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A. J. Dwoskin & Associates, Inc. respectfully request this Court to compel the production of documents and responses requested by Defendants.

Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT LIMITED
PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
_____
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of October, 2016, I caused the foregoing to be filed

electronically with the Clerk of the Court using CM/ECF, which will then send a notification of

such filing to all counsel of record.

/s/_____

Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
mdingman@reedsmith.com
jdebettencourt@reedsmith.com