# EXHIBIT C

Case 1:16-cv-00563-PTG-WBP Document 71-5 Filed 10/14/16 Page 1 of 14 PageID# 657

# TREASURY INSPECTOR GENERAL FOR TAX ADMINISTRATION

## Individual Taxpayer Identification Numbers Are Being Issued Without Sufficient Supporting Documentation

December 8, 2009

Reference Number: 2010-40-005

This report has cleared the Treasury Inspector General for Tax Administration disclosure review process and information determined to be restricted from public release has been redacted from this document.

<u>Redaction Legend</u>:

1 = Tax Return/Return Information

Phone Number | 202-622-6500
Email Address | inquiries@tigta.treas.gov
Web Site | http://www.tigta.gov

December 8, 2009

**MEMORANDUM FOR** COMMISSIONER, WAGE AND INVESTMENT DIVISION

**FROM:** *(for)* Michael R. Phillips /s/ Nancy A. Nakamura
Deputy Inspector General for Audit

**SUBJECT:** Final Audit Report – Individual Taxpayer Identification Numbers Are Being Issued Without Sufficient Supporting Documentation (Audit # 200940006)

This report presents the results of our review to determine whether Individual Taxpayer Identification Numbers (ITIN) were being issued without sufficient supporting documentation. The overall objective of this review was to determine whether Applications for IRS Individual Taxpayer Identification Number (Form W–7) were efficiently and effectively processed and ITINs were appropriately issued. This audit was part of the Treasury Inspector General for Tax Administration's Fiscal Year 2008 Annual Audit Plan under the major management challenge of Providing Quality Taxpayer Service Operations.

## Impact on the Taxpayer

The purpose of the ITIN is to provide alien individuals, whether or not they reside in the United States, an identifying number for use in connection with United States tax return filing requirements. The volume of ITINs is growing. When Forms W-7 are not effectively processed and ITINs are inappropriately issued, the risk increases that ITINs are being used to file fraudulent tax returns. Inadequate processing of ITIN

application packages increases the risk to both the taxpaying public and the Federal Government for potential losses associated with ITIN applicants.

## *Synopsis*

The ITIN was created to provide individuals who are not eligible to obtain a Social Security Number with an identification number for tax purposes. The Internal Revenue Service (IRS) issues ITINs to help individuals comply with Federal tax laws and provide a means to efficiently process and account for tax returns. Only individuals who have a valid filing requirement or are filing a tax return to claim a refund of over-withheld

taxes are eligible to receive an ITIN. Individuals submit Forms W-7 through Acceptance Agents[1] or by submitting them directly to the IRS.

ITINs were issued without sufficient supporting documentation. A statistical sample of 658 Forms W-7 selected from 1.5 million application packages (cases) submitted from January 1 through November 21, 2008, showed that 510 cases (78 percent) contained errors. The highest error rate (87 percent) was in applications

submitted through Certified Acceptance Agents.[2] This includes instances in which the Agents did not provide the documents required to support the Forms W-7 submitted by them to the Treasury Inspector General for Tax Administration. However, there was also a significant error rate (35 percent) in application packages submitted directly to the IRS.

A Certified Acceptance Agent is authorized under an agreement with the IRS to submit a Form W-7 to the IRS on behalf of an ITIN applicant without furnishing supporting documentary evidence. Instead, in the certificates of accuracy, Agents certify to the IRS that they have reviewed the appropriate documentation evidencing the ITIN applicant's identity and alien status, and that they are maintaining a record of such documentation.

IRS employees process, but do not review, the applications submitted by Certified Acceptance Agents. They input the information from the Forms W-7 into the ITIN management information system called the Real-Time System. If all requirements are met, the ITIN is assigned systemically by the ITIN Real-Time System. Eighty-seven percent (467 of 535) of the sample of application packages submitted by Certified Acceptance Agents contained errors. For example, 1) cases did not contain the documents required to issue an ITIN, 2) Forms W-7 provided to us by the Certified Acceptance Agents did not agree with the original Forms W-7 that were sent to the IRS, 3) cases did not contain the required certificates of accuracy or the certificates were missing required information and/or signatures, or 4) the Certified Acceptance Agents did not comply with our request for copies of the application packages.

IRS employees review and process applications submitted directly to the IRS. Thirty-five percent (43 of 123) of the application packages sampled that were submitted directly to the IRS by mail or through Taxpayer

Assistance Centers[3] contained errors. The errors ranged from missing and illegible documents to inconsistencies between the Forms W-7 and the supporting documents.

Also, supporting documents are complex and guidelines are inconsistent. Inconsistent guidelines create confusion for taxpayers and Agents in attempting to comply with the proper preparation of a Form W-7 and determining the identification documents needed to support the issuance of an ITIN.

