UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ, <br><br> *Plaintiffs*, <br><br> vs. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC., <br><br> *Defendants*. | Civil Action No. 1:16cv00563-TSE-TCB |

**PLAINTIFFS' CORRECTED OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL**

Plaintiffs Rosy Giron De Reyes, Jose Dagoberto Reyes, Felix Alexis Bolanos, Ruth Rivas, Yovana Jaldin Solis, Esteban Ruben Moya Yrapura, Rosa Elena Amaya, and Herbert David Saravia Cruz ("Plaintiffs"), by their attorneys, respectfully submit this Memorandum in Opposition to Defendants' Motion to Compel.

**INTRODUCTION**

Defendants have moved to compel irrelevant and inappropriate discovery from Plaintiffs, current and former residents of Waples Mobile Home Park (the "Park"), despite having already received fulsome discovery responses, document productions, and further agreements to produce. Defendants paid only lip service to their obligation to meet and confer with Plaintiffs before filing this Motion, and as shown below, their failure to participate in this process in good faith has resulted in the Court being burdened with a motion to compel discovery that Plaintiffs have either

1

already provided, or that is so far outside the penumbra of appropriate discovery that its only purpose can be to harass and intimidate the Plaintiffs. The motion should be denied in full, for the reasons set forth below.

## BACKGROUND

On September 1, 2016, Defendants served Requests for Admissions ("RFAs"), Request for Production of Documents ("RFPs"), and Interrogatories on Plaintiffs Rosy Giron De Reyes, Jose Dagoberto Reyes, Felix Alexis Bolanos, Ruth Rivas, Yovana Jaldin Solis, Esteban Ruben Moya Yrapura, Rosa Elena Amaya, and Herbert David Saravia Cruz. On September 16, 2016, Plaintiffs filed objections and responses to Defendants' first set of discovery requests. On September 28, 2016, the parties met and conferred regarding Plaintiffs' objections to Defendants' first set of discovery requests. As a result of that meet and confer, Plaintiffs served revised responses to certain of Defendants' RFAs, including to Requests 1, 2, and 6, which are implicated by Defendants' Motion. Plaintiffs reiterated their proposed compromises where parties had been at an impasse by email on October 4, including production of documents relating to ITINs and passports, which are also implicated by Defendants' motion. *See* Ex. A. On October 7, 2016, Plaintiffs produced documents to Defendants. On October 11, 2016 Defendants wrote to Plaintiffs, outlining certain "deficiencies" they claimed to have identified in Plaintiffs' responses to Interrogatories and Requests for Documents and informed Plaintiffs they intended to move forward with a motion to compel absent sufficient responses. Ex. B (Oct. 11 email from J. deBettencourt to A. Trajtenberg). Defendants' email was silent regarding discovery requests raised in the September 28 meet and confer. Believing Defendants were making a good faith effort to resolve the discovery issues without judicial intervention, Plaintiffs served supplemental responses to various Interrogatories prior to the October 13 deadline set by Defendants in their prior email.

On Friday evening, October 14, 2016, without any further effort to narrow the dispute they perceive exists, Defendants served their Motion to Compel (Dkt. 70) (hereafter, "Motion"). The Motion seeks an order compelling 1) production of Plaintiffs' tax returns, without temporal limitation; 2) production of all current and former (invalid or expired) passports, visas, and I-94 forms; and 3) additional, or different responses to various discovery requests relating to the female plaintiffs' immigration status.

Defendants' Motion asks the Court to now compel production of documents and responses to RFAs and interrogatories not raised in Defendants' October 11 email, including Plaintiffs' tax returns, passports, visas, I-94, Interrogatory 11, Requests 12, and Requests 6 and 13 directed at male plaintiffs. *See* Ex. B (Oct. 11 email from J. deBettencourt to A. Trajtenberg).

