IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, <br><br> Defendants. | Civil No.: 1:16cv563-TSE-TCB |

### REPLY TO OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A. J. Dwoskin & Associates, Inc. (collectively "Defendants"), by counsel, hereby submit their Reply Brief in support of their Motion to Compel ("Motion") and in response to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Compel ("Opp."). As detailed below, Defendants respectfully request the Court to grant their Motion.

### INTRODUCTION

As the central basis for Plaintiffs' Complaint, Plaintiffs attempt to allege a claim under the Fair Housing Act (Count I) and under 42 U.S.C. § 1981 (Count IV) on the basis that the four female Plaintiffs faced discrimination as illegal aliens.[1] Defendants' Mem. Supp. Motion to Dismiss at 2 ("Thus, the Plaintiffs are asking this Court to create a cause of action based on the claimed protected status of being an undocumented, and perhaps, illegal alien.") (Dkt. 26). By filing a federal lawsuit centered on claims of alleged discrimination against undocumented immigrations, Plaintiffs placed their immigration status at issue. In response, Defendants served

---

[1] The claim under the VFHL (Count II) closely tracks the Plaintiffs' claim under the federal Fair Housing Act.

reasonable discovery requests regarding Plaintiffs' claims of discrimination and Plaintiffs' immigration status. After Defendants filed the instant motion and faced with an unsustainable position on Defendants' discovery requests, Plaintiffs agreed to provide discovery responses and information in response to the discovery requests contained in Sections I and II and a portion of Section III of Defendants' Motion.

Now, only Sections III and IV of Defendants' Motion remain at issue. The remaining discovery requests at issue in Section III of Defendants' Motion are document requests seeking information regarding the Plaintiffs' immigration status – which Plaintiffs placed at issue by filing the instant lawsuit. Section IV of Defendants' Motion involves Requests for Admission ("RFAs") that go to the heart of Plaintiffs' allegations – RFAs to which Plaintiffs provided qualified and nonresponsive answers. It is telling that the Plaintiffs spend little effort in their opposition discussing Section IV which remains the primary dispute between the parties. As discussed below, Plaintiffs should be compelled to produce the documents requested by the document requests in Section III and to provide simple admissions or denials to the RFAs discussed in Section IV of Defendants' Motion.

## BACKGROUND

Defendants have provided a revisionist history of the substantive meet and confer process in order to distract from the substance and merits of the discovery requests in dispute. Defendants understand that the Court would prefer to focus on the substance of the dispute rather than allegations about the meet and confer process, but Defendants unfortunately must address the distracting allegations made in Plaintiffs' Opposition.

On September 1, 2016, Defendants served discovery requests to all eight plaintiffs including document requests ("RFPs"), Interrogatories ("ROGs"), and RFAs. Plaintiffs served

their objections on September 16, 2016. On September 28, 2016, the parties met and conferred regarding every single objection served by Plaintiffs. *See* Exhibit A to Plaintiffs' Opp. Even after the meet and confer, Plaintiffs refused to produce redacted tax documents submitted to acquire ITINs and redacted tax documents referencing the female plaintiffs' ITINs[2], Plaintiffs refused to provide Visas and I-94 forms unless they were valid when the Plaintiffs lived at the Park, Plaintiffs refused to provide documents and to answer interrogatories referencing Plaintiffs' immigrations status, and Plaintiffs refused to provide admissions regarding legal or illegal entry to the United States by Plaintiffs. *See* Exhibit A to Plaintiffs' Opposition. Plaintiffs' counsel did not state – as they do now - that the female plaintiffs did not ever possess Visas or I-94s during the meet and confer process, but instead engaged in a needless debate about the time frame for these requests[3]. As a result, Defendants sought to file a motion to compel on October 7, 2016, but Plaintiffs' counsel indicated that not one of eight attorneys who have appeared and signed pleadings in this matter was available the following week to file an opposition brief or appear for a hearing. *See* Exhibit B to Plaintiffs' Opp.[4]

Then, after Defendants received Plaintiffs' Interrogatory Responses and Answers to Defendants' RFAs on October 7, 2016, Defendants sent another detailed communication on

---

[2] Initially, Plaintiffs said they would get back to Defendants about what documents referenced the female plaintiffs' ITINs so that the parties were not arguing in the abstract. Plaintiffs then contacted Defendants and indicated that they would continue to withhold tax returns referencing the female plaintiffs' ITINs even if redacted. **Exhibit A.**

[3] Plaintiffs filed a Corrected Opposition changing position again by stating that they "just learned" that one of the female plaintiffs may have had responsive documents at some time in the past. It is inexplicable that Plaintiffs did not have this information previously since the underlying RFPs were propounded seven weeks ago and have been the subject of objections and meet and confer conferences.

