# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ, <br><br> *Plaintiffs*, <br><br> vs. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC.; <br><br> *Defendants*. | Civil Action No. _____ |

## DECLARATION OF ESTEBAN RUBEN MOYA YRAPURA

I, Esteban Ruben Moya Yrapura, declare under penalty of perjury that the following is true:

1. I am a resident of Fairfax, Virginia. I was born and raised in Bolivia. I moved to the United States from Bolivia over 22 years ago.

2. I came to the United States in pursuit of better opportunities for me and my family. Since arriving in the United States, I have worked a variety of construction jobs. With the help of one of my former employers, I obtained legal permanent resident status in the United States. I am proud of the life I have built in the United States for me and my family.

3. I currently own and live in a manufactured, or "mobile" home at Waples Mobile Home Park (the "Park"), which is located in Fairfax, Virginia. I live with my wife, Yovana Jaldin Solis; my 16-year-old son; and my 13-year-old daughter.



EXHIBIT B

4. I understand that the company that operates the Park is A.J. Dwoskin & Associates, Inc ("Dwoskin & Associates"). Although I am not 100% certain, I also understand that Waples Mobile Home Park Limited Partnership ("Waples L.P.") and Waples Project Limited Partnership ("Waples Project L.P.") own the Park. Dwoskin & Associates, Waples L.P., and Waples Project L.P. are the Defendants in this lawsuit.

5. I bought my home at the Park for approximately $25,000 in 2011. I bought it from a departing resident of the park. The title to my home is in my and my wife's name. As of today, my home is paid off in full.

6. I am a proud homeowner. Since buying my home in the Park, I have spent substantial amounts fixing and improving the plumbing, floors and bathrooms. I have also spent substantial time painting and redecorating my home to best meet my family's needs.

7. Although I own my home, I rent the land that it sits on from Dwoskin & Associates, who I understand is an agent of the Park's owners. I submit lease payments for this land specifically to representatives of Dwoskin & Associates, including Josephine Giambanco, who is a property manager. I make these payments on a monthly basis. I pay my lease by money order made out to "Waples Mobile Home Park."

8. Even though I live in a "mobile home" park, I cannot easily move my home, which is effectively permanently fixed in its location on the lot I rent from Dwoskin & Associates.

9. In February 2011, I entered into a one-year Lease Agreement with Dwoskin & Associates for my lot at the Park. Each year after that, I renewed my lease with Dwoskin & Associates for my lot. Specifically, I renewed my lease in 2012, 2013, 2014, and, most recently, for a lease term beginning on February 1, 2015. This Lease Agreement has a monthly rent of

2

$745. (Attached as **Exhibit A-1** is a true and correct copy of my most recent Lease Agreement, which I signed on December 4, 2014.)

10. Throughout my time at the Park, I have never missed any rent payments, or even made any late rent payments. Additionally, I believe I have always complied with all of the Park's rules and regulations, including, for example, by submitting to the annual inspections conducted by Defendants. I consider myself to be a respectful Park resident.

11. In January 2016, I spoke to Ms. Giambanco about renewing my lease for another one-year term beginning on February 1, 2016. However, when I spoke to Ms. Giambanco, she explained that I could not renew my lease because my wife had not provided to the Park's management a Social Security card.

12. I was shocked and confused by Ms. Giambanco's statement. My wife has been living with me in my home since I first moved into the Park. In fact, when I first moved in, I told Dwoskin & Associates that my family would be living with me, and someone in the leasing office said this was fine.

13. In addition, Dwoskin & Associates has known that my wife has been living with me at the Park since I moved there. I know this because our lot is located close to the Park's management office; my wife frequently speaks to management, including Ms. Giambanco; and Dwoskin & Associates has conducted annual inspections of my home, at which my wife has always been present, and has acknowledged my wife's presence through those inspections. Both my wife and I are listed on the title to the trailer, of which the leasing office retains a copy.

14. On January 18, 2016, I received a letter from Ms. Giambanco stating that I could not renew my lease "due to unauthorized occupants living in [my] home." That letter also stated

3

that I would be put on a month-to-month lease at a "new monthly rent" of $870. (Attached as **Exhibit A-2** is a true and correct copy of this letter.)

15. I was shocked and confused by this letter. I told Ms. Giambanco that my wife did not have a Social Security card. My wife has an Individual Taxpayer Identification Number ("ITIN"), but my understanding is that Dwoskin & Associates will not accept this in order to conduct its background check and to "register" my wife.

