## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

ROSY GIRON DE REYES, *et al.*,

        Plaintiffs,

v.

WAPLES MOBILE HOME PARK
LIMITED PARTNERSHIP, *et al.*,

        Defendants.

Civil No.:  1:16cv563-TSE-TCB

### OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A. J. Dwoskin & Associates, Inc. (collectively "Defendants"), by counsel, hereby submit their Opposition to Plaintiffs' Motion to Compel ("Motion"). As detailed below, Defendants respectfully request that the Court deny Plaintiffs' Motion.

### INTRODUCTION

Plaintiffs Motion to Compel seeks two categories of documents: 1) Correspondence with Plaintiffs' background check company, Yardi, that was undertaken as part of Defendants' investigation into the allegations of Plaintiffs' Complaint; and 2) Documents Plaintiffs redacted solely on relevance grounds. Plaintiffs' Motion fundamentally misses the point on both categories.

First, the communications between Defendants and Yardi were undertaken at the direction of counsel as part of Defendants' investigation into Plaintiffs' allegations. As such, these communications are protected under the work-product doctrine. Plaintiffs' complaint makes various allegations regarding Defendants' background check processes and the necessity of certain documents for these background check processes. Plaintiffs also propounded discovery

to Defendants asking Defendants to describe their background check processes. In order to investigate these allegations, Defendants reached out to Yardi at the direction of counsel. Rather, than properly discovering the underlying facts from Yardi, Plaintiffs now want to peer into Defendants' investigation of Plaintiffs' claims to determine *when* Defendants learned *what* about how Yardi conducted background checks for Defendants. Such a discovery strategy is improper. If Plaintiffs want to learn about the underlying discoverable facts - Yardi's services for Defendants – Plaintiffs will have to undertake their own discovery efforts, which Plaintiffs have failed to do.

Second, Plaintiffs request documents that Defendants have redacted on the basis of relevance. Plaintiffs argue that redacting documents on the grounds of relevance is improper because 1) there is a protective order; 2) these documents were not logged on a *privilege* log. Both of Plaintiffs' arguments completely miss the mark on why these documents are redacted. Defendants have withheld these documents on the grounds of *relevance* not privilege; as expressly stated to Plaintiffs' counsel during the meet and confer held only hours before Plaintiffs filed their motion to compel. Defendants do not contend that this information is withheld because the protective order will not provide sufficient protection for the information. Likewise, Defendants do not need to log documents that are redacted on the grounds of relevance.

Plaintiffs' argument that Defendants must log documents redacted based on discoverability would turn discovery in modern day civil litigation on its head. The decision to redact documents on relevance grounds is no different than counsel's decision to withhold irrelevant documents discovered in a search for discoverable documents. In essence, Plaintiffs assert that irrelevant information, when redacted, must be produced if there is a protective order

in place and must be logged on a relevance log of some sort. This is a completely novel approach to discovery. The logical extension of Plaintiffs' argument is that all irrelevant documents, discovered by counsel on a search for relevant documents but withheld on relevance grounds, be produced if there is a protective order in place. If these irrelevant documents are withheld, Plaintiffs would argue they must be logged. Defendants' counsel is unaware of any Court endorsing this approach in any litigation. Finally, Plaintiffs do not argue that these redactions contain relevant information, and Plaintiffs provide no basis for the Court to determine that these redactions contain relevant information.

Accordingly, Defendants respectfully request the Court to deny Plaintiffs' Motion to Compel.

## BACKGROUND

On August 18, 2016, the Court entered a Stipulated Protective Order (Dkt. 45). In relevant Part, the Stipulated Protective Order stated "***No discoverable information*** may be withheld from discovery on the ground that the material to be disclosed requires protection greater than that afforded by this Order unless the party claiming a need for greater protection moves for an order providing such special protection by no later than the date on which its response to such discovery is due." (Dkt. 45) (emphasis added). Of course, the Stipulated Protective Order did not state that irrelevant information must be produced under the protective order.

