UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ, <br><br>*Plaintiffs*, <br><br>vs. <br><br>WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC., <br><br>*Defendants*. | Civil Action No. 1:16cv00563-TSE-TCB |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................2

ARGUMENT........................................................................................................................5

I.      THE COURT SHOULD COMPEL DEFENDANTS TO PRODUCE EMAIL COMMUNICATIONS WITH THIRD-PARTY YARDI......................................................5

          A.      The Emails Between Defendants and Yardi Are Not Attorney Work Product ........................................................................................................5

          B.      Even Assuming the Emails Between Defendants and Yardi Constituted Attorney Work Product, Protection Was Waived by Disclosure to Third-Party Yardi ...........................................................................................7

                1.      Defendants had no expectation of confidentiality regarding their communications with Yardi.........................................................................7

                2.      Defendants do not possess a "common interest" with Yardi .......................8

                3.      Plaintiffs have a substantial need for the emails between Defendants and Yardi ................................................................................10

II.     THE COURT SHOULD COMPEL DEFENDANTS TO PRODUCE UNREDACTED VERSIONS OF DOCUMENTS THAT THEY HAVE IMPERMISSIBLY REDACTED ...........................................................................12

          A.      The Federal Rules of Civil Procedure Do Not Permit Unilateral Redaction on The Basis of "Relevance" ..................................................................13

          B.      Defendants' Redactions Were Made in Violation of the Orders Governing Discovery in This Case ...........................................................................14

          C.      Redactions Made in Otherwise Relevant Documents Are Inherently Suspect .........................................................................................15

CONCLUSION...................................................................................................................17

Plaintiffs Rosy Giron De Reyes, Jose Dagoberto Reyes, Felix Alexis Bolanos, Ruth Rivas, Yovana Jaldin Solis, Esteban Ruben Moya Yrapura, Rosa Elena Amaya, and Herbert David Saravia Cruz ("Plaintiffs"), by and through their attorneys, respectfully submit this Reply Brief in Support of Plaintiffs' Motion to Compel.

## INTRODUCTION

Defendants fail to present any legitimate reason to withhold their email communications with third-party Yardi or the redacted portions of discoverable documents. These documents are responsive and non-privileged, and should be produced. Plaintiffs respectfully request that the Court grant their motion to compel these communications and unredacted documents.

First, the email communications between Defendants and third-party Yardi are not protected by the work product doctrine or any other privilege, as confirmed by Yardi's representative through his words and conduct throughout this litigation.

Yardi is a neutral third party; is neither an agent nor a representative of Defendants in this litigation. Yardi is simply a third-party vendor of services to Defendants. Indeed, Defendants' own documents confirm that Yardi is a neutral third-party with respect to Defendants in this litigation. And despite Defendants' efforts to cherry pick language from case law on common interest privilege, Defendants share no such common interest with Yardi. Thus, work product protection cannot attach in the first instance. To find otherwise would be to shield all communications between Defendants and third parties relating to this litigation under the guise of "attorney work product."

Even assuming these communications were protected by the work product doctrine or the common interest privilege, Defendants waived those protections by disclosing information to third-party Yardi under circumstances showing that Defendants lacked a reasonable expectation of confidentiality.

2

To the extent that any communications with Yardi do constitute work product—which Plaintiffs do not concede—Plaintiffs have a "substantial need" for them, overcoming that protection. The emails between Defendants and Yardi are relevant separate and apart from preexisting information about Yardi's resident screening services. Indeed, they may provide Defendants' understanding of their own policies, including evidence of intentional discrimination.

Further, Defendants' suggestion that Plaintiffs should depose Yardi or send a subpoena duces tecum to obtain the emails is both misleading and would impose undue hardship. Plaintiffs seek more than the allegedly "underlying discoverable facts" concerning "Yardi's services for Defendants," Opp'n at 2; they also seek the communications themselves. Plaintiffs should not be forced to travel across the country for a deposition or serve further subpoenas duces tecum on a non-party when such information can be easily obtained under Rule 34 of the Federal Rules of Civil Procedure.

