**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

ROSY GIRON DE REYES, *et al.*,

             Plaintiff,

v.

WAPLES MOBILE HOME PARK
LIMITED PARTNERSHIP, *et al.*,

             Defendants.

Civil No.:  1:16cv563-TSE-TCB

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

US_ACTIVE-129259342

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................4

STANDARD OF REVIEW .................................................................................8

SUMMARY OF ARGUMENT ...........................................................................9

ARGUMENT .....................................................................................................10

I.     The Court Should Enter Summary Judgment on Plaintiffs' FHA Claim (Count I)...........10

       A.     Plaintiffs Fail To State a Claim For Disparate Impact...........................................10

       B.     Plaintiffs Fail to State a Disparate Treatment Claim. ..........................................12

              1.     Plaintiffs Cannot Prove a Claim of Disparate Treatment Based on Disparate Impact Statistics...........................................13

              2.     The Facts Demonstrate That There Is No Disparate Treatment. ...............13

                     a.     Plaintiffs Cannot Establish a Prima Facie Case of Discrimination...........................................15

                     b.     Defendants Articulate Legitimate, Non-Discriminatory Reasons for the Policy. .................................................18

                     c.     There is No Evidence That Defendants' Reason for the Policy is Pre-textual. ...................................................19

       C.     Undocumented Immigrants Lack Standing Under the FHA................................22

II.    The Court Should Enter Summary Judgment on Plaintiffs' VFHL Claim (Count II).........................................................................................23

III.   The Court Should Enter Summary Judgment on Plaintiffs' § 1981 Claim (Count IV). ........................................................................................24

       A.     Defendants Did Not Intentionally Discriminate as Plaintiffs Admit. ..................24

       B.     Section 1981 Does Not Protect Illegal Aliens As a Class. ...................................26

IV.    The Court Should Enter Summary Judgment on Plaintiffs' Manufactured Home Lot Rental Act Claim and Plaintiffs' Breach of Contract Claim (Counts III and V). .........................................................................................27

CONCLUSION..................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abi-Najm v. Concord Condo., LLC*,
  699 S.E.2d 483 (Va. 2010)......................................................................28

*Anderson v. Conboy*,
  156 F.3d 167 (2d Cir. 1998)....................................................................26

*Celotex v. Cattrett*,
  477 U.S. 317 (1986).................................................................................8

*Denny v. Elizabeth Arden Salons, Inc.*,
  456 F.3d 427 (4th Cir. 2006) ..................................................................24

*French v. Assurance Co. of Am.*,
  448 F.3d 693 (4th Cir. 2006) ....................................................................8

*Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*,
  458 U.S. 375 (1982)................................................................................25

*George Robberecht Seafood, Inc. v. Maitland Bros. Co.*,
  255 S.E.2d 682 (Va. 1979)......................................................................28

*Hadeed v. Abraham*,
  265 F. Supp. 2d 614 (E.D. Va. 2003), *aff'd*, 103 F. App'x 706 (4th Cir. 2004).........14, 15, 20

*Keller v. City of Freemont*,
  719 F.3d 931 (8th Cir. 2013) ..............................................................22, 26

*Martin v. Long & Foster Real Estate Inc.*,
  No. 1:11-CV-1118-AJT-TCB, 2012 WL 3991900 (E.D. Va. Sept. 11, 2012)
  (Trenga, J.), *aff'd sub nom. Martin v. Brondum*, 535 F. App'x 242 (4th Cir.
  2013) ............................................................................................ *passim*

*Matarese v. Archstone Pentagon City*,
  795 F. Supp. 2d 402 (E.D. Va. 2011), *aff'd in part, vacated in part sub nom.*
  *Matarese v. Archstone Communities, LLC*, 468 F. App'x 283 (4th Cir. 2012)................14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).................................................................................8

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 802 (1973)................................................................................14

*Murrell v. Ocean Mecca Motel, Inc.*,
   262 F.3d 253 (4th Cir. 2001) ................................................................14

*Price v. Thompson*,
   380 F.3d 209 (4th Cir. 2004) ................................................................15

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993) ................................................................15

*Takahashi v. Fish and Game Commission*,
   334 U.S. 410 (1948) ................................................................26

*Teamsters Joint Council No. 83 v. Centra, Inc.*,
   947 F.2d 115 (4th Cir. 1991) ................................................................8

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*,
   135 S. Ct. 2507 (2015) ................................................................2, 10, 13

*United States v. Aguilar*,
   477 F. App'x 1000 (4th Cir. 2012) ................................................................23

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977) ................................................................13

*Wadley v. Park at Landmark, LP*,
   No. 1:06CV777(JCC), 2007 WL 201085 (E.D. Va. Jan. 24, 2007), *aff'd*, 264
   F. App'x 279 (4th Cir. 2008) ................................................................24

*Watson v. Fort Worth Bank & Trust*,
   487 U.S. 977 (1988) ................................................................13

*White v. Potocska*,
   589 F. Supp. 2d 631 (E.D. Va. 2008) ................................................................8

*Wilson v. Carpenter*,
   21 S.E. 243 (Va. 1895) ................................................................28

**Statutes**

8 U.S.C. § 1324 ................................................................19, 23, 26

42 U.S.C. § 1981 ................................................................3

Va. Code § 36-96.1 ................................................................23

Va. Code § 55-248.42:1 ................................................................30

Va. Code § 55-248.42.1(B) ................................................................27

Va. Code § 55-248.46 ..........................................................................................................30

Va. Code § 55-248.50:1 ......................................................................................................29

Va. Code § 55-248.50:1(4) ...........................................................................................29, 30

Va. Code § 55-248.50:1(5) ................................................................................................29

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................1, 8

**Other Authorities**

2009 Treasury Report *available at*
    https://www.treasury.gov/tigta/auditreports/2010reports/201040005fr.html .........................22

U.S. Census Name Data, File B: Surnames Occurring 100 or more times
*available at*
    *http://www.census.gov/topics/population/genealogy/data/2000_surnames.html* ....................16

Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A. J. Dwoskin & Associates, Inc. (collectively "Defendants"), by counsel, pursuant to Fed. R. Civ. P. 56 submit this memorandum of points and authorities in support of Defendants' Motion for Summary Judgment on all counts of Plaintiffs' Complaint.

## INTRODUCTION

As was clear from Plaintiffs Complaint, this case arises solely from the inability of the female Plaintiffs to comply with the Defendants' application policy (the "Policy") because they are in the United States illegally. It is for this reason that the Court previously ruled that the Plaintiffs cannot proceed only on a disparate impact theory. Nonetheless, the Court allowed the case to go forward under a disparate treatment theory that was not alleged and that was specifically disavowed by the Plaintiffs.   It is now clear why the Plaintiffs did not contend that they were asserting a claim of intentional discrimination; there are no facts to support such a claim. All of the female Plaintiffs now admit that they are, and have always been, in the United States illegally.  All of the Plaintiffs were deposed and either testified that Defendants' Policy did not treat them differently because they are Latino or non-U.S. citizens or that they did not know if the Policy treated them differently because they are Latino or non-U.S. citizens.  Further, seven of the eight Plaintiffs testified that the reason the female Plaintiffs could not comply with the Policy was because of their illegal status in the United States.[1] There is not a scintilla of evidence that the Policy was enforced for discriminatory purposes. Indeed, the facts – such as the male Latino Plaintiffs signing leases, other Latinos signing leases, the majority of residents at the Park are Latinos, among other facts – show that there has been no discrimination by the Defendants. Accordingly, Defendants are entitled to summary judgment.

---

[1] The eighth, Mr. Saravia-Cruz, testified that he did not know if that was the reason and also testified that he did not know if his wife could not comply with the Policy because of any discrimination.

In ruling on Defendants' Motion to Dismiss, the Court concluded that Plaintiffs did not state a claim under the Fair Housing Act ("FHA") on a disparate impact theory.  The Court correctly determined that Plaintiffs' allegations did not satisfy the robust causal link required by *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015). Mem. Op. at 16 ("In the instant case, the disparate impact on plaintiffs *as Latinos* is incidental to the Policy's effect on all illegal aliens.")  Instead, the Court held that Plaintiffs potentially stated a claim under the FHA on a disparate treatment theory and that Plaintiffs may use evidence of disparate impact to support that claim. As discussed below, allowing a FHA claim to proceed on a disparate treatment theory using a disparate impact analysis – where the required robust causality link does not exist – is contrary to *Inclusive Communities* and significantly undermines that decision.

