# EXHIBIT 23

# EXHIBIT 23(A)

# MOBILE HOME LEASE AGREEME ~

Project Waples Mobile Hor ~~rk

## LESSOR AND LESSEE

This Agreement made this 18th day of January 2011 by and between A J DWOSKIN & ASSOCIATES INC AGENT for Waples Mobile Home Park (Owner) hereinafter called Lessor and Esteban R. Moya jointly and severally (if applicable) hereinafter called Lessee

## WITNESSETH

That in consideration of the representation made in the application filed by the Lessee with the Lessor the rent herein reserved and the covenants herein contained and by the said Lessee to be performed the Lessor hereby leases to the Lessee premises in the State of Virginia known as 11259 Mobile Drive Lot     Waples Mobile Home Park Fairfax Virginia ( Lot")

## TERM AND RENT

The term of this lease shall be for the period of 12 months commencing on the 1st day of February 2011 fully ending at midnight on the 31st day of January 2012 (hereinafter called the Lease Term ) for the total rent of Seven Thousand Seven hundred and forty Dollars ($7740 00) payable in equal monthly installments of Six hundred and forty five Dollars ($645 00) at the manager's office located in the Mobile Home Park or such other place as the Lessor may designate in writing each such monthly installment payable without demand or notice in advance on the first day of each month during the Lease Term

It is further covenanted and agreed between the Lessor and Lessee as follows

1 LATE CHARGE If any installment of rent required by this Lease is not received by the Lessor by close of business on the 5th day of the month in which the rent payment is due a late charge of $50 00 shall be paid to Lessor to compensate Lessor for the administrative expenses and other expenses associated with Lessee s failure to timely pay rent Lessee agrees that this late charge shall be deemed to be additional rent and failure to pay the late charge may result in the issuance of a five (5) day notice for such nonpayment In the event Lessee tenders to Lessor a check which is dishonored by the Lessee s bank for any reason Lessee agrees to pay Lessor in addition to the amount of the check due a service charge of $50 00 representing Lessor's administrative expenses and service charges incurred as a result of Lessee s insufficient check In addition Lessor may thereafter require Lessee to make all future payments of rent and other charges due under the Lease by means of certified check cashier's check or money order

2 SECURITY DEPOSIT The Lessee agrees to deposit with Lessor upon delivery of this lease the sum of $645 00 security for the full and faithful performance by the Lessee of each and every term provision covenant and condition of this lease In the event that the Lessee defaults in respect to any of the terms provisions covenants and conditions of this lease including but not limited to payment of rent additional rent or other sums required hereunder (including but not limited to charges for utilities) the Lessor may use apply or retain the whole or any part of the security so deposited for the payment thereof The Lessee acknowledges that the security deposit is to be retained by the Lessor and may be commingled with other funds of the Lessor with interest being paid to the Lessee The Lessor shall accrue interest on said security deposit in six (6) month increments at a per annum rate equal to the Federal Reserve Board discount rate as of January 1 of each year during the term of this Lease or such other rate required by law provided however that no interest shall be due and payable unless said security deposit has been held by the Lessor for a period exceeding thirteen (13) months after the date hereof

In the event that the Lessee shall fully and faithfully comply with all of the terms provisions covenants and conditions of this lease the security deposit or any balance thereof plus accrued interest if any shall be returned to the Lessee within thirty (30) days after the expiration of this lease and after the removal of the Lessee s mobile home and surrender of the Lot to the Lessor in good condition

3 POSSESSION The Lessor shall not be liable for failure to deliver possession of the Lot at the time stipulated herein as the date of the commencement of the tenancy nor except as provided herein shall such failure excuse the Lessee s obligation hereunder unless the Lessor's failure to deliver possession is willful in which event Section 55-248 22 of the 1950 *Code of Virginia* as amended shall govern Except in the event of delay by the Lessee the rent herein stipulated to be paid shall be abated for the period from the date of the commencement specified in this lease to the date possession is tendered to the Lessee

4 RULES AND REGULATIONS The Lessee shall comply with the rules and regulations governing the Mobile Home Park a copy of said rules and regulations being attached hereto and made a part hereof and shall comply with such other reasonable rules and regulations and any reasonable alterations or changes which the Lessor shall or may adopt for the Mobile Home Park

5 UNLAWFUL USE DISTURBING NOISES ETC The Lessee shall not engage in any unlawful or criminal activity including but not limited to drug related criminal activity nor permit any member of Lessee s household or any guest or other person under Lessee s control to do so on or near the Lot or in the Mobile Home Park while the Lessee is a resident in the Mobile Home Park Drug related criminal activity" shall mean the illegal manufacture sale distribution or use of or possession with the intent to manufacture sell distribute or use a controlled substance The Lessee shall not make or permit to be made any disturbing noises or do or permit any act which will unreasonably interfere with the rights comforts or conveniences of the other tenants

6 OCCUPANTS Only those tenants registered at the manager's office may live in the Mobile Home Park This Lease Agreement shall not be sublet or assigned The taking in of roomers or tenants by the Lessee is prohibited Prior to selling the mobile home Lessee shall give Lessor written notice of the name of the prospective purchaser (if the prospective purchaser intends to keep the mobile home on the Lot) Lessor shall not unreasonably restrict the sale of the mobile home (see 55-248 47) however any prospective purchaser who intends to keep the mobile home on the Lot must submit an application which application must be approved by Lessor prior to occupancy

7 LIABILITY OF LESSOR All personal property including the mobile home placed on the Lot or on any part of the Mobile Home Park shall be at the sole risk of the Lessee and the Lessor shall in no event be liable for the loss destruction theft or removal of or damage to such property unless caused by Lessor's willful negligence The Lessee agrees to keep the Lot and the mobile home free of any conditions that might represent a hazard to others The Lessee also agrees to obtain an insurance policy including liability and property damage coverage with a combined single occurrence liability limit of not less than $25 000

7/02/07

WAPLES00000920

8  UTILITIES  Except as otherwise directed     e Lessor  the Lessee shall pay to the Lessor wit     (10) days after receipt by the Lessee of the Lessor's bill therefore  all charges for wa___ewer  and other utilities used upon the Lot  Ch___     for these utilities shall be deemed to be additional rent  Bills for utilities shall be submitted by the Lessor to the Lessee on a monthly or other periodic basis as determined by the Lessor  The Lessor's determination of amounts due by the Lessee for utilities shall be based on meter readings or other reasonable methods  and such determination shall be conclusive and binding on the Lessee  The Lessor may by written notice to the Lessee  require the Lessee to pay charges for utilities directly to the supplier thereof

The Lessee acknowledges that utility services are available to the Lot and that they are in good working order  Unless caused by Lessor's willful negligence  the Lessor shall not be liable for any damage  injury or loss whatsoever which might arise  or accrue  from his providing  failure to provide  or the failure of utilities  Further  the Lessee agrees to bear the cost of repairing any damage to the utility lines or connectors resulting from his misuse

9  HOLDING OVER  Either Lessor or Lessee may terminate the Lease Agreement at the end of the Lease Term by giving the other party written notice of intent to terminate/vacate at least sixty (60) days prior to said termination date  Should the Lessee not give said notice and vacate the Leased Premises at the end of the Lease Term  Lessee shall be liable for the payment of rent for two (2) months thereafter  Should the Lessee not give said notice and continue in possession of the Leased Premises after the end of the Lease Term  the Lessee shall be deemed to be a tenant from month to month  In such event  all terms and conditions of this Lease shall continue in full force and effect  except rent  which Lessor may unilaterally adjust to the prevailing monthly fair rental value  It is also agreed that the tenancy can be terminated by either party by giving written notice to the other party at least thirty (30) days prior to the end of the month in which said party desires such termination  This thirty (30) day written notice can be given to the other party at any time without any reason for the notice being required

