**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ,<br><br>*Plaintiffs*,<br><br>vs.<br><br>WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC.,<br><br>*Defendants*. | Civil Action No. 1:16cv00563-TSE-TCB |

**PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE'S ORDER DENYING PLAINTIFFS' MOTION TO COMPEL**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

STANDARD OF REVIEW ....................................................................................................7

FACTUAL BACKGROUND ..................................................................................................2

ARGUMENT .........................................................................................................................8

I.      BY CONDONING DEFENDANTS' IMPERMISSIBLE REDACTIONS, THE MAGISTRATE JUDGE'S ORDER WAS CONTRARY TO LAW ................................8

      A.     Defendants Improperly Redacted Relevant Information From Otherwise Responsive Documents ........................................................................................8

      B.     Defendants' Redactions Were Made In Violation of the Federal Rules ...............11

II.     IN FINDING THAT EMAILS BETWEEN YARDI AND DEFENDANTS CONSTITUTED ATTORNEY WORK PRODUCT, THE MAGISTRATE JUDGE'S ORDER WAS CONTRARY TO LAW ..........................................................13

      A.     Yardi is not Defendants' Agent, Representative, or Counsel ...............................15

      B.     Communications Between Defendants and Yardi Were Not Made in Anticipation of Litigation, But Made in the Ordinary Course of Business ...........16

      C.     Any Work Product That May Have Existed Was Waived by Disclosure to Third Party Yardi ...............................................................................................18

CONCLUSION ....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anthropologie, Inc. v. Forever 21, Inc.*,
No. 07 CIV. 7873 RJSMHD, 2009 WL 690126 (S.D.N.Y. Mar. 13, 2009) .........................11

*Attard Industries, Inc. v. U.S. Fire Ins. Co.*,
No. 1:10cv121, 2010 WL 3069799 (E.D. Va. 2010) ................................................................3

*Bethune-Hill v. Virginia State Bd. of Elections*,
114 F. Supp. 3d 323 (E.D. Va. 2015) .....................................................................................18

*Beverage Distributors, Inc. v. Miller Brewing Co.*,
No. 2:08-CV-1112, 2010 WL 1727640 (S.D. Ohio Apr. 28, 2010) .....................................9, 12

*Carrizosa v. Stassinos, No. C 05-2280 RMW RS*,
2006 WL 2529503 (N.D. Cal. Aug. 31, 2006) ......................................................................12

*Cognate BioServices, Inc. v. Smith, No. CIV. WDQ-13-1797*,
2015 WL 1256499 (D. Md. Mar. 17, 2015).............................................................................10

*Continental Cas. Co. v. American Home Assurance Co.*,
No. 2:00-0260, 2010 WL 692942 (S.D. W.Va. Feb. 23, 2010).............................................2

*David v. Alphin*,
No. 07-11, 2010 WL 1404722 (W.D.N.C. Mar. 30, 2010).....................................................10

*In re Doe*,
662 F.2d 1073 (4th Cir. 1981) ................................................................................................17

*E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
No. CIV.A. 3:09CV58, 2010 WL 1489966 (E.D. Va. Apr. 13, 2010) .............................17, 19

*FEC v. Christian Coalition.*,
178 F.R.D. 61 (E.D. Va. 1998) ...............................................................................................19

*Galambus v. Consol. Freightways Corp.*,
64 F.R.D. 468 (N.D. Ind. 1974)..............................................................................................14

*In re Grand Jury Proceedings*,
102 F.3d 748 (4th Cir. 1996) .............................................................................................13, 14

*In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*,
902 F.2d 244 (4th Cir. 1990) ..................................................................................................19

*Hickman v. Taylor*,
329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947)................................................................13

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
298 F.R.D. 184 (S.D.N.Y. 2014) ...........................................................................................11

*In re MI Windows & Doors, Inc. Prod. Liab. Litig.*,
No. 2:12-MN-00001, 2013 WL 268206 (D.S.C. Jan. 24, 2013) .........................................8, 10

*MMI Prods. v. Long*,
231 F.R.D. 215 (D. Md. 2005)..........................................................................................2

*Orion Power Midwest, L.P. v. Am. Coal Sales Co.*,
No. 2:05-CV-555, 2008 WL 4462301 (W.D. Pa. Sept. 30, 2008)........................................11

*In re Outsidewall Tire Litig.*,
No. 1:09CV1217, 2010 WL 2696643 (E.D. Va. July 6, 2010) ............................................19

*Rickman v. Deere & Co.*,
154 F.R.D. 137 (E.D. Va. 1993),
*aff'd*, 36 F.3d 1093 (4th Cir. 1994) .............................................................................13, 14

*Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*,
28 F. Supp. 3d 465, ........................................................................................................2

*Spilker v. Medtronic, Inc.*,
No. 4:13-CV-76-H, 2015 WL 1643258 (E.D.N.C. Apr. 13, 2015) ......................................15

*In re Stryker Rejuvenate & Abgii Hip Implant Prod. Liab. Litig.*,
No. MDL 13-2441 DWF/FLN, 2014 WL 2808919 (D. Minn. June 20, 2014) .......................11

*U.S. ex rel. Frascella v. Oracle Corp.*,
No. 1:07CV529 LMB/TRJ, 2011 WL 2636838 (E.D. Va. July 6, 2011) ..............................17

