# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, | |
| Plaintiff, | |
| v. | Civil No.:  1:16cv563-TSE-TCB |
| WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE'S ORDER DENYING PLAINTIFFS' MOTION TO COMPEL

US_ACTIVE-129488273

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

STANDARD OF REVIEW .....................................................................................................3

BACKGROUND .....................................................................................................................4

ARGUMENT ...........................................................................................................................6

I.   WORK PRODUCT DOCTRINE PROTECTS THE YARDI
     COMMUNICATIONS .................................................................................................6

      A.   Plaintiffs Mischaracterize the Magistrate Judge's Order..........................6

      B.   Defendants Emailed With Yardi At Counsel's Direction To Investigate
          Plaintiffs' Allegations ..............................................................................6

      C.   The Communications Between Defendants and Yardi Listed on
          Defendants' Privilege Log Were Not Made in the Ordinary Course of
          Business ....................................................................................................7

      D.   The Work Product Immunity Was Not Waived .......................................8

      E.   Plaintiffs Do Not Have Any Need for the Emails....................................11

II.  THE LIMITED REDACTIONS SHOULD NOT BE PRODUCED ...............................13

      A.   Plaintiffs Mischaracterize the Magistrate Judge's Order..........................13

      B.   Plaintiffs Did Not Argue That the Redacted Information Was Relevant or
          Discoverable in Their Original Motion.....................................................13

      C.   Defendants Did Not Wrongfully Redact Discoverable Information .....................15

      D.   Redactions Based on Responsiveness Do Not Violate the Federal Rules.............17

      E.   Plaintiffs' Proposed Rule Would Have Far-reaching Consequences for the
          Eastern District of Virginia and for Discovery in this Case ....................20

CONCLUSION.......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
    2009 WL 511866 (S.D. Ill. Feb. 27, 2009) .......................................................... 19

*Beauchem v. Rockford Prod. Corp.*,
    2002 WL 1870050 (N.D. Ill. Aug. 13, 2002) ....................................................... 18

*Bradley v. Cooper Tire & Rubber Co.*,
    2007 WL 4624613 (S.D. Miss. Aug. 3, 2007)................................................... 18, 20

*Bruce v. Hartford*,
    21 F. Supp. 3d 590 (E.D. Va. 2014) ...................................................................... 3

*Byard v. Verizon W. Va, Inc.*,
    2013 WL 30068 (N.D.W. Va. Jan. 2, 2013) ......................................................... 17

*Claytor v. Computer Assocs. Int'l, Inc.*,
    211 F.R.D. 665 (D. Kan. 2003)............................................................................ 14

*Cognate BioServices, Inc. v. Smith*,
    2015 WL 1256499 (D. Md. Mar. 17, 2015)........................................................... 19

*Dahl v. Aerospace Employees' Ret. Plan of the Aerospace Corp.*,
    2015 WL 6604799 ............................................................................................. 14

*Diak v. Dwyer, Costello & Knox, P.C.*,
    33 F.3d 809 (7th Cir. 1994) ............................................................................... 18

*In re Doe*,
    662 F.2d 1073 (4th Cir. 1981) ........................................................................... 8, 9

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    847 F. Supp. 2d 843 (E.D. Va. 2012) .................................................................. 14

*E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*,
    269 F.R.D. 600 (E.D. Va. 2010)............................................................................ 7

*F.E.C. v. The Christian Coalition*,
    178 F.R.D. 61 (E.D. Va. 1998) ................................................................... 9, 10, 11

*FireClean, LLC v. Tuohy*,
    2016 WL 3952093 (E.D. Va. July 21, 2016)........................................................... 3

*Flintkote Co. v. Gen. Acc. Assur. Co. of Canada,*
    2009 WL 1457974 (N.D. Cal. 2009) ................................................................18, 19

*Food Lion, Inc. v. Capital Cities/ABC, Inc.,*
    1996 WL 575946 (M.D.N.C. Sept. 6, 1996)...........................................................18

*Giganti v. Gen-X Strategies, Inc.,*
    222 F.R.D. 299 (E.D. Va. 2004) ............................................................................14

*Harman v. Levin,*
    772 F.2d 1150 (4th Cir. 1985) .................................................................................3

*Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship,*
    784 F. Supp. 1223 (E.D. Va. 1991) ........................................................3, 4, 14, 15

*Johnson v. Predator Trucking, LLC,*
    2014 WL 509291 (M.D. Pa. Feb. 10, 2014) ..........................................................18

*Laufman v. Oakley Bldg. & Loan Co.,*
    72 F.R.D. 1116 (S.D. Ohio 1976)..........................................................................16

*MI Windows & Doors, Inc. Prod. Liab. Litig.,* 2013 WL 268206 (D.S.C. Jan. 24,
    2013) ......................................................................................................................19

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.,*
    967 F.2d 980 (4th Cir. 1992) .................................................................................12

*Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,*
    840 F.2d 985 (1st Cir. 1988)..............................................................................4, 15

*RBS Citizens, N.A. v. Husain,*
    291 F.R.D. 209 (N.D. Ill. 2013)............................................................................18

*Rickman v. Deere & Co.,*
    154 F.R.D. 137 (E.D. Va. 1993) ...........................................................................10

*Schiller v. City of N.Y.,*
    2006 WL 3592547 (S.D.N.Y. Dec. 7, 2006) ........................................................18

*Spano v. Boeing Co.,*
    2008 WL 1774460 (S.D. Ill. Apr. 16, 2008)..........................................................18

