**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ, <br><br> *Plaintiffs*, <br><br> vs. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC., <br><br> *Defendants*. | Civil Action No. 1:16cv00563-TSE-TCB |

**REPLY IN SUPPORT OF PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE'S**
**ORDER DENYING PLAINTIFFS' MOTION TO COMPEL**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I.    THE COURT SHOULD REJECT DEFENDANTS' ARGUMENTS
REGARDING UNILATERAL REDACTIONS MADE EXCLUSIVELY ON
THE BASIS OF "RELEVANCE" ...................................................................................3

    A.    Plaintiffs Did Not Mischaracterize the Magistrate Judge's Order ..........................3

    B.    Plaintiffs Did, In Fact, Argue that the Redactions Covered Relevant
Material .............................................................................................................3

    C.    Defendants' Redactions Cover Discoverable Information ......................................4

    D.    Defendants Cannot Distinguish Plaintiffs' Cited Case Law and Do Not
Cite Contrary Controlling Case Law ....................................................................7

    E.    Contrary to Defendants' Assertions, Plaintiffs' Discovery Position is
Narrow ............................................................................................................11

II.    THE COURT SHOULD REJECT DEFENDANTS' ARGUMENTS
REGARDING DEFENDANTS' PURPORTED WORK PRODUCT WITH
YARDI ...................................................................................................................12

    A.    Plaintiffs Did Not Mischaracterize the Magistrate Judge's Order ........................12

    B.    Defendants Apply an Incomplete Legal Test For Attorney Work Product ...........13

    C.    Defendants Confuse The Fourth Circuit's Legal Test For Determining
When Work Product Protection is Waived ...........................................................15

    D.    Defendants' Argument About "Substantial Need" Is A Red Herring .................16

CONCLUSION....................................................................................................................17

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Atlantis Consultants Ltd. v. Terradyne Armored Vehicles, Inc.*,
    No. 1:15-cv-439-CMH-MSN, Order, Dkt. No. 195 (E.D. Va. Dec. 11, 2015) .........................8

*Beverage Distributors, Inc. v. Miller Brewing Co.*,
    No. 2:08-CV-1112, 2010 WL 1727640 (S.D. Ohio Apr. 28, 2010) ....................................3, 10

*Byard v. Verizon West Virginia., Inc.*,
    No. 1:11CV132, 2013 WL 30068 (N.D.W. Va. Jan. 2, 2013)...................................................9

*Cognate BioServices, Inc. v. Smith, No. CIV. WDQ-13-1797*,
    2015 WL 1256499 (D. Md. Mar. 17, 2015)..............................................................................7

*David v. Alphin*,
    No. 07-11, 2010 WL 1404722 (W.D.N.C. Mar. 30, 2010)........................................................7

*Davis v. Blackwater Lodge & Training Ctr., Inc.*,
    No. 1:08cv1244 (TSE/TRJ), Order, Dkt. No. 212 (E.D. Va. Feb. 23, 2011) ...........................8

*Delaware Display Grp. LLC v. Lenovo Grp. Ltd., Lenovo Holding Co.*,
    No. CV 13-2108-RGA, 2016 WL 720977 (D. Del. Feb. 23, 2016) ..........................................6

*In re Doe*,
    662 F.2d 1073 (4th Cir. 1981) .........................................................................................15, 16

*E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    No. CIV.A. 3:09CV58, 2010 WL 1489966 (E.D. Va. Apr. 13, 2010) .......................13, 15, 16

*FEC v. Christian Coalition*,
    178 F.R.D. 61 (E.D. Va. 1998) ..............................................................................................16

*Flintkote Co. v. General Accident Assurance Company of Canada*,
    No. C 04-01827 MHP, 2009 WL 1457974 (N.D. Cal. May 26, 2009) ...................................10

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
    No. 6:92CV00592, 1996 WL 575946 (M.D.N.C. Sept. 6, 1996) .............................................9

*In re MI Windows & Doors, Inc. Prod. Liab. Litig.*,
    No. 2:12-MN-00001, 2013 WL 268206 (D.S.C. Jan. 24, 2013) .............................................7

*Rhodenizer v. City of Richmond Police Dep't*,
    No. CIV. 3:09CV306, 2009 WL 3334744 (E.D. Va. Oct. 14, 2009) .............................4, 13, 14

*Rickman v. Deere & Co.*,
    154 F.R.D. 137 (E.D. Va. 1993), *aff'd*, 36 F.3d 1093 (4th Cir. 1994)....................................13

*Smith v. Bayer Material Sci., LLC*,
    No. 5:12-CV-171, 2013 WL 3153467 (N.D.W. Va. June 19, 2013).........................................6

*United States v. Performance Food Grp., Inc.,*
    No. CV MJG-13-1712, 2016 WL 1028019 (D. Md. Mar. 15, 2016) .......................................9

*Wellin v. Wellin,*
    No. 2:13-CV-1831-DCN, 2014 WL 3496514 (D.S.C. July 14, 2014) ....................................7

