# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| vs. ) | Civil Action No.: 1:16-cv-563 |
| ) | |
| WAPLES MOBILE HOME PARK LIMITED ) | |
| PARTNERSHIP, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## DECLARATION OF IVAN YACUB, ESQ.

1. My name is Ivan Yacub. I am an immigration attorney and sole owner of Yacub Law Office in Woodbridge, Virginia. I have spent 19 years in the private practice of law representing noncitizens in Northern Virginia—mostly Latino noncitizen because I speak Spanish, but I have had clients from all over the world—in matters relating to their immigration status.

2. I have not been paid for my time in preparing this declaration. If I am to testify at a deposition or a trial in this matter, I charge my regular hourly rate of $350/hr. This is the regular hourly rate that I bill those clients who pay on an hourly basis.

3. In the past ten years, I have authored a comprehensive article on asylum law, which was presented at the annual American Immigration Lawyers' Association (AILA) conference in Vancouver, Canada. In addition, I have presented CLE courses at the AILA DC Chapter on issues ranging from criminal issues and the intersection with immigration law, to nuts and bolts practice in immigration court and defenses aliens may be able to present in immigration proceedings. Because of my expertise in immigration law, I have

been interviewed by Univision, the largest Spanish language Television station in the Washington, DC area. My associates and I have argued in the Fourth Circuit Court of Appeals on various occasions and are scheduled to argue an immigration issue the last week of January 2017. I have not testified as an expert witness in any case in the past four years.

## I. INDIVIDUAL TAXPAYER IDENTIFICATION NUMBER ("ITIN")

4. U.S. citizens use a social security number to file their taxes. Noncitizens need to apply for social security numbers. With extremely limited exceptions, a noncitizen must have work authorization from United States Citizenship and Immigration Services (USCIS) to obtain a social security number. There are two reasons why a noncitizen would be ineligible to apply for a social security number: either she or he lacks legal presence in the United States; or, she or he is legally present, but is present under a status or category that does not provide work authorization.

5. Social security numbers do not expire. Accordingly, if a noncitizen obtains a social security card at a time when they have legal status with work authorization, and then falls out of status or loses her or his work authorization, she or he will still have a social security number.

6. I am familiar with the Individual Taxpayer Identification Number, known by its acronym as ITIN. As an immigration attorney, I work with many clients who do not qualify to apply for a social security number and thus have to use alternate forms of government-issued identification. The ITIN is one such alternate form of identification.

7. An ITIN is a nine-digit, government-issued number that identifies an individual on her or his taxes in the absence of a social security number. The ITIN takes the same numeric

format as a social security number (i.e., 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), although instead of coming on a wallet-sized card like a social security number, it comes on an 8½ x 11-inch piece of paper, with photocopy-resistant security features. Individuals who need to file taxes, but do not have (or cannot get) a social security number are eligible to request an ITIN from the IRS.

8. To get an ITIN, an individual must fill out an application (form W-7) and attach a federal income tax return and either original or certified copies of identification documents. "Identification documents" can include a foreign passport, and in fact, a foreign passport is the only stand-alone document that the IRS accepts to prove both foreign status and identity. The IRS considers foreign passports to be sufficiently reliable proof of identity. In issuing an ITIN, the IRS does not accept a photocopy of a foreign passport; rather, it requires the applicant to either submit the actual passport, or bring the passport to a designated office for inspection. *See generally* https://www.irs.gov/pub/irs-pdf/fw7.pdf.

9. From my experience as an immigration attorney, I know that many other institutions aside from the IRS also accept foreign passports as proof of identity, including but not limited to banks, schools, and local police departments. Over the years I have had plenty of clients who used their ITINs to obtain credit accounts, including even mortgages.

## II. VISAS AND I-94 DOCUMENTS

10. In my capacity as an immigration attorney, I am also familiar with visas. Part of my practice is helping businesses and individuals petition for the right to enter the United States. This requires me to be well-versed in the different permissions aliens can get to enter the United States, and how to obtain these permissions.

11. There are generally two categories of visa: immigrant and non-immigrant. Generally, when people use the word "visa" colloquially, they are referring to non-immigrant visas.

