# Exhibit 50

# MOBILE HOME LEASE AGREEMENT                Project: Waples Mobile Home Park

## LESSOR AND LESSEE

This Agreement made this 27th day of May, 2014, by and between A. J. DWOSKIN & ASSOCIATES, INC., AGENT for: Waples Mobile Home Park (Owner), hereinafter called Lessor, and Jose Reyes jointly and severally (if applicable) hereinafter called Lessee.

### WITNESSETH:

That in consideration of the representation made in the application filed by the Lessee with the Lessor, the rent herein reserved and the covenants herein contained and by the said Lessee to be performed, the Lessor hereby leases to the Lessee, premises in the State of Virginia known as Lot 02-11219 Mobile Drive, : Waples Mobile Home Park, Fairfax, Virginia ("Lot").

## TERM AND RENT

The term of this lease shall be for the period of 12 months, commencing on the 1st day of June, 2014 fully ending at midnight on the 31st day of May, 2015 hereinafter called the "Lease Term"), for the total rent of Eight Thousand Six Hundred and Forty Dollars ($8640.00), payable in equal monthly installments of Seven Hundred and Twenty Dollars ($720.00) at the manager's office located in the Mobile Home Park or such other place as the Lessor may designate in writing, each such monthly installment payable without demand or notice in advance on the first day of each month during the Lease Term.

It is further covenanted and agreed between the Lessor and Lessee as follows:

1. **LATE CHARGE.** If any installment of rent required by this Lease is not received by the Lessor by close of business on the 5th day of the month in which the rent payment is due, a late charge of $50.00 shall be paid to Lessor to compensate Lessor for the administrative expenses and other expenses associated with Lessee's failure to timely pay rent. Lessee agrees that this late charge shall be deemed to be additional rent and failure to pay the late charge may result in the issuance of a five (5) day notice for such nonpayment. In the event Lessee tenders to Lessor a check which is dishonored by the Lessee's bank for any reason, Lessee agrees to pay Lessor, in addition to the amount of the check, due a service charge of $50.00 representing Lessor's administrative expenses and service charges incurred as a result of Lessee's insufficient check. In addition, Lessor may thereafter require Lessee to make all future payments of rent and other charges due under the Lease by means of certified check, cashier's check or money order.

2. **SECURITY DEPOSIT.** The Lessee agrees to deposit with Lessor upon delivery of this lease, the sum of $439.00 security for the full and faithful performance by the Lessee of each and every term, provision, covenant and condition of this lease. In the event that the Lessee defaults in respect to any of the terms, provisions, covenants, and conditions of this lease, including but not limited to payment of rent, additional rent or other sums required hereunder (including but not limited to charges for utilities), the Lessor may use, apply or retain the whole or any part of the security so deposited for the payment thereof. The Lessee acknowledges that the security deposit is to be retained by the Lessor, and may be commingled with other funds of the Lessor, with interest being paid to the Lessee. The Lessor shall accrue interest on said security deposit in six (6) month increments at a per annum rate equal to the Federal Reserve Board discount rate as of January 1 of each year during the term of this Lease, or such other rate required by law; provided, however, that no interest shall be due and payable unless said security deposit has been held by the Lessor for a period exceeding thirteen (13) months after the date hereof.
In the event that the Lessee shall fully and faithfully comply with all of the terms, provisions, covenants, and conditions of this lease, the security deposit, or any balance thereof, plus accrued interest, if any, shall be returned to the Lessee within thirty (30) days after the expiration of this lease and after the removal of the Lessee's mobile home and surrender of the Lot to the Lessor in good condition.

3. **POSSESSION.** The Lessor shall not be liable for failure to deliver possession of the Lot at the time stipulated herein as the date of the commencement of the tenancy, nor, except as provided herein, shall such failure excuse the Lessee's obligation hereunder, unless the Lessor's failure to deliver possession is willful, in which event Section 55-248.22 of the 1950 *Code of Virginia*, as amended, shall govern. Except in the event of delay by the Lessee, the rent herein stipulated to be paid shall be abated for the period from the date of the commencement specified in this lease to the date possession is tendered to the Lessee.

