**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ, <br><br> *Plaintiffs*, <br><br> vs. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC., <br><br> *Defendants*. | Civil Action No. 1:16cv00563-TSE-TCB |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF GEORGE C. CARUSO**</u>

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .....................................................................................................................2

LEGAL STANDARD...............................................................................................................4

ARGUMENT ..........................................................................................................................6

I.  MR. CARUSO'S OPINIONS DO NOT MEET THE REQUIREMENTS OF RULE 702 ...........................................................................................................6

    A.  Mr. Caruso is Unqualified to Offer Expert Testimony ...........................................6

    B.  Mr. Caruso's Testimony is Not Based on Sufficient Facts and Data. ..................10

    C.  Mr. Caruso's Opinions Do Not Derive from Any Identifiable, Let Alone Reliable, Methodology...........................................................................................14

    D.  Mr. Caruso's Proffered Testimony Will Not Assist the Trier of Fact ..................15

    E.  Mr. Caruso's Testimony Fails Under Rule 403 ...................................................16

CONCLUSION......................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*, No. CIV.A. 2:07CV415,
 2009 WL 5842051 (E.D. Va. Jan. 6, 2009) .......................................................5, 16

*Anderson v. Nat'l R.R. Passenger Corp.*,
 866 F. Supp. 937 (E.D. Va. 1994) ......................................................................6, 14

*Belk, Inc. v. Meyer Corp., U.S.*,
 679 F.3d 146 (4th Cir. 2012) ..................................................................................6

*Betsey v. Turtle Creek Assocs.*,
 736 F.2d 983 (4th Cir. 1984) ..................................................................................5

*Bourne v. E.I. DuPont de Nemours & Co.*,
 85 F. App'x 964 (4th Cir. 2004)........................................................................15, 16

*Bourne ex rel. Bourne v. E.I. Dupont de Nemours & Co.*,
 189 F. Supp. 2d 482 (S.D.W. Va. 2002)............................................................15, 16

*Cooper v. Smith & Nephew, Inc.*,
 259 F.3d 194 (4th Cir. 2001) ..................................................................................4

*Copeland v. Bieber*,
 No. 2:13CV246, 2016 WL 7079569 (E.D. Va. Sept. 8, 2016)..........................11, 14

*Corey v. Sec'y, U.S. Dep't of Hous. & Urban Dev. ex rel. Walker*,
 719 F.3d 322 (4th Cir. 2013) ..................................................................................5

*Daubert v. Merrell Dow Pharm.*
 509 U.S. 579 (1993).................................................................................4, 6, 10

*Derrickson v. Circuit City Stores, Inc.*,
 84 F. Supp. 2d 679 (D. Md. 2000)......................................................................9, 15

*Dunn v. Ronbotics Corp.*, No. CIV.A. 02-952-A,
 2002 WL 32591881 (E.D. Va. Dec. 12, 2002) .......................................................15

*ePlus, Inc. v. Lawson Software, Inc.*,
 764 F. Supp. 2d 807, 813 (E.D. Va. 2011) ............................................................11

*Gen. Elec. Co. v. Joiner*,
 522 U.S. 136 (1997)..............................................................................................11

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999)........................................................................................6, 7, 15

*McDonnell Douglas Corp. v. Green*,
 411 U.S. 792 (1973)................................................................................................5

*Oglesby v. Gen. Motors Corp.*,
   190 F.3d 244 (4th Cir. 1999) ..................................................................................10

*Pharmanetics, Inc. v. Aventis Pharm., Inc.*,
   182 F. App'x 267, 272 (4th Cir. 2006)....................................................................17

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*,
   135 S. Ct. 2507 (2015)...............................................................................................5

*Washington v. Mckee, No. CIV A. 4:06CV6*,
   2006 WL 2252064 (E.D. Va. Aug. 3, 2006)...........................................................14

*Westberry v. Gislaved Gummi AB*,
   178 F.3d 257 (4th Cir. 1999) .....................................................................................5

### Statutes

24 C.F.R. § 100.500(c)..................................................................................................5

24 C.F.R. § 100.500(c)(1).............................................................................................5

24 C.F.R. § 100.500(c)(2).............................................................................................6

Fed. R. Evid. 702 ...................................................................................1, 4, 5, 10, 14, 16

Plaintiffs Rosy Giron De Reyes, Jose Dagoberto Reyes, Felix Alexis Bolanos, Ruth Rivas, Yovana Jaldin Solis, Esteban Ruben Moya Yrapura, Rosa Elena Amaya, and Herbert David Saravia Cruz ("Plaintiffs"), respectfully submit this memorandum of law in support of their Motion to Strike the Report and Exclude the Testimony of George C. Caruso.

