# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

ROSY GIRON DE REYES, *et al.*,

    Plaintiffs,

v.

WAPLES MOBILE HOME PARK
LIMITED PARTNERSHIP, *et al.*,

    Defendants.

Civil No.: 1:16cv563-TSE-TCB

## DEFENDANTS' ANSWER TO INTERROGATORIES

Defendants Waples Project Limited Partnership, and A.J. Dwoskin & Associates, Inc. by and through counsel, answer the First Set of Interrogatories of Plaintiff Rosy Giron de Reyes' ("Plaintiff"). Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A. J. Dwoskin & Associates, Inc. hereby state that Defendant Waples Mobile Home Park LP is neither the owner of the Park nor an agent of the owner of the Park. Therefore, all allegations of the Complaint are expressly denied as to Waples Mobile Home Park LP. Any reference to Defendants below in these Answers to Interrogatories refers to Defendants A. J. Dwoskin & Associates, Inc. and Waples Project Limited Partnership (collectively "Defendants").

## INTERROGATORIES AND ANSWERS

### INTERROGATORY NO. 1:

Describe all policies and practices, including the Policy at issue in this Action, used for leasing, or renewing leases to, Lots at the Park since 2006, and, in doing so, identify the persons most knowledgeable regarding such policies and practices and include the reasons for creating, developing, modifying, and enforcing each policy or practice.

**RESPONSE TO INTERROGATORY NO. 1:**

Notwithstanding and without waiving Defendants' Objections and pursuant to the agreement between Parties, please see the documents produced in response to Plaintiff's Request for Production of Documents, Set One, that describe the application and renewal process. As described in those documents, the Policy going back to 2006 generally required new applicants, adults signing the lease and adult occupants identified to comply with the Policy by, among other things, providing documents sufficient to identify them. At renewal, the signatories to the lease must update or provide any missing documents such as title to the home, insurance, visa, application and documentation for new adult occupants. If new adult occupants are identified either by the tenant or by an inspection of the Lot, then the adult occupant(s) not previously identified would be required to comply with the Policy.

The reasons for creating the policy are to confirm the identity of the applicant(s) and any adult occupants, to perform credit checks, minimize identity fraud, and to eventually perform criminal background checks, and minimize loss from eviction. Policies were strengthened and modified over time due to discovery of numerous unauthorized occupants at other properties, some of whom were criminals with felonies with sexual or violent crimes and due to the rising cost of eviction and the cost of removing the homes, which increased to over $6,000 from lost rent and the cost of demolition of the homes.

The persons knowledgeable about the Policy changed over time and include Peter Williams, Carolina Easton, Mark Jones, Josephine Giambanco and others identified in Defendants' initial disclosures.

**INTERROGATORY NO. 2:**

Describe your past and present corporate structure, including the identity of all past and present parents, subsidiaries, predecessors in interest, successors in interest, and affiliates, including when such corporate relationships began and how long they lasted; the identity and current location of all past and present officers, directors, or employees; the relationship between Waples L.P., Waples Project L.P., Dwoskin & Associates, and Albert J. Dwoskin; and all agreements between Waples L.P., Waples Project L.P., Dwoskin & Associates, and Albert J. Dwoskin.

**RESPONSE TO INTERROGATORY NO. 2:**

Notwithstanding and without waiving Defendants' Objections and pursuant to the agreement between Parties, please see the organizational chart provided in response to Plaintiff's Request for Production of Documents, Set One. The leadership structure since 2010 is listed below:

President

Albert J. Dwoskin

General Managers

Brian Circosta and Peter Williams (08/2011 – 12/2015)

Regional Property Managers

Jessica Armstead (11/2015 – present)

Teresa Osborn (10/2011 – 11/2014)

Tara Geary (02/2011 – 07/2011)

Lana Zylka (07/2002 – 01/2011)

Property Managers

3

Josephine Giambanco (05/2013 – present)

Sabiha Noorzai (08/2004 – 04/2012)

<u>Assistant Property Managers</u>

Mayra Lopez (01/2016 – present)

Yvette Jimenez (06/2013 – 12/2015)

Sindy Obando (12/2012 – 04/2013)

Vanessa Jorquera (11/2011 – 12/2012)

**INTERROGATORY NO. 3:**

Identify all persons who have been involved in implementing or enforcing the policies and practices used for leasing, or renewing leases to, Lots at the Park since 2006.

