## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

ROSY GIRON DE REYES, *et al.*,

        Plaintiffs,

v.

WAPLES MOBILE HOME PARK
LIMITED PARTNERSHIP, *et al.*,

        Defendants.

Civil No.:  1:16cv563-TSE-TCB

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE REPORT AND EXCLUDE TESTIMONY OF GEORGE C. CARUSO

US_ACTIVE-130597304

Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A. J. Dwoskin & Associates, Inc. ("Defendants"),  by counsel, hereby submit their Opposition to Plaintiffs' Motion to Strike Report and Exclude Testimony of George C. Caruso ("Motion"). For the reasons stated below, Defendants request that Plaintiffs' Motion be denied and for such other relief as is just and proper.

## INTRODUCTION

In s stunning display of gamesmanship, the Plaintiffs – having failed to contest Defendants' expert – George Caruso (who concluded that Defendants' Policy was reasonable) filed a last-gasp motion to strike Mr. Caruso later than the eleventh hour – at 2:38 a.m. the day before oral argument on the cross motions for summary judgment.  This motion is not even a thinly guised attempt to disrupt the Court's consideration of summary judgment motions; it is a blatant attempt to supplement Plaintiffs' arguments and to address – for the first time – the compelling opinions of Mr. Caruso that stand unrefuted.  The Court should not allow or reward such tactics.  Moreover, Plaintiffs' argument that  Mr Caruso – with more than forty years' experience in residential leasing – is unqualified to offer testimony regarding reasonable leasing practices is absurd.  So too is Plaintiffs'  incorrect legal argument that experience is an insufficient basis for expert testimony; Rule 702 of the Federal Rules of Evidence says just the opposite.  Plaintiffs' efforts to undermine Mr. Caruso at the last minute are improper and unavailing. The Motion should be denied.

## SUMMARY OF ARGUMENT

Setting aside the improper timing of the Motion and Plaintiffs' disregard for the Orders and Rules of this Court, the substance of the Motion is based on incorrect statements of the law, misdirection and the obfuscation of Mr. Caruso's experience and opinions.  Plaintiffs first

suggest that Mr. Caruso's more than forty years of experience managing over 100,000 residential units, and serving on numerous industry associations and panels, renders him unqualified to opine on residential leasing practices.  This argument is frivolous.  Plaintiffs next make a false legal argument contending that experience is not a basis for expert testimony.  Such an argument would require that Rule 702 be re-written.  That Rule and numerous decisions from the Fourth Circuit make clear beyond dispute that experience can be a basis for expert testimony.  Plaintiffs conclude by arguing that Mr. Caruso's testimony would not assist the Court or the jury.  This too is a baseless argument.  The average person does not have knowledge of the residential leasing industry or how underwriting decisions are made. Mr. Caruso's experience will undoubtedly assist the fact finder on this topic and with respect to the validity of the policy at issue in this case.

In their motion, Plaintiffs attempt to focus the Court on non-issues and to present a  false impression of Mr. Caruso and his opinions.  Mr. Caruso testified that he has forty years of experience in the residential leasing industry and has been involved in underwriting leases and setting leasing polices for nearly 100,000 residential units.  He testified that a critical part of the underwriting process is determining if an applicant has steady and reliable income and employment.  He then applied his experience and this underwriting process to the policy at issue here and concluded that inquiring into legal status is a reasonable part of the underwriting process because illegal aliens have very limited  and unstable employment opportunities.  He pointed to federal statutes prohibiting illegal aliens from employment to support his conclusions.  He also noted that illegal aliens do not have government documents verifying their identity – the gold standard in the industry – and that verifying the identity of an applicant is critical to the underwriting process. Mr. Caruso's opinions are clear, concise and based on his applied

- 2 -

experience in residential leasing.  Moreover, his conclusion that employment challenges for an illegal alien makes proper consideration of legal status is correct, supports Defendants' position that the policy serves a legitimate purpose and is properly considered by the Court or a jury; particularly since the Plaintiffs have no countering expert.

