**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ, | |
| *Plaintiffs*, | Civil Action No. 1:16cv00563-TSE-TCB |
| vs. | |
| WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC., | |
| *Defendants*. | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF GEORGE C. CARUSO**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.      PLAINTIFFS' MOTION IS PROCEDURALLY PROPER ...............................................2

      A.      Plaintiffs Have Not Violated the Scheduling Order ...............................2

      B.      Plaintiffs Did Not Violate Local Rule 7(E) .........................................4

      C.      Plaintiffs' Motion is Not an Extension of the Summary Judgment Briefing..........5

II.     MR. CARUSO IS NOT QUALIFIED BASED ON HIS EXPERIENCE, AND IN ANY EVENT, DEFENDANTS APPLY THE WRONG LEGAL STANDARD FOR DETERMINING ADMISSIBILITY OF EXPERT TESTIMONY BY FOCUSING SOLELY ON QUALIFICATIONS .................................................6

III.    MR. CARUSO'S OPINIONS DO NOT MEET THE REQUIREMENTS OF RULE 702—AND DEFENDANTS FAIL TO SHOW OTHERWISE ............................9

      A.      Mr. Caruso Does Not Rely on Facts or Data ........................................9

      B.      Defendants Do Not Make A Sufficient Showing that Mr. Caruso's Opinions are Reliable...............................................................12

      C.      Introduction of Mr. Caruso's Report or Testimony will not Assist the Trier of Fact. ...............................................................13

      D.      Mr. Caruso's Opinions Will Unduly Prejudice Plaintiffs. .....................16

CONCLUSION....................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*, No. CIV.A. 2:07CV415,
2009 WL 5842051 (E.D. Va. Jan. 6, 2009) ............................................................16

*Anderson v. Nat'l R.R.  Passenger Corp.*,
866 F. Supp. 937 (E.D. Va. 1994), *aff'd*, 74 F.3d 1230 (4th Cir. 1996) ................................6, 7

*Bourne ex rel. Bourne v. E.I. Dupont de Nemours & Co, Inc.*, 189 F. Supp. 2d 482, 483
(S.D. W. Va. 2002)  ............................................................14, 15

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)............................................................12, 13

*Derrickson v. Circuit City Stores, Inc.*, 84 F. Supp. 2d 679, 688 (D. Md. 2000)  ........................14

*Hunt v. Calhoun Cty. Bank, Inc.*,
8 F. Supp. 3d 720 (E.D. Va. 2014) ............................................................5

*Kolon Indus., Inc. v. E.I. Dupont De Nemours & Co.*,
No. 3:11CV622, 2012 WL 12894840 (E.D. Va. Feb. 23, 2012) ............................................5

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)............................................................8, 12

*Musselman v. Phillips*,
176 F.R.D. 194 (D. Md. 1997)............................................................14

*Pitt Ohio Exp., LLC v. Pat Salmon & Sons, Inc.*,
532 F. App'x 439 (4th Cir. 2013)............................................................13

*Thomas J. Kline, Inc. v. Lorillard, Inc.*,
878 F.2d 791 (4th Cir. 1989) ............................................................7

*U.S. ex rel. Ubl v. IIF Data Solutions*,
650 F.3d 445, 161 Lab. Cas. (CCH) P 10367 (4th Cir. 2011), *cert. denied*,
132 S. Ct. 526, 181 L. Ed. 2d 352 (2011) ............................................................13

*United States v. Dorsey*,
45 F.3d 809 (4th Cir.1995) ............................................................14

*United States v. Wilson*,
484 F.3d 267 (4th Cir. 2007) ............................................................6, 9, 10

## Statutes

Fed. R. Civ. P. 26(b)(4)(C) ............................................................14

Fed. R. Civ. P. 26(b)(4)(C)(ii) ........................................................................................14

Fed. R. Civ. P. 26(b)(4)(C)(iii) .......................................................................................14

Fed. R. Evid. 403 .........................................................................................................1, 16

Fed. R. Evid. 702 ...................................................................................................1, 6, 10

Fed. R. Evid. 702(a) ........................................................................................................13

E.D. Va. Local Civ. R. 7(E) ...........................................................................................4, 5

Va. Code § 55-248.41 *et seq* ............................................................................................8

**<u>Miscellaneous</u>**

Dave Reynolds & Frank Rolfe, *Real Estate Investing: Advantages of Mobile
  Home Parks vs. Apartments*, American Apartment Owners Association,
  http://www.american-apartment-owners-association.org/property-management/
  latest-news/real-estate-investing-advantages-of-mobile-home-parks-vs-
  apartments/#sthash.iouivMNs.dpuf (last visited Feb. 7, 2017) .................................8

## <u>INTRODUCTION</u>

Plaintiffs moved to strike the report and exclude the testimony of Mr. Caruso, Defendants' expert, on January 26, 2017 (Dkt. 168), on several grounds under Fed. R. Evid. 702 and 403, including that Mr. Caruso lacked sufficient relevant experience, demonstrated no methodology or analytical rigor, would not assist the jury, and the probative value of his testimony would be outweighed by unfair prejudice.

