# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ,<br><br>*Plaintiffs*,<br><br>vs.<br><br>WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC.,<br><br>*Defendants*. | Civil Action No. 1:16-cv-563 |

**PLAINTIFF ROSY GIRON DE REYES' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS (NOS. 1 - 28)**

Plaintiff Rosy Giron de Reyes, by counsel, and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, requests that Defendants respond to the following Interrogatories within thirty (30) days of service hereof.

**DEFINITIONS**

The following definitions shall apply throughout these Interrogatories, regardless of whether upper or lower case letters are used:

1.  "Waples L.P." means Waples Mobile Home Park Limited Partnership and its parents, subsidiaries, affiliates, joint ventures, partners, divisions, departments, directors, officers, employees, agents, shareholders, principals, members, investors, consignees, representatives, consultants, advisors, associates, and attorneys, and each predecessor and

1

successor thereof, as well as any other business entity in which Waples Mobile Home Park Limited Partnership holds an interest or over which it exercises authority or control.

2. "Waples Project L.P." means Waples Project Limited Partnership and its parents, subsidiaries, affiliates, joint ventures, partners, divisions, departments, directors, officers, employees, agents, shareholders, principals, members, investors, consignees, representatives, consultants, advisors, associates, and attorneys, and each predecessor and successor thereof, as well as any other business entity in which Waples Project Limited Partnership holds an interest or over which it exercises authority or control.

3. "Dwoskin & Associates" means A.J. Dwoskin & Associates, Inc. and its parents, subsidiaries, affiliates, joint ventures, partners, divisions, departments, directors, officers, employees, agents, shareholders, principals, members, investors, consignees, representatives, consultants, advisors, associates, and attorneys, and each predecessor and successor thereof, as well as any other business entity in which A.J. Dwoskin & Associates, Inc. holds an interest or over which it exercises authority or control.

4. "You," "your," and "Defendants" means any combination of one or more of Waples L.P., Waples Project L.P., and/or Dwoskin & Associates, as appropriate from the particular context.

5. "Waples Mobile Home Park" and "Park" means the mobile home complex located at 4308 Mobile Court, Fairfax, Virginia 22030, owned and operated by Defendants.

6. "Plaintiffs" means Jose Dagoberto Reyes, Rosy Giron de Reyes, Felix Alexis Bolanos, Ruth Rivas, Yovana Jaldin Solis, Esteban Ruben Moya Yrapura, Rosa Elena, and/or Herbert David Saravia Cruz.

7. "Lease Plaintiffs" means Jose Dagoberto Reyes, Felix Alexis Bolanos, Esteban Ruben Moya Yrapura, and/or Herbert David Saravia Cruz.

8. "The Policy" means the policy requiring that all individuals who live or intend to live at the Park present either (1) an "original social security card" or, if unavailable, (2) documentation demonstrating lawful presence in the United States, such as an "original Passport, original U.S. Visa, and original Arrival/Departure Form (I-94 or I-94W)."

9. "Lot" means the pad site upon which a tenant would locate 'his or her home after entering into a rental agreement with Defendant.

10. "Lease" or "Rental Agreement" means documents signed by Plaintiffs or their assignees and Defendants or Defendants' designees that govern the tenancy relationship for rental of a Lot located in the Park, and all documents referred to or incorporated therein.

11. "MHLRA" means the Manufactured Home Lot Rental Act, Va. Code Ann. §55-248.41 *et seq*.

12. "VRLTA" means the Virginia Residential Landlord and Tenant Act, Va. Code Ann. §55-248.2 *et seq.*

13. "Surcharge" means any amount of money, whether or not treated as rent, required as payment by any Lease Plaintiff above the amount listed in such Lease Plaintiff's Lease.

14. "Undocumented immigrant," "unauthorized immigrant," "illegal alien," "undocumented noncitizen," "unauthorized noncitizen," "illegal noncitizen," and "illegal immigrant" mean any person not able to show any form of valid government-issued proof that they are legally present in the United States.

15. "Hispanic" and/or "Latino" mean a person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin.

16. "ITIN" means Individual Taxpayer Identification Number.

17. "Action" means the above-captioned proceeding before the United States District Court for the Eastern District of Virginia, or such other court to which the above-captioned proceeding is transferred.

18. "Complaint" means the complaint filed by Plaintiffs in the above-entitled Action on May 23, 2016.

