IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*,<br><br>　　　　Plaintiffs,<br>v.<br><br>WAPLES MOBILE HOME PARK<br>LIMITED PARTNERSHIP, *et al.*,<br><br>　　　　Defendants. | Civil No.: 1:16cv563-TSE-TCB |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL SUPPLEMENTAL DISCOVERY

Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A. J. Dwoskin & Associates, Inc. (collectively "Defendants"), by counsel, hereby submit their opposition to Plaintiffs Rosy Giron De Reyes, Jose Dagoberto Reyes, Felix Alexis Bolanos, Ruth Rivas, Yovana Jaldin Solis, Esteban Ruben Moya Yrapura, Rosa Elena Amaya, and Herbert David Saravia Cruz's ("Plaintiffs") Motion to Compel Supplemental Discovery ("Motion to Compel").

### INTRODUCTION

Discovery closed on **December 9, 2016**. Not once since December 9, 2016, until July 2019, did Plaintiffs ever represent to this Court (or the Fourth Circuit) that they needed additional documents – documents that were not in existence in 2016 – to litigate their Fair Housing Act ("FHA") claim in Count I, which is the only claim left in this case. Plaintiffs' Motion to Compel simply seeks to harass Defendants into incurring significant costs by re-opening discovery nearly three years after the fact.

Plaintiffs' argue that they are only seeking the supplementation of documents and information already provided. In 2007, however, Fed. R. Civ. P. 26(e), was specifically modified to reflect only a "duty to supplement or correct by providing information that was not originally provided *although it was available at the time of the initial disclosure or response*." Under the guise of requesting supplementation, and contrary to Rule 26(e), Plaintiffs now seek to re-open discovery and compel the production of documents that were not created and available in 2016, such as a list of tenants in the Waples Mobile Home Park (the "Park") in 2017-2019. Moreover, Plaintiffs simply ignore that the parties completed fulsome and extensive discovery in 2016 and that the December 9, 2016 discovery cut-off was set by the Court's Initial Scheduling Order – not by Defendants. This Court rigorously enforces its discovery cut-off deadlines and Plaintiffs do not cite a single Eastern District of Virginia case that supports their request to re-open discovery years later based on the facts and posture at hand.

Additionally, Plaintiffs filed a Cross-Motion for Summary Judgment in 2016, and in doing so, Plaintiffs represented that they had sufficient information to *prevail* on Plaintiffs' FHA claims in Count I, which are the only claims left in this case. Plaintiffs never told this Court they needed additional discovery in their summary judgment papers. In addition, the additional discovery sought is simply not relevant to Plaintiffs' remaining FHA claims. As noted above and described in more detail below, the parties completed an extensive discovery process in 2016. Plaintiffs' FHA claims relate to the enforcement of a policy that requires tenants who live or intend to live at the Park to have documents evidencing legal status in the United States (the "Policy"). The enforcement of the Policy as to Plaintiffs took place in 2016 and years prior. Plaintiffs' FHA claims are premised on these years as demonstrated by their Complaint, expert disclosures and summary

judgment pleadings. Accordingly, statistics and demographics post-2016 have no relevance to Plaintiffs' claims and are not discoverable.

Plaintiffs' Motion to Compel also would have the significant ramification of completely re-opening discovery. In 2016, the parties submitted expert reports that contained the opinions of the parties' statistical experts. The parties' statistical experts were then deposed. There were numerous other depositions, including those of the parties. Plaintiffs' statistical expert based his opinions on policy documents produced by Defendants and the list of tenants produced by Defendants in 2016. Plaintiffs cannot now – years later – modify their statistical expert's report and opinions unless this Court permits additional expert discovery (and the Court should not do so). To that end, Plaintiffs' counsel in the meet and confer suggested the additional discovery sought may impact expert discovery. Re-opening expert discovery years later would be unduly burdensome and costly to all parties – especially Defendants. In addition, it would be prejudicial to Defendants as it would permit Plaintiffs to revise their expert opinions well after Defendants identified a rebuttal expert and provided his opinions. Finally, Plaintiffs' proposal to proceed to summary judgment briefing this September – a proposal that Defendants generally agree with pending modification of certain proposed briefing dates – reveals the disingenuous nature of Plaintiffs' Motion to Compel. Plaintiffs cannot argue that discovery must be re-opened at the same time as they are prepared to argue summary judgment. Fulsome discovery relevant to Plaintiffs' allegations was had in 2016 and discovery closed. The parties are ready to re-brief summary judgment after the Fourth Circuit remanded this case. As detailed below, there is simply no justification or relevance to discovery into documents created well after the close of discovery.

## BACKGROUND

This procedural background is particularly important to this motion. On May 23, 2016, Plaintiffs filed their Complaint in which they alleged seven counts: a violation of the FHA (Count I), a violation of the Virginia Fair Housing Law (Count II), a violation of the Virginia Manufactured Home Lot Rental Act (Count III), a violation of 42 U.S.C. § 1981 (Count IV), breach of contract (Count V), and tortious interference with contract (Count VI). (Dkt. 1.)

As to Count I, which is the only remaining claim at issue in this litigation, Plaintiffs alleged that ***as of May 2016, when the Complaint was filed***, Defendants enforced the Policy that requires all individuals who live or intend to live at the Park of providing documents certifying legal residency in the United States. Plaintiffs – four couples made up of four men who were present legally in the United States and four women who had no documentation of legal status in the United States – claimed they were discriminated against because this policy has a disproportionate impact against Latinos, who Plaintiffs claimed made up an outsized concentration of the population of undocumented immigrants in Fairfax County. Plaintiffs claimed that they were harmed in 2016 and before 2016 because one couple had been forced from their home and the remaining couples alleged that they were being forced from their homes at Waples because they could not comply with the Policy. In paragraphs 55-63 of their Complaint, Plaintiffs refer to the statistics they contend support their claim – all of which are dated mid-2016. And, as discussed below, the opinions of Plaintiffs' expert are also based on 2016 statistics.

On June 13, 2016, Defendants filed a Motion to Dismiss, seeking dismissal of Counts I, II, IV and VI. (Dkt. 25.) As to Count I, Defendants argued, *inter alia*, that Plaintiffs' allegations did not meet the "robust causality" standard for a disparate impact claim under the FHA. (Dkt. 26.) At the same time, the parties agreed to a dismissal of Count VI. (Dkt. 30 at 1 n.1 and Dkt. 34 (Order

dismissing Count VI).). On July 28, 2016, the Court issued an Initial Scheduling Order setting the discovery cutoff for **December 9, 2016**. (Dkt. 35.) The Court denied Defendants' Motion to Dismiss on September 1, 2016. (Dkts. 56-57.)

The parties then engaged in burdensome, time-consuming and expensive discovery efforts. Although Plaintiffs fail to attach (or even mention) Defendants' objections to their original document requests and interrogatories, *see* **Exhibit 1** (Objections to Plaintiffs' Document Requests ("RFP")) and **Exhibit 2** (Objections to Plaintiffs' Interrogatories ("ROG")), Defendants objected to, among others, RFPs 11, 14, 39, 42, 49, 50 and 53 and ROG 1. In 2016, the parties conferred regarding Defendants' Objections, and Defendants agreed to search for documents as far back as 2006. Defendants incurred significant costs in collecting and searching through ten years of documents. Defendants produced a list of tenants in the Park dating back to 2010 and produced Policy documents after agreeing to search back to 2006 for Policy documents. Plaintiffs deposed Defendants' corporate representative and took other depositions of Defendants' employees. Expert reports were exchanged. Plaintiffs deposed Defendants' statistical expert and Defendants deposed Plaintiffs' statistical expert. Fulsome discovery was had between both parties on Plaintiffs' FHA claim in Count I.

On November 23, 2016, Defendants filed a Motion for Summary Judgment on all remaining counts in Plaintiffs' Complaint (Counts I-V). (Dkts. 97-98.) On December 23, 2016, Plaintiffs filed their Cross-Motion for Summary Judgment on Counts I, II, III, V and in the same pleading opposed Plaintiffs' Motion for Summary Judgment. (Dkts. 137-138.) By filing their Cross-Motion for Summary Judgment, Plaintiffs represented that they had obtained all necessary discovery to permit them to *prevail* on Count I. Importantly, Plaintiffs *never* told this Court that they did not have sufficient discovery to oppose Defendants' Motion for Summary Judgment even

though Fed. R. Civ. P. 56(d) specifically permits a party to make such an assertion. Fed. R. Civ. P. 56(d). Rather, Plaintiffs argued that they were entitled to summary judgment on Count I due to their statistical expert's conclusions which were based on a review of the list of tenants produced by Defendants in discovery in 2016 and Policy documents produced in 2016. Pls.' Mem. Supp. Mot. Summ. J. at 14 (citing Ex. 40 – Mr. Clark's report and declaration) (Dkt. 138). Indeed, Mr. Clark, who is Plaintiffs' statistical expert, stated in his report that he reviewed a list of tenants for the Park and Policy documents produced in discovery. Pls.' Mem. Supp. Mot. Summ. J. Ex. 40B at 2 ¶ 2(f) and ¶ 3 (Dkt. 138).

After argument on the cross-motions for summary judgment, on April 18, 2017, this Court dismissed the following counts: Count I (Violation of the FHA); Count II (Violation of the Virginia Fair Housing Law ("VFHL"); Count IV (Violation of 42 U.S.C § 1981). (Dkt. 190-191.) The Court denied Defendants' Motion for Summary Judgment as to Count III (Violation of the Manufactured Home Lot Rental Act) and Count V (breach of contract). (*Id.*) The Court also denied Plaintiffs' Cross-Motion for Summary Judgment in its entirety. (*Id.*) Thereafter the parties resolved Counts III and V.

On June 13, 2017, Plaintiffs filed a notice of appeal. (Dkt. 198.) In their brief to the Fourth Circuit, Plaintiffs only appealed this Court's dismissal of Plaintiffs' FHA ***disparate impact*** claim in Count I. On appeal, the Fourth Circuit held that this Court erred in dismissing Plaintiffs' disparate impact theory at the motion to dismiss stage and erred at the summary judgment stage because it did not consider Plaintiffs' disparate impact theory of liability at that stage. *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (4th Cir. 2018). The Supreme Court denied Defendants' subsequent petition for a writ of certiorari. *Waples Mobile Home Park Ltd. P'ship v. de Reyes*, 139 S. Ct. 2026 (2019).

With fulsome discovery conducted into Plaintiffs' disparate impact claim under the FHA, this case is now ripe to re-brief Count I – Plaintiffs' disparate impact claim – for summary judgment in accordance with the Fourth Circuit's ruling.

On July 23, 2019, Plaintiffs wrote to Defendants and *for the first time in this litigation* – more than two and a half years after the close of discovery – asserted that under the guise of requesting supplementation, Defendants must produce a list of residents of the Park from October 3, 2016 to the present. Pls.' Mem. Supp. Mot. Compel Ex. 7. Plaintiffs also requested documents relating to four RFPs: RFP Nos, 11, 14, 39, 53 and requested a "supplement" to Interrogatory 1. *Id.* At the same time, Plaintiffs proposed that the parties file renewed summary judgment briefs on September 30, 2019. *Id.*

On August 8, 2019, the parties conferred by telephone. On that call, setting aside the close of discovery years prior, Defendants' counsel asked how discovery into the status of the Park in 2019 – such as a list of 2019 residents – would be relevant and discoverable to *Plaintiffs' claims* which were based on enforcement of a policy as to Plaintiffs *at or before 2016*. How would a 2019 list of tenants be relevant to claims made in 2016 as to Plaintiffs who vacated the Park in 2016-2017? Plaintiffs' counsel were unable to provide an answer besides simply repeating that the discovery sought was relevant and Defendants had a duty to supplement. Defendants' counsel also asked on the call how the discovery sought would impact expert discovery because Plaintiffs' statistical expert, Mr. Clark, based his opinions – as contained in his report – on the documents Defendants produced in discovery in 2016. Of course, Defendants' statistical expert responded to that report with his rebuttal report and the experts are limited to the opinions in their reports.

In response, Plaintiffs' counsel stated that they were not going to give Defendants' counsel an answer on how the additional discovery sought would impact expert discovery except that *it*

*may impact* expert discovery. Such a suggestion is stunning given that it suggests that Plaintiffs might also request that expert discovery be opened anew if they are successful in this Motion to Compel even though Plaintiffs proposed briefing summary judgment this September. This would lead to a new discovery period beginning in 2019. Of course, discovery has been closed for more than two-and-a-half years. This Court rigorously enforces discovery cut-off dates – as it should here to prevent the discovery abuse Plaintiffs now contemplate. Plaintiffs should not be permitted to re-open discovery, with its immense costs and burdens to Defendants, for Plaintiffs to have another bite at the apple and to start discovery (and expert discovery) anew.

## ARGUMENT

**I.   THE DUTY TO SUPPLEMENT DOES NOT REQUIRE DEFENDANTS TO PRODUCE DOCUMENTS YEARS LATER THAT DID NOT EXIST AT THE TIME OF THE INITIAL REQUESTS**

Plaintiffs argue, without citing a single opinion from this District, that Rule 26(e) imposes a duty to continue producing documents years after the expiration of the discovery deadline, despite the fact that the requested documents and information did not exist at the time of the original request and are irrelevant to any issue before the Court. This is not what Rule 26(e) requires.

Fed. R. Civ. P. 26(e) states in pertinent part

> (e) Supplementing Disclosures and Responses.
>
> (1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing…

The pre-2007 language of Rule 26(e) imposed a duty to supplement "to include information thereafter acquired." *Id.* The advisory committee notes to the 2007 amendment to Rule 26(e) specifically state that the 2007 modification of Rule 26(e) reflects only a "duty to supplement or correct by providing information that was not originally provided ***although it was available at the time of the initial disclosure or response***." Advisory Committee's notes to 2007 Amendment (emphasis added). Rule 26(e) does not, therefore, require supplementation of documents that are created years after the original discovery request is issued such as a list of tenants in the Park in 2019. Plaintiffs fundamentally misconstrue the duty to supplement in Rule 26(e).

## II. DISCOVERY HAS BEEN CLOSED FOR NEARLY THREE YEARS

Pursuant to the Court's Initial Scheduling Order (Dkt. 35), discovery closed on December 9, 2016 – nearly three years ago. This Court rigorously enforces this discovery deadline. Local Civil Rule 16(B) ("The parties and their counsel are bound by the dates specified in any such orders and no extensions or continuances thereof shall be granted in the absence of a showing of good cause."); *Telecomm. Sys., Inc. v. Mobile 365, Inc.*, No. CIV.A. 3:06CV485, 2009 WL 5943235, at *18 (E.D. Va. Mar. 31, 2009) (denying motion to re-open discovery where "there is no pending, question before the Court that warrants additional discovery; all relevant facts for the pending Motions are known."); *see also Hately v. Terrenzano*, No. 1:16-cv-01143, 2017 WL 1428712, at *4 (E.D. Va. Apr. 20, 2017) (denying a motion to amend complaint for second time in part because it "would certainly require the Court to reopen discovery for Watts, and would probably lead to Defendant having to revisit discovery she had already completed."); *Lee v. Wal-Mart Stores, Inc.*, No. 3:10cv367-DWD, 2011 WL 796784, at *1 (E.D. Va. Mar. 1, 2011) ("The Court summarily denies this motion because discovery is, and shall remain, closed pursuant to this Court's Jan. 7, 2011 Order."); *Jackson v. United Airlines, Inc.*, No. 3:08CV182, 2009 WL

- 9 -

1706681, at *5 (E.D. Va. June 17, 2009) (noting that discovery period had closed) ("Accordingly, the defense has had a fair opportunity to 'discover' such opinions as to the claims for all damages, and the Court will not re-open discovery for them to do so now, especially where the Court has already foreclosed and denied Plaintiff's counsel's request to re-open discovery for other pursuits because the discovery period had closed.").

This Court should enforce the December 9, 2016 discovery cut-off as there is no good cause for Plaintiffs to seek burdensome and costly discovery years after that cut off. Indeed, in the years since December 9, 2016, Plaintiffs never once told this Court (or the Fourth Circuit for that matter) that they required additional discovery. Moreover, Plaintiffs do not cite a single case from this District for the proposition that discovery be re-opened from years prior, especially to seek documents created after the close of discovery. The cases from other districts that they do cite are inapposite. *Cory v. Whisman, Grygiel & Giordano, P.A.*, No. 06-2694, 2012 WL 1632729, at *6-7 (D. Md. May 8, 2012) (holding a party had an obligation to supplement discovery five days after close of discovery and only ordering documents produced that existed at the time of the original requests); *United States v. Louisiana*, No. 11-470, 2015 WL 5595630, at *1 (M.D. La. Sept. 21, 2015) (discovery was not closed at the time of the discovery dispute) (citing pre-2007 amendment Rule 26(e) language that was specifically removed from Rule 26 in 2007); *A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 07-929, 2014 WL 6474285, at *2 (D. Conn. Nov. 19, 2014) (Court disagreed with arbitrary cut-off end date for discovery set by defendant but only requiring production of relevant discovery up to date of the Court's ruling); *Gorzynski v. JetBlue Airways Corp.*, No. 03-774, 2012 WL 712067 (W.D.N.Y. Mar. 5, 2012) (granting employee file be supplemented for two employees when Court had ruled prior that JetBlue produce the employee files).

Instead, Plaintiffs contend that Defendants are "unilaterally" placing cut-offs on discovery. This contention is not credible. Defendants did not unilaterally choose December 9, 2016 as a discovery cut-off – this Court set that date in its Initial Scheduling Order. The parties operated with the expectation that that date was the discovery cut off. Now, Plaintiffs couch their Motion to Compel as requesting that documents be supplemented, but in reality, Plaintiffs are asking that discovery be re-opened so that Plaintiffs can seek new documents created after the close of discovery nearly three years ago. This would defeat the purpose of Local Civil Rule 16(B) and run counter to the case law enforcing that Rule.

### III. PLAINTIFFS FILED A MOTION FOR SUMMARY JUDGMENT AND NEVER REPRESENTED THAT THEY NEEDED ADDITIONAL DISCOVERY

As noted above, *supra*, Plaintiffs filed a Cross-Motion for Summary Judgment on Count I and other counts. (Dkts. 137-138.) In doing so, they also opposed Defendants' Motion for Summary Judgment on all counts. By filing their Cross-Motion for Summary Judgment, Plaintiffs represented that they had obtained all necessary discovery to permit them to ***prevail*** on Count I, and Plaintiffs ***never*** told this Court that they did not have sufficient information to oppose Defendants' Motion for Summary Judgment even though Fed. R. Civ. P. 56(d) specifically permits a party to make such an assertion. Fed. R. Civ. P. 56(d). Likewise, Plaintiffs never told the Fourth Circuit that they had insufficient discovery to prevail on summary judgment or to oppose Defendants' Motion for Summary Judgment. Indeed, Plaintiffs seek to proceed with summary judgment on remand now – requesting a briefing schedule from Defendants – further demonstrating that they have no need for the additional documents and information they demand.

In their Cross-Motion for Summary Judgment Plaintiffs argued that they were entitled to summary judgment on Count I due to their statistical expert's conclusions which ***were based on*** a review of a list of tenants provided in discovery in 2016 and Policy documents produced in

- 11 -

discovery. Pls.' Mem. Supp. Mot. Summ. J. at 14 (citing Ex. 40 – Mr. Clark's report and declaration) (Dkt. 138). Indeed, Mr. Clark, Plaintiffs' statistical expert, stated in his report that he reviewed a list of tenants for the Park produced in 2016 and Policy documents produced in discovery in 2016. Pls.' Mem. Supp. Mot. Summ. J. Ex. 40B at 2 ¶ 2(f) and ¶ 3 (Dkt. 138). Plaintiffs did not argue that their statistical expert needed to obtain a list of tenants in the future to make his conclusions or that Plaintiffs' expert could not reach conclusions without additional Policy documents. Plaintiffs cannot now credibly argue that they need additional discovery to present their claims.

### IV. THE REQUESTED DISCOVERY IS NOT DISCOVERABLE BECAUSE IT IS NOT RELEVANT TO PLAINTIFFS' CLAIMS

Plaintiffs' FHA claims (Count I) – the only claims left in this case after Plaintiffs' appeal – relate to events taking place in 2016 or before. Indeed, Plaintiffs filed their Complaint in 2016 and as of December 23, 2016, the date Plaintiffs filed their Cross-Motion for Summary Judgment, Plaintiffs represented that three out of the four couples had vacated the Park. Pls.' Mem. Supp. Mot. Summ. J. at 16 n.5 (Dkt. 138). The remaining couple would vacate the Park in 2017.

A list of tenants in the Park after the Plaintiffs have vacated the Park cannot be relevant to Plaintiffs' claims dating to allegations regarding enforcement of a Policy from 2016 and prior. As Defendants' counsel posited to Plaintiffs' counsel on the telephonic meet and confer, would Plaintiffs agree that if the demographic make up in the Park changed in Defendants' favor in 2019 that Plaintiffs' claims lack merit and should be dismissed? Even though Plaintiffs' counsel failed to answer this hypothetical, the answer is obvious. Plaintiffs likely would not agree as Plaintiffs would likely state that the only list of tenants relevant to their claims was the list produced in 2016. Likewise, documents regarding the enforcement of the Policy after Plaintiffs vacated the Park are not relevant to Plaintiffs' allegations which relate to enforcement of the Policy from 2016 and

prior. Plaintiffs, however, want to go on a fishing expedition into irrelevant information from 2017-2019.

Moreover, as noted above, Plaintiffs' statistical expert already rendered his opinions in his report *based* on documents already produced. Defendants' countering statistical expert already rendered his opinions in his rebuttal report. Plaintiffs' request for additional documents will have no bearing on these expert opinions as the reports cannot now be supplemented.

Plaintiffs' claim for injunctive relief also has no bearing on the additional discovery sought despite Plaintiffs' claims to the contrary. Plaintiffs' claim for injunctive relief seeks that Defendants' enforcement of the Policy be enjoined. Essentially, Plaintiffs' claim that they need a broad array of additional information from 2017-2019 because they need to know if the same Policy is in effect. Pls.' Mem. Supp. Mot. Compel at 8. This claim is not credible. Given the procedural history of this case, Defendants can represent that they have not wasted the time of this Court, the Fourth Circuit, and the Supreme Court litigating a policy that no longer exists or has been substantially modified. Defendants' Policy is still in place and being enforced. As a result, *MercExchange, LLC v. eBay, Inc.*, 467 F. Supp. 2d 608 (E.D. Va. 2006) is completely inapposite. There, after a jury verdict determined there was a patent infringement, this Court permitted limited discovery to determine whether a permanent injunction against future infringement was appropriate.[1] Here, by contrast, Plaintiffs' claims are based on enforcement of a Policy in 2016 and years prior, and Plaintiffs seek to enjoin enforcement of a Policy that is still in place. No additional discovery is necessary for the parties to re-brief summary judgment or to evaluate Plaintiffs' claim for injunctive relief.

---

[1] Notably, here, unlike *MercExchange, LLC*, there has been no determination of any violation of the FHA and Defendants believe there never will be. The decision in that case was necessarily based on the prior determination of infringement. While Defendants assert that *MercExhcange, LLC* is inapposite, at best it only applies after a violation has been found.

Tellingly, throughout Plaintiffs' Motion to Compel Plaintiffs fail to mention (or attach) Defendants' Objections to Plaintiffs' discovery requests. Defendants objected to the Requests at issue on various grounds including, *inter alia*, undue burden, over breadth in scope and time, and relevance, *see* Objections to RFPs 11, 14, 39, 42, 49, 50 and 53 (Exhibit 1) and objected to ROG 1 on grounds of over breadth in scope and time and proportionality, *see* Objections to ROG 1 (Exhibit 2). Instead, Plaintiffs incorrectly assert that Defendants have not objected to Plaintiffs' discovery requests as unduly burdensome or irrelevant. Pls.' Mem. Supp. Mot. Compel at 6, 8. By failing to inform the Court that Plaintiffs' served Objections to their Requests, Plaintiffs improperly attempt to have this Court grant their Motion to Compel without presenting the full record to the Court which involved these Objections, an extensive 2016 meet and confer process and the resulting agreement that the parties reached back in 2016.

Contemporaneously with Plaintiffs' letter request to Defendants for additional discovery, Plaintiffs proposed to re-brief summary judgment this September. *See* Pls.' Mem. Supp. Mot. Compel Ex. 7. This proposal illuminates the baseless nature of Plaintiffs' Motion to Compel. By their own admission, Plaintiffs are ready to brief summary judgment based on the discovery already produced in 2016 – just as Plaintiffs were in 2016 when they originally filed their Motion for Summary Judgment. The additional discovery sought is clearly not relevant to Plaintiffs' claims and the instant Motion simply aims to harass Defendants into incurring significant discovery costs nearly three years after the close of discovery by forcing Defendants to search for, collect and review documents and information that were not in existence in 2016 and are not relevant to Plaintiffs' 2016 claims. This Court should deny this Motion.

## **CONCLUSION**

WHEREFORE, Defendants respectfully request that Plaintiffs' Motion to Compel Supplemental Discovery be denied and for such other relief as is just and proper.


Dated: August 14, 2019                Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT LIMITED
PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of August, 2019, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com