UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ,<br><br>*Plaintiffs*,<br><br>vs.<br><br>WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC.,<br><br>*Defendants*. | Civil Action No. 1:16cv00563-TSE-TCB |

## SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's April 7, 2020 Order (ECF No. 273, the "Order") seeking supplemental briefing on Defendants Waples Mobile Home Park L.P., Waples Project L.P., and AJ Dwoskin and Associates, Inc.'s (together, "Defendants" or "Waples") Motion for Summary Judgment (ECF No. 247, the "Motion"), Plaintiffs Rosy Giron de Reyes, Jose Dagoberto Reyes, Felix Alexis Bolanos, Ruth Rivas, Yovana Jaldin Solis, Esteban Ruben Moya Yrapura, Rosa Elena Amaya, and Herbert David Saravia Cruz (collectively, "Plaintiffs") respectfully submit the following responses to the Court's questions set forth therein.

The Order presents two questions to the parties: (1) "Does this Order identify the correct questions [*i.e.,* whether the policy's disproportionate impact on Latinos is justified because the Policy serves a valid interest that could not be served by another practice with a less discriminatory effect] on remand?"; and (2) "Are the questions that remain jury issues or questions for the Court

1

to resolve on summary judgment?" Order at 4, 5. As to the first question, the Order correctly identifies that only steps two and three of the *Inclusive Communities* framework remain to be decided by the finder of fact; however, Defendants' burden at step two requires clarification, as it is much greater than the Order describes. *See infra* at Arg. § I. As to the second question, both steps two and three must be resolved by a jury because Plaintiffs have raised questions of fact as to each step that cannot be resolved by the Court on summary judgment. *See infra* at Arg. § II.

## ARGUMENT

### I.   ONLY STEPS TWO AND THREE SHOULD BE DECIDED ON REMAND

*First,* while the Order correctly identifies that only steps two and three of the *Inclusive Communities* framework need be resolved, *see* Order at 2, Defendants' burden at step two is much more exacting in light of *Inclusive Communities'* comparison to Title VII's business necessity standard.

#### A.   The Fourth Circuit Found that Plaintiffs Had Made a *Prima Facie* Case of Disparate Impact[1]

The questions on remand are properly limited to steps two and three of the *Inclusive Communities* burden-shifting framework because the Fourth Circuit already held that Plaintiffs had satisfied step one by proving a *prima facie* case of disparate impact. *See also* Order at 4. After deciding that Plaintiffs' FHA claim survived Defendants' motion to dismiss under a disparate impact theory of liability, the Fourth Circuit went on to find that Plaintiffs had presented "sufficient evidence" of disparate impact. *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 433

---

[1]  Because the Fourth Circuit already found that Plaintiffs have satisfied step one of the *Inclusive Communities* burden-shifting framework, the Court should disregard Defendants' arguments to the contrary. *See* Memorandum in Support of Summary Judgment (ECF No. 250, the Memorandum") at 10-22; Reply in Support of Motion for Summary Judgment (ECF No. 265, the "Reply") at 6-11.

(4th Cir. 2018) ("Consequently, because the district court concluded that the FHA claim survived the motion to dismiss stage, and because we conclude that Plaintiffs[] submitted sufficient evidence of a *prima facie* case of disparate impact, the district court should have addressed the FHA claim under the disparate-impact theory of liability at the motion for summary judgment stage."). The Fourth Circuit went on to hold that, "under these facts, Plaintiffs have satisfied their burden under step one of the burden-shifting framework to make a *prima facie* showing of disparate impact. It is for the district court to determine in the first instance whether Plaintiffs have satisfied the additional steps in this inquiry and, thus, whether Waples' Policy requiring occupants to provide documentation evincing legal status violated the FHA by disproportionately impacting Latinos." *Id.* at 433 n.12. The Order correctly recognizes that this language is a conclusive instruction that only steps two and three of the *Inclusive Communities* framework remain to be decided on remand. *See* Order at 3-4.

> **B.** **The Burden Posed by Step Two of the *Inclusive Communities Framework* Is More Exacting than the Order Describes**

Nevertheless, Plaintiffs respectfully submit that the Order's description of step two of the *Inclusive Communities* burden-shifting framework requires clarification: the "valid interest" served by the Policy, Order at 2, must amount to a "business necessity" for Defendants to satisfy their burden. Both the Supreme Court and the Fourth Circuit have made clear that step two is "analogous to Title VII's business necessity standard." *See Tex. Dept. of Housing v. Inclusive Communities Project, Inc.,* 135 S.Ct. 2507, 2522 (2015); *Reyes,* 903 F.3d. at 424. The business necessity standard is "different and more difficult" than merely proving a valid business interest, Dkt. No. 56 at 4 (quoting *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 988 (4th Cir. 1984)), insofar that a business necessity goes to "the essential nature of [Defendants'] business." *MacLennan v. Am. Airlines, Inc.*, 440 F. Supp. 466, 472 (E.D. Va. 1977) ("Nor, to the extent that

3

that defense differs from the [bona fide occupational qualification] defense, can the policy be defended as a 'business necessity.' As indicated before, there is no reasonable factual basis upon which to believe that a change from the existing maternity leave policy of American would undermine the essential nature of American's business—namely, the safe and efficient transportation of passengers."). Thus, in considering step two of the *Inclusive Communities* burden-shifting framework, the Court must not merely ask whether the business interests identified by Defendants are "valid," but rather whether they are true *business necessities*.

## II. THE REMAINING QUESTIONS MUST BE RESOLVED BY A JURY

*Second,* and particularly in light of the hurdle that step two presents, both steps two and three of the *Inclusive Communities* burden-shifting framework present continuing issues of fact that must be resolved by a jury, rather than the Court.

As to step two, disputes of fact remain as to whether the Policy was created to serve a business necessity, or whether Defendants' purported business interests were merely *post hoc* justifications for the Policy.[2] Specifically:

- There is a dispute of fact as to whether it is a business necessity to collect a Social Security card or "an original passport, original U.S. visa, and original arrival/departure form (I-94)" to verify identity, as Defendants have admitted that they do not use Social Security cards for this purpose, and foreign passports and/or ITINs can be used to verify identity as well. *See* Opposition to Motion for Summary Judgment (ECF No. 260, the "Opposition") at 22-24.

- There is a dispute of fact as to whether it is a business necessity to collect a Social Security card or "an original passport, original U.S. visa, and original arrival/departure form (I-94)" to run credit checks, because both Social Security numbers and ITINs can be used to run consumer reports on lessees, and Defendants do not even run credit checks on mere occupants. *See id.* at 24-25.

---

[2] Indeed, Defendants have never argued that the purported business interests served by the Policy are "necessities" as required by *Inclusive Communities*. *See generally* Mem. at 22-27; Reply at 11-15.

4

- There is a dispute of fact as to whether it is a business necessity to collect a Social Security card or "an original passport, original U.S. visa, and original arrival/departure form (I-94)" to run credit criminal background checks, because Defendants and their agent, Yardi Resident Screening, admit that Social Security Numbers are not required to run criminal background checks. *See id.* at 25-26.

- There is a dispute of fact as to whether it is a business necessity to collect a Social Security card or "an original passport, original U.S. visa, and original arrival/departure form (I-94)" to allay lease underwriting or eviction concerns, as these documents do not prove, *inter alia*, that lessees will be able to make their monthly rent payments;[3] indeed, Plaintiffs never missed a monthly rent payment while they resided at the Park. *See id.* at 26-28.

- There is a dispute of fact as to whether it is a business necessity to use a Social Security card or "an original passport, original U.S. visa, and original arrival/departure form (I-94)" to avoid liability under the ICRA's anti-harboring provision because merely renting to undocumented immigrants, without more, is insufficient to constitute a violation of this provision. *See id.* at 28-29.

- There is a dispute of fact as to whether the purported business interests that Defendants have set forth in their briefing motivated the Policy in the first place, or whether they were in fact *post hoc* justifications to avoid liability in this action. *See id.* at 21-22.

For these reasons, the resolution of whether Defendants have met their burden on step two of the *Inclusive Communities* burden-shifting framework should be left to a jury, rather than the Court on summary judgment.

That there are material issues of fact as to step three of the *Inclusive Communities* burden shifting framework—which the Court/jury need only reach if it finds that Defendants have satisfied their burden on step two—is evident from the fact that the Policy as enforced by Defendants until 2015 is in itself a less discriminatory alternative that satisfies Defendants' business interests. As Plaintiffs have previously argued, *see* ECF No. 260 at 29-30, collecting proof of legal presence from all *leaseholders,* and merely collecting proof of identity from all *occupants*, would reduce

---

[3] To the extent that Defendants rely on the testimony of George Caruso on this point, Plaintiffs have raised countless issues with his testimony that they are entitled to test on cross-examination at trial. *See* Opp. at 27.

the discriminatory effect on Latinos by allowing plaintiffs and others who were evicted from the Park due to their co-occupants' lack of documentation to continue living there so long as they could continue to satisfy the requirements of their leases. By comparison, Defendants have not adduced sufficient evidence at the summary judgment stage to show that this solution is not viable. It therefore is appropriate for the jury, not the Court, to resolve this question.

## CONCLUSION

For the foregoing reasons, and those set forth in Plaintiffs' opposition brief, *see generally* Opp., Plaintiffs respectfully request that the Court deny Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

_____//s//_____      April 30, 2020
LEGAL AID JUSTICE CENTER
Simon Sandoval-Moshenberg, VSB #77110
Nady Peralta, VSB #91630
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454
simon@justice4all.org
nady@justice4all.org

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Kaiyeu Kevin Chu, VSB #85746
Matthew Traumpan (pro hac vice)
Gianna Puccinelli (pro hac vice)
1300 I Street NW, Suite 900
Washington, District of Columbia 20005
Phone: (202) 538-8000
Fax: (202) 538-8100
kevinchu@quinnemanuel.com
matthewtraupman@quinnemanuel.com
giannapuccinelli@quinnemanuel.com

*Counsel for Plaintiffs*

## Certificate of Service

I hereby certify that on this 30th day of April, 2020, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

_____//s//_____    Dated: April 30, 2020
Simon Sandoval-Moshenberg (VSB No. 77110)
*simon@justice4all.org*
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5605
Fax: (703) 778-3454