### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ, <br><br> *Plaintiffs*, <br><br> vs. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC., <br><br> *Defendants*. | Civil Action No. 1:16cv00563-TSE-TCB |

---

### PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF

The Court's April 7, 2020 Order (ECF No. 273, the "Order") posed two questions:  1) "Does this Order identify the correct questions [*i.e.,* whether the policy's disproportionate impact on Latinos is justified because the Policy serves a valid interest that could not be served by another practice with a less discriminatory effect] on remand?"; and (2) "Are the questions that remain jury issues or questions for the Court to resolve on summary judgment?"  Order at 4, 5.  The answers are straightforward:  (1) yes, but Defendants must show a "business necessity," and not just a "valid interest"; and (2) they are jury issues, because Plaintiffs have identified disputed issues of material fact going to the core of steps 2 and 3 of the *Inclusive Communities* framework.  *See generally* Plaintiffs' Supplemental Brief (ECF No. 274).

To avoid these answers, Defendants renew a series of elaborate arguments that they have raised—and lost—before.  Plaintiffs respectfully request that the Court reject those arguments

1

again, and deny Defendants' Motion for Summary Judgment (ECF No. 247, the "Summary Judgment Motion").

## **ARGUMENT**

### I.    DEFENDANTS IGNORE THE FOURTH CIRCUIT'S HOLDING THAT PLAINTIFFS SATISFIED THEIR BURDEN UNDER STEP ONE

*First,* in arguing that the Fourth Circuit did not conclusively resolve whether Plaintiffs had met their burden under step one of the *Inclusive Communities* framework, Defendants ignore the Fourth Circuit's findings to the contrary. As this Court recognized, Order at 3-4, the Fourth Circuit held that, "under these facts, Plaintiffs have satisfied their burden under step one of the burden-shifting framework to make a *prima facie* showing of disparate impact. It is for the district court to determine in the first instance whether Plaintiffs have satisfied the additional steps in this inquiry and, thus, whether Waples' Policy requiring occupants to provide documentation evincing legal status violated the FHA by disproportionately impacting Latinos." *Reyes v. Waples Mobile Home Park L.P,* 903 F.3d 415, 433 n.12 (4th Cir. 2018). Defendants do not even attempt to square this holding with their assertion that it is for this Court to decide whether Plaintiffs have satisfied step one of the *Inclusive Communities* framework. *See generally* D. Supp. Br. Taking the Fourth Circuit's holding into account, however, it is clear that the only question for this Court to decide on remand is whether summary judgment is appropriate at steps two and three of the *Inclusive Communities* framework (it is not, *see* Opposition to Motion for Summary Judgment (ECF No. 260, the "Summary Judgment Opposition") at 20-30).[1]

---

[1]  Defendants offer a convoluted theory involving the difference between Rule 12(b)(6) and Rule 56 to argue that "the Fourth Circuit did not actually decide any summary-judgment issues ***at all***." D. Supp. Br. at 12. But the Fourth Circuit plainly understood the difference between Rule 12(b)(6) ("At the motion to dismiss stage, we must accept all well-pled facts as true . . . accepting these statistics as true, we conclude that the Plaintiffs sufficiently *alleged a prima facie case* of disparate

## II.    DEFENDANTS ADD A "THRESHOLD INQUIRY" TO THE *INCLUSIVE COMMUNITIES* FRAMEWORK WHERE NONE EXISTS

*Second,* Defendants' attempt to convert policy justifications and dicta from the Supreme Court's opinion in *Inclusive Communities* into a "threshold inquiry" supplementing the three-step *Inclusive Communities* framework is profoundly mistaken. The Fourth Circuit laid out the standard under step one of the *Inclusive Communities* framework as follows: "Under the first step, the plaintiff must demonstrate a robust causal connection between the defendant's challenged policy and the disparate impact on the protected class." *Reyes,* 903 F.3d at 424. Yet Defendants continue to insist that the Court must instead decide whether "Defendants' Policy [is] an 'artificial, arbitrary, and unnecessary barrier' to housing" and whether "the federal anti-harboring statute, 8 U.S.C. § 1324 and the Fourth Circuit's prior decision in *United States v. Aguilar,* 477 F. App'x 1000 (4th Cir. 2012) . . . substantially limit Defendants' discretion such that their Policy cannot, as a matter of law, be found to have caused a disparate impact[.]" D. Supp. Br. at 1. These arguments were rejected by the Fourth Circuit; thus, the Court should similarly reject them here.

### A.    The Court Need Not Find that the Policy Is an "Artificial, Arbitrary, and Unnecessary Barrier to Housing" to Find Plaintiffs Satisfied Step One

As they have done previously,[2] Defendants wrongfully claim that the Court must separately decide whether the Policy is an "artificial, arbitrary, and unnecessary barrier to housing" in order to find that Plaintiffs have made a *prima facie* case of disparate impact. D. Supp. Br. at 4-7. In

---

impact") and Rule 56 ("because we conclude that Plaintiffs *submitted sufficient evidence* of a *prima facie* case of disparate impact, the district court should have addressed the FHA claim under the disparate-impact theory of liability at the motion for summary judgment stage"). *Reyes,* 903 F.3d at 428, 433. And when the Court wrote that "Plaintiffs have satisfied their burden under step one of the burden-shifting framework to make a *prima facie* showing of disparate impact," *id.* at 433 n.12, the Court clearly understood what that meant.

[2]    *See* S.J. Mot. at 13-14; Reply in Support of Summary Judgment (ECF No. 264, the "Summary Judgment Reply") at 6; Br. of Appellees at 37-39, *Reyes v. Waples Mobile Home Park L.P.*, No. 17-1723 (4th Cir. Dec. 15, 2017), Doc. No. 50.

reality, these phrases are taken from the Supreme Court's policy justifications underscoring that the three-part burden shifting analysis is adequate to fulfill the intent of the Federal Housing Act. *See Tex. Dept. of Housing v. Inclusive Communities Project, Inc.,* 135 S.Ct. 2507, 2524 (2015) ("Governmental or private policies are not contrary to the disparate-impact requirement unless they are 'artificial, arbitrary, and unnecessary barriers.'" (citations omitted)). In other words, if a policy fails the three-part test, then it is *by definition* "unnecessary," "artificial," "arbitrary"; if it meets the three-part test, it is not. That is why the Fourth Circuit did not separately address whether the Policy was "artificial, arbitrary, and unnecessary" in holding that Plaintiffs had established a *prima facie* case of disparate impact, *see supra* at 2: they simply did not need to do so, and neither does this Court.

### B. The Defendants' Argument Under the Anti-Harboring Statute Has Been Raised and Rejected Before

Similarly, Defendants once again assert the fallacy that the Court must decide whether the Immigration Reform and Control Act's ("IRCA") anti-harboring provision, 8 U.S.C. § 1324 (a)(1)(A)(iii), "substantially limited their discretion" before finding that Plaintiffs had established a *prima facie* case of disparate impact. D. Supp. Br. at 7-10.[3] In the face of this exact same argument, the Fourth Circuit rightfully found that Plaintiffs had made a *prima facie* case of disparate impact, and this Court is bound to adhere to this ruling. In their appellate brief, Defendants argued that "[t]he district court's finding that Plaintiffs cannot satisfy the requirements of *Inclusive Communities* also should be affirmed because federal 'law'—here, the IRCA's anti-

---

[3]    Defendants have raised the issue of the ICRA anti-harboring provision restricting their discretion to enforce the Policy at every turn, and it has proven unsuccessful. *See, e.g.,* Petition for a Writ of Certiorari at 13-15, 21-23, *Waples Mobile Home Park L.P. v. Reyes*, Case No. 17-1723 (Mar. 15, 2019); Br. of Appellees at 33-35, *Reyes v. Waples Mobile Home Park L.P.*, No. 17-1723 (4th Cir. Dec. 15, 2017), Doc. No. 50. *See also* S.J. Mot. at 10-12; S.J. Reply at 6-8.

harboring provision, 8 U.S.C. § 1324(a)(1)(A)(iii)—substantially limits [Waples'] discretion in formulating its lease Policy." Br. of Appellees at 33-35, *Reyes v. Waples Mobile Home Park L.P.*, No. 17-1723 (4th Cir. Dec. 15, 2017), Doc. No. 50 (internal quotations and citations omitted). Squarely confronted with this argument, the Fourth Circuit acknowledged certain scenarios that could sever the causal connection and preclude a plaintiff from making a *prima facie* case of disparate impact, including "when federal law 'substantially limit[ed] the [defendant's] discretion' in creating the policy." *Reyes,* 903 F.3d at 433 426 (quoting *Inclusive Communities,* 135 S. Ct. at 2524)). But the Fourth Circuit nonetheless found that Plaintiffs had satisfied their burden at both the motion to dismiss *and* summary judgment stages. *See Reyes,* 433 n.12; *see also supra* at 2. If the Defendants were correct that the ICRA's anti-harboring provision essentially required them to enact the policy at issue in this litigation, then the entire Fourth Circuit opinion finding that Plaintiffs had made a *prima facie* case of disparate impact was nothing but an advisory opinion. *United States v. McClure*, 241 F. App'x 105, 107 (4th Cir. 2007) ("The Supreme Court has developed a number of constitutional justiciability doctrines from the text of Article III, Section 2, including the *prohibition against advisory opinions* . . . .") (emphasis added). As such, Plaintiffs respectfully request that the Court put this issue to bed once and for all and reject Defendants' argument on this point on summary judgment.

## III.    DEFENDANTS MISSTATE THEIR BURDEN AT STEP TWO OF THE *INCLUSIVE COMMUNITIES* FRAMEWORK

*Third,* far from "[moving] the legal goalposts" as Defendants contend, *see* D. Supp. Br. at 16, that step two of the *Inclusive Communities* framework is the equivalent of Title VII's business necessity standard is set forth in both *Inclusive Communities* itself and the Fourth Circuit's decision. In *Inclusive Communities,* the Supreme Court stated:

> An important and appropriate means of ensuring that disparate-impact liability is properly limited is to give housing authorities and private developers leeway to state and explain the valid interest served by their policies. This step of the analysis is analogous to the business necessity standard under Title VII and provides a defense against disparate-impact liability.

*Inclusive Communities,* 135 S.Ct. at 2522. Similarly, the Fourth Circuit acknowledged that step two is "analogous to Title VII's business necessity standard." *Reyes,* 903 F.3d. at 424. All Defendants provide in the way of evidence that their "business interests" are in fact business necessities is a short, conclusory paragraph in their Supplemental Brief, which does not even attempt to engage the rigors of the business necessities standard. *See* D. Supp. Br. at 16. This is particularly striking given the evidence that Plaintiffs have put forward demonstrating that these "business interests" are nothing more than *post hoc* justifications for the Policy. *See* Opposition to Summary Judgment (ECF No. 260, "Summary Judgment Opposition") at 21-22. Defendants' remaining arguments on the merits of these "business interests," *see* D. Supp. Br. at 14-16; *see also* S.J. Mot. at 22-27; S.J. Reply at 11-15, and Plaintiffs' previously-stated arguments refuting them, S.J. Opp. at 20-29, only serve to highlight that there are continuing disputes of fact to be resolved by the jury.[4] The same is true of Defendants' arguments regarding step three of the *Inclusive Communities* framework. *See* S.J. Opp. at 29-30. For this reason, continuing disputes of fact preclude summary judgment, and require a trial to finally resolve.

---

[4]  The same is true of step three of the *Inclusive Communities* framework. As stated in Plaintiffs' prior briefing, Defendants' entire course of conduct prior to enforcing the Policy as written is evidence that it is a less discriminatory alternative to the Policy. S.J. Opp. at 29-30. This is particularly true given that none of Defendants' "business interests" appeared to be negatively impacted by it. For these reasons, there are at least continuing issues of fact as to whether Plaintiffs have satisfied step three of the burden shifting framework.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Plaintiffs' opening supplemental brief, *see* ECF No. 274, and in Plaintiffs' Opposition, *see* ECF No. 260, Plaintiffs respectfully request that the Court deny Defendants' Motion for Summary Judgment in its entirety and set this matter for a final pretrial conference.

Respectfully submitted,

_____//s//_____          May 21, 2020
LEGAL AID JUSTICE CENTER
Simon Sandoval-Moshenberg, VSB #77110
Nady Peralta, VSB #91630
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454
simon@justice4all.org
nady@justice4all.org

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Kaiyeu Kevin Chu, VSB #85746
Matthew Traupman (pro hac vice)
Gianna Puccinelli (pro hac vice)
1300 I Street NW, Suite 900
Washington, District of Columbia 20005
Phone: (202) 538-8000
Fax: (202) 538-8100
kevinchu@quinnemanuel.com
matthewtraupman@quinnemanuel.com
giannapuccinelli@quinnemanuel.com

*Counsel for Plaintiffs*

**Certificate of Service**

I hereby certify that on this 21st day of May, 2020, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.


_____//s//_____        Dated: May 21, 2020
Simon Sandoval-Moshenberg (VSB No. 77110)
*simon@justice4all.org*
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5605
Fax: (703) 778-3454

8