There are also no controls to prevent an ITIN from being used by more than one taxpayer on multiple tax returns. More than 60,000 ITINs were assigned and used on multiple tax returns processed in Calendar Year 2008. As with Social Security Numbers, ITINs are specific to individuals and should be issued to and used only by that individual.

****1**** In addition, more than 55,000 ITINs were used multiple times on approximately 102,000 tax returns with refunds totaling more than $202 million.

The Real-Time System contains inaccurate data and is insufficient to oversee the Program. The IRS states that the System provides a one-stop service for processing Forms W-7 and issuing ITINs. The System processes Forms W-7 in real-time and assigns the ITIN or creates reject or suspense Forms W-7

automatically. Nevertheless, the information does not accurately reflect what type of Agent submitted the Forms W-7 and does not accurately reflect the information captured on the Forms W-7.

Research on the Real-Time System for 547 cases in our statistical sample found that 270 records (49 percent) contained inaccurate information relating to what type of Agent submitted the application. The IRS does not know the volume of Forms W-7 that are submitted by Certified Acceptance Agents and, if not corrected, approximately 200 Certified Acceptance Agents may not be included in any compliance activity.

In addition, information reflected on 110 (20 percent) of the 547 Forms W-7 was not transcribed correctly to the Real-Time System. Transcription errors included incorrect identification documents, birth dates, codes/reasons for submitting the Forms W-7, names, and/or addresses.

## *Recommendations*

We recommended that the Commissioner, Wage and Investment Division, revise guidelines: 1) related to processing applications submitted by Certified Acceptance Agents to ensure that the Forms W-7 match the information on the certificates of accuracy before issuing ITINs and to ensure that any supporting documents submitted with the certificates of accuracy are reviewed with the same due diligence that is required for Forms W-7 submitted directly to the IRS by individual applicants; 2) related to processing applications submitted directly to the IRS to ensure that all information on the Forms W-7 is validated and consistent with supporting documentation; and 3) to ensure that the instructions for completing the Form W-7 and internal guidelines are consistent by clarifying who is required to complete a power of attorney, clarifying that prior versions of Form W-7 may be acceptable, and requiring that employees verify qualified applicants provide an entry date to the United States.

The Commissioner, Wage and Investment Division, should also 4) develop controls to prevent ITINs from being used on multiple tax returns, 5) ensure that the data on the Real-Time System are accurate, and 6) develop procedures and internal controls to monitor the Real-Time System to ensure that information entered is accurate.

## *Response*

IRS management agreed with five of our six recommendations. Concerning the first three recommendations, the IRS has taken steps to revise and update guidance and instructions to ensure consistency and will update current guidelines to ensure the information on the Form W-7 is validated and consistent. For Recommendations 5 and 6, the IRS, contingent on funding, will take corrective actions to update the Real-Time System and ensure the information entered is accurate.

The IRS disagreed with Recommendation 4, stating that tax returns submitted with a duplicate secondary/dependent ITIN are subject to compliance review after the return is processed and corrected as necessary. Management's complete response to the draft report is included in Appendix VIII.

## *Office of Audit Comment*

In its response, the IRS stated it was concerned with the weighting of the sample of Certified Acceptance Agent cases and that the sample was weighted based on one of our prior reports.[4] As such, it believes the results are not a true representation of the overall program. We do not agree. The reason we oversampled Certified Acceptance Agents was to increase the reliability of the results. It was based on a higher expected error rate as well as to account for Agents who may not provide the requested documents. Of the 535 Certified Acceptance Agents sampled, 102 (19 percent) did not respond. We believe the oversample was necessary and the overall representation of the ITIN Program is accurate.

The IRS pointed out that the Internal Revenue Code does not require parenthood to claim a dependent. We agree and modified the report to avoid the potential for any such inference.

Additionally, the IRS disagreed with the third outcome measure, stating the outcome measure was based on an incorrect calculation—that 318,017 should be 311,579 based on its calculation of (110/547) x 1,549,397. However, the IRS' calculation does not incorporate the weighting of the strata. The 318,017 taxpayers were calculated using 5 strata, and the errors were based on each stratum and then totaled. See Appendix IV for details.

Concerning Recommendation 4, the IRS stated that tax returns submitted with a duplicate secondary/dependent ITIN are subject to compliance review after the return is processed and corrected as necessary, similar to duplicate Social Security Numbers. However, this is not a 100 percent review and only a small number of ITIN tax returns are subject to audit and would be corrected. We believe controls should be developed during processing, before the tax refunds are issued. This is comparable to how the IRS ensures dependents are not claimed on more than one tax return. During the processing of electronic tax returns, the IRS will, with some exceptions, reject the second tax return submitted that used a duplicate Social Security Number.

Copies of this report are also being sent to the IRS managers affected by the report recommendations. Please contact me at (202) 622-6510 if you have questions or Michael E. McKenney, Assistant Inspector General for Audit (Returns Processing and Account Services), at (202) 622-5916.

## *Table of Contents*

Background

Results of Review

    Individual Taxpayer Identification Numbers Were Issued Without Sufficient Supporting Documentation

        Recommendations 1 through 3:

    The Same Individual Taxpayer Identification Numbers Are Being Used by More Than One Taxpayer on Multiple Tax Returns

        Recommendation 4:

    The Real-Time System Contains Inaccurate Data and Is Insufficient to Oversee the Program

        Recommendations 5 and 6:

**Appendices**

    Appendix I – Detailed Objective, Scope, and Methodology

    Appendix II – Major Contributors to This Report

    Appendix III – Report Distribution List

    Appendix IV – Outcome Measures

    Appendix V – Acceptable Documents When Applying for an Individual Taxpayer Identification Number

    Appendix VI – Errors Identified in Application Packages Categorized by Sample

    Appendix VII – Rules for Claiming the Child Tax Credit and the Additional Child Tax Credit

    Appendix VIII – Management's Response to the Draft Report

## Abbreviations

| | |
|---|---|
| *e-file(d), e-filing* | Electronically file(d); electronic filing |
| IRS | Internal Revenue Service |
| ITIN | Individual Taxpayer Identification Number |
| U.S. | United States |

## Background

The Individual Taxpayer Identification Number (ITIN) was created to provide individuals who are not eligible to obtain a Social Security Number with an identification number for tax purposes. The Internal Revenue Service (IRS) issues ITINs to help individuals comply with Federal tax laws and provide a means to efficiently process and account for tax returns. Only an individual who has a valid filing requirement or is filing a tax return to claim a refund of over-withheld tax is eligible to receive an ITIN. An ITIN is issued regardless of an individual's immigration status. The issuance of an ITIN does ***not***:

- Change an individual's immigration status.
- Entitle the individual to Social Security benefits.
- Entitle the individual to work in the United States (U.S.).
- Entitle the individual to the Earned Income Tax Credit.

**Only U.S. citizens and alien individuals legally admitted to the U.S. for permanent residence are allowed to obtain Social Security Numbers.**

In general, the Social Security Administration limits its assignment of Social Security Numbers to individuals who are U.S. citizens and alien individuals legally admitted to the U.S. for permanent residence or under other immigration categories authorizing U.S. employment. Consequently, individuals who do not meet these criteria cannot obtain a Social Security Number.

Individuals who are unable to obtain Social Security Numbers but have tax return filing requirements can be either resident or nonresident aliens. The ITIN is available to individuals who are required to have a taxpayer identification number for tax purposes but do not have and are not eligible to obtain a Social Security Number. The distinction between a resident and nonresident alien is important because each is taxed differently. Resident aliens must follow the same tax laws as U.S. citizens. Specifically, income from all sources, both within and outside the U.S., is taxed and the same tax forms used by U.S. citizens are required to be filed. Nonresident aliens must file a tax return only if they are engaged in a trade or business in the U.S., or if they have any other U.S. sources of income on which the tax was not fully paid by the amount withheld.

The ITINs are not valid identification outside the tax system. The IRS began processing Applications for IRS Individual Taxpayer Identification Number (Form W-7) in July 1996 and estimates that, as of December 2008, it has issued more than 14 million ITINs. Individuals apply for an ITIN by completing a Form W-7 and using one of the following methods:

1. **Submitting Form W-7 through an IRS-approved Acceptance Agent**. An Acceptance Agent is a person (an individual or an entity) who, pursuant to a written agreement with the IRS, is authorized to

assist alien individuals and other foreign persons (who are ineligible to receive a Social Security Number) in obtaining an ITIN from the IRS. The Acceptance Agent reviews the necessary documents and forwards the completed Form W-7 and supporting documents to the IRS.

2. **Submitting Form W-7 through an IRS-approved Certified Acceptance Agent**. A Certified Acceptance Agent is authorized to certify whether the documented proof is adequate and is not required to send the supporting documentation to the IRS. The Certified Acceptance Agent reviews the applicant's documentation, completes a certificate of accuracy, and forwards the certificate and Form W-7 to the IRS for processing. The Certified Acceptance Agent is required to keep copies of the documents for 3 years.

3. **Applying directly to the IRS.**

*The Taxpayer Assistance Centers offer face-to-face assistance.*

The IRS provides service to millions of taxpayers yearly. Taxpayers have the option of obtaining personal, face-to-face tax assistance at 401 Taxpayer Assistance Centers nationwide. The IRS suggests taxpayers visit the Centers when they feel more comfortable talking with someone in person.

- An individual can mail the Form W-7 with documentation to substantiate information reported on the Form W-7 and a completed tax return to the IRS Austin Campus[5] ITIN unit for processing.

- An individual can submit the Form W-7 personally to an IRS local office called a Taxpayer Assistance Center[6] with a completed tax return and documentation to substantiate information reported on the Form W-7. Center employees review the Form W-7 for completeness and accuracy and practice due diligence when verifying the supporting documents. They also determine the need for a tax return or proof of prior filing with open ITIN issues. Center employees send the Form W-7 and copies of the supporting documents to the Austin Campus ITIN unit for processing.[7]

The IRS Austin, Texas, Campus processes all applications submitted by Agents and submitted directly to the IRS. Figure 1 shows the source of ITIN applications from January 1 through November 21, 2008.

**Figure 1: Source of ITIN Applications Processed From January 1 – November 21, 2008**

|  | Volume of ITIN Applications by Source | Percentage |
|---|---|---|
| Direct Mail | 1,167,136 | 75% |
| Certified Acceptance Agent | 362,870 | 23% |
| Acceptance Agent | 12,394 | .8% |
| Agent with No Designation | 6,997 | .5% |
| Total | 1,549,397 | 100%* |

Source: *Data from the ITIN Real-Time System.* *Does not total 100 percent due to rounding.*

All Form W-7 applicants must meet certain documentation requirements.[8] An applicant can submit an original passport or a properly notarized or certified copy of a valid passport. If the applicant submits either of these, he or she does not need to submit any other documents. If an applicant does not have an original or certified copy of a passport, he or she must provide a combination of current documents (at least two or more) that show a photograph and name supporting the claim of identity and foreign status. With the exception of children less than 14 years of age (less then 18 years of age if a student), at least 1 document must contain a recent photograph. If an individual is requesting an ITIN as a dependent, unless a passport is submitted, documentation to prove foreign status and identity should include a birth certificate.

There has been a significant increase in the use of ITINs since the IRS began issuing them in Tax Year 1996. Figure 2 shows a 247 percent increase in the number of individual income tax returns filed using ITINs and reporting wages from Tax Years 2001 to 2008.

*Figure 2: Growth of Tax Returns Filed Using ITINs and Reporting Wages*

|  | Tax Year 2001 | Tax Year 2008 | Percentage Change |
|---|---|---|---|
| Paper-Filed Tax Returns | 444,000 | 813,000 | 83% |
| Electronically filed (*e-filed*) Tax Returns | 86,000 | 1,028,000 | 1,095% |
| Total Individual Income Tax Returns | 530,000 | 1,841,000 | 247% |

*Sources: Data for Tax Year 2001 were obtained from a prior Treasury Inspector General for Tax Administration report.*[9]
*Data for Tax Year 2008 were obtained from analysis of the IRS Returns Transaction File as of June 18, 2009.*[10]
*Data were rounded to the nearest thousand.*

Tax returns filed with ITINs were not always allowed to be *e-filed*. However, if the ITIN was shown on the Wage and Tax Statement (Form W-2), the tax return could be *e-filed*. Due to programming changes, ITIN returns can now be *e-filed*.

This review was performed at the Wage and Investment Division Program Office in Atlanta, Georgia, and at the Austin Submission Processing Center in Austin, Texas. We conducted this performance audit in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objective. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objective. Detailed information on our audit objective, scope, and methodology is presented in Appendix I. Major contributors to the report are listed in Appendix II.

# Results of Review

## Individual Taxpayer Identification Numbers Were Issued Without Sufficient Supporting Documentation

A statistical sample of 658 Forms W-7 selected from 1.5 million application packages (cases) submitted from January 1 through November 21, 2008, showed 510 cases (78 percent) contained errors.[11] Fifty-four (8 percent) of 658 cases contained errors that would not have prevented the issuance of an ITIN, for example, names on some supporting documents were inconsistent with those of the Forms W-7 or the Forms W-7 were not dated. However, 456 (69 percent) of 658 of the cases contained significant errors and/or raised concerns that, without follow up or resolution, should have prevented the issuance of ITINs.

As shown in Figure 3, the highest error rate (87 percent) was in applications submitted through Certified Acceptance Agents.[12] This includes instances in which the Agents did not provide the documents required to support the Forms W-7 submitted by them to the TIGTA. However, there was also a significant error rate (35 percent) in application packages submitted to the IRS.

*Figure 3: Errors Identified in Application Packages Sampled Based on the Source of the Package*

|  | Directly Mailed or Submitted to an IRS Office | Certified Acceptance Agent Residing in the U.S. | Certified Acceptance Agent Residing Outside the U.S. | Totals |
|---|---|---|---|---|
|  |  |  |  |  |

|  | Directly Mailed or Submitted to an IRS Office | | Certified Acceptance Agent Residing in the U.S. | | Certified Acceptance Agent Residing Outside the U.S. | | Totals |
|---|---|---|---|---|---|---|---|
| Case Errors | 43 | 35% | 224 | 64% | 141 | 75% | 408 |
| Documents Not Provided | NA | NA | 81 | 23% | 21 | 11% | 102 |
| Total Errors | 43 | 35% | 305 | 88% | 162 | 87% | 510 |
| No Errors | 80 | 65% | 43 | 12% | 25 | 13% | 148 |
| Total Application Packages | 123 | 100% | 348 | 100% | 187 | 100% | 658 |

*Source: Our analysis of Forms W-7 submitted and processed during the period January 1 through November 21, 2008. NA=Not applicable. Due to rounding the total percentages may not equal 100 percent.*

Errors identified in 456 cases that might have prevented the issuance of ITINs included the following:[113]

- 443 (97 percent) supporting identification documents (e.g., passports, driver licenses, birth certificates, certificates of accuracy, and partnership agreements) were missing or were illegible. This includes 102 cases in which Certified Acceptance Agents did not provide documentation.
- 106 (23 percent) signatures were missing from the Forms W-7.
- 22 (5 percent) birth dates on identification documents were inconsistent with the birth dates on the Forms W-7.

Figure 4 provides a breakdown of the income, credits, and taxes for the 708 tax returns[114] associated with the cases identified as having errors.

*Figure 4: Income, Credits, and Taxes for Cases With Errors*

|  | Directly Mailed or Submitted to an IRS Office | Certified Acceptance Agent Residing in the U.S. | Certified Acceptance Agent Residing Outside the U.S. |
|---|---|---|---|
| Adjusted Gross Income | $1,595,607 | $11,092,599 | $2,307,158 |
| Taxable Income | $322,706 | $1,569,459 | $1,934,879 |
| Child Tax Credit | $20,263 | $106,057 | $1,200 |
| Additional Child Tax Credit | $60,810 | $586,838 | $0 |
| Tax Withheld from Wages | $59,292 | $369,198 | $373,325 |
| Refunds | 61 ($109,688) | 494 ($892,197) | 73 ($103,102) |
| Taxes Owed | 6 ($5,133) | 15 ($17,337) | 1 ($5,053) |
| No Additional Taxes Owed | ****1**** | 13 | 44 |

*Sources: Data from the ITIN Real-Time System, the ITIN Program's management information system, and from the IRS Returns Transaction File for tax returns filed using ITINs and processed in Calendar Years 2008 and 2009.*

### **_Eighty-seven percent of the sample of application packages submitted by Certified Acceptance Agents contained errors_**

A Certified Acceptance Agent is authorized under an agreement with the IRS to submit a Form W-7 to the IRS on behalf of an ITIN applicant without furnishing supporting documentary evidence. Instead, in the certificates of accuracy, Agents certify to the IRS that they have reviewed the appropriate documentation evidencing the ITIN applicant's identity and alien status, and that they are maintaining a record of such

documentation. In addition, Agents must certify that, to the best of their knowledge and belief, the documentation is authentic, complete, and accurate. As part of the certification, Agents must describe the documentation upon which they are relying. The certification is not binding on the IRS, and, in appropriate cases, the IRS may request to see appropriate documentation before issuing an ITIN.

**Certified Acceptance Agents submit only Forms W-7 and certificates of accuracy. They are not required to submit supporting documents, but must maintain them for 3 years and submit them to the IRS upon request.**

In addition, Certified Acceptance Agents agree to maintain a record of the documentation obtained and reviewed pursuant to the obligations set forth in the agreement. They are required to maintain all documentation submitted with respect to an ITIN applicant for 3 years.

IRS employees process, but do not review, documents supporting the applications submitted by Certified Acceptance Agents. They input the information from the Forms W-7 into the ITIN management information system, the Real-Time System. If all requirements are met, the ITIN is assigned systemically by the Real-Time System.

We requested copies of 535 application packages (Forms W-7, tax returns, and supporting documents) from Certified Acceptance Agents. From the IRS, we obtained the documents the Certified Acceptance Agents submitted to the IRS on behalf of the applicants. Eighty-seven percent (467 of 535) of the sample of application packages contained errors, for example:[15]

- 322 cases (69 percent) did not contain the documents required to issue an ITIN. Examples of required documents that were not provided include complete or legible photo identifications, school records, medical records, birth certificates, certificates of accuracy, and partnership agreements.

- 159 Forms W-7 (34 percent) did not agree with the original Forms W-7 that were sent to the IRS. In some cases, it appeared the Agents had completed new forms. This could have happened because the Agents did not retain the original documents. Eleven (7 percent) of the 159 Forms W-7 were signed and dated prior to the Forms W-7 issue date.

- 109 cases (23 percent) did not contain copies of partnership agreements. ITIN applicants residing in a foreign country who are partners in U.S. businesses are subject to information reporting and Federal tax withholding requirements. Foreign partnerships may conduct business in the U.S., and invest and own U.S. assets that generate income; therefore, they must obtain ITINs to report income. Partnership agreements are required when applying for ITINs to ensure the partnership exists and the applicant is a member of a foreign partnership or a U.S. partnership with 10 or more partners. Documentation includes the partnership name, Employee Identification Number, and a statement that the applicant is a member of the partnership.

- 102 (22 percent) Forms W-7 and supporting documents were not provided to us when we requested them from the Certified Acceptance Agents. They did not comply with our requests for copies of the application packages and did not provide any documents.

- 84 cases (18 percent) did not contain the required certificates of accuracy or the certificates were missing required information and/or signatures.

### The IRS relies on Certified Acceptance Agents to ensure applicants meet all requirements

The IRS accepts Forms W-7 and supporting documents submitted by Certified Acceptance Agents without reviewing or evaluating them. However, a review of the application packages in our sample found instances where the Forms W-7 and a certificate of accuracy were accepted with questionable information. For example,

- ****1****
- ****1****

The IRS stated that there are no internal guidelines requiring that the certificate of accuracy and the information on the Form W-7 be reviewed for accuracy. However, the certificate of accuracy is not binding on the IRS, and the IRS may request to see appropriate documentation before issuing an ITIN.

In another instance, ****1****

**The IRS does not have a Certified Acceptance Agent compliance review process**

Since Fiscal Year 2003, the Treasury Inspector General for Tax Administration has reported that the IRS has not performed any compliance reviews or monitoring visits to ensure that Agents are complying with all laws and regulations when submitting Forms W-7.[16] In response to the report issued in June 2009, the ITIN Program Office stated that it is currently working with the Small Business/Self-Employed Division Examination Policy function to develop a compliance review process.

Considering the error rate of application packages submitted by Certified Acceptance Agents in this review, the risk is high that without an active and aggressive compliance program ITINs are being issued without the proper supporting documents. The IRS needs to ensure that it implements a comprehensive compliance program or reconsider the feasibility of the Certified Acceptance Agent Program.

### *Thirty-five percent of the sample of application packages submitted directly to the IRS contained errors*

IRS employees review and process applications submitted directly to the IRS. Employees review the Form W-7 and the supporting documentation and contact the individual, via mail, notifying them of the ITIN or requesting additional information required to substantiate the Form W-7.

Thirty-five percent (43 of 123) of the application packages sampled that were submitted directly to the IRS by mail or through Taxpayer Assistance Centers contained errors. The errors ranged from missing and illegible documents to inconsistencies between the Forms W-7 and the supporting documents. This happened for many reasons.

- The documents are numerous and complex and in some instances unique to each taxpayer.
- Employees are not experts in determining whether documents are legitimate or whether signatures are valid.
- Employees process a large volume of Forms W-7 in a short time period. The majority of ITIN applications are submitted during the filing season[17] so individuals can timely file their tax returns. However, this is the busiest time for the IRS. In addition, the IRS hires seasonal employees to assist with Forms W-7 peak processing; therefore, employees with less experience process these Forms.

Employees have also expressed concerns that they are required to process a Form W-7 for an individual when it appears the wage earner is using another individual's Social Security Number to work. Taxpayers applying for an ITIN do not qualify for a Social Security Number. The Form W-2 attached to the tax return and application contains a Social Security Number.

The IRS attempted to mitigate some of the challenges by reducing the number of acceptable documents from 40 to 13. The IRS provided necessary training to identify legitimate documents, but does not require employees to be experts in determining whether documents contain valid signatures. Also, the IRS stated it has a good returning base of seasonal employees and in preparation for the 2009 Filing Season increased the classroom training time.

### *Supporting documents are complex and guidelines are inconsistent*

Although only 13 types of documents are acceptable to support the Form W-7 and issue an ITIN, these documents may not be in English, vary according to the country in which they were issued, and, particularly for medical and school records, are unique to the individual. Medical and school records are most often used to verify that children meet the requirements. Of 658 applications sampled, 213 (32 percent) applications were for children.

These IRS employees are not auditors and are required to ensure only the validity of the supporting documents, not validate all the information used to support the Form W-7. Guidelines do not require that they validate age, even though date of birth is a required field. Neither are they required to validate the date of entry into the U.S. A review of the sample of application packages showed the date of entry sometimes conflicts with school records, which shows applicants were attending school in foreign countries at the time they entered the U.S. According to an IRS official, it is possible that the dependent attended school in a foreign country but returns to the U.S. during school breaks.

Inconsistent guidelines create confusion for taxpayers and Agents in attempting to comply with the proper preparation of a Form W-7 and determining the identification documents needed to support the issuance of an ITIN, for example:

- The Form W-7 instructions, Understanding Your IRS - Individual Taxpayer Identification Number ITIN (Publication 1915), and a notice sent from the IRS to the taxpayer requesting additional information to support the Form W-7 application state that if an applicant is 14 years of age or older, the applicant can sign or appoint an authorized agent, including the parent, to sign. The authorized agent or parent must attach Power of Attorney and Declaration of Representative (Form 2848). However, IRS internal guidelines do not require a Form 2848 for a parent who is signing for a child.

- The Publication 1915 provides information used for completing the Form W-7 and instructs the applicant to use the most current Form W-7 or it will be rejected. However, the actual Form W-7 instructions only state to use Form W-7 to apply for an ITIN. In addition, IRS internal guidelines allow tax examiners to accept older versions.

The IRS has acknowledged these two discrepancies and is taking actions to revise Publication 1915 and Form W-7 instructions to ensure consistency.

In another instance, Publication 1915 and instructions for completing Form W-7 instructs the applicant to enter the date of entry to the U.S. However, IRS internal guidelines state:

> A date of entry is not required if W-7 reason box d [Dependent of U.S. citizen/resident alien] is checked and applicant is a resident of Canada, India, or Mexico **or** when box e [Spouse of U.S. citizen/resident alien] is checked and Form 1040 is filed either as married filing separately of (sic) married filing jointly with a spouse who is a U.S. citizen or resident and the NRA spouse applicant is both listed and claimed as an exemption on the return.

The Government Accountability Office *Standards for Internal Control in the Federal Government*[18] requires that the agency assess the risks it faces from both external and internal sources. The agency must establish clear, consistent objectives and should consider all significant interactions between the entity and other parties to identify risks. Guidelines need to be clear and consistent to reduce risks inherent to the ITIN Program and ensure ITINs are issued only to appropriate individuals.

### **The volume of ITINs is growing, increasing the risk that fraudulent tax returns using ITINs could be submitted**

Total ITIN tax returns have grown 247 percent from Tax Year 2001 to 2008. Many of these tax returns claim dependency exemptions and the Child Tax Credit and Additional Child Tax Credit. To qualify for these Credits, a child must meet certain tests. The residency test is of particular importance for children who have an ITIN. The only way a child with an ITIN can qualify for these Credits is to be a resident of the U.S.[19]

The maximum amount that can be claimed for the Child Tax Credit is $1,000 for each qualifying child. The Additional Child Tax Credit is a refundable tax credit and is for certain individuals who get less than the full amount of the Child Tax Credit. The Additional Child Tax Credit provides the taxpayer with a refund when no tax is owed. The IRS provides this example on IRS.gov:

> The taxpayers have two qualifying children, income of $86,000, and a tax liability of $500. Because their tax liability is less than the initial child tax credit ($2,000) they may be able to take the refundable Additional Child Tax Credit of $1,500 ($2,000-$500).

Employees processing Forms W-7 are not tax auditors and cannot determine whether a dependent qualifies to be claimed on the tax return, therefore allowing the taxpayer to receive a dependency exemption and possibly the Child Tax Credit and Additional Child Tax Credit.

***During Fiscal Year 2007, the IRS Examination function audited and closed 3,161 cases, changing almost 50 percent of these cases and assessing an average of $2,156 in additional tax per case.***

Since Fiscal Year 2005, the Program Office has been monitoring the usage of the Credits on tax returns submitted with Forms W-7. The Program Office, in conjunction with the IRS Examination function, initiated a review of approximately 93,000 of these tax returns. The Examination function subsequently initiated audits and has included this initiative in its strategic plan. During Fiscal Year 2007, the Examination function audited and closed 3,161 cases, changing almost 50 percent of these cases and assessing an average of $2,156 in additional tax per case.

The Program Office is also working with the IRS Criminal Investigation Division on several ITIN tax schemes. Calendar Year 2008 schemes being worked by the Criminal Investigation Division involve 14,636 ITIN tax returns and $42 million in refunds claimed. More than 1,000 (7 percent) of the 14,636 ITIN tax returns involved in schemes had ITINs issued with the assistance of Agents. These schemes involved $3.1 million in refunds. ****1****

In March 2009, we reported that ITIN filers are receiving billions of dollars in Child Tax Credits and Additional Child Tax Credits intended for working families although these individuals are not authorized to work in the U.S.[20] Figure 5 provides a breakdown of the characteristics and projections for our statistical sample of ITIN applications for 1,171,355 individual tax returns using ITINs that were assigned January 1 through November 21, 2008. There is a potential that these tax returns could result in $412,454,748 in refunds and that over 5 calendar years $2,062,273,740 in revenue could be protected.

*Figure 5: Projections of Income, Credits, and Taxes of Tax Returns Filed Using ITINs Assigned January 1 through November 21, 2008*

|  | Directly Mailed or Submitted to an IRS Office | Certified Acceptance Agent Residing in the U.S. | Certified Acceptance Agent Residing Outside the U.S. |
|---|---|---|---|
| Adjusted Gross Income | $15,140,572,126 | $10,899,147,898 | $258,340,007 |
| Taxable Income | $3,062,128,374 | $1,542,088,176 | $216,654,713 |
| Child Tax Credit | $192,273,795 | $104,207,402 | $134,368 |
| Additional Child Tax Credit | $577,024,922 | $576,603,748 | $0 |
| Tax Withheld From Wages | $562,616,485 | $22,214,474 | $41,802,418 |
| Refunds Due | $1,040,819,623 | $876,637,392 | $11,544,667 |
| Balance Due | $48,706,578 | $17,034,649 | $565,801 |
| Total Refunds Without Child Tax Credit and Additional Child Tax Credit | $222,818,598 | $178,791,691 | $10,844,458 |
| No Additional Taxes Owed (Tax Returns) | 9,489 | 12,773 | 4,927 |

*Source: Analysis of tax returns filed using ITINs and processed in Calendar Years 2008 and 2009.*

In a prior report issued March 31, 2009, the Treasury Inspector General for Tax Administration recommended that legislation is needed to clarify whether or not refundable tax credits such as the Additional Child Tax Credit may be paid to filers without a Social Security Number and, if these credits may not be paid, to provide

IRS math error authority to disallow associated claims for the credits.[21] The IRS agreed and will discuss with the Office of Tax Policy, Department of the Treasury, the merits of an administration proposal to amend the Internal Revenue Code to limit eligibility for the Child Tax Credit and Additional Child Tax Credit to individuals who have a Social Security Number issued by the Social Security Administration rather than a number issued to an alien not authorized to work in the U.S.

## Recommendations

The Commissioner, Wage and Investment Division, should revise:

**Recommendation 1:** Guidelines related to processing applications submitted by Certified Acceptance Agents to ensure that the Forms W-7 match the information on the certificates of accuracy before issuing ITINs, and that any supporting documents submitted with the certificates of accuracy are reviewed with the same due diligence as required for Forms W-7 and supporting documents submitted directly to the IRS by individual applicants.

> **Management's Response:** The IRS agreed with this recommendation and has taken steps to revise Form W-7 instructions, *Acceptance Agents Guide for Individual Taxpayer Identification Number* (Publication 4520), and internal guidelines to ensure consistency in these areas.

**Recommendation 2:** Guidelines related to processing applications submitted directly to the IRS to ensure that all information on the Forms W-7 is validated and consistent with supporting documentation. For example, employees should validate the gender, age, and date of entry.

> **Management's Response:** The IRS agreed with this recommendation and will update guidance to ensure the information on the Form W-7, required to verify the applicant's identity, is validated and consistent with what is shown on supporting documentation.

**Recommendation 3:** Guidelines to ensure that the instructions for completing the Form W-7 and internal guidelines are consistent by clarifying who is required to complete a power of attorney, clarifying that prior versions of Form W-7 *may* be acceptable, and requiring that employees verify qualified applicants provide an entry date to the U.S.

> **Management's Response:** The IRS agreed with this recommendation and has taken steps to revise Form W-7 instructions, Publications 1915 and 4520, and internal guidelines to ensure consistency in these areas.

## The Same Individual Taxpayer Identification Numbers Are Being Used by More Than One Taxpayer on Multiple Tax Returns

As with Social Security Numbers, ITINs are specific to individuals and should be issued to and used by only one individual. However, there are no controls when tax returns are filed to prevent an ITIN from being used by more than one taxpayer on multiple tax returns. The IRS has a compliance control after the tax return is processed and the refund is issued to determine which taxpayer should be allowed to claim a dependent.

More than 60,000 ITINs were assigned and used on multiple tax returns processed in Calendar Year 2008. Multiple ITINs were used on 121,601 tax returns – 76,998 (63 percent) ITINs were used for dependents, 31,287 (26 percent) were used for secondary taxpayers (spouses), and 13,316 (11 percent) were used for primary taxpayers.[22] Seventy-one percent (86,736) were submitted using a paper tax return while 29 percent (34,865) were *e-filed*.

****1**** Figure 6 provides total refunds, balance dues, and no taxes owed for the 60,333 tax returns where the same ITINs were used on multiple tax returns. A total of 72,333 multiple ITINs used on 121,601 multiple tax returns allowed $175,815,700 in refunds for Calendar Year 2008. Because this could be a recurring issue, a determination was made that over 5 calendar years, revenue could be increased by $879,078,500.

**Figure 6: 2007 Tax Returns With Multiple ITINS**