On Monday, October 17, 2016 Plaintiffs contacted Defendants to attempt to resolve the issues raised in Defendants' Motion without the need for a hearing or any further briefing. Although Plaintiffs disagreed that any of the issues presented were deficiencies, in an effort to resolve Defendants' concerns and avoid burdening the Court, Plaintiffs agreed to supplement several of their responses to Defendants' requests for discovery and to produce all tax returns and W-7s referencing the female plaintiffs' ITINs with financial information redacted, without temporal limitation. Ex. C (Oct. 18, 2016 email from J. Odom to J. deBettencourt). Plaintiffs further agreed to produce all of Plaintiffs original passports, including any invalid or expired passports, without temporal limitation (RFP 11), all original U.S. Visas Plaintiffs have ever possessed, without temporal limitation (RFP 12), and all I-94 Forms Plaintiffs have ever possessed, without temporal limitation (RFP 13). *Id.* Plaintiffs also agreed to supplement their responses to Defendants' RFA 12 (for both male and female plaintiffs) and 13 (male), which seek admissions as to whether each of the plaintiffs entered the United States legally or illegally. *Id.*

3

Though Plaintiffs were successful in fully resolving Sections I and II of Defendants' Motion and most of Section III, Defendants refused the proposed compromises as to part of Section III and all of Section IV.

## LEGAL STANDARD

The Federal Rules limit the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). A motion to compel discovery should be denied where the party resisting production demonstrates that the discovery request is improper. *Union First Mkt. Bank v. Bly,* No. 3:13-CV-598, 2014 WL 66834, at *4 (E.D. Va. Jan. 6, 2014). A motion to compel should likewise be denied when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *E.I. DuPont De Nemours & Co. v. Kolon Corp.*, No. 3:09-CV-58 (AJT/JFA), 2015 WL 11017999, at *4 (E.D. Va. Jan. 30, 2015).

## ARGUMENT

### I.   DEFENDANTS' MOTION IS LARGELY MOOT IN LIGHT OF PLAINTIFFS' AGREEMENTS TO COMPROMISE

The parties agree that Sections I and II of Defendants' Motion concern discovery demands that Plaintiffs satisfied by agreement of Tuesday, October 18, 2016. Though Plaintiffs disagreed that any deficiency existed in either their discovery responses or productions, and that the discovery sought by the Motion was relevant, they nevertheless agreed to several of Defendants' demands. Specifically, Plaintiffs agreed to produce tax returns and W-7 documents, with financial information redacted, without any temporal limitation. Plaintiffs also agreed to produce any expired or invalid passports in their possession, custody, or control, as well as any U. S. Visas and

4

I-94 Forms. As such, those issues are now moot and do not require the Court's intervention.[1] *See* Ex. C (Oct. 18, 2016 email from J. Odom to J. deBettencourt).

As to the discovery demanded in Sections III and IV of the Motion, Plaintiffs have made reasonable offers of compromise that cured any arguably valid justification Defendants proffered for the discovery they now seek to compel. Defendants generally demand documents and admissions designed to reveal the Plaintiffs' immigration status. Specifically, for the female plaintiffs, Section III references RFP 14 ("All documents sent to or received from any U.S. or state government referencing your immigration status in the United States."); RFP 16 ("Any documents referencing when and where you entered the United States."); Interrogatory 11 ("State when, where, and how you entered the United States, including without limitation, whether you entered the United States legally."); and RFA 12 ("Admit that your husband entered the United States legally."). For the male plaintiffs, reciprocal requests (RFP 15, RFP 17, Interrogatory 11, and RFAs 12 and 13) were served, seeking the same information and documents concerning the female plaintiffs' immigration status and entry into the United States, as well as an admission whether the male plaintiffs entered the United States legally. *See* Motion at 11.

Through counsel, Plaintiffs have now represented to Defendants that the female plaintiffs have no documents responsive to RFP 14 or 16, either 1) because no such documents exist or ever

---

[1] Once Defendants made clear in their Motion that they considered W-7s to be included within the range of responsive documents, Plaintiffs immediately agreed to produce those, to the extent those documents are within their possession, custody or control. Likewise, after Defendants made clear that they insisted on production of all of the female plaintiffs' visas and I-94s (not just those visas and I-94s that would have complied with the policy), Plaintiffs explained that no such documents ever existed.

5

existed, or 2) because any such documents are not within the possession, custody, or control of the female plaintiffs and have agreed to supplement their discovery responses to state the same.[2] *See* Ex. C (Oct. 18 email from J. deBettencourt to A. Trajtenberg). And despite the clear irrelevance of the information sought, Plaintiffs also agreed to supplement the female plaintiffs' response to Interrogatory No. 11 to provide the date and location of each female plaintiff's entry to the United States.[3] Plaintiffs have also agreed to provide supplemental RFA responses to RFAs 12 and 13 (male) and RFA 12 (female). Thus, Plaintiffs have supplied what Defendants' Section III requests seek, which is a clear statement on the plaintiffs' immigration status. Clean, direct admissions have been provided. Defendants were not satisfied, and have continued, without explanation, to demand the production of the full immigration files of the male plaintiffs. *See* Ex. C (Oct. 18 email from J. deBettencourt to A. Trajtenberg). That portion of Section III that seeks immigration documents from the male plaintiffs is the only remaining live component of Section III.

For the foregoing reasons, no live issues in Sections I or II of Defendants' motion remain to be resolved, and those portions of Defendants' motion should be denied as moot. The portions of Section III seeking admissions from plaintiffs or the female plaintiffs' immigration documents should similarly be denied as moot.

---

[2] Plaintiffs previously represented to counsel and to the Court that no responsive documents ever existed for any of the female plaintiffs. Counsel for plaintiffs learned last evening that this was an overstatement, in that one of the female plaintiffs briefly had possession of responsive documents more than a decade ago, when she was 16 years old. She no longer has possession of these documents, and it remains correct that no female plaintiff currently possesses immigration documentation responsive to Defendants' requests.

[3] As is characteristic of Defendants' demands, only a threadbare claim of relevance is tied to this Request. While Plaintiffs can understand why their immigration status may be relevant, certainly the place where each Plaintiff entered the country is not. Entry in Texas as opposed to Arizona has no conceivable bearing on any claim or defense in this action.

## II. VOLUMINOUS RECORDS OF PLAINTIFFS' IMMIGRATION HISTORY ARE HIGHLY SENSITIVE, DUPLICATIVE, AND IRRELEVANT

Defendants have demanded from male and female plaintiffs "[a]ll documents sent to or received from any U.S. or state government referencing [the female plaintiffs'] immigration status in the United States," (RFPs 14 (female) and 15 (male)) and "[a]ny documents referencing when and where [female plaintiffs] entered in the United States," (RFPs 16 (female) and 17 (male)).[4] The male plaintiffs have already produced valid U. S. government-issued documentation that prove their immigration status, thus requiring production of the male plaintiff's immigration files would force the disclosure of highly sensitive and duplicative information to no purpose. Defendants cannot use this litigation to pry into the U.S. government's decision-making process in granting male plaintiffs' legal status by combing through their immigration files. Defendants' request is akin to receiving production of a life insurance policy, and then asking for the policyholder's underlying application and medical exam.

Defendants contend this information is relevant to whether it would have been futile for the female plaintiffs to comply with the Policy. This is pretext—and thin pretext at that. Plaintiffs have agreed to produce documents (any U.S. Visas, I-94 forms, and passports, to the extent they exist, without temporal limitation) and have admitted which Plaintiffs are not able to produce such documents, that provide verification of Plaintiffs' immigration status, or lack thereof. Further, now that Defendants' demands are clear, the male plaintiffs are willing to promptly produce their most recent Temporary Protected Status ("TPS") and/or green cards. Plaintiffs have additionally agreed to provide supplemental responses to Defendants' interrogatories and RFAs that seek

---

[4] Defendants have also propounded a request for production to male plaintiffs that apparently seek their full immigration files. Defendants have not placed that request at issue in this motion.

admissions and information about the Plaintiffs' immigration status and entry into the United States (RFAs 12 (both male and female) and 13 (male) and Interrogatory 11 (both male and female)).  There is no other information contained in the male Plaintiffs' immigration files that Defendants are entitled to receive in the course of discovery.  Defendants nevertheless continued to assert that production of the male plaintiffs' full immigration files was necessary to satisfy demands relating to the female plaintiffs' immigration status.  See Ex. C (Oct. 18 email from J. deBettencourt to A. Trajtenberg).

Unsurprisingly, Defendants have not been able to articulate any basis for why these files should be produced, aside from the last-gasp claim that Plaintiffs "put the male plaintiffs' immigration files at issue by discussing the male plaintiffs' immigration status in the male plaintiffs' declarations attached as Exhibits A-D to Plaintiffs' Motion for TRO."  Ex. C (Oct. 18 email from J. deBettencourt to A. Trajtenberg).  Far from "putting immigration files at issue," *one* of the paragraphs in each declaration (which contain 27 (Ex. A), 26 (Ex. B) and 24 (Ex. C) paragraphs, respectively) references the male plaintiffs' immigration status.  Exhibits A, B, and C attached to Plaintiff's Memorandum in Support Motion for Temporary Restraining Order and Preliminary Injunction, *De Reyes v. Waples Mobile Home Park Ltd.*, No. 16-cv-563 (E.D. Va. Sept. 1, 2016) ECF No. 4.  If what Defendants truly desire is, as their Motion states, information on the "female plaintiffs' legal or illegal entrance to the United States," Mot. at 11, they have now been provided with it.  Similarly, if Defendants simply wanted documentary evidence of male plaintiffs' immigration status, they have received it by virtue of Plaintiffs' production of U. S. Visas, I-94 forms, and passports, or will imminently receive it through Plaintiffs' forthcoming production of their most recent TPS and/or green cards.  Defendants are not entitled to more.

Defendants' persistent demand for full immigration files, which are several inches thick each and rife with incredibly private information, is transparently calculated to pressure Plaintiffs to drop their claims rather than undergo such invasive discovery. This is unquestionably impermissible. Forcing Plaintiffs to produce these confidential files (which can prove nothing more than what has already been admitted) for no better reason than that *Defendants just want it* is the definition of oppressive discovery.[5] Fed. R. Civ. P. 26(c); *see also Midland-Ross Corp. v. United Steelworkers of Am., AFL-CIO*, 83 F.R.D. 426, 427 (W.D. Pa. 1979) (stating in the context of Fed. R. Civ. P. 26(b) that a court "may deny discovery requests if the underlying purpose is delay or harassment."). Courts recognize that discovery into parties' immigration status presents a danger of intimidation and, if unchecked, can result in parties being driven out of court without appropriate relief simply to avoid the intrusion into their private lives. *See, e.g.*, *Librado v. M.S. Carriers, Inc.*, 2004 WL 583602, at *2 (N.D. Tex. Mar. 23, 2004) (delving into a party's immigration status "could present a danger of intimidation that would inhibit the pursuit of rights to relief"); *Flores v. Amigon*, 233 F. Supp. 2d 462, 465 (E.D.N.Y. 2002) (concluding that most undocumented aliens would withdraw their claims rather than disclose their immigration status, which would effectively eliminate their ability to use the courts to protect themselves from exploitation and retaliation).

---

[5] To the extent Defendants claim in their Reply that they are entitled to "test" Plaintiffs' admissions, that too is pretext. The female plaintiffs' admission that they are not present within the United States under the auspices of a legal status or documentation is the most negative possible statement of Plaintiffs' immigration status. Defendants' "verification" process, which is designed to suss out any untruth in these admissions, could only prove either 1) that the female plaintiffs have been truthful and that they are indeed undocumented, or 2) that in fact, the female plaintiffs *do* enjoy residence in the U. S. under proper documentation. In either case, Defendants' case will not have been strengthened.

The undue pressure on Plaintiffs caused by Defendants' document demands is not relieved by Defendants' "offer" to allow Plaintiffs to produce those immigration files subject to the Protective Order in this case. Ex. C (Oct. 18 email from J. deBettencourt to A. Trajtenberg). The Protective Order permits access to anything produced pursuant to that Order by both Defendants' counsel *and Defendants*. Thus, Plaintiffs, some of whom continue to reside at the park and are subject to regular encounters with Defendants' staff, would be faced with the knowledge that their landlord and managerial staff have been given license to page through exceptionally personal information. The files contain, for example, detailed information about Plaintiffs' minor children, personal financial information (the sensitivity of which Defendants have conceded by permitting Plaintiffs to redact their tax returns), information concerning arrests that did *not* result in conviction, as well as personal medical information. The Protective Order therefore does not alleviate the psychological burden inflicted on Plaintiffs by the knowledge that Defendants and counsel will be traipsing through their private documents at will. It is difficult to conceive of a strategy more likely to be effective at unfairly forcing Plaintiffs to stop prosecuting their claims than the one Defendants are apparently pursuing.

Section III of Defendants' Motion should be denied in full.

## III.   PLAINTIFFS' RFA RESPONSES ARE RESPONSIVE AND COMPLETE

Defendants complain that, as to RFAs 2, 3, 6, and 14 (female plaintiffs) and RFAs 1, 6, and 15 (male plaintiffs), Plaintiffs provided "non-responsive denials" (Mot. at 13) and "qualified answer[s]" that "twist the language of the actual RFAs to avoid admitting the relevant RFAs," Mot. at 14 (Section IV). Defendants concede that Plaintiffs have provided answers to the RFAs that have been propounded. Their complaint is not, as their motion suggests, that Plaintiffs have refused to respond. Rather, as stated in Section I, *supra*, these RFAs seek admissions or denials that Plaintiffs have provided to the extent possible at this phase of the case. But discovery

does not close until December 9, 2016. Until that dates approaches, and Plaintiffs have the benefit of full factual discovery into Defendants' creation and enforcement of the Policy, and of expert discovery into the impact of Defendants' practices, Plaintiffs cannot definitively state, for example, that they were "not able to enter into Rental Agreements" because they were not in the United States legally. Nor are Plaintiffs presently able to state definitively that, for example, they were or were not "denied the right to enter into a Rental Agreement" because they are Latino.

As stated in Plaintiffs' Complaint, discovery responses, and various briefing before this Court, Plaintiffs allege that Defendants' Policy and practices unlawfully discriminate against Plaintiffs as Latinos. Defendants do not get to slow-roll discovery and backload productions of critical evidence, such as internal email communications, while simultaneously demanding admissions from Plaintiffs that depend in large measure upon the discovery that Plaintiffs are seeking.[6] Based on the information presently available to them, Plaintiffs' RFA responses comply with Fed. R. Civ. P. 36(a)(4). That the responses do not contain the answers the Defendants hoped to receive is not a reason to compel Plaintiffs to provide answers they cannot give.

## CONCLUSION

Plaintiffs have and continue to diligently provide requested discovery to Defendants, whether through document productions, admissions, or interrogatory responses. Where Defendants have articulated some rational basis for the discovery they seek, Plaintiffs have endeavored to comply. Defendants' motion artlessly seeks an order compelling Plaintiffs to permit them to trawl through the depths of immigration files that are both highly sensitive and cumulative of simple, direct admissions Plaintiffs have already given, and "responsive" admissions or denials

---

[6] Defendants' various production deficiencies will be the subject of a forthcoming Motion to Compel by Plaintiffs, should meet and confer efforts this week prove unsuccessful.

11

to certain RFAs that Plaintiff has already fully answered. In the face of Plaintiffs' earnest and accommodating efforts to satiate Defendants' desire for discovery, Defendants' continued baseless pursuit of cumulative and highly sensitive information (and concomitant rush to court without engaging in even the semblance of a good-faith meet and confer process) can only be labeled as harassment. It should not be tolerated. Plaintiffs respectfully request that Defendants' motion be denied in full for the reasons set forth above.

DATED October 20, 2016.        Respectfully submitted,

/s/ Paul Brinkman
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Paul Brinkman, VSB # 35950
Jeanhee Hong (*pro hac vice*)
Ariel Wade Trajtenberg (*pro hac vice*)
Diego Durán de la Vega (*pro hac vice*)
Jongwook Kim (*pro hac vice*)
William A. Margeson (*pro hac vice*)
777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001
Phone: (202) 538-8000
Fax: (202) 538-8100
paulbrinkman@quinnemanuel.com
jeanheehong@quinnemanuel.com
arieltrajtenberg@quinnemanuel.com
diegoduran@quinnemanuel.com
wookiekim@quinnemanuel.com
billmargeson@quinnemanuel.com

LEGAL AID JUSTICE CENTER
Simon Sandoval-Moshenberg, VSB #77110
Rebecca Wolozin, VSB #89690
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454
simon@justice4all.org
becky@justice4all.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on October 20, 2016, I filed the foregoing Memorandum in Support of Plaintiffs' Motion to Compel Responses to Plaintiffs' First Set of Discovery Requests electronically with the Clerk of the Court using the ECF system, and caused to be served by electronic mail a copy of the foregoing document upon the following parties:

Michael S. Dingman, VSB #30031
REED SMITH LLP
7900 Tysons One Place, Suite 500
McLean, Virginia 22102
Phone: (703) 641-4200
Fax: (703) 641-4340
mdingman@reedsmith.com
jdbettencourt@reedsmith.com

*Counsel for Defendants*

                                              */s/ Paul Brinkman*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Paul Brinkman, VSB # 35950

777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001-3706
Phone: (202) 538-8000
Fax: (202) 538-8100
paulbrinkman@quinnemanuel.com

*Counsel for Plaintiffs*