[4] Curiously, the very next week, Plaintiffs threatened a motion to compel and it appeared what counsel indicated was that Plaintiffs' counsel was not available to file an opposition brief but was very much available to file a brief in support of a threatened motion to compel.

October 11, 2016 to Plaintiffs regarding the deficiencies in those responses. Exhibit B to Plaintiffs' Opp. Defendants indicated that if Plaintiffs did not correct those deficiencies by the end of Thursday October 13, 2016 (the Thursday before Friday, October 14, 2016), Defendants would file a motion to compel. Plaintiffs only corrected certain interrogatory responses by October 13, 2016 and refused to correct their non-responsive answers to Defendants' RFAs. Plaintiffs continued to stand on certain objections to discovery requests discussed in the September 28, 2016 meet and confer. As a result, Defendants filed their Motion to Compel. Only after Defendants filed their Motion to Compel did Plaintiffs suddenly about-face and offer to provide documents and responses to Defendants after standing on their objections since September 28, 2016 – approximately three weeks prior. Having stonewalled Defendants' discovery efforts for three weeks and recognizing the unsustainability of their positions, Plaintiffs finally agreed to provide redacted tax returns in response to the discovery requests in Section I of Defendants' Motion and Plaintiffs for the first time indicated that there were no responsive Visas and I-94s for the female plaintiffs in response to the discovery requests in Section II of Defendants' Motion. In addition, Plaintiffs agreed to provide responses to certain discovery requests in Section III of Defendants' Motion.

     However, Plaintiffs continue to refuse to provide documents referencing the Plaintiffs' immigration status (RFP 14 to the female Plaintiffs and RFP 15 to the male Plaintiffs – Section III of Defendants' Motion) and refuse to provide responsive answers to Defendants' RFAs which go to the heart of Plaintiffs claims (Section IV of Defendants' Motion). Plaintiffs' revisionism about the meet and confer process is nothing more than a distraction from the simple reality that Plaintiffs stonewalled Defendants' discovery efforts until the last possible moment and continue

to refuse to provide responsive documents and simple admissions or denials to Defendants' RFAs. As discussed below, this gamesmanship should not be tolerated.

## ARGUMENT

Plaintiffs refuse to produce documents referencing the plaintiffs' immigration status (RFP 14 to the female Plaintiffs and RFP 15 to the male Plaintiffs – Section III of Defendants' Motion) and refuse to provide responsive answers to Defendants' RFAs which go to the heart of Plaintiffs' claims (Section IV of Defendants' Motion). As discussed below, Plaintiffs should be compelled to provide the responsive documents and answers.

### I. PLAINTIFFS' IMMIGRATION STATUS

As noted above, the Parties have resolved Sections I and II of Defendants' Motion with Plaintiffs agreeing to provide the information requested in those Sections.[5] Likewise, the Parties resolved most of the discovery requests in Section III of Defendants' Motion with Plaintiffs agreeing to provide the information requested. The only discovery requests that remain in dispute in Section III of Defendants' Motion are RFP 14 to the female Plaintiffs and RFP 15 to the male Plaintiffs. These discovery requests seek "All documents sent to or received from any U.S. or state government referencing [the female plaintiffs'] immigration status in the United States."

Plaintiffs argue that such documents are not relevant on two distinct bases: A) Plaintiffs have already provided sufficient information regarding their immigration status, Opp. at 7; and B) Defendants are harassing Plaintiffs with their discovery requests, Opp. at 8-9. These arguments fail. At the outset, Plaintiffs have agreed that their immigration status is relevant by agreeing, in the face of the instant Motion, to provide most of the requested discovery regarding

---

[5] Of course, it should not be lost on the Court that Defendants had to file a Motion before Plaintiffs agreed to provide the requested discovery.

- 5 -

the Plaintiffs' immigration status. Indeed, Plaintiffs put their immigration status at issue by filing a Complaint that alleges discrimination against undocumented immigrants and failing to allege anywhere in the Complaint whether the female plaintiffs are documented or undocumented. *See* Compl. ¶¶ 63-111.[6] As detailed below, Defendants' RFPs 14 (female plaintiffs) and 15 (male plaintiffs) A) are not duplicative and B) are not harassing.

### A.   Defendants Are Entitled To This Information and It is Not Duplicative

Plaintiffs claim that Defendants have not been able to "articulate any basis" for why the documents referencing Plaintiffs' immigration status should be produced. This argument fails. Plaintiffs allege discrimination against undocumented immigrants by disparate impact under the Fair Housing Act (Count I), Compl. ¶¶ 39-40, 55-63, and allege intentional discrimination against undocumented immigrants under 42 U.S.C. § 1981 (Count IV), Compl. ¶¶ 132-137. One of Defendants' defenses to Plaintiffs' claims is that it is the female plaintiffs' status as illegal immigrants that creates an issue with Defendants' Policy – it is not because Defendants are discriminating against Plaintiffs on the basis of race and/or citizenship. Defendants are entitled to information in the male Plaintiffs' immigration files that reference the plaintiffs' immigration status in order to support this defense. For example, those files may contain statements by the male plaintiffs that reference the female plaintiffs' illegal presence in the United States and how difficult it is for the female plaintiffs to sign leases or open bank accounts due to their status. The male plaintiffs may have made statements in their immigration files discussing the difficulty of applying for leases when they were undocumented.

---

[6] It is difficult to understand the indignant tone of Plaintiffs' brief in light of the fact that Plaintiffs themselves made their undocumented status an issue of discovery by filing their Complaint.

Moreover, in the declarations the male Plaintiffs attached to their Motion for a Temporary Restraining Order (Dkts. 4-1, 4-5, and 4-9), the Plaintiffs discuss emigrating to the United States and applying for and receiving documented status in the United States. Yrapura Decl. ¶¶ 1-2 (Dkt. 4-1); Bolanos Decl. ¶¶ 1-2 (Dkt. 4-5); Cruz Decl. ¶¶ 1-2 (Dkt. 4-9) (the declarations are attached as **Exhibit B**). Now – for the first time – Plaintiffs acknowledge that they placed the male plaintiffs' immigration status at issue and offer to produce TPS and or green cards held by the male plaintiffs but contend Defendants are entitled to no more. Under Plaintiffs' position, Defendants may not test the veracity of the male plaintiffs' sworn statements about immigrating to the United States and applying for documented status in the United States.[7] Defendants are entitled to test these broad statements that Plaintiffs themselves put at issue by including them in their declarations. Further, Defendants are entitled to documents in Plaintiffs' immigration files that reference the Plaintiffs' immigration status to support Defendants' primary defense to Plaintiffs' claims. It is confounding that Plaintiffs could file a lengthy and broad Complaint alleging discrimination against undocumented immigrants but withhold information regarding the Plaintiffs' own status (or past status) as undocumented immigrants.

### B. Defendants' Discovery Requests Are Not Oppressive or Harassing

Plaintiffs then argue that Defendants' document requests seeking information regarding their immigration status are harassing and oppressive. Opp. at 8-9. This argument fails as well.

---

[7] Plaintiffs instead set up a straw man and suggest that Defendants only seek "information on the 'female plaintiffs' legal or illegal entrance to the United States'" Opp. at 8 (citing Motion at 11). However, the full quote Plaintiffs selectively cut from makes it clear that only Defendants' Interrogatories and Requests for Admission discussed in Section III of Defendants brief seek information on the female plaintiffs' entrance to the United States. Motion at 11 ("Regarding the Interrogatories and Requests for Admission cited above, Plaintiffs object to producing responses to the requests that ask for information on the female plaintiffs' legal or illegal entrance to the United States because Plaintiffs contend that such information is not relevant.") The document requests at issue in Section III of Defendants' brief seek different information – documents referencing the plaintiffs' past immigration status – not information on their entrance to the U.S.

Plaintiffs filed a federal lawsuit alleging discrimination and attached declarations discussing their emigration to the United States and their application for documented status. Exhibit A. Plaintiffs chose to put their immigration status at issue not Defendants.

Further, Plaintiffs can produce information referencing their immigration status subject to the protective order in this matter. Plaintiffs, however, say the protective order will not protect the confidentiality of this information because Defendants will know Plaintiffs' private information and some Plaintiffs still live with Defendants. Opp. at 9-10. As such, Plaintiffs will have to live with a "psychological burden." This argument is nonsense. Plaintiffs put their immigration status at issue by filing a lengthy civil rights complaint alleging discrimination against them on their status as illegal immigrants. Plaintiffs cannot file a federal lawsuit alleging discrimination, attach declarations discussing their immigration status, and then suggest it will cause a "psychological burden" to be forced to produce information relevant to their claims.

Moreover, Defendants are not interested in Plaintiffs' medical information, personal financial information, detailed information regarding Plaintiffs' minor children, and information concerning arrests that did not result in conviction. Plaintiffs may redact all such information. Further undercutting Plaintiffs' argument, like virtually all lease applicants, Plaintiffs already provided Defendants with financial information, information regarding their children and personal insurance information. Nonetheless, Plaintiffs may of course redact such information from their immigrations files.

Tellingly, not one of the cases Plaintiffs cite for the proposition that requesting immigration files can be harassing involves claims which put a plaintiff's immigration status as a central issue of the Complaint. *See Librado v. M.S. Carriers, Inc.*, , 2004 WL 583602, at *1 (N.D. Tex. Mar. 23, 2004) (lawsuit arises from a vehicular accident); *Flores v. Amigon*, 233 F.

Supp. 2d 462 (E.D.N.Y. 2002) (claims involve unpaid wages under Fair Labor Standards Act for work already performed). By contrast, here, the alleged claims in Plaintiffs' Complaint are based on alleged discrimination against undocumented immigrants. Compl. ¶ 39 ("Defendants' demand for an arbitrary selection of immigration documents from those who cannot present an original Social Security card serves no purpose other than to ***illegally and illegitimately identify and exclude undocumented immigrants*** from the Park.") (emphasis added). Defendants should be compelled to produce the discoverable information referencing their immigration status and history.

## II.  NON-RESPONSIVE RFA ANSWERS

In their responses to Defendants' RFAs 2, 3, 6, and 14 (female plaintiffs) and RFAs 1, 6, and 15 (male plaintiffs), Plaintiffs sought to avoid responding to them by re-writing them so that they could be denied. Conceding that they did not properly respond to these RFAs, and acknowledging the clear import of the RFAs, Plaintiffs now argue that they do not have to provide simple admissions or denials to Defendants' RFAs 2, 3, 6, and 14 (female plaintiffs) and RFAs 1, 6, and 15 (male plaintiffs) only on one basis – that discovery has not closed. In doing so, Plaintiffs concede that they did not provide responsive answers to these RFAs by stating that that "Plaintiffs cannot definitively state" that they were subject to disparate treatment discrimination or intentional discrimination until discovery closes. Opp. at 10. Not only does this admission undercut Plaintiffs' argument that they have indeed provided responsive answers to these RFAs, but if Plaintiffs cannot provide simple admissions or denials to these RFAs at this point, it calls into question the good faith of Plaintiffs' allegations of discrimination in their Complaint. Tellingly, Plaintiffs avoid citing to the actual qualifying language they used to provide non-responsive answers to Defendants' RFAs.

As noted in Defendants' Motion, these RFAs are designed to inquire about the heart of Plaintiffs' claims and Defendants' primary defense to Plaintiffs' claims – that it is the female plaintiffs' status as illegal immigrants that creates their problem with the Policy. Defendants do not want to provide simple admissions or denials because it will hurt their case. Plaintiffs filed a Complaint alleging a disparate impact claim – that is they claimed that Defendants' facially neutrally policy was having a disparate impact on undocumented citizens, the majority of which Plaintiffs alleged were Latinos and non-citizens. Compl. ¶¶ 55-63 (Dkt. 1). Indeed, this entire section of the Complaint is titled "Demographic Context and ***Disparate Impact***". Compl. at 11 (emphasis added). In opposing Defendants' Motion to Dismiss, Plaintiffs admitted they only were alleging a disparate impact claim not a disparate treatment claim. Pls.' Opp. to Mot. Dismiss at 10 (Dkt. 29) ("Discrimination may occur either by disparate treatment or disparate impact… Here, ***Plaintiffs bring a claim for discrimination by disparate impact.***") (citations omitted) (emphasis added). However, Judge Ellis permitted Plaintiffs' Fair Housing Act claims to survive a Motion to Dismiss not on disparate impact grounds but only on the basis of disparate treatment or intentional discrimination. Mem. Op. Denying Mot. Dismiss at 18 (Dkt. 56) (noting Plaintiffs must prove, in part, that the Policy discriminates "because of" race or citizenship). Moreover, Plaintiffs' § 1981 claim cannot be based on disparate impact, but rather can only be based on a claim of intentional discrimination.

In order to determine if Plaintiffs were making a disparate treatment claim or a claim of intentional discrimination , Defendants asked Plaintiffs to admit that they "were never denied the right to enter into a Rental Agreement to rent a Lot at the Park '***because***'" Plaintiffs are Latino or non-citizens. **Exhibit E** to Defendants' Motion (RFAs 4 and 5) (emphasis added). RFA 5 regarding non-citizenship goes to the heart of the § 1981 claim. Plaintiffs have denied these

RFAs with qualifying language that intentionally distorted and changed the clear import of the requests and now state – for the first time – that they need to wait until the close of discovery before they can respond. Plaintiffs never objected to these RFAs and never stated in their responses that they needed additional discovery to adequately answer them. Plaintiffs filed their Complaint alleging discrimination and now they must admit whether they are alleging claims of disparate treatment and/or intentional discrimination in their claim. No amount of discovery can help Plaintiffs decide if they indeed are alleging these claims or not. Plaintiffs' suggestion that they need to wait until the close of discovery to provide unqualified answers to these RFAs calls into question the good-faith basis for the allegations in their Complaint. Plaintiffs' position is – we can wait until the close of discovery to tell Defendants what type of discrimination claim we are making. That is flat wrong.

Likewise, Plaintiffs have gamed their responses to similar RFAs designed to inquire about the reasons for Plaintiffs' compliance or non-compliance with the Policy. **Exhibit E** to Defendants' Motion (RFAs 2, 3, 6 to female plaintiffs; RFAs 1, 6 to male plaintiffs). The female plaintiffs now admit to being present in the U.S. illegally and admit to not possessing valid immigration documents requested under the Policy. Exhibit E to Defendants' Motion (female plaintiffs' Response to RFAs 1, 9-11). However, the female and male plaintiffs avoid providing honest admissions or denials to these RFAs because it will force the Plaintiffs into admitting what they already have in their pleadings – that they are *only* alleging a disparate impact claim. Again, Plaintiffs never objected to these RFAs and never stated that they need to wait until the

close of discovery to squarely answer these RFAs until Defendants filed the instant Motion. Such gamesmanship should not be countenanced.[8]

Defendants served RFAs designed appropriately to narrow the issues in the case in light of Judge Ellis's Memorandum Opinion permitting Plaintiffs' claims to survive a Motion to Dismiss. Defendants have served appropriate RFAs to determine if Plaintiffs are indeed making the claims Plaintiffs previously admitted in a pleading that they were not making. Due to Plaintiffs' gamesmanship with simple answers to RFAs, Defendants ask that pursuant to Fed. R. Civ. P. 36(a)(6), the Court deem Plaintiffs' answers to these RFAs admitted.

## CONCLUSION

For the reasons set forth above, Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A. J. Dwoskin & Associates, Inc. respectfully request this Court to compel the production of documents and responses requested by Defendants and for such other relief as is just and proper.

---

[8] Plaintiffs' complaint about Defendants' production is the definitive red herring argument. Plaintiffs have not filed a Motion to Compel; Defendants have produced internal email communications; and Plaintiffs' complaint is a mere attempt to distract the Court from their deficient responses to Defendants' RFAs.

Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT
LIMITED PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/ _____
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the October 20, 2016, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
mdingman@reedsmith.com
jdebettencourt@reedsmith.com