16. The Park also requires that both my wife and I submit a rental application and identification in order to renew the lease. We are willing to do so, but after my January discussion with Ms. Giambanco, we were not offered the opportunity to even submit the application unless my wife could provide either a Social Security card or a valid passport, visa, and a arrival departure document called an I-94.

17. In March 2016, I received another letter stating that, as of June 1, 2016, my month-to-month rent premium would increase to $300 per month. (Attached as **Exhibit A-3** is a true and correct copy of this letter.) After totaling up all of the new fees, Dwoskin & Associates will be charging me $1,070 per month for my lease starting in June. This is $325 more per month than I have been paying since my last lease agreement.

18. My family and I cannot afford this rent increase. What my family is earning now is only enough to cover our basic living expenses. Paying $1,070 per month is far beyond my family's means.

19. My family has no savings.

20. I work in construction. If we had to pay $1,070 in rent, I would have to work significantly more than I do now. I would have to work as many hours as possible, both at night

and during weekends. Given the nature of my work, however, I am not sure I would be able to find enough work.

21. My wife is a housekeeper. She will also have to work significantly more, and finding that work will be incredibly challenging. Currently, she has a fixed number of clients that she has had for many years. It would take her a significant amount of time to find new clients. In fact, I am not even sure that this may be possible because she finds clients by word of mouth.

22. If my family had to pay this new $300 premium each month, we would have to make tremendous sacrifices just to pay our rent. I worry that, even if we were lucky enough to find some additional work here and there, we may not even have enough money leftover for food and other basic expenses, including for expenses related to my children's education, such as school supplies.

23. My family has significant ties to the local community. Most important to me and my wife are the ties that my children have to their school communities. Both are thriving at their respective schools. They have many friends, and are leading fulfilling, happy lives. This is exactly the type of life that I wanted to create when I moved to the United States. My family's priority is ensuring that my children can continue attending their current schools.

24. However, if we were unable to pay the higher rent, we would be forced to look for a new home somewhere else. As a result, my children would no longer be able to attend their current schools because other nearby communities are too expensive for us. We would also lose the substantial investments we have made in our home and into the local community.

25. We are scared about these possible consequences, which is why we are asking the court for a temporary restraining order and preliminary injunction until the court can consider the full merits of our lawsuit.

26. Everything that has happened since the beginning of 2016 has been very stressful for me and my family. Every day, my wife and I worry about how we are going to make enough money to pay the new rent. Because the $300 increase will start on June 1, we are even more stressed about our situation and about the hardships that the increase will impose on me and my family.

27. Yo no leo inglés. Lo anterior me ha sido leído en español, antes de firmarlo. Yo, Esteban Ruben Moya Yrapura, debidamente enterado de las penas de perjurio en que incurren los que declaran con falsedad, hago saber que lo que acabo de manifestar es verdadero y cierto. Cumplido y Firmado en esta fecha. *(I do not read English. The foregoing has been read to me in Spanish before I signed it. I, Esteban Ruben Moya Yrapura, declare under penalty of perjury that the foregoing is true and correct. Executed and Signed this date.)*

Executed in Fairfax, Virginia on the 20 day of May, 2016.

_____
Esteban Ruben Moya Yrapura

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ, <br><br> *Plaintiffs*, <br><br> vs. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC.; <br><br> *Defendants*. | Civil Action No. _____ |

## DECLARATION OF FELIX ALEXIS BOLANOS

I, Felix Alexis Bolanos, declare under penalty of perjury that the following is true:

1. I am a resident of Fairfax, Virginia. I moved to the United States from El Salvador in 2000, approximately 16 years ago. I obtained temporary protected status ("TPS") in the United States.

2. I came to the United States in pursuit of better opportunities for me and my family. Since arriving in the United States, I have worked a variety of construction jobs. I am proud of the life I have built in the United States for me and my family.

3. I currently own and live in a manufactured, or "mobile" home at Waples Mobile Home Park (the "Park"), which is located in Fairfax, Virginia. I live with my wife, Ruth Rivas; my 8-year-old and 3-year-old daughters. My wife, Ruth Rivas, came to the United States in 2004 from El Salvador. Both of my daughters are U.S. citizens.

4. I understand that the company that operates the Park is A.J. Dwoskin & Associates, Inc ("Dwoskin & Associates"). Although I am not 100% certain, I also understand that Waples Mobile Home Park Limited Partnership ("Waples L.P.") and Waples Project Limited Partnership ("Waples Project L.P.") own the Park. Dwoskin & Associates, Waples L.P., and Waples Project L.P. are the Defendants in this lawsuit.

5. I bought my home at the Park for approximately $16,000 in 2012. The title to my home is in my name. As of today, my home is paid off in full.

6. I am a proud homeowner. Since buying my home in the Park, I have spent substantial amounts fixing and improving it, including adding air conditioning and siding. I have also spent substantial time and money on other remodeling projects to best meet my family's needs. In total, I have invested approximately $9,000 in updates and upgrades.

7. Although I own my home, I rent the land that it sits on from Dwoskin & Associates, who I understand is an agent of the Park's owners. I submit lease payments for this land specifically to representatives of Dwoskin & Associates, including Josephine Giambanco ("Ms. Giambanco"), who is a property manager. I make these payments on a monthly basis. I pay my lease by money order made out to "Waples Mobile Home Park."

8. Even though I live in a "mobile home" park, I cannot easily move my home, which is effectively permanently fixed in its location on the lot I rent from Dwoskin & Associates. The home was built in 1972.

9. In March 2012, I entered into a one-year Lease Agreement Dwoskin & Associates for my lot at the Park. Each year after that, I renewed my lease with Dwoskin & Associates for my lot. Specifically, I renewed my lease in 2013, 2014, and, most recently, for a lease term beginning on April 1, 2015. This Lease Agreement has a monthly rent of $745. (Attached as

**Exhibit B-1** is a true and correct copy of my most recent Lease Agreement, which I signed on March 20, 2015.)

10. Throughout my time at the Park, I have never missed any rent payments, or even made any late rent payments. Additionally, I believe that I have always complied with all of the Park's rules and regulations, including, for example, by submitting to the annual inspections conducted by Defendants. I consider myself to be a respectful Park resident.

11. In early 2016, Ms. Giambanco performed an annual inspection of my home. My wife, Ruth Rivas, was present during the inspection, and Ms. Giambanco asked me who she was and whether she had a Social Security number. Ms. Giambanco stated that we could not renew our lease because my wife had not provided to the Park's management a Social Security card.

12. I was shocked and confused by Ms. Giambanco's statement. My wife has been living with me in my home since I first moved into the Park. In fact, when I first moved in, I told Dwoskin & Associates that my family would be living with me, and that Ruth did not have a Social Security number. A person in the leasing office, who I believe was the property manager at the time, said this was fine.

13. In addition, Dwoskin & Associates has known that my wife has lived with me at the Park since I moved there. I know this because property managers have conducted annual inspections of my home, at which my wife has usually been present, and have acknowledged my wife's presence through those inspections. Also, both my wife and I are listed on the insurance information for our home, which we have submitted to the leasing office. Each year at renewal, I told the people working in the leasing office that Ruth does not have a SSN and there was never any problem.

14. On March 2, 2016, I received a letter from Ms. Giambanco stating that I could not renew my lease "due to unauthorized occupants living in [my] home." That letter also stated that I would be put on a month-to-month lease at a "new monthly rent" of $870. (Attached as **Exhibit B-2** is a true and correct copy of this letter.)

15. I was shocked and confused by this letter. I told Ms. Giambanco that my wife did not have a Social Security card. My wife has an Individual Taxpayer Identification Number ("ITIN"), but my understanding is that Dwoskin & Associates will not accept this in order to conduct its background check and to "register" my wife.

16. The Park also requires that both my wife and I submit a rental application and identification in order to renew the lease. We are willing to do so, but we were not offered the opportunity to even submit the application unless my wife could provide either a social security card or a valid passport, Visa, and a arrival departure document called an I-94.

17. In March 2016, I received another letter stating that, as of June 1, 2016, my month-to-month rent premium would increase to $300 per month. (Attached as **Exhibit B-3** is a true and correct copy of this letter.) After totaling up all of the new fees, Dwoskin & Associates will be charging me $1,070 per month for my lease starting in June. This is $325 more per month than I have been paying since my last lease agreement.

18. My family and I cannot afford this rent increase. What my family is earning now is only enough to cover our basic living expenses. Paying $1,070 per month is far beyond my family's means.

19. My family has limited savings.

20. I work in construction. If we had to pay $1,070 in rent, I would have to work significantly more than I do now. I would have to work as many hours as possible, both at night

4

and during weekends. Given the nature of my work, however, I am not sure I would be able to find enough work.

21. If my family had to pay this new $300 premium each month, we would have to make tremendous sacrifices just to pay our rent. I worry that, even if we were lucky enough to find some additional work here and there, we may not even have enough money left over for basic expenses, including for expenses related to my children's education, such as school supplies.

22. My family has significant ties to the local community. Most important to me and my wife are the ties that my children have to their school communities. My 8-year-old daughter is thriving at her school. She has many friends, and is leading a fulfilling, happy life. This is exactly the type of life that I wanted to create when I moved to the United States. My family's priority is ensuring that my 8-year-old daughter can continue attending her current school.

23. However, if we were unable to pay the higher rent, we would be forced to look for a new home somewhere else. As a result, my 8-year-old daughter may no longer be able to attend her current school because other nearby communities are too expensive for us. We would also lose the substantial investments we have made in our home and into the local community.

24. We are scared about these possible consequences, which is why we are asking the court for a temporary restraining order and preliminary injunction until the court can consider the full merits of our lawsuit.

25. Everything that has happened since the beginning of 2016 has been very stressful for me and my family. Every day, my wife and I worry about how we are going to make enough money to pay the new rent. Because the $300 increase will start on June 1, we are even more

stressed about our situation and about the hardships that the increase will impose on me and my family.

26. Yo no leo inglés. Lo anterior me ha sido leído en español, antes de firmarlo. Yo, Felix Alexis Bolanos, debidamente enterado de las penas de perjurio en que incurren los que declaran con falsedad, hago saber que lo que acabo de manifestar es verdadero y cierto. Cumplido y Firmado en esta fecha. *(I do not read English. The foregoing has been read to me in Spanish before I signed it. I, Felix Alexis Bolanos, declare under penalty of perjury that the foregoing is true and correct. Executed and Signed this date.)*

Executed in Fairfax, Virginia on the 20 day of May, 2016.

X _____
Felix Bolanos

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ, <br><br> *Plaintiffs*, <br><br> vs. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC.; <br><br> *Defendants*. | Civil Action No. _____ |

## DECLARATION OF HERBERT DAVID SARAVIA CRUZ

I, Herbert David Saravia Cruz, declare under penalty of perjury that the following is true:

1. I am a resident of Fairfax, Virginia. I was born and raised in El Salvador. I moved to the United States from El Salvador 15 years ago.

2. I came to the United States in pursuit of better opportunities for me and my family. Since arriving in the United States, I have worked a variety of jobs. I obtained an employment authorization document ("EAD") after I was granted Temporary Protected Status ("TPS") in 2002. I am proud of the life I have built in the United States for me and my family.

3. I currently own and live in a manufactured, or "mobile" home at Waples Mobile Home Park (the "Park"), which is located in Fairfax, Virginia. I live with my wife, Rosa Elena Amaya; and our 9-year-old, 6-year-old, 4-year-old, 2-year-old, and 7-month-old children, who are all U.S. citizens.

4. I understand that the company that operates the Park is A.J. Dwoskin & Associates, Inc ("Dwoskin & Associates"). Although I am not 100% certain, I also understand that Waples Mobile Home Park Limited Partnership ("Waples L.P.") and Waples Project Limited Partnership ("Waples Project L.P.") own the Park. Dwoskin & Associates, Waples L.P., and Waples Project L.P. are the Defendants in this lawsuit.

5. I moved to the Park with my wife and my only child at the time, on January 1, 2010, pursuant to a sublease agreement to live in the home of another tenant, Ricardo Carcamo. Mr. Carcamo had a lease with the Park.

6. I bought my current home at the Park for approximately $5,000 in February 2012. I bought it from the family of a recently-deceased resident of the park. The title to my home is in my name. As of today, my home is paid off in full.

7. I am a proud homeowner. Since buying my home in the Park, I have spent substantial amounts of money in improvements including the roof, siding, patio, interior. I have also spent substantial time redecorating my home to best meet my family's needs.

8. Although I own my home, I rent the land that it sits on from Dwoskin & Associates, who I understand is an agent of the Park's owners. I submit lease payments for this land specifically to representatives of Dwoskin & Associates, including Josephine Giambanco ("Ms. Giambanco"), who is a property manager. I make these payments on a monthly basis. I pay my lease by checks or money order made out to "Waples Mobile Home Park."

9. Even though I live in a "mobile home" park, I cannot easily move my home, which is effectively permanently fixed in its location on the lot I rent from Dwoskin & Associates. The home was built in 1981.

10. Around February 2012, I entered into a one-year Lease Agreement with Dwoskin & Associates for my lot at the Park. Each year after that, I renewed my lease with Dwoskin & Associates for my lot. Specifically, I renewed my lease in 2013, 2014, and, most recently, for a lease term beginning on February 1, 2015. This Lease Agreement has a monthly rent of $745. (Attached as **Exhibit C-1** is a true and correct copy of my most recent Lease Agreement, which I signed on January 15, 2015.)

11. Throughout my time at the Park, I have maintained a good payment history. Additionally, I have always complied with the Park's requests that I submit to the annual inspections conducted by Defendants. I consider myself to be a respectful Park resident.

12. In January 2016, I spoke to Ms. Giambanco about renewing my lease for another one-year term beginning on February 1, 2016. However, when I spoke to Ms. Giambanco, she explained that my wife needed to complete her own application and list a Social Security number. Ms. Giambanco said if my wife was unable to do so, then she would have to leave the Park, and only me and my children would be able to live there.

13. I was shocked and confused by Ms. Giambanco's statement. My wife has been living with me in our home since I first moved into the Park. In fact, when I first moved in, I told Dwoskin & Associates that my family would be living with me, and someone in the leasing office said this was fine.

14. In addition, Dwoskin & Associates has known that my wife has been living with me at the Park since I moved there. I included my wife's name in the resident application form I signed when we first moved to the Park and when I signed the lease directly with Dwoskin & Associates; Dwoskin & Associates has registered in their computer system my wife as an occupant; and Dwoskin & Associates has conducted annual inspections of my home, at which

3

my wife has always been present, and has acknowledged my wife's presence through those inspections.

15. In February 2016, when I went to the management office to pay my rent, Ms. Giambanco asked if I had resolved my wife's situation yet. When I answered no, Ms. Giambanco informed me that if I did not come back to the office to sign paperwork stating that my wife was leaving the property, I would receive a "21-30" letter and the sheriff would place an eviction notice on my home. Ms. Giambanco also said they were placing me on a month-to-month lease at a "new monthly rent" of $870, which included a $25 year rent increase plus a $100 premium for being on a month-to-month lease.

16. I have not received a notice to cure violations or vacate my home at the time of the signing of this declaration, but my wife and I live in fear that we will soon be forced out of our home.

17. Facing the threat of an increased monthly payment, at best, and an eviction, at worst, my wife and I decided to sell our mobile home. In or around February 2016, I informed Ms. Giambanco that I was going to sell and listed my home for sale.

18. On March 11, 2016, I received a letter from Ms. Giambanco stating that the month-to-month premium would increase to $300 per month. (Attached as **Exhibit C-2** is a true and correct copy of this letter.) After totaling up all of the new fees, Dwoskin & Associates will be charging me $1,070 per month starting in June for my lease. This is $325 more per month than I have been paying under my last lease agreement.

19. My family and I cannot afford this rent increase. What my family is earning now is only enough to cover our basic living expenses. Paying $1,070 per month is far beyond my family's means.

4

20.  I have a small flooring company where I do most of the work. If we had to pay $1,070 in rent, I would have to work significantly more than I do now. I would have to work as many hours as possible, both at night and during weekends. Given the nature of my work, however, I am not sure I would be able to find enough work.

21.  My wife cannot easily take on work outside the home, as she takes care of our five children.

22.  If my family had to pay this new $300 premium each month until our home sells, we would have to make tremendous sacrifices just to pay our rent. I worry that, even if we were lucky enough to find some additional work here and there, we may not even have enough money leftover for basic expenses, including for expenses related to my children's education, such as school supplies.

23.  Everything that has happened since the beginning of 2016 has been very stressful for me and my family. Every day, my wife and I worry about how we are going to make enough money to pay the new rent. Because the $300 increase will start on June 1, we are even more stressed about our situation and about the hardships that the increase will impose on me and my family, which is why we are asking the court for a temporary restraining order and preliminary injunction until the court can consider the full merits of our lawsuit.

24.  Yo no leo inglés. Lo anterior me ha sido leído en español, antes de firmarlo. Yo, Herbert David Saravia Cruz, debidamente enterado de las penas de perjurio en que incurren los que declaran con falsedad, hago saber que lo que acabo de manifestar es verdadero y cierto. Cumplido y Firmado en esta fecha. *(I do not read English. The foregoing has been read to me in Spanish before I signed it. I, Herbert David Saravia Cruz, declare under penalty of perjury that the foregoing is true and correct. Executed and Signed this date.)*

Executed in Fairfax, Virginia on the 20 day of May, 2016.

_____
Herbert David Saravia Cruz

6