On September 19 and October 13, 19, 21, 2016, Defendants produced responsive documents to Plaintiffs. On October 21, 2016, Defendants produced a privilege log to Plaintiffs regarding documents withheld under a claim of privilege from Defendants' October 13, 19, and 21 productions. **Exhibit A.** Defendants did not withhold any documents on privilege grounds

from their September 19 production; thus, Plaintiffs' claims that the privilege log was overdue are without merit. *See* Motion at 5.

On November 4, 2016, two weeks after receiving Defendants' privilege log, Plaintiffs raised certain issues regarding Defendants' privilege log. **Exhibit B.** Notably, in this correspondence, Plaintiffs complained about documents redacted by Defendants but failed to ***identify a single document*** that they contended was objectionable. Defendants responded to Plaintiffs by explaining their position on certain issues (**Exhibit C**) and updating their privilege log out of an abundance of caution (**Exhibit D**). In responding to Plaintiffs, Defendants asked that Plaintiffs to identify the documents that Plaintiffs asserted contained objectionable redactions. **Exhibit C**. The day Plaintiffs filed their Motion, and approximately two and a half hours before the meet and confer, Plaintiffs finally identified the documents with the redactions but in that same correspondence Plaintiffs bizarrely contended that they did not need to identify the documents they contend were improperly redacted. **Exhibit E.**

During the meet and confer, when Defendants' counsel pointed out that Plaintiffs did not direct Defendants to the redacted documents which Plaintiffs were objecting to until the day they intended to file the Motion, Plaintiffs' counsel suggested that Defendants should have known the exact documents Plaintiffs were objecting to because Defendants made the redactions. Importantly, when Defendants' counsel told Plaintiffs' counsel that the redactions were made on the basis of relevance and asked Plaintiffs' counsel to explain why they contended this information was relevant, Plaintiffs' counsel only stated that the redacted information was part of documents that had otherwise been produced. Plaintiffs' counsel provided no other basis for their contention and appear to argue that any redaction based on relevance or discoverability is improper.  Furthermore, Defendants' counsel explained that at least three of the documents that

Plaintiffs identified as having redactions only appeared that way and the files contained no redactions. Approximately two hours after the meet and confer and despite Defendants' assertion that they would review the fifty-five documents Plaintiffs finally identified the day they filed the Motion, Plaintiffs rushed to file the instant Motion. Evidently, Plaintiffs only paid lip service to the meet and confer requirement. Tellingly, in Plaintiffs' rushed Motion, Plaintiffs still seek to remove non-existent redactions from documents which Defendants' counsel previously explained contained no redactions.

Since Plaintiffs filed their Motion, Defendants have reviewed the fifty-five documents Plaintiffs identified as containing redactions. Defendants have produced information on three documents that reference the Plaintiffs that was previously redacted. Out of an abundance of caution, Defendants have un-redacted certain information on five other documents. The remaining redacted documents contain information that is completely irrelevant to the claims and defenses at issue in this case. Notably, Plaintiffs have not put forth any facts or argument as to why the remaining redacted information is relevant.

## ARGUMENT

### I.    COMMUNICATIONS WITH YARDI AS PART OF COUNSEL'S INVESTIGATION ARE PROTECTED UNDER THE WORK PRODUCT DOCTRINE

Defendants' counsel directed that Defendants investigate Plaintiffs' claims surrounding Defendants background check process by communicating with Yardi employees. As a result, these communications are part of Defendants' investigation and are protected by the work-product doctrine.

Plaintiffs argue that the Court should compel Defendants to produce emails between Defendants and Yardi employees on the grounds that the emails are not privileged, that any privilege has been waived, that the emails are not work product, and that any work product

immunity was waived. Motion at 8-12. As a primary matter, Plaintiffs' arguments regarding attorney-client privilege are misplaced because Defendants have withdrawn any claim of attorney-client privilege as to these documents.[1] Plaintiffs' argument regarding the work product doctrine fails because the emails between Defendants and Yardi were prepared at the direction and instruction of counsel in connection with this litigation. All of the communications with Yardi on Defendants' privilege log took place as Defendants investigated Plaintiffs' allegations at counsel's instruction after Plaintiffs filed and served the Complaint. There was no waiver of the work product immunity because Defendants had a reasonable expectation that the emails would stay between Defendants and Yardi and would not be disseminated to others. In addition, Plaintiffs cannot show a substantial need for the emails, as they can obtain the facts underlying the protected communications by deposing or subpoenaing Yardi. Therefore, the emails are protected work product, and Plaintiff's Motion to Compel should be denied.

    A.    **Legal Standard**

Federal Rule of Civil Procedure 26(b)(3) provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>>
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

---

[1] Plaintiffs spend two and a half pages setting up a straw man, only to acknowledge, albeit in a footnote, that Defendants have informed them that Defendants do not claim attorney-client privilege protection for the communications with Yardi. Motion at 8 n.3.

Fed. R. Civ. P. 26(b)(3); *see also E.I. DuPont de Nemours and Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600, 604 (E.D. Va. 2010) ("Work product protection . . . shields from discovery work product prepared by an attorney, or at the direction of an attorney, in anticipation of litigation."). The work product doctrine "exists to encourage an attorney to prepare effectively for litigation. It would be consistent with the purpose of the work product doctrine to *encourage* sharing of of the material with anyone who could help the lawyer prepare for trial." *FEC v. The Christian Coalition*, 178 F.R.D. 61, 76 (E.D. Va. 1998).

> As stated by the Fourth Circuit Court of Appeals:
>
> [T]he jurisprudence of Rule 26(b)(3) . . . divides work product into two parts, one of which is "absolutely" immune from discovery and the other only qualifiedly immune. As a philosophical extension of the attorney-client privilege . . . the pure work product of an attorney insofar as it involves "mental impressions, conclusions, opinions, or legal theories . . . concerning the litigation" is immune to the same extent as an attorney-client communication. This is so whether the material was actually prepared by the attorney or by another "representative" of the party. All other documents and tangible things prepared in anticipation of litigation or for trial may be discovered, but only on a showing of "substantial need."

*Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983-84 (4th Cir. 1992).

### B.    <u>The Emails from Defendants to Yardi Are Work Product</u>

In their Complaint, Plaintiffs make allegations regarding Defendants' background check policies, the processes necessary for a background check, and how background check companies use information to run background checks. Compl. ¶¶ 29, 42, 43, 34 – 36. In addition, Plaintiffs propounded Interrogatories to Defendants, requesting, among other things, that Defendants "[d]escribe the process by which you conduct criminal background and/or credit checks, including the third party products and services you have considered, have used, or currently use, including Yardi Systems, Inc.'s products or services, and the reasons for using or not using

each."    Interrogatory 12, Plaintiff Rosy Giron de Reyes First Set of Interrogatories to All Defendants.

At the direction of and under the instruction of their counsel, and as part of their investigation for defending this case, Defendants emailed Yardi regarding its criminal background and credit check processes to confirm the details of those processes.  Thus, because the emails were prepared in connection with this litigation and at the direction of counsel, they fit squarely within the definition of work product.  *See* Fed. R. Civ. P. 26(b)(3) ("documents . . . prepared in anticipation of litigation or for trial by or for another party or its representative"); *DuPont*, 269 F.R.D. at 604 (the work product doctrine protects documents "prepared by an attorney, or at the direction of an attorney, in anticipation of litigation").

### C.    The Emails from Yardi to Defendants Are Work Product

Plaintiffs argue that emails from Yardi employees to Defendants are not work product because the Yardi employees are not representatives of Defendants and are not parties to this litigation.  Motion at 11.  However, the emails from Yardi to Defendants were in response to emails from Defendants that are, as discussed above, protected work product.  In other words, the emails from Yardi are part of a conversation that Defendants had with Yardi at the direction of Defendants' counsel.  Thus, Yardi was responding to Defendants' investigation of Plaintiffs' allegations, and Defendants' investigation, including counsel's thought processes and strategies, are necessarily part of those communications.

Plaintiffs cite *Johnson v. Standex Int'l Corp.*, 153 F.R.D. 80 (E.D. Va. 1994), and *Green v. Sauder Mouldings, Inc.*, 223 F.R.D. 304 (E.D. Va. 2004), for the proposition that work product protection does not apply to documents created by one who is not a party or a representative of a party.  Motion at 10.  However, these cases are inapposite.  In *Johnson*, the court held that a *non-*

*party* could not invoke the work product doctrine as a basis for refusing to produce documents in response to a subpoena. *Johnson*, 153 F.R.D. at 83; *see also Collins v. Mullins*, 170 F.R.D. 132, 137 (W.D. Va. 1996) ("courts have repeatedly held that only a party to the litigation can invoke Rule 26(b)(3)") (citing various cases). In the present case, by contrast, it is Defendants who seek work product immunity for the emails ***in Defendants' possession***.

In *Green*, an individual sued a facility at which he was injured. His employer's insurer, a third party, retained Engineering Design & Testing Corporation ("EDT") to investigate the accident. Later, after a lawsuit was filed, the plaintiff, Green, retained as an investigating expert the EDT employee who did the investigation. The court held that the plaintiff could not seek work product protection for the investigative report because the investigator was not his representative when he prepared the report. Green, 223 F.R.D. at 306-07. That situation is inapposite to the situation at hand. In the present case, Defendants themselves exchanged emails with Yardi employees as part of Defendants' investigation at the direction of counsel. Yardi employees sent emails in response to Defendants' investigation of Yardi's processes for conducting criminal background and credit checks. Thus, Yardi employees were responding to Defendants' investigation into Plaintiffs' allegations. Thus, there was an expectation by Defendants that its investigative efforts, made specifically in the context of this litigation, would have work product immunity and would be protected from disclosure from Defendants. Accordingly, the emails from Yardi are work product that should be protected from discovery.

### D.    The Work Product Immunity Was Not Waived

Plaintiffs argue that Defendants waived work product immunity by sending emails providing information to or requesting information from Yardi employees. Motion at 11.

However, the immunity was not waived because Defendants had a reasonable expectation that their communications with Yardi would not be disseminated to other parties.

Plaintiffs argue that "a party or its attorneys waives work product privilege 'when disclosure occurs in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise privileged material.'" Motion at 11 (quoting *In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981)). However, a fuller excerpt from that case makes clear that there is no waiver where the interests of the third party are not adverse to the party seeking work product protection:

> *Disclosure to a person with an interest common to that of the attorney or the client normally is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to such a waiver.* However, when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection. Additionally, release of otherwise protected material without an intent to limit its future disposition might forfeit work product protection, regardless of the relationship between the attorney and the recipient of the material. In other words, to effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material.

*Id.* (emphasis added); *compare E.I. DuPont de Nemours and Co. v. Kolon Indus., Inc.*, No. 3:09cv58, 76 Fed. R. Serv. 3d 453, 2010 WL 1489966, at *4 (E.D. Va. Apr. 13, 2010) ("when privileged material is shared with a third party who is an ally of the discloser, one who has 'common interests' with the disclosing party, such disclosure is not considered 'testimonial,' and does not waive the work product privilege."); *with Green*, 223 F.R.D. at 307 ("Waiver of the privilege occurs when materials that are otherwise protected work-product are disclosed to someone with interests adverse to the party asserting the privilege."). Further, in *FEC v. The Christian Coalition*, the Court held: "It would completely stand the work product doctrine on its

- 10 -

head to allow discovery of an attorney's work product simply because the attorney shared it with someone who was helping him prepare for litigation." 178 F.R.D. at 76.

In *FEC v. The Christian Coalition* the court concluded that the work product doctrine had not been waived by the sharing of documents with a third party. In reaching its conclusion the court held that "the purpose of the work product doctrine is to protect information from opposing parties, rather than against all others outside a confidential relationship …We conclude then that while the mere showing of voluntary disclosure to a third party will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege." *Id.* at 76. The court therefor held that there was no waiver in that case with respect to the documents shown to a third party.

In *DuPont*, Kolon sought production of documents concerning communications between DuPont and law enforcement agents during the course of a criminal investigation of Kolon and Michael Mitchell, a former DuPont employee who allegedly ferried trade secrets from DuPont to Kolon at Kolon's invitation. *DuPont*, 2010 WL 1489966, at *2. Based on the work product doctrine, DuPont refused to produce six emails sent by DuPont to various government agents. It also refused to produce an entry from the diary of Harry Yang, a retired DuPont employee who cooperated with the investigation, because it referenced a visit and discussion that DuPont's in-house attorney had had with him about anticipated litigation. *Id.* Kolon argued that the DuPont had waived work product protection by disclosing its investigations about Mitchell to the government and its litigation plans to Yang. *Id.*

The Court held that the emails were protected work product: "DuPont, having demonstrated that the Government Emails were sent after the government began its investigation, and having shown that DuPont and the government had a common interest, and

having shown that it had a reasonable expectation that confidentiality of the communications would be preserved, has demonstrated that, as to those documents to which the work product protection applies, the protection has not been waived by disclosure to the government." *Id.* at *8.

In the present case, Defendants reasonably expected that their communications with Yardi, made at the direction of counsel, made after the service of the Complaint, and made specifically for the purpose of defending this lawsuit, would be protected and would not be disseminated further than to Yardi. This is especially true because Yardi is not in a "position adversarial to" Defendants but rather provides criminal background services to Defendants and assisted Defendants with their investigation into Plaintiffs' claims regarding Defendants' criminal background check process. Accordingly, there was no waiver of the work product immunity covering Defendants' emails with Yardi.

### E.     Plaintiffs Do Not Have a Substantial Need for the Emails

Under Fed. R. Civ. P. 26(b)(3)(ii), a party can obtain work product only if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *See also Nat'l Union Fire Ins. Co.*, 967 F.2d at 984-85 (the "substantial need" requirement is simply an "'anti-freeloader' rule designed to prohibit one adverse party from riding to the court on the enterprise of the other. . . Thus the Advisory Committee for the 1970 amendment that introduced the 'substantial need' requirement noted, among other things, that each side to litigation 'should be encouraged to prepare independently' and that 'one side should not automatically have the benefit of the detailed preparatory work of the other side.'") (internal citations omitted).

Plaintiffs do not have a "substantial need" for the emails between Defendants and Yardi. Plaintiffs can obtain information about Yardi's procedures for conducting criminal background and credit checks for Defendants simply by deposing Yardi or subpoenaing documents discussing those procedures and the services it has provided to Defendants.[2]   In fact, Plaintiffs have already subpoenaed documents from Yardi (Dkts. 36, 36-1), but notably, it is Defendants understanding that Plaintiffs are accepting a declaration from Yardi in lieu of pursuing Plaintiffs' subpoena duces tecum. Furthermore, Plaintiffs have not noticed Yardi's deposition.  Of course, Plaintiffs could ask Yardi at a deposition regarding Yardi's policies and procedures for conducting criminal background and credit checks, but Plaintiffs are not entitled to obtain email communications *from Defendants* that constitute Defendants' investigation of Plaintiffs' claims. These documents reveal the strategy, timing and thought processes of Defendants' counsel about the investigation and defense of this litigation.  Plaintiffs' discovery tactic permits Plaintiffs to ride to court on Defendants' own investigation by permitting Plaintiffs to uncover *when* Defendants' counsel learned *what* about the background check processes.

For the aforementioned reasons, the Court should deny Plaintiffs' Motion with respect to the email communications between Defendants and Yardi.

## II.    DOCUMENTS REDACTED ON THE BASIS OF RELEVANCE SHOULD NOT BE PRODUCED

Defendants have redacted documents on the basis of relevance and the redactions should not be produced solely because there is a protective order that protects *discoverable* information. Plaintiffs argue that the Court should compel Defendants to produce documents without redactions where there is no claim of work product or attorney-client privilege.  Motion at 12. They complain that Defendants waived privilege for redacted documents that were not identified

---

[2] For the reasons discussed above, those documents would not include email communications with Defendants regarding Defendants' investigation of Plaintiffs' allegations after Plaintiffs served their Complaint.

in their privilege log and violated the Stipulated Protective Order "by redacting selective information." Motion at 13, 14. This argument completely misses the mark because Defendants are not asserting any claim of privilege to these redactions.[3]

The Joint Discovery Plan calls for the parties to include in a privilege log "any Document that has been redacted or withheld on the basis of a claim of privilege or immunity." Dkt. 41 at 4. As Defendants' counsel explained to Plaintiffs' counsel at the meet and confer, Defendants did not list the redacted documents at issue in the privilege log because they do not claim privilege or work product protection as to the documents.

Nonetheless, Plaintiffs continue to contend that Defendants' redactions on the grounds of relevance violate paragraph 11 of the Stipulated Protective Order, which provides: "*No discoverable information* may be withheld from discovery on the ground that the material to be disclosed requires protection greater than that afforded by this Order unless the party claiming a need for greater protection moves for an order providing such special protection by no later than the date on which its response to such discovery is due." Dkt 45 at 5. Defendants do not contend that that the information needs more protection than the Protective Order provides. Rather, they contend that the redacted information is not *discoverable* and not likely to lead to the discovery of admissible evidence because it is information that is not relevant to the claims or defenses in the lawsuit. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case . . .") (emphasis added); *In re ThompsonMcMullen, P.C.*, 2016 WL 1071016, at

---

[3] Plaintiffs meet and confer process involved Plaintiffs identifying the redacted documents the day Plaintiffs filed their Motion and two and a half hours before the meet and confer. On November 4, 2016, Plaintiffs' counsel emailed Defendants' counsel, stating that Plaintiffs could not locate privilege log entries for documents that had been redacted. **Exhibit B**. On November 10, 2016, Defendants' counsel emailed Plaintiffs' counsel, asking Plaintiffs to identify the documents they were taking exception to so Defendants could review those documents. **Exhibit C**. On the afternoon of November 11, 2016, Plaintiffs' counsel identified, for the first time, the documents that Plaintiffs contend were improperly redacted. **Exhibit E**. Counsel for the parties had a meet and confer telephone conference two and a half hours later that afternoon. Later that same day, Plaintiffs filed their Motion to Compel. Dkt. 82.

*5 (E.D. Va. Mar. 17, 2016) ("any subpoena that seeks evidence that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, or that is so overbroad that compliance with its demands will necessarily require production of irrelevant evidence, seeks evidence outside the scope of Rule 26(b)(1)."). Therefore, Plaintiffs' allegations that Defendants have violated paragraph 11 of the Stipulated Protective Order are inapposite and completely miss the point.[4]

Plaintiff argue that "Defendants violated the Protective Order by arbitrarily redacting information from documents responsive to Plaintiffs' Requests for Production and not notifying Plaintiffs about such redactions nor providing a reason for doing so." Motion at 14. However, there was nothing "arbitrary" or improper about the redactions. Just as a party is not required to produce every document it possesses, regardless of its relevance, a party is not required to produce every part of a document that contains irrelevant information. That simple fact is not changed by the entry of the Protective Order, which prohibits only the withholding of *discoverable* information. (Dkt. 45 at 5). Moreover, Plaintiffs have not explained how the redacted information is relevant and discoverable. They simply claim that redactions are, without exception, not permitted. Indeed, at the meet and confer, Defendants' counsel asked Plaintiffs' counsel to explain why they contended that this information was relevant. Plaintiffs' counsel only stated that the redacted information was located on otherwise relevant documents

---

[4] Plaintiffs also argue that the redactions are applied inconsistently. In particular, they state that Defendants produced several documents containing personal identifying information of non-plaintiffs. Motion at 16. Defendants have made determinations that other personal identifying information is relevant and produced that information without redactions. Moreover, Defendants have produced over 3,000 pages of documents and attempted to apply redactions consistently. Plaintiffs' assertion that they found five pages out of thousands with unredacted personal information does not make the redacted information somehow relevant. Furthermore and tellingly, Plaintiffs do not even attempt to argue that this redacted information is relevant.

Plaintiffs also claim that Defendants redacted information regarding Plaintiffs. Motion at 16. Defendants told Plaintiffs at the meet and confer that they would review these documents, but Plaintiffs rushed to file their Motion anyway. Since Plaintiffs identified the redacted documents they took exception to, albeit on the day they filed their Motion, Defendants have reviewed the three documents that had redacted information regarding Plaintiffs. Defendants have produced that information in unredacted form.

and they needed it to understand the context of a document.[5] A simple example illuminates how illogical Plaintiffs' position is. If a document request is sent to a bank in an employment discrimination suit asking for documents relevant to that employee and there is relevant information in a file that also contains the irrelevant financial statements of the entire bank, Plaintiffs would argue that they need to view the irrelevant financial statements to understand the "context" of the document. To the contrary, Plaintiffs are entitled only to discoverable information.

Importantly, Plaintiffs have presented no basis for the Court to determine that these redactions contain relevant information. Plaintiffs have had these documents since October 13 and 19 but failed to identify which documents they were objecting to until the day Plaintiffs filed their Motion. Even then, Plaintiffs identified only fifty-five documents that contained relevance redactions out of the 657 documents produced by Defendants. As Defendants told Plaintiffs at the meet and confer, three of the documents they have identified contain no redactions whatsoever. Yet, Plaintiffs nonsensically continue to move to compel on these documents and continue to fail to assert a basis for why the redacted material is relevant.

Plaintiffs' protestation that Defendants have violated the Protective Order and waived privilege completely miss the mark because the redacted information is not relevant. In short, Plaintiffs cannot obtain discovery of information that is not relevant to the claims or defenses in

---

[5] Plaintiffs cite one case for their proposition that a party is not permitted to redact irrelevant information. Motion at 15 (citing *Anthropologie, Inc. v. Forever 21, Inc.*, No. 07 Civ. 7873 (RJS)(MHD), 2009 WL 690126, at *5 (S.D.N.Y. Mar. 13, 2009). However, in that copyright infringement case, the moving party asserted that the redactions contained relevant material because the redactions took place in the "midst of a string of e-mail exchanges" between the opposing party's employee and a vendor who supplied an infringing garment. Here, Plaintiffs have not identified any basis for the Court to conclude that the redactions cover relevant information. Courts, of course, have permitted parties to redact irrelevant information. *E.g.*, *Carrizosa v. Stassinos*, No. C 05-2280 RMW RS, 2006 WL 2529503, at *4 (N.D. Cal. Aug. 31, 2006) ("Stassinos may redact any information in which he claims a right of privacy or that is otherwise not responsive to these requests[.]").

this case.   Accordingly, the Court should deny Plaintiffs' Motion to Compel production of documents without any redactions.

### **CONCLUSION**

For the reasons set forth above, Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A. J. Dwoskin & Associates, Inc. respectfully request that this Court deny Plaintiffs' Motion to Compel and for such other relief as is just and proper.

Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT
LIMITED PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the November 16, 2016, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
_____
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
mdingman@reedsmith.com
jdebettencourt@reedsmith.com