Second, Defendants have provided no valid basis for redacting information from undisputedly relevant documents on the sole ground that the redacted information is, in Defendants' view, "irrelevant."

Defendants try to present as uncontroversial a rule that a party may unilaterally redact information from documents that it has already determined are otherwise responsive. But the single case that Defendants cite does not support Defendants' allegedly commonplace rule. Instead, as the weight of authority makes clear, the Federal Rules of Civil Procedure prohibit such unilateral redaction of purportedly irrelevant information from otherwise relevant documents.

Likewise, this Court's orders that govern the discovery process in this action provide no basis to redact snippets of otherwise relevant documents on the sole basis that the redacted information is irrelevant in one party's view. Instead, for any document for which a party seeks special protection, the Protective Order requires that the party move the Court for such protection. Defendants did not do so here. The Court should not tolerate Defendants' disregard of its orders.

Defendants challenge Plaintiffs to show the relevance of the redacted information, but of course, Plaintiffs cannot see what Defendants have redacted. In any event, as the attached exhibits show, in the few instances where Plaintiffs were able to determine the context in which a redaction was made, Defendants appear to have redacted unambiguously relevant material.

Additionally, on multiple occasions, Defendants state that "Plaintiffs rushed to file" this motion and assert that Plaintiffs "paid lip service to the meet and confer requirement." Opp'n at 5; *see also id.* at 14 n.3. Plaintiffs filed this motion expeditiously because of the deadlines in this case. Had Plaintiffs not filed this motion on November 11 as they did, the next available hearing date would be December 2 because the Court will not hold its Friday docket on November 25. Discovery closes on December 9. The Rule 30(b)(6) deposition of Defendants is scheduled for November 22, another deposition is scheduled for December 1, and parties are in the process of scheduling three additional depositions. Plaintiffs thus could not delay bringing this motion before the Court without moving to amend the scheduling order.

Defendants' contention that Plaintiffs identified redacted documents at the last second is similarly false. Plaintiffs first learned that Defendants had redacted information on the basis of relevance on November 10, 2016, six days after Plaintiffs asked Defendants to amend their privilege log entries—which was also one day before Plaintiffs' last opportunity to file a motion

4

to compel before the close of discovery.  During the meet and confer, Defendants claimed ignorance regarding which documents were redacted, in spite of the fact that Defendants voluntarily underwent the painstaking process of redacting information on over fifty of the 657 documents that Defendants themselves produced.

For these reasons, the Plaintiffs respectfully request that the Court compel Defendants to produce its communications with Yardi as well as unredacted versions of all documents Defendants have redacted.[1]

## ARGUMENT[2]

### I. THE COURT SHOULD COMPEL DEFENDANTS TO PRODUCE EMAIL COMMUNICATIONS WITH THIRD-PARTY YARDI

For the reasons set forth below, Defendants have not met their burden of showing that emails between Defendants and Yardi constitute attorney work product.  *See Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010) ("Over the course of more than four decades, district judges and magistrate judges in the Fourth Circuit . . . have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion.").

#### A. The Emails Between Defendants and Yardi Are Not Attorney Work Product

The email communications between Defendants and Yardi simply do not constitute attorney work product.  Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure defines work product as "documents and tangible things that are prepared in anticipation of litigation or for

---

[1] Plaintiffs request that Defendants bring copies of the documents at issue to the hearing set for November 18, 2016 in the event that the Court desires to inspect these withheld documents, or a sample, to aide in its determinations.  *See Sectek Inc. v. Diamond*, No. 115-CV-1631 (GBLMSN), 2016 WL 5897763, at *3 (E.D. Va. Oct. 6, 2016).

[2] Plaintiffs incorporate all of the exhibits included with its Motion to Compel. As such, exhibits introduced with this motion will begin at Exhibit 8.

trial *by or for another party or its representative*." Fed. R. Civ. P. 26(b)(3)(A) (emphasis added); *see also Rickman v. Deere & Co.*, 154 F.R.D. 137, 138 (E.D. Va. 1993), *aff'd*, 36 F.3d 1093 (4th Cir. 1994) ("The protection accorded by Rule 26(b)(3), however, applies only to documents prepared by a 'party' or a party's 'representative.'").

Yardi is neither Defendants' agent, representative, nor counsel. Instead, Yardi is an independent third-party that provides residential screening services to Defendants on an arm's-length basis. The Screening Services Activation Agreement governing the relationship between Defendants and Yardi even includes a provision stating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 8 (WAPLES00000814) at 817.[3]

Defendants have never asserted otherwise. They have never contended, for instance, that Yardi was retained by Defendants as a consultant for the purposes of investigating the allegations made in this litigation. They have never stated that Yardi was otherwise a "representative" of Defendants for the purposes of the work product analysis. They have never pointed to any agreement showing that Yardi was retained by Defendants to provide work product in this case. Defendants have never done any of this because they cannot.

Yardi's relationship with Defendants is thus entirely different from typical situations in which communications with an agent or representative of a defendant were protected by the work product doctrine. Yardi is an independent fact witness in this case—not an extension of Defendants or Defendants' counsel. Accordingly, communications between Defendants and Yardi cannot be protected by the work product doctrine. *See Rickman*, 154 F.R.D. at 138

---

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

(declining to extend work product protection to materials "prepared by Farm Bureau in anticipation of subrogation litigation" because "Farm Bureau is not a 'party.' Nor . . . is it the 'representative' . . . of plaintiff."); *see also Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.").

Defendants try to avoid this outcome by redefining attorney work product to encompass any communication made "[a]t the direction of and under the instruction of [Defendants'] counsel." Opp'n at 8. This is necessary but not sufficient. Any such communications must also be made in relation to a party or its representative. In other words, simply because a communication was made at the direction of an attorney does not automatically render a communication to a *non-agent, third-party* work product. Were that the case, the work product doctrine would cloak from disclosure far more information than contemplated by the Federal Rules of Civil Procedure.[4]

Because Defendants have not met their burden to show that work product protection applies, the Court should compel Defendants to produce these emails.

> **B.   Even Assuming the Emails Between Defendants and Yardi Constituted Attorney Work Product, Protection Was Waived by Disclosure to Third-Party Yardi**
>
> **1.   Defendants had no expectation of confidentiality regarding their communications with Yardi**

The Fourth Circuit has held that a party or its attorney waives work product privilege "when disclosure occurs in circumstances in which the attorney cannot reasonably expect to limit

---

[4] Because Defendants' emails to and from Yardi do not constitute attorney work product, Plaintiffs need not show a "substantial need" for the emails, and they are undeniably relevant. *See* Fed. R. Civ. P. 26(b)(3)(A).

7

the future use of the otherwise privileged material." *In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981). Defendants did not have a reasonable expectation of confidentiality regarding their emails with third-party Yardi because, as already noted, Defendants and Yardi possess an arm's-length business relationship and nothing more. Defendants do not have any confidential or trust relationship with Yardi, nor do they claim one exists in their brief. Yardi has also represented to Plaintiffs that it is a neutral party with respect to this litigation—and specifically that it has no dog in this fight. *See* Ex. 9 (Margeson Declaration).

Defendants claim that simply because their communications with Yardi were at the direction of counsel and made after service of the Complaint, they could anticipate that Yardi would keep emails regarding this case confidential. Opp'n at 12. Defendants fail to mention, however, that Yardi was also in communication with *Plaintiffs* after service of the complaint pursuant to *Plaintiffs'* investigation of this case. Yardi even copied Defendants on emails that it exchanged with Plaintiffs regarding its declaration for this case. Ex. 10 (November 13, 2016 email from B. Bustany to W. Margeson and M. Dingman). It is therefore impossible for Defendants to reasonably expect that email conversations it had with Yardi would be kept confidential. Because the "reasonableness of the disclosing party's expectation of confidentiality [is] the touchstone for determining whether work product privilege was waived," Defendants necessarily waived any privilege over their emails with Yardi. *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, No. CIV.A.3:09CV58, 2010 WL 1489966, at *5 (E.D. Va. Apr. 13, 2010).

### 2. Defendants do not possess a "common interest" with Yardi

Defendants and Yardi similarly lack a "common interest" in this litigation, because "their legal interests do not coincide" with respect to it. *See Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 346 (E.D. Va. 2015) (citing *Hunton & Williams v. DOJ,* 590 F.3d 272, 277 (4th Cir.2010)). The Fourth Circuit has held that the "common interest" privilege

8

covers such relationships as civil co-defendants, companies that had been individually summoned before a grand jury who shared information before any indictment was returned, potential co-parties to prospective litigation, plaintiffs who were pursuing separate actions in different states, and civil defendants who were sued in separate actions." *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129,* 902 F.2d 244, 249 (4th Cir. 1990) (internal citations omitted). Defendants fail to—and, indeed, cannot—claim any such connection with Yardi. Thus, the common interest doctrine, an exception to the general rule that work product privilege is waived when disclosed to a third party, cannot apply. *See In re Outsidewall Tire Litig.,* No. 1:09CV1217, 2010 WL 2696643, at *2 (E.D. Va. July 6, 2010).

In light of their inability to meet the Fourth Circuit's criteria, Defendants impermissibly try to expand the common interest exception, arguing that it also covers work product disclosures to third parties that are "allies" to the disclosing party. Opp'n at 10. This assertion completely misconstrues precedent, and would permit the common interest doctrine to swallow the third-party waiver rule. Further, Yardi is not Defendants' ally in this litigation in any sense of the word. As stated previously, Yardi has been in communication with both Plaintiffs and Defendants, and has given both sides ample information relating to its operations in the context of the underlying facts. *See, e.g.,* Ex. 10. This nullifies Defendants' reliance on the cases cited in their brief. *See E.I. DuPont de Nemours & Co. v. Colon Indus., Inc.*, No. 3:09cv58, 2010 WL 1489966, at *8 (E.D. Va. Apr. 13, 2010). (explicitly stating that one of the factors it considered was a reasonable expectation of confidentiality, which cannot exist where a third-party includes opposing counsel on emails regarding the case); *FEC v. Christian Coalition.* 178 F.R.D. 61, 76 (E.D. Va. 1998) ("[T]he mere showing of voluntary disclosure to a third party . . . shall not suffice *in itself* for waiver of work product privilege." (emphasis added)). The lack of a

9

reasonable expectation of confidentiality in communications between Defendants and Yardi is precisely the sort of additional consideration that places those communications outside the ambit of such decisions. Thus, Defendants waived work product privilege.

### 3. Plaintiffs have a substantial need for the emails between Defendants and Yardi

Plaintiffs have a substantial need because the withheld emails go to the heart of Plaintiffs' claims. A party can obtain work product if the party seeking discovery "has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(ii). Plaintiffs do not contend that they are unable or unwilling to obtain information "about Yardi's procedures for conducting criminal background and credit checks." Opp'n at 13. As stated above, Plaintiffs did subpoena documents from Yardi and agreed to accept a declaration containing statements Plaintiffs deemed sufficient substitutes for information sought by the subpoena. Ex. 9. Rather, the emails may contain information relevant to proving intentional discrimination. Defendants' policy of preventing undocumented immigrants from residing at the Park is the fundamental issue in this case, and Yardi is a key factor in implementation of Policy: as such, the withheld communications are not only relevant, but may be central to this case.

Plaintiffs also have reason to believe that Defendants' communications with Yardi were not confined to gathering information regarding "Yardi's policies and procedures for conducting criminal background and credit checks," Opp'n at 13, but instead reveal Defendants' procedures for enforcing the policy at Waples and Defendants' other properties. For instance, Defendants withheld an August 22, 2016 email from Patrick Hennessey, a Yardi employee, to Mark Jones, an executive of one of the Defendants' companies, claiming that the email is "contact undertaken as investigation as a result of Reed Smith's direction." Ex. 5 at entry with Control

No. DOCID00569569. On the same date a Regional Property Manager sent an email to Residential Property Managers containing a ███████████████████████████████████████████████████████████████████████████████████████████████ Ex. 11 (WAPLES00001425). The coincidental timing strongly implies the withheld emails contain information regarding Defendants use, or lack thereof, of the Yardi software system for lease renewals.

Similarly, Defendants withheld communications with Yardi. Ex. 5 at entry with Control No. DOCID00660922-926. ████████████████████████████████████████████████████████████████████████████████████████████████ Ex. 12 (WAPLES00002417). The report was followed by a request from one of Defendants' employees for additional information from Yardi. *See id.* Defendants also withheld several communications that took place with Yardi employees in June 2016. *See, e.g.,* Ex. 5 at DOCID00660653-660654. ████████████████████████████████████████████████████████████████ *See* Ex. 13 (WAPLES00001272).[5]

Again, the fact that the communications and produced reports coincided with a flurry of requests for additional documents from tenants suggests Plaintiffs have been deprived of critical, discoverable information regarding Defendants' practices for enforcing the policy. Where, how, and when the Policy was enforced at Defendants' various properties goes to the heart of Plaintiffs' claims that Defendants discriminated against them based on race and national origin

---

[5] *See also* WAPLES00001280, 1277, 1283, 1286, 1287, 1291, 1292, 1293. ████████████████████████████████████████

11

under the Fair Housing Act and on the basis of citizenship under Section 1981.  Complaint at 113, 134.  This information is undeniably relevant, and Plaintiffs have a substantial need for it.

Lastly, Plaintiffs cannot obtain this information, or its substantial equivalent, without undue hardship.  Defendants' suggestion that Plaintiffs could obtain the same information that they seek to withhold by deposing Yardi or subpoenaing documents not only defeats their expectation of confidentiality, but constitutes undue hardship under Fed. R. Civ. P. 26(b)(3)(ii).  To depose Yardi employees, Plaintiffs would have to travel to Yardi's offices in San Diego or Boston.  In any event, serving a subpoena on a non-party imposes undue hardship on the discovering party and the non-party when such information can be easier obtained through a Fed. R. Civ. P. 34 request for production.  *See Layman v. Junior Players Golf Acad., Inc.*, 314 F.R.D. 379, 385 (D.S.C. 2016) ("If documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a nonparty witness." (quoting 8A Charles Alan Wright, et al., Federal Practice and Procedure, § 2204 at 365 (2nd ed. 1994)); *see also* Advisory Committee Notes to Fed. R. Civ. P. 45 ("Rule 45(c) provides protection against undue impositions on nonparties.").

## II. THE COURT SHOULD COMPEL DEFENDANTS TO PRODUCE UNREDACTED VERSIONS OF DOCUMENTS THAT THEY HAVE IMPERMISSIBLY REDACTED

Defendants concede that the sole basis for redacting the documents at issue in this Motion was "relevance."  Opp'n at 13.  For the following reasons, those redactions were improper, and the Court should compel Defendants to produce unredacted versions of these documents.[6]

---

[6] The Court should compel the production of all redacted documents because, even though Defendants previously took the position that some documents were redacted on the grounds that they contained personal identifying information, Defendants represented that they now assert that all redactions were made exclusively on the basis of relevance.  Further, during

### A. The Federal Rules of Civil Procedure Do Not Permit Unilateral Redaction on The Basis of "Relevance"

Defendants are wrong about the law on redaction. Contrary to their position, "there is nothing in the Federal Rules of Civil Procedure that permits the unilateral redaction of information, in otherwise responsive documents, that one party or the other deems not relevant." *In re Stryker Rejuvenate & Abgii Hip Implant Prod. Liab. Litig.*, No. MDL 13-2441 DWF/FLN, 2014 WL 2808919, at *3 (D. Minn. June 20, 2014); *see also John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("[R]edactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege."); *Anthropologie, Inc. v. Forever 21, Inc.*, No. 07 CIV. 7873 RJSMHD, 2009 WL 690126, at *5 (S.D.N.Y. Mar. 13, 2009) (rejecting defendants' argument that redactions "were permissible to eliminate irrelevant material" and ordering defendants to "produce the non-privileged documents in unredacted form"). Further, Plaintiffs are not aware of any jurisdiction that permits such unilateral redaction—and Plaintiffs have found no case within the Fourth Circuit permitting such a practice.

Unsurprisingly, Defendants are only able to cite one case from California in support of their radical position that parties may unilaterally redact information, in documents that are undisputedly otherwise relevant, on the basis that the redacted information contains "irrelevant" information. In that case, the Court permitted redaction of certain non-responsive information in defendant's "personal date book," noting that the redactions were driven not solely by irrelevance, but by concerns over defendant's "right of privacy." *Carrizosa v. Stassinos*, No. C 05-2280 RMW

---

the meet and confer and again in their brief, Defendants assert that three documents containing what Plaintiffs believe are black bars concealing information are not redactions. Opp'n at 4–5. Plaintiffs cannot rely on Defendants' representation: by Defendants' own admission, information about the Plaintiffs was concealed in this manner and Defendants failed to produce an unredacted version of that document despite their promise to do so.

13

RS, 2006 WL 2529503, at *4 (N.D. Cal. Aug. 31, 2006). Defendants, by comparison, have provided no legitimate reason for their redactions. Accordingly, these redactions are improper.

### B. Defendants' Redactions Were Made in Violation of the Orders Governing Discovery in This Case

The reality is that any redactions that Defendants sought to make *within otherwise responsive documents* needed to be made in accordance with the orders entered in this case. But neither the Electronic Discovery Order nor the Protective Order entered by the Court permits the redaction of purportedly irrelevant information within otherwise responsive documents. Accordingly, on this independent basis, the redactions were improper. *See In re Stryker*, 2014 WL 2808919, at *3 (ordering defendants to produce unredacted versions of documents because "[n]othing in Amended Pretrial Order No. 9 [*i.e.*, the "Protective Order . . . that governs discovery in these cases"] permits the parties to unilaterally redact from documents, otherwise responsive to discovery requests, information they deem not relevant.").

If Defendants truly believed that certain information needed to be redacted on grounds other than those permitted by the discovery orders entered in this case, it was incumbent upon Defendants to seek a court order to that effect. *See* Protective Order, Dkt. No. 45 at ¶ 11 (prohibiting withholding of discoverable information unless "party claiming a need for greater protection moves for an order providing such special protection"); *see also In re Stryker*, 2014 WL 2808919, at *3 ("If either party contends that [the Protective Order] is not adequate to protect that party from annoyance, embarrassment, oppression, or undue burden or expense, . . . the appropriate procedure is to seek a modification of [the Protective Order]."). But Defendants never moved for such an order. Thus, the redactions violate the discovery orders in this case.

14

### C.      Redactions Made in Otherwise Relevant Documents Are Inherently Suspect

Relevance for purpose of discovery is much broader than the relevance standard governing admissibility of information at trial. Fed. R. Civ. P. 26(b)(1). Parties may seek discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).

The redacted portions of documents are inherently needed in order to understand the context of undisputedly discoverable portions of the document. Defendants' failure to provide a single basis in support of their contention that the redacted information is not discoverable makes it likely that the information was redacted precisely because it was relevant and harmful to their case. *See In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (ordering parties not to "redact any portion of a document on the ground that the portion is non-responsive and irrelevant" because such redactions "breed suspicions" and "may deprive the reader of context."). If the redacted information were truly not relevant and does not contain confidential information, as Defendants contend, Defendants would not be so strenuously resisting its disclosure. The only reasonable inference is that Defendants found this relevant information that was *harmful* to their case. That Defendants took the time to sift through more than 657 documents to redact certain information *solely* on the basis of relevance bolsters the highly suspect nature of these redactions.

In their brief, Defendants hold Plaintiffs' inability "to explain why they contended that information was relevant" at the meet and confer against Plaintiffs. Opp'n at 15. According to Defendants, Plaintiffs must rebut Defendants' relevance claim even though Defendants do not explain their reasoning for determining that the information is irrelevant. Of course this is difficult to do when the information has been withheld. In the few instances where Plaintiffs are able to ascertain the context in which a redaction was made, the redacted portions are

15

*unquestionably* relevant. See Ex. 14 (WAPLES00001435) (█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████). Such redactions seem clearly relevant in context and cause Plaintiffs to doubt that Defendants made any redactions in good faith.

Moreover, Defendants' hypothetical that "if a document request is sent to a bank in an employment discrimination suit asking for documents relevant to that employee and there is relevant information in a file that also contains the irrelevant financial statements of the entire bank, Plaintiffs would argue that they need to view the irrelevant financial statements to understand the 'context' of the document," Opp'n at 16, was (1) not affirmed by Plaintiffs (they stated their position that if Defendants somehow found themselves in that hypothetical situation, Plaintiffs' would contend that Defendants would need to comply with the Protective Order if it wished to redact confidential financial statements); (2) is not supported by any case law; and (3) is not analogous to this case. Here, Plaintiffs requested production of information regarding landlord Defendants' enforcement of the policy against both Plaintiff and non-Plaintiff occupants at Defendants' other properties, which is discoverable and relevant to the Fair Housing and §1981 claims. *See e.g. Laufman v. Oakley Bldg. & Loan Co.*, 72 F.R.D. 116, 120 (S.D. Ohio 1976) (holding Plaintiffs were entitled to Defendants' records "with respect to transactions similar to the one in question whether the present case is a class action or not, as they may tend to show a pattern of refusal to lend in integrated areas."); *Marable v. H. Walker & Assocs.*, 644 F.2d 390, 392, 397 (5th Cir. 1981) (concluding—based on credit reports of non-plaintiff, prospective tenants included in the record—"that the unequal application of defendants' rental

16

criteria . . . as between [plaintiff] Marable and [non-plaintiff] white applicants demonstrates disparate treatment on the basis of race violating the Fair Housing Act, . . . and [§§] 1981 and 1982"). Accordingly, Plaintiffs are entitled to information relating to Defendants' enforcement of the Policy against non-Plaintiff occupants at Waples Mobile Home Park as well as Defendants' other residential properties, in addition to information redacted under any other claim of relevance.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motion to compel.

DATED this 17th day of November, 2016    Respectfully submitted,

*/s/ Paul Brinkman*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Paul Brinkman, VSB # 35950
Jeanhee Hong (*pro hac vice*)
Ariel Wade Trajtenberg (*pro hac vice*)
Diego Durán de la Vega (*pro hac vice*)
Jongwook Kim (*pro hac vice*)
William A. Margeson (*pro hac vice*)

777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001
Phone: (202) 538-8000
Fax: (202) 538-8100
paulbrinkman@quinnemanuel.com
jeanheehong@quinnemanuel.com
arieltrajtenberg@quinnemanuel.com
diegoduran@quinnemanuel.com
wookiekim@quinnemanuel.com
billmargeson@quinnemanuel.com

LEGAL AID JUSTICE CENTER
Simon Sandoval-Moshenberg, VSB #77110
Rebecca Wolozin, VSB #89690

6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454
simon@justice4all.org
becky@justice4all.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of November, 2016, I filed the foregoing Reply Brief in Support of Plaintiffs' Motion to Compel electronically with the Clerk of the Court using the ECF system, and caused to be served by electronic mail a copy of the foregoing document upon the following parties:

Michael S. Dingman, VSB #30031
Justin deBettencourt, VSB # 83806
REED SMITH LLP
7900 Tysons One Place, Suite 500
McLean, Virginia 22102
Phone: (703) 641-4200
Fax: (703) 641-4340
mdingman@reedsmith.com
jdbettencourt@reedsmith.com

*Counsel for Defendants*

*/s/ Paul Brinkman*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Paul Brinkman, VSB # 35950

777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001-3706
Phone: (202) 538-8000
Fax: (202) 538-8100
paulbrinkman@quinnemanuel.com

*Counsel for Plaintiffs*

19