Moreover, the facts adduced through discovery, including the depositions of all of the Plaintiffs, shows that there is no basis for a disparate treatment claim which at its essence is predicated on a showing of intentional discrimination. The female Plaintiffs admitted under oath that they were not able to comply with the Policy ***because*** they are present in the United States illegally. Two of the female Plaintiffs admitted that they were not discriminated against because they were Latina.  The other female Plaintiffs admit they do not know if they were discriminated or otherwise admit that they lack a factual basis for their discrimination claims. Likewise, three of the male Plaintiffs testified under oath that the reason their wives could not comply with the Policy was because of their illegal status – not because they are Latina or non-U.S. citizens.[2] The fourth male Plaintiff, Mr. Saravia-Cruz, stated that he did not know if that is why his wife could

---

[2] Tellingly, certain Plaintiffs have admitted either: that they cannot remember if they authorized the Complaint to be filed, Bolanos Dep. Tr. 24:1-5 (Ex. 14); did not review the Complaint before it was filed, Saravia-Cruz Dep. Tr. 24:5-7 (Ex. 16); that they have not seen or cannot remember seeing the Complaint filed in this action, Rosy Reyes Dep. Tr. 12:20-13:2 (Ex. 9); Bolanos Dep. Tr. 23:10-12 (Ex. 14); Saravia-Cruz Dep. Tr. 27:18-28:1 (Ex. 16); or are not sure or cannot remember what allegations are in the Complaint they filed, Solis Dep. Tr. 63:15-65:3 (Ex. 11).

not comply. The Plaintiffs further admit in response to requests for admission that Latinos are allowed to and have signed leases at the Park, including, of course, the male Plaintiffs themselves. In short, the Plaintiffs themselves do not assert that they have been treated differently because they are Latino or non-U.S. citizens and do not otherwise point to evidence of intentional discrimination.

The Court permitted Plaintiffs' intentional discrimination claims under 42 U.S.C. § 1981 to survive the Motion to Dismiss on two grounds: 1) it may be more burdensome to acquire original copies of an I-94 Form because these forms cost $330 and aliens with immigrant visa do not even need to acquire I-94 forms; and 2) only upon the Court's inference, the improper denial of year-long lease renewals may support an inference of intent to reduce the number of aliens in the Park. The testimony of all of the female Plaintiffs is that they do not have, and have never had, an I-94, a U.S. Visa or any document issued by the United States showing their legal presence in the United States.  The assertion by the Plaintiffs of a cost burden to acquire an I-94 was baseless.  Further, three of the female plaintiffs unequivocally admitted that they have not been intentionally discriminated against on the basis of non-citizenship. The fourth female plaintiff, Ms. Amaya, testified that she does not know.  Thus, the inference given by the Court at the motion to dismiss stage has no factual basis or support.

Finally, the Court should enter summary judgment for Defendants on Plaintiffs' Virginia Mobile Home Lot Rental Act ("MHLRA") claim and breach of contract claim because the Plaintiffs failed to list the female plaintiffs as occupants of the mobile homes as required by the application for the Waples Mobile Home Park (the "Park"). In doing so, Plaintiffs intentionally misrepresented the occupants who would live at their mobile homes at the Park.  As a result,

Defendants were entitled to evict Plaintiffs, but instead chose the less onerous option of switching Plaintiffs onto month-to-month leases in case Plaintiffs could comply with the Policy.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.  The Policy is facially neutral. Compl. Ex. A.

2.  The female Plaintiffs entered the United States illegally. **Ex. 1-4** (female Plaintiffs' Response to Int. 11).

3.  The female Plaintiffs are in the United States illegally. **Ex. 1-4** (female Plaintiffs' Request for Admission ("RFA") 1).

4.  The female Plaintiffs do not have U.S. Visas. **Ex. 1-8** (Plaintiffs' RFA 9).

5.  The female Plaintiffs do not have I-94 forms. **Ex. 1-8** (Plaintiffs' RFA 10).

6.  The female Plaintiffs cannot acquire or access an I-94 form. **Ex. 1-8** (Plaintiffs' RFA 11).

7.  The female Plaintiffs are not able to show any form of valid government-issued proof that they are legally present in the United States. *see* **Ex. 1-4** (female Plaintiffs' RFA 13); **Ex. 5-8** (male Plaintiffs' RFA 14).

8.  The female Plaintiffs are not able to acquire any form of valid government-issued proof that they are legally present in the United States. **Ex. 5-8** (male Plaintiffs' RFA 15).

9.  The female Plaintiffs cannot comply with the Policy because they cannot acquire the documents requested by the Policy. **Ex. 1-8** (Plaintiffs' RFA 7).

10.  The female Plaintiffs were not able to comply with the Policy because they are in the United States illegally. Rosy Reyes Dep. Tr. 19:18-22; 21:11-19; 24:19-25:1; 25:10-15; 28:7-22; 30:18-22 (**Ex. 9**); Solis Dep. Tr. 76:8-20; 77:18-78:1 (**Ex. 11**); Amaya Dep. Tr. 33:19-34:4 (**Ex. 12**); Rivas Dep. Tr. 37:20-38:8; 40:21-41:3 (**Ex. 10**). Bolanos Dep. Tr. 29:12-15; 30:6-13;

34:8-18 (**Ex. 14**); Moya Dep. Tr. 21:7-12; 23:21 – 24:9; 24:19-25:14 (**Ex. 15**); Jose Reyes Dep.

Tr. 31:14-33:2 (**Ex. 13**).

      11.    The male Plaintiffs were able to enter into leases at the Park. **Ex. 21-24** (male

Plaintiffs' Leases); **Ex. 5-8** (male Plaintiffs' RFA 3).

      12.    The male Plaintiffs were able to renew leases at the Park. **Ex. 21-24** (male

Plaintiffs' Leases).

      13.    The male Plaintiffs were never denied the right to enter into Rental Agreements to

rent a Lot at the Park because they were Latino. **Ex. 5-8** (male Plaintiffs' RFA 4).

      14.    The male Plaintiffs were never denied the right to enter into Rental Agreements to

rent a Lot at the Park because they are not citizens of the United States. **Ex. 5-8** (male Plaintiffs'

RFA 5).

      15.    Other Latinos entered into leases at the Park in 2015 and 2016. **Ex. 1-4** (female

Plaintiffs' RFA 20, 21); **Ex. 5 – 8** (male Plaintiffs' RFA 21, 22).

      16.    Other non-U.S. citizens entered into leases at the Park in 2015 and 2016. **Ex. 1-4**

(female Plaintiffs' RFA 18, 19); **Ex. 5 – 8** (male Plaintiffs' RFA 19, 20).

      17.    Other non-U.S. citizens who are Latino have entered into leases at the Park in

2015 and 2016. **Ex. 1-4** (female Plaintiffs' RFA 22, 23); **Ex. 5 – 8** (male Plaintiffs' RFA 23, 24).

      18.    Individuals  over the age of eighteen who were not listed on a lease or Rental

Agreement with Defendants  resided in the Plaintiffs' mobile homes at the Park. **Ex. 1-4** at

(female Plaintiffs' RFA 24); **Ex. 5-8** (male Plaintiffs' RFA 25).

      19.    The Lease Applications required the male Plaintiffs to list all adult occupants of

the male Plaintiffs' mobile homes. **Ex. 17 – 20** (lease applications).

      20.    The Leases the male Plaintiffs signed with Defendants were made based on the

representations in the male Plaintiffs' lease applications. **Ex. 21 – 24** (at page 1 of each lease).

21.     The male Plaintiffs did not list their wives on their lease applications. **Ex. 17 – 20.**

22.     The female Plaintiffs lived with their husbands at the Park. Rosy Reyes Dep. Tr. 31:7-11 (**Ex. 9**); Rivas Dep. Tr. 55:13-16 (**Ex. 10**); Amaya Dep. Tr. 54:18-20 (**Ex. 12**); Moya Dep. Tr. 41:8-20 (**Ex. 15**).

23.     The male Plaintiffs admitted that they did not list their wives on their lease applications. Jose Reyes Dep. Tr. 33:10-34:4; 34:17-35:4 (**Ex. 13**); Bolanos Dep. Tr. 40:13-21; 41:20-42:2 (**Ex. 14**); Moya Dep. Tr. 31: 19-32:9 (**Ex. 15**); Saravia-Cruz Dep. Tr. 41:8- 42:7 (**Ex. 16**).

24.     Plaintiffs were not charged an additional $300 per month on top of their rent. Amaya Dep. Tr. 88:1-3 (**Ex. 12**); Rosy Reyes Dep. Tr. 105:5-8 (**Ex. 9**); Rivas Dep. Tr. 134:13-135:7 (**Ex. 10**); Moya Dep. Tr. 56:5-14 (**Ex. 15**); Solis Dep. Tr. 99:6-11 (**Ex. 11**).

25.     The male Plaintiffs are Latino or Hispanic. Moya Dep. Tr. 22:8-9 (**Ex. 15**); Saravia- Cruz Dep. Tr. 78:4-5 (**Ex. 16**); Jose Reyes Dep. Tr. 26:22-27:1 (**Ex. 13**); Bolanos Dep. Tr. 31:14-15 (**Ex. 14**).

26.     The male Plaintiffs are not citizens of the United States. Bolanos Dep. Tr. 36:16-20 (**Ex. 14**); Jose Reyes Dep. Tr. 74:13-16 (**Ex. 13**); Moya Dep. Tr. 15:16-22 (**Ex. 15**); Saravia-Cruz Dep. Tr. 68:8-14 (**Ex. 16**).

27.     Three of the male Plaintiffs admitted that they were not discriminated against because they were Latino. Moya Dep. Tr. 23:2-19 (**Ex. 15**); Bolanos Dep. Tr. 32:16-33:15 (**Ex. 14**); Jose Reyes Dep. Tr. 30:15-31:3 (**Ex. 13**).

28.     One of the male Plaintiffs testified that he did not know if he was discriminated against because he was Latino. Saravia-Cruz Dep. Tr. 79:1-18 (**Ex. 16**).

29.    Three of the male Plaintiffs admitted that their wives were not discriminated against because they were Latina. Bolanos Dep. Tr. 29:12-15; 30:6-13; 34:8-18 (**Ex. 14**); Moya Dep. Tr. 21:7-12; 23:21-24:9; 24:19-25:14 (**Ex. 15**); Jose Reyes Dep. Tr. 31:14-33:2 (**Ex. 13**).

30.    One of the male Plaintiffs testified that he did not know if his wife was discriminated against because she was Latina.  Saravia-Cruz Dep. Tr. 79:19-80:14 (**Ex. 16**).

31.    Two of the female Plaintiffs admitted that they were not discriminated against because they were Latina. Rosy Reyes Dep. Tr. 90:18-91:8; 102:4-8 (**Ex. 9**); Rivas Dep. Tr. 38:9-18; 39:7-18 (**Ex. 10**).

32.    Two of the female Plaintiffs admitted that they did not know if they were discriminated against because they were Latina. Solis Dep. Tr. 66:4-21; 95:19-96:2 (**Ex. 11**); Amaya Dep. Tr. 31:22-32:6 (**E. 12**).

33.    Three of the female plaintiffs have admitted that they have not been intentionally discriminated against on the basis of non-citizenship. Rosy Reyes Dep. Tr. 30:6-16 (**Ex. 9**); Solis Dep. Tr. 79:8-12 (**Ex. 11**); Rivas Dep. Tr. 39:19-40:20 (**Ex. 10**).

34.    Ms. Amaya testified that she does not know if she has been discriminated against on the basis of her status as a non-citizen.  Amaya Dep. Tr. 28:21-29:8; 32:7-14 (**Ex. 12**).

35.    Two male Plaintiffs testified that they do not know if their wives have been discriminated against on the basis of their citizenship. Jose Reyes Dep. Tr. 28:15-20 (**Ex. 13**); Saravia-Cruz Dep. Tr. 79:19-80:14 (**Ex. 16**)

36.    One male Plaintiff testified that his wife was discriminated against because she was a non-citizen because she does not have a social security number. Bolanos Dep. Tr. 39:1-15 (**Ex. 14**).

37.    One male Plaintiff testified that his wife was discriminated against because she was a non-citizen because his wife was present in the United States illegally. Moya Dep. Tr. 24:11-25:19 (**Ex. 15**).

38.    A person can acquire an Individual Taxpayer Identification Number if a person sends to the IRS: a completed Form W-7 with an attached copy of a valid passport and a copy of a tax return. *E.g.*, Rosy Reyes' Response to Int. 8 (Rosy Reyes' Responses to Defendants' Interrogatories are attached as **Ex. 31**);

## STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see French v. Assurance Co. of Am.*, 448 F.3d 693, 700 (4th Cir. 2006). Further, "[w]here the record taken as a whole could not lead a trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). A motion for summary judgment requires the non-moving party to produce evidence on any issue for which that party bears the burden of production at trial. *Celotex v. Cattrett*, 477 U.S. 317, 322-23 (1986). The non-movant must present evidence that is more than a mere scintilla and that shows more than some "metaphysical doubt" that genuine and material factual issues exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Summary judgment is not a 'disfavored procedural shortcut.'" *White v. Potocska*, 589 F. Supp. 2d 631, 640 (E.D. Va. 2008) (internal citations omitted). "Rather, the summary judgment procedure is properly regarded as an 'integral part' of the Federal Rules of Civil Procedure, which are designed to obtain a just, expeditious, and inexpensive resolution of every civil matter." *Id.*

## SUMMARY OF ARGUMENT

The Court should enter summary judgment on Plaintiffs' FHA claim (Count I) on both a disparate impact theory and a disparate treatment theory because the Policy and the enforcement thereof impacts only undocumented aliens **not** Latinos. The Court has already held that the Plaintiffs cannot state a claim for disparate impact because they fail to satisfy the "robust causality" requirement. The undisputed facts fully support this conclusion. Additionally, is no evidence that Defendants' Policy was enacted or enforced with a discriminatory motive or purpose. Plaintiffs fail to make a prima facie showing of intentional discrimination which is their burden. Even if the Court concludes that a prima facie showing of intentional discrimination exists, the evidence shows the Policy has legitimate non-discriminatory purposes – to ensure that Defendants can verify the identity of the persons living in the Park and to verify legal residence. The burden then shifts to Plaintiffs to show that the purposes for the Policy given by the defendants are false *and* that the Policy was actually enacted to intentionally discriminate against Latinos. There is no evidence that Defendants' stated rationale for the Policy is without any basis, nor is there any evidence of an intent to discriminate against Latinos.

The Court should enter summary judgment on Plaintiffs' VFHL claim (Count II) because as noted in Defendants' Motion to Dismiss, the VFHL does not provide for disparate impact claims. Even if the Court recognizes a disparate impact claim under the VFHL, Defendants are entitled to a summary judgment on Plaintiffs' VFHL claim for the same reasons that Defendants are entitled to summary judgment on Plaintiffs' FHA claim.

The Court should enter summary judgment on Plaintiffs' intentional discrimination claim (Count IV) because Plaintiffs admit that they were not discriminated against on the basis of the female Plaintiffs' non-citizenship, illegal aliens are not a protected class under § 1981; and

permitting Plaintiffs' § 1981 claim to survive summary judgment, in light of the facts, would put Plaintiffs' § 1981 claim directly at odds with federal immigration law.

Finally, the Court should enter summary judgment on Plaintiffs' MHLRA claim (Count II) and breach of contract claim (Count V) because the Plaintiffs failed to list the female Plaintiffs as occupants of the mobile homes as required by the application to the Park. In doing so, Plaintiffs misrepresented the occupants who would live in their mobile homes. Each of the male Plaintiffs' leases were explicitly made based on the representations in the applications.

## ARGUMENT

### I.     The Court Should Enter Summary Judgment on Plaintiffs' FHA Claim (Count I)

The Court correctly held that Plaintiffs fail to state a claim under a disparate impact theory because Plaintiffs cannot satisfy the robust causality requirement established in *Inclusive Communities*. Further, use of a disparate impact analysis to support a claim of disparate treatment is improper under *Inclusive Communities* because it eviscerates the "robust causality" requirement by allowing an FHA claim to proceed when that requirement is not satisfied.

Additionally, a disparate treatment claim must be based upon evidence of an intent to discriminate. There is no such evidence here as the Plaintiffs themselves admit. As Defendants have asserted from the beginning - and as the Plaintiffs now admit - the only reason the female Plaintiffs cannot comply with the Policy is because they are in the United States illegally.

### A.     Plaintiffs Fail To State a Claim For Disparate Impact.

Plaintiffs fail to identify a causal link between Defendants' Policy and an adverse impact on Latinos because the sole reason the female Plaintiffs cannot comply with the Policy is their illegal status in the United States. Mot. to Dismiss at 10-12 (citing *Inclusive Communities*, 135 S. Ct. at 2523). This Court concluded as much in ruling on Defendants' Motion to Dismiss, stating: "to permit Plaintiffs to use disparate impact in this case to show causation results in

- 10 -

essentially writing out of the FHA its robust causation requirement altogether." Mem. Op. at 13 (Dkt. 56). The Court further held that "in the instant case, the disparate impact on plaintiffs *as Latinos* is incidental to the Policy's effect on all illegal aliens." *Id.* at 16. The Court correctly determined that Plaintiffs' allegations did not satisfy the robust causal link required by *Inclusive Communities. Id.* The facts obtained through discovery fully support the Court's conclusion as the Plaintiffs testified that the issue with the Policy for the female Plaintiffs arises solely from their illegal status, not because they are Latino. *See* Undisputed Facts 8-10, *supra*.[3]

The female Plaintiffs admitted they entered the United States illegally. *See* Exs. 1-4 (female Plaintiffs' Response to Int. 11). The female Plaintiffs admitted they are present in the United States illegally. *See* Exs. 1-4 (female Plaintiffs' RFA 1). The male Plaintiffs admitted that they were able to enter into leases at the Park. *See* Exhibits 5 – 8 (male Plaintiffs' RFA 3). The male Plaintiffs were able to renew their leases at the Park. *See* Exs. 21-24 (male Plaintiffs' leases). The male Plaintiffs admitted that they were never denied the right to enter into a Rental Agreement to rent a Lot at the Park because they were Latino or because they were not citizens of the United States. *See* Exs. 5-8 (male Plaintiffs' RFAs 4-5). The female Plaintiffs admitted that they do not have U.S. Visas or I-94 forms. *See* Exs. 1-4 (female Plaintiffs' RFA 9 and 10). The female Plaintiffs all admitted that they do not have documents showing that they are legally present in the United States. *See* Undisputed Facts 7 and 8, *supra*. Importantly, the female Plaintiffs admitted under oath that they were not able to comply with the Policy because they are present in the United States illegally. *See* Undisputed Fact 10, *supra*. Additionally, Latinos who are legally in the United States are not impacted at all by the policy as demonstrated by the male

---

[3] Seven of the Plaintiffs, including all the female Plaintiffs, admitted that the reason the female Plaintiffs could not comply with the Policy was because the female Plaintiffs did not have immigration documents. When asked if his wife's status as an illegal alien prevented her from complying with the application process at the Park, Mr. Saravia-Cruz said he did not know. Saravia-Cruz Dep. Tr. 80:9-14 (Ex. 16).

Plaintiffs who are alleged to be in the United States legally – and who are Latino and who signed multiple leases. The Plaintiffs admitted that: other Latinos have entered into leases at the Park in 2015 and 2016. *See* Undisputed Facts 15, 17, *supra*. The required "robust causality" element of disparate impact claim is not satisfied when the underlying policy causes no impact to any Latino who is a properly documented alien.

### B.    Plaintiffs Fail to State a Disparate Treatment Claim.

It remains Defendants' position that the Plaintiffs did not allege a claim in their Complaint based upon a disparate treatment theory – as the Plaintiffs' themselves admit. There are no allegations in the Complaint of intentional discrimination and no allegations that the Policy was a "pretext" for discrimination. In fact, the Complaint repeatedly states that the Policy impacts illegal immigrants. Having failed to assert a claim for disparate treatment, Plaintiffs should not be allowed to proceed on such a theory.

Since the Court nonetheless permitted Plaintiffs' FHA claim to proceed solely under a disparate treatment theory, Defendants address the deficiencies of such a claim here. First, it is improper to allow a disparate treatment claim to proceed based upon a disparate impact theory because that completely undermines the robust causality requirement. Second, Plaintiffs have proffered no evidence to establish a prima facie case for disparate treatment. *See* Undisputed Facts 27-37, *supra.* Instead, the testimony from all of the Plaintiffs is that they were not treated differently because they are Latino or non-U.S. citizens or that they did not know if they were treated differently. *See id.*, *supra.*   Third, the legitimate purposes of the Policy – to allow for a criminal background check and to determine legal status – are clear. Finally, even if the Court believes the purposes to be debatable, or even without a basis, the Plaintiffs must still prove that the Policy was enacted and enforced to intentionally discriminate against Latinos. There is no evidence of such an intent. In fact, the evidence shows just the opposite – that Latinos are the

predominant residents at the Park and have no issues complying with the Policy – if they are in the United States legally.

1.    **Plaintiffs Cannot Prove a Claim of Disparate Treatment Based on Disparate Impact Statistics.**

At the outset, allowing Plaintiffs to proceed with a disparate treatment claim that is premised on disparate impact statistics is contrary to the robust causality requirement described *Inclusive Communities* in which the Court held that "a robust causality requirement ensures that racial imbalance … does not, without more establish a prima facie case of disparate impact." 135 S. Ct at 2523. Certainly then, claimed racial imbalance cannot state a prima facie case for disparate treatment. Otherwise, the robust causality requirement is of no effect because a Plaintiff can simply proceed under a disparate treatment claim even if he/she cannot meet the robust causality standard. The Court in *Inclusive Communities* was rightly concerned with the prospect of expanding claims under the FHA too broadly which is why it established a threshold "robust causality" requirement. Here, the Plaintiffs failed to meet this requirement, but were allowed to proceed using the same statistical data that underpins their disparate impact claim. This is contrary to *Inclusive Communities*. Further, while "circumstantial and direct evidence of intent" can sometimes support an inference of intentional discrimination, intentional discrimination is not created by pointing to a policy's disparate effects. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Allegations of some claimed statistical disparity is not sufficient to state a claim for disparate impact or disparate treatment.

2.    **The Facts Demonstrate That There Is No Disparate Treatment.**

In order to state a claim for disparate treatment a plaintiff must prove that the defendant acted with a discriminatory intent. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988) ("In such 'disparate treatment' cases, which involve 'the most easily understood type of

discrimination,' the plaintiff is required to prove that the defendant had a discriminatory intent or motive.") (internal citation omitted). Absent direct evidence of intentional discrimination, a Court can evaluate allegations to determine if there is sufficient circumstantial evidence of discrimination "sufficient to satisfy the familiar *McDonnell Douglas* framework for proof." *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001).

"Under the *McDonnell Douglas* scheme, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence." *Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402, 431 (E.D. Va. 2011), *aff'd in part, vacated in part sub nom. Matarese v. Archstone Communities, LLC*, 468 F. App'x 283 (4th Cir. 2012); *Hadeed v. Abraham*, 265 F. Supp. 2d 614, 623 (E.D. Va. 2003), *aff'd*, 103 F. App'x 706 (4th Cir. 2004) (granting summary judgment for Defendants' on a FHA claim). To establish a prima facie case of discrimination, a plaintiff must show that "discriminatory animus was a motivating factor[.]" *Martin v. Long & Foster Real Estate Inc.*, No. 1:11-CV-1118-AJT-TCB, 2012 WL 3991900, at *9 (E.D. Va. Sept. 11, 2012) (Trenga, J.) (granting summary judgment for Defendants' on a FHA claim), *aff'd sub nom. Martin v. Brondum*, 535 F. App'x 242 (4th Cir. 2013); *Matarese*, 795 F. Supp. 2d at 431.

If a plaintiff proves a prima facie case that a discriminatory animus was a motivating factor for an action, "the burden shifts to the defendants to show a legitimate nondiscriminatory reason for their actions." *Martin*, 2012 WL 3991900, at *9 (citing *McDonnell Douglas*, 411 U.S. at 802–803). "If the defendants are able to present a legitimate, nondiscriminatory reason, the burden returns to plaintiff to demonstrate that the proffered reason was a pretext." *Id.* (citations omitted). Importantly, "[t]o meet this burden to present evidence of pretext, Plaintiffs must demonstrate *both* that Defendants' proffered legitimate, nondiscriminatory reason was false, *and* that discrimination was, in fact, the real reason for the defendant's action." *Martin*, 2012 WL

- 14 -

3991900, at *9 (emphasis within); *Hadeed*, 265 F. Supp. 2d at 623 ("To succeed [in showing the proffered legitimate nondiscriminatory reason was pretextual], the Plaintiffs must adduce sufficient evidence both that the reason was false, and that discrimination was the real reason."); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–16 (1993); *Price v. Thompson*, 380 F.3d 209, 217 n. 5 (4th Cir. 2004) ("our laws impose liability only when 'the employer's action was the product of unlawful discrimination' and do not impose liability simply because 'the employer's explanation of its action was not believable.' ") (quoting *Hicks*, 509 U.S. at 514). Consequently, it is insufficient for Plaintiffs to survive the pretext prong by only producing evidence that Defendants' proffered reasons are debatable or even false, which they are not.

Defendants are entitled to summary judgment under a disparate treatment theory because 1) there is no evidence to establish a prima facie case of intentional discrimination; 2) Defendants articulated a legitimate, non-discriminatory reasons for the Policy; and 3) there is no evidence that Defendants' reasons are false, pre-textual or that the real purpose of the Policy was to discriminate against Latinos.

### a.    Plaintiffs Cannot Establish a Prima Facie Case of Discrimination.

To establish a prima facie case of discrimination, a plaintiff must establish that "discriminatory animus was a motivating factor" by a preponderance of the evidence. *Martin*, 2012 WL 3991900, at *9; *Matarese*, 795 F. Supp. 2d at 431.  Plaintiffs cannot meet this burden. It is undisputed that Defendants' Policy is facially neutral. *See* Compl. Ex. A. Further, it is clear from the testimony of the Plaintiffs and their discovery responses that they do not assert that the Policy was intended to or did treat them differently because they are Latino.  Instead, the Policy impacts the female Plaintiffs solely because they are in the United States illegally. *See* Undisputed Facts 8-10, *supra.* Plaintiffs admit that other Latinos have signed leases with the

Defendants, that the majority of the residents at the Park are Latino and that the male plaintiffs had no issue signing leases or complying with the Policy. *See* Undisputed Facts 11 – 15, 17, *supra*. Nor do the Plaintiffs contend that non-Latino undocumented immigrants are treated differently. In fact, there is evidence that Defendants required non-Latino undocumented immigrants to comply with the Policy. *See* Ex. 34 (Aug. 16, 2016 letter to ████████ ).[4] There is no evidence to support a prima facie claim of intentional discrimination.

The female Plaintiffs admitted they entered the United States illegally and that they are present in the United States illegally.  *See* Undisputed Facts 2 and 3, *supra*. The female Plaintiffs also admitted that they do not have U.S. Visas or I-94 forms and, in fact, do not have any documents showing that they are legally present in the United States. *See* Undisputed Facts 4 – 8, *supra*.   Importantly, the female Plaintiffs admitted under oath that they were not able to comply with the Policy because they are present in the United States illegally. *See* Undisputed Fact 10, *supra*. The male Plaintiffs admitted that they were able to enter into leases at the Park and were able to renew their leases at the Park.  *See* Undisputed Facts 11 and 12, *supra*. Thus, the cause of the alleged impact of the Policy on the female Plaintiffs is that the female Plaintiffs are present in the United States illegally.

Two of the female Plaintiffs, Ms. Reyes and Ms. Rivas admit that they were not discriminated against because they are Latina. *See* Undisputed Fact 31, *supra*. Of the remaining female Plaintiffs, Ms. Solis stated that she was discriminated against because she is Latina but when asked for facts to support this allegation, Ms. Solis stated that she did not know the basis for this allegation. Solis Dep. Tr. 66:4-21; 95:19-96:2 (Ex. 11). Ms. Amaya stated that she believed she was discriminated against in the application process because she did not have

---

[4] According to U.S. Census data, the name ████████ is likely the name of a person of Asian or Pacific Island descent. *See* File B: Surnames Occurring 100 or more times *available at* http://www.census.gov/topics/population/genealogy/data/2000_surnames.html.

immigration papers. Amaya Dep. Tr. 33:19-34:4 (Ex. 12). When asked whether Ms. Amaya was claiming that she was discriminated against because she was Latina, Ms. Amaya said she did not know. *Id.* at 31:22-32:6 (Ex. 12).  When asked if the entire basis of her allegations was that undocumented immigrants were precluded from living at the Park, Ms. Amaya simply stated ███████████████████████████████████████████████ Amaya Dep. Tr. 108:14-22 (Ex. 12). Three male Plaintiffs admitted that their wives were not discriminated against because they were Latina but rather their wives could not comply with the Policy because they did not have immigration documents. Bolanos Dep. Tr. 29:12-15; 30:6-13; 34:8-18 (Ex. 14); Moya Dep. Tr. 21:7-12; 23:21-24:9; 24:19-25:14 (Ex. 15); Jose Reyes Dep. Tr. 31:14-33:2 (Ex. 13). The fourth male Plaintiff, Mr. Saravia-Cruz, testified that he did not know if Defendants discriminated against his wife because she was Latina. Saravia-Cruz Dep. Tr. 79:19-80:14 (Ex. 16).

The male Plaintiffs also either admitted they were not discriminated against in the application process because they were Latino or testified that they did not know if they were discriminated against because they were Latino. Moya Dep. Tr. 23:2-19 (Ex. 15); Bolanos Dep. Tr. 32:16-33:15 (Ex. 14); Jose Reyes Dep. Tr. 30:15-31:3 (Ex. 13); Saravia-Cruz Dep. Tr. 79:1-18 (Ex. 16).

With all eight Plaintiffs testifying that either there was no discrimination or that they have no knowledge of such discrimination, Plaintiffs cannot establish a prima facie case of discrimination. *See supra.* This is also clear from the uncontroverted facts that Latinos do sign leases for the Park. *See* Undisputed Facts 15, 17, *supra.* The only Latinos who were not be able to sign were those in the United States illegally.

Instead of evidence that Defendants' actions are motivated by a discriminatory animus, there is evidence that Defendants' advertise to Hispanics and Latinos. See Ex. 32 (Email

regarding advertising in the Washington Hispanic paper). Moreover, under a section titled

██████████████████████████ in Defendant A. J. Dwoskin & Associates, Inc.'s 2014

Residential Marketing Plan, Defendant A. J. Dwoskin sought to set up a bi-lingual Facebook site

and advertise to the ████████████. Ex. 33 at 2-3 ██████████████

██████████████████████████████████. Further, Plaintiffs

admit in their allegations that there has been a long period of contractual dealings between

Plaintiffs and Defendants without any evidence of discrimination. According to Plaintiffs' own

allegations, Plaintiffs lived in the Park dating back to either:  2011 (Moya/Solis), Compl. ¶ 92;

2013 (Reyes), Compl. ¶ 66; 2012 (Bolanos/Rivas), Compl. ¶ 82; 2010 Saravia-Cruz/Amaya,

Compl. ¶ 101. Yet, Plaintiffs did not face any alleged acts of discrimination until 2016. *See*

Compl. ¶¶ 64-111. As noted in *Martin*, a prior period of contractual dealings without any

evidence of discrimination "by itself is strong evidence that Defendants' actions… were not

motivated by racial animus" *Martin*, 2012 WL 3991900, at *13.

Plaintiffs have not established that "discriminatory animus was a motivating factor" of

Defendants' policy or actions by a preponderance of the evidence.

> **b.    Defendants Articulate Legitimate, Non-Discriminatory Reasons for the Policy.**

Even if the Court finds that Plaintiffs can show a prima facie case of intentional

discrimination, Defendants articulate legitimate, non-discriminatory reasons for the Policy.

Defendants stated that their reasons for creating the Policy "are to confirm the identity of the

applicant(s) and any adult occupants, to perform credit checks, minimize identity fraud, and to

eventually perform criminal background checks, and minimize loss from eviction…" *See* Exhibit

29 at Int. 1 (Defs.' Responses to Plaintiff Rosy Giron de Reyes' First Set of Interrogatories to All

Defendants).  If an applicant is an undocumented immigrant, Defendants cannot verify the

applicant's identity by matching the applicant's name to a document issued by the U.S. Government. The background checks performed by Defendants are run on the identity given by the applicant.  Therefore, it is crucial that Defendants confirm the correct identity of the applicant. Indeed, when Plaintiffs asked Defendants to "[d]escribe all reasons, excluding none, that you seek to prevent any undocumented immigrants from leasing or occupying homes in the Park[,]" Defendants provided this very rationale:

> **INTERROGATORY NO. 16:**
> Describe all reasons, excluding none, that you seek to prevent any undocumented immigrants from leasing or occupying homes in the Park.
>
> **RESPONSE TO INTERROGATORY NO. 16**
> Notwithstanding and without waiving Defendants' Objections, Defendants state that they seek to prevent undocumented immigrants due to lease underwriting concerns. Without proper identity documentation such as valid visas and passports, Defendants have no evidence to prove individuals are who they claim to be. Without this identity proof, it weakens the credit and criminal reports received from the third party providers. From a criminal history underwriting concern, the criminal screening reports all crimes found in the United States, particularly the three state area (Virginia, District of Columbia, and Maryland). It does not include crimes from other countries. From a continuous income and employment concern, the prospective tenants' employment opportunities are limited under current hiring laws if the prospective tenants are undocumented immigrants. From the Park management view of lease underwriting, Defendants believe analyzing these factors for all prospective tenants minimize to the best of our abilities the exposure to financial and safety concerns. Defendants also seek to comply with 8 U.S.C. § 1324, *et seq.* in their housing practices.

*See* Ex. 29 at Int. 16.  Of course, as the Court noted in response to the Motion to Dismiss, a policy aimed at excluding illegal aliens is not discriminatory. Mem. Op. at 21, 22 n. 19 (Dkt. 56). The Court also noted that "defendants obligations under § 1324 may constitute a basis to argue that the Policy  is supported by a legitimate, non-discriminatory reason…." *Id.* at 8.

> **c.    There is No Evidence That Defendants' Reason for the Policy is Pre-textual.**

"If the defendants are able to present a legitimate, nondiscriminatory reason, the burden returns to plaintiff to demonstrate that the proffered reason was a pretext." *Id.* (citations omitted).

Importantly, "[t]o meet this burden to present evidence of pretext, Plaintiffs must demonstrate *both* that Defendants' proffered legitimate, nondiscriminatory reason was false, *and* that discrimination was, in fact, the real reason for the defendant's action." *Martin*, 2012 WL 3991900, at \*9 (emphasis within); *Hadeed*, 265 F. Supp. 2d at 623 ("To succeed [in showing the proffered legitimate nondiscriminatory reason was pretextual], the Plaintiffs must adduce sufficient evidence both that the reason was false, and that discrimination was the real reason."); Plaintiffs understood the  legitimate non-discriminatory reasons for the Policy alleging that "Defendants claim they need the documentation required by the Policy to conduct criminal background and credit checks of prospective and current tenants[.]" Compl. ¶ 32. Further, Plaintiffs allege that "these documents are not necessary to prove identity or to conduct background or credit checks[,]" *id.* ¶¶ 32-35, and  that "[f]oreign passports or government-issued identification cards are sufficient." *Id.* ¶ 33. Plaintiffs also suggest that an Individual Taxpayer Identification Number ("ITIN") is sufficient to prove identity and conduct a background check. *Id.* ¶¶ 35 – 36. In particular, Plaintiffs allege that an ITIN is a sufficient substitute to the documentation requested under the policy because "[a]s a form of identification, the ITIN is *as reliable and precise as a Social Security number*." *Id.* ¶ 31 (emphasis added). None of these contentions undermines the legitimate non-discriminatory reasons for the Policy

As stated above, Defendants' rationale for the policy is "to confirm the identity of the applicant(s) and any adult occupants, to perform credit checks, minimize identity fraud , and to eventually perform criminal background checks, and minimize loss from eviction…" This is accomplished by requiring a social security number or a document issued by the United States government showing legal presence.  Such a document is issued only after vetting by the United States government of the person seeking legal residence. For example, the male Plaintiffs, who

are all present in the United States legally, were required to be fingerprinted and to answer extensive questions about themselves as part of their application for Temporary Protected Status ("TPS") in the United States. Jose Reyes Dep. Tr. 16:11-17:7 (Ex. 13); Saravia-Cruz Dep. Tr. 68:15-22 (Ex. 16); Bolanos Dep. Tr. 70:6-71:1 (Ex. 14); Moya Dep. Tr. 17:5-14 (Ex. 15). The female Plaintiffs have never been subjected to such a process because they have never sought legal status in the United States. Thus, the United States government has never verified the identity of the female Plaintiffs or conducted a criminal background check for them using their fingerprints as is the case with the male Plaintiffs. There is a reason – several – why there is a detailed process to gain legal status in the United States.

Plaintiffs' claim that foreign passports are sufficient to prove identity is undercut by the fact that Ms. Yovanna Solis used someone else's passport to illegally enter the United States. *See* Ex. 3 (Solis Response to Int. 11). The requirement for a document issued by the United States government in the absence of a social security number is reasonable.

Further, Plaintiff's contention that an ITIN is insufficient to prove identity is wrong because all that a person must do to acquire an ITIN is send in a passport, a simple Form W-7 application with an attached copy of a tax return – there is no in-person meeting or any other effort undertaken by the IRS to verify identity. *E.g.*, Rosy Reyes' Response to Int. 8 (Rosy Reyes' Responses to Defendants' Interrogatories are attached as Ex. 31); *see* Rosy Reyes Dep. Tr. 56:10-58:9 (Ex. 9); Rivas Dep. Tr. 88:3-89:15 (Ex. 10); Amaya Dep. Tr. 64:19-66:1 (Ex. 12); Solis Dep. Tr. 40:7-41:20 (Ex. 11). Ms. Solis could have used the passport she used to illegally enter the United States to obtain an ITIN and the IRS would be unaware. According to a 2009 U.S. Treasury report, "[t]here are also no controls to prevent an ITIN from being used by more

than one taxpayer on multiple tax returns." Ex. 30 at 2.[5] The same report states "[t]hirty-five percent… of the [ITIN] application packages sampled that were submitted directly to the IRS by mail or through Taxpayer Assistance Centers[] contained errors. The errors ranged from missing and illegible documents *to inconsistencies between the Forms W-7 and the supporting documents.*" Ex. 30 at 2 (emphasis added).

Plaintiffs have a high burden of showing "*both* that Defendants' proffered legitimate, nondiscriminatory reason was false, *and* that discrimination was, in fact, the real reason for the defendant's action." *Martin*, 2012 WL 3991900, at *9. Plaintiffs cannot meet this burden.

## C.    Undocumented Immigrants Lack Standing Under the FHA.

Defendants argued in their Motion to Dismiss that undocumented aliens are not a protected class under the FHA and cannot pursue a claim under the FHA. Mem. Supp. Mot. Dismiss at 7-9 (Dkt. 26). The Court held that undocumented aliens do have standing under the FHA, though no authority was cited for this conclusion. The 8th Circuit – the precedent the Court acknowledges is "closest on point factually to this case" -- suggested that "[i]t would be illogical to impose FHA disparate impact liability on a sub-group of the of the unprotected class of aliens not lawfully present in this country." *Id.* (citing *Keller v. City of Freemont*, 719 F.3d 931, 949 (8th Cir. 2013)). The remaining judge in the Keller panel majority concluded that the plaintiffs there lacked standing to bring the FHA claim. *See Keller*, 719 F.3d at 951-53 (Colloton, J., concurring in part and concurring in the judgment). Defendants continue to assert that illegal aliens are not a protected class under the FHA and that Plaintiffs lack standing to pursue a claim under the FHA.[6]

As noted above, the female Plaintiffs all admit that they were not able to comply with the

---

[5] Available at https://www.treasury.gov/tigta/auditreports/2010reports/201040005fr.html. As the Court noted in its Memorandum Opinion (Dkt. 56), the Court can take judicial notice of facts published in government reports.
[6] Defendants incorporate their arguments in Part I(A) of their Motion to Dismiss by reference.

Policy because they are here illegally. *See supra*. The female Plaintiffs likewise admit the following: they cannot comply with the Policy because they cannot acquire the documents requested by the Policy. *See supra*. Plaintiffs' FHA discrimination claims are therefore based only on the female Plaintiffs' status as illegal aliens. If the Court permits Plaintiffs' claims to survive summary judgment in light of this evidence, the Court would be permitting Plaintiffs' claims to survive only on the basis of the female Plaintiffs' status as illegal aliens.

Consequently, Plaintiffs' FHA discrimination claims should not survive summary judgment because, as this Court has recognized, a Policy that is aimed at excluding illegal aliens is not discriminatory. Mem. Op. at 21, 22 n.19 (Dkt. 56). Moreover, if the Court permits illegal aliens to be recognized as a protected class under the FHA, the FHA would conflict with the Immigration Reform and Control Act. *See* 8 U.S.C. § 1324, *et seq.* ("IRCA"); s*ee United States v. Aguilar*, 477 F. App'x 1000, 1002 (4th Cir. 2012).

## II.    The Court Should Enter Summary Judgment on Plaintiffs' VFHL Claim (Count II).

As noted in Defendants' Motion to Dismiss, *see* Mem. Supp. Mot. Dismiss at 12-14, the express language of the VFHL does not provide for disparate impact claims. *See* Va. Code. 36-96.1, *et seq.*[7]

In permitting Plaintiffs' VFHL claim to survive Defendants' Motion to Dismiss, the Court decided that Plaintiffs' VFHL claim "states a claim for disparate treatment" rather than decide whether Plaintiffs' VFHL claim stated a claim for disparate impact discrimination. Mem. Op. at 19 (Dkt. 56). For the same reasons as noted above as to Count I, there is no evidence to support Plaintiffs' VFHL claim under a disparate treatment theory just as there is no evidence to support Plaintiffs' FHA claim under a disparate treatment theory. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' VFHL claim (Count II).

---

[7] Defendants' incorporate their arguments contained in Section II of Defendants' Motion to Dismiss (Dkt. 26).

III.    **The Court Should Enter Summary Judgment on Plaintiffs' § 1981 Claim (Count IV).**

Plaintiffs base their intentional discrimination claims only on the Plaintiffs' status as non-citizens. Opp. to Mot. Dismiss at 24-28; Compl. ¶ 7. The Court should enter summary judgment on Plaintiffs' § 1981 claim because A) Plaintiffs admit that they were not discriminated against on the basis of non-citizenship; B) illegal aliens are not a protected class under § 1981; and C) permitting Plaintiffs' § 1981 claim to survive summary judgment, in light of the facts, would create a conflict between Plaintiffs' § 1981 claim and federal immigration law.

A.    **Defendants Did Not Intentionally Discriminate as Plaintiffs Admit.**

Three of the female plaintiffs unequivocally admitted that they have not been intentionally discriminated against on the basis of non-citizenship. Rosy Reyes Dep. Tr. 30:6-16 (Ex. 9); Solis Dep. Tr. 79:8-12 (Ex. 11); Rivas Dep. Tr. 39:19-40:20 (Ex. 10). The final female Plaintiff, Ms. Amaya, testified that she does not know if she has been discriminated against on the basis of her status as a non-citizen.  Amaya Dep. Tr. 28:21-29:8; 32:7-14 (Ex. 12). Consequently, Defendants are entitled to summary judgment on Count IV.[8]

"To prove a § 1981 claim, therefore, a plaintiff must ultimately establish both that the ***defendant intended to discriminate on the basis of race***, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006) (emphasis added); *Wadley v. Park at Landmark, LP*, No. 1:06CV777(JCC), 2007 WL 201085, at *4 (E.D. Va. Jan. 24, 2007), *aff'd*, 264 F. App'x 279 (4th Cir. 2008) (citing *Denny*, 456 F.3d at 434 and entering summary judgment against § 1981 claim because "Plaintiff has

---

[8] The male Plaintiffs' claims of intentional discrimination are tied to the female Plaintiffs' claims because the male Plaintiffs were able to enter into Rental Agreements at the Park.

provided no credible evidence of intent to discriminate based on race.").[9]  The female Plaintiffs all testified that they were not treated differently because they are not citizens of the United States or that they did not know if they were treated differently because they are not a citizen of the United States. *See* Undisputed Facts 33-34, *supra.* Two of the male Plaintiffs testified that they do not know if their wives were treated differently because their wives are not citizens of the United States, one male Plaintiff said his wife was treated differently because she was in the United States illegally and one testified that his wife was treated differently because his wife did not have a Social Security Number. *See* Undisputed Facts, 35-37, *supra.* Again, the illegal status of the female Plaintiffs is the only reason they cannot comply with the Policy. *See* Undisputed Fact 10, *supra.*

The Court permitted Plaintiffs' intentional discrimination claims to survive the Motion to Dismiss on two grounds: 1) it may be more burdensome to acquire original copies of an I-94 Form because these forms cost $330 and aliens with immigrant visa do not even need to acquire I-94 forms. Mem. Op. at 20 (Dkt. 56); and 2) only upon the Court's inference, the improper denial of year-long lease renewals may support an inference of intent to reduce the number of aliens in the Park. *Id.* at 21. (Dkt. 56).  As to the first point, none of the female Plaintiffs have an I-94 of any other document issued by the United States government with respect to their legal status.  As to the second point, three of the female Plaintiffs admitted that they have not been discriminated against on the basis of their status as non-citizens, and the fourth, Ms. Amaya, does not know if she has been discriminated against despite filing a discrimination lawsuit. *See supra.*  Of course, the male Plaintiffs are not citizens of the United States and yet signed multiple leases. *See* Undisputed Facts 11-12, and 26 *supra.*  Not surprisingly, Plaintiffs further admit that

---

[9] It is well settled law that disparate impact claims are not available under § 1981. *E.g., Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

non-U.S. citizens are able to sign leases with the Defendants. *See* Undisputed Facts 16-17, *supra*. Further, the Plaintiffs cannot point to any evidence that non-U.S. citizens were not required to comply with the Policy. Accordingly, there is no evidence to support Plaintiffs' claims of intentional discrimination.

### B.    Section 1981 Does Not Protect Illegal Aliens As a Class.

As argued in Defendants' Motion to Dismiss, illegal aliens are not a protected class under § 1981.[10]  Indeed, the Supreme Court has held that Section 1981 applies to legal aliens discriminated against on the basis of citizenship; however, it has never held that Section 1981 applies to illegal aliens. *Takahashi v. Fish and Game Commission*, 334 U.S. 410, 418-19 (1948). The Second Circuit has confirmed that Section 1981 does not apply to illegal and/or undocumented aliens. *Anderson v. Conboy*, 156 F.3d 167, 180 (2d Cir. 1998) ("If an employer refuses to hire a person because that person is in the country illegally, that employer is discriminating on the basis not of alienage ***but of noncompliance with federal law***.") (emphasis added); *see also Keller*, 719 F.3d at 949 ("It would be illogical to impose FHA disparate impact liability based on the effect an otherwise lawful ordinance may have on a sub-group of the unprotected class of aliens not lawfully present in this country.").

As noted above, the female Plaintiffs who allege harm by Defendants' neutral policy are not harmed because they are non-citizens as plaintiffs suggest, but because they are illegal and/or undocumented aliens. *See supra.*  Consequently, Plaintiffs' intentional discrimination claims should not survive summary judgment because, as this Court has recognized, a Policy that is aimed at excluding illegal aliens "does not run afoul of § 1981." Mem. Op. at 22 n.19.  Indeed, permitting Plaintiffs' intentional discrimination claims to survive summary judgment would put § 1981 directly at odds with federal immigration law. *See* 8 U.S.C. § 1324, *et seq.*

---

[10] Defendants incorporate their arguments in Part III(A) of Defendants' Motion to Dismiss (Dkt. 26).

IV.    **The Court Should Enter Summary Judgment on Plaintiffs' Manufactured Home Lot Rental Act Claim and Plaintiffs' Breach of Contract Claim (Counts III and V).**

Defendants are entitled to summary judgment on Plaintiffs' claim under the MHLRA, Count III, and Plaintiffs' Breach of Contract claim, Count V because the Plaintiffs failed to list the female Plaintiffs as occupants of the mobile homes as required by the application to the Park. In doing so, Plaintiffs misrepresented the occupants who would live at their mobile homes at the Park each year the male Plaintiffs signed a lease. Each lease stated that it was explicitly made based on the representations in the applications. Defendants were entitled to rescind and terminate the leases because of these misrepresentations. However, Defendants did not opt for the harsh remedy of evicting Plaintiffs. Instead, Defendants attempted to provide Plaintiffs with more time to correct their misrepresentations by permitting Plaintiffs to live under month-to-month leases at the Park.[11] Nonetheless, Defendants were permitted under their leases, under Virginia law and under the MHLRA to terminate the leases.

In Count III, Plaintiffs allege that Defendants violated the MHLRA by moving Plaintiffs to month-to-month leases because, according to Plaintiffs' allegations, if a lease is not renewed or terminated under the MHLRA, a new one-year lease is formed automatically. Compl. ¶ 126. Under Count V, Plaintiffs allege that Defendants breached Plaintiffs' leases by imposing costlier month-to-month leases on Plaintiffs. *Id.* ¶ 141. Plaintiffs allege that to terminate Plaintiffs' leases, Defendants needed to provide Plaintiffs with a 60-day notice that Defendants were terminating the leases. *Id.* ¶ 140. Plaintiffs allege that without such notice, upon expiration of Plaintiffs' leases at the Park, new one-year leases at the Park with "the same terms" formed by operation of Va. Code § 55-248.42.1(B). *Id.* ¶ 141. Thus, the basis for Plaintiffs' claims under Counts III and V are the same.

---

[11] Plaintiffs were not charged an additional $300 per month as they suggested, but were charged only $100 per month due to the risk of a month-to-month lease. *See* Undisputed Fact 24, *supra*.

Defendants are entitled to summary judgment on both Count III and V because Plaintiffs repeatedly misrepresented that the female Plaintiffs were living in their mobile homes at the Park. The male Plaintiffs made this representation each time they renewed their leases. One of the Plaintiffs, Mr. Moya, identified his children on the application, but not his wife. *See* Ex. 19. Each of the male Plaintiffs' leases states that it was made in "consideration of the representation made in the application filed by the Lessee with the Lessor". *See* Plaintiffs' Leases (attached as Ex. 21-24). Further, under the "Occupants" section of each of the male Plaintiffs' leases, it states that "[o]nly those tenants registered at the manager's office may live in the Mobile Home Park." *Id.* Moreover, each of the male Plaintiffs signed the Park's Rules and Regulations. *See* Ex. 25-28. Although the Rules and Regulations over the years use slightly different language, the Rules and Regulations all reference that permanent adult occupants of a mobile home at the Park must comply with the application requirements. *See id.* (at either Section V, Section Q or "Occupants and Guests" Section depending on the version). The male Plaintiffs all admitted that they did not list their wives on their lease applications. *See* Undisputed Fact 21, 23, *supra*. The Plaintiffs knew they were not complying with the obligation to identify all occupants.

Under Virginia law, a "false representation of a material fact, constituting an inducement to the contract, on which the purchaser had a right to rely, is always ground for rescission of the contract by a court of equity." *George Robberecht Seafood, Inc. v. Maitland Bros. Co.*, 255 S.E.2d 682, 683 (Va. 1979) (citing *Wilson v. Carpenter*, 21 S.E. 243, 244 (Va. 1895)); *Abi-Najm v. Concord Condo., LLC*, 699 S.E.2d 483, 489 (Va. 2010) (same). The leases stated that they were made based on the representations in the lease applications. Defendants therefore relied on these representations in part to verify the identity of each person living at the Park. *See* Ex. 29 at Int. 1. Defendants were entitled to rescind the lease contracts after discovering these

- 28 -

misrepresentations.

Under the MHLRA, a manufactured home park owner or operator may evict a resident

for, inter alia:

4.   Violation of any rule or provisions of the rental agreement materially affecting the health, safety and welfare of himself or others; or
5.   Two or more violations of any rule or provision of the rental agreement occurring within a six-month period.

Va. Code § 55-248.50:1.

Here, the male Plaintiffs have violated the terms of their leases by misrepresenting the

adult occupants who were living at their respective mobile homes. After making

misrepresentations on their lease applications, the male Plaintiffs lived with their wives at the

Park. *See* Undisputed Fact 22, *supra*.  Therefore, the male Plaintiffs committed "[t]wo or more

violations" of the Park's rules within a six-month period because the female Plaintiffs did not

apply to live at the Park. Va. Code § 55-248.50:1(5). Moreover, the male Plaintiffs committed

"[t]wo or more violations" of their rental agreements within a six month period because the

female Plaintiffs were not listed as occupants on the lease applications.  *See* Ex. 17-20.

Accordingly, Defendants were entitled to evict Plaintiffs from their mobile homes under the

MHLRA. Va. Code § 55-248.50:1(5).

Furthermore, by failing to list their wives on their lease applications even though the

female Plaintiffs lived in the Park, the male Plaintiffs violated the rules and provision of their

rental agreements pertaining to the health, safety, and welfare of others at the Park. Va. Code §

55-248.50:1(4). The male Plaintiffs admitted that they did not list their wives as occupants of

their mobile homes on their lease applications. *See* Undisputed Fact 21, 23, *supra*. Having

unauthorized occupants stay at the Park, whoever they may be, affects the safety of others at the

Park because Defendants are not able to run criminal background checks on such occupants.

Accordingly, Defendants were entitled to evict Plaintiffs from their mobile homes under the MHLRA.  Va. Code § 55-248.50:1(4).

Instead of the harsh consequence of evicting the Plaintiffs outright, Defendants moved Plaintiffs onto month-to-month leases to enable them to cure their violations of their leases.[12] Yet, as the female Plaintiffs admitted, the female Plaintiffs could never acquire the documents required by the application Policy. Faced with individuals who had misrepresented their mobile home occupants on their leases, Defendants were not required to provide 60 days' notice to terminate the Plaintiffs' leases because Defendants were not "terminating" a tenancy. *See* Va. Code. § 55-248.46. Rather, Defendants, who were entitled to evict Plaintiffs, offered Plaintiffs an option with less harsh consequences than that of eviction.

Likewise, after discovering that Plaintiffs had misrepresented the occupants on their lease applications, Defendants were not required to renew Plaintiffs' leases for one year under Va. Code § 55-248.42:1 as Plaintiffs will argue. Such an argument leads to absurd results. For example, if Defendants discovered that one of the Plaintiffs misrepresented their employment, Defendants would have no option but to allow the lease to continue until the end of the lease term.  The MHLRA was not enacted to protect tenants from their own fraud.

Defendants did not breach their contracts with Plaintiffs or violate the MHLRA.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request this Court to enter judgment in favor of Defendants on all counts of Plaintiffs' Complaint and for such other relief as is just and proper.

---

[12] This is yet another piece of evidence that Defendants' actions were not motivated by racial animus. Instead, of evicting Plaintiffs, Defendants offered Plaintiffs an avenue to remain at their homes and cure their misrepresentations.

Respectfully submitted,


WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT LIMITED
PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of November, 2016, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
mdingman@reedsmith.com
jdebettencourt@reedsmith.com