10  MILITARY TRANSFERS  If Lessee is a member of the Armed Forces of the United States and Lessee receives permanent change of station orders or temporary duty orders (in excess of three [3] months duration) to depart thirty five (35) miles or more (radius) from the location of the Lot or is discharged or relieved from active duty with the Armed Forces of the United States  or is ordered to report to government supplied quarters  Lessee may terminate this Lease upon (a) giving written notice of termination to be effective on a date stated therein  said date to be not less than thirty (30) days after Lessor's receipt of such notice  (b) providing  together with such written notice of termination  a copy of the official orders  (c) paying all rent and miscellaneous charges through the effective date of the termination  and (d) paying Lessor the amount of (i) one (1) month's rent if the effective date of the termination is less than six (6) months after the beginning of the Lease Term or (ii) one-half (1/2) of one month's rent if such effective date is at least six (6) but less than twelve (12) months after the beginning of the Lease Term  This paragraph shall not be construed to relieve Lessee from any liability under this Lease except the liability for rent for the unexpired portion of the Lease Term

11  ACTION BY LESSOR UPON DEFAULT  Should the Lessee at any time during the continuance of his occupancy of the Lot fail to pay the monthly rental or other sums required hereunder  including but not limited to charges for utilities  or should the Lessee violate any one of the agreements  terms  or conditions of this lease  or any of the rules or regulations of the Mobile Home Park two (2) times within a six (6) month period or should Lessee or any other person residing in the Lot be convicted of a drug related crime during the Lease Term  then the Lessor shall have all rights and remedies of a landlord under applicable law  including but not limited to the rights and remedies provided in VA  Code Ann  Section 55-248 31 and  in addition  the Lessor shall have the right to take possession of the Lot pursuant to a court order for possession  and to remove the mobile home from the Lot and relet the Lot  In the event that the Lessor moves the Lessee's mobile home from the Lot pursuant to this paragraph  the Lessee agrees to pay a reasonable removal and storage charge to the Lessor or the party removing and/or storing the mobile home

12  LIEN FOR RENT AND OTHER SUMS  The Lessor shall have a lien upon all of the personal property  including the mobile home of the Lessee moved in and located upon the Lot  as and for security for the rent and other sums  including but not limited to  charges for utilities  herein provided to be paid  and such installments of rent and other sums as shall remain unpaid to the amount and extent thereof shall become and are hereby made a specific lien upon such personal property as shall be upon the Lot  to all intents and purposes as though the Lessee had executed a chattel deed of trust to secure the Lessor for the rent or other sums reserved  and the Lessee shall not remove  or attempt to remove any of the aforesaid personal property while there yet shall remain due and owing any portion of the rent or other sums reserved by this lease  and should the Lessee attempt to remove such property  the Lessor is hereby empowered to distrain said property pursuant to Section 55 230 of the 1950 *Code of Virginia*  as amended  and to employ such other remedies as are authorized by law

13  ATTORNEY S FEE  In the event that Lessor engages counsel as a result of Lessee s breach of this Lease  Lessee agrees to pay Lessor's attorney's fees in the amount of $100 00 or 25% of all rent due and owing at the time judgment is obtained  whichever is greater

14  WAIVING OF ONE BREACH NOT A GENERAL WAIVER  No waiver of any breach of any covenant  provision  or condition contained in this lease shall be construed as a waiver of the covenant itself or of any subsequent breach thereof

15  SECURITY INTERESTS IN MOBILE HOME  The name(s) and address(es) of any person or entity having a security interest in the mobile home is as follows

    Name and address of dealer from whom mobile home purchased (if applicable)

    Lessee shall notify Lessor within ten (10) days of any new security interest  change of existing security interest  or settlement of security interest

16  MANUFACTURED HOME LOT RENTAL ACT  The terms of the Manufactured Home Lot Rental Act (Title 55  Chapter 13 3  1950 *Code of Virginia*  as amended) attached hereto  are incorporated by reference into this Lease Agreement  Any provision in the Lease Agreement which conflicts with said Act shall be superseded by the applicable provision of the Act

A. J DWOSKIN & ASSOCIATES  INC
9302 Lee Highway  Suite 300
Fairfax  Virginia  22031 1214

WITNESS _____  DATE 01/18/11  BY _____ DATE 2-(-11
                                                     PROPERTY MANAGER  Sabiha Noorzai

WITNESS _____  DATE 01/18/11  BY _____ DATE 01-18-11
                                                     LESSEE (Tenant) Esteban R  Moya

WITNESS _____  DATE _____  BY _____ DATE _____
                                                     LESSEE (Tenant)

WITNESS _____  DATE _____  BY _____ DATE _____
                                                     LESSEE (Tenant)

7/02/07

WAPLES00000921

# EXHIBIT 23(B)

# MOBILE HOME LEASE AGREEMENT

Project Waples Mobile Home Park

**LESSOR AND LESSEE**
This Agreement made this 1st day of February 2012 by and between A J DWOSKIN & ASSOCIATES INC AGENT for **Waples Mobile Home Park** (Owner) hereinafter called Lessor and **Esteban R Moya** jointly and severally (if applicable) hereinafter called Lessee

**WITNESSETH**
That in consideration of the representation made in the application filed by the Lessee with the Lessor the rent herein reserved and the covenants herein contained and by the said Lessee to be performed the Lessor hereby leases to the Lessee premises in the State of Virginia known as **11259 Mobile Drive Lot        Waples Mobile Home Park Fairfax Virginia ( Lot )**

**TERM AND RENT**
The term of this lease shall be for the period of 12 months commencing on the 1st day of February 2012 fully ending at midnight on the 31st day of January 2013 (hereinafter called the Lease Term ) for the total rent of **Eigth thousand and forty Dollars ($8040 00)** payable in equal monthly installments of six hundred seventy Dollars (**$670 00**) at the manager's office located in the Mobile Home Park or such other place as the Lessor may designate in writing each such monthly installment payable without demand or notice in advance on the first day of each month during the Lease Term

It is further covenanted and agreed between the Lessor and Lessee as follows

**1  LATE CHARGE**  If any installment of rent required by this Lease is not received by the Lessor by close of business on the 5th day of the month in which the rent payment is due a late charge of **$50 00** shall be paid to Lessor to compensate Lessor for the administrative expenses and other expenses associated with Lessee s failure to timely pay rent  Lessee agrees that this late charge shall be deemed to be additional rent and failure to pay the late charge may result in the issuance of a five (5) day notice for such nonpayment  In the event Lessee tenders to Lessor a check which is dishonored by the Lessee s bank for any reason Lessee agrees to pay Lessor  In addition to the amount of the check  due a service charge of $50 00 representing Lessor's administrative expenses and service charges incurred as a result of Lessee s insufficient check  In addition Lessor may thereafter require Lessee to make all future payments of rent and other charges due under the Lease by means of certified check  cashier's check or money order

**2  SECURITY DEPOSIT**  The Lessee agrees to deposit with Lessor upon delivery of this lease the sum of **$645 00** security for the full and faithful performance by the Lessee of each and every term provision covenant and condition of this lease  In the event that the Lessee defaults in respect to any of the terms provisions covenants and conditions of this lease including but not limited to payment of rent additional rent or other sums required hereunder (including but not limited to charges for utilities) the Lessor may use apply or retain the whole or any part of the security so deposited for the payment thereof  The Lessee acknowledges that the security deposit is to be retained by the Lessor and may be commingled with other funds of the Lessor with interest being paid to the Lessee  The Lessor shall accrue interest on said security deposit in six (6) month increments at a per annum rate equal to the Federal Reserve Board discount rate as of January 1 of each year during the term of this Lease  or such other rate required by law provided  however that no interest shall be due and payable unless said security deposit has been held by the Lessor for a period exceeding thirteen (13) months after the date hereof

In the event that the Lessee shall fully and faithfully comply with all of the terms provisions covenants and conditions of this lease the security deposit  or any balance thereof plus accrued interest if any shall be returned to the Lessee within thirty (30) days after the expiration of this lease and after the removal of the Lessee s mobile home and surrender of the Lot to the Lessor in good condition

**3  POSSESSION**  The Lessor shall not be liable for failure to deliver possession of the Lot at the time stipulated herein as the date of the commencement of the tenancy  nor  except as provided herein  shall such failure excuse the Lessee s obligation hereunder  unless the Lessor's failure to deliver possession is willful  In which event Secton 55-248 22 of the 1950 *Code of Virginia*  as amended shall govern  Except in the event of delay by the Lessee  the rent herein stipulated to be paid shall be abated for the period from the date of the commencement specified in this lease to the date possession is tendered to the Lessee

**4  RULES AND REGULATIONS**  The Lessee shall comply with the rules and regulations governing the Mobile Home Park  a copy of said rules and regulations being attached  hereto and made a part hereof  and shall comply with such other reasonable rules and regulations and any reasonable alterations or changes which the Lessor shall or may adopt for the Mobile Home Park

**5  UNLAWFUL USE  DISTURBING NOISES  ETC**  The Lessee shall not engage in any unlawful or criminal activity  including but not limited to drug related criminal activity  nor permit any member of Lessee s household or any guest or other person under Lessee s control to do so  on or near the Lot or in the Mobile Home Park while the Lessee is a resident in the Mobile Home Park  Drug related criminal activity  shall mean the illegal manufacture sale distribution  or use of or possession with the intent to manufacture sell distribute or use a controlled substance  The Lessee shall not make or permit to be made any disturbing noises or do or permit any act which will unreasonably interfere with the rights comforts or conveniences of the other tenants

**6  OCCUPANTS**  Only those tenants registered at the manager's office may live in the Mobile Home Park  This Lease Agreement shall not be sublet or assigned  The taking in of roomers or tenants by the Lessee is prohibited     Prior to selling the mobile home  Lessee shall give Lessor written notice of the name of the prospective purchaser (if the prospective purchaser intends to keep the mobile home on the Lot)  Lessor shall not unreasonably restrict the sale of the mobile home (see 55 248 47) however any prospective purchaser who intends to keep the mobile home on the Lot must submit an application  which application must be approved by Lessor prior to occupancy

**7  LIABILITY OF LESSOR**  All personal property including the mobile home  placed on the Lot or on any part of the Mobile Home Park shall be at the sole risk of the Lessee  and the Lessor shall in no event be liable for the loss  destruction  theft or removal of or damage to such property unless caused by Lessor's willful negligence  The Lessee agrees to keep the Lot and the mobile home free of any conditions that might represent a hazard to others  The Lessee also agrees to obtain an insurance policy including liability and property damage coverage with a combined single occurrence liability limit of not less than $25 000

7/02/07

WAPLES00000918

**8  UTILITIES**  Except as otherwise directed by the Lessor the Lessee shall pay to the Lessor within ten (10) days after receipt by the Lessee of the Lessor's bill therefore all charges for ~~ ~~ or sewer and other utilities used upon the Lot ~~ ~~ les for these utilities shall be deemed to be additional rent  Bills for utilities shall be s ~~ ~~ tted by the Lessor to the Lessee on a monthly or ~~ ~~ periodic basis as determined by the Lessor  The Lessor's determination of amounts due by the Lessee for utilities shall be based on meter readings or other reasonable methods and such determination shall be conclusive and binding on the Lessee  The Lessor may  by written notice to the Lessee  require the Lessee to pay charges for utilities directly to the supplier thereof

The Lessee acknowledges that utility services are available to the Lot and that they are in good working order  Unless caused by Lessor's willful negligence  the Lessor shall not be liable for any damage  injury or loss whatsoever which might arise or accrue  from his providing failure to provide  or the failure of utilities  Further  the Lessee agrees to bear the cost of repairing any damage to the utility lines or connectors resulting from his misuse

**9  HOLDING OVER**  Either Lessor or Lessee may terminate the Lease Agreement at the end of the Lease Term by giving the other party written notice of intent to terminate/vacate at least sixty (60) days prior to said termination date  Should the Lessee not give said notice and vacate the Leased Premises at the end of the Lease Term  Lessee shall be liable for the payment of rent for two (2) months thereafter  Should the Lessee not give said notice and continue in possession of the Leased Premises after the end of the Lease Term  the Lessee shall be deemed to be a tenant from month to month  In such event  all terms and conditions of this Lease shall continue in full force and effect  except rent  which Lessor may unilaterally adjust to the prevailing monthly fair rental value  It is also agreed that the tenancy can be terminated by either party by giving written notice to the other party at least thirty (30) days prior to the end of the month in which said party desires such termination  This thirty (30) day written notice can be given to the other party at any time without any reason for the notice being required

**10  MILITARY TRANSFERS**  If Lessee is a member of the Armed Forces of the United States and Lessee receives permanent change of station orders or temporary duty orders (in excess of three [3] months duration) to depart thirty five (35) miles or more (radius) from the location of the Lot or is discharged or relieved from active duty with the Armed Forces of the United States  or is ordered to report to government supplied quarters  Lessee may terminate this Lease upon (a) giving written notice of termination to be effective on a date stated therein  said date to be not less than thirty (30) days after Lessor's receipt of such notice  (b) providing  together with such written notice of termination  a copy of the official orders  (c) paying all rent and miscellaneous charges through the effective date of the termination  and (d) paying Lessor the amount of (i) one (1) month's rent if the effective date of the termination is less than six (6) months after the beginning of the Lease Term  or (ii) one-half (1/2) of one month's rent if such effective date is at least six (6) but less than twelve (12) months after the beginning of the Lease Term  This paragraph shall not be construed to relieve Lessee from any liability under this Lease except the liability for rent for the unexpired portion of the Lease Term

**11  ACTION BY LESSOR UPON DEFAULT**  Should the Lessee at any time during the continuance of his occupancy of the Lot fail to pay the monthly rental or other sums required hereunder  including but not limited to charges for utilities  or should the Lessee violate any one of the agreements  terms  or conditions of this lease  or any of the rules or regulations of the Mobile Home Park two (2) times within a six (6) month period or should Lessee or any other person residing in the Lot be convicted of a drug related crime during the Lease Term  then the Lessor shall have all rights and remedies of a landlord under applicable law  including but not limited to the rights and remedies provided in VA  Code Ann  Section 55 248 31 and  In addition  the Lessor shall have the right to take possession of the Lot pursuant to a court order for possession  and to remove the mobile home from the Lot and relet the Lot  In the event that the Lessor moves the Lessee's mobile home from the Lot pursuant to this paragraph  the Lessee agrees to pay a reasonable removal and storage charge to the Lessor or the party removing and/or storing the mobile home

**12  LIEN FOR RENT AND OTHER SUMS**  The Lessor shall have a lien upon all of the personal property  including the mobile home of the Lessee moved in and located upon the Lot  as and for security for the rent and other sums  including but not limited to  charges for utilities  herein provided to be paid  and such installments of rent and other sums as shall remain unpaid to the amount and extent thereof shall become and are hereby made a specific lien upon such personal property as shall be upon the Lot  to all intents and purposes as though the Lessee had executed a chattel deed of trust to secure the Lessor for the rent or other sums reserved  and the Lessee shall not remove  or attempt to remove any of the aforesaid personal property while there yet shall remain due and owing any portion of the rent or other sums reserved by this lease  and should the Lessee attempt to remove such property  the Lessor is hereby empowered to distrain said property pursuant to Section 55-230 of the 1950 *Code of Virginia*  as amended  and to employ such other remedies as are authorized by law

**13  ATTORNEY'S FEE**  In the event that Lessor engages counsel as a result of Lessee's breach of this Lease  Lessee agrees to pay Lessor's attorney's fees in the amount of $100 00 or 25% of all rent due and owing at the time judgment is obtained  whichever is greater

**14  WAIVING OF ONE BREACH NOT A GENERAL WAIVER**  No waiver of any breach of any covenant  provision  or condition contained in this lease shall be construed as a waiver of the covenant itself or of any subsequent breach thereof

**15  SECURITY INTERESTS IN MOBILE HOME**  The name(s) and address(es) of any person or entity having a security interest in the mobile home is as follows

Name and address of dealer from whom mobile home purchased (if applicable)

Lessee shall notify Lessor within ten (10) days of any new security interest  change of existing security interest  or settlement of security interest

**16  MANUFACTURED HOME LOT RENTAL ACT**  The terms of the Manufactured Home Lot Rental Act (Title 55  Chapter 13 3  1950 *Code of Virginia* as amended) attached hereto  are incorporated by reference into this Lease Agreement  Any provision in the Lease Agreement which conflicts with said Act shall be superseded by the applicable provision of the Act

A J DWOSKIN & ASSOCIATES INC
9302 Lee Highway  Suite 300
Fairfax  Virginia  22031 1214

WITNESS _Vauma Olguera_  DATE _2/1/12_  BY _Sabiha Noerzal_  DATE _2-1-12_
PROPERTY MANAGER Sabiha Noerzal

WITNESS _____  DATE _2-1-12_  BY _____  DATE _2-1-9019_
LESSEE (Tenant) Esteban R Moya

WITNESS _____  DATE _____  BY _____  DATE _____
LESSEE (Tenant)

WITNESS _____  DATE _____  BY _____  DATE _____
LESSEE (Tenant)

7/02/07

# EXHIBIT 23(C)

## MOBILE HOME LEASE AGREEM        Project Waples Mobile Ho    ark

**LESSOR AND LESSEE**

This Agreement made this 1st day of February 2013 by and between A J DWOSKIN & ASSOCIATES INC AGENT for Waples Mobile Home Park (Owner) hereinafter called Lessor and Esteban R Moya jointly and severally (if applicable) hereinafter called Lessee

**WITNESSETH**

That in consideration of the representation made in the application filed by the Lessee with the Lessor the rent herein reserved and the covenants herein contained and the said Lessee to be performed the Lessor hereby leases to the Lessee premises in the State of Virginia known as **11259 Mobile Drive    Lot        Waples Mobile Home Park  Fairfax  Virginia ( Lot')**

**TERM AND RENT**

The term of this lease shall be for the period of 12 months commencing on the 1st day of February 2013 fully ending at midnight on the 31st day of January 2014 (hereinafter called the Lease Term ) for the total rent of eight thousand three hundred fourty dollars Dollars ($8340 00) payable in equal monthly installments of six hundred ninety five dollars Dollars ($695 00) at the manager s office located in the Mobile Home Park or such other place as the Lessor may designate in writing each such monthly installment payable without demand or notice in advance on the first day of each month during the Lease Term

It is further covenanted and agreed between the Lessor and Lessee as follows

1  **LATE CHARGE**  If any installment of rent required by this Lease is not received by the Lessor by close of business on the 5th day of the month in which the rent payment is due a late charge of $50 00 shall be paid to Lessor to compensate Lessor for the administrative expenses and other expenses associated with Lessee s failure to timely pay rent  Lessee agrees that this late charge shall be deemed to be additional rent and failure to pay the late charge may result in the issuance of a five (5) day notice for such nonpayment  In the event Lessee tenders to Lessor a check which is dishonored by the Lessee s bank for any reason Lessee agrees to pay Lessor in addition to the amount of the check due a service charge of $50 00 representing Lessor's administrative expenses and service charges incurred as a result of Lessee s insufficient check  In addition Lessor may thereafter require Lessee to make all future payments of rent and other charges due under the Lease by means of certified check cashier's check or money order

2  **SECURITY DEPOSIT**  The Lessee agrees to deposit with Lessor upon delivery of this lease the sum of $645 00 security for the full and faithful performance by the Lessee of each and every term provision covenant and condition of this lease  In the event that the Lessee defaults in respect to any of the terms provisions covenants and conditions of this lease including but not limited to payment of rent additional rent or other sums required hereunder (including but not limited to charges for utilities) the Lessor may use apply or retain the whole or any part of the security so deposited for the payment thereof  The Lessee acknowledges that the security deposit is to be retained by the Lessor and may be commingled with other funds of the Lessor with interest being paid to the Lessee  The Lessor shall accrue interest on said security deposit in six (6) month increments at a per annum rate equal to the Federal Reserve Board discount rate as of January 1 of each year during the term of this Lease or such other rate required by law provided however that no interest shall be due and payable unless said security deposit has been held by the Lessor for a period exceeding thirteen (13) months after the date hereof

In the event that the Lessee shall fully and faithfully comply with all of the terms provisions covenants and conditions of this lease the security deposit or any balance thereof plus accrued interest if any shall be returned to the Lessee within thirty (30) days after the expiration of this lease and after the removal of the Lessee s mobile home and surrender of the Lot to the Lessor in good condition

3  **POSSESSION**  The Lessor shall not be liable for failure to deliver possession of the Lot at the time stipulated herein as the date of the commencement of the tenancy nor except as provided herein shall such failure excuse the Lessee s obligation hereunder unless the Lessor s failure to deliver possession is willful in which event Section 55 248 22 of the 1950 Code of Virginia as amended shall govern  Except in the event of delay by the Lessee the rent herein stipulated to be paid shall be abated for the period from the date of the commencement specified in this lease to the date possession is tendered to the Lessee

4  **RULES AND REGULATIONS**  The Lessee shall comply with the rules and regulations governing the Mobile Home Park a copy of said rules and regulations being attached hereto and made a part hereof and shall comply with such other reasonable rules and regulations and any reasonable alterations or changes which the Lessor shall or may adopt for the Mobile Home Park

5  **UNLAWFUL USE  DISTURBING NOISES  ETC**  The Lessee shall not engage in any unlawful or criminal activity including but not limited to drug related criminal activity nor permit any member of Lessee s household or any guest or other person under Lessee s control to do so on or near the Lot or in the Mobile Home Park while the Lessee is a resident in the Mobile Home Park  Drug related criminal activity shall mean the illegal manufacture sale distribution or use of or possession with the intent to manufacture sell distribute or use a controlled substance  The Lessee shall not make or permit to be made any disturbing noises or do or permit any act which will unreasonably interfere with the rights comforts or conveniences of the other tenants

6  **OCCUPANTS**  Only those tenants registered at the manager's office may live in the Mobile Home Park  This Lease Agreement shall not be sublet or assigned  The taking in of roomers or tenants by the Lessee is prohibited  Prior to selling the mobile home Lessee shall give Lessor written notice of the name of the prospective purchaser (if the prospective purchaser intends to keep the mobile home on the Lot)  Lessor shall not unreasonably restrict the sale of the mobile home (see 55 248 47) however any prospective purchaser who intends to keep the mobile home on the Lot must submit an application which application must be approved by Lessor prior to occupancy

7  **LIABILITY OF LESSOR**  All personal property including the mobile home placed on the Lot or on any part of the Mobile Home Park shall be at the sole risk of the Lessee and the Lessor shall in no event be liable for the loss destruction theft or removal of or damage to such property unless caused by Lessor's willful negligence  The Lessee agrees to keep the Lot and the mobile home free of any conditions that might represent a hazard to others  The Lessee also agrees to obtain an insurance policy including liability and property damage coverage with a combined single occurrence liability limit of not less than $25 000

7/02/07

WAPLES00000916

**8  UTILITIES**  Except as otherwise directed  the Lessor  the Lessee shall pay to the Lessor within  ten (10) days after receipt by the Lessee of the Lessor's bill therefore  all charges for                      sewer  and other utilities on the Lot  Ch        for these utilities shall be deemed to be additional rent  Bills for utilities shall be su        ed by the Lessor to the Lessee on a monthly or othe  periodic basis as determined by the Lessor  The Lessor's determination of amounts due by the Lessee for utilities shall be based on meter readings or other reasonable methods  and such determination shall be conclusive and binding on the Lessee  The Lessor may  by written notice to the Lessee  require the Lessee to pay charges for utilities directly to the supplier thereof

The Lessee acknowledges that utility services are available to the Lot and that they are in good working order  Unless caused by Lessor's willful negligence  the Lessor shall not be liable for any damage  injury or loss whatsoever which might arise  or accrue  from his providing  failure to provide  or the failure of utilities  Further  the Lessee agrees to bear the cost of repairing any damage to the utility lines or connectors resulting from his misuse

**9  HOLDING OVER**  Either Lessor or Lessee may terminate the Lease Agreement at the end of the Lease Term by giving the other party written notice of intent to terminate/vacate at least sixty (60) days prior to said termination date  Should the Lessee not give said notice and vacate the Leased Premises at the end of the Lease Term  Lessee shall be liable for the payment of rent for two (2) months thereafter  Should the Lessee not give said notice and continue in possession of the Leased Premises after the end of the Lease Term  The Lessee shall be deemed to be a tenant from month to month  In such event  all terms and conditions of this Lease shall continue in full force and effect  except rent  which Lessor may unilaterally adjust to the prevailing monthly fair rental value  It is also agreed that the tenancy can be terminated by either party by giving written notice to the other party at least thirty (30) days prior to the end of the month in which said party desires such termination  This thirty (30) day written notice can be given to the other party at any time without any reason for the notice being required

**10  MILITARY TRANSFERS**  If Lessee is a member of the Armed Forces of the United States and Lessee receives permanent change of station orders or temporary duty orders (in excess of three [3] months duration) to depart thirty five (35) miles or more (radius) from the location of the Lot or is discharged or relieved from active duty with the Armed Forces of the United States  or is ordered to report to government supplied quarters  Lessee may terminate this Lease upon (a) giving written notice of termination to be effective on a date stated therein  said date to be not less than thirty (30) days after Lessor's receipt of such notice  (b) providing  together with such written notice of termination  a copy of the official orders  (c) paying all rent and miscellaneous charges through the effective date of the termination  and (d) paying Lessor the amount of (i) one (1) month s rent if the effective date of the termination is less than six (6) months after the beginning of the Lease Term or (ii) one half (1/2) of one month s rent if such effective date is at least six (6) but less than twelve (12) months after the beginning of the Lease Term  This paragraph shall not be construed to relieve Lessee from any liability under this Lease except the liability for rent for the unexpired portion of the Lease Term

**11  ACTION BY LESSOR UPON DEFAULT**  Should the Lessee at any time during the continuance of his occupancy of the Lot fail to pay the monthly rental or other sums required hereunder  including but not limited to charges for utilities  or should the Lessee violate any one of the agreements  terms  or conditions of this lease  or any of the rules or regulations of the Mobile Home Park two (2) times within a six (6) month period or should Lessee or any other person residing in the Lot be convicted of a drug related crime during the Lease Term  then the Lessor shall have all rights and remedies of a landlord under applicable law  Including but not limited to the rights and remedies provided in VA  Code Ann  Section 55 248 31 and  in addition  the Lessor shall have the right to take possession of the Lot pursuant to a court order for possession  and to remove the mobile home from the Lot and relet the Lot  In the event that the Lessor moves the Lessee s mobile home from the Lot pursuant to this paragraph  the Lessee agrees to pay a reasonable removal and storage charge to the Lessor or the party removing and/or storing the mobile home

**12  LIEN FOR RENT AND OTHER SUMS**  The Lessor shall have a lien upon all of the personal property  including the mobile home of the Lessee moved in and located upon the Lot  as and for security for the rent and other sums  including but not limited to  charges for utilities  herein provided to be paid  and such installments of rent and other sums as shall remain unpaid to the amount and extent thereof shall become and are hereby made a specific lien upon such personal property as shall be upon the Lot  to all intents and purposes as though the Lessee had executed a chattel deed of trust to secure the Lessor for the rent or other sums reserved  and the Lessee shall not remove  or attempt to remove  any of the aforesaid personal property while there yet shall remain due and owing any portion of the rent or other sums reserved by this lease  and should the Lessee attempt to remove such property  the Lessor is hereby empowered to distrain said property pursuant to Section 55 230 of the 1950 *Code of Virginia*  as amended  and to employ such other remedies as are authorized by law

**13  ATTORNEY S FEE**  In the event that Lessor engages counsel as a result of Lessee s breach of this Lease  Lessee agrees to pay Lessor's attorney s fees in the amount of $100 00 or 25% of all rent due and owing at the time judgment is obtained  whichever is greater

**14  WAIVING OF ONE BREACH NOT A GENERAL WAIVER**  No waiver of any breach of any covenant  provision  or condition contained in this lease shall be construed as a waiver of the covenant itself or of any subsequent breach thereof

**15  SECURITY INTERESTS IN MOBILE HOME**  The name(s) and address(es) of any person or entity having a security interest in the mobile home is as follows

          Name and address of dealer from whom mobile home purchased (if applicable)

          Lessee shall notify Lessor within ten (10) days of any new security interest  change of existing security interest  or settlement of security interest

**16  MANUFACTURED HOME LOT RENTAL ACT**  The terms of the Manufactured Home Lot Rental Act (Title 55  Chapter 13 3  1950 *Code of Virginia*  as amended) attached hereto  are incorporated by reference into this Lease Agreement  Any provision in the Lease Agreement which conflicts with said Act shall be superseded by the applicable provision of the Act

A  J DWOSKIN & ASSOCIATES  INC
9302 Lee Highway  Suite 300
Fairfax  Virginia  22031 1214

WITNESS _____ DATE _____ BY _____ DATE 2/1/13

PROPERTY MANAGER  Sindy Obando

WITNESS _____ DATE 2/1/13 BY _____ DATE 2/1/13

LESSEE (Tenant)  Esteban R  Moya

WITNESS _____ DATE _____ BY _____ DATE _____

LESSEE (Tenant)

WITNESS _____ DATE _____ BY _____ DATE _____

LESSEE (Tenant)

7/02/07

WAPLES00000917

# EXHIBIT 23(D)

## MOBILE HOME LEASE AGREEMENT          Project Waples Mobile Home Park

**LESSOR AND LESSEE**

This Agreement made this 16th day of January 2013 by and between A J DWOSKIN & ASSOCIATES INC AGENT for **Waples Mobile Home Park** (Owner) hereinafter called Lessor and **Esteban Moya** jointly and severally (if applicable) hereinafter called Lessee
WITNESSETH

That in consideration of the representation made in the application filed by the Lessee with the Lessor the rent herein reserved and the covenants herein contained and by the said Lessee to be performed the Lessor hereby leases to the Lessee premises in the State of Virginia known as Lot 02 11159 Mobile Dr   Waples Mobile Home Park Manassas  Virginia ( Lot )

**TERM AND RENT**

The term of this lease shall be for the period of 12 months commencing on the 1st day of February 2014 fully ending at midnight on the 31st day of January 2015hereinafter called the Lease Term ) for the total rent of Eight Thousand Six Hundred and Forty Dollars ($8640 00) payable in equal monthly installments of Seven Hundred and Twenty Dollars ($720 00) at the manager's office located in the Mobile Home Park or such other place as the Lessor may designate in writing each such monthly installment payable without demand or notice in advance on the first day of each month during the Lease Term

It is further covenanted and agreed between the Lessor and Lessee as follows

1   LATE CHARGE  If any installment of rent required by this Lease is not received by the Lessor by close of business on the 5th day of the month in which the rent payment is due a late charge of $50 00 shall be paid to Lessor to compensate Lessor for the administrative expenses and other expenses associated with Lessee s failure to timely pay rent  Lessee agrees that this late charge shall be deemed to be additional rent and failure to pay the late charge may result in the issuance of a five (5) day notice for such nonpayment  In the event Lessee tenders to Lessor a check which is dishonored by the Lessee s bank for any reason  Lessee agrees to pay Lessor in addition to the amount of the check due a service charge of $50 00 representing Lessor s administrative expenses and service charges incurred as a result of Lessee s insufficient check  In addition Lessor may thereafter require Lessee to make all future payments of rent and other charges due under the Lease by means of certified check cashier's check or money order

2   SECURITY DEPOSIT  The Lessee agrees to deposit with Lessor upon delivery of this lease the sum of $645 00 security for the full and faithful performance by the Lessee of each and every term provision covenant and condition of this lease  In the event that the Lessee defaults in respect to any of the terms provisions covenants and conditions of this lease including but not limited to payment of rent additional rent or other sums required hereunder (including but not limited to charges for utilities) the Lessor may use apply or retain the whole or any part of the security so deposited for the payment thereof  The Lessee acknowledges that the security deposit is to be retained by the Lessor and may be commingled with other funds of the Lessor with interest being paid to the Lessee  The Lessor shall accrue interest on said security deposit in six (6) month increments at a per annum rate equal to the Federal Reserve Board discount rate as of January 1 of each year during the term of this Lease or such other rate required by law provided however that no interest shall be due and payable unless said security deposit has been held by the Lessor for a period exceeding thirteen (13) months after the date hereof
In the event that the Lessee shall fully and faithfully comply with all of the terms provisions covenants and conditions of this lease the security deposit or any balance thereof plus accrued interest if any shall be returned to the Lessee within thirty (30) days after the expiration of this lease and after the removal of the Lessee s mobile home and surrender of the Lot to the Lessor in good condition

3   POSSESSION  The Lessor shall not be liable for failure to deliver possession of the Lot at the time stipulated herein as the date of the commencement of the tenancy nor except as provided herein shall such failure excuse the Lessee s obligation hereunder unless the Lessor s failure to deliver possession is willful in which event Section 55-248 22 of the 1950 Code of Virginia as amended shall govern  Except in the event of delay by the Lessee the rent herein stipulated to be paid shall be abated for the period from the date of the commencement specified in this lease to the date possession is tendered to the Lessee

4   RULES AND REGULATIONS  The Lessee shall comply with the rules and regulations governing the Mobile Home Park a copy of said rules and regulations being attached hereto and made a part hereof and shall comply with such other reasonable rules and regulations and any reasonable alterations or changes which the Lessor shall or may adopt for the Mobile Home Park

5   UNLAWFUL USE DISTURBING NOISES ETC  The Lessee shall not engage in any unlawful or criminal activity including but not limited to drug related criminal activity nor permit any member of Lessee s household or any guest or other person under Lessee s control to do so on or near the Lot or in the Mobile Home Park while the Lessee is a resident in the Mobile Home Park  Drug related criminal activity shall mean the illegal manufacture sale distribution or use of or possession with the intent to manufacture sell distribute or use a controlled substance
The Lessee shall not make or permit to be made any disturbing noises or do or permit any act which will unreasonably interfere with the rights comforts or conveniences of the other tenants

6   OCCUPANTS  Only those tenants registered at the manager's office may live in the Mobile Home Park  This Lease Agreement shall not be sublet or assigned  The taking in of roomers or tenants by the Lessee is prohibited  Prior to selling the mobile home Lessee shall give Lessor written notice of the name of the prospective purchaser (if the prospective purchaser intends to keep the mobile home on the Lot)  Lessor shall not unreasonably restrict the sale of the mobile home (see 55 248 47) however any prospective purchaser who intends to keep the mobile home on the Lot must submit an application which application must be approved by Lessor prior to occupancy

WAPLES00000897

Upon twenty four (24) hours wr        notice which may be delivered to the mobile ho      enant will permit Landlord to inspect the Premises (including all spaces inside the mobile home) for the purpose of determining the number of residents in the mobile home and otherwise evaluating compliance with the terms of this Lease Agreement   Any failure by Tenant to provide access to the mobile home for this purpose when requested by Landlord shall constitute an immediate default under this Lease Agreement granting Landlord to all remedies set forth in paragraph 11 of this Lease Agreement

**7   LIABILITY OF LESSOR**   All personal property  including the mobile home  placed on the Lot or on any part of the Mobile Home Park shall be at the sole risk of the Lessee  and the Lessor shall in no event be liable for the loss  destruction  theft or removal of or damage to such property unless caused by Lessor s willful negligence

The Lessee agrees to keep the Lot and the mobile home free of any conditions that might represent a hazard to others
The Lessee also agrees to obtain an insurance policy including liability and property damage coverage with a combined single occurrence liability limit of not less than $25 000

**8   UTILITIES**   Lessee will be responsible for payment for all utilities including those set forth in the Utility Addendum  for each utility for which Lessee is responsible for payment  Lessee will pay related deposits and any charges  fees  or services on such utilities  Lessee must not allow utilities to be disconnected – including disconnection for not paying your bills – until the lease term or renewal period ends  Utilities may be used only for normal household purposes  and must not be wasted   If Lessee s electricity is ever interrupted  Lessee must use only battery operated lighting   If any utilities are sub metered for the Premises  Lessee must pay such billings promptly   If the billing company requests Lessor pay Lessee s bills and Lessor  in its sole and absolute discretion  pays such bills  the amount of such bills will be added to Lessee s rent and such amounts will be treated as additional rent for all purposes including seeking possession of the Lot for nonpayment

The Lessee acknowledges that utility services are available to the Lot and that they are in good working order   Unless caused by Lessor s willful negligence  the Lessor shall not be liable for any damage  injury or loss whatsoever which might arise  or accrue  from his providing  failure to provide  or the failure of utilities   Further  the Lessee agrees to bear the cost of repairing any damage to the utility lines or connectors resulting from his misuse

**9   HOLDING OVER**   Either Lessor or Lessee may terminate the Lease Agreement at the end of the Lease Term by giving the other party written notice of intent to terminate/vacate at least sixty (60) days prior to said termination date   Should the Lessee not give said notice and vacate the Leased Premises at the end of the Lease Term  Lessee shall be liable for the payment of rent for two (2) months thereafter   Should the Lessee not give said notice and continue in possession of the Leased Premises after the end of the Lease Term  the Lessee shall be deemed to be a tenant from month to month   In such event  all terms and conditions of this Lease shall continue in full force and effect  except rent  which Lessor may unilaterally adjust to the prevailing monthly fair rental value   It is also agreed that the tenancy can be terminated by either party by giving written notice to the other party at least thirty (30) days prior to the end of the month in which said party desires such termination   This thirty (30) day written notice can be given to the other party at any time without any reason for the notice being required

**10   MILITARY TRANSFERS**   If Lessee is a member of the Armed Forces of the United States and Lessee receives permanent change of station orders or temporary duty orders (in excess of three [3] months duration) to depart thirty five (35) miles or more (radius) from the location of the Lot or is discharged or relieved from active duty with the Armed Forces of the United States  or is ordered to report to government supplied quarters  Lessee may terminate this Lease upon (a) giving written notice of termination to be effective on a date stated therein  said date to be not less than thirty (30) days after Lessor s receipt of such notice  (b) providing together with such written notice of termination  a copy of the official orders  (c) paying all rent and miscellaneous charges through the effective date of the termination  and (d) paying Lessor the amount of (i) one (1) month s rent if the effective date of the termination is less than six (6) months after the beginning of the Lease Term or (ii) one half (1/2) of one month s rent if such effective date is at least six (6) but less than twelve (12) months after the beginning of the Lease Term   This paragraph shall not be construed to relieve Lessee from any liability under this Lease except the liability for rent for the unexpired portion of the Lease Term

**11   ACTION BY LESSOR UPON DEFAULT**   Should the Lessee at any time during the continuance of his occupancy of the Lot fail to pay the monthly rental or other sums required hereunder  including but not limited to charges for utilities  or should the Lessee violate any one of the agreements  terms  or conditions of this lease  or any of the rules or regulations of the Mobile Home Park two (2) times within a six (6) month period or should Lessee or any other person residing in the Lot be convicted of a drug related crime during the Lease Term  then the Lessor shall have all rights and remedies of a landlord under applicable law  including but not limited

to the rights and remedies provided in VA  Code Ann  Section 55 248 31 and  in addition  the Lessor shall have the right to take possession of the Lot pursuant to a court order for possession  and to remove the mobile home from the Lot and relet the Lot   In the event that the Lessor moves the Lessee s mobile home from the Lot pursuant to this paragraph  the Lessee agrees to pay a reasonable removal and storage charge to the Lessor or the party removing and/or storing the mobile home

**12   LIEN FOR RENT AND OTHER SUMS**   The Lessor shall have a lien upon all of the personal property  including the mobile home of the Lessee moved in and located upon the Lot  as and for security for the rent and other sums  including but not limited to  charges for utilities  herein provided to be paid  and such installments of rent and other sums as shall remain unpaid to the amount and extent thereof shall become and are hereby made a specific lien upon such personal property as shall be upon the Lot  to all intents and purposes as though the Lessee had executed a chattel deed of trust to secure the Lessor for the rent or other sums reserved  and the Lessee shall not remove  or attempt to remove any of the aforesaid personal property while there yet shall remain due and owing any portion of the rent or other sums reserved by this lease  and should the Lessee attempt to remove such property  the Lessor is hereby empowered to distrain said property pursuant to Section 55 230 of the 1950 *Code of Virginia*  as amended  and to employ such other remedies as are authorized by law

**13   ATTORNEY S FEE**   In the event that Lessor engages counsel as a result of Lessee s breach of this Lease  Lessee agrees to pay Lessor's attorney s fees in the amount of $100 00 or 25% of all rent due and owing at the time judgment is obtained  whichever is greater

08/17/99

**14   WAIVING OF ONE BREACH NOT A GENERAL WAIVER**   No waiver of any breach of any covenant provision or condition contained in this lease shall be construed as a waiver of the covenant itself or of any subsequent breach thereof

**15   SECURITY INTERESTS IN MOBILE HOME**   The name(s) and address(es) of any person or entity having a security interest in the mobile home is as follows
Name and address of dealer from whom mobile home purchased (if applicable)
Lessee shall notify Lessor within ten (10) days of any new security interest  change of existing security interest  or settlement of security interest

**16   MANUFACTURED HOME LOT RENTAL ACT**   The terms of the Manufactured Home Lot Rental Act (Title 55  Chapter 13 3  1950 *Code of Virginia*  as amended) attached hereto  are incorporated by reference into this Lease Agreement  Any provision in the Lease Agreement which conflicts with said Act shall be superseded by the applicable provision of the Act

A  J  DWOSKIN & ASSOCIATES  INC
3201 Jermantown Road  Suite 700
Fairfax  Virginia  22030 2879

WITNESS _____ DATE_____ BY _Yvette E Jimenez_ DATE 1-16-14
                                                                                            PARK MANAGER, Yvette E  Jimenez  Office Assistant
WITNESS _____ DATE_____ BY _Esteban Moya_ DATE 01-16-14
                                                                                            LESSEE (Tenant) Esteban Moya
WITNESS _____ DATE_____ BY _____ DATE_____
                                                                                            LESSEE (Tenant)

08/17/99

WAPLES00000899

# EXHIBIT 23(E)

**MOBILE HOME LEASE AGREEMENT**                    Project:Waples Mobile Home Park

**LESSOR AND LESSEE**

This Agreement made this 4th day of December, 2014, by and between A. J. DWOSKIN & ASSOCIATES, INC., AGENT for :
Waples Mobile Home Park (Owner), hereinafter called Lessor, and Esteban Moya  jointly and severally (if applicable) hereinafter called Lessee.
WITNESSETH:

That in consideration of the representation made in the application filed by the Lessee with the Lessor, the rent herein reserved and the covenants herein contained and by the said Lessee to be performed, the Lessor hereby leases to the Lessee, premises in the State of Virginia known as Lot 11259 Mobile Drive, **: Waples Mobile Home Park, Fairfax , Virginia ("Lot").**

**TERM AND RENT**

The term of this lease shall be for the period of 12 months, commencing on the 1st **day of February ,** 2015 fully ending at midnight on the 31st **day of January ,** 2016hereinafter called the "Lease Term"), for the **total rent of** Eight Thousand Nine Hundred Forty **Dollars ($8940.00),** payable in equal **monthly installments of** Seven Hundred Forty Five **Dollars ($745.00)** at the manager's office located in the Mobile Home Park or such other place as the Lessor may designate in writing, each such monthly installment payable without demand or notice in advance on the first day of each month during the Lease Term.

It is further covenanted and agreed between the Lessor and Lessee as follows:

1.  **LATE CHARGE.**  If any installment of rent required by this Lease is not received by the Lessor by close of business on the 5th day of the month in which the rent payment is due, a late charge of **$50.00** shall be paid to Lessor to compensate Lessor for the administrative expenses and other expenses associated with Lessee's failure to timely pay rent.  Lessee agrees that this late charge shall be deemed to be additional rent and failure to pay the late charge may result in the issuance of a five (5) day notice for such nonpayment.  In the event Lessee tenders to Lessor a check which is dishonored by the Lessee's bank for any reason, Lessee agrees to pay Lessor, in addition to the amount of the check, due a service charge of $50.00 representing Lessor's administrative expenses and service charges incurred as a result of Lessee's insufficient check.  In addition, Lessor may thereafter require Lessee to make all future payments of rent and other charges due under the Lease by means of certified check, cashier's check or money order.

2.  **SECURITY DEPOSIT.**  The Lessee agrees to deposit with Lessor upon delivery of this lease, the sum of $645.00 security for the full and faithful performance by the Lessee of each and every term, provision, covenant and condition of this lease.  In the event that the Lessee defaults in respect to any of the terms, provisions, covenants, and conditions of this lease, including but not limited to payment of rent, additional rent or other sums required hereunder (including but not limited to charges for utilities), the Lessor may use, apply or retain the whole or any part of the security so deposited for the payment thereof.  The Lessee acknowledges that the security deposit is to be retained by the Lessor, and may be commingled with other funds of the Lessor, with interest being paid to the Lessee.  The Lessor shall accrue interest on said security deposit in six (6) month increments at a per annum rate equal to the Federal Reserve Board discount rate as of January 1 of each year during the term of this Lease, or such other rate required by law; provided, however, that no interest shall be due and payable unless said security deposit has been held by the Lessor for a period exceeding thirteen (13) months after the date hereof.
In the event that the Lessee shall fully and faithfully comply with all of the terms, provisions, covenants, and conditions of this lease, the security deposit, or any balance thereof, plus accrued interest, if any, shall be returned to the Lessee within thirty (30) days after the expiration of this lease and after the removal of the Lessee's mobile home and surrender of the Lot to the Lessor in good condition.

3.  **POSSESSION.**  The Lessor shall not be liable for failure to deliver possession of the Lot at the time stipulated herein as the date of the commencement of the tenancy, nor, except as provided herein, shall such failure excuse the Lessee's obligation hereunder, unless the Lessor's failure to deliver possession is willful, in which event Section 55-248.22 of the 1950 *Code of Virginia*, as amended, shall govern. Except in the event of delay by the Lessee, the rent herein stipulated to be paid shall be abated for the period from the date of the commencement specified in this lease to the date possession is tendered to the Lessee.

4.  **RULES AND REGULATIONS.**  The Lessee shall comply with the rules and regulations governing the Mobile Home Park, a copy of said rules and regulations being attached  hereto and made a part hereof, and shall comply with such other reasonable rules and regulations and any reasonable alterations or changes which the Lessor shall or may adopt for the Mobile Home Park.

5.  **UNLAWFUL USE, DISTURBING NOISES, ETC.**  The Lessee shall not engage in any unlawful or criminal activity, including but not limited to, drug-related criminal activity, nor permit any member of Lessee's household or any guest or other person under Lessee's control to do so, on or near the Lot or in the Mobile Home Park while the Lessee is a resident in the Mobile Home Park. "Drug-related criminal activity" shall mean the illegal manufacture, sale, distribution, or use of or possession with the intent to manufacture, sell, distribute or use a controlled substance.
The Lessee shall not make or permit to be made any disturbing noises or do or permit any act which will unreasonably interfere with the rights, comforts or conveniences of other tenants.

6.  **OCCUPANTS.**  Only those tenants registered at the manager's office may live in the Mobile Home Park. This Lease Agreement shall not be sublet or assigned.  The taking of or roomers or tenants by the Lessee is prohibited.  Prior to selling the mobile home, Lessee shall give Lessor written notice of the name of the prospective purchaser (if the prospective purchaser intends to keep the mobile home on the Lot).  Lessor shall not unreasonably restrict the sale of the mobile home (see 55-248.47); however, any prospective purchaser who intends  to keep the mobile home on the Lot must submit an application, which application must be approved by Lessor prior to occupancy.

06/09/14

Upon twenty-four (24) hours written notice, which may be delivered to the mobile home, Tenant will permit Landlord to inspect the Premises (including all spaces inside the mobile home) for the purpose of determining the number of residents in the mobile home, and otherwise evaluating compliance with the terms of this Lease Agreement. Any failure by Tenant to provide access to the mobile home for this purpose when requested by Landlord shall constitute an immediate default under this Lease Agreement, granting Landlord to all remedies set forth in paragraph 11 of this Lease Agreement.

7. **LIABILITY OF LESSOR.** All personal property, including the mobile home, placed on the Lot or on any part of the Mobile Home Park shall be at the sole risk of the Lessee, and the Lessor shall in no event be liable for the loss, destruction, theft or removal of or damage to such property unless caused by Lessor's willful negligence.

The Lessee agrees to keep the Lot and the mobile home free of any conditions that might represent a hazard to others.
The Lessee also agrees to obtain an insurance policy including liability and property damage coverage with a combined single occurrence liability limit of not less than $25,000.

8. **UTILITIES.** Lessee will be responsible for payment for all utilities including those set forth in the Utility Addendum; for each utility for which Lessee is responsible for payment, Lessee will pay related deposits and any charges, fees, or services on such utilities. Lessee must not allow utilities to be disconnected – including disconnection for not paying your bills – until the lease term or renewal period ends. Utilities may be used only for normal household purposes and must not be wasted. If Lessee's electricity is ever interrupted, Lessee must use only battery-operated lighting. If any utilities are sub metered for the Premises, Lessee must pay such billings promptly. If the billing company requests Lessor pay Lessee's bills and Lessor, in its sole and absolute discretion, pays such bills, the amount of such bills will be added to Lessee's rent and such amounts will be treated as additional rent for all purposes, including seeking possession of the Lot for nonpayment.

The Lessee acknowledges that utility services are available to the Lot and that they are in good working order. Unless caused by Lessor's willful negligence, the Lessor shall not be liable for any damage, injury or loss whatsoever which might arise, or accrue, from his providing, failure to provide, or the failure of utilities. Further, the Lessee agrees to bear the cost of repairing any damage to the utility lines or connectors resulting from his misuse.

9. **HOLDING OVER / RENEWAL.** Either Lessor or Lessee may terminate the Lease Agreement at the end of the Lease Term by giving the other party written notice of intent to terminate/vacate at least sixty (60) days prior to said termination date. Should the Lessee not give said notice and vacate the Leased Premises at the end of the Lease Term, Lessee shall be liable for the payment of rent for two (2) months thereafter. Should the Lessee not give said notice and continue in possession of the Leased Premises after the end of the Lease Term, the Lessee shall be deemed to be a tenant from month to month. In such event, all terms and conditions of this Lease shall continue in full force and effect, except rent, which Lessor may unilaterally adjust to the prevailing monthly fair rental value. It is also agreed that the tenancy can be terminated by either party by giving written notice to the other party at least thirty (30) days prior to the end of the month in which said party desires such termination. This thirty (30) day written notice can be given to the other party at any time without any reason for the notice being required.

Proof of identity, copy of the title or sales agreement and proof of active insurance will be required not only upon move-in date and initial lease signing, but upon renewal. NO renewals will be considered as executed unless these items are provided at signing.

10. **MILITARY TRANSFERS.** If Lessee is a member of the Armed Forces of the United States and Lessee receives permanent change of station orders or temporary duty orders (in excess of three [3] months duration) to depart thirty-five (35) miles or more (radius) from the location of the Lot or is discharged or relieved from active duty with the Armed Forces of the United States, or is ordered to report to government-supplied quarters, Lessee may terminate this Lease upon (a) giving written notice of termination to be effective on a date stated therein, said date to be not less than thirty (30) days after Lessor's receipt of such notice, (b) providing, together with such written notice of termination, a copy of the official orders, (c) paying all rent and miscellaneous charges through the effective date of the termination, and (d) paying Lessor the amount of (i) one (1) month's rent if the effective date of the termination is less than six (6) months after the beginning of the Lease Term or (ii) one-half (1/2) of one month's rent if such effective date is at least six (6) but less than twelve (12) months after the beginning of the Lease Term. This paragraph shall not be construed to relieve Lessee from any liability under this Lease except the liability for rent for the unexpired portion of the Lease Term.

11. **ACTION BY LESSOR UPON DEFAULT.** Should the Lessee at any time during the continuance of his occupancy of the Lot fail to pay the monthly rental or other sums required hereunder, including but not limited to charges for utilities, or should the Lessee violate any one of the agreements, terms, or conditions of this lease, or any of the rules or regulations of the Mobile Home Park two (2) times within a six (6) month period or should Lessee or any other person residing in the Lot be convicted of a drug-related crime during the Lease Term, then the Lessor shall have all rights and remedies of a landlord under applicable law, including but not limited to the rights and remedies provided in VA. Code Ann. Section 55-248.31 and, in addition, the Lessor shall have the right to take possession of the Lot pursuant to a court order for possession, and to remove the mobile home from the Lot and relet the Lot. In the event that the Lessor moves the Lessee's mobile home from the Lot pursuant to this paragraph, the Lessee agrees to pay a reasonable removal and storage charge to the Lessor or the party removing and/or storing the mobile home.

12. **LIEN FOR RENT AND OTHER SUMS.** The Lessor shall have a lien upon all of the personal property, including the mobile home, of the Lessee moved in and located upon the Lot, as and for security for the rent and other sums, including but not limited to, charges for utilities, herein provided to be paid; and such installments of rent and other sums as shall remain unpaid to the amount and extent thereof shall become and are hereby made a specific lien upon such personal property as shall be upon the Lot, to all intents and purposes as though the Lessee had executed a chattel deed of trust to secure the Lessor for the rent or other sums reserved; and the Lessee shall not remove, or attempt to remove any of the aforesaid personal property while there yet shall remain due and owing any portion of the rent or other sums reserved by this lease; and should the Lessee attempt to remove such property, the Lessor is hereby empowered to distrain said property pursuant to Section 55-230 of the 1950 *Code of Virginia*, as amended, and to employ such other remedies as are authorized by law.

06/09/14

13. **ATTORNEY'S FEE.** In the event that Lessor engages counsel as a result of Lessee's breach of this Lease, Lessee agrees to pay Lessor's attorney's fees in the amount of $200.00 or 25% of all rent due and owing at the time judgment is obtained, whichever is greater.

14. **WAIVING OF ONE BREACH NOT A GENERAL WAIVER.** No waiver of any breach of any covenant, provision, or condition contained in this lease shall be construed as a waiver of the covenant itself or of any subsequent breach thereof.

15. **SECURITY INTERESTS IN MOBILE HOME.** The name(s) and address(es) of any person or entity having a security interest in the mobile home is as follows:
Name and address of dealer from whom mobile home purchased (if applicable).
Lessee shall notify Lessor within ten (10) days of any new security interest, change of existing security interest, or settlement of security interest.

16. **MANUFACTURED HOME LOT RENTAL ACT.** The terms of the Manufactured Home Lot Rental Act (Title 55, Chapter 13.3, 1950 *Code of Virginia*, as amended) attached hereto, are incorporated by reference into this Lease Agreement. Any provision in the Lease Agreement which conflicts with said Act shall be superseded by the applicable provision of the Act.

A. J. DWOSKIN & ASSOCIATES, INC.
3201 Jermantown Road, Suite 700
Fairfax, Virginia 22030-2879

WITNESS:_____DATE_____    BY:_____DATE 12·4·14
PARK MANAGER, Yvette E. Jimenez, Office Assistant
WITNESS:_____DATE_____    BY:_____DATE 12-04-14
LESSEE (Tenant) Esteban Moya
WITNESS:_____DATE_____    BY:_____DATE_____
LESSEE (Tenant)

06/09/14