*Wellin v. Wellin*,
No. 2:13-CV-1831-DCN, 2014 WL 3496514 (D.S.C. July 14, 2014) ..................................10

*Wellin v. Wellin*,
No. 2:13-CV-1831-DCN, 2015 WL 5781383 (D.S.C. Sept. 30, 2015)..................................10

## Statutes and Rules

42 U.S.C. § 1981..............................................................................................................3

42 U.S.C. § 3601..............................................................................................................3

Fed. R. Civ. P. 5.2...........................................................................................................10

Fed. R. Civ. P. 26(b)(1).....................................................................................................8

Fed. R. Civ. P. 26(b)(3)(A) ...........................................................................................12, 13

Fed. R. Civ. P. 26(b)(3)............................................................................................13, 14

Fed. R. Civ. P. 30(b)(6)....................................................................................................9

Fed. R. Civ. P. 34..........................................................................................................11

Va. Code § 36-96............................................................................................................3

Va. Code § 55-248.41 .....................................................................................................3

## INTRODUCTION

Plaintiffs are entitled to discovery of responsive, non-privileged documents.  Yet Defendants are refusing to provide certain responsive, non-privileged discovery on the basis of two improper justifications.  First, Defendants have redacted documents that they concede are relevant, *exclusively* on the basis that the redacted information is, in their view, "irrelevant."  Second, Defendants have withheld, on the basis of the attorney work product doctrine, communications between Defendants and a *neutral third-party* that simply do not constitute attorney work product.[1]  Because neither position was justified, Plaintiffs moved to compel production of these two categories of documents.  Without giving Plaintiffs an opportunity to be heard, Magistrate Judge Buchanan summarily denied Plaintiffs' motion to compel.

Plaintiffs object to the Magistrate Judge's order.  Regarding the redacted documents, the Magistrate Judge's conclusion that "[i]rrelevant information contained within an otherwise relevant document is like any other irrelevant material that need not be produced" not only disregards the actual nature of the documents at issue, but also is contrary to established law.  The Magistrate Judge clearly erred by finding that the redactions at issue encompassed irrelevant information; these redactions cover plainly relevant matter.[2]  Further, as federal court

---

[1]     In fact, Defendants originally asserted attorney-client privilege over these communications, even though several of these communications do not involve attorneys, and *all* of these communications involved the presence of a neutral third-party in this litigation.  When Plaintiffs challenged Defendants' position during the meet and confer process, Defendants immediately withdrew that assertion of attorney-client privilege.

[2]     The Magistrate Judge's order also disregards Plaintiffs' arguments, and is instead premised on Defendants' egregious mischaracterizations of Plaintiffs' arguments.  In their opposition brief, Defendants stated that, effectively, "Plaintiffs assert that irrelevant information . . . must be logged on a relevance log of some sort."  Opp'n Mot. Compel ("Opp'n") (Dkt. No. 85) at 2-3.  Plaintiffs never made such an argument.  Yet the Magistrate Judge's decision on the redaction issue begins by stating that "documents that were partially redacted as irrelevant . . .

authority makes clear, a party may not unilaterally redact information from documents that are otherwise responsive *solely* on the basis that such redacted information is "irrelevant." Yet the Magistrate Judge's order explicitly condones such conduct.

Regarding the purportedly privileged communications, the Magistrate Judge's conclusion that Defendants had "set forth a prima facie claim of work-product privilege" even "though they may be directed to a third party" was clearly erroneous and contrary to law. Order (Dkt. No. 92) at 1. The Magistrate Judge clearly erred by ignoring the fact that the communications at issue were either made by or to a neutral third party in this litigation. The Magistrate Judge's ruling was also contrary to established law defining attorney work product in the first instance, and explaining how work product protection is waived.

Accordingly, Plaintiffs respectfully request that the Court set aside the Magistrate Judge's order and compel Defendants to produce the documents subject to Plaintiffs' motion immediately. Plaintiffs also respectfully request permission to reopen any depositions of Defendants after receiving the outstanding documents for the purpose of questioning Defendants' witnesses on such documents.

## FACTUAL BACKGROUND

On May 23, 2016, Plaintiffs filed this lawsuit challenging Defendants' sudden enforcement of a dormant policy requiring all occupants over the age of eighteen to provide

---

need not be listed on the privilege log." Order at 2. Additionally, the Magistrate Judge's order presumes facts that neither party set forth in their briefing, but that are decidedly favorable to Defendants. Specifically, the order states that "[a]bsent specific need, personal information and identities would certainly be irrelevant[,]" even though Defendants did not assert that the redactions at issue encompassed either personal information or identities. *Id.* Indeed, Defendants' sole argument is that it may redact portions of *otherwise relevant* documents *exclusively* "on the basis of irrelevance." Opp'n at 13.

documentation proving their legal presence in the United States.[3]  On September 1, 2016, the

Court issued an order denying in full Defendants' motion to dismiss.  (Dkt. No. 57.)

On August 18, 2016, the Court entered the Scheduling Order (Dkt. No. 47) approving the

parties' Proposed Joint Discovery Plan.  (Dkt. No. 41).  In the Joint Discovery Plan, the parties

agreed to address "any claims of privilege made within discovery responses" in a privilege

log.  Joint Discovery Plan at 4–5.  The parties further agreed to provide information and a

description "sufficient to understand the subject matter of the document and the basis of the

claim of privilege or immunity. . . [for] any Document that has been redacted or withheld on the

basis of a claim of privilege or immunity."  *Id.*  The Court also entered the parties' Proposed

Protective Order (Dkt. No. 45).  By stipulating to the Protective Order, the parties agreed that

"Documents and things produced during the course of discovery deemed by the party producing

or disclosing them ("Producing Party") to contain confidential information may be designated by

the Producing Party by marking the document or thing with the legend

'CONFIDENTIAL.'"  Protective Order at ¶ 2.  The parties also agreed that "no discoverable

information may be withheld from discovery on the ground that the material to be disclosed

requires protection greater than that afforded by this Order unless the party claiming a need for

greater protection moves for an order providing such special protection by no later than the date

on which its response to such discovery is due."  *Id.* at ¶ 11.

---

[3]      The Complaint specifically brings claims for: Violation of Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA") (Count I); Violation of Virginia Fair Housing Law, Va. Code § 36-96 *et seq.* ("VFHL") (Count II); Violation of Virginia Manufactured Home Lot Rental Act ("VMHLRA"), Va. Code § 55-248.41 *et seq.* (Count III); Violation of 42 U.S.C. § 1981 (Count IV); Breach of Contract (Count V); and Tortious Interference With Contract (Count VI).  The Court dismissed with prejudice Count VI of the Complaint per the parties' agreement.  (Dkt. 29 at 8 n.2; Dkt. 34.).

During the course of discovery, the parties met and conferred regarding Plaintiffs' first set of requests for production and interrogatories.  During the meet and confer process, Defendants further confirmed that "any emails Defendants withhold based on attorney-client privilege and work product protections will be included in a privilege log."  Ex. 1 (Sept. 12, 2016 email from M. Dingman to A. Trajtenberg).

On October 19, 2016, Plaintiffs requested that Defendants produce a privilege log as required by the Joint Discovery Plan.  *See* Ex. 2 (Oct. 19, 2016 email from A. Trajtenberg to J. deBettencourt).  On October 21, 2016, Defendants produced their privilege log.  *See* Ex. 3 (Defendants' Oct. 21, 2016 privilege log).  Plaintiffs notified Defendants that several of their log descriptions were insufficient to evaluate Defendants' claim of privilege or immunity, explained what information was needed, and requested that Defendants cure their breach of the Protective Order.  Ex. 4 (November 4, 2016 email from A. Trajtenberg to J. deBettencourt).  With regards to the Protective Order and Joint Discovery Plan, Plaintiffs made clear that Defendants needed to include documents redacted on the basis of attorney-client privilege on the privilege log, and then either (1) produce unredacted versions of non-privileged, redacted documents, or (2) move the court for an order for any redacted documents that required greater protection than that provided by the Protective Order as required by the Protective Order.  *See id*.

Defendants responded on November 10, 2016 providing an "updated" privilege log, Ex. 5 (Defendants' Nov. 10, 2016 privilege log), and explaining their claims of privilege.  Defendants claimed work product protection and attorney-client privilege in their amended privilege log for all communications between any of the Defendants' employees and employees of Yardi, even though Yardi is a neutral third-party that provides business services to Defendants on an arms-length basis.  Specifically, Defendants use Yardi's software to process prospective tenants'

applications and track current tenants.  The excerpt below shows one example in which
Defendants claim work product protection over an email sent by Defendants' Chief Financial
Officer, Mark Jones, to Yardi's Vice President:

| Control No. Bates No. | Document Type | Date | From | Recipient(s) | CC | Description | Privilege Claim |
|---|---|---|---|---|---|---|---|
| DOCID00660653-660654 | Email | 6/9/2016 | Mark Jones | Patrick Hennessey | N/A | Email providing information in connection with seeking legal advice regarding resident screening. (Investigation undertaken at direction of Reed Smith) | Attorney-Client; Work-Product |

Ex. 5 at 8.  The rest of Defendants' purported "work-product" claims encompass substantially
similar entries.

In their November 10th response, Defendants also reasserted their unabashed refusal to
comply with the Protective Order, arguing they could redact information they deemed to be
irrelevant.  Ex. 6 (Nov. 10, 2016 email from J. deBettencourt to A. Trajtenberg).  Defendants
made liberal redactions on various responsive documents on the sole basis that the redacted
information was, in Defendants' view, not relevant.  The scope of these redactions varies from
covering entire pages to redacting the names of prospective tenants inquiring about renting a lot
at Waples Mobile Home Park (the "Park"), and even to information regarding press coverage
relating to this case:



Ex. 7 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

5

The next day, Plaintiffs requested to meet and confer with Defendants.  Ex. 8 (November 11, 2016 email from A. Trajtenberg to J. deBettencourt).  During the meet and confer, Defendants represented that their redactions were made solely on the basis of relevance—that is, no redaction was made on the basis of attorney-client privilege, personal identifying information, or any other grounds included in the Protective Order.[4]  Defendants also represented all communications with Yardi were work product.

Accordingly, on November 11, 2016, Plaintiffs filed a motion to compel production of (1) the communications between Defendants and third-party Yardi that Defendants withheld under a claim of work product doctrine and (2) unredacted versions of otherwise relevant documents that Defendants either partially or fully redacted based on Defendants' unilateral decision that the redaction information was not relevant.  Plaintiffs noticed a hearing for November 18, 2016.  Defendants filed an opposition to Plaintiffs' motion to compel, which mischaracterized Plaintiffs' positions regarding the redactions, and claimed communications with Yardi were limited to obtaining information about Yardi's "procedures for conducting criminal background and credit checks" Opp'n at 13.  On November 17, 2016, Plaintiffs filed their reply, which attached Defendants' own documents confirming that Yardi was an "independent contractor" with respect to Defendants, and a declaration confirming Yardi's self-described neutrality with respect to this litigation.  A few hours later, the Court informed the parties that it would not hear any argument and a ruling would be made on the papers.

---

[4] The Protective Order defines Confidential information as "(a) information prohibited from public disclosure by statute; (b) information that reveals trade secrets; (c) research, technical, commercial, financial, or other sensitive business information; (d) communications that the party has maintained as confidential; (e) sensitive personal information; (f) sensitive personal financial information, including but not limited to income tax returns, W-2 forms, and 1099 forms; (g) personnel or employment records; and (h) all documents designated as confidential by the agreement of counsel."  Protective Order at 1-2.

On November 18, 2016, the Magistrate Judge issued an order denying Plaintiffs' motion, which, in the Magistrate Judge's view, "assert[ed] that defendants improperly withheld documents as privileged and redacted portions of other documents without designating them on the privilege log." Order at 1.  With regards to the documents Defendants withheld under a claim of work product, the Magistrate Judge held that Defendants "set forth a prima facie claim of work-product privilege" and that there is no apparent "reason why plaintiff cannot obtain the information on the same subject matters by other means."  *Id.* at 1-2.  On the redactions issue, Magistrate Judge ruled that "documents that were partially redacted as irrelevant to the discovery requests, [sic] need not be listed on the privilege log."  *Id.* at 2.  Both rulings misapplied the law and should therefore be set aside.

## STANDARD OF REVIEW

A district court reviews a Magistrate Judge's ruling on a motion to compel under a "clearly erroneous or contrary to law' standard of review." *Montanile v. Botticelli,* No. 1:08cv716, 2009 WL 2378684, *2 (E.D.Va. July 28, 2009) (citing *Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship,* 784 F. Supp. 1223, 1228 (E. D. Va. 1991)).  "The 'clearly erroneous' standard applies to factual findings, while legal conclusions will be rejected if they are 'contrary to law.'" *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC,* 28 F. Supp. 3d 465, 479 (D. Md. 2014).  A court's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (citing *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).  An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Attard Indus., Inc. v. U.S. Fire Ins. Co.,* No. 1:10cv121, 2010 WL 3069799 at *1 (E.D. Va. 2010).

## ARGUMENT

I. **BY CONDONING DEFENDANTS' IMPERMISSIBLE REDACTIONS, THE MAGISTRATE JUDGE'S ORDER WAS CONTRARY TO LAW**

The Magistrate Judge's order denying plaintiffs' motion to compel with respect to the redacted documents at issue was contrary to law for two independent reasons: (1) Defendants redacted unambiguously relevant information and (2) the Federal Rules do not permit unilateral redactions made solely on the basis of relevance.

### A. Defendants Improperly Redacted Relevant Information From Otherwise Responsive Documents

The starting point for the Magistrate Judge's order is clearly erroneous. The Magistrate Judge's analysis relied on the predicate that Defendants had made redactions only for "personal information and identities." Order at 2. Defendants, however, made clear during the parties' most recent meet and confer that they do not assert that *any* of the redacted information qualifies as personal identifying information.[5] Instead, Defendants have consistently taken the position that the redactions were made exclusively on the basis that the redacted information was "irrelevant" or "not discoverable." Opp'n at 2, 14. The Magistrate Judge's misunderstanding of the essential nature of Defendants' redactions is reason alone to set aside the order.

In any event, as an examination of several of the redacted documents shows,[6] Defendants wrongly redacted *relevant* and *discoverable* information. The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant

---

[5]    Nor, for that matter, do they "assert[] any claim of privilege to these redactions." Opp'n 14.

[6]    Defendants try to hold Plaintiffs' inability "to explain why they contended that [the redacted] information was relevant" during the meet and confer against Plaintiffs. Opp'n at 15. In Defendants' view, Plaintiffs bear the burden of rebutting Defendants' assertions of "irrelevance" over the redacted information. Of course, this is difficult to do when the information has been redacted, without explanation, by Defendants in the first instance.

to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  But Defendants' redactions

encompass matter directly relevant to the claims and defenses.

    As one illustration of Defendants' narrow conception of discovery under Rule 26,

Defendants redacted so-called "not discoverable" information from a █████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████  *See* Exhibit 7.  The

information beneath these redactions undoubtedly relate to Defendants' understanding of, and

reaction to, the events and allegations that form the heart of Plaintiffs' complaint.  *See In re MI*

*Windows & Doors, Inc. Prod. Liab. Litig.*, No. 2:12-MN-00001, 2013 WL 268206, at *2 (D.S.C.

Jan. 24, 2013) (compelling defendant to produce unredacted versions of improperly redacted

"statements from an employee's weekly activity report that relate to the very concerns that form

the basis of the homeowner plaintiffs' complaints").

    In another document, Defendants redacted seven entries from a ███████████

███████████████████████████████████████████████████████

████████████████  *See* Exhibit 9 (WAPLES00002427).  The information surrounding the

redacted portion shows that Defendants redacted entries ██████████████████████

███████████████████████████████████████████████████████

█████████.  There is no basis for asserting that information relating to tenants being investigated

by Mr. Jones—Defendants' *sole 30(b)(6) designee*—is irrelevant to this case.  Defendants'

selective enforcement of the policy goes to the heart of Plaintiffs' claims that rely on proof of

intentional discrimination, and the redacted information clearly relates to such enforcement at the

Park and at Defendants' other properties.  *See, e.g.*, *Laufman v. Oakley Bldg. & Loan Co.*, 72

F.R.D. 116, 120 (S.D. Ohio 1976) (holding Plaintiffs were entitled to Defendants' records "with respect to transactions similar to the one in question whether the present case is a class action or not, as they may tend to show a pattern of refusal to lend in integrated areas.").

As another example, Defendants produced what Defendants' 30(b)(6) designee confirmed was a tenant report generated by Yardi that has redactions on ███████████████

████████████████████████████████████████████

███████████████████████████████ *See* Exhibit 10 (WAPLES00001335).[7]  This type of redaction "deprives plaintiffs of context for the relevant information" and therefore should not be permitted.  *In re MI Windows*, 2013 WL 268206, at *3 (D.S.C. Jan. 24, 2013).

As these examples show,[8] Defendants' redactions unambiguously cover information directly relevant to the claims and defenses in this case.  Because the Magistrate Judge's order erroneously concluded that Defendants' redactions covered personal information and identities— which is factually incorrect—or otherwise "irrelevant information"—which is a legally improper basis for redaction, Order at 2, the Court should set aside that order.

---

[7]     Because the Rule 30(b)(6) deposition took place yesterday, the transcript is not yet available.

[8]     Defendants redacted 61 documents, with many documents containing multiple redactions, not including documents where information was blacked out.  It is not Plaintiffs' burden to prove that each such redaction covered relevant information.  *See Beverage Distributors, Inc. v. Miller Brewing Co.*, No. 2:08-CV-1112, 2010 WL 1727640, at *5 (S.D. Ohio Apr. 28, 2010) ("Given the extent of the redactions made by defendants, it would be impossible to divide them into a few discrete categories about which relevancy arguments could conveniently and intelligently be made.  For the same reason, an *in camera* review of each redacted document and the corresponding unredacted original would be unnecessarily burdensome and time-consuming.").

### B.      Defendants' Redactions Were Made In Violation of the Federal Rules

The Magistrate Judge's Order condoned Defendants' unilateral redactions of what they perceived to be "irrelevant information" from otherwise relevant documents.  *See* Order at 2 (denying motion to compel in part because "[i]rrelevant information contained within an otherwise relevant document is like any other irrelevant material that need not be produced.").  The Magistrate Judge's order was contrary to law.

Plaintiffs are not aware of any Fourth Circuit decision permitting a party to unilaterally redact what it alone believes is irrelevant information from otherwise relevant documents.  The several district courts within the Fourth Circuit that have addressed this issue have all found that, absent special circumstances, unilateral redactions in otherwise responsive documents on the sole basis of "irrelevance" are not permitted by the Federal Rules.  *See Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2014 WL 3496514, at *4 (D.S.C. July 14, 2014) ("Because [the parties opposing the motion to compel] have provided no explanation for their redactions and because they have not asserted privilege over the redacted material, the court will require them to reproduce all responsive documents in their complete form."); *In re MI Windows & Doors, Inc. Prod. Liab. Litig.*, No. 2:12-MN-00001, 2013 WL 268206, at *2 (D.S.C. Jan. 24, 2013) ("Redaction is, after all, an alteration of potential evidence.  The Federal Rules sanction only very limited unilateral redaction, *see* Fed. R. Civ. P. 5.2.  Outside of these limited circumstances, a party should not take it upon . . . itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case." (quoting *David v. Alphin*, No. 07–11, 2010 WL 1404722, at *7 (W.D.N.C. Mar. 30, 2010))); *Cognate BioServices, Inc. v. Smith*, No. CIV. WDQ-13-1797, 2015 WL 1256499, at *7 (D. Md. Mar. 17, 2015) ("[T]he Federal Rules provide no procedural device for unilateral redaction by a party and it is a procedure that is not favored." (citation omitted)); *see also Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2015 WL 5781383, at *5

(D.S.C. Sept. 30, 2015) ("Courts have recognized that relevance-based redactions are disfavored, because they breed suspicions, and they may deprive the reader of context." (quotation marks and citation omitted)).

If there were any doubt about this rule, there is a strong consensus among federal courts that unilateral redactions made solely on the basis of "irrelevance" are never justified.  Contrary to the Magistrate Judge's Order, "there is nothing in the Federal Rules of Civil Procedure that permits the unilateral redaction of information, in otherwise responsive documents, that one party or the other deems not relevant."  *In re Stryker Rejuvenate & Abgii Hip Implant Prod. Liab. Litig.*, No. MDL 13-2441 DWF/FLN, 2014 WL 2808919, at *3 (D. Minn. June 20, 2014); *see also John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("[R]edactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege."); *Anthropologie, Inc. v. Forever 21, Inc.*, No. 07 CIV. 7873 RJSMHD, 2009 WL 690126, at *5 (S.D.N.Y. Mar. 13, 2009) (rejecting defendants' argument that redactions "were permissible to eliminate irrelevant material" and ordering defendants to "produce the non-privileged documents in unredacted form"); *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, No. 2:05-CV-555, 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008) (rejecting Defendants' "redaction campaign" of "scrub[bing] responsive documents of non-responsive information" and granting "plaintiff's motion to compel . . . production of non-privileged documents in unredacted form" because "Rule 34 talks about production of 'documents,' as opposed to the relevant information contained in those documents").[9]

---

[9]     One court has explained the "themes which pervade" the case law concerning unilateral redactions for relevance in the following way: "(1) that redaction of otherwise discoverable documents is the exception rather than the rule; (2) that ordinarily, the fact that the producing party is not harmed by producing irrelevant information or by producing sensitive information

Further, Plaintiffs are not aware of any jurisdiction that permits such unilateral redaction.  Unsurprisingly, Defendants are only able to cite one case from California in support of their radical position that parties may unilaterally redact information, in documents that are undisputedly otherwise relevant, on the basis that the redacted information contains "irrelevant" information.  In that case, the Court permitted redaction of certain non-responsive information in defendant's "personal date book," noting that the redactions were not driven by irrelevance, but concerns over defendant's "right of privacy."  *Carrizosa v. Stassinos*, No. C 05-2280 RMW RS, 2006 WL 2529503, at *4 (N.D. Cal. Aug. 31, 2006).  Defendants, by comparison, have provided no legitimate reason for their redactions.  The Magistrate Judge's Order likewise cited to no authority condoning the type of redaction made by Defendants here.

The Magistrate Judge's order was contrary to law, and the Court should compel Defendants to produce unredacted versions of all documents they have redacted.

## II. IN FINDING THAT EMAILS BETWEEN YARDI AND DEFENDANTS CONSTITUTED ATTORNEY WORK PRODUCT, THE MAGISTRATE JUDGE'S ORDER WAS CONTRARY TO LAW

The Magistrate Judge's order holding that the work product doctrine protects from discovery "investigatory directions and information" directed to *any* third party for documents "created near to or after the filing of the complaint in this case" is contrary to law.  *See* Order at 1 (concluding that work product privilege applies to documents even "though they may be directed to a third party").  But Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure defines work

---

which is subject to a protective order restricting its dissemination and use renders redaction both unnecessary and potentially disruptive to the orderly resolution of the case; and (3) that the Court should not be burdened with an in camera inspection of redacted documents merely to confirm the relevance or irrelevance of redacted information, but only when necessary to protect privileged material whose production might waive the privilege."  *Beverage Distributors*, 2010 WL 1727640, at *4.

product as "documents and tangible things that are prepared in anticipation of litigation or for trial *by or for another party or its representative*." Fed. R. Civ. P. 26(b)(3)(A) (emphasis added); *see also Rickman v. Deere & Co.*, 154 F.R.D. 137, 138 (E.D. Va. 1993), *aff'd*, 36 F.3d 1093 (4th Cir. 1994) ("The protection accorded by Rule 26(b)(3), however, applies only to documents prepared by a 'party' or a party's 'representative.'"). To establish the applicability of the work product privilege, Defendants must show, as to each document, that the work product in question was: (1) prepared by, or under the direction of, an attorney and (2) was prepared in anticipation of litigation. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *In re Grand Jury Proceedings,* 102 F.3d 748, 750 (4th Cir. 1996).

The Order erroneously holds that Defendants established that the at-issue emails with non-party Yardi constitute work product and ignores the fact that even if such documents are work product—which Plaintiffs do not concede—any claim of work product was waived when Defendants disclosed any purported work product to Yardi. The Order fails to consider that the emails from Yardi to Defendants do not constitute documents prepared by a party or party's agent. The Order also assumes, without sufficient factual support, that the withheld documents were prepared in anticipation of litigation merely because they were made "near to or after the filing of the complaint in this case" without considering that Defendants regularly communicated with Yardi in their ordinary course of business, making it probable the withheld communications were not made in anticipation of litigation, but in the ordinary course of Defendants' business of screening and tracking its residents using Yardi's software. Further, the Magistrate Judge's Order ignored Plaintiffs' evidence that showing that Defendants waived work product protection by sharing communications with a neutral third party with whom Defendants shared no common

interest with respect to this litigation, thereby destroying any reasonable expectation of confidentiality with regard to the communications at issue.

### A.    Yardi is not Defendants' Agent, Representative, or Counsel

Yardi is not Defendants' agent, representative, or counsel.  It is an independent third party that provides residential screening services to Defendants on an arm's-length basis.  Defendants' own contract with Yardi, ███████████████████████████ █████████████████████████████████████████████████████████████ ██████████████████. *See* Ex. 11 (WAPLES00000814) at 817.  The agreement further provides that ████████████████████████████████████████████████████ █████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████ *Id.*  Defendants have never asserted otherwise.

Yardi's relationship with Defendants is thus distinct from typical situations in which communications with an agent or representative of a defendant were protected by the work product doctrine.  Yardi is an independent fact witness in this case—not an extension of Defendants or their counsel—and communications between Defendants and Yardi therefore are not protected by the work product doctrine.  *See Rickman*, 154 F.R.D. at 138 (declining to extend work product protection to materials "prepared by Farm Bureau in anticipation of subrogation litigation" because "Farm Bureau is not a 'party.'  Nor . . . is it the 'representative' . . . of plaintiff."); *see also Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.").

**B.      Communications Between Defendants and Yardi Were Not Made in Anticipation of Litigation, But Made in the Ordinary Course of Business**

The Magistrate Judge incorrectly ruled that communications between Defendants and Yardi "clearly indicate that . . . they contain investigatory directions and information relating to discovery responses."  Order at 1.  The Magistrate Judge's reasoning that the communications were made near to or after the filing of the complaint ignores that Defendants and Yardi had an ongoing business relationship since 2013.  The work product doctrine only protects documents and tangible things made in anticipation of litigation and does not protect documents created in the ordinary course of business.  In determining whether a document is entitled to work-product protection, the court must consider whether "the 'primary motivating purpose' behind the performance of the work was to assist in the pending or impending litigation."  *Spilker v. Medtronic, Inc.*, No. 4:13-CV-76-H, 2015 WL 1643258, at *7 (E.D.N.C. Apr. 13, 2015) (internal citations omitted).  To the extent that discoverable documents contain counsel's opinion and theories regarding the litigation, "the court may require production of a redacted copy." *Id.* at *7.

Plaintiffs have reason to believe that Defendants' communications with Yardi were not confined to gathering information regarding "Yardi's policies and procedures for conducting criminal background and credit checks," Opp'n at 13, but instead reveal communications made in the ordinary course of business.  Defendants license software from Yardi which it uses to screen prospective tenants, including running credit and background checks, and to track current residents.  Several entries on Defendants' revised privilege log suggest the withheld emails were no more than routine business communications.  For instance, Defendants withheld an August 22, 2016 email from Patrick Hennessey, a Yardi employee, to Mark Jones, the Chief Financial Officer of Defendant A.J. Dwoskin, claiming that the email contained "information in connection with seeking legal advice" and/or "contact undertaken as investigation as a result of

16

Reed Smith's direction." Ex. 5 at entry with Control No. DOCID00569569.  On the same date, a

Regional Property Manager sent an email to Residential Property Managers █████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████ Ex. 12 (WAPLES00001425).  The

coincidental timing implies the withheld emails contain information regarding Defendants' use,

or lack thereof, of the Yardi software system for lease renewals.

Similarly, Defendants withheld communications with Yardi that resulted in Yardi

creating certain reports about tenants at Defendants' Mobile Home Parks, followed by strict

enforcement of lease provisions.  Defendants' revised privilege log lists a withheld email from

Jones to Kevin Ortega, Yardi employee, that Defendants claim is protected work product.  Ex. 5

at entry with Control No. DOCID00660922-926.  Defendants produced subsequent

communications ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Ex. 13 (WAPLES00002417).  The report was

followed ████████████████████████████████████████████

*See id*.  Defendants also withheld several communications that took place with Yardi employees

in June 2016.  *See, e.g.,* Ex. 5 at DOCID00660653-660654.  Subsequently, Defendants

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ *See* Ex. 14 (WAPLES00001272).[10]  Again, the fact that the communications and

produced reports coincided with a flurry of requests for additional documents from tenants



_____

[10]     *See also id.* at WAPLES00001280, 1277, 1283, 1286, 1287, 1291, 1292, 1293.  (Letters
sent to non-Plaintiffs tenants on, the bulk of which fall between July and early September 2016).

suggests Plaintiffs have been deprived of critical, discoverable information regarding

Defendants' practices for enforcing the policy.  Enforcement of the policy at Defendants' various

properties involves Defendants' business decision and goes to the heart of Plaintiffs' claims that

Defendants discriminated against them based on race and national origin under the Fair Housing

Act and on the basis of citizenship and alienage under Section 1981.  Complaint ¶¶ 113, 134.

### C.     Any Work Product That May Have Existed Was Waived by Disclosure to Third Party Yardi

The Magistrate Judge's Order disregarded the crucial fact that Yardi was not just any

third party, but a material witness and self-declared neutral third party in this case, which

abrogated any reasonable expectation that such communications would remain confidential.  The

"reasonableness of the disclosing party's expectation of confidentiality [i]s the touchstone for

determining whether work product privilege was waived."  *E.I. Du Pont de Nemours & Co. v.*

*Kolon Indus., Inc.*, No. CIV.A. 3:09CV58, 2010 WL 1489966, at *5 (E.D. Va. Apr. 13, 2010);

*see also In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981) (holding that a party or its attorney

waives work product privilege "when disclosure occurs in circumstances in which the attorney

cannot reasonably expect to limit the future use of the otherwise privileged

material.").  Defendants did not have a reasonable expectation of confidentiality regarding their

emails with third-party Yardi because Defendants and Yardi possess an arm's-length business

relationship and nothing more.  Defendants have never asserted otherwise.  Yardi has also

represented to Plaintiffs that it is a neutral party with respect to this litigation—and specifically

that it has no "dog in this fight."  *See* Ex. 15 (Margeson Declaration).

The Magistrate Judge wrongly adopted Defendants' claim that their communications with

Yardi were protected by work product doctrine and implicitly accepted Defendants' unsupported

contention that Defendants had a reasonable expectation of confidentiality on the mere

assumption that the communications were made at the direction of counsel and made after service of the Complaint.  Opp'n at 12; *see* Order at 1.  The Order fails to consider, however, that Yardi was also in communication with *Plaintiffs* after service of the complaint pursuant to *Plaintiffs'* investigation of this case.  Yardi even copied Defendants on emails that it exchanged with Plaintiffs regarding its declaration for this case.  Ex. 16 (November 13, 2016 email from B. Bustany to W. Margeson and M. Dingman).  Defendants could not reasonably expect that email conversations with Yardi would be kept confidential.  Thus, even if a privilege existed in the first instance, Defendants waived that privilege over their emails with Yardi.

The Order incorrectly accepted Defendants' contention that Defendants and Yardi are "allies" in this litigation, glossing over the intricacies of Defendants' relationship with Yardi, and in the process misconstrues the common interest exception to work product waiver.  The "common interest" doctrine only protects work product shared with a third party when that third party's legal interest coincides with the party sharing the information.  *C.f. Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 346 (E.D. Va. 2015).  This exception does not apply here.  As the Fourth Circuit has explained, "common interest" privilege covers such relationships as civil co-defendants, companies that had been individually summoned before a grand jury who shared information before any indictment was returned, potential co-parties to prospective litigation, plaintiffs who were pursuing separate actions in different states, and civil defendants who were sued in separate actions."  *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129,* 902 F.2d 244, 249 (4th Cir. 1990) (internal citations omitted).  Defendants do not claim—nor can they claim—any such connection with Yardi.  Thus, common interest doctrine— an exception to the general rule that work product privilege is waived when disclosed to a third

party—does not apply.  *See In re Outsidewall Tire Litig.,* No. 1:09CV1217, 2010 WL 2696643, at *2 (E.D. Va. July 6, 2010).

Instead, Defendants impermissibly attempt to expand the common interest exception, arguing that it also covers work product disclosures to third parties that are "allies" to the disclosing party.  Opp'n at 10.  But Defendants misconstrues precedent.  If accepted, their interpretation would permit the common interest doctrine to swallow the third-party waiver rule.  Further, Yardi is not Defendants' ally in this litigation in any sense of the word.  As stated previously, Yardi has been in communication with both Plaintiffs and Defendants, and has given both sides ample information relating to its operations in the context of the underlying facts.  *See, e.g.,* Ex. 16.  This nullifies Defendants' reliance on the cases cited in their brief.  *See E.I. DuPont de Nemours & Co. v. Colon Indus., Inc.*, No. 3:09cv58, 2010 WL 1489966, at *8 (E.D. Va. Apr. 13, 2010) (explicitly stating that one of the factors it considered was a reasonable expectation of confidentiality, which cannot exist where a third-party includes opposing counsel on emails regarding the case); *FEC v. Christian Coalition.* 178 F.R.D. 61, 76 (E.D. Va. 1998) ("[T]he mere showing of voluntary disclosure to a third party . . . shall not suffice *in itself* for waiver of work product privilege." (emphasis added)).  The lack of a reasonable expectation of confidentiality in communications between Defendants and Yardi is precisely the sort of additional consideration that places those communications outside the ambit of such decisions. Thus, Defendants waived work product protection, and the Magistrate Judge's order holding otherwise is contrary to law.

## CONCLUSION

For the reasons stated, the Court should set aside the Magistrate Judge's order and order Defendants to produce the documents subject to Plaintiffs' motion to compel immediately, and grant leave for Plaintiffs to reopen any depositions of Defendants after receiving the outstanding documents for the purpose of questioning Defendants' witnesses on such documents.

DATED this 23rd day of November, 2016  Respectfully submitted,


*/s/ Paul Brinkman*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Paul Brinkman, VSB # 35950
Jeanhee Hong (*pro hac vice*)
Ariel Wade Trajtenberg (*pro hac vice*)
Diego Durán de la Vega (*pro hac vice*)
Jongwook Kim (*pro hac vice*)
William A. Margeson (*pro hac vice*)

777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001
Phone: (202) 538-8000
Fax: (202) 538-8100
paulbrinkman@quinnemanuel.com
jeanheehong@quinnemanuel.com
arieltrajtenberg@quinnemanuel.com
diegoduran@quinnemanuel.com
wookiekim@quinnemanuel.com
billmargeson@quinnemanuel.com

LEGAL AID JUSTICE CENTER
Simon Sandoval-Moshenberg, VSB #77110
Rebecca Wolozin, VSB #89690

6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454
simon@justice4all.org
becky@justice4all.org

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of November, 2016, I filed the foregoing Objection

electronically with the Clerk of the Court using the ECF system, and caused to be served by

electronic mail a copy of the foregoing document upon the following parties:

Michael S. Dingman, VSB #30031
Justin deBettencourt, VSB # 83806
REED SMITH LLP
7900 Tysons One Place, Suite 500
McLean, Virginia 22102
Phone: (703) 641-4200
Fax: (703) 641-4340
mdingman@reedsmith.com
jdbettencourt@reedsmith.com

*Counsel for Defendants*

/s/ Paul Brinkman
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Paul Brinkman, VSB # 35950

777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001-3706
Phone: (202) 538-8000
Fax: (202) 538-8100
paulbrinkman@quinnemanuel.com

*Counsel for Plaintiffs*