*U. S. v. Performance Food Grp., Inc.,*
    2016 WL 1028019 (D. Md. Mar. 15, 2016)...........................................................18

*U. S. v. U. S. Gypsum Co.,*
    333 U.S. 364 (1948)................................................................................................3

*Wellin v. Wellin,*
    2014 WL 3496514 (D.S.C. July 14, 2014) ............................................................... 19

**Statutes**

28 U.S.C. § 636(b)(1)(A) ............................................................................................................. 3

**Rules**

Fed. R. Civ. P. 26(b)(3) ............................................................................................................... 7

Fed. R. Civ. P. 26(b)(3)(ii) ........................................................................................................ 11

Fed. R. Civ. P. 72(a) .................................................................................................................... 3

**Other Authorities**

12 Charles Alan Wright, *et al., Federal Practice and Procedure* § 3069 (2d ed.
    1997) .......................................................................................................................... 3

Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A. J. Dwoskin & Associates, Inc. (collectively "Defendants"), by counsel, respectfully submit their Opposition to Plaintiffs' Objection to Magistrate Judge's Order Denying Plaintiffs' Motion to Compel ("Objection").

## INTRODUCTION

Plaintiffs' Motion to Compel sought two categories of documents: 1) correspondence with Plaintiffs' background check company, Yardi, that was undertaken as part of Defendants' investigation of this case; and 2) documents in which non-discoverable information was redacted. Plaintiffs' Motion to Compel fundamentally missed the point on both categories because Plaintiffs failed to comply with the meet and confer process by filing a motion that ignored the discussions between counsel concerning the issues and that, therefore, was focused on irrelevant issues.  For example, Plaintiffs did not assert in their moving papers that Defendants should produce the redacted material because it might be relevant – even though Defendants' counsel told them this was the basis for the redactions.  Instead, Plaintiffs premised their Motion to Compel on the redacted documents by attacking privilege arguments not made. Having failed to properly raise the actual issues before the Magistrate Judge, Plaintiffs now ask the Court to find that the Magistrate Judge's decision was clearly wrong.

Defendants filed an opposition in which Defendants argued, *inter alia*, that 1) the correspondence with Yardi was undertaken as part of Defendants' investigation into the allegations of Plaintiffs' Complaint and as such was work-product; and 2) the redacted material was redacted on relevance grounds. Defendants also pointed out in their opposition, as they did in the meet and confer, that certain documents were not redacted.  However, Plaintiffs ignored that representation and continued to move to compel on these documents on the basis that Plaintiffs "cannot rely on Defendants' representation[,]" Reply at 12-13 n.6.

On November 17, 2016, the Magistrate Judge entered an Order denying Plaintiffs' Motion to Compel. Nov. 17, 2016 Order ("Order") (Dkt. 92).  As to the communications with Yardi, the Magistrate Judge concluded that "[u]pon review of the pleadings and the privilege log, the Court finds that the defendants have set forth a prima facie claim of work-product privilege." Order at 1.  As to the redacted information, the Magistrate Judge concluded that "[a]s to documents that were partially redacted as irrelevant to the discovery requests, they need not be listed on the privilege log…Irrelevant information contained within an otherwise relevant document is like any other irrelevant material that need not be produced.  Absent specific need, personal information and identities would certainly be irrelevant." Order at 2.

The Magistrate Judge's Order was not clearly erroneous or contrary to law, but is in fact completely consistent with settled law and practices.  Plaintiffs seek a blanket rule that whenever communications reach a third-party during a counsel-directed investigation, they must be produced by the *opposing party*.  Not only is this not the law, but such a rule would have the practical effect of completely undermining the work-product doctrine.  Further, Plaintiffs seek a blanket rule, despite not raising this argument in their moving papers before the Magistrate Judge, that information cannot be redacted on the basis of discoverability.  In other words, Plaintiffs ask the Court to rule that non-discoverable information is somehow made discoverable if it is part of a document that contains at least some discoverable information.  Such a rule is contrary to the discovery rules set forth in the Federal Rules of Civil Procedure and would have a profound effect on cases in the Eastern District of Virginia, such as patent cases, where a party would have to produce sensitive and non-discoverable information.  Plaintiffs' request to set aside the Magistrate Judge's Order should be denied.

## STANDARD OF REVIEW

As a non-dispositive matter, the review of a magistrate's discovery order is properly governed by the "clearly erroneous or contrary to law" standard of review. *See Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship*, 784 F. Supp. 1223, 1228 (E.D. Va. 1991); *FireClean, LLC v. Tuohy*, 2016 WL 3952093, at \*9 (E.D. Va. July 21, 2016). Only if a magistrate judge's decision is "clearly erroneous or contrary to law" may a district court judge modify or set aside any portion of the decision. Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A). A court's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *U. S. v. U. S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also Harman v. Levin*, 772 F.2d 1150, 1152 (4th Cir. 1985); *FireClean*, 2016 WL 3952093, at \*9 (finding no basis for setting aside magistrate's denial of discovery under "clearly erroneous or [] contrary to law" standard); The leading treatise on federal practice and procedure describes altering a magistrate's non-dispositive orders as "extremely difficult to justify." 12 Charles Alan Wright, *et al., Federal Practice and Procedure* § 3069 (2d ed. 1997); *accord Bruce v. Hartford*, 21 F. Supp. 3d 590, 593, 597-99 (E.D. Va. 2014) (overruling objections).

"Review of a Magistrate's ruling before the District Court does not permit consideration of issues not raised before the Magistrate." *Jesselson*, 784 F. Supp. at 1228. "[T]he purpose of the Magistrates Act is to allow magistrates to assume some of the burden imposed on the district courts and to relieve courts of unnecessary work. Allowing Plaintiffs to present their case to the Magistrate, and then, because they were unsuccessful, present new issues and arguments to this Court frustrates this purpose. The Magistrates Act was not intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district

court." *Id.* at 1228-29 (internal citations and quotation marks omitted); *see also Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988).

## BACKGROUND

On August 18, 2016, the Court entered a Stipulated Protective Order (Dkt. 45). In relevant Part, the Stipulated Protective Order stated "*No discoverable information* may be withheld from discovery on the ground that the material to be disclosed requires protection greater than that afforded by this Order unless the party claiming a need for greater protection moves for an order providing such special protection by no later than the date on which its response to such discovery is due." (Dkt. 45) (emphasis added). Of course, the Stipulated Protective Order did not state that irrelevant information must be produced.

On September 19 and October 13, 19, 21, 2016, Defendants produced responsive documents to Plaintiffs. On October 21, 2016, Defendants produced a privilege log to Plaintiffs regarding documents withheld under a claim of privilege from Defendants' October 13, 19, and 21 productions. Ex. 1. On November 4, 2016, two weeks after receiving Defendants' privilege log, Plaintiffs raised certain issues regarding Defendants' privilege log. Ex. 2. Notably, in this correspondence, Plaintiffs complained about documents redacted by Defendants but failed to *identify a single document* that they contended was objectionable. Defendants responded to Plaintiffs by explaining their position on certain issues (Ex. 3) and updating their privilege log out of an abundance of caution (Ex. 4). In responding to Plaintiffs, Defendants asked Plaintiffs to identify the documents that Plaintiffs asserted contained objectionable redactions. Ex. 3. The day Plaintiffs filed their Motion, and approximately two and a half hours before the meet and confer, Plaintiffs finally identified the documents they contended were improperly redacted. Ex. 5.

During the meet and confer, Defendants' counsel told Plaintiffs' counsel that the redactions were made on the basis of non-discoverability and asked Plaintiffs' counsel to explain why they contended that the redacted information was discoverable. Plaintiffs' counsel only stated that the redacted information was part of documents that had otherwise been produced. ***Plaintiffs' counsel provided no other basis for their contention*** and appeared to argue that any redaction based on relevance or discoverability is improper. Furthermore, Defendants' counsel explained that at least three of the documents that Plaintiffs identified as having redactions only appeared that way and the documents contained no redactions. Approximately two hours after the meet and confer and despite Defendants' assertion that they would review the fifty-five redacted documents (out of 657 documents produced) Plaintiffs finally identified the day they filed the Motion, Plaintiffs filed their Motion to Compel. Tellingly, in Plaintiffs' rushed Motion, Plaintiffs still sought to remove non-existent redactions from documents which Defendants' counsel previously explained contained no redactions and made privilege, not discoverability arguments to the Magistrate Judge.

Plaintiffs' Motion to Compel spent two and a half pages asserting that a claim of attorney-client privilege was waived with regards to the Yardi communications ***even though Defendants had withdrawn that claim in the meet and confer process***. Motion to Compel at 8-10. Furthermore, the ***entire*** basis in Plaintiffs' Motion to Compel for their request to compel the production of redacted documents was the fact that any claim of privilege was waived as to the redacted documents. *Id.* at 12-16. Even though Defendants' counsel told Plaintiffs' counsel at the meet and confer that these redactions were made on relevance grounds, Plaintiffs did not put forth ***a single factual argument*** as to why these redactions were relevant in Plaintiffs' moving papers. *Id.* Defendants raised this precise issue in their Opposition to Plaintiffs' Motion to

Compel. Opp. at 3, 5 ("Finally, Plaintiffs do not argue that these redactions contain relevant information, and Plaintiffs provide no basis for the Court to determine that these redactions contain relevant information."); ("Notably, Plaintiffs have not put forth any facts or argument as to why the remaining redacted information is relevant.")  Even in Plaintiffs' Reply, Plaintiffs only argued that the redacted material was relevant and discoverable by referring to a redaction that Defendants made on the basis of privilege. *See* Reply at 16 (citing Reply, Ex. 14).

**ARGUMENT**

I.   **WORK PRODUCT DOCTRINE PROTECTS THE YARDI COMMUNICATIONS**

A.   **Plaintiffs Mischaracterize the Magistrate Judge's Order**

Plaintiffs argue that the Magistrate Judge's Order was contrary to law because it concluded that the work product doctrine protects from discovery "investigatory directions and information" directed to any third party for documents "created near to or after the filing of the complaint in this case." Obj.at 13.  This is a mischaracterization of the Magistrate Judge's Order. The Order concluded that "[u]pon review of the pleadings *and the privilege log*, the Court finds that the defendants have set forth a prima facie claim of work-product privilege." Order at 1 (emphasis added).  The Order does not make the blanket statement, as Plaintiffs incorrectly argue, that the work product doctrine covers documents directed to "*any* third party" if the documents are created near to or after the filing of the complaint".  The Magistrate Judge's ruling was appropriately limited to the documents at issue and was correct.

B.   **Defendants Emailed With Yardi At Counsel's Direction To Investigate Plaintiffs' Allegations**

In their Complaint, Plaintiffs make allegations regarding Defendants' background check policies, the processes necessary for a background check, and how background check companies use information to run background checks. Compl. ¶¶ 29, 42, 43, 34 – 36.  In addition, Plaintiffs

propounded Interrogatories to Defendants, requesting, among other things, that Defendants

"[d]escribe the process by which you conduct criminal background and/or credit checks,

including the third party products and services you have considered, have used, or currently use,

including Yardi Systems, Inc.'s products or services, and the reasons for using or not using

each." Int. 12, Plaintiffs' First Set of Interrogatories to All Defendants.

  At the direction of and under the instruction of their counsel, and as part of their

investigation for defending this case, Mark Jones, the Chief Financial Officer for A.J. Dwoskin

& Associates, Inc., emailed Yardi regarding its criminal background and credit check processes

to confirm the details of those processes. Thus, because the emails were prepared in connection

with this litigation and at the direction of counsel, they fit squarely within the definition of work

product. *See* Fed. R. Civ. P. 26(b)(3) ("documents... prepared in anticipation of litigation or for

trial by or for another party or its representative"); *E.I. Dupont de Nemours & Co. v. Kolon

Indus., Inc.*, 269 F.R.D. 600, 604 (E.D. Va. 2010) (the work product doctrine protects documents

"prepared by an attorney, or at the direction of an attorney, in anticipation of litigation").

### C. The Communications Between Defendants and Yardi Listed on Defendants' Privilege Log Were Not Made in the Ordinary Course of Business

  Plaintiffs argue that the work-product doctrine does not cover communications between

Defendants and Yardi listed on Defendants' privilege log because Defendants and Yardi have an

ongoing business relationship. Obj. at 16-18. This argument is nonsense.[1] First, Plaintiffs

argument assumes that the descriptions listed on Defendants' privilege log are false. Second, in

support of Plaintiffs' argument, Plaintiffs argue that there is "coincidental" timing between the

withheld emails listed on Defendants' log and other communications between Defendants and

---

[1] Plaintiffs' argument containing speculation about "coincidental" timing was not included in Plaintiffs' underlying Motion to Compel or Reply in support ("Reply"). (Dkts. 84, 86.) Having not been raised with the Magistrate Judge, this argument should not be considered.

Yardi. This is speculation run wild. *Id.* at 16-18. Of course, Defendants and Yardi have an ongoing business relationship and would continue to exchange reports and emails during that the course of that relationship. Plaintiffs' argument otherwise is a baseless conspiracy theory implicating counsel for Defendants. *Id.* at 17. Moreover, Plaintiffs' argument obviously fails because undersigned counsel appears on at least two of the entries. *See* DOCID 00657329, 657871-872 (Ex. 4 at 8). Clearly, outside litigation counsel would not be participating in routine business communications. One entry on the privilege log notes that Defendants are forwarding an Order entered by the Court. *See* DOCID 568794-795 (Ex. 4 at 6). Yet, Plaintiffs assert that this communication is a routine business communication. Moreover, as the Magistrate Judge noted in the Order, "the vast majority of [the communications] were created near to or after the filing of the complaint in this case." Order at 1. The Complaint was filed on May 23, 2016. (Dkt. 1). The communications at issue span from early June 2016 through mid-September 2016. Contrary to Plaintiffs' speculation, it is understandable that Defendants, at counsel's direction, would communicate with Yardi regarding Plaintiffs' allegations after the Complaint was filed.

## D.   The Work Product Immunity Was Not Waived

Plaintiffs argue that Defendants waived work product immunity by sending emails providing information to or requesting information from Yardi employees. Obj. at 18. However, the immunity was not waived because Yardi is not adverse to Defendants, and Defendants had a reasonable expectation that their communications with Yardi would not be disseminated.

Plaintiffs argue that "a party or its attorneys waives work product privilege 'when disclosure occurs in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise privileged material.'" Obj. at 11 (quoting *In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981)). However, a fuller excerpt from that case makes clear that there is no waiver where the interests of the third party are not adverse to the party seeking work product

protection.  662 F.2d at 1081 ("However, when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with *interests adverse* to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection.") (emphasis added).

In *F.E.C. v. The Christian Coalition*, Judge Miller explained the basis behind the work-product doctrine:

> Work product protection, on the other hand, exists to encourage an attorney to prepare effectively for litigation.  It would be consistent with the purpose of the work product protection to encourage sharing of the material with anyone who could help the attorney prepare for trial.  *It would completely stand the work product doctrine on its head to allow discovery of an attorney's work product simply because that attorney shared it with someone who was helping him prepare for litigation*:

178 F.R.D. 61, 76-77 (E.D. Va. 1998) (emphasis added).

Judge Miller approvingly cited the following rationale from the D.C. Circuit:

> [The work product protection] does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery of the opponent.  *The purpose of the work product doctrine is to protect information against opposing parties, rather than against all others outside a confidential relationship*, in order to encourage effective trial preparation.... We conclude, then, that while the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege.

*Id.* (emphasis added) (citation omitted).

Judge Miller recognized that work-product is not waived merely because documents are voluntarily disclosed to a third party.  Plaintiffs incorrectly argue otherwise. Obj. at 14 ("any claim of work product was waived when Defendants disclosed any purported work product to Yardi"). In *F.E.C. v. Christian Coalition*, the defendant, The Christian Coalition ("TCC"), raised a defense which implicated TCC's business with the Christian Broadcasting Network ("CBN"). 178 F.R.D. at 64. CBN was embroiled in an unrelated tax dispute with the IRS. *Id.*  To

assist in its defense of the IRS action, CBN hired the accounting firm of Coopers and Lybrand

("C&L") to investigate CBN's business. *Id.* The FEC sent a subpoena to C&L and CBN

intervened in the enforcement action and claimed, *inter alia*, work product protection. *Id.* At

issue was whether CBN waived work product protections by disclosing documents to Ralph

Reed, a third party separate from CBN and C&L. *Id.* at 76-77. Judge Miller concluded:

> It is obvious from the record... that Reed was not CBN's litigation adversary. On the
> contrary, Reed was cooperating with CBN by supplying CBN with information it needed
> to defend against the IRS audit. Therefore, consistent with the philosophy of the work
> product doctrine, this Court holds that any work product protection that attached to any
> document prepared by C & L in preparation for CBN's IRS audit was not waived when
> CBN subsequently shared the information in the document with Ralph Reed. *Id.*

Much like the situation before Judge Miller in *F.E.C. v. Christian Coalition*, here Plaintiffs argue

that Defendants cannot claim work-product protection to emails shared with Yardi. Obj. at 14-

15, 18-20. Plaintiffs argue that Yardi is an independent contractor rather than an agent of

Plaintiffs. Obj. at 15. This argument misses the point. "It is obvious from the record... that

[Yardi] was not [Defendants'] litigation adversary. On the contrary [Yardi] was cooperating

with [Defendants] by supplying [Defendants] with information [Defendants] needed to defend

against [Plaintiffs' lawsuit]." *See* 178 F.R.D. at 77. Much like the decision Judge Miller

reached, it was not contrary to law for the Magistrate Judge to conclude that the work-product

doctrine protects the Yardi emails and that the work-product doctrine was not waived.

Plaintiffs' reliance on *Rickman v. Deere & Co.* is misplaced. 154 F.R.D. 137, 138 (E.D.

Va. 1993). Obj. at 14-15. In *Rickman*, the plaintiff claimed work-product privilege over a copy of

a workmen's compensation carrier's investigatory report generated by the carrier. *Id.* at 138. The

Court held the plaintiff had no standing to claim the work product privilege over the workmen's

compensation carrier's investigatory report. *Id.* at 139. Here, Defendants are claiming the work-

product doctrine applies to emails between Defendants, and sometimes Defendants' counsel in

this case, and Yardi in order to investigate and respond to Plaintiffs' allegations.

Plaintiffs argue that Defendants did not have a reasonable expectation of confidentiality for their investigatory communications with Yardi because Yardi is an independent contractor and has no "dog in this fight". Obj. at 18. Plaintiffs' argument is not only contrary to the holding in *Christian Coalition* but would work to swallow the work-product doctrine whole. In *Christian Coalition*, the communications with Ralph Reed were protected even though Ralph Reed was a separate neutral party. *Id.* at 76-77. Importantly, Judge Miller concluded that there was a reasonable expectation of confidentiality because Ralph Reed was not CBN's "litigation adversary". *Id.* Here, Yardi is not Plaintiffs' adversary. Moreover, if any investigatory communication with a neutral third-party suggests there is no reasonable expectation of confidentiality, the work-product doctrine would cease to exist.

Additionally, Plaintiffs argue that the Magistrate Judge incorrectly accepted that Yardi and Defendants were allies. Obj. at 19-20. Yet, such a statement never appears in the Magistrate Judge's Order. After mischaracterizing the Order, Plaintiffs argue that Yardi is not an ally of Defendants, therefore *Christian Coalition* does not apply. *Id.* at 20. This attempt to distinguish *Christian Coalition* fails. *Christian Coalition* did not hold that Ralph Reed was an ally but rather held that the determining factor was that Ralph Reed was not adverse to CBN. As discussed above, *Christian Coalition* is directly on point with the facts here. In the present case, Defendants reasonably expected that their communications with Yardi, made at the direction of counsel, made after the service of the Complaint, and made specifically for the purpose of defending this lawsuit, would be protected and would not be disseminated further than to Yardi.

### E.   Plaintiffs Do Not Have Any Need for the Emails

Under Fed. R. Civ. P. 26(b)(3)(ii), a party can obtain work product only if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue

hardship, obtain their substantial equivalent by other means." *See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984-5 (4th Cir. 1992) (the "substantial need" requirement is simply an "'anti-freeloader' rule designed to prohibit one adverse party from riding to the court on the enterprise of the other...").[2]  Plaintiffs do not have a "substantial need" for the emails between Defendants and Yardi.  Plaintiffs can obtain information about Yardi's procedures for conducting criminal background and credit checks for Defendants simply by deposing Yardi or subpoenaing documents from Yardi.[3]  In fact, Plaintiffs issued a subpoena to Yardi (Dkts. 36, 36-1), but Plaintiffs accepted a declaration from Yardi in lieu of documents. Reply at 10 ("Plaintiffs did subpoena documents from Yardi and agreed to accept a declaration containing statements Plaintiffs deemed sufficient substitutes for information sought by the subpoena."); Ex. 6 (Yardi Decl.).  Satisfied with the declaration from Yardi, Plaintiffs have not pursued a deposition of Yardi.  Uninterested in additional information from Yardi, Plaintiffs now insist that they have a substantial need to obtain email communications *from Defendants* that constitute Defendants' investigation of Plaintiffs' claims. This assertion is baseless.  What Plaintiffs want are documents that reveal the strategy, timing and thought processes of Defendants' counsel about the investigation and defense of this case. The Magistrate Judge correctly recognized Plaintiffs' baseless position in the Order stating: "It does not appear that there is any reason why plaintiff cannot obtain the information on the same subject matters by other means." Order at 1.  Plaintiffs do not object to this correct ruling and are bound by it.

---

[2] Plaintiffs do not argue that they have a substantial need for the emails at issue, and Plaintiffs do not incorporate their underlying Motion or Reply by reference.  Nonetheless, out of an abundance of caution, Defendants will address the issue of substantial need.

[3] For the reasons discussed above, those documents would not include email communications with Defendants regarding Defendants' investigation of Plaintiffs' allegations after Plaintiffs served their Complaint.

## II.     THE LIMITED REDACTIONS SHOULD NOT BE PRODUCED

### A.     Plaintiffs Mischaracterize the Magistrate Judge's Order

Plaintiffs mischaracterize the Magistrate Judge's Order.  Plaintiffs argue that the starting

point for the Order is clearly erroneous because the Magistrate Judge "relied on the predicate that

Defendants had made redactions *only* for 'personal information and identities.'" Obj. at 8 (citing

Order at 2) ("The Magistrate Judge's misunderstanding of *the essential nature* of Defendants'

redaction…") (emphasis added).  These arguments are a clear mischaracterization of the Order.

The Order was not based on the predicate that personal information and identities are the only

items redacted.  Indeed, the Order correctly noted that redactions based on discoverability are

permissible, and stated as an example, that personal information or identities would not be

discoverable information absent specific need:

> As to documents that were partially redacted as irrelevant to the discovery requests, they
> need not be listed on the privilege log.  The purpose of a privilege log is to list documents
> that would be discoverable, but for a claim of privilege, and impart enough information
> for a party to test that claim of privilege.  Irrelevant information contained within an
> otherwise relevant document is like any other irrelevant material that need not be
> produced.  Absent specific need, personal information and identities would certainly be
> irrelevant.

Order at 2.  Plaintiffs have cherry-picked this sentence at the end of the paragraph cited above to

suggest that the entire Order was based on this sentence *as a predicate*.  Redactions were made

based on whether information was relevant and discoverable and the Order correctly noted that

irrelevant, non-discoverable information may be redacted.

### B.     Plaintiffs Did Not Argue That the Redacted Information Was Relevant or Discoverable in Their Original Motion

Plaintiffs' original Motion to Compel did not argue that the redactions covered relevant

material despite Defendants' assertion that the redactions were made on these grounds during the

meet and confer.  *See* Motion to Compel at 12-16.  Thus, Plaintiffs waived this argument by

- 13 -

including it for the first time in their Reply. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843, 852 n.9  (E.D. Va. 2012); *Dahl v. Aerospace Employees' Ret. Plan of the Aerospace Corp.*, 2015 WL 6604799, at *6 n.3 (E.D. Va. Oct. 29, 2015; *see Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 307–08 (E.D. Va. 2004) ("At the threshold, this objection must be denied because it was not  argued before the magistrate judge and cannot be raised for the first time as part of plaintiffs' Rule 72 motion.") (citing *Claytor v. Computer Assocs. Int'l, Inc.*, 211 F.R.D. 665, 667 (D. Kan. 2003) (refusing to consider objections not raised before the magistrate judge on the ground that clearly erroneous review does not permit a party to obtain a " 'second shot' based on new arguments")). "Allowing Plaintiffs to present their case to the Magistrate, and then, because they were unsuccessful, present new issues and arguments to this Court frustrates this purpose.  The Magistrates Act was not intended to 'give  litigants an opportunity to run one version of their case past the magistrate, then another past the district court.'" *Jesselson*, 784 F. Supp. at 1228–29.

Instead of arguing that the redactions contained relevant information, Plaintiffs made two arguments in their original Motion: 1) "Defendants waived privilege for redacted documents not identified on the privilege log[,]" Motion to Compel at 13-14; and 2) "Defendants waived privilege by redacting selective information in violation of the Protective Order." *Id.* at 14-16. Plaintiffs' arguments in their Motion were inapposite.  In the meet and confer, Defendants told Plaintiffs that the redactions were made on relevance grounds; yet, Plaintiffs filed a Motion that argued that Defendants "waived privilege" as to these redactions.  It was not until Plaintiffs' Reply, that Plaintiffs dropped their waiver argument entirely and argued that these redactions contained relevant information based on one document ***listed on Defendants' privilege log under a claim of privilege.*** Notwithstanding this Court's review of issues of law, Plaintiffs

"ha[d] a duty to put its best foot forward before the magistrate: to spell out its arguments squarely and distinctly[,]" which Plaintiffs did not do. *Paterson-Leitch Co.*, 840 F.2d at 990.[4]

## C.    Defendants Did Not Wrongfully Redact Discoverable Information

Defendants did not wrongfully redact discoverable information as Plaintiffs' claim. In Plaintiffs' Reply, Plaintiffs only argued that Defendants redacted discoverable information by referring to WAPLES 1435. Reply at 16, Obj. Ex. 7. WAPLES 1435 is and has been listed on Defendants' privilege log under a claim of privilege. *See* Ex. 1 at 2, Ex. 4 at 3. As a result, Plaintiffs' argument is inapposite. *See* Obj. at 9. Plaintiffs referred the Magistrate Judge to no other examples of redactions. *See* Reply at 12-16. Now, Plaintiffs want an impermissible 'second shot' at their Motion. *Jesselson*, 784 F. Supp. at 1228–29.

For the first time, Plaintiffs point to a spreadsheet of outstanding renewals, Obj. at 9, and a Yardi report, Obj. at 10, as examples that Defendants redacted relevant information. The outstanding renewal spreadsheet redacts information related to renewals at Defendants' other properties. *See* Obj., Ex. 9. This information is completely irrelevant to the allegations in Plaintiffs' Complaint which center on allegations of disparate treatment/intentional discrimination against the individual Plaintiffs in the Waples Mobile Home Park. Moreover, months prior, Plaintiffs asked for discovery on Defendants' other properties that are not subject to this suit. On October 12, 2016, Defendants objected to the discovery requests regarding Defendants' other properties as, *inter alia*, seeking irrelevant, non-discoverable information. Ex. 7 & 8 (Obj. to Int. No. 4 and RFP 56). Defendants stood on these objections, and Plaintiffs never moved to compel or to challenge those objections. Defendants maintain that such information is not relevant or discoverable and Plaintiffs acquiesced by failing to move to

---

[4] Indeed, after Plaintiffs presented these inapposite arguments in their Motion, Defendants stated in their Opposition that "[i]mportantly, Plaintiffs have presented no basis for the Court to determine that these redactions contain relevant information." Opposition at 16.

compel for months.  Now, at the close of discovery, and almost two month after Defendants'

served their objections, Plaintiffs attempt an raise this issue for the first time. Such a discovery

tactic is improper.

Plaintiffs argue that "Defendants' selective enforcement of the policy" permits Plaintiffs'

discovery on Defendants' other properties and Plaintiffs cite one out of circuit case for that

proposition. Obj. at 9 (citing *Laufman v. Oakley Bldg. & Loan Co.*, 72 F.R.D. 1116, 120 (S.D.

Ohio 1976).  Plaintiffs have not made any claims in the Complaint about the selective

enforcement of Defendants' policies at other properties. *See* Compl.  Instead, Plaintiffs alleged

that they were disparately impacted at Waples Mobile Home Park by Defendants' facially

neutral policy. *See* Compl. ¶¶ 55-63.  Indeed, at the hearing on Defendants' Motion to Dismiss,

the Court keyed in on Plaintiffs' failure to allege the racial demographic of the Park.  In

*Laufman*, there were decidedly different allegations at issue.  72 F.R.D. at 119.  There, the

plaintiffs alleged that the defendants refused to lend money for the purchase of houses in racially

integrated neighborhoods. *Id.*  Plaintiffs did not make such broad allegations and are not entitled

to go on a fishing expedition through all of Defendants' properties after failing to address

Defendants' objections and improperly raising this issue in their Objection.

Plaintiffs also refer to Exhibit 10 as an example of relevant information that has been

redacted. Obj. at 10 (citing WAPLES 1335).  Plaintiffs asked for information related to all of the

tenant files in the Park. *See* Ex. 9, 10 (Obj. to Int. 4, RFP 42, 49-50).  Defendants contended that

this request was too broad. *See id.*  As a compromise, Defendants offered to provide Plaintiffs

with a list of tenants at the Park. *See* Ex. 11 (Sept. 12, 2016 Email from M. Dingman).

Defendants created Ex. 10, even though they have no obligation to create documents, in order to

provide Plaintiffs with such a list of residents.  Plaintiffs now have that list.  They are not entitled

to header information that shows when the list was created for Plaintiffs, nor the future move-out

dates for third-party tenants, nor a column listing the current status of third-party tenants.

Defendants do not identify any other documents in their Objection. Nonetheless, if the

Court is inclined, Defendants can provide the redacted documents for an *in camera* inspection so

that the Court can review the redacted material for discoverability.  However, such a step is

unnecessary as the Magistrate Judge's Order is not clearly erroneous or contrary to law and

Plaintiffs were required to raise these issues with the Magistrate Judge.

### D.     Redactions Based on Responsiveness Do Not Violate the Federal Rules

Plaintiffs assert that the Magistrate Judge made a decision contrary to law in permitting

redactions, but Plaintiffs cannot cite ***any*** Fourth Circuit case or a single case from this district

supporting their position. *See* Obj. at 11.  Contrary to Plaintiffs' assertions, redactions based on

responsiveness are not in violation of the Federal Rules.  Plaintiffs argue that "all" of the district

courts in the Fourth Circuit that have addressed this issue have decided that redactions are not

permitted.  This is incorrect.  This very district has permitted parties to redact portions of a

document based on relevance.  *See* Dec. 11, 2015 Order (Dkt. 195), No. 1:15cv439, CMH/MSN,

*Atlantis Consultants Ltd Corp. v. Terradyne Armored Vehicles, Inc.* ("Plaintiff may redact

sensitive and ***irrelevant portions*** of the passport...") (Ex. 12); *see* Feb. 23, 2011 Order (Dkt.

212), Mot. for Prot. Order (Dkt. 198) and Mem. Supp. Mot. (Dkt. 199), No. 1:08cv1244,

TSE/TRJ, *U.S. ex rels. Davis, et al., v. Blackwater Lodge and Training Ctr, Inc., et al.* (granting

motion for protective order regarding irrelevant content which had been redacted) (Ex. 13).

Indeed, other district courts in the Fourth Circuit have concluded that redaction of irrelevant or

non-responsive information is permitted.  *Byard v. Verizon W. Va, Inc.*, 2013 WL 30068, at *15

(N.D.W. Va. Jan. 2, 2013) ("Upon review of the green shaded redactions (denoting redacted as

not relevant) in # 8758, # 8792, and # 8776 the undersigned finds: 1) that redaction of

information that is not relevant *is an appropriate method of responding to a request for production of records...*") (emphasis added); *U. S. v. Performance Food Grp., Inc.*, 2016 WL 1028019, at *2 (D. Md. Mar. 15, 2016) (endorsing redactions made on non-responsiveness); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 1996 WL 575946, at *6 (M.D.N.C. Sept. 6, 1996) (denying motion to compel "material previously redacted [by Plaintiffs] as irrelevant").

Plaintiffs claim that they are not "aware" of any jurisdiction that permits such redactions. Obj. at 13. Plaintiffs missed the following jurisdictions: *E.g.*, *Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, 2009 WL 1457974 (N.D. Cal. 2009) (ordering that "defendants may redact information that is not relevant to this litigation"); *Schiller v. City of N.Y.*, 2006 WL 3592547, at *7 (S.D.N.Y. Dec. 7, 2006) ("The redacted information, by contrast, is not relevant to any claim or defense in this litigation.") (denying motion to compel unredacted meeting minutes); *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 813 (7th Cir. 1994) (upholding district court's denial of request for discovery regarding redacted tax returns); *Bradley v. Cooper Tire & Rubber Co.*, 2007 WL 4624613, at *9 (S.D. Miss. Aug. 3, 2007) (noting that redactions based on discoverability are a "routine practice in civil litigation"); *Spano v. Boeing Co.*, 2008 WL 1774460, at *2 (S.D. Ill. Apr. 16, 2008) (noting "[t]here are limits to discovery" and denying motion to compel redactions because the "information is not relevant to the issues in this case and not reasonably calculated to lead to the discovery of admissible evidence."); *Beauchem v. Rockford Prod. Corp.*, 2002 WL 1870050, at *2 (N.D. Ill. Aug. 13, 2002) (permitting redactions of portions of documents as appropriate under Rule 26); *see Johnson v. Predator Trucking, LLC*, 2014 WL 509291, at *4 (M.D. Pa. Feb. 10, 2014) (permitting withholding of "any portion of the claims file that the court has ruled is non-discoverable."); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209 (N.D. Ill. 2013) ("Withholding and redacting documents that are non-responsive to

Defendants' document requests is appropriate."); *Abbott v. Lockheed Martin Corp.*, 2009 WL 511866, at *3 (S.D. Ill. Feb. 27, 2009) (redaction of information "not relevant to the issues in this case and not reasonably calculated to lead to the discovery of admissible evidence" is proper).

The cases Plaintiffs cite to within the Fourth Circuit are distinguishable. Obj.at 11.  In *Wellin v. Wellin*, the redacting party provided no explanation for their redactions.  2014 WL 3496514, at *4 (D.S.C. July 14, 2014).  In the *MI Windows & Doors, Inc. Prod. Liab. Litig.*, the redactions covered 8,000 pages and the court found after *in camera* review that redacted material was discoverable. 2013 WL 268206, at *2 (D.S.C. Jan. 24, 2013); *see Cognate BioServices, Inc. v. Smith*, , 2015 WL 1256499, at *5 (D. Md. Mar. 17, 2015) (noting that in a trade secrets case, the redacted discovery material was relevant, rather, the issue was whether relevant trade secrets would be sufficiently protected by protective order).

Likewise, Plaintiffs' attempt to distinguish *Carrizosa v. Stassinos* fails. Obj.at 13. Plaintiffs claim the redactions in that case were driven only by concerns over the defendant's right to privacy not relevance. *Id.*  Clearly, the court in *Carrizosa* permitted redactions due to privacy rights or because information was "not responsive".  2009 WL 1457974, at *4 ("Stassinos may redact any information in which he claims a right of privacy *or that is otherwise not responsive to these requests*…") (emphasis added).

Courts, including the Eastern District of Virginia and district courts in the Fourth Circuit, have permitted redactions based on relevance or responsiveness. *See supra.* Plaintiffs have not cited to *any* controlling authority or even any persuasive authority in this District suggesting that the Magistrate Judge's Order was contrary to law and that Plaintiffs are entitled to non-discoverable information because it is in a document with some discoverable information.

**E.      Plaintiffs' Proposed Rule Would Have Far-reaching Consequences for the Eastern District of Virginia and for Discovery in this Case**

Plaintiffs contend  that redactions are never permitted based on the discoverability of information. In effect, Plaintiffs argue for a new rule in this Court allowing the discovery of non-discoverable information if that information happens to be in an otherwise discoverable document.  Plaintiffs' proposed rule would overturn common practice in the Eastern District. *See supra*, Ex. 11, 12.  Such a rule would have a profound effect on sensitive cases in the Eastern District of Virginia, such as patent cases, where a party would have to produce sensitive and non-discoverable information, such as information related to other patents, solely because it is in the same document or attachment as discoverable information. Indeed, redaction regarding non-discoverable information "is a routine practice in civil litigation." *Bradley*, 2007 WL 4624613, at *9.  Plaintiffs' proposed rule would upend this routine civil litigation practice and force non-discoverable information to be produced *solely* because it is included in a file or document with discoverable information.  This would have broad and far-reaching consequences for litigants in the Eastern District of Virginia.  Likewise, Plaintiffs request that they be permitted to re-open "any depositions of Defendants" without specifying which depositions they seek to re-open. Plaintiffs seek unlimited latitude to reopen any depositions whatsoever at the close of discovery based on arguments that this Court has soundly rejected.  This Court should not countenance Plaintiffs' attempt to turn the discovery process into a quagmire.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request this Court to deny Plaintiffs' Objection and for such other relief as is just and proper.

Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT
LIMITED PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/

Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of December, 2016, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/ _____

Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*