*Wellin v. Wellin,*
    No. 2:13-CV-1831-DCN, 2015 WL 5781383 (D.S.C. Sept. 30, 2015)................................7, 8

## **Statutes and Rules**

Fed. R. Civ. P. 26(b)(3)(A) ................................................................................................13, 17

## INTRODUCTION

Defendants offer no legitimate reason why the Magistrate Judge's Order should not be set aside. Plaintiffs are entitled to unredacted and responsive documents, and respectfully request that the Court order Defendants to produce the at-issue documents promptly. Because Plaintiffs' Objection adequately addresses the legal issues in dispute, Plaintiffs use this Reply to address arguments and assertions made in Defendants' Opposition. Before doing so, Plaintiffs correct certain representations made by Defendants regarding the procedural history in this case.

Defendants repeatedly reference Plaintiffs' purported "rush to file" their Motion to Compel. *See* Opp'n Mot. Compel (Dkt. No. 85) at 5; Opp'n Obj. ("Opp'n") at 5. As the sequence of discovery shows, however, Plaintiffs had ample reason to use a Motion to Compel to resolve the parties' discovery issues. Put simply, Defendants have repeatedly withheld responsive documents, producing them only after Plaintiffs explicitly noted the deficiencies and otherwise threatened to involve the Court. *See, e.g.,* Ex. 1 (Oct. 20, 2016 email chain) at 5 ("Absent a sufficient response by 5 p.m. on Thursday, October 13, Plaintiffs intend to file a motion to compel regarding Defendants' deficient discovery responses . . . .").

On October 11, 2016, for example, Plaintiffs identified several major deficiencies in Defendants' productions. *Id.* at 4-6. Most notably, although several dozen of Plaintiffs' requests for production specifically sought "communications," Plaintiffs stated that Defendants had "produced exactly <u>one</u> email chain in the entirety of [their] two productions." *Id.* at 4 (emphasis in original). Defendants then served a production that included responsive emails.

On October 19, 2016, Plaintiffs noted several other lingering deficiencies in Defendants' production, and Defendants served another production purportedly addressing them. *Id.* at 2-4. To prevent Defendants from continuing to produce responsive documents in this piecemeal fashion, on October 20, 2016, Plaintiffs asked Defendants to "confirm whether you are done with

your productions." *Id.* at 1.  Defendants confirmed that they "[did] not anticipate any further

productions." *Id.*  Despite this representation—and only after numerous additional email

exchanges—Defendants made **five** subsequent productions, each containing highly relevant

documents.  For example, Defendants asserted both the attorney-client and work product

privileges over letters █████████████████████████████████████████

███████████████████████████████ *merely because an attorney "scanned"*

*these letters.  See* Ex. 2 (Defendants' November 10, 2016 Privilege Log) at 10; *see also* Ex. 3

(███████████); Ex. 4 (████████████████).  Defendants claimed to have withdrawn their

privilege claims over these documents "out of an abundance of caution," but these responsive

documents never could have been withheld on any basis in the first place.

     Given Defendants' piecemeal productions, Plaintiffs could not afford to wait until

December 2, the next available hearing date, and one week before the close of discovery.  In any

event, Plaintiffs did fulfill the Court's meet and confer requirement on November 11, 2016,

contrary to Defendants' assertions.  Opp'n at 4–5.  In the emails leading up to the meet and

confer, Defendants continued to maintain their assertions of attorney-client privilege over the

Yardi emails as reflected in their privilege log.  *See* Ex. 5 (Nov. 10, 2016 email from J.

deBettencourt to A. Trajtenberg).  During the meet and confer, Defendants for the first time

stated that they were not claiming attorney-client privilege over Yardi communications, despite

the fact that their purportedly revised privilege log did not reflect this change in position.  *See*

Ex. 2 (Defendants' November 10, 2016 Privilege Log).  Nor have Defendants circulated a

second revised log reflecting their new position.   Regarding the redacted documents, the parties

were plainly at an impasse during the meet and confer as Defendants continually maintained the

right to unilaterally redact documents on the *sole* basis of relevance.

## ARGUMENT

I.   **THE COURT SHOULD REJECT DEFENDANTS' ARGUMENTS REGARDING UNILATERAL REDACTIONS MADE EXCLUSIVELY ON THE BASIS OF "RELEVANCE"**

### A.   Plaintiffs Did Not Mischaracterize the Magistrate Judge's Order

Defendants state that Plaintiffs mischaracterize the Magistrate Judge's Order.  *See* Opp'n

13.  This is not so.  A full review of the paragraph in the Order relating to the redaction issue

shows that the Order assumed that Defendants' redactions were made because they contained

personal information or identities.  That the Order emphasizes that "personal information and

identities *would certainly* be irrelevant" demonstrates that the Magistrate Judge believed

Defendants had taken the position that the redacted information contained personal identifying

information of some kind.  Order at 2 (emphasis added).  Otherwise, this language—in an

already brief order—would have no relevance, and add no meaning, to the Order.  But

Defendants confirmed on numerous occasions that their redactions did not cover personal

identifying information.  The Order's starting point regarding the redaction issue was clearly

erroneous, and this is reason enough to set aside the Order.

### B.   Plaintiffs Did, In Fact, Argue that the Redactions Covered Relevant Material

Defendants expend much energy on the idea that Plaintiffs have never argued that

Defendants' redactions cover "relevant" material.  *See* Opp'n at 1, 13–15.  But as already

explained, *see* Obj. at 10 n.8, it is not Plaintiffs' burden to assert and prove the relevance of

matter that Plaintiffs cannot see as a result of improper redactions that Defendants have made in

the first instance.  *See Beverage Distributors, Inc. v. Miller Brewing Co.*, No. 2:08-CV-1112,

2010 WL 1727640, at *5–6 (S.D. Ohio Apr. 28, 2010) (granting motion to compel production of

"unredacted versions of the documents [defendants] previously produced in redacted form"

*without requiring plaintiffs to prove the relevance of each document* because, "[g]iven the extent

3

of the redactions made by defendants, it would be impossible to divide them into a few discrete categories about which relevancy arguments could conveniently and intelligently be made.  For the same reason, an *in camera* review of each redacted document and the corresponding unredacted original would be unnecessarily burdensome and time-consuming."); *see also Rhodenizer v. City of Richmond Police Dep't*, No. CIV. 3:09CV306, 2009 WL 3334744, at *1 (E.D. Va. Oct. 14, 2009) ("The burden is on the person objecting to the discovery—here, the Defendant—to demonstrate that such discovery should not be permitted.").

In any event, Plaintiffs have contended all along that the redactions encompass relevant matter.  *See, e.g.*, Mot. Compel at 15 (noting that "Defendants' production of the [redacted] documents in the first place acknowledge *their relevance* to the parties' claims or defenses" (emphasis added)); *id.* at 16 (noting that "Defendants redact information concerning Plaintiffs"); Reply Mot. Compel (Dkt. No. 86) at 4 ("Defendants appear to have redacted *unambiguously relevant material*." (emphasis added)); *id.* at 2 ("These documents are responsive and non-privileged, and should be produced.").

### C.    Defendants' Redactions Cover Discoverable Information

As an initial matter, Defendants again fault Plaintiffs for not setting forth explanations regarding each redaction made by Defendants, even though Plaintiffs do not bear this burden. *See supra*, Section I.B; Obj. at 10 n.8.  Defendants also state that Plaintiffs do not identify other redacted documents, but Plaintiffs provided a list of Bates numbers.  *See* Mot. Compel at 3 n.2; 12 n.5.  By providing further examples in their Objection, Plaintiffs were not seeking a "second shot," but instead sought to provide illustrative examples for the Court to render a just decision. Nevertheless, Plaintiffs will respond to the documents specifically noted by Defendants.

First, Defendants argue that information regarding outstanding renewals at Defendants' other properties is not discoverable.  Opp'n at 15.  This assertion is inapposite, primarily because

Defendants enforce the Policy at issue in this case across multiple properties.  The manner in which Defendants selectively implement and enforce the Policy at properties other than the Park is highly relevant to Plaintiffs' claims.  *See* Obj. at 9.  Defendants rely on relevance objections to Plaintiffs' discovery requests as a basis to redact *all* information regarding their other properties.[1] *See* Opp'n at 15.  But these relevance objections relate to one request for production and one interrogatory asking Defendants to "identify all residential properties that you own, manage, or otherwise control."  *See* Opp'n Ex. 7 & 8.  Defendants have not objected on relevance grounds to other discovery requests that would encompass the outstanding renewals and other redacted information.  *See, e.g.*, Ex. 6 (Plaintiffs' First Set of RFPs) at 10–11 (RFPs 11, 13–14).  Further, in practice, Defendants have continually referred to events occurring at their other properties as justifications for the very policies challenged by this lawsuit[2]; the Court should not permit Defendants to redact material relating to information that Defendants put at issue.

Another example of Defendants' redactions exceeding the scope of their relevance objections is an audit spreadsheet of their properties that Defendants conducted in 2014 and that includes several redactions.  *See* Ex. 7 (WAPLES00002636).  Defendants claim such redactions covered irrelevant information, even though Plaintiffs have noted that some redactions cover information relating to the *named plaintiffs* in this case.  *See id.* (cells T21 and T31 relate to

---

[1]   Defendants also do not redact information about other properties in several documents.

[2]   *See, e.g.,* Ex. 8 (Defendants' Responses to Plaintiffs' First Set of Interrogatories) at 11 (in response to interrogatory asking Defendants to "[d]escribe all reasons . . . that you require every occupant living at the Park to complete an application, register as an occupant, and meet the same requirements for residency as a leaseholder," stating: "*On other properties*, unidentified occupants in some instances were found to have criminal backgrounds, including felonies, drug trafficking, and sex offender registration and crimes of child molestation." (emphasis added)); Ex. 9 (Jones Dep.) at 44:6-46:13, 93:4-21 (██████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████ ).

Plaintiffs Jose Reyes and Herbert Saravia-Cruz).  In the same document, Defendants also redacted information related to non-plaintiff tenants at the Park.  But this information is not only relevant but essential to determining whether differential treatment has occurred.  *See Smith v. Bayer Material Sci., LLC*, No. 5:12-CV-171, 2013 WL 3153467, at *5 (N.D.W. Va. June 19, 2013) (granting motion to compel statistical information regarding treatment of people outside of the protected class because such information is "certainly relevant to meet his burden to establish a *prima facie* case of discrimination").  Defendants also redact two full columns that could provide relevant context showing differential treatment.  *See id.* (columns I and J).

These examples aside, Plaintiffs maintain the position they have asserted throughout their briefing: redacted information in an otherwise responsive document is inherently discoverable, absent special circumstances.  *See* Mot. Compel at 15; Reply Mot. Compel at 15–16.  Defendants cannot unilaterally redact responsive documents unless the redactions are pursuant to the existing Protective Order or other court order.  Because Defendants neither complied with the terms of the Protective Order in making their redactions, nor sought another order from this Court that would allow them to do so, their redactions are improper.  *See* Reply Mot. Compel at 14.

Even assuming there were some doubt about the discoverability of the redacted information, the Court should require Defendants to produce the documents in unredacted form.  After all, if the redacted information were truly irrelevant, then Defendants would not be objecting so strenuously.  *See Delaware Display Grp. LLC v. Lenovo Grp. Ltd., Lenovo Holding Co.*, No. CV 13-2108-RGA, 2016 WL 720977, at *6 (D. Del. Feb. 23, 2016) ("Since the producing party is ordinarily not harmed by producing irrelevant information . . . , redactions are unnecessary and, as this motion demonstrates, disruptive." (citation and internal quotation marks omitted)).  Indeed, the selective nature of Defendants' redactions not only deprive Plaintiffs of

relevant context, but also suggest Defendants may have something to hide.  *See Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2015 WL 5781383, at *5 (D.S.C. Sept. 30, 2015) ("Courts have recognized that relevance-based redactions are disfavored, because they breed suspicions, and they may deprive the reader of context." (citations and internal quotation marks omitted)).

### D.    Defendants Cannot Distinguish Plaintiffs' Cited Case Law and Do Not Cite Contrary Controlling Case Law

Defendants devote one paragraph to distinguishing only some of Plaintiffs' cited cases. Defendants contend *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2014 WL 3496514 (D.S.C. July 14, 2014), is inapplicable because "the redacting party provided no explanation for their redactions."  Opp'n at 19.  But the court viewed the redactions in that case as being made on the basis of irrelevance, which is why the court granted the motion to compel after stating that "[t]he redaction of *irrelevant information*, even when sparingly done, deprives defendants of context for the relevant information."  *Wellin*, 2014 WL 3496514, at *4 (emphasis added).  Defendants distinguish *In re MI Windows & Doors, Inc. Prod. Liab. Litig.*, No. 2:12-MN-00001, 2013 WL 268206 (D.S.C. Jan. 24, 2013), on the basis that the redactions there "covered 8,000 pages[,]" Opp'n at 19, but Plaintiffs do not understand how the number of redacted pages is a material fact.  Finally, Defendants address *Cognate BioServices, Inc. v. Smith*, No. CIV. WDQ-13-1797, 2015 WL 1256499 (D. Md. Mar. 17, 2015), using a parenthetical that does not make grammatical sense.  Opp'n at 19.  In any case, Defendants do not challenge the court's statement that "[T]he Federal Rules provide no procedural device for unilateral redaction by a party and it is a procedure that is not favored."  *Cognate*, 2015 WL 1256499, at *7 (citation omitted).

Defendants do not contest two other within-circuit opinions cited by Plaintiffs, both of which find that unilateral redactions in otherwise responsive documents on the sole basis of "irrelevance" are not permitted by the Federal Rules.  *See* Obj. At 11–12 (citing *David v. Alphin*,

No. 07-11, 2010 WL 1404722, at *7–8 (W.D.N.C. Mar. 30, 2010) ("[T]he court is troubled by wholesale unilateral red[a]ction of documents. . . . The court will, therefore, compel versions of all documents already produced in response to any request in unredacted form where such redactions were based on grounds that the material is non-responsive or irrelevant."), and *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2015 WL 5781383, at *5 (D.S.C. Sept. 30, 2015) (holding that redaction of purportedly irrelevant information was improper even though the redacting party moved for a protective order, and "[e]ven if the court determined that the specific information [the redacting party] wishes to redact was, itself, irrelevant")).

Defendants also cite cases from district courts within the Fourth Circuit that purportedly support their position. *See* Opp'n 17-18. In fact, none do.

The two Eastern District of Virginia orders Defendants cite are procedurally entirely different. Neither case involved a party that *preemptively* redacted information that it believed was irrelevant without first obtaining a court order. Instead, in *Atlantis Consultants Ltd. v. Terradyne Armored Vehicles, Inc.*, the court gave the plaintiff permission to redact "*sensitive* and irrelevant" portions of the passport at issue *after* the court held a hearing on the issue. Opp'n Ex. 12 (emphasis added). Likewise, in *Davis v. Blackwater Lodge & Training Ctr., Inc.*, the defendants affirmatively moved for a protective order regarding redacted information they did not believe needed to be disclosed, and otherwise explained to the court that the redactions covered "sensitive information relating to other contracts and customers" for which "their disclosure could harm defendants' employees and customers." Opp'n Ex. 13 at 2, 8–9. Here, Defendants have neither moved for a protective order, nor made any argument—whether during the meet and confer process or during briefing on Plaintiffs' motion to compel—about particularly sensitive information similar to that redacted in *Atlantis* or *Davis*.

Defendants reach to other district courts within the Fourth Circuit for support, citing three additional cases, *see* Opp'n at 17–18, but each is similarly inapplicable.  Defendants cite the first clause of the court's finding in *Byard v. Verizon West Virginia., Inc.*, but omit the rest of the sentence, which states that "the redactions within the documents at issue are relevant at the discovery level . . . ."  No. 1:11CV132, 2013 WL 30068, at *15 (N.D.W. Va. Jan. 2, 2013).  Further, the court ultimately held that defendants' redactions "on grounds of relevancy" were improper.  *See id.* at *17 ("[F]or the reasons hereinbefore set forth *Defendants' redaction of those portions of the power point on grounds of relevancy are overruled and denied* and Plaintiffs' motion to compel production of the documents herein identified as # 8758, # 8776, and # 8792 unredacted as to relevancy (shaded in green) is granted." (emphasis added)).

Defendants' citation of *United States v. Performance Food Group* is no different.  Defendants cite this case as "endorsing redactions made on non-responsiveness," Opp'n 18, but Defendants again omit the court's actual holding: "In regard to the specific redaction at issue noted above . . . the *Court finds that the material in question must be unredacted*.  While the Court does not find that the redaction was made in bad faith, it finds that the material is within the scope of the Document request."  *United States v. Performance Food Grp., Inc.*, No. CV MJG-13-1712, 2016 WL 1028019, at *2 (D. Md. Mar. 15, 2016) (emphasis added).[3]

Defendants' final case, *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, has no weight because the court denied the defendants' motion to compel with respect to the "material previously redacted" purely on procedural grounds.  No. 6:92CV00592, 1996 WL 575946, at *6 (M.D.N.C. Sept. 6, 1996) ("The record is clear that ABC knew or should have known of these

---

[3] The court also concluded by stating that "[t]he fact that the material in question may turn out – upon inquiry – to be irrelevant although responsive does not warrant redaction."  *Id.*

redactions for over a year but only at this late date brings its motion."). Thus, Defendants have presented *zero* cases within this District or other district courts within the Fourth Circuit that squarely address the issue at hand.

As a last attempt to support their redaction practice, Defendants turn to jurisdictions outside of the Fourth Circuit. *See* Opp'n at 18–19. Even if the Court were to consider these out-of-circuit cases, they are inapposite. For example, in the first case Defendants cite, *Flintkote Co. v. General Accident Assurance Company of Canada*, the court permitted redaction of irrelevant information on the ground that defendants had originally asserted that the documents at issue contained other "confidential business information." No. C 04-01827 MHP, 2009 WL 1457974, at *6 (N.D. Cal. May 26, 2009). In other words, the court did not endorse unilateral, preemptive redactions made by the party; rather, the court granted leave after the party showed cause to redact certain "other business information" that was "not relevant to this litigation." *Id.* at *7. Defendants here never made a similar assertion, and have never sought the court's leave.[4]

---

[4] Three other cases Defendants cite—*Schiller*, *Spano*, and *Beauchem*, *see* Opp'n at 18—are addressed by the court in *Beverage Distributors*. *See* 2010 WL 1727640, at *4; *see also* Obj. at 12 n.9. The court explained the "themes which pervade" the case law concerning unilateral redactions for relevance in the following way: "(1) that redaction of otherwise discoverable documents is the exception rather than the rule; (2) that ordinarily, the fact that the producing party is not harmed by producing irrelevant information or by producing sensitive information which is subject to a protective order restricting its dissemination and use renders redaction both unnecessary and potentially disruptive to the orderly resolution of the case; and (3) that the Court should not be burdened with an in camera inspection of redacted documents merely to confirm the relevance or irrelevance of redacted information, but only when necessary to protect privileged material whose production might waive the privilege." *Id.*

### E.     Contrary to Defendants' Assertions, Plaintiffs' Discovery Position is Narrow

Defendants' last section again puts words into Plaintiffs' mouths.[5]  Defendants assert that "in effect, Plaintiffs argue for a new rule . . . allowing the discovery of non-discoverable information if that information happens to be in an otherwise discoverable document."  Opp'n at 20.  Defendants then explain that a ruling in favor of Plaintiffs would "upend . . . routine civil litigation practice[,]" "overturn common practice[,]"[6] and "have a profound effect on sensitive cases in the Eastern District of Virginia."  Opp'n at 20.

As already stated, *see supra* Section I.D, Plaintiffs' position is not a "proposed rule," Opp'n at 20; it is what a majority of courts—including several district courts within the Fourth Circuit—hold.  Plaintiffs' position is not—and never has been—that a party can never make redactions in an otherwise responsive document.  Rather, Plaintiffs' position is a much narrower one: redactions cannot be made *exclusively* on the basis of purported "irrelevance," as decided unilaterally by the redacting party, absent special justification.  *See, e.g.*, Obj. at 11 ("[A]bsent special circumstances, unilateral redactions in otherwise responsive documents on the sole basis of 'irrelevance' are not permitted by the Federal Rules.").

Nor has it been Plaintiffs' position that Defendants cannot redact purportedly "sensitive" information, as Defendants' non sequitur "patent case[]" example highlights.  Had Defendants

---

[5]  Section E of Defendants' Opposition does not cite Plaintiffs' briefing on either the pending objection or the motion to compel because this section addresses a straw man.

[6]  Plaintiffs agree that redaction as a general matter is a "routine practice in civil litigation."  Opp'n at 20.  But the particular type of redaction practice employed by Defendants is decidedly not common practice either in this District or in federal courts generally.  *See supra* Section I.D.  In other words, the question is not simply whether courts permit redaction (of course they do).  Rather, the question is whether a party may preemptively and unilaterally make such redactions without (1) first adhering to the procedures established in existing court orders, such as the Protective Order entered in this case, or (2) otherwise seeking the court's approval.

presented a separate basis—*e.g.*, the redactions contained highly sensitive business information, or highly private personal identifying information—the redactions may have been permissible.[7] In short, there is a difference between saying "we redacted this because we think it is irrelevant" and "we redacted this because it not only is irrelevant but also contains highly sensitive information."  Defendants only said the former, and never asserted the latter.

## II.  THE COURT SHOULD REJECT DEFENDANTS' ARGUMENTS REGARDING DEFENDANTS' PURPORTED WORK PRODUCT WITH YARDI

### A.  Plaintiffs Did Not Mischaracterize the Magistrate Judge's Order

Defendants contend that Plaintiffs mischaracterize the Magistrate Judge's Order with respect to the work product issue.  *See* Opp'n at 6.  Again, this is not so.  The Magistrate Judge's Order held that Defendants had set forth a prima facie claim of work product privilege *in spite of* the fact that the purported work product was disclosed to a third party.  Order at 1.  In other words, the Order relied on a rule of law that work product protection is not waived when disclosed to a third party—*i.e.*, "though they may be directed to a third party[.]"  *Id.*  The Order's failure to consider that such third-party disclosure may have waived attorney work product protection is what Plaintiffs challenged as a misapplication of law.  *See, e.g.*, Obj. at 14 ("The Order . . . ignores the fact that even if such documents are work product . . . any [such] claim . . . was waived when Defendants disclosed any purported work product to Yardi.").

---

[7] In any event, the Protective Order already provides sufficient protection for sensitive information.  *See* Dkt. No. 45 at ¶ 1 ("The purpose of this Protective Order is to assure the confidentiality of certain information which may be disclosed during the course of discovery").  Further, to the extent Defendants needed more protection, Defendants could have sought such protection, either by moving for a protective order, or by moving for an order providing "special protection" under the Protective Order.  *See id.* at ¶ 11.  Defendants did neither.

**B.      Defendants Apply an Incomplete Legal Test For Attorney Work Product**

Defendants assert an incomplete test for what constitutes attorney work product.  *See*

Opp'n at 6–7.  In Defendants' view, it is *sufficient* that a communication is made "[a]t the

direction of and under the instruction of their counsel, and as part of their investigation for

defending the case" for that communication to constitute work product.  *Id.* at 7.  But that is only

one *necessary* condition.  Another necessary condition is that the communication be "prepared . .

. *by or for another party or its representative*."  Fed. R. Civ. P. 26(b)(3)(A) (emphasis added);

*see also Rickman v. Deere & Co.*, 154 F.R.D. 137, 138 (E.D. Va. 1993), *aff'd*, 36 F.3d 1093 (4th

Cir. 1994) ("The protection accorded by Rule 26(b)(3), however, applies only to documents

prepared by a 'party' or a party's 'representative.''").[8]  As explained, Defendants have done

nothing to challenge the evidence cited by Plaintiffs showing that Yardi is neither a "party," nor

Defendants' "representative" in this litigation.  *See* Obj. at 15 (noting that Defendants' contract

with Yardi ███████████████████████████████████████

████████████████████████████████).  Because Defendants have

not carried their burden to show this necessary condition, work product protection cannot apply.

*See E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, No. CIV.A. 3:09CV58, 2010 WL

1489966, at *3 (E.D. Va. Apr. 13, 2010) ("It is the burden of the party asserting work product

privilege to show that the privilege applies . . . .");  *Rhodenizer*, 2009 WL 3334744, at *1 ("The

burden is on the person objecting to the discovery—here, the Defendant—to demonstrate that

---

[8]      Defendants argue "Plaintiffs' reliance on *Rickman* . . . is misplaced."  Opp'n at 10–11.
Defendants point to immaterial factual differences about who was asserting work production
protection, but *do not* challenge the legal principle that *Rickman* recites and Plaintiffs rely on.

such discovery should not be permitted."). The Order was both clearly erroneous by ignoring this fact, and contrary to law by misapplying the law on attorney work product.

Furthermore, because it is Defendants' burden to show that the emails constitute attorney work product, it is also Defendants' burden to show that the emails do not contain routine business communications[9] that would be discoverable by Plaintiffs. *Rhodenizer,* 2009 WL 3334744, at *1. Defendants cite the fact that outside counsel appears on two[10] of the entries as evidence that the emails cannot be business communications. Opp'n at 8. This is insufficient grounds—at least without further review by the Court—to justify the withholding of an entire document for the purposes of work product privilege. Further, the notation in the privilege log corresponding to these two entries relates to "resident screening." *See* Ex. 2 at 8. Resident screening is a core aspect of Defendants' routine business relationship with Yardi. Simply carbon copying outside counsel on such an email, without more, does not transform a business communication into attorney work product.

Defendants also cite the Order's statement regarding the timeline of communications as support for their claim of work product. Opp'n at 8. Taking this statement literally would allow a party to cloak any routine business communication as protected work product, simply because the communication occurred around the time that the litigation was filed. Notably, Defendants' communications with Yardi coincide not only with the start of this litigation, but also with

████████████████████████████████████████████████████████

███████. Thus, there is reason to believe these emails are business communications related to

---

[9]   Plaintiffs incorporate by reference the arguments contained in Section II.B of their Objection. Obj. at 16–18.

[10]   Plaintiffs cite ten other documents from the privilege log over which Defendants improperly asserted work product privilege. Mot. Compel at 12.

████. This is even more likely because Defendants have otherwise produced only *two* emails with Yardi out of a total production of over 600 documents. Thus, Defendants' bare assertions of work product protection over emails with Yardi are insufficient to meet their burden of proof.

### C. Defendants Confuse The Fourth Circuit's Legal Test For Determining When Work Product Protection is Waived

Defendants also misstate the Fourth Circuit's test for determining when work product protection is waived. In Defendants' view, such waiver occurs *only* when "the interests of the third party are . . . adverse to the party seeking work product protection." Opp'n at 8-9. In support, Defendants purport to provide a "fuller excerpt" of the Fourth Circuit's decision in *In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981). But the next two sentences make clear (1) that disclosure to one with "interests adverse" is only one way of waiving work product protection, and (2) what the Fourth Circuit's operative test is for determining waiver of work product:

> *Additionally*, release of otherwise protected material without an intent to limit its future disposition might forfeit work product protection, regardless of the relationship between the attorney and the recipient of the material. *In other words*, to effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material.

*In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981) (emphases added). In short, Defendants again confuse sufficient with necessary conditions. That a party makes a disclosure to someone with "interests adverse" is *sufficient* to waive work product protection. But it is not *necessary*. If there were any doubt, the Court need only look to another opinion in the *E.I. Du Pont* case that Defendants have cited twice, which states:

> The central concern in determining whether disclosure to a nonparty . . . waives work product protection was summed up concisely by *In re Doe,* 662 F.2d 1073, 1081 (4th Cir. 1981): "to effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material." *Doe* thus established reasonableness of the disclosing party's expectation of confidentiality as the touchstone for determining whether work product privilege was waived.

15

*E.I. Du Pont*, 2010 WL 1489966, at *5.[11]  Plaintiffs cite this exact "touchstone," *see* Obj. at 18, and Defendants now try to explain that test away because it is highly unfavorable to them.

Indeed, Defendants had no reasonable expectation of confidentiality regarding any material shared with Yardi because, among other things: (1) Yardi is a self-declared neutral third party whose corporate representative has specifically stated that Yardi has no "dog in this fight"; (2) Yardi's contract with Defendants explicitly states ████████████████████████ ██████████████ ; and (3) Yardi copied Defendants on emails that it exchanged with Plaintiffs.  Thus, even granting that work product protection applied, such protection was waived by disclosure to Yardi, and the Order's contrary findings were clearly erroneous and contrary to law.  *See* Obj. at 18–20.

### D.      Defendants' Argument About "Substantial Need" Is A Red Herring

Defendants argue that Plaintiffs do not have a "substantial need" for the emails between Defendants and Yardi.  Opp'n  at 12.  As an initial matter, the information sought by Plaintiffs' Motion to Compel is distinct from what Defendants allege Plaintiffs seek.  Through written discovery, Plaintiffs did not seek merely "Yardi's *procedures* for conducting criminal background and credit checks," Opp'n at 12 (emphasis added), but also the *communications* between Defendants and Yardi regarding Defendants' screening process.[12]  Because Defendants

---

[11]    Plaintiffs have already explained why *FEC v. Christian Coalition*, 178 F.R.D. 61 (E.D. Va. 1998), is inapposite.  *See* Obj. at 20.  In any event, the Fourth Circuit's decision in *Doe* is binding.  Accordingly, to the extent *Christian Coalition* expresses a contrary rule of law, the Court should not consider it.

[12]    *See, e.g.*, Ex. 6 (Plaintiffs' First Set of RFPs) at RFPs 27 and 44 (seeking "communications related to your use of products or services provided by Yardi . . . to conduct background or credit checks—including specifically: (3) communications between you and Yardi regarding conducting background or credit checks; (4) and communications between you and Yardi regarding any Plaintiff").

███████████████████████████████████████,[13] and because Yardi's screening

service is the *central component* of Defendants' resident screening process, communications

between Defendants and Yardi directly relate to and reveal Defendants' knowledge and intent

regarding Defendants' enforcement of the Policy at the center of this case.  Such

communications contain more than just information regarding Yardi's policies and procedures

regarding criminal background and credit checks.  Obj. at 16.  Thus, Defendants' suggestion that

Plaintiffs could obtain this information "by deposing . . . or subpoenaing documents from Yardi"

is a red herring.  Opp'n at 12.  Plaintiffs have no other means to obtain this information

evidencing the motive behind Defendants' background check process, as implemented by Yardi.

To the extent Plaintiffs must show substantial need,[14] this is evident from what

Defendants have produced to date.  Despite Plaintiffs' RFPs seeking communications with

Yardi, Defendants have produced only *two* such communications.  In this way, Defendants'

substantial need argument is self-defeating and misleading: by failing to provide Plaintiffs with

emails between Defendants and Yardi in response to Plaintiffs' RFPs, they have deprived

Plaintiffs of critical evidence that is directly relevant to Defendants' discriminatory intent.

## CONCLUSION

For the reasons stated, the Court should set aside the Magistrate Judge's order and order

Defendants to produce the documents subject to Plaintiffs' motion to compel immediately, and

grant leave for Plaintiffs to reopen any depositions of Defendants after receiving the outstanding

documents for the purpose of questioning Defendants' witnesses on such documents.

---

[13]  *See* Ex. 10 (████████████████████) at 2 (███████████████
████████████████████████████████████████████████████████
████████████████████████████████████).

[14]  Because the communications do not constitute work product, Plaintiffs need not show
"substantial need" under Fed. R. Civ. P. 26(b)(3)(ii).  *See* Reply Mot. Compel at 10–12.

17

DATED this 8th day of December, 2016     Respectfully submitted,


/s/ Paul Brinkman
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Paul Brinkman, VSB # 35950
Jeanhee Hong (*pro hac vice*)
Ariel Wade Trajtenberg (*pro hac vice*)
Diego Durán de la Vega (*pro hac vice*)
Jongwook Kim (*pro hac vice*)
William A. Margeson (*pro hac vice*)

777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001
Phone: (202) 538-8000
Fax: (202) 538-8100
paulbrinkman@quinnemanuel.com
jeanheehong@quinnemanuel.com
arieltrajtenberg@quinnemanuel.com
diegoduran@quinnemanuel.com
wookiekim@quinnemanuel.com
billmargeson@quinnemanuel.com

LEGAL AID JUSTICE CENTER
Simon Sandoval-Moshenberg, VSB #77110
Rebecca Wolozin, VSB #89690

6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454
simon@justice4all.org
becky@justice4all.org

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of December, 2016, I filed the foregoing document

electronically with the Clerk of the Court using the ECF system, and caused to be served by

electronic mail a copy of the foregoing document upon the following parties:

Grayson P. Hanes, VSB # 06614
Michael S. Dingman, VSB # 30031
Justin deBettencourt, VSB # 83806
REED SMITH LLP
7900 Tysons One Place, Suite 500
McLean, Virginia 22102
Phone: (703) 641-4200
Fax: (703) 641-4340
ghanes@reedsmith.com
mdingman@reedsmith.com
jdbettencourt@reedsmith.com

*Counsel for Defendants*


/s/ Paul Brinkman
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Paul Brinkman, VSB # 35950

777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001-3706
Phone: (202) 538-8000
Fax: (202) 538-8100
paulbrinkman@quinnemanuel.com

*Counsel for Plaintiffs*