12. *Nonimmigrant visas.* Nonimmigrant visas are generally described in 8 U.S.C. § 1101(a)(15). These are visas with limited durations, although many of them are renewable. Nonimmigrant visas take the form of a stamp or sticker in a passport, and are generally issued by the U.S. State Department or, in certain cases, USCIS. A nonimmigrant visa gives a foreign national the right to <u>seek entry</u> into the United States.[1] So, for example, a "B-2" tourist visa that is valid from January 1, 2005 to December 30, 2015 gives the visa-holder the right to present herself or himself at a port of entry (land border or airport) and seek admission into the United States during that time but no later.

13. The visa expiration date does not control how long the foreign national may <u>remain</u> in the United States, however. At the port of entry, U.S. Customs and Border Protection (CBP) issues the foreign national an I-94, which has an expiration date.[2] The I-94 used to be a square piece of cardboard-like paper which was stapled into the passport, with a stamp and an expiration date written thereupon. However, since April 2013, the I-94 process has moved online: no longer is a paper I-94 stapled into a passport, now an I-94 exists solely in the form of a record in a government database. Although a copy of it can be printed out from a government website, this copy is not the actual I-94, it is just a copy of one; the actual I-94 is the electronic record in the government database. An unexpired I-94, without more, is proof of lawful nonimmigrant status for all purposes under law.

---

[1] Such entry can always be denied by U.S. Customs and Border Protection if it finds the foreign national to be inadmissible.

[2] The expiration date can be a specific date certain, such as July 30, 2016; or it can be a "duration of status" or "D/S" that expires at some future as-of-yet-to-be-determined date, such as for example 60 days after a student finishes her or his course of study. *See generally* https://travel.state.gov/content/visas/en/general/visa-expiration-date.html.

14. The expiration date of the I-94 controls the length of the noncitizen's stay; while the I-94 remains valid, the noncitizen remains in legal nonimmigrant status. So, for example, if a noncitizen's tourist visa expires on December 30, 2015, and she enters the country on December 15, 2015 and is issued an I-94 with the expiration date of June 14, 2016, then she is in legal nonimmigrant status until midnight on June 14, 2016, notwithstanding the fact that her visa has expired. For this reason, a visa, whether valid or invalid, has no bearing on whether a noncitizen has legal status. At least for nonimmigrants, it is the I-94 which determines (and evidences) legal status.

15. Even a nonimmigrant with an expired I-94 can still have valid legal status, if she or he timely filed an application to extend, change, or renew her or his legal status. *See generally* https://www.uscis.gov/i-539. Accordingly, not all nonimmigrants with expired I-94s are in fact out of status. Some I-94s do not set forth the expiration date. For example, in the case of students, their I-94 will indicate D/S, which means duration of status. This means, that a student may remain lawfully in the United States while he/she continues to study. Whether a "D/S" I-94 is valid cannot be determined simply by looking at the I-94.

16. A nonimmigrant who entered the country legally and then allowed her or his legal status to lapse (i.e. overstayed) would be able to present an expired I-94, unless she or he lost it, in which case it would cost $330 to replace it, *see* https://www.uscis.gov/i-102. However, the nonimmigrant would not be able to present an unexpired I-94.

17. Some nonimmigrant statuses allow the noncitizen to work at any job; others allow the noncitizen to work at certain specific jobs or even one specific job only; and still others do not allow the noncitizen to work. Individuals in these latter categories would

generally not be eligible to obtain a social security number, and so would use an ITIN to file their taxes.

18. *Immigrant visas.* Unlike a nonimmigrant visa, an immigrant visa is available only to lawful permanent residents of the United States. An immigrant visa usually takes the form of a wallet-sized I-551 card, colloquially referred to as a "green card"; but it can also take the form of an I-551 stamp in a passport. An unexpired I-551 card or stamp, itself, is sufficient proof of lawful permanent resident status for all purposes under the law. Although an I-551 card or stamp may expire, that does not mean that the holder has lost her or his status as lawful permanent resident; it just means that the holder does not have valid proof of status as a lawful permanent resident. So, for example, a noncitizen with an I-551 that expires on July 15, 2016 continues to be a lawful permanent resident even after that date; she or he simply lacks valid proof of that status. Renewing an I-551 card costs $365, *see* https://www.uscis.gov/i-90.

19. A lawful permanent resident is not given an I-94 when she or he enters the United States. Her or his I-551 card is sufficient to enter the United States, and is sufficient proof of legal status in the United States. Accordingly, the lack of a valid I-94 does not indicate whether or not a lawful permanent resident is in status or out of status.

20. *Legal presence other than immigrant or nonimmigrant.* The two categories listed above, lawful permanent residents and nonimmigrants, do not exhaust the list of noncitizens who are lawfully present in the United States. There are many groups of noncitizens who are neither lawful permanent residents nor nonimmigrants, yet are nonetheless lawfully present in the United States. Some examples include: temporary protected status (TPS); deferred action, including but not limited to Deferred Action for Childhood Arrivals

(DACA); withholding of removal; pending I-485 application for adjustment of status; pending I-589 application for asylum. (Temporary protected status is extremely common in Northern Virginia due to our large population of long-time residents from El Salvador and Honduras.) Individuals in the above-listed categories are lawfully present in the United States, yet would not have a valid visa, valid I-94, or valid "green card." They prove their legal presence in the United States by means of various other documents, depending on the particular group, such as employment authorization documents or receipt notices from United States Citizenship and Immigration Services (USCIS).

21. Individuals in many of these categories are automatically eligible for work authorization (and thus can obtain a social security number); but others, like pending adjustment of status or pending asylum, are not eligible for work authorization (and thus cannot obtain a social security number) without also fulfilling certain other requirements, such as waiting a certain amount of time. Even if they are not eligible to work, though, they are still legally present in the United States.

22. An alien's immigration status is key to understanding his or her rights to remain in the United States. For example, an alien who is granted TPS may not be detained by the United States government on account of his or her immigration status. As such, an alien who has an outstanding order of removal or deportation and has TPS is permitted to reside freely in the United States without fear of arrest and deportation.

23. *Undocumented immigrants.* The phrase "undocumented immigrants" is a colloquial way of describing immigrants without legal presence in the United States. An undocumented immigrant may have entered the county illegally, in which case she or he would not have, nor be able to obtain, a visa or an I-94. Or, as described above, an undocumented

immigrant may have entered the country legally and then fallen out of status, in which case she or he would have (unless she or he previously lost it) a visa and an expired I-94.

### III. DEFENDANTS' POLICIES

24. I have reviewed various documents stating the policies of the defendants in this case: Bates nos. 749-750, 2320-2345, 2535-2559, 2602-2627.

25. The documents that defendants have at various times purported to require are not good evidence of legal presence. For example, as stated above, the validity of a visa (whether it is expired or unexpired) has no bearing on whether a person has legal presence in the United States. Likewise, as stated above, defendants' reliance on I-94s fails to take into account that there are a great number of categories of people with legal presence in the United States that do not have I-94s, whether valid or expired.

26. In my law practice, I have met countless individuals who entered the United States legally as nonimmigrants and then fell out of status, for example by overstaying past the expiration date on their I-94 or by engaging in activities prohibited under their nonimmigrant status. I have also met countless individuals who entered the United States illegally and then later found some means of obtaining lawful status or lawful presence. (Most TPS and DACA recipients fall in this category of people.) Both of these are extremely common. Whether someone did or did not enter the United States legally is in no way probative of whether she or he currently enjoys legal status.

27. In my law practice, I have met countless married couples who are "mixed-status," which is to say, one member of the couple has legal status or legal presence and the other does not. This is extremely common. The reason for this is that not all categories of legal presence give an individual the right to petition for a spouse to obtain the same legal

8

presence. (Again, TPS and DACA are examples of such categories.) Even many lawful permanent residents and U.S. citizens are unable to petition for their undocumented spouses because of the various requirements and bars in place under Title 8 of the U.S. Code.

28. In my law practice, I have met countless mixed-status married couples in Northern Virginia who are both on leases as lessees. I know this because in preparing spousal petitions, I have occasion to look at the leases of married couples who are my clients.

29. In my law practice, I have met countless undocumented people who are on leases as lessees. I know this because in preparing various types of applications for legal status (including but not limited to DACA), I have to help my clients prove their physical presence in the United States, and providing my clients' leases is one of the best ways to do this.

30. After reviewing defendant's policy, I can attest that a number of immigrants with lawful presence in the United States, such as TPS or a pending asylum application, will be excluded from housing even though the person resides in the United States lawfully.

I declare that the foregoing is true, under penalty of perjury of the laws of the United States.

_____         Date: derjurry 10/28/2016
Ivan Yacub, Esq.