4. **RULES AND REGULATIONS.** The Lessee shall comply with the rules and regulations governing the Mobile Home Park, a copy of said rules and regulations being attached hereto and made a part hereof, and shall comply with such other reasonable rules and regulations and any reasonable alterations or changes which the Lessor shall or may adopt for the Mobile Home Park.

5. **UNLAWFUL USE, DISTURBING NOISES, ETC.** The Lessee shall not engage in any unlawful or criminal activity, including but not limited to, drug-related criminal activity, nor permit any member of Lessee's household or any guest or other person under Lessee's control to do so, on or near the Lot or in the Mobile Home Park while the Lessee is a resident in the Mobile Home Park. "Drug-related criminal activity" shall mean the illegal manufacture, sale, distribution, or use of or possession with the intent to manufacture, sell, distribute or use a controlled substance.
The Lessee shall not make or permit to be made any disturbing noises or do or permit any act which will unreasonably interfere with the rights, comforts or conveniences of the other tenants.

6. **OCCUPANTS.** Only those tenants registered at the manager's office may live in the Mobile Home Park. This Lease Agreement shall not be sublet or assigned. The taking in of roomers or tenants by the Lessee is prohibited. Prior to selling the mobile home, Lessee shall give Lessor written notice of the name of the prospective purchaser (if the prospective purchaser intends to keep the mobile home on the Lot). Lessor shall not unreasonably restrict the sale of the mobile home (see 55-248.47); however, any

08/17/99

prospective purchaser who wishes to keep the mobile home on the Lot must submit an application, which application must be approved by Lessor prior to occupancy.

Upon twenty-four (24) hours written notice, which may be delivered to the mobile home, Tenant will permit Landlord to inspect the Premises (including all spaces inside the mobile home) for the purpose of determining the number of residents in the mobile home, and otherwise evaluating compliance with the terms of this Lease Agreement. Any failure by Tenant to provide access to the mobile home for this purpose when requested by Landlord shall constitute an immediate default under this Lease Agreement, granting Landlord to all remedies set forth in paragraph 11 of this Lease Agreement.

7. **LIABILITY OF LESSOR.** All personal property, including the mobile home, placed on the Lot or on any part of the Mobile Home Park shall be at the sole risk of the Lessee, and the Lessor shall in no event be liable for the loss, destruction, theft or removal of or damage to such property unless caused by Lessor's willful negligence.

The Lessee agrees to keep the Lot and the mobile home free of any conditions that might represent a hazard to others.
The Lessee also agrees to obtain an insurance policy including liability and property damage coverage with a combined single occurrence liability limit of not less than $25,000.

8. **UTILITIES.** Lessee will be responsible for payment for all utilities including those set forth in the Utility Addendum; for each utility for which Lessee is responsible for payment, Lessee will pay related deposits and any charges, fees, or services on such utilities. Lessee must not allow utilities to be disconnected – including disconnection for not paying your bills – until the lease term or renewal period ends. Utilities may be used only for normal household purposes and must not be wasted. If Lessee's electricity is ever interrupted, Lessee must use only battery-operated lighting. If any utilities are sub metered for the Premises, Lessee must pay such billings promptly. If the billing company requests Lessor pay Lessee's bills and Lessor, in its sole and absolute discretion, pays such bills, the amount of such bills will be added to Lessee's rent and such amounts will be treated as additional rent for all purposes, including seeking possession of the Lot for nonpayment.

The Lessee acknowledges that utility services are available to the Lot and that they are in good working order. Unless caused by Lessor's willful negligence, the Lessor shall not be liable for any damage, injury or loss whatsoever which might arise, or accrue, from his providing, failure to provide, or the failure of utilities. Further, the Lessee agrees to bear the cost of repairing any damage to the utility lines or connectors resulting from his misuse.

9. **HOLDING OVER.** Either Lessor or Lessee may terminate the Lease Agreement at the end of the Lease Term by giving the other party written notice of intent to terminate/vacate at least sixty (60) days prior to said termination date. Should the Lessee not give said notice and vacate the Leased Premises at the end of the Lease Term, Lessee shall be liable for the payment of rent for two (2) months thereafter. Should the Lessee not give said notice and continue in possession of the Leased Premises after the end of the Lease Term, the Lessee shall be deemed to be a tenant from month to month. In such event, all terms and conditions of this Lease shall continue in full force and effect, except rent, which Lessor may unilaterally adjust to the prevailing monthly fair rental value. It is also agreed that the tenancy can be terminated by either party by giving written notice to the other party at least thirty (30) days prior to the end of the month in which said party desires such termination. This thirty (30) day written notice can be given to the other party at any time without any reason for the notice being required.

10. **MILITARY TRANSFERS.** If Lessee is a member of the Armed Forces of the United States and Lessee receives permanent change of station orders or temporary duty orders (in excess of three [3] months duration) to depart thirty-five (35) miles or more (radius) from the location of the Lot or is discharged or relieved from active duty with the Armed Forces of the United States, or is ordered to report to government-supplied quarters, Lessee may terminate this Lease upon (a) giving written notice of termination to be effective on a date stated therein, said date to be not less than thirty (30) days after Lessor's receipt of such notice, (b) providing, together with such written notice of termination, a copy of the official orders, (c) paying all rent and miscellaneous charges through the effective date of the termination, and (d) paying Lessor the amount of (i) one (1) month's rent if the effective date of the termination is less than six (6) months after the beginning of the Lease Term or (ii) one-half (1/2) of one month's rent if such effective date is at least six (6) but less than twelve (12) months after the beginning of the Lease Term. This paragraph shall not be construed to relieve Lessee from any liability under this Lease except the liability for rent for the unexpired portion of the Lease Term.

11. **ACTION BY LESSOR UPON DEFAULT.** Should the Lessee at any time during the continuance of his occupancy of the Lot fail to pay the monthly rental or other sums required hereunder, including but not limited to charges for utilities, or should the Lessee violate any one of the agreements, terms, or conditions of this lease, or any of the rules or regulations of the Mobile Home Park two (2) times within a six (6) month period or should Lessee or any other person residing in the Lot be convicted of a drug-related crime during the Lease Term, then the Lessor shall have all rights and remedies of a landlord under applicable law, including but not limited

to the rights and remedies provided in VA. Code Ann. Section 55-248.31 and, in addition, the Lessor shall have the right to take possession of the Lot pursuant to a court order for possession, and to remove the mobile home from the Lot and relet the Lot. In the event that the Lessor moves the Lessee's mobile home from the Lot pursuant to this paragraph, the Lessee agrees to pay a reasonable removal and storage charge to the Lessor or the party removing and/or storing the mobile home.

12. **LIEN FOR RENT AND OTHER SUMS.** The Lessor shall have a lien upon all of the personal property, including the mobile home, of the Lessee moved in and located upon the Lot, as and for security for the rent and other sums, including but not limited to, charges for utilities, herein provided to be paid; and such installments of rent and other sums as shall remain unpaid to the amount and extent thereof shall become and are hereby made a specific lien upon such personal property as shall be upon the Lot, to all intents and purposes as though the Lessee had executed a chattel deed of trust to secure the Lessor for the rent or other sums reserved; and the Lessee shall not remove, or attempt to remove any of the aforesaid personal property while there yet shall remain due and owing any portion of the rent or other sums reserved by this lease; and should the Lessee attempt to remove such property, the Lessor is hereby empowered to distrain said property pursuant to Section 55-230 of the 1950 *Code of Virginia*, as amended, and to employ such other remedies as are authorized by law.

08/17/99

# UTILITY ADDENDUM

This Utility Addendum ("Addendum") shall become part of the Mobile Home Lease Agreement (the "Lease") dated the 1st day of June, 2014 by and between Jose Reyes ("Owner"), by its agent A.J. Dwoskin & Associates, Inc. (collectively "Lessor") and Jose Reyes (collectively in the singular "Lessee") of 11219 Mobile Drive Fairfax, VA 22030 ("Lot").

1. **Payment of Utilities and Billing Methods**: Lessee will be responsible for payment of all utilities, including those as set forth below:
   a. **Water/Sewer.**
      i. **Responsible Party**: Charges for this services for the Lot will be paid for by:
         ☐ Lessor; or
         ☒ Lessee, and payment shall be made directly to: ☒ Lessor   ☐ Third Party Utility Service Provider.
      ii. **Methodology**: If paid by Lessee, charges for this utility will based on <u>one</u> of the following methods
         ☐ A flat monthly rate of $_____ per month;
         ☐ Lessee's actual use; or
         ☒ Ratio utility billing system (RUBS) –
            1. **Occupant Factor**: In calculating Lesse's water/sewer bill, each Lot will be assigned an Occupant Factor based upon the total number of the occupants for the Lessee's Lot as follows:

            | Number of Occupants | Occupant Factor |
            |---|---|
            | 1 | 1.0 |
            | 2 | 1.6 |
            | 3 | 1.9 |
            | +1 | +0.3 |

            2. **Calculation**: Lessee's water and sewer bill will be calculated based upon the following methodology:
               - First, all applicable water and sewer charges and costs are totaled for the billing period ("Total Property Utility Cost").
               - Second, a common area deduction in the amount of 5% is applied to the Total Property Utility Cost ("Adjusted Bill"").
               - Third, the Occupant Factor for each Lot be totaled for the billing period ("Total Occupant Factor")
               - Fourth, the Adjusted Bill is divided by the Total Occupant Factor ("Amount per Occupant")
               - Fifth, the Amount per Occupant is multiplied by the Number of Occupants of for Lessee's Lot the product of which becomes Lessee's water and sewer bill for the applicable period.
   b. **Trash.**
      i. **Responsible Party**: Charges for this services for the Lot will be paid for by:
         ☐ Lessor; or
         ☒ Lessee, and payment shall be made directly to: ☐ Lessor   ☒ Third Party Utility Service Provider.
      ii. **Methodology**: If paid by Lessee, charges for this utility will based upon Lessee's separate agreement with the Third Party Utility Service Provider.
   c. **Gas.**
      i. **Responsible Party**: Charges for this services for the Lot will be paid for by:
         ☐ Lessor; or
         ☒ Lessee, and payment shall be made directly to: ☐ Lessor   ☒ Third Party Utility Service Provider.
      ii. **Methodology**: If paid by Lessee, charges for this utility will based upon Lessee's separate agreement with the Third Party Utility Service Provider.
   d. **Electricity.**
      i. **Responsible Party**: Charges for this services for the Lot will be paid for by:
         ☐ Lessor; or
         ☒ Lessee, and payment shall be made directly to: ☐ Lessor   ☒ Third Party Utility Service Provider.
      ii. **Methodology**: If paid by Lessee, charges for this utility will based upon Lessee's separate agreement with the Third Party Utility Service Provider.

2. **Additional Service Charges**: Lessee is also responsible for payment of the following additional service charges:
   a. **Service Fee:**      $_____/Month
   b. **Set-Up Fee:**       $_____/One Time Fee

08/17/99

WAPLES00000435

the event that Lessor engages counsel as a result of Lessee's breach of this Lease, Lessee agrees to pay Lessor's attorney's fees in the amount of $200.00 or 25% of all rent due and owing at the time judgment is obtained, whichever is greater.

14. **WAIVING OF ONE BREACH NOT A GENERAL WAIVER.** No waiver of any breach of any covenant, provision, or condition contained in this lease shall be construed as a waiver of the covenant itself or of any subsequent breach thereof.

15. **SECURITY INTERESTS IN MOBILE HOME.** The name(s) and address(es) of any person or entity having a security interest in the mobile home is as follows:
Name and address of dealer from whom mobile home purchased (if applicable).
Lessee shall notify Lessor within ten (10) days of any new security interest, change of existing security interest, or settlement of security interest.

16. **MANUFACTURED HOME LOT RENTAL ACT.** The terms of the Manufactured Home Lot Rental Act (Title 55, Chapter 13.3, 1950 *Code of Virginia*, as amended) attached hereto, are incorporated by reference into this Lease Agreement. Any provision in the Lease Agreement which conflicts with said Act shall be superseded by the applicable provision of the Act.

A. J. DWOSKIN & ASSOCIATES, INC.
3201 Jermantown Road, Suite 700
Fairfax, Virginia 22030-2879

WITNESS:_____ DATE_____ BY:_____ DATE 5/23/14
                                              PARK MANAGER, Josephine Giambanco
WITNESS:_____ DATE_____ BY:_____ DATE 5/23/14
                                              LESSEE (Tenant) Jose Reyes
WITNESS:_____ DATE_____ BY:_____ DATE_____
                                              LESSEE (Tenant)

08/17/99

WAPLES00000436

In addition, Lessee is responsible for any and all additional fees, deposits, assessments or any other charges related to use of utilities at the Community or as charged to the Community. Lessor reserves the right to modify the amount of and or add any additional fees, deposits, assessments or any other utility related charges as authorized under the applicable law.

3. **Payment.** Charges for usage of all utilities are considered rent as defined by the applicable law. Unless otherwise stated in this Addendum, Lessee must pay all utility charges to the Lessor in the same form and fashion in which Rent is required to be made pursuant to the Lease. Payments for utility charges are due with monthly Rent, by the first day of the following month that the charges are calculated. In the event that Lessee fails to pay any or all portion of utility charges on or before the due date, Lessor may, (i) apply a late fee as defined under the Lease or applicable law; and (ii) in its sole and absolute discretion to apply any portion of Lessee's monthly Rent payment towards the balance owed by Lessee for utility charges and leave Lessee delinquent in monthly Rent and accruing late fees as stated in the Lease and or pursue any rights or remedies Lessor would otherwise be entitled to pursue under the Lease or applicable law for Lessee's failure to pay Rent.

   a. **Electronic Billing:** Lessee agrees that utility charges may be billed and delivered in an electronic format. Lessee further agrees that Lessor may deliver electronic bills via email, the internet or by any method as determined by Owner. Lessee may opt out of electronic billing and may receive utility bills in paper form.

4. **Third Party Utility Service Providers & Billing Providers:** Lessee shall be solely responsible for obtaining services for all utilities for the Lot. Lessee must pay any third party utility service provider directly for usage and charges relating to the applicable utility. Payment is due immediately upon issuance. The utility service provider may prepare and deliver utility bills in an electronic format as defined in the above paragraph.

   Lessor reserves the right to select and retain the services of a third-party billing provider of its choosing for any utility used at the Community. The Lessor reserves the right to change any third-party billing service provider at its sole and absolute discretion upon thirty (30) days written notice to the Lessee.

5. **Placing Utility Account in Name of Lessee.** Lessee shall set up an account in the Lessee's name for each utility for which Lessees responsible for payment through any third party. Lessee shall set up such an account prior to taking possession of the Lot. Lessee shall ensure the account start date corresponds with Lessee' move-in date. Lessee's failure to place the utility account for the Lot in Lessee's name is a material and substantial breach of the Lease and shall entitle the Lessor to exercise all remedies available under the Lease and applicable law. Lessee agrees to pay and indemnify Lessor for any and all utility payments made by Lessor on behalf of the Lessee.

**Miscellaneous.** Lessee acknowledges that Lessor reserves the right upon sixty (60) days written notice to begin billing Lessee for utilities not checked above or to change billing to a new method at the Owner's sole and absolute discretion. In the event of any conflict between the provisions of this Addendum and any provision of the Lease, this Addendum shall control. Lessee must not allow utilities to be disconnected – including disconnection for not paying bills until the lease term or renewal period ends. Utilities may be used only for normal household purposes and must not be wasted. If electricity is ever interrupted, Lessee must use only battery-operated lighting

WITNESS:_____ DATE_____ BY:_____ DATE 5/28/14
PARK MANAGER, Josephine Giambanco
WITNESS:_____ DATE_____ BY:_____ DATE 5/28/14
LESSEE (Tenant) Jose Reyes
WITNESS:_____ DATE_____ BY:_____ DATE_____
LESSEE (Tenant)

08/17/99

WAPLES00000437