## PRELIMINARY STATEMENT

In support of their affirmative defenses of legitimate business necessity, legitimate non-discriminatory reason, and necessary valid interest, Answer (Dkt. No. 63) at 21, Defendants submitted one expert report from Mr. George C. Caruso ("the Report").  Mr. Caruso lacks necessary experience and knowledge to serve as an expert, and his opinions lack both factual support and basic analytical rigor, making an early ruling on the inadmissibility of Mr. Caruso's testimony and report particularly appropriate.  In short, Mr. Caruso neither possesses the requisite knowledge or experience, nor has done the work necessary, to advance his opinions past the Court's gatekeeper function under Federal Rule of Evidence 702.

Conspicuously absent in the thin, two-page Report are any citations to the record, academic work in this area, or any other type of support.  At his deposition, Mr. Caruso readily conceded he had not based his opinions on the record and was offering opinions "in the abstract," and further admitted that on issues most critical to his opinion, he had never conferred with other professionals in his field to bolster his own personal experience.  He did not do research to ground his opinions in facts or data, nor did he undertake even a basic review of the most key documents in this case: the lease and the policy at issue ("Policy").  Though one of his three opinions relates to the applicability of federal financial support to rental housing, Mr. Caruso could not state whether the Park receives such assistance.[1]

---

[1]  According to Defendants' 30(b)(6) witness, it does not.  *See* Ex. 3 at 28:10-29:3 ("Q: Do either Waples Mobile Home Park Limited Partnership or Waples Project Limited Partnership

The Court should recognize Mr. Caruso's Report for what it is: a Trojan horse. Defendants intend to use Mr. Caruso to introduce a conveniently packaged narrative regarding the considerations that purportedly led to the Park's institution of the Policy at issue.[2] But Defendants overreached in Mr. Caruso's Report, and submitted nothing more than Mr. Caruso's naked, unsupported opinion. The four corners of the Report plainly demonstrate that Mr. Caruso had no knowledge of the issues in this case, and no experience qualifying him to render the opinions contained in the Report. Mr. Caruso's deposition testimony compounded the matter. Mr. Caruso's opinions are unreliable and cannot assist the trier of fact in tackling the record in this case, and the Report (with its lack of supporting authority) is too thin to permit an inference to the contrary.

Plaintiffs respectfully request that the Court strike Mr. Caruso's Report from the record on Summary Judgment[3], and exclude the testimony of Mr. Caruso from trial.

## BACKGROUND

On November 28, 2016, Defendants served the Expert Report of George Caruso (Exhibit 1), apparently in an attempt to support Defendants' Fifth, Sixth, and Eighth Affirmative Defenses. *See* Answer (Dkt. No. 63) at 21.

Mr. Caruso has been employed in housing-related positions since 1977, primarily in the function of property manager. *See* Ex. 1 at 4 (Mr. Caruso's "Summary of Professional Qualifications"). Most recently, Mr. Caruso has been employed as a consultant for a large property management company. *Id.* Based on Mr. Caruso's disclosure, he has never published

---

receive any federal funding or federal financial assistance? . . . No, we have [no] agreements with federal funding.").

[2]  If there was any doubt of this, it was dispelled by counsel's refusal to allow Mr. Caruso to answer the question at deposition of what Mr. Caruso had been asked to opine about –and Mr. Caruso's obedience to that instruction. *See* Ex. 2 at 93:12-94:13.

[3]  Defendants have submitted Mr. Caruso's Report as one of the exhibits supporting their Reply Memorandum In Support of Defendants' Motion for Summary Judgment. (Dkt. 150) at Ex. 17.

any writings related to the issue of leasing to undocumented immigrants, or more generally on the topic of housing discrimination. *See id*.

The Report includes no discussion of the facts in this case, which, in short, are that Defendants have instituted a policy requiring each adult member of the households to which they lease rental space—not only lessees, but every adult with them—to provide either (1) their Social Security number, or (2) an original Passport, original U.S. Visa, and original I-94 Form. Complaint (Dkt. No. 1) at ¶ 3. Defendants have contended that various justifications for this policy exist, including that the policy is necessary to run criminal background checks and credit checks. Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment ("Defendants' Motion for Summary Judgment") (Dkt. No. 98) at 18.

Mr. Caruso's Report offers just three opinions in support of Defendants' defenses here:

1.     It is a reasonable practice to require proof of legal status in the United States as part of an application process to lease either an apartment or mobile home lot.

2.     The legal status of an applicant is relevant to making underwriting decisions as whether to rent to a particular person because it impacts factor such as income, sustained income, reliable employment, availability of HUD assistance and repossession of a unit or lot if necessary.

3.     The legal status of a potential resident is also necessary to determine the correct identity of the applicant person and to conduct an effective criminal background check of the applicant.

Ex. 1 at 1.

Mr. Caruso also provides brief bases for his opinions. First, he asserts that "[i]t is established Federal Policy that no federal assistance is to be granted to anyone who is not properly admitted to residence in the United States." Ex. 1 at 1. Second, Mr. Caruso contends that "[i]n a non-subsidized setting, legal status is an important factor in underwriting a particular lease," because "any applicant who does not have legal status to work will be unable to obtain

employment that can be verified as to duration and amount to permit underwriting." *Id.* at 1. Third, Mr. Caruso opines that verification of identity, credit status, and criminal background using "necessary data" such as "Social Security numbers, date of birth, and list of immediate prior residences" is a fundamental part of underwriting any lease. *Id.* at 2.

Mr. Caruso does not address in his Report whether the Park receives any form of federal funding, provide support for the claim that legal status must be verified to ensure leases can be paid, or cite any authority for the claim that a Social Security number is necessary to run a background or credit check. Nor does he give any opinion as to why dates of birth or lists of immediate prior residences provided by an undocumented immigrant are necessarily unreliable for lease underwriting purposes. Mr. Caruso does not even mention original passports or I-94 forms in his Report, which Defendants have claimed are necessary documents. Defendants' Motion for Summary Judgment (Dkt. 98) at 11, 16. Mr. Caruso also does not opine as to whether the Defendants acted justifiably in this case.

## LEGAL STANDARD

Before a proffered expert may testify, he or she must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Even if qualified, the expert may only render opinion testimony if:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b)    the testimony is based on sufficient facts or data;
(c)    the testimony is the product of reliable principles and methods; and
(d)    the expert has reliably applied the principles and methods to the facts of the case.

*Id.*; *see Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589-94 (1993). Rule 702 places the Court in the role of a "gatekeeper" for expert testimony "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (alteration in original). The Court should exclude expert testimony if (i) the

expert is not qualified to offer the proposed opinions, (ii) the expert's opinions are not based on reliable data and methods, or (iii) the proposed testimony will not be helpful to the trier of fact. *Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 261 (4th Cir. 1999). Expert testimony must be excluded if it does not meet the requirements of Rule 702.

In addition to the requirements of Rule 702, expert testimony is also subject to Rule 403, and may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*, No. CIV.A. 2:07CV415, 2009 WL 5842051, at *2 (E.D. Va. Jan. 6, 2009). A court must recognize that "expert witnesses have the potential to 'be both powerful and quite misleading,'" and therefore "proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry*, 178 F.3d at 261.

Mr. Caruso's opinions are relevant, if at all, to Defendants' affirmative defenses to Plaintiffs' disparate impact claim. Disparate impact claims under the FHA are evaluated under the well-established burden-shifting framework delineated in 24 C.F.R. § 100.500(c) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2514-15 (2015); *Corey v. Sec'y, U.S. Dep't of Hous. & Urban Dev. ex rel. Walker*, 719 F.3d 322, 325 (4th Cir. 2013).

At step one of the framework, Plaintiffs bear the burden "of proving that a challenged practice caused or predictably will cause a discriminatory effect." *Inclusive Communities*, 135 S. Ct. at 2514 (quoting 24 C.F.R. § 100.500(c)(1)). If Plaintiffs make the requisite showing, the burden shifts to Defendants to articulate a "business necessity sufficiently compelling to justify the challenged practice." *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 988 (4th Cir. 1984); 24

C.F.R. § 100.500(c)(2).  Defendants appear to have submitted Mr. Caruso's Report to support a supposed business necessity for their Policy.  Their efforts fail.

## ARGUMENT

### I.    MR. CARUSO'S OPINIONS DO NOT MEET THE REQUIREMENTS OF RULE 702

#### A.    Mr. Caruso is Unqualified to Offer Expert Testimony

Before a proffered expert may testify, he or she must be "qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.   *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 162 (4th Cir. 2012), *as amended* (May 9, 2012) ("The district court should . . . 'consider the proposed expert's full range of experience and training,' not just his professional qualifications.") (internal citations omitted); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 156 (1999) (A proffered expert must have "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case.").  To qualify, a witness must have some "specialized knowledge" and "the word 'knowledge' in Rule 702 'connotes more than subjective belief or unsupported speculation.'"  *Anderson v. Nat'l R.R. Passenger Corp.*, 866 F. Supp. 937, 943 (E.D. Va. 1994), *aff'd*, 74 F.3d 1230 (4th Cir. 1996) (citing *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 590-592 (1993)).

The sole basis provided for Mr. Caruso's opinions seems to be his "forty years of experience in owning and managing residential properties."  Ex. 1 at 1.  Mr. Caruso admitted that he did not rely on anything more than his personal experience, none of which relates to mobile home parks, to form his opinions.  Ex. 2 at 33:12-34:4: ("Q. Did you rely on any materials besides your own experience in creating your report and forming your opinions?  A. No.").  But Mr. Caruso provides nothing in his Report showing that he has experience relevant to the issues

in this case that would allow him to opine on matters relating to the documentation status of the Plaintiff tenants. He has no experience in mobile home park leasing. Ex. 2 at 21:2-20. And he admits that he lacks *Kumho Tire* specialized knowledge on each relevant point. *See generally* Ex. 2 at 105-112.

> Q. Do you have any specialized knowledge as to whether undocumented tenants are any more likely not to pay rent? . . .
> A. No, I don't have empirical data on that.
> Q: Do you have any sort of data on that?
> A: Occasional conversations over lunch with some of my colleagues, *but none of it would rise to the level of even the most basic scientific rigor*.

*Id.* at 106: 11-21 (emphasis added).

> Q. Do you have any specialized knowledge as to whether undocumented tenants are more likely to leave a property without giving appropriate notice to the landlord? . . .
> A. I don't really have any data on it because I haven't had any conversations with any of my colleagues one way or another.

*Id*. at 110:5-110:9.

> Q. Do you have any specialized knowledge as to whether it's more difficult to properly identify a prospective tenant? . . .
>
> A. You need to know who they are and you need to be able to determine what their payment history is and what have you.

*Id.* at 111:10-20.

> Q. Do you have any specialized knowledge as to whether a Social Security number is ever required, no matter what state you're in, to pull up an individual on the sex offender registry? . . .
> A. The records I've seen are generally, among other things, going to have that data in among a bunch of other data . . . Once again since everybody does their files differently, I can't tell you how important it is vis-à-vis the other pieces of information. . . .

*Id*. at 112:11-114:6.

Despite that he has worked in the leasing industry for a long period of time, Mr. Caruso admittedly possesses no knowledge of colleagues' or industry practices, and testified that he never attempted to gain information about common leasing practices in the industry due to antitrust concerns. In fact, he actively avoided such conversations.

> So the short answer is I studiously avoid those conversations when I'm having lunch with my friends because there's some things you never talk about. You never talk about how you price your management services, you never talk about how you write leases, and you never talk about anything that can be deemed antitrust or collusive behavior.
> Q. And how you write leases is one of the subjects that is avoided?
> A. How you write leases is one of the subjects that I studiously avoid, yes.
> Q. So the extent that you are giving an opinion in your report about how to underwrite a lease, it comes from your own personal experience over your career?
> A. It comes from the leases I underwrite or in firms I control or am executive in.
> Q. And not in any way from information that you've obtained from anyone else in the residential properly management business?
> A. We don't have – we don't sit and have conversations about that.
> Q. And included in how an entity may write a lease would be what documents that entity requires from its prospective tenants to apply?
> A. Mm-hmm.

*Id.* at 81:9-84:9.

> Q. [Y]our relation of what industry practice is based on your own personal knowledge over your career; is that right?
> A. That's correct.
> Q. Because it's not advisable or possible to discuss things like how to write a lease with other property management companies?
> A. As I said earlier, I saw some friends' careers end up in flames over those discussions, so, yes, I've been very careful about that.

*Id.* at 96:4-18.

Because Mr. Caruso insulated himself from learning how other residential property management companies and colleagues underwrite leases, including which documents to require

as part of lease applications, he is not able to inform the factfinder as to what standard "industry" practice is. The fact of the matter is, Mr. Caruso can only inform the Court as to *Mr. Caruso's* standard business practices "in the abstract," Ex. 2 at 33:15-18, which is not a proper subject of expert testimony. *See Derrickson v. Circuit City Stores, Inc.*, 84 F. Supp. 2d 679, 688 (D. Md. 2000) (excluding expert witness report, which was "nothing more than a five-page summary of [the expert's] experiences providing consulting services" because it was "both irrelevant and unreliable for the purposes of [the party's] proof").

Compounding Mr. Caruso's conceded lack of experience are his admissions that he lacks any other type of specialized knowledge on key issues in this case, including whether undocumented immigrants are less likely to pay rent (Ex. 2 at 106:11-21), more likely to pose a threat to safety (*id.* at 103: 18-104:2), whether it is more difficult to identify prospective tenants if they are undocumented (*id.* at 111:10-20), whether undocumented tenants are more likely to abandon a lease without giving proper notice (*id.* at 110:5-110:9), what types of information are required to locate an individual on the sex offender registry, (*id.* at 112:11-18), whether a Social Security number is required to run a background check (*id.* at 113: 18-114:6), whether a Social Security Number is required to verify the identity of a prospective applicant (*id.* at 73:20-75:6); whether a Social Security number is required to run a credit check (*id.* at 79:14-80:11 (testifying that his knowledge is outdated –"These days its all done inside these big algorithms and we don't see much of what it is"—and that he does not know how current automated systems work because it's a "black box")), and whether an ITIN can be used to run a credit check (*id.* at 80:13-17 (testifying he "can't speak to that")).

Each of these topics that Mr. Caruso lacks experience or other specialized knowledge to testify about is relevant to whether Defendants have a legitimate business need for the Policy at

issue. *See* Ex. 4 (Defendants' Responses to Plaintiff Rosy Giron de Reyes's First Set of Interrogatories) at 11-12 (Interrogatories related to Defendants' alleged justifications for the Policy); *Betsey*, 736 F.2d at 988  (if Plaintiffs prove that the challenged practice caused, or predictably will cause, a disparate impact, or was motivated by a racially discriminatory purpose, the burden shifts to Defendants to articulate a "business necessity sufficiently compelling to justify the challenged practice").  But because Mr. Caruso lacks the information and experience necessary to give relevant testimony, there is no possibility that he can assist the fact finder in determining whether such a legitimate business purpose exists.  Mr. Caruso cannot even attest that based on his own personal experience, Defendants' fixation with the documentation status of their tenants is normal.[4]  He testified that he has "never differentiated as to whether [tenants] are here legally or not," because that would not be relevant to whether a tenant should be evicted for misconduct.  Ex. 2 at 103:18-105:2.

Defendants are attempting to clothe collateral and self-serving fact witness testimony with the gravitas of a purported expert opinion, and it should not be allowed.  Mr. Caruso's opinions and testimony should be excluded in full.

### B.    Mr. Caruso's Testimony is Not Based on Sufficient Facts and Data.

"[A] district judge, considering a proffer of expert testimony under Federal Rule of Evidence 702—whether based on scientific, technical, or other specialized knowledge—must, in determining its admissibility, ensure that the evidence is 'not only relevant, but reliable.'" *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 249–50 (4th Cir. 1999) (citing *Daubert*, 509 U.S.

---

[4]  Even if Mr. Caruso had been able to provide more germane testimony, his Report should still be stricken, because Defendants have objected that discovery of other landlords' practices is irrelevant, and stood on those objections.  Defendants should not now be allowed to abandon that position, having asserted it throughout discovery.  *See* Ex. 5 (Defendants' Objections to Plaintiff's First Set of Interrogatories at 5-6, Interrogatory No. 5); Ex. 6 (Defendants' Objections to Plaintiff's First Set of Interrogatories at 3-4, Interrogatory No. 5).

at 589).  "A reliable expert opinion must be based on scientific, technical, or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods."  *Id.* (citing *Daubert* at 590, 592–93).  *Daubert* and Rule 702 mandate exclusion of expert testimony where the opinion reached is "connected to existing data only by the *ipse dixit* of the expert."  *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 813 (E.D. Va. 2011), *aff'd*, 700 F.3d 509 (Fed. Cir. 2012) (internal citations omitted); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Copeland v. Bieber*, No. 2:13CV246, 2016 WL 7079569, at *3 (E.D. Va. Sept. 8, 2016) ("Regardless of whether the expert provides scientific or experiential testimony, the principle underlying the court's gatekeeping role "is to 'make certain that an expert... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'") (internal citations omitted).

Mr. Caruso's Report has prominent and fatal factual gaps.  Beyond his lack of knowledge of true industry practices, *see* Section I.A, *supra,* Mr. Caruso has not done the work of establishing basic factual predicates for his opinions.  Ex. 2 at 65:17-66:3.  Mr. Caruso admitted that he did not rely on anything more than his experience (none of which pertains to the leasing of lots in a mobile home park and or adequate to qualify him as an expert under Fed. R. Evid. 702) to form his opinions.  Ex. 2 at 33:12-34:4: ("Q. Did you rely on any materials besides your own experience in creating your report and forming your opinions? A. No."). Without more, Mr. Caruso's opinions are nothing more than personal conjecture, and are not properly admissible.

The only document Mr. Caruso reviewed was "the document my opinion was put in," to wit, his own Report.  *Id.* at 33:19-34:4. He did not ask to see any documents related to this case,

even the Complaint, or perform any other research related to his opinions.[5]  *Id.* at 93:19-20 ("Q. Have you read the Complaint in this case? A. Nope, I have not.  I have not.")

Most troubling is that Mr. Caruso's ignorance of the facts of this case runs so deep that he was forced to offer an alternative, belt-and-suspenders opinion to account for the possibility that the Park receives federal funding, because he simply did not know whether the Park received such funding.

> Q. Do you know whether the Waples Mobile Home Park received any form of federal or state housing finance or subsidy?
> A. I'm unaware of their situation.

*Id*. at 25:1-4.[6]

> Q. So my question for you is whether Waples receives deep assistance, whether it receives any check from the government.
> A. I can't answer that.  I don't know.

*Id.* at 46:17-20.

Mr. Caruso did not know whether the Park was involved in the low-income housing business such that it would likely be in receipt of some form of federal assistance, and would not answer whether that would have been relevant information for his opinion, on counsel's instruction.

> Q. Is the Waples Mobile Home Park in the low-income housing business?
> A. Counsel hasn't shared with me precisely what the target market is on that, so I'm not in a position to really opine on that.
> Q. Would you have wanted to receive that information for your opinions? . . .
> Q. Are you able to answer, Mr. Caruso?

---

[5]  Mr. Caruso followed counsel's instruction not to answer the question of whether Mr. Caruso had asked to review any materials as part of his work in this case. Ex. 2. at 33:1-36:7.

[6]  Mr. Caruso described "deep assistance" as a situation where "some subdivision of either a state–the state or federal government is writing a check on a monthly basis to cover part of the costs of the operation of the community.  So deep assistance is a situation where the tenant payment is not 100 percent of the cost of operating a community."  Ex. 2 at 45:12-18.

> MR. deBETTENCOURT: I'm instructing you not to answer Mr. Caruso.

*Id.* at 31:21-33:10.

Neither did Mr. Caruso review the Policy that Defendants have instituted over time to force all adult residents to submit proof of legal status in the United States. In fact, he could not even describe it.

> Q. Are you able to describe the policy that's being challenged in this case?
> A. I think you could probably describe it much better than I could.
> . .
> Q. Do you know what documents the Waples policy requires a prospective tenant to provide?
> A. I have not seen a complete list of the documents that they have to provide. And depending on one's situation, that document list is going to be widely variable.
> Q. You said you hadn't seen a complete list. Have you seen a partial list?
> A. My understanding, and it's only oral, is that they have to be here legally. I don't know how exactly that lays out in the policy and tenant selection plan. I've not seen the tenant selection plan.
> Q. For a prospective tenant that does not have a social security number, do you know what documents they are required to provide with their application at Waples?
> A. I've not seen the list, I don't know.

*Id.* at 49:10- 51:3.

Neither did he perform any investigation into how criminal background or credit checks are run.

> Q: Is a Social Security number required to run a credit check?
> A: There was a time,. . .that you wouldn't get one back if you didn't feed them one. I think these days, with the RealPage vendors that we have, that may no longer be the case. *I haven't looked into the issue in a while.*

*Id.* at 79:14-80:11. (emphasis added).

Had Mr. Caruso reviewed the documents in this case, including the record evidence concerning the information necessary to run credit and background checks, or even the Plaintiffs'

payment histories, his opinions might be useful.  But he did not do so.  The omission of any factual support for Mr. Caruso's opinions renders his opinions inadmissible.  An expert cannot proffer an opinion and testimony based on so few facts and data and simply insist that the fact-finder credit his subjective views.  *See Anderson v. Nat'l R.R. Passenger Corp.*, 866 F. Supp. 937, 943 (E.D. Va. 1994), *aff'd*, 74 F.3d 1230 (4th Cir. 1996) ("[A] court should disregard expert opinion if it is mere speculation, not supported by facts."); *Washington v. Mckee*, No. CIV A. 4:06CV6, 2006 WL 2252064, at *2 (E.D. Va. Aug. 3, 2006) ("Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions.") (internal citations omitted).

### C.    Mr. Caruso's Opinions Do Not Derive from Any Identifiable, Let Alone Reliable, Methodology.

*Daubert* and Rule 702(b) mandate the exclusion of opinion testimony based only on an expert's "subjective opinion" and lacking "intellectual rigor."  *See Copeland*, 2016 WL 7079569 at *4-5 (excluding expert testimony where opinions were mere "conclusory statements without adequate explanation or support"  and not based on specialized knowledge). No identifiable methodology buttresses Mr. Caruso's opinions.  Mr. Caruso's failure to identify or depend upon reliable principles and methodology to support his opinions renders his Report inadmissible. The two-page Report does not include a *single sentence* on how Mr. Caruso reached his opinions.  He provides no methodological basis for his opinion that undocumented status  prevents adequate lease underwriting.  There is no statistical or data analysis.  There is no reliance on peer-reviewed opinions and studies—or anything at all, for that matter.  There is not even a single citation in the entire Report.  There is no reference in the Report to support, much less to demonstrate consensus in Mr. Caruso's field as to the accuracy of his conclusions.  The only link between undocumented status and difficulty underwriting rental leases is subjective.

The bareness of the Report could perhaps be overlooked if Mr. Caruso's deposition transcript had revealed that, in fact, he had engaged in rigorous analysis of the issues here. It does not. *See* Sections I.A, B, *supra*; *Dunn v. Ronbotics Corp.*, No. CIV.A. 02-952-A, 2002 WL 32591881, at *1 (E.D. Va. Dec. 12, 2002) (noting that the purpose of the *Daubert* analysis is to "make certain that an expert, whether basing his testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.") (citing *Kumho*, 526 U.S. at 152).

**D.      Mr. Caruso's Proffered Testimony Will Not Assist the Trier of Fact**

"[T]he expert's proffered scientific testimony must be sufficiently tied to the facts of the case that it will be of assistance to the factfinder in resolving a disputed fact." *Bourne ex rel. Bourne v. E.I. Dupont de Nemours & Co.*, 189 F. Supp. 2d 482, 495 (S.D.W. Va. 2002), *aff'd sub nom. Bourne ex rel. Bourne v. E.I. DuPont de Nemours & Co.*, 85 F. App'x 964 (4th Cir. 2004); See also *Derrickson*, 84 F. Supp. 2d at 688 (excluding an expert report on employment practices in part because expert "admit[ted] in his deposition that he is not an expert in, or even familiar with, [Defendant's] [sic] employment practices, the ones at issue in this case.").

Mr. Caruso repeatedly testified that he has no knowledge of the particular facts in this case. Ex. 2 at 93:19-94:13 ("Q. Have you read the Complaint in this case? A. Nope, I have not. I have not.); 34:1-4: ("[T]he only document I've seen related to this case is my . . . the document my opinion was put in."); 3:2-5 ("I've never seen a lot lease. I don't know what their restrictions are or are not. I don't know how they structure their deals."); 50:10-20 ("I have not seen [Defendants'] tenant selection plan and their policies on an individual basis. . . . My understanding, and its only oral, is that they have to be here legally. I don't know how exactly that lays out in the policy and tenant selection plan.").

In addition to having no knowledge of the policy at issue, Mr. Caruso does not apply his opinions to the Defendants' reasons behind the Policy to conclude that the Policy is reasonable, or to offer any conclusion at all.  Mr. Caruso did not appear to know, and refused to give a full answer, when asked about Defendants' reasons for enacting the Policy.

> Q. Do you know what the Defendants' reasons are for having this policy? . . .A. I think its a general proposition, they want to make sure when they're underwriting folks, that they have a reasonable assurance that the rent is going to get paid. . .[instructed by counsel not to continue answering] Well, since all of my information has come through counsel, then I guess we're done.

Ex. 2 at 53: 3-9

Mr. Caruso himself put it best: "Largely my opinions were – I was asked to render my views as to how one might go about operating this [the Policy], *in the abstract* and that's what I've done."  Ex. 2. at 22:15-18 (emphasis added).  By Mr. Caruso's own testimony, then, his opinions are completely untethered to the facts of this case, and cannot assist the factfinder. *Bourne ex rel. Bourne v. E.I. Dupont de Nemours & Co.*, 189 F. Supp. 2d 482, 495 (S.D.W. Va. 2002), *aff'd sub nom. Bourne ex rel. Bourne v. E.I. DuPont de Nemours & Co.*, 85 F. App'x 964 (4th Cir. 2004).

### E.    Mr. Caruso's Testimony Fails Under Rule 403

In addition to the requirements of Rule 702, expert testimony is also subject to Rule 403, and may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*, No. CIV.A. 2:07CV415, 2009 WL 5842051, at *2 (E.D. Va. Jan. 6, 2009) Although Federal Rule of Evidence 702 "liberalize[d] the introduction of relevant expert evidence, the district court must balance that freedom with the persuasiveness of potentially misleading expert

16

evidence." *Pharmanetics, Inc. v. Aventis Pharm., Inc.*, 182 F. App'x 267, 272 (4th Cir. 2006) (internal citations omitted).

As explained in Sections I.A-D, *supra*, Mr. Caruso's factually ungrounded, abstract opinions, proffered on the basis of inadequate personal experience, cannot assist the factfinder. The risk of unfair prejudice and jury confusion is high, because Mr. Caruso would be presented to the jury with the weight of an expert designation behind his words. His testimony is unworthy of that authority. It consists of nothing more than personal conjecture, and, untethered to the facts and issues in this case, will do nothing but waste time and confuse the jury. Worse, Mr. Caruso's opinion is based in part on a newly-generated argument by Defendants that they may be subject to some undefined set of leasing requirements due to their receipt of federal funding, and that the experiences of other landlords or residential property managers can inform issues in this case. It would be fundamentally unfair to permit Defendants to continue to advance this argument at either summary judgment or trial, because they have claimed such discovery is irrelevant and refused to produce information or provide testimony on this issue. *See, e.g.*, Ex. 5 (Objections to Plaintiff Jose Dagoberto Reyes' First Set of Interrogatories) at 4 (Interrogatory No. 4) and 5 (Interrogatory No. 5); *see also* Ex. 6 (Defendants' Responses to Plaintiff Jose Dagoberto Reyes' First Set of Interrogatories) at 3 (Interrogatory No. 4) and 4 (Interrogatory No. 5). *See also* Ex. 3 at 28:2-9 (Defendants' 30(b)(6) designee testifying that Defendants' financial statement for the Park had not been produced).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court prohibit all testimony of Defendants' expert witness George C. Caruso.

17

DATED: January 26, 2017                    Respectfully submitted,


                                           *Joy Odom*
                                           _____
                                           QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
                                           Paul Brinkman, VSB # 35950
                                           Joy Odom, VSB #84281
                                           Ariel Wade Trajtenberg (*pro hac vice*)
                                           Archith Ramkumar (*pro hac vice*)
                                           Diego Durán de la Vega (*pro hac vice*)
                                           Jongwook Kim (*pro hac vice*)


                                           777 Sixth Street NW, 11th Floor
                                           Washington, District of Columbia 20001
                                           Phone: (202) 538-8000
                                           Fax: (202) 538-8100
                                           paulbrinkman@quinnemanuel.com
                                           joyodom@quinnemanuel.com
                                           arieltrajtenberg@quinnemanuel.com
                                           archithramkumar@quinnemanuel.com
                                           diegoduran@quinnemanuel.com
                                           wookiekim@quinnemanuel.com


                                           LEGAL AID JUSTICE CENTER
                                           Simon Sandoval-Moshenberg, VSB #77110
                                           Rebecca Wolozin, VSB #89690

                                           6066 Leesburg Pike, Suite 520
                                           Falls Church, VA 22041
                                           Phone: (703) 778-3450
                                           Fax: (703) 778-3454
                                           simon@justice4all.org
                                           becky@justice4all.org

                                           *Counsel for Plaintiffs*

18

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of January, 2017, I filed the foregoing document electronically with the Clerk of the Court using the ECF system, and caused to be served by electronic mail a copy of the foregoing document upon the following parties:

> Grayson P. Hanes, VSB # 06614
> Michael S. Dingman, VSB #30031
> Justin deBettencourt, VSB # 83806
> REED SMITH LLP
> 7900 Tysons One Place, Suite 500
> McLean, Virginia 22102
> Phone: (703) 641-4200
> Fax: (703) 641-4340
> ghaynes@reedsmith.com
> mdingman@reedsmith.com
> jdbettencourt@reedsmith.com

> *Counsel for Defendants*

> *Joy Odom*
> QUINN EMANUEL URQUHART & SULLIVAN, LLP
> Joy Odom, VSB # 84281
>
> 777 Sixth Street NW, 11th Floor
> Washington, District of Columbia 20001-3706
> Phone: (202) 538-8000
> Fax: (202) 538-8100
> joyodom@quinnemanuel.com

> *Counsel for Plaintiffs*