**RESPONSE TO INTERROGATORY NO. 3:**

Notwithstanding and without waiving Defendants' Objections, please see response to Interrogatories No. 1 and 2 and the individuals identified in Defendants' Rule 26 initial disclosures.

**INTERROGATORY NO. 4:**

Identify all documents and communications in your possession relating to a prospective or current tenant or occupant's race, national origin, citizenship, alienage, or proof of lawful presence in the United States, including the type of documentation submitted to demonstrate lawful presence and the nation that issued such documentation (e.g., a passport issued by Mexico).

4

**RESPONSE TO INTERROGATORY NO. 4:**

Notwithstanding and without waiving Defendants' Objections, Defendants do not have documents that track the information described in the Interrogatory. Pursuant to the agreement between Parties, Defendants will produce a list of tenants (to the extent such information exists) going back to January 2010.

**INTERROGATORY NO. 5:**

Describe the processes you use or have used to track, manage, or ensure a tenant or occupant's past or present compliance with the Policy.

**RESPONSE TO INTERROGATORY NO. 5:**

Notwithstanding and without waiving Defendants' Objections, Defendants state that leasing files for each Lot are maintained and periodic inspection of Lots are undertaken to determine the conditions and number of occupants. Starting in 2013, Defendants began auditing the files for each Lot in order to determine if the tenant file of each Lot complied with all policies including whether all adult occupants were properly identified and had also complied with the Policy. In 2014, Defendants began conducting inspections of each Lot in order to determine if all occupants are identified in the tenant file for compliance with the Policy and to provide an accurate count for RUBS utility billings. Defendants received complaints from tenants that homes contained more occupants which were not billed due to not reporting the occupants to the management office.

**INTERROGATORY NO. 6:**

Describe each communication you have had with each Plaintiff, including specifically those communications relating to the Park's leasing and lease renewal policies and practices, including the Policy at issue in this Action.

**RESPONSE TO INTERROGATORY NO. 6:**

Notwithstanding and without waiving Defendants' Objections, please see documents provided in response to Plaintiff's Request for Production of Documents, Set One. Further, Defendants state that Mr. Reyes came in to the Park's management office around May 2013 and spoke with Defendants' agent, Josephine Giambanco about applying for a lease where Mr. Reyes stated that he would be the only leaseholder and only occupant over the age of 18 in the mobile home. He did not inform Defendants that his wife would also be living at the Lot.

From 2015 to 2016, Josephine Giambanco, had multiple conversations with the Plaintiffs about the need for them to come into the Park management office to renew Plaintiffs' leases and to comply with the Policy.

**INTERROGATORY NO. 7:**

Describe every instance in which You have enforced the Policy, including the tenants' names and dates of enforcement.

**RESPONSE TO INTERROGATORY NO. 7:**

Notwithstanding and without waiving its objections, Defendants respond assuming that "enforce" in the interrogatory means required applicants/tenants to comply with the Policy. Defendants required compliance with the Policy from its inception. As stated in response to

6

Interrogatory number 2, defendants will provide a list of tenants to the extent they exist going back to January 2010.

**INTERROGATORY NO. 8:**

Describe the policies and practices you use or have used to register a tenant or occupant of the Park with management in accordance with paragraph 6 of the Park's standard Rental Agreement, and identify where and how such registration is maintained in your filing or electronic record keeping system.

**RESPONSE TO INTERROGATORY NO. 8:**

Notwithstanding and without waiving Defendants' Objections, please see the response to Interrogatory No. 1.

Defendants require that the applicant(s) identify any occupants as part of their application. Defendants retain the registration information in hard copy files and scan such registration into their online record keeping system, Orion.

**INTERROGATORY NO. 9:**

For each Plaintiff, describe each act or incident that you allege has constituted or constitutes a violation of any provision of that Plaintiff's Rental Agreement with you.

**RESPONSE TO INTERROGATORY NO. 9:**

Notwithstanding and without waiving Defendants' Objections, please see documents provided in response to Plaintiff's Request for Production of Documents, Set One. The male Plaintiffs, Esteban Moya, Felix Bolanos, Herbert Saravia Cruz, Jose Dagoberto Reyes, did not disclose all of the adult occupants for their Lots as required. The female Plaintiffs did not comply with the Policy despite repeated requests.

**INTERROGATORY NO. 10:**

Describe every instance in which, despite Your knowledge that an adult occupant at the Park did not or could not comply with the Policy, You have declined to enforce the Policy, including the tenants' names and the dates on which You declined to enforce the Policy.

**RESPONSE TO INTERROGATORY NO. 10:**

The lease for Mr. Reyes was renewed in 2014 even though his wife did not comply with the Policy. There was one known instance of a new assistant submitting the application with an ITIN which resulted in a denial, but was requested for an exception from having a guarantor – which was approved. This individual was Wilma Lopez, who moved in on April 1, 2014.

**INTERROGATORY NO. 11:**

Describe the process by which you determine that allegedly unauthorized occupants are living with Lease Plaintiffs or other tenants.

**RESPONSE TO INTERROGATORY NO. 11:**

Notwithstanding and without waiving Defendants' Objections, Defendants state that after Defendants began auditing the lease files for each Lot to determine if unauthorized occupants were living at each mobile home, Defendants would conduct inspections of each Lot and mobile home to determine if unauthorized occupants were living with tenants. If it was concluded the Lot potentially housed unauthorized occupants, a letter was sent to the Leaseholders requesting compliance.

**INTERROGATORY NO. 12:**

Describe the process by which you conduct criminal background and/or credit checks, including the third party products and services you have considered, have used, or currently use, including Yardi Systems, Inc.'s products or services, and the reasons for using or not using each.

**RESPONSE TO INTERROGATORY NO. 12:**

Notwithstanding and without waiving Defendants' Objections, Defendants state that once an applicant applies for a lease for a Lot at the Park, the application and required information are sent to a third party for a criminal background and/or credit check. The third party then informs the Park manager if the applicant(s) has been approved or not. The Park manager is informed of a general reason why an applicant might fail the criminal and/or credit check. Defendant currently uses Yardi Resident Screening services to conduct criminal background and/or credit checks due to its competitive price but also because Yardi Systems provides the best service for Defendants to check for criminal history, credit history, rental history, OFAC, and sex offender status. As for the reason for using these services, the underwriting of a lease is very important to minimize lost rents and other eviction costs. Defendants believes the proper underwriting minimizes collection losses in light of the fact that the eviction process takes at minimum two months and the abandonment or possession of a home takes roughly six months to complete in Virginia. This equates to eight months of lost rent, legal fees, unpaid rent, and the demolition or removal of the home. At current rates, Defendants estimate each eviction to be a potential loss of over $10,000.

Before Defendant used Yardi Resident Screening, Defendant used CoreLogic, Inc. to provide criminal and/or credit checks.

**INTERROGATORY NO. 13:**

Describe all instances where you have accepted or approved a tenant without requiring a Social Security card or number, and describe the reasons you accepted or approved such tenant, including, if applicable, whether any tenant has ever complied with the Policy by providing an original passport, original U.S. visa, and an original Arrival/Departure Form (I-94 or I-94W).

**RESPONSE TO INTERROGATORY NO. 13:**

Notwithstanding and without waiving Defendants' Objections, Defendants state one tenant was accepted without providing the documents required by the Policy; however, that tenant was accepted by mistake. This individual was Wilma Lopez, who moved in on April 1, 2014. Further, Defendants will provide in their document production a list of tenants who complied with the Policy by providing an original passport, original U.S. Visa, and an original Arrival/Departure Form (I-94 or I-94W).

**INTERROGATORY NO. 14:**

Describe all reasons, excluding none, that you do not accept ITINs from prospective tenants on an equal basis as Social Security cards or numbers.

**RESPONSE TO INTERROGATORY NO. 14:**

Notwithstanding and without waiving Defendants' Objections, Defendants state that an ITIN is not as reliable method as a social security card or number for Defendants to ensure the identity of each prospective tenant is as represented by the tenant.

**INTERROGATORY NO. 15:**

Describe all reasons, excluding none, that you require every occupant living at the Park to complete an application, register as an occupant, and meet the same requirements for residency as a leaseholder.

**RESPONSE TO INTERROGATORY NO. 15:**

Notwithstanding and without waiving Defendants' Objections, Defendants state that they require every occupant over the age of 18 living at the Park to complete an application so that they know who is living in the Park and so that a criminal background check can be done for each such adult. On other properties, unidentified occupants in some instances were found to have criminal backgrounds, including felonies, drug trafficking, and sex offender registration and crimes of child molestation. Therefore, for the safety of the community, Defendants require adult occupants to comply with the Policy and to agree to a criminal background check. Also, the Park utilizes RUBS billing for utilities, which is an allocation method based on all occupants. If the Lot misrepresents the number of occupants, they will receive a lower utility bill which increases the bill for other tenants.

**INTERROGATORY NO. 16:**

Describe all reasons, excluding none, that you seek to prevent any undocumented immigrants from leasing or occupying homes in the Park.

**RESPONSE TO INTERROGATORY NO. 16:**

Notwithstanding and without waiving Defendants' Objections, Defendants state that they seek to prevent undocumented immigrants due to lease underwriting concerns. Without proper identity documentation such as valid visas and passports, Defendants have no evidence to prove

11

individuals are who they claim to be. Without this identity proof, it weakens the credit and criminal reports received from the third party providers. From a criminal history underwriting concern, the criminal screening reports all crimes found in the United States, particularly the three state area (Virginia, District of Columbia, and Maryland). It does not include crimes from other countries. From a continuous income and employment concern, the prospective tenants' employment opportunities are limited under current hiring laws if the prospective tenants are undocumented immigrants. From the Park management view of lease underwriting, Defendants believe analyzing these factors for all prospective tenants minimize to the best of our abilities the exposure to financial and safety concerns. Defendants also seek to comply with 8 U.S.C. § 1324, *et seq.* in their housing practices.

**INTERROGATORY NO. 17:**

Describe your process for auditing or inspecting a Park resident's Lot or mobile home.

**RESPONSE TO INTERROGATORY NO. 17:**

Notwithstanding and without waiving Defendants' Objections, Defendants state that they would conduct annual inspections of a Park resident's Lot or mobile home. Defendants' agent would set up a time for the inspection and would inspect the Lot and mobile home to make sure it would comply with the Park rules and regulations.

**INTERROGATORY NO. 18:**

Describe the process by which, and reasons for which, you determined to move tenants with "unauthorized occupants" onto month-to-month leases, including the process by which, and reasons for which, you determined that such month-to-month leases required a Surcharge or rent increase.

**RESPONSE TO INTERROGATORY NO. 18:**

Notwithstanding and without waiving Defendants' Objections, Defendants state that starting in 2015, if Defendants discovered that unauthorized occupants were staying with a tenant, either by the tenant disclosing this information or by Defendants discovering an unauthorized occupant during an inspection of a mobile home, Defendants would send a letter to the tenant informing them that they cannot renew their lease until all adult occupants comply with the Policy. To avoid termination of the lease, Defendants switched those tenants to a month-to-month lease while the tenant attempted to comply with the Policy. Because of the added risk of such a short term lease, an additional monthly charge of $100 was instituted for a short period of time.

**INTERROGATORY NO. 19:**

Describe the process by which, and reasons for which, you determined to impose a $300 Surcharge on month-to-month leases as of June 1, 2016.

**RESPONSE TO INTERROGATORY NO. 19:**

While a notice regarding such a charge was sent out to all tenants, it was never imposed or collected.

**INTERROGATORY NO. 20:**

Identify the leaseholders to which you gave notice of the $300 Surcharge on month-to-month leases you determined to impose as of June 1, 2016, including whether you gave such notice to all tenants in the Park or only tenants you considered to hold "month-to-month" leases.

13

**RESPONSE TO INTERROGATORY NO. 20:**

Notwithstanding and without waiving Defendants' Objections, Defendants state that every tenant was sent the notice, but the $300 surcharge was not collected from any tenant.

**INTERROGATORY NO. 21:**

Describe any violation of Park rules and regulations or civil or criminal law by Plaintiffs.

**RESPONSE TO INTERROGATORY NO. 21:**

See prior responses.

**INTERROGATORY NO. 22:**

Describe each violation of Park rules and regulations or civil or criminal law by an adult occupant at the Park, and whether each individual was in compliance with the Policy.

**RESPONSE TO INTERROGATORY NO. 22:**

Defendants incorporate and rely on their Objections to Interrogatory No. 22.

**INTERROGATORY NO. 23:**

Describe each instance when a tenant was evicted for failure to pay rent, and whether such individual was in compliance with the Policy

**RESPONSE TO INTERROGATORY NO. 23:**

Defendants incorporate and rely on their Objections to Interrogatory No. 23.

**INTERROGATORY NO. 24:**

Describe your future plans, if any, to sell, redevelop, or make any major changes to the Park.

**RESPONSE TO INTERROGATORY NO. 24:**

Notwithstanding and without waiving Defendants' Objections, Defendants state that they have no future plans to sell, redevelop or make major changes to the Park.

**INTERROGATORY NO. 25:**

Describe each communication between you and any non-party to the above-captioned litigation, including without limitation communications between Albert J. Dwoskin and Jeff Franzen, regarding this litigation, media coverage regarding this litigation, the legality of the Policy, or media coverage regarding the legality of the Policy.

**RESPONSE TO INTERROGATORY NO. 25:**

Notwithstanding and without waiving Defendants' Objections, please see documents provided in response to Plaintiff's Request for Production of Documents, Set One.

**INTERROGATORY NO. 26:**

Describe the process by which you have considered the federal Fair Housing Act, the Virginia Fair Housing Act, the VRLTA, and/or the MHLRA in creating, developing, implementing, altering, or enforcing policies and practices at the Park, including specifically whether you considered the disparate impact that any policy or practice would have on a protected class.

**RESPONSE TO INTERROGATORY NO. 26:**

Notwithstanding and without waiving Defendants' Objections, please see documents provided in response to Plaintiff's Request for Production of Documents, Set One. Further, Defendants state that all employees have to complete a 3 hour Fair Housing webinar in order to be certified for one year.

**INTERROGATORY NO. 27:**

Describe the process by which you train, educate, and supervise your employees regarding the requirements of the federal Fair Housing Act, the Virginia Fair Housing Act, the VRLTA, and/or the MHLRA.

**RESPONSE TO INTERROGATORY NO. 27:**

Notwithstanding and without waiving Defendants' Objections, please see documents provided in response to Plaintiff's Request for Production of Documents, Set One. Further, Defendants state that all employees have to complete a 3 hour Fair Housing webinar in order to be certified for one year.

**INTERROGATORY NO. 28:**

Describe the number of Lots at the Park, the number of leases begun or terminated at the Park in each year since January 1, 2006, the number of applications received for residency at the Park in each of the same years, and the number of applications denied in each of the same years because a prospective tenant failed to produce documents verifying his or her lawful presence.

**RESPONSE TO INTERROGATORY NO. 28:**

Notwithstanding and without waiving Defendants' Objections, Defendants state that there are 152 Lots at the Park. Since the inception of using Yardi Resident Screening (June of 2013), Defendants have processed a total of 232 prospective applications with 45 being rejected. Defendant does not specifically track those applicants who are rejected because they failed to produce documents required by the Policy. If an individual did not provide the documents required by the Policy, their application should not have been sent to processing. The current reasons for rejection can include: No Credit Experience; Sever Level of Credit Problems or Bankruptcy; Criminal History; Insufficient / Borderline Income; Civil Court History.

Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT LIMITED
PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

_____
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

The above Interrogatories have been answered and are true to the best of my ability and knowledge.

_____
Mark Jones

COMMONWEALTH OF VIRGINIA                )
COUNTY OF _____         ) to-wit:

SUBSCRIBED and SWORN to before me on this ___ day of September, 2016.

_____
NOTARY PUBLIC

My commission expires: _____.

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2016, I caused the foregoing to be sent to the following via email to:

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Ariel Wade Trajtenberg (pro hac vice)
777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001-3706
Phone: (202) 538-8000
Fax: (202) 538-8100
arieltrajtenberg@quinnemanuel.com

_____
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
mdingman@reedsmith.com
jdebettencourt@reedsmith.com