## **PLAINTIFFS' MOTION IS IMPROPER**

As noted above, Plaintiffs' Motion to Strike is a striking example of gamesmanship. However, the Court need not even consider Plaintiffs' Motion for three reasons: 1) Plaintiffs' late-filed Motion violated this Court's Scheduling Order; 2) Plaintiffs' Motion violated the meet and confer requirement in the Local Rules; and 3) Plaintiffs' Motion is an improper 18 page extension to Plaintiffs' already-considerable summary judgment briefing. First, the Court's August 18, 2016 Scheduling Order (Dkt. 47) states that "all motions, except for summary judgment and consent motions, ***shall*** be noticed for a hearing on the earliest possible Friday before the final pretrial conference…" (Dkt. 47 at 2(b)) (emphasis added). When Plaintiffs filed their motion at 2:38 a.m. the day before oral argument on the cross motions for summary judgment, the Court had already set the final pretrial conference for January 27, 2017. (Dkt. 164.) Yet, Plaintiffs, having never sought relief from the Court's Scheduling Order, noticed their Motion for February 17, 2016 – well after the final pretrial conference.  Second, Local Rule 7(E) requires a good faith effort at a meet and confer. Plaintiffs' counsel asked Defendants' to withdraw Mr. Caruso's opinion on Wednesday January 25, 2017 at 4:11 p.m.– effectively one business day before the oral argument on the cross motions for summary judgment. *See* **Exhibit 1**.  Counsel failed to cite any basis for the request besides a conclusory citation to Rules 702 and 403. *Id.* Without hearing back from Defendants, Plaintiffs filed their motion 10 hours later at 2:38 a.m. This is a blatant disregard for the meet and confer requirements in the Local Rules.

Finally, Plaintiffs' Motion acts as an improper 18 page extension to Plaintiffs' summary judgment briefing. Plaintiffs, late to the realization that they failed to contest Mr. Caruso's opinions or offer a countering expert in their summary judgment briefing, filed their Motion only to add on specious arguments that they failed to previously raise. In effect, Plaintiffs granted themselves 18 more pages of summary judgment briefing.

Accordingly, this Court should deny the Motion.

## **PROCEDURAL HISTORY**

Plaintiffs' late filed Motion is yet another example of the gamesmanship Plaintiffs have practiced throughout this case.  Defendants filed their Motion for Summary Judgment on November 23, 2016.  Plaintiffs asked for an extension of time until December 23, 2016 to respond to Defendants' Motion for Summary Judgment (Dkt. 106). Plaintiffs based their request in part on a sworn declaration from counsel that stated that Plaintiffs needed to depose Mr. Caruso to test his opinions "in advance of filing their Opposition." Odom Decl. ¶ 11 (Dkt. 106-3.) The Court granted that extension based upon Ms. Odom's declaration. November 29, 2016 Order (Dkt. 109 at 1). Yet, after the Court granted Plaintiffs' request and permitted a response by December 23, 2016, Plaintiffs requested to set Mr. Caruso's deposition **after** their Opposition would be due. *See* Dec. 7, 2016 Email from Plaintiffs' Counsel (requesting to set Mr. Caruso's deposition on **Dec. 27, 28 or 29**) (**Exhibit 2**).  Only after Defendants' counsel pointed out that their request made Ms. Odom's statements to the Court in paragraph 11 of her declaration false, did Plaintiffs relent and agree to set Mr. Caruso's deposition for December 20, 2016. *See* Dec. 7, 2016 Email from Defendants' Counsel (**Exhibit 3**).  Plaintiffs never wanted to test Mr. Caruso's opinions for their Opposition, they wanted to gain extra time to respond.

After deposing Mr. Caruso on December 20, 2016 and after Defendants filed their Reply in support of their Motion for Summary Judgment, Plaintiffs asked for Defendants' consent for an extension to file Plaintiffs' Reply in support of Plaintiffs' Motion for Summary Judgment, which Defendants provided.  (Dkt. 152.)   Plaintiffs had over a month since Mr. Caruso was deposed.  Yet, Plaintiffs never countered Mr. Caruso's opinions and never offered a countering expert to Mr. Caruso.  Plaintiffs never filed a motion attempting to strike Mr. Caruso until the **day before** oral argument on the cross motions. This Court should not countenance this type of behavior.

## <u>LEGAL STANDARD</u>

It is well-established that under Rule 702 "[a] witness may be qualified as an expert 'by knowledge, skill, experience, training, *or* education.'" *Garrett v. Desa Indus., Inc.*, 705 F.2d 721, 724 (4th Cir. 1983) (citing Rule 702) (emphasis within) ("The 'or' indicates that a witness may be qualified as an expert by any one of the five listed qualifications.").

Further, it is well established in the Fourth Circuit and in other federal courts "that an expert may be qualified on the basis of experience."  Fed. R. Evid. 702 (Official Note) (stating further that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."); *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (citing Advisory Note for the proposition that Rule 702 "expressly contemplates that an expert may be qualified on the basis of experience"); *Matter of 1616 Reminc Ltd. P'ship*, 9 B.R. 679, 688 (Bankr. E.D. Va. 1981) ("A witness may testify as an expert where his opinion is derived from practical experience[.]"). "One general rule governing the admission of such testimony indicates that when a person is engaged in an occupation for a reasonable time, it may be assumed that he has "the ordinary knowledge common to individuals so engaged." *Id.*

Under Rule 702, courts routinely permit expert opinion testimony based upon experience rather than scientific training in a variety of situations. *See, e.g. Gladhill v. Gen. Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir. 1984) (police officer with no engineering training permitted to offer opinion evidence as to the cause of an accident based upon experience); *Santana Marine Serv., Inc. v. McHale*, 346 F.2d 147, 148 (5th Cir. 1965) (plaintiff permitted to testify in his own case as an expert based upon his six years of experience building boat lifts); *Trustees of Chicago Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Trust Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787 (7th Cir. 2007) (Contractors permitted to testify as experts as to rates for drywall taping based upon experience). In fact, "[s]ome types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise." Rule 702, Advisory Committee Note; *Wilson*, 484 F.3d at 274 (same).

> Generally, the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered. One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion.

*Coleman v. Tyson Farms, Inc.*, No. 2:10cv403, 2011 WL 1833301 at *2 (E.D.Va. 2011) (citing *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989)). "A trial judge has broad discretion in determining whether to admit expert testimony, and in deciding what factors to consider in assessing whether expert testimony is relevant and reliable in a particular case." *Coleman*, 2011 WL 1833301 at *2 (citations omitted); *N.O. v. Alembik*, 160 F. Supp. 3d 902, 908 (E.D. Va. 2016) (recognizing Rule 702's "liberal standard" of admissibility); *see also* Rule 702, Advisory Committee Notes ("A review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule."). Moreover, "[t]he asserted fallibility of

[an] expert's assumptions affect[ ] the weight of his testimony, not its admissibility." *Coleman*, 2011 WL 1833301 at *3 (citing *Wilder Enters., Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1144 ( 4th Cir. 1980)).

## ARGUMENT

### A.    Plaintiffs' Contention That Mr. Caruso is Unqualified is Frivolous

Mr. Caruso is unquestionably qualified to offer his expert opinion on the reasonableness of a housing policy that requires prospective tenants to provide proof of legal status in the United Status.  Plaintiffs' argument to the contrary is frivolous in light of Mr. Caruso's report, his testimony explaining the basis for his opinions and his resume, which is attached to his report that outlines 44 years of relevant housing policy and management experience.

Mr. Caruso offered three opinions that relate to the basis for Defendants' policy requesting proof of legal status.  Mr. Caruso has opined that:

1.    It is a reasonable practice to require proof of legal status in the United States as part of an application process to lease either an apartment or mobile home lot.

2.    The legal status of an applicant is relevant to making underwriting decisions as whether to rent to a particular person because it impacts factor such as ***income***, ***sustained income***, ***reliable employment***, availability of HUD assistance and repossession of a unit or lot if necessary.

3.    The legal status of a potential resident is also necessary to determine the correct identity of the applicant person and to conduct an effective criminal background check of the applicant.

**Exhibit 4** at 1 (Mr. Caruso's Expert Report) (emphasis added). Mr. Caruso has substantial experience and knowledge of housing application processes (Opinion 1) and underwriting decisions on whether to rent to a particular person (Opinions 2 and 3).  Indeed, Mr. Caruso has managed apartments and condominiums since 1977. **Exhibit 4** at Ex. A (Mr. Caruso's Resume). Mr. Caruso has held a Certified Property Manager license since 1982. *Id.* The National

Association of Realtors notes that those who hold a Certified Property Manager license "are recognized as experts in real estate management and they are at the top of the profession." **Exhibit 5**.[1]   Mr. Caruso has served as a Chairman of both the Federal Advocacy Board and Federal Housing Advisory Board for the Institute of Real Estate Management.[2]  **Exhibit 4** at Ex. A.   Mr. Caruso has been appointed to the Best Practices Board of Directors for the Department of Housing and Urban Development ("HUD") by then HUD Secretary Andrew Cuomo. *Id.* Moreover, Mr. Caruso has served as Chairman, President, and/or Vice President of various National Housing Associations. *Id.*   Mr. Caruso also served as an Executive Director of the National Affordable Housing Management Association ("NAHMA") – an association that would "prepare and present or brief for presentation testimony for Congress."  *Id.* In this role, Mr. Caruso would work with Congress, HUD, the Department of Agriculture and the Department of Treasury. Caruso Dep. Tr. at 15:20-16:6 (**Exhibit 7**).

Further, Mr. Caruso has managed residential properties for various large property management companies since 1977. *See* **Exhibit 4** at Ex. A.   At his deposition, Mr. Caruso elaborated on his substantial experience. **Exhibit 7** at 9 – 16.   He testified that he has  44 years of experience in managing properties. *Id.* at 9:8-9.   He currently manages 5,000 multifamily units. *Id.* at 9:10-21. In this role, he is basically "the in-house expert on operations and property management." *Id.* at 10:6-7.   He is the reviewer of drafts of the policies "across the whole board" including "policies on admissions, policies on tenant file management, federal regulatory policies, bidding, management, contracting, you name it" for the properties. *Id.* at 11:22-12:12.

---

[1] Available at https://www.nar.realtor/designations-and-certifications/cpm.
[2] "The Institute of Real Estate Management (IREM) is an international community of real estate managers dedicated to ethical business practices, maximizing the value of investment real estate, and promoting superior management through education and information sharing." **Exhibit 6**. Available at http://www.irem.org/about-irem.

Mr. Caruso would also create these policies. *Id.* Mr. Caruso served as the executive vice president and chief knowledge officer for Edgewood Management. *Id.* at 12:18-22. In these roles, Mr. Caruso drafted and enforced the policies for Mid-City Financial Corporation and Edgewood Management Corporation, which manages 165-175 properties consisting of around 30,000 units. *Id.* at 12:18-13:5. While working for American Diversified Capital Corporation, Mr. Caruso managed around 55,000 units in more than 300 locations. *Id.* at 14:3-15:16. Then Mr. Caruso managed 20,000 units for the Mitchell Company, followed by managing 8,000 units for Alco Properties, all before Mr. Caruso served as an executive director for the NAHMA and then went to work for Edgewood. *Id.*

Plaintiffs argue that Mr. Caruso is unqualified to offer opinions on what reasonable tenant application practices are because Mr. Caruso relies only on his own personal experience. Motion at 6 – 10. As noted above, such a claim is baseless as it is well-established that an expert may rely on his own personal experience for his expert opinions. *Wilson*, 484 F.3d at 274 ("To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience."); *Kumho Tire Co.*, 526 U.S. at 156.("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").[3]

As detailed above, Mr. Caruso has extensive experience – 44 years – in owning and

---

[3] The one case that Plaintiffs cite to in support of their baseless claim that Mr. Caruso is not qualified to offer his opinion is inapposite. The expert in *Derrickson* reached the ultimate conclusion – that the Defendant in an employment discrimination case was in fact discriminating. 84 F. Supp. 2d 679, 688 (D. Md. 2000). The expert based that opinion on different employment practices at different companies. *Id.* The court excluded the opinion because the expert admitted he is not familiar with the Defendants' employment practices. *Id.* at 688-89. By contrast, here, Mr. Caruso is familiar with the Policy that is being challenged **Ex. 7** at 49:19-50:7 and Mr. Caruso has had substantial experience with a policy requesting proof of legal status and in fact has such a policy in place at his properties. **Exhibit 7** at 22:15-23:7. Unlike the expert in *Derrickson*, Mr. Caruso is not opining Defendants' Policy is reasonable based on experience with completely different policies.

managing residential properties sufficient to provide his three opinions. In an attempt at misdirection, Plaintiffs' argue that Mr. Caruso has no experience in mobile home park leasing; however, Plaintiffs fail to state how this distinction without a difference would affect Mr. Caruso's opinions on housing policies and underwriting decisions. Plaintiffs' remaining argument regarding Mr. Caruso's experience is also pure misdirection.  Plaintiffs argue that Mr. Caruso does not have specialized knowledge on issues that are unrelated or tangential to Mr. Caruso's opinions. Motion at 7-9.  Mr. Caruso is not offering an opinion on whether illegal aliens provide proper notice when they leave a property or each state's individual sex offender registry requirements. Motion at 7.[4]

Moreover, Mr. Caruso does have specialized knowledge despite Plaintiffs' claims. Mr. Caruso discussed what a U.S. Visa enables a person to do even though that is tangential to Mr. Caruso's opinions. **Exhibit 7** at 54:8-19. He testified to experience with U.S. Visas, ITINs or I-94 forms. *Id.* at 54:21-55:10. Mr. Caruso discussed: his knowledge of green cards and how they could be part of an application process for his properties (*Id.* at 55:12-22); his knowledge of how Social Security numbers are used to verify the identity of prospective applicants and other information that is used to verify the identity of prospective applicants and reduce false positives in a criminal history search (*Id.* at 74:10 – 75:6); his past experience with undocumented immigrants who provided forged documents (*Id.* at 36:8-10; 37:9-19; 38:1-3); and his intimate knowledge of immigration legislation, such that he could recall that Representative Hyde was the principal sponsor of a bill (*Id.* at 97:10-19).

Plaintiffs ignore the very language of Rule 702 that permits an expert to offer his opinions based on his experience.  It is obvious that Mr. Caruso has substantial experience to

---

[4] One of the questions Plaintiffs reference, Motion at 7 (citing 111:10-12) does not even make sense because counsel never explains what the comparator is for the question.

base his opinions on.  Accordingly, Plaintiffs' claim that Mr. Caruso is not qualified is frivolous.

**B.      Mr. Caruso's Testimony is Based on Sufficient Facts and Data**

In *Wilson,* the Fourth Circuit set forth the basis to determine the sufficiency of an "experiential expert."  Applying *Wilson* shows that Mr. Caruso's opinions are not only reliable, but correct and unrefuted.

"Experiential expert testimony, on the other hand, does not "rely on anything like a scientific method." *Wilson*, 484 F.3d at 274 (citing Rule 702 Advisory Committee Note) "But this does not lead to a conclusion that "experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.'" *Id.* Thus the task for a district court in examining the reliability of experiential expert testimony is therefore somewhat more opaque[.]" *Id.* The district court must require "an experiential witness to 'explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts.'" *Id.*

Not only did Mr. Caruso explain the bases for his opinions in his report, but at his deposition, Mr. Caruso repeatedly explained the logical bases for his opinions.  Mr. Caruso testified that in the residential leasing industry, in deciding to permit someone to lease a residential unit, a landlord is granting "someone credit to the tune of somewhere between 15,000 and 40,000 a year" and in the event a tenant cannot pay, a landlord can face "a long fight in the courts" and "could lose a lot of money" in order to reclaim the property. **Exhibit 7** at 125:6-126:7. He testified that he knew the key issue with Defendants' policy is the requirement for proof of legal status.  Applying his industry knowledge to that issue,  Mr. Caruso testified that

since an illegal alien cannot legally work in this country, "how are they going to earn the money to pay their rent?". *Id.* at 125:9-10; 109:14-15 (noting that underwriting needs to focus on whether a tenant can get legitimate employment).; 111:18-20 (same); 118:14-119:13. Moreover, Mr. Caruso acknowledged that if a landlord is receiving employment verifying information from an employer who is violating immigration law by hiring an illegal alien, a landlord cannot trust that employer because they are openly violating a federal statute. *Id.* at 119:10-13. At the conclusion of his deposition, Mr. Caruso summed up the logical reasoning for his opinion succinctly:

> Well, we touched on this, I think, half a dozen times, and I've tried to be consistent about it, but what it boils down to is when we're leasing stuff, the rent has to get paid. ***And if they can't be legally employed, how do you assure yourself that the rent is going to get paid.***

*Id.* at 129:6-11 (emphasis added).

Moreover, Mr. Caruso testified that asking for proof of legal status helps verify the identity of an applicant because government documents "***are among the gold standards*** in terms of decent third-party documentation." *Id.* at 116:10-117:1 (emphasis added). Mr. Caruso also testified that it is reasonable to ask for proof of legal status because federal policy prohibits granting federal assistance to anyone who is not properly admitted to the United States, **Ex. 4** at 1, and it is reasonable to adopt "***the most restrictive standard, which is the federal standard.***" **Ex. 7** at 28:20-21.   Plaintiffs focus their entire argument on whether Waples receives federal funding but Plaintiffs completely ignore the logical bases for Mr. Caruso's opinions – that is (1) if someone cannot be legally employed how does the landlord assure itself that rent will be paid; and (2) government documents are the gold standard in verifying an applicant's identity to ensure criminal background checks are run on the right person.

Plaintiffs' contention (based on taking isolated excerpts from his deposition) that Mr. Caruso offers *ipse dixit* opinions is incorrect. Mr. Caruso's basis for his opinions is not because "he says so", rather, as noted above, Mr. Caruso explains the basis for his opinions repeatedly throughout his deposition. Plaintiffs' disagreement with his conclusions or the basis for his opinions does not affect the admissibility of his opinions. *See Coleman*, 2011 WL 1833301 at *3. Courts permit expert testimony that is supported by disclosed reasoning. *See VS Technologies, LLC v. Twitter, Inc.*, 2:11cv43, 2011 WL 4744572 at *6 (E.D.Va. 2011) (allowing expert testimony where expert had 40 years' experience in patent licensing and had the ability to apply that experience to the facts of the case); *East West, LLC v. Rahman,* 1:11cv1380, 2012 WL 4105128 at *4-5 (E.D. Va. 2011) (allowing expert witness testimony and explaining that the "admissibility test does not turn on whether the opinion has the best foundation or whether it is supported by the very best methodology, or unassailable research"); *see also Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 761-62 (7th Cir. 2010) (finding an expert's testimony was not *ipse dixit* because it was supported by facts from the case and informed by the expert's experience in the relevant industry).

Any alleged issues Plaintiffs take with Mr. Caruso's opinion go to the weight that Mr. Caruso's testimony should be given, and not its admissibility. *N.O. v. Alembik*, 160 F. Supp. 3d at 908 ("It is equally well-settled that gaps in an expert's knowledge generally go to the weight of the witness's testimony, not its admissibility.") *Coleman*, 2011 WL 1833301 at *3 (E.D. Va. 2011) ("'The asserted fallibility of [an] expert's assumptions affect[] the weight of his testimony, not its admissibility.'") (citing *Wilder Enters., Inc.*, 632 F.2d at 1144).

Indeed, the Fourth Circuit has explained that when considering the admissibility of expert testimony "the court 'need not determine that the proffered expert testimony is irrefutable or

certainly correct,' since like all forms of testimony, 'expert testimony is subject to testing by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'"  *Pugh v. Louisville Ladder, Inc.*, 361 Fed. App'x 448, 451 (4th Cir. 2010) (internal citations omitted).  Accordingly, Mr. Caruso's testimony should be allowed and the jury can evaluate what weight to give to Mr. Caruso's testimony.

C.    **Mr. Caruso's Opinions Are Reliable**

Mr. Caruso's opinions are sufficiently reliable because they are based on Mr. Caruso's substantial experience in the housing industry and his knowledge of the industry. *Wilson*, 484 F.2d at 274 (noting that under Rule 702 an expert may be qualified on the basis of his experience); Fed. R. Evid. 702, Advisory Notes ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.").  As noted above in section A, supra, Mr. Caruso has substantial experience – 44 years of it – in managing over a hundred thousand units. This experience includes, *inter alia*, drafting and reviewing policies for tens of thousands of units, sitting as the head of a trade association, knowledge of federal regulations and laws, and knowledge of background check processes. *See supra* Section A. Mr. Caruso identified the bases for his opinion in his report. *See supra* Section B.  In fact, Mr. Caruso's Opinions 2 and 3 are the lease underwriting rationales for how Mr. Caruso arrived at Opinion 1.  *See* **Exhibit 4**.  Yet, Plaintiffs argue that Mr. Caruso should be struck because he does not provide scientific data or analysis – an impossible task when an expert is relying on his own experience to provide an opinion. This is an obvious straw man argument that fundamentally misunderstands the law and the opinions provided by Mr. Caruso. Neither of the cases Plaintiffs cites to contradict the established principle that an expert may testify from their

own experience.[5] Mr. Caruso need not provide statistical data or some scientific analysis when he is relying on his own experience to provide his opinions.  Of course, Plaintiffs had an opportunity to identify a countering expert if they felt there was a different opinion in the industry – but Plaintiffs failed to do so.  Mr. Caruso's opinions are reliable.

### D.    Mr. Caruso's Opinion Will Aid the Trier of Fact.

"Rule 702 of the Federal Rules of Evidence provides that testimony concerning the opinion of experts is admissible if it will assist the trier of fact to understand the evidence or to determine a fact in issue." *Friendship Heights Assoc. v. Vlastimil Koubek, A.I.A.*, 785 F.2d 1154, 1159 (4th Cir. 1986) (citations and quotations omitted). "***Helpfulness is the touchstone of Rule 702***." *Id.* (emphasis added); "Testimony from an expert ***is presumed to be helpful*** unless it concerns matters within the everyday knowledge and experience of a lay juror." *U.S. v. Pineda-Zelaya*, 2011 WL 5252558, at *1 (4th Cir. Nov. 4, 2011) (emphasis added). Furthermore, "[t]he rule must be broadly interpreted." *Id.*  Housing policies, tenant application and management policies, and lease underwriting policies, while not scientific, certainly encompass a specialized area of knowledge that is not a subject within the purview of the average lay person.  Not only will Mr. Caruso's opinion aid the average lay person, but Mr. Caruso's opinions are substantially tethered to the facts of this case because Mr. Caruso is offering the opinion that based on his nearly half-century of experience in managing over a hundred thousand units that a policy requiring proof of legal status as a part of a tenant's application process is reasonable. **Exhibit 4**.

---

[5] *Copeland* involved a musical expert who proffered opinions in a copyright infringement case. 2016 WL 7079569, at *4-5 (E.D. Va. Sept. 8, 2016). The expert opined that songs sounded alike and did not explain how he reached that conclusion. *Id.* By contrast, Mr. Caruso explained that a policy requesting proof of legal status is reasonable due to lease underwriting concerns because an illegal alien will likely have trouble with gainful employment because it is illegal to hire illegal aliens. *Dunn* involved an expert who did little more than read the Complaint and offer the opinion that the Plaintiff should prevail. 2002 WL 32591881, at *2 (E.D. Va. Dec. 12, 2002). Those facts are inapposite.

Mr. Caruso need not review the individual circumstances of the Plaintiffs in order to deliver that opinion. Rather, Mr. Caruso can rely on his substantial experience as permitted by Rule 702.

Mr. Caruso explained that he had a sufficient knowledge of the facts of the case so as to offer his opinion that it is reasonable as  part of an application policy to ask for proof of legal status.  As noted above, Plaintiffs isolated deposition excerpts are misdirection. Indeed, Mr. Caruso described the policy that is being challenged in this litigation:

> Q.    Well, I'd like for you to take a crack at it for me. Are you able to describe the policy that's been challenged in this litigation?
>
> A.    As I understand it, the key question here is the owners and operators of Waples are being challenged over their requirement that everyone that is an adult leaseholder has to be in this country legally. Now, whether that means they are a citizen or resident alien or some other form of legal residence in the country, they have to be here legally.

**Exhibit 7** at 49:19-50:7. Indeed, Mr. Caruso began testifying as to Defendants' reasons to that Policy before Mr. Caruso was instructed not to answer in order to avoid revealing communications protected under Rule 26 and the work-product doctrine.[6]

> I think it's a general proposition, they want to make sure when they're underwriting folks, that they have a reasonable assurance that the rent is going to get paid. And in order to have a reasonable assurance the rent is going to get paid, that generally means somebody is going to have to have a job. And we've been around that bush already.

*Id.* at 52:12-19.  Plaintiffs' suggestion that Mr. Caruso's opinions are unconnected to the facts of is flat wrong.

Neither of Plaintiffs' two cases supports their argument and neither case is controlling.

---

[6] At Mr. Caruso's deposition, Plaintiffs repeatedly attempted to discover communications between Mr. Caruso and counsel that are protected under as work-product under Fed. R. Civ. P. 26. Plaintiffs now attempt to turn this improper questioning to their benefit. Moreover, Plaintiffs have had since December 20, 2016 to file a motion to resolve counsel's instructions if Plaintiffs found them improper. Tellingly, Plaintiffs failed to file such a motion. Now, the day before the hearing on the cross-motions, Plaintiffs filed their Motion that complains of counsel's instructions. This argument is plainly insincere, and the Court should not afford it any credibility.

*Bourne* was a toxic tort case regarding allegations that a chemical, benomyl, caused birth defects. 189 F. Supp. 2d 482, 483 (S.D. W. Va. 2002). There, the experts made a determinative conclusion in the case - that benomyl causes birth defects. *Id.* at 499. However, the experts relied on rat testing and cell culture testing to reach that broad conclusion regarding **human** birth defects even though the rat testing and cell culture testing involved much higher doses of benomyl than alleged in the facts of the case. *Id.* at 498-99. Therefore, the court excluded the two experts' extrapolated opinions. The facts and reasoning of *Bourne*, therefore, are completely unconnected to this case. The expert in *Derrickson* reached the ultimate conclusion – that the Defendant in an employment discrimination case was in fact discriminating. 84 F. Supp. 2d 679, 688 (D. Md. 2000). The expert based that opinion on different employment practices at different companies. *Id.* The Court excluded the opinion because the expert admitted he is not familiar with the Defendants' employment practices. *Id.* at 688-89. By contrast, here, Mr. Caruso is familiar with the Policy that is being challenged and Mr. Caruso has had substantial experience with a policy requesting proof of legal status and in fact has such a policy in place at his properties. **Exhibit 7** at 22:15-23:7. Unlike the expert in *Derrickson*, Mr. Caruso is not opining Defendants' Policy is reasonable based on experience with completely different policies.

Furthermore, Plaintiffs even admit that Mr. Caruso's opinions are relevant to Defendants' defenses. Motion at 5 (Mr. Caruso's opinions are relevant, if at all, to Defendants' affirmative defenses…"). Of course, here, Plaintiffs acknowledge the obvious. If a housing expert with 44 years of experience in lease underwriting and the management of residential properties opines that it is reasonable to ask for proof of legal status as an application policy, the opinion is directly relevant to the credibility of Defendants' proffered reasons for the policy because it is an independent opinion corroborating the reasonableness of such a policy. Moreover, the opinion is

directly relevant to Plaintiffs' burden, if even reached by the Court at the summary judgment stage, to show that the Policy's rationale is false **and** the real reason for the Policy is discrimination.  Mr. Caruso's opinions are clearly connected to the facts of this case and Plaintiffs' argument to the contrary fails.

### E.    Plaintiffs' Claim That Mr. Caruso's Opinion is Prejudicial is Baseless

As explained above, Mr. Caruso's logical opinions are supported by his substantial – 44 years – of experience in managing tens of thousands of units.  Under Rule 702 and well-settled law, Mr. Caruso is entitled to offer his expert opinion based on his nearly half-century of experience in lease underwriting.  *Wilson*, 484 F.3d at 274 (citing Official Note for the proposition that Rule 702 "expressly contemplates that an expert may be qualified on the basis of experience").  Indeed, Mr. Caruso has had substantial experience in reviewing and drafting policies for these tens of thousands of units. *See supra.*  Mr. Caruso explained the bases for his opinions in both his report and at his deposition.  Among the bases for his opinions that Mr. Caruso discussed, Mr. Caruso succinctly stated one of the bases for his opinion thusly:

> what it boils down to is when we're leasing stuff, the rent has to get paid. ***And if they can't be legally employed, how do you assure yourself that the rent is going to get paid.***

Mr. Caruso's opinion makes logical sense as immigration law makes it illegal to hire illegal aliens. *See* 8 U.S.C. § 1324, *et seq.* ("IRCA").   Plaintiffs' claim that Mr. Caruso's opinion is personal conjecture is baseless.

Not only do Plaintiffs ignore that Rule 702 permits Mr. Caruso to testify on the basis his experience but Plaintiffs ignore settled law that the "[t]he asserted fallibility of [an] expert's assumptions affect[ ] the weight of his testimony, not its admissibility." *Coleman*, 2011 WL 1833301 at *3; *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)

(citation omitted) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").  Furthermore, Defendants contended that other properties managed by Defendants and Defendants' *awareness* of other individual landlords with similar policies were not relevant. Plaintiffs accepted these objections made months ago. Defendants' expert is not precluded from offering his opinion based on his substantial experience because Defendants objected to the relevance of Defendants' other properties and Defendants' awareness of other individual landlords' policies.

This Court should not give Plaintiffs' Motion any credence, given that Plaintiffs ignore the very language of Rule 702 permitting an expert to testify on the basis of his experience. Plaintiffs' Motion and the timing of its filing represent nothing more than gamesmanship designed to fix Plaintiffs' failure to adequately counter Mr. Caruso in their summary judgment briefing.

## CONCLUSION

For the reasons stated above, Defendants respectfully request the Court to deny Plaintiffs' Motion to Strike and for such other relief as is just and proper.

Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT LIMITED
PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of February, 2017, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/ _____
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*