Defendants opposed Plaintiffs' motion on February 3, arguing that Plaintiffs' motion is improper for various reasons, including that it is untimely, and that Mr. Caruso is a qualified and helpful expert.  In contending that Mr. Caruso should be permitted to offer his opinions and testify at trial, Defendants overlook the weight of Mr. Caruso's deposition testimony, highlighted in Plaintiffs' opening brief, and the baldness of his expert report.

Throughout Mr. Caruso's testimony, he offered admissions that demonstrated beyond doubt that he was both offering opinions without sufficient basis, and that those opinions were untethered to the facts of this case.  Defendants do not dispute that Mr. Caruso was not shown even one document related to this case—not even the Complaint—or that they improperly asserted privilege to prevent Mr. Caruso from describing the relevance of his report, as he understood it.  Nor do Defendants dispute that despite Mr. Caruso's general personal experience, he lacks experience that would make his knowledge applicable to the facts of this case or helpful to the jury.

Plaintiffs have demonstrated that Mr. Caruso is not an expert appropriately admitted to testify in this matter, and Defendants have failed to rebut this.  Mr. Caruso's report should be stricken, and his testimony excluded in full.

## ARGUMENT

## I.    PLAINTIFFS' MOTION IS PROCEDURALLY PROPER

Lest Defendants' accusations of Plaintiffs' purported "gamesmanship" distract from the legitimate issues of Mr. Caruso's inadmissibility as an expert in this case, Plaintiffs will first dispose of Defendants' arguments concerning the supposed impropriety of Plaintiffs' motion. Contrary to Defendants' complaints, Plaintiffs' motion (1) is not untimely; (2) does not violate the Local Rules' meet and confer requirement; and (3) is not an "improper 18-page extension" to the summary judgment briefing.

### A.    Plaintiffs Have Not Violated the Scheduling Order

Defendants claim that Plaintiffs violated the Scheduling Order because they filed a motion that was set to be heard after the Pretrial Conference.  Defendants misread the Scheduling Order to state that no motions (including *Daubert* motions and motions in limine) may be brought unless they are fully briefed and noticed for hearing the Friday before the Final Pretrial Conference.  Of course, this cannot be what the Court intended or what Defendants truly understood.  If the Scheduling Order's reference to "all motions," (Dkt. 47) at 2, was intended to include motions such as Plaintiffs' motion to strike Mr. Caruso's report and exclude his testimony, this would have generated literal impossibilities in the schedule that the Court would not knowingly cause.

On August 18, 2016, the Court entered a Scheduling Order (Dkt. 47), which adopted the parties' Joint Discovery Plan schedule (Dkt. 41) and set "all motions," except consent and summary judgment motions, to be noticed for a hearing on the earliest possible Friday before the Final Pretrial Conference on December 15.  This provision could not have applied to trial-related motions, such as motions to strike experts from being presented at trial.  Initially, Defendants' expert reports were due to Plaintiffs on November 18 (Dkt. 41) (later amended to be due on

2

November 28 (Dkt. 66)), with discovery to close on December 9—six days before the Final Pretrial Conference on December 15, 2016.

On that original schedule, it would have been infeasible to fully brief a motion to exclude an expert from trial and notice a hearing before the Final Pretrial Conference, because it would have required Plaintiffs to file a motion to strike within one week of receiving an expert report—whether or not they were able to schedule and complete depositions of any experts within that time. Under Defendants' interpretation of the Scheduling Order, moreover, Defendants themselves would have been automatically precluded from bringing a motion to exclude any portions of Plaintiffs' experts' rebuttal reports, which were not due until November 30. Under Defendants' view, all motions *in limine* would be due before receiving the other party's witness and exhibit lists, and motions concerning issues arising during or after trial would be entirely precluded.

Per Defendants' request to Plaintiffs, the parties submitted a joint request to amend the expert schedule on October 5, 2016 (Dkt. 64). The Court granted the request and amended the schedule on October 6, 2016, (Dkt. 66), making Plaintiffs' expert reports due on October 28, 2016, Defendants' expert reports due on November 28, 2016, and Plaintiffs' reply reports due on December 9, 2016. The October 6, 2016 Amendment *did not move* the December 15 Final Pretrial Conference. *See* Dkt. 66 at 2 (stating that all other deadlines remained in place). With the schedule as amended in October, it would have been impossible for Plaintiffs to bring any motion arising out of expert reports and deposition testimony; any such motions could not have been fully briefed and noticed for hearing by the Friday prior to the December 15 Final Pretrial Conference, even if Plaintiffs filed motions *the day after* receiving Defendants' rebuttal reports. Moreover, Defendants, under their interpretation, could not have availed themselves of

3

Plaintiffs' Reply Reports, or deposition testimony on such reports, in choosing whether to file their own motions.

Defendants' argument that Plaintiffs have violated the Scheduling Order by filing a pre-trial motion to strike Mr. Caruso's report and exclude his testimony is thus incorrect.

**B.    Plaintiffs Did Not Violate Local Rule 7(E)**

Defendants also contend that Plaintiffs violated the Local Rule 7(E) meet and confer requirement. But in support of this claim, Defendants append Exhibit 1, which contradicts Defendants' own position. Indeed, Exhibit 1 is an email from January 25, 2017, the day before Plaintiffs filed their motion, from Plaintiffs' counsel to Defendants' counsel, demonstrating that Plaintiffs endeavored in good faith to comply with Local Rule 7(E) by requesting that Defendants withdraw Mr. Caruso's report and agree not to call him at trial, offering to meet and confer, and otherwise stating their intent to file the instant motion. None of the three attorneys for Defendants who were included on the message responded in any way—either to acknowledge the message, agree to withdraw Mr. Caruso's report and not call him at trial, request that Plaintiffs refrain from filing so that Defendants could consider withdrawing Mr. Caruso, or to express a desire to discuss Plaintiffs' request. Nor have Defendants contacted Plaintiffs since then to inquire whether Plaintiffs will agree to withdraw their instant motion and discuss a compromise. Defendants certainly cannot dispute that the parties are at an impasse on this issue, given their scathing opposition brief.

Plaintiffs made a good faith effort to discuss alternatives to motions practice in this instance, but were met with silence and were therefore compelled to file their motion. There has been no violation of Local Rule 7(E).[1]

---

[1]  Even if Plaintiffs' had failed to meet and confer, the Court should reject Defendants' request to deny the motion on that basis. *See* Defs.' Opp. at 3-4. "Failure to meet and confer does not

### C.    Plaintiffs' Motion is Not an Extension of the Summary Judgment Briefing

Defendants also claim that Plaintiffs' motion constitutes an "improper 18 page extension to Plaintiffs' summary judgment briefing." Defendants' Opposition Plaintiffs' Motion to Strike Report and Exclude Testimony ("Defs.' Opp.") at 4. Defendants misunderstand the purpose of Plaintiffs' motion, which is designed to prepare the case for trial, not to re-litigate issues already fully briefed in summary judgment. Having completed summary judgment briefing, and believing that their case will proceed on certain claims, Plaintiffs are looking towards the next stage: trial.

Defendants' characterization of Plaintiffs' motion as a collateral attack on Defendants' summary judgment motion is demonstrably inaccurate. There was no substantial inclusion of Mr. Caruso's opinions or conclusions in Defendants' summary judgment briefing. In fact, Defendants cite to Mr. Caruso just twice, Defs.' Reply ISO S.J. and Opp. to Plfs.' Cross-Mot. for S.J. (Dkt. 150) at 7, 25, and do not appear to rely on his opinions for their arguments. For the reasons set forth in Plaintiffs' opening brief, Mr. Caruso is not a central component of Defendants' case—nor could he be given his opinions' limited connection to the facts and issues in the case.[2] Plaintiffs contemplated no improper influence on the summary judgment process through this motion.

---

automatically result in denial of a motion." *Hunt v. Calhoun Cty. Bank, Inc.*, 8 F. Supp. 3d 720, 731 (E.D. Va. 2014) (denying request to impose sanctions and refusing to disregard motion for failure to meet and confer). This is particularly true, here, where even if Defendants had agreed to Plaintiffs' request for a meet and confer, the discussion certainly would not have "narrow[ed] the area of disagreement" or obviated the need for the motion. *See* E.D. Va. Local Civ. R. 7(E).

[2] Defendants' accusation that Plaintiffs' counsel, Ms. Odom, made a misrepresentation to the Court in her November 28, 2016 Declaration (Dkt. 106-3) in support of Plaintiffs' Motion for an Extension of Time to respond to Defendants' summary judgment motion (Defs.' Opp. at 4) is both inappropriate and untrue. Ms. Odom's declaration was filed on November 28, the same night that Defendants served their expert reports. At the time Ms. Odom's Declaration was prepared and submitted, Plaintiffs had not yet had an opportunity to review Mr. Caruso's Report. As stated in the declaration, Plaintiffs believed that the opportunity to depose

## II.    MR. CARUSO IS NOT QUALIFIED BASED ON HIS EXPERIENCE, AND IN ANY EVENT, DEFENDANTS APPLY THE WRONG LEGAL STANDARD FOR DETERMINING ADMISSIBILITY OF EXPERT TESTIMONY BY FOCUSING SOLELY ON QUALIFICATIONS

Defendants attempt to skirt the strictures of Rule 702 by asserting that Mr. Caruso's "substantial experience" automatically qualifies him to testify as an expert.  Defs.' Opp. at 10. Yet, although an expert witness may be qualified on the basis of experience (which, as explained below, Mr. Caruso is not), his testimony must still meet the requirements of Rule 702:  "the district court must nonetheless require an experiential witness to explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts."  *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (internal quotation marks omitted); *see also id.* at 276 ("So long as the principles and methods are reliable *and applied reliably* to the facts of the case, this type of testimony should be admitted" (emphasis in original) (quoting Fed. R. Evid. 702 Advisory Committee Note)).  Mr. Caruso fails to meet this standard.

Plaintiffs do not dispute that Mr. Caruso has "experience" of some kind.  The question at this stage, however, is whether Mr. Caruso has experience relevant to the issues in this case such that he may be qualified as an expert under Fed. R. Evid. 702.  *See Anderson v. Nat'l R.R. Passenger Corp.*, 866 F. Supp. 937, 943 (E.D. Va. 1994), *aff'd*, 74 F.3d 1230 (4th Cir. 1996).  A

---

Mr. Caruso could be important to their ability to prepare their opposition to Defendants' motion for summary judgment.  (Dkt. 106-3) at ¶ 11.  After Plaintiffs had an opportunity to assess Mr. Caruso's report, based on the lack of support provided, it was clear that his deposition would be unlikely to yield substantive additions to the case, or materially change the factual record.  Plaintiffs acquiesced to Defendants' deposition scheduling demands for Mr. Caruso, however, in an effort to cooperate in good faith, and on the atypical terms provided by Defendants based on their own scheduling constraints.  As a result, Plaintiffs are confused by Defendants statement as to the veracity of Ms. Odom's declaration, and can only assume it is an attempt to distract from the merits of this case, and the lack of merit to Defendants' motion for summary judgement.

review of Mr. Caruso's two-page report, combined with his admissions at deposition, dictates that the answer must be no.

Mr. Caruso's years of experience in owning and managing residential properties cannot reliably apply *to the facts of this case*. Courts do "not accept expert opinion merely because the witness purports to be an expert." *Id.* at 943. Even though an expert may be qualified on the basis of experience, the "expert's background must show qualification sufficient to permit expression of an opinion that is borne of the specialized knowledge or expertise which allows the expert to give opinion evidence in the first instance." *Id.*; *see also Thomas J. Kline, Inc. v. Lorillard*, Inc., 878 F.2d 791, 799 (4th Cir. 1989) (overturning district court's admission of expert witness who was not qualified to testify regarding price and credit discrimination in antitrust case because although witness held a Masters Degree in business administration, her work analyzing companies' financial health was not sufficiently related to her opinions and she admitted she had no personal experience in making credit decisions). Despite Mr. Caruso's years of experience in property management, his deposition testimony made clear that that his experience did not engender any specialized knowledge regarding mobile home park management, lease underwriting, or conducting background checks.

Defendants characterize Mr. Caruso's experience as "owning and managing residential properties," Defs.' Opp. At 9-10, but Mr. Caruso agreed at his deposition that none of this experience related to mobile home park leasing. Ex. 2 to Plaintiffs' Motion to Strike Report and Exclude Testimony of George C. Caruso ("Plfs.' Mot.") (Dkt. 168) at 21: 2-10. General knowledge of the operations of large-scale leasing operations, while perhaps in Mr. Caruso's bailiwick, is not the kind of knowledge that is required here. Mobile home parks function differently than apartment or other housing-complex leases. In a mobile home park, residents

7

own their homes, but rent the lot that the land is located on. Complaint ¶ 21. In other leasing contexts, the landlord owns both the land and the structure. The stake and financial interest a mobile home park lessor has in its lease is thus substantially different than other leasing relationships.[3] Defendants have acknowledged the differences in discovery responses, stating, for example, "Defendants believe that proper underwriting minimizes collection losses in light of the fact that the eviction process takes at minimum two months and the abandonment or possession of a home takes roughly six to complete in Virginia. This equates to eight months of lost rent, legal fees, unpaid rent, and the demolition or removal of the home. At current rates, Defendants estimate each eviction to be a potential loss of over $10,000." Ex. 4 to Plfs' Mot. at 9. Mr. Caruso's experience with property management therefore does not equate to experience in mobile home park management.

Moreover, Defendants have no answer for the fact that Mr. Caruso steadfastly attempted to avoid any knowledge about common leasing practices in the industry, precluding him from knowledgeably testifying about what standard industry practice is. *See* Plfs.' Mot. at 7-8. And although the Supreme Court has noted "that an expert might draw a conclusion from a set of observations based on extensive and specialized experience," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999), it is clear that Mr. Caruso's experience is not specialized in any way. Defendants concede that Mr. Caruso has no experience in mobile home park leasing, a significant flaw given that specialized regulations, like the Manufactured Home Lot Rental Act,

---

[3]  *See, e.g.*, Dave Reynolds & Frank Rolfe, *Real Estate Investing: Advantages of Mobile Home Parks vs. Apartments*, American Apartment Owners Association, http://www.american-apartment-owners-association.org/property-management/latest-news/real-estate-investing-advantages-of-mobile-home-parks-vs-apartments/#sthash.iouivMNs.dpuf (last visited Feb. 7, 2017) (explaining certain logistical differences between a mobile home park and an apartment building).

apply only to landlords that lease lots at mobile home parks. *See* Va. Code § 55-248.41 *et seq*. And Mr. Caruso's generalized background knowledge of issues such as "immigration legislation," Defs.' Opp. at 10, is inapposite. As Plaintiffs demonstrated in their opening brief, Mr. Caruso conceded that he does not know whether a Social Security Number is required to run a credit check, Ex. 2 to Plfs.' Mot. at 79:14-80:11, whether a credit check can be run with an ITIN, *id.* at 80: 13-17, and whether undocumented tenants are less likely to pay rent—a proposition that Defendants must prove in order to show that their proffered business necessity of lease underwriting concerns is not pretextual, *see id.* at 106: 11-21 ("Q. Do you have any specialized knowledge as to whether undocumented tenants are [more] likely not to pay rent? A. Meaning do I have empirical knowledge of that? Q. Sure. Let's start there. A. No I don't have empirical data on that. Q. Do you have any sort of data on that? A. Occasional conversations over lunch with some of my colleagues, but none of it would rise to the level of even the most basic scientific rigor.").

Because Mr. Caruso lacks the relevant experience in the relevant field, and his personal experience cannot reliably apply to this case, his testimony must be excluded under Rule 702.

## III.    MR. CARUSO'S OPINIONS DO NOT MEET THE REQUIREMENTS OF RULE 702—AND DEFENDANTS FAIL TO SHOW OTHERWISE

### A.    Mr. Caruso Does Not Rely on Facts or Data

Defendants complain that because Mr. Caruso is not submitting a technical report, Plaintiffs unfairly demand a more rigorous analysis from Mr. Caruso than the "logical" (according to him) bases for his opinions. Dfs.' Opp. at 11. Even though Mr. Caruso is presented as an "experiential" expert, as opposed to a scientific expert, he must still provide *something* more than his own conclusory statements. He has not done so.

Defendants rely heavily on *Wilson* to support their contention that Mr. Caruso need not rely on facts or data. In *Wilson*, the expert's experience as a law enforcement officer gave rise to specialized knowledge interpreting code words in drug transactions. Citing the advisory committee notes to Rule 702, the court noted that expert testimony by law enforcement concerning use of code words is admissible if the methodology results from the "application of *extensive experience*" and that such methodology is "applied reliably to the facts of the case." *Id.* at 274-275 (emphasis in original). In addition to serving several years as a law enforcement officer investigating narcotics traffickers and receiving training in coded language, the expert witness in *Wilson* scrupulously explained his methodology for interpreting the coded language. For instance, when asked to interpret "I don't even got no way to get into the kitchen," the expert witness explained "that 'kitchen' is a word that would be heard in other conversations, and that it referred to a place where powder cocaine would be converted into crack cocaine. A brief discussion ensued concerning the need of a heat source to convert powder cocaine into crack cocaine." *Id.* at 277.

Mr. Caruso's unsupported explanations do not reach anywhere near the intellectual rigor applied by the expert in *Wilson*. Defendants assert that Mr. Caruso did have an adequate basis for his opinion because he testified that leasing is like granting credit and a landlord can face a "long fight in the courts" and "could lose a lot of money." Dfs.' Opp. at 12. Such statements are imprecise, and do not indicate that Mr. Caruso applied any methodology at all, or even performed a Google search to verify if his opinions were consistent with those of others in his field. Other than his personal experience, which he testified he limited by avoiding certain discussions with colleagues, Mr. Caruso could offer only "occasional conversations over lunch" with colleagues as support for whether undocumented tenants were more likely not to pay rent,

10

s*ee* Ex. 2 to Plfs.' Mot. at 79:14-80:11, a fundamental premise of his Report.  *See* Ex. 1 to Plfs.'

Mot. at 1 ("The legal status of an applicant is relevant . . . because it impacts factor [sic] such as

income, sustained income, reliable employment. . .").

Defendants place faith in Mr. Caruso's rumination that "if they [undocumented

immigrants] can't be legally employed, how do you assure yourself that the rent is going to get

paid" as a summary for "the logical reasoning for his opinion."  Ex. 2 to Plfs.' Mot. at 129:4-12.

Yet, the flimsiness of this argument was easily exposed when Mr. Caruso could not adequately

answer why, based on this reasoning, the properties he managed would be willing to rent to a

family where one adult in the household did not work.  *See id.* at 89: 19-90: 20.  More to the

point, if these issues are as comprehensible and logically apparent as Defendants contend, it is

not clear why an expert is needed to propound these viewpoints.

Defendants' Opposition does not adequately explain why  Mr. Caruso did not apply his

opinions to the actual policy at issue in this case.  Arguing that Mr. Caruso applied his

"specialized knowledge" to the facts of the case, Defendants allege that Mr. Caruso "knew the

key issue with Defendants' policy is the requirement for proof of legal status."  Defs.' Opp. at

11.  Based on Defendants' own motion for summary judgment, the policy at issue requires that

"[a]pplicants who do not have a Social Security number, must provide their original Passport,

original US Visa and original Arrival/Departure Form (I-94 or I-94W)".  Defendants' Motion for

Summary Judgment (Dkt. 98) at 4 ¶ 1 (citing Ex. A to Compl. (Dkt. 1-1)).  Further, Mr. Caruso

did not seem to know—or could not apply his opinions to—the policy's requirement that every

occupant over the age of 18 must qualify as a leaseholder and individually pass a credit check

regardless of whether they contribute to rent payments.  Mr. Caruso's failure to apply his

experience to the correct policy is reason by itself to exclude his testimony.

Defendants next misstate Mr. Caruso's own basis for his opinions. Mr. Caruso's testimony that it is reasonable to adopt the "most restrictive standard, which is the federal standard," applies solely, as stated by Mr. Caruso himself, in the context of a company where some properties received federal funding and others did not. Ex. 2 to Plfs.' Mot. at 28: 13-21 ("And, two if you are running what I'll call a mixed company, which means you're running a management house that does both types of management, you can't have an inconsistent set of standards. Fair Housing will get on you about that. So most of us that run mixed companies, we have one set of standards whether the property is subsidized or not. And we adopt the most restrictive standard, which is the federal standard."). Defendants essentially concede that they do not receive federal subsidies. *See* Defs.' Opp. at 12.

## B.   Defendants Do Not Make A Sufficient Showing that Mr. Caruso's Opinions are Reliable

Defendants misinterpret the reliability prong of *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). *Kumho Tire*, 526 U.S. at 151 held that the court must perform the gatekeeping role specified in *Daubert* when considering expert testimony in non-scientific fields, even a "witness whose expertise is based purely on experience." Although a flexible standard, "some of *Daubert's* questions can help to evaluate the reliability of even experience-based testimony." *Id.* Thus, Mr. Caruso's reliance on his years of experience alone does not preclude an inquiry into whether Mr. Caruso's opinions are well-grounded and appropriate for the jury's consumption. *See id.* Defendants' implication that experiential testimony's reliability is assessed exclusively on whether the proposed expert has requisite experience is thus at odds with established precedent.

Defendants' unwillingness to examine Mr. Caruso's opinions under the *Daubert* factors must stem from the recognition that Mr. Caruso's opinions are not buttressed by any form of

methodology.  The opinions provided in Mr. Caruso's report could easily be examined under the *Daubert* factors—testability, peer review and publication, rate of error and general acceptance within the relevant community, for example—had Mr. Caruso applied a reliable methodology, or any methodology at all.  All the *Daubert* reliability factors weigh against finding Mr. Caruso's opinions were reliable.  None of Mr. Caruso's theories (such as, for instance, that one cannot trust an employer who hires undocumented immigrants) have been tested nor has Mr. Caruso even attempted to show that his theories or methodology enjoy general acceptance among other property managers—Mr. Caruso admitted to possessing no knowledge of industry practices and testified that he avoided learning common leasing practices in the industry.  *See* Ex. 2 to Plfs.' Mot. at 81:9-84:9; *Id.* at 96:4-18.  Mr. Caruso's opinion that undocumented immigrants pose lease underwriting concerns could be tested had Mr. Caruso examined data on evictions of undocumented immigrants as compared to legal residents and citizens.  And each of Mr. Caruso's opinions could be published and subject to peer review, or at least the focus of existing peer-reviewed or refereed papers.

### C.    Introduction of Mr. Caruso's Report or Testimony will not Assist the Trier of Fact.

Expert testimony is inadmissible where the expert's "specialized knowledge" will not "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a); *Pitt Ohio Exp., LLC v. Pat Salmon & Sons, Inc.*, 532 F. App'x 439, 442 (4th Cir. 2013) (affirming exclusion of expert testimony because "it concern[ed] matters within the everyday knowledge and experience of a lay juror.") (internal citations omitted); *U.S. ex rel. Ubl v. IIF Data Solutions*, 650 F.3d 445, 454-55, 161 Lab. Cas. (CCH) P 10367 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 526, 181 L. Ed. 2d 352 (2011) (upholding district court's exclusion of proposed expert testimony on the basis that the jury was equally capable of drawing the

13

conclusions about the issue); *United States v. Dorsey,* 45 F.3d 809, 815 (4th Cir.1995) (affirming exclusion of expert testimony in part because "there is no indication that the expert testimony was at all necessary in the instant case").

Here, Mr. Caruso's rudimentary explanation for his opinions—such as what Defendants define as the crux of the basis for his opinion that it is reasonable not to rent to undocumented immigrants because "if they can't be legally employed, how do you assure yourself that the rent is going to get paid"—are not beyond the ken of a lay juror. The jury is *better* positioned than Mr. Caruso to evaluate the reasonableness of the Defendants' policy because, unlike Mr. Caruso, the jury will decide the issue upon presentation of all the facts.

Contrary to Defendants' assertions, *Derrickson v. Circuit City Stores, Inc.*, 84 F. Supp. 2d 679, 688 (D. Md. 2000) and *Bourne ex rel. Bourne v. E.I. Dupont de Nemours & Co, Inc.*, 189 F. Supp. 2d 482, 483 (S.D. W. Va. 2002) are directly analogous because Mr. Caruso's opinions are not connected in any meaningful way to the facts of the case, and would not assist the trier of fact.[4] Mr. Caruso did not examine the leasing policy in this case (or any other documents) and his testimony reveals he fundamentally misunderstands what the policy at issue in this case is.

---

[4] Defendants' assertion that Plaintiffs improperly attempted to discover privileged communications is not well-founded. The Federal Rules of Civil Procedure explicitly exclude from the attorney-client privilege and work product doctrine communications identifying facts and data that expert considered in forming opinions or communications identifying assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed. Fed. R. Civ. P. 26(b)(4)(C)(ii) and (iii); *see also Musselman v. Phillips*, 176 F.R.D. 194, 201 (D. Md. 1997) ("In short, when an attorney furnishes work product—either factual or containing the attorney's impressions—to an expert witness retained for the purpose of providing opinion testimony at trial, an opposing party is entitled to discover such a communication, provided it is considered by the expert."). The privilege carve-out in Rule 26(b)(4)(C) exists because an inability for opposing counsel to discover such facts "would be an invitation for abuse, allowing the attorney to effectively construct the retained expert's opinion testimony to support the attorney's theory of the case, while blocking opposing counsel from learning of, or exposing, this influence. If permitted, this practice would seriously undermine the integrity of the truth finding process at trial." *Id.*

Ex. 2 to Plfs.' Mot. at 49:22-50:7; *see supra* III. A.  The proposed expert in *Derrickson* was excluded in part because he was not familiar with Defendants' employment practices.  Mr. Caruso, similarly, is admittedly unfamiliar with Defendants' leasing policy.  *See supra* I. B.  It is inconsequential that the expert in *Derrickson* reached the ultimate issue of whether Defendant discriminated, because Mr. Caruso also opines on a consequential issue – Defendants' business justification(s) for the policy.  Furthermore, the sole rationale that Mr. Caruso links to his experience with a similar (but different) policy is the requirement that tenants benefitting from housing subsidies provided by the federal government be legal residents.  Defendants have stated that neither Waples Mobile Home Park Limited Partnership nor Waples Project Limited Partnership receive federal subsidies, Ex. 3 to Plfs.' Mot. at 28: 10-19: 3, and essentially concede that A.J. Dwoskin & Associates, Inc. does not either by failing in their reply brief to counter Plaintiffs' assertion that Mr. Caruso's repeated reliance on regulations governing federal housing subsidies as the basis for his opinion.  *See generally* Defs.' Opp. at 12.

The instant case is also similar to *Bourne*.  There, testing of rats and cell cultures was completely unconnected to the issue of whether a fungicide caused human birth defects.  Here, federal regulations concerning the legal status of beneficiaries of federal housing subsidies are unconnected to the issue of whether a mobile home park that apparently receives no federal funding was justified in requiring all its adult residents be legally present and present certain documentation.  Mr. Caruso's opinion relating to federal funding is simply beside the point, because Defendants have refused to admit whether they receive such funding, and did not tell Mr. Caruso whether they did or did not.  And he didn't ask.  *See* Ex. 2 to Plfs.' Mot. at 25:1-4 ("Q. Do you know whether the Waples Mobile Home Park received any form of federal or state housing finance or subsidy? A. I'm unaware of their situation.").

15

### D.    Mr. Caruso's Opinions Will Unduly Prejudice Plaintiffs.

Defendants fail to dispute Plaintiffs' argument that Mr. Caruso's opinions would prejudice the jury.  Indeed, in their section regarding the prejudice Plaintiffs described, Defendants do not even cite the relevant Federal Rule of Evidence.  *See* Defs.' Opp. at 18-19. Instead, Defendants merely reiterate their incorrect argument (*see supra*, Section II)  that Mr. Caruso's experience alone qualifies him as an expert, and attempt to assert that this experience also overcomes any challenge to his admissibility as an expert witness.  Defendants are wrong.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Expert testimony is subject to Rule 403.  *See Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*, No. CIV.A. 2:07CV415, 2009 WL 5842051, at *2 (E.D. Va. Jan. 6, 2009)).

As stated in Plaintiffs' opening brief, even if Mr. Caruso's report and testimony were relevant (which they are not), their admission would present a significant risk of unfair prejudice and jury confusion.  Mr. Caruso's factually ungrounded, abstract opinions, proffered on the basis of inadequate personal experience, cannot assist the factfinder.  Mr. Caruso's testimony at trial would do nothing but waste time and confuse the jury.  Accordingly, even if the Court finds Mr. Caruso to be a qualified expert with relevant opinions, his testimony should be excluded under Rule 403.

### **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court prohibit all testimony of Defendants' expert witness George C. Caruso.

DATED:   Washington, D.C.
         February 7, 2017

By:  /s/ Joy Odom
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Paul Brinkman, VSB # 35950
Joy Odom, VSB # 84281
Ariel Wade Trajtenberg (*pro hac vice*)
Archith Ramkumar (*pro hac vice*)
Diego Durán de la Vega (*pro hac vice*)
Jongwook Kim (*pro hac vice*)

777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001
Phone: (202) 538-8000
Fax: (202) 538-8100
paulbrinkman@quinnemanuel.com
joyodom@quinnemanuel.com
arieltrajtenberg@quinnemanuel.com
archithramkumar@quinnemanuel.com
diegoduran@quinnemanuel.com
wookiekim@quinnemanuel.com

LEGAL AID JUSTICE CENTER
Simon Sandoval-Moshenberg, VSB #77110
Rebecca Wolozin, VSB #89690

6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454
simon@justice4all.org
becky@justice4all.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of February, 2017, I filed the foregoing document

electronically with the Clerk of the Court using the ECF system, and caused to be served by

electronic mail a copy of the foregoing document upon the following parties:

Grayson P. Hanes, VSB # 06614
Michael S. Dingman, VSB #30031
Justin deBettencourt, VSB # 83806
REED SMITH LLP
7900 Tysons One Place, Suite 500
McLean, Virginia 22102
Phone: (703) 641-4200
Fax: (703) 641-4340
ghaynes@reedsmith.com
mdingman@reedsmith.com
jdbettencourt@reedsmith.com

*Counsel for Defendants*

/s/  *Joy Odom*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Joy Odom, VSB # 84281

777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001-3706
Phone: (202) 538-8000
Fax: (202) 538-8100
joyodom@quinnemanuel.com

*Counsel for Plaintiffs*

18