19. "Person" means any natural person or any business, proprietorship, firm, partnership, corporation, association, organization, or other entity.  The acts of a Person shall include the acts of directors, officers, owners, members, employees, agents, attorneys, or other representatives acting on the Person's behalf.

20. "Document" is defined broadly to be given the full scope of that term contemplated in Federal Rules of Civil Procedure 26 and 34, and includes all tangible things, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a document, all drafts of final documents, all other written, printed, or recorded matter of any kind, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in your actual or constructive possession, custody, or control, regardless of the medium on which they are produced, reproduced, or stored (including, without limitation, electronically stored information), and any recording or writing, as these terms are defined in Rule 1001 of the Federal Rules of Evidence.  Any document bearing marks, including, without limitation, initials, stamped initials, comments, or notations not a part of the original text or photographic reproduction thereof, is a separate document.

21. "Communication" means any contact, oral or written, whereby information of any nature is transmitted or transferred, including, without limitation, persons seeing or hearing any information by any means and any document memorializing or referring to the contact.

22. "Entity" means corporation, company, firm, partnership, joint venture, association, governmental body, or agency, or persons other than a natural person.

23. "Thing" shall be given the broadest possible construction under the Federal Rules of Civil Procedure.

24. "Relate to," "related to," and "relating to" mean in whole or in part concerning, reflecting, alluding to, mentioning, regarding, discussing, bearing upon, commenting on, constituting, pertaining to, demonstrating, describing, depicting, directly or indirectly relating to, summarizing, containing, embodying, showing, comprising, evidencing, refuting, contradicting, analyzing, identifying, stating, dealing with, and/or supporting.

25. "Describe," when used in relation to an act, event, instance, occasion, transaction, conversation or communication, shall include: (1) stating the date and place thereof; (2) identifying the individual participants; (3) summarizing separately for each individual participant what he/she said or did; and (4) identifying each document used or prepared in connection therewith or making any reference thereto.

26. "Identify," when used with respect to any natural Person, means that the following information shall be provided: the Person's full name; last known home address and telephone number; last known business address and telephone number; last known title or occupation; and last known employer. When identifying a natural Person who was or is employed by you, the following information shall also be provided: (1) the title of each job that

person performed under your employment; and (2) the dates during which that person held each job title under your employment.

27. "Identify," when used with respect to any entity (including, without limitation, corporation, company, firm, partnership, joint venture, association, governmental body or agency or Persons other than a natural Person), means that the following information shall be provided: the full legal name of the entity; the place of incorporation or organization; the principal place of business; and the nature of the business conducted by that legal entity.

28. "Identify," when used with respect to a document, subject to the option to produce records under Fed. R. Civ. P. 33(d), means to provide information sufficient to locate that document, including, but not limited to, the following: the Bates range; the date appearing on such document or, if no date appears thereon, the approximate date the document was prepared; the identifying code number, file number, title, heading and/or label of such document; a general description of such document *(e.g.,* letter, memorandum, notice); the number of pages of which such document consists; the name of each Person who signed or authorized the document; the name of each addressee; the name of each Person having possession, custody or control of such document; if the document existed at one time but does not presently exist, the reasons why it no longer exists and the identity of the last Person having custody of it; and, if the document is in a foreign language, whether an English translation of the document exists, whether partial or complete.

29. "Identify," when used with reference to any communication, means that the following information shall be provided: (1) summarize the substance of the communication; (2) state the date and place of the communication; (3) identify each Person who was present at, involved in, connected with, or who participated in the communication; (4) state the form of

communication *(e.g.,* telephone call, meeting, letter); and (5) identify each document memorializing or referring to the communication.

30. "Dates" means the exact dates, if known, or the closest approximation to the exact date(s) as can be specified, including, without limitation, the year, month, week in a month, or part of a month.

31. "Any" and "all" shall be construed to mean both any and all.

32. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.

33. The word "including" shall be without limitation.

## INSTRUCTIONS

1. These Interrogatories shall apply to all information in your possession, custody, or control at the present time or coming into your possession, custody, or control prior to the date of your response. Should any responsive information come into your possession, custody, or control following the date of your response, you are under a duty to supplement your responses to reflect the additional information.

2. These Interrogatories call not only for the knowledge of the Defendants, but also for all knowledge that is available to each Defendant by reasonable inquiry, including inquiry of each Defendant's officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, or predecessors of any of them, including any agents or representatives acting on their behalf, and, if not privileged, each Defendant's attorneys.

3. If there is no information in your possession, custody or control that is responsive to a particular Interrogatory, you are to state that no responsive information exists.

4.  If you decline to provide any information based on a claim of privilege or any other claim, describe the nature and basis of your claim and the information withheld in a manner sufficient (i) to disclose the facts upon which you rely in asserting your claim; (ii) to permit the grounds and reasons for withholding the information to be identified unambiguously; and (iii) to permit the information withheld to be identified unambiguously.

5.  In the event that you object to any request on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that Interrogatory as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which you have narrowed that Interrogatory for purposes of your response and the factual basis for your conclusion.

6.  In the event that you object to any Interrogatory on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such Interrogatory vague and/or ambiguous and specify the meaning that you actually attribute to such words for purposes of your response thereto.

7.  The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as in each case is most appropriate.

## INTERROGATORIES

**INTERROGATORY NO. 1.**

Describe all policies and practices, including the Policy at issue in this Action, used for leasing, or renewing leases to, Lots at the Park since 2006, and, in doing so, identify the persons most knowledgeable regarding such policies and practices and include the reasons for creating, developing, modifying, and enforcing each policy or practice.

**INTERROGATORY NO. 2.**

Describe your past and present corporate structure, including the identity of all past and present parents, subsidiaries, predecessors in interest, successors in interest, and affiliates, including when such corporate relationships began and how long they lasted; the identity and current location of all past and present officers, directors, or employees; the relationship between Waples L.P., Waples Project L.P., Dwoskin & Associates, and Albert J. Dwoskin; and all agreements between Waples L.P., Waples Project L.P., Dwoskin & Associates, and Albert J. Dwoskin.

**INTERROGATORY NO. 3.**

Identify all persons who have been involved in implementing or enforcing the policies and practices used for leasing, or renewing leases to, Lots at the Park since 2006.

**INTERROGATORY NO. 4.**

Identify all documents and communications in your possession relating to a prospective or current tenant or occupant's race, national origin, citizenship, alienage, or proof of lawful presence in the United States, including the type of documentation submitted to demonstrate lawful presence and the nation that issued such documentation (*e.g.*, a passport issued by Mexico).

**INTERROGATORY NO. 5.**

Describe the processes you use or have used to track, manage, or ensure a tenant or occupant's past or present compliance with the Policy.

**INTERROGATORY NO. 6.**

Describe each communication you have had with each Plaintiff, including specifically those communications relating to the Park's leasing and lease renewal policies and practices, including the Policy at issue in this Action.

**INTERROGATORY NO. 7.**

Describe every instance in which You have enforced the Policy, including the tenants' names and dates of enforcement.

**INTERROGATORY NO. 8.**

Describe the policies and practices you use or have used to register a tenant or occupant of the Park with management in accordance with paragraph 6 of the Park's standard Rental Agreement, and identify where and how such registration is maintained in your filing or electronic record keeping system.

**INTERROGATORY NO. 9.**

For each Plaintiff, describe each act or incident that you allege has constituted or constitutes a violation of any provision of that Plaintiff's Rental Agreement with you.

**INTERROGATORY NO. 10.**

Describe every instance in which, despite Your knowledge that an adult occupant at the Park did not or could not comply with the Policy, You have declined to enforce the Policy, including the tenants' names and the dates on which You declined to enforce the Policy.

**INTERROGATORY NO. 11.**

Describe the process by which you determine that allegedly unauthorized occupants are living with Lease Plaintiffs or other tenants.

**INTERROGATORY NO. 12.**

Describe the process by which you conduct criminal background and/or credit checks, including the third party products and services you have considered, have used, or currently use, including Yardi Systems, Inc.'s products or services, and the reasons for using or not using each.

**INTERROGATORY NO. 13.**

Describe all instances where you have accepted or approved a tenant without requiring a Social Security card or number, and describe the reasons you accepted or approved such tenant, including, if applicable, whether any tenant has ever complied with the Policy by providing an original passport, original U.S. visa, and an original Arrival/Departure Form (I-94 or I-94W).

**INTERROGATORY NO. 14.**

Describe all reasons, excluding none, that you do not accept ITINs from prospective tenants on an equal basis as Social Security cards or numbers.

**INTERROGATORY NO. 15.**

Describe all reasons, excluding none, that you require every occupant living at the Park to complete an application, register as an occupant, and meet the same requirements for residency as a leaseholder.

**INTERROGATORY NO. 16.**

Describe all reasons, excluding none, that you seek to prevent any undocumented immigrants from leasing or occupying homes in the Park.

**INTERROGATORY NO. 17.**

Describe your process for auditing or inspecting a Park resident's Lot or mobile home.

**INTERROGATORY NO. 18.**

Describe the process by which, and reasons for which, you determined to move tenants with "unauthorized occupants" onto month-to-month leases, including the process by which, and reasons for which, you determined that such month-to-month leases required a Surcharge or rent increase.

**INTERROGATORY NO. 19.**

Describe the process by which, and reasons for which, you determined to impose a $300 Surcharge on month-to-month leases as of June 1, 2016.

**INTERROGATORY NO. 20.**

Identify the leaseholders to which you gave notice of the $300 Surcharge on month-to-month leases you determined to impose as of June 1, 2016, including whether you gave such notice to all tenants in the Park or only tenants you considered to hold "month-to-month" leases.

**INTERROGATORY NO. 21.**

Describe any violation of Park rules and regulations or civil or criminal law by Plaintiffs.

**INTERROGATORY NO. 22.**

Describe each violation of Park rules and regulations or civil or criminal law by an adult occupant at the Park, and whether each individual was in compliance with the Policy.

**INTERROGATORY NO. 23.**

Describe each instance when a tenant was evicted for failure to pay rent, and whether such individual was in compliance with the Policy

**INTERROGATORY NO. 24.**

Describe your future plans, if any, to sell, redevelop, or make any major changes to the Park.

**INTERROGATORY NO. 25.**

Describe each communication between you and any non-party to the above-captioned litigation, including without limitation communications between Albert J. Dwoskin and Jeff Franzen, regarding this litigation, media coverage regarding this litigation, the legality of the Policy, or media coverage regarding the legality of the Policy.

**INTERROGATORY NO. 26.**

Describe the process by which you have considered the federal Fair Housing Act, the Virginia Fair Housing Act, the VRLTA, and/or the MHLRA in creating, developing, implementing, altering, or enforcing policies and practices at the Park, including specifically whether you considered the disparate impact that any policy or practice would have on a protected class.

**INTERROGATORY NO. 27.**

Describe the process by which you train, educate, and supervise your employees regarding the requirements of the federal Fair Housing Act, the Virginia Fair Housing Act, the VRLTA, and/or the MHLRA.

**INTERROGATORY NO. 28.**

Describe the number of Lots at the Park, the number of leases begun or terminated at the Park in each year since January 1, 2006, the number of applications received for residency at the Park in each of the same years, and the number of applications denied in each of the same years because a prospective tenant failed to produce documents verifying his or her lawful presence.

DATED this 3rd day of August, 2016        Respectfully submitted,

_____
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Paul Brinkman, VSB # 35950
Jeanhee Hong (*pro hac vice*)
Ariel Wade Trajtenberg (*pro hac vice*)
Diego Duran de la Vega (*pro hac vice*)
Jongwook Kim (*pro hac vice*)
William A. Margeson (*pro hac vice*)

777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001-3706
Phone: (202) 538-8000
Fax: (202) 538-8100
paulbrinkman@quinnemanuel.com
jeanheehong@quinnemanuel.com
arieltrajtenberg@quinnemanuel.com
diegoduran@quinnemanuel.com
wookiekim@quinnemanuel.com
billmargeson@quinnemanuel.com

LEGAL AID JUSTICE CENTER
Ivy Finkenstadt, VSB #84743
Simon Sandoval-Moshenberg, VSB #77110

6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454
ivy@justice4all.org
simon@justice4all.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of August, 2016, I served by FedEx and electronic mail a copy of PLAINTIFF ROSY GIRON DE REYES' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS (NOS. 1 - 28) upon the following parties:

Michael S. Dingman, VSB #30031
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
mdingman@reedsmith.com

*Counsel for Defendants*

_____
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Ariel Wade Trajtenberg (*pro hac vice*)

777 Sixth Street NW, 11th Floor
Washington, District of Columbia 20001-3706
Phone: (202) 538-8000
Fax: (202) 538-8100
arieltrajtenberg@quinnemanuel.com

15