IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, <br><br> Defendants. | Civil No.: 1:16cv563-TSE-TCB |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO CLARIFY AND/OR RECONSIDER THE COURT'S AUGUST 19, 2020 SUMMARY JUDGMENT ORDER**

Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A. J. Dwoskin & Associates, Inc. (collectively "Defendants"), by counsel, and pursuant to Federal Rule of Civil Procedure 54(b), respectfully submit this memorandum of points and authorities in support of Defendants' Motion to Clarify and/or Reconsider the Court's August 19, 2020 Summary Judgment Order (Dkt. 283) ("Order" or "Summary Judgment Order") denying Defendants' Motion for Summary Judgment (Dkt. 247).

**INTRODUCTION AND BACKGROUND**

Plaintiffs' only remaining claim in this case is for "disparate-impact" discrimination under the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, arising out of a policy Defendants apply to all adults who reside at their mobile-home park in Fairfax, Virginia, requiring them to provide proof of legal residency in the United States (the "Policy"). In *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015), the U.S. Supreme Court held that a three-step, burden-shifting standard governs the adjudication of

that claim. In their Motion for Summary Judgment, Defendants sought summary judgment on all three steps of the *Inclusive Communities* standard—including, principally, at "step 1."

Defendants presented multiple arguments as to why, at step 1, Plaintiffs could not demonstrate a prima facie case pursuant to *Inclusive Communities*. Defendants argued that

(1) Plaintiffs could not show that Defendants' Policy is "artificial, arbitrary, and unreasonable" as required—indeed, they did not even try and thus waived the issue;

(2) the federal anti-harboring statute, 8 U.S.C. § 1324, severs any causal chain between the Policy and any disparate impact by "substantially limit[ing]" Defendants' discretion (*Inclusive Cmtys.*, 576 U.S. at 543).

(3) there is no *evidence*—as opposed to mere *allegations*—that confirms that the cause of any alleged impact from the Policy is because of Plaintiffs' status as Latinos; and

(4) Plaintiffs failed to produce statistical evidence that Latinos are disproportionately impacted by the Policy as required by settled disparate-impact law.

In its Summary Judgment Order, this Court failed to address any of these *Inclusive Communities* step-1 arguments. The Order is silent on whether there are disputes of fact at step 1, stating only that the Court found fact disputes at steps 2 and 3. Indeed, it is unclear whether the Court has determined that Plaintiffs already have established their *prima facie* case at step 1 as a matter of law—even though Plaintiffs did not move for summary judgment after remand from the U.S. Court of Appeals for the Fourth Circuit. As shown below, there is no basis for the Court to grant Plaintiffs summary judgment on step 1 for the reasons stated in Defendants' Motion for Summary Judgment—including because there are a myriad of fact disputes on step 1, including the predicate issue of whether Plaintiffs have demonstrated a statistical disparity.[1]

Given all this, the present status of Defendants' step-1 arguments and whether (and how) the Court's Order resolves them remains unclear. With the pretrial conference less than a month

---

[1] This issue is the subject of competing expert opinions. *See* Dkt. 248 at 15-22.

away, clarity is needed so that the parties and the Court know what issues do and do not remain for trial and, further, to ensure a complete record in any future appeal to the Fourth Circuit.

Accordingly, Defendants' respectfully request that the Court clarify whether its Order denies Defendants' Motion for Summary Judgment as to the *Inclusive Communities* step-1 grounds, and if so, why. If the Court determines that its Order does **not** resolve Defendants' Motion for Summary Judgment as to the step-1 arguments, Defendants respectfully request that the Court issue a ruling deciding those grounds—preferably in Defendants' favor—in order to ensure the record is clear and to clarify the issues remaining for trial—if any—prior to the September 24, 2020 pretrial conference. Defendants seek further clarification that the Plaintiffs are *not* deemed to have satisfied step-1 as a matter of law and that the step-1 issues remain to be litigated at trial. If the Court intended its Order to deny Defendants' Motion for Summary Judgment as to the step-1 arguments, Defendants hereby move, in the alternative, for reconsideration of that ruling for the reasons set forth in their briefing on summary judgment, including their supplemental brief. Dkt. 248; Dkt. 265; Dkt. 277.

## **LEGAL STANDARD**

District courts retain the power to revise, reconsider, and modify their interlocutory judgments "at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003); Fed. R. Civ. P. 54(b). Therefore, unless an order is certified as final, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Am. Canoe Ass'n* at 514-15.

Federal Rule of Civil Procedure 54(b) governs such interlocutory orders and a court's power to revise them. *See Genetic Veterinary Scis., Inc. v. Laboklin GmbH & Co. KG*, No. 2:17CV108, 2018 WL 1626033, at *2 (E.D. Va. Apr. 4, 2018). Rule 54(b) authorizes motions such as Defendants' that seek clarification and/or reconsideration of an interlocutory order denying (at least in part) summary judgment. *See Am. Canoe Ass'n*, 326 F.3d at 514–15 (noting that under Rule 54(b), "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted"); *Genetic Veterinary Scis.*, 2018 WL 1626033, at *3 (observing that if "Plaintiff was genuinely puzzled by the Court's" previous order, plaintiff "could have … filed a Motion for Clarification" when the order was first issued).

For their part, "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n*, 326 F.3d at 514. "The resolution of motions to reconsider pursuant to Rule 54(b) is 'committed to the discretion of the district court,' which may be exercised 'as justice requires.'" *Zaklit v. Global Linguist Solutions, LLC*, No. 1:14cv314 (JCC/JFA), 2014 WL 4161981, at *1 (E.D. Va. Aug. 19, 2014) (quoting *Am. Canoe Ass'n*, 326 F.3d at 515). Under Rule 54(b), Defendants are "not required to make a showing of extraordinary circumstances. Instead, the goal [under the instant motion] 'is to reach the correct judgment under law.'" *Netscape Commc'ns Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010) (Ellis, J.) (citing *Am. Canoe Ass'n*, 326 F.3d at 514–15 ("The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law.")).

**ARGUMENT**

**I. The Court Should Clarify Its Summary Judgment Order As To Step 1 Of The *Inclusive Communities* Burden-Shifting Scheme—Plaintiffs' Prima Facie Case.**

As noted, Defendants moved for summary judgment on step 1 of *Inclusive Communities*' burden-shifting scheme by asserting that Plaintiffs had not established a prima facie case. Dkt. 248 at 10-22. Pursuant to *Inclusive Communities*, in order to meet its prima facie burden, a plaintiff must show "robust causality" between the challenged practice and the claimed disparate impact on the protected class. 576 U.S. at 542. Plaintiffs also must show that the policy at issue is an "artificial, arbitrary, and unnecessary barrier" to housing. *Id.* at 543. In considering a disparate-impact plaintiff's prima facie case, courts should reject disparate-impact claims when "federal law substantially limits [a defendant's] discretion" in choosing and formulating the policy at issue. *Id.* at 543.

Although the Court's Summary Judgment Order denied Defendants' motion for summary judgment, the Court left unaddressed—and indeed was completely silent on—Defendants' multiple arguments regarding Plaintiffs' prima facie burden at step 1. In particular, the Court did not address Defendants' argument that Plaintiffs cannot meet their prima facie burden at step 1 because the anti-harboring statute "substantially limits [Defendants'] discretion" in formulating its Policy. Dkt. 248 at 10-12 (citing *United States v. Aguilar*, 477 F. App'x 1000 (4th Cir. 2012)).[2]

Moreover, Defendants argued that Plaintiffs cannot show that Defendants' reasonable Policy is an "artificial, arbitrary, and unnecessary" barrier. Dkt. 248 at 13-14. In support of this

---

[2] *Inclusive Communities* also makes clear that where "federal law substantially limits [a defendant's] discretion" in choosing a housing policy or practice, courts should reject FHA disparate-impact challenges to that policy because the "FHA does not put … private developers in a double bind of liability." 576 U.S. at 542.

argument, Defendants asserted that the Policy: (1) is reasonably aimed at avoiding criminal liability under the federal anti-harboring statute; (2) is reasonably designed to help confirm the identities of lease applicants and ensure proper credit and criminal-background checks; and (3) mirrors federal law and HUD housing-assistance policy. *Id.* Defendants also argued that there is no *evidence*—as opposed to mere *allegations*—showing that the cause of any alleged impact from the Policy is because of Plaintiffs' status as Latinos, as opposed to the fact that the female Plaintiffs entered the country illegally. *Id.* at 14-15.

Finally, as to Plaintiffs' prima facie burden, Defendants argued that Plaintiffs failed to produce statistical evidence that Latinos are disproportionately impacted by the Policy as required. *Id*. at 15-22.

The Court's Summary Judgment Order does not address any of these arguments. Defendants request that the Court rule on Defendants' step-1 arguments and explain the basis for the Court's decision. Clarity on the nature and scope of the Court's Order is needed to ensure that the parties and the Court know what issues do, and do not, remain for trial. Clarity also is needed to ensure a proper record for effective appellate review in any future appeal. It is a core function of district courts to provide clarity in these instances, as the Fourth Circuit has observed in a different setting. *See United States v. Castner*, 50 F.3d 1267, 1273 (4th Cir. 1995) (noting the "obligation" of trial courts "to clarify confused factual issues or misunderstandings … and to 'otherwise insure that the trial proceed[s] efficiently and fairly'") (quoting *United States v. Morrow*, 925 F.2d 779, 781 (4th Cir. 1991)).

Indeed, clarity in aid of an impending trial and later appellate review underlies Rule 56(a)'s direction that, in deciding summary judgment motions, district courts "should state on the record the reasons for granting or denying" such motions. Rule 56(a); *see also* Rule 56(a),

Advisory Committee Notes 2010 Amendments (noting that "a statement of reasons" for a summary judgment ruling "can facilitate an appeal or subsequent trial-court proceedings"); *Brewster of Lynchburg, Inc. v. Dial Corp.*, 33 F.3d 355, 366–67 (4th Cir. 1994) (pointing out that an "unexplained summary judgment order not only denies to the appellate court the tools of review but conceals what the court did and why and leaves the appeals court" to piece together what happened in the district court, which "is antithetical to proper performance of the review function"); *Myers v. Gulf Oil Corp.*, 731 F.2d 281, 283–84 (5th Cir. 1984) ("When we have no notion of the basis for a district court's decision, because its reasoning is vague or was simply left unsaid, there is little opportunity for effective review. In such cases, we have not hesitated to remand the case for an illumination of the court's analysis through some formal or informal statement of reasons.").

Clarity from the Court on whether and how it decided Defendants' step-1 arguments for summary judgment will aid further proceedings in this Court and any later appellate proceedings in the Fourth Circuit. It is particularly critical that, if the Court intended to reject those step-1 arguments because they implicate genuine issues of disputed fact for trial, it say so on the record and identify what those issues are so that the parties can properly prepare for trial. Rule 56(a) ("The court should state on the record the reasons for granting or denying the motion."); *Id.*, Advisory Committee Notes 2010 Amendments ("Among other advantages, a statement of reasons can facilitate an appeal or subsequent trial-court proceedings."). Indeed, whether trial is limited to step-2 and step-3 issues such as those identified in the Court's Order—or also encompasses issues relating to the step-1 arguments—will make a material difference to how the parties prepare, what evidence will be required, how the case will be tried, and how long a projected trial would last.

The Court's Summary Judgment Order also leaves it unclear whether this Court's prior findings of fact, which were left undisturbed on appeal, will be treated as undisputed for the purposes of any trial. Dkt. 190 at 2-6 (findings of fact); Dkt. 248 at 1-2, 7. And, the Court did not rule on the undisputed material facts that Defendants identified in their summary judgment briefing following remand from the Fourth Circuit, many of which Plaintiffs left undisputed. *Compare* Dkt. 248 at 3 *with* Dkt. 260 at 4-5.

Accordingly, Defendants ask the Court to clarify its Order by explaining (1) its ruling on Defendants' step-1 arguments, including Defendants' argument regarding the federal anti-harboring statute, (2) which step-1 issues remain for trial, (3) whether the Court's prior findings of fact will be treated as undisputed for the purposes of any trial; and (4) whether Defendants' undisputed material facts presented in Dkt. 248 are deemed admitted.

## II. If The Court Intended To Reject Defendants' Step-1 Arguments In Its Summary Judgment Order, It Should Reconsider Its Order And Grant Defendants Summary Judgment On One Or More Of Those Grounds.

If the Court in fact rejected Defendants' step-1 arguments for summary judgment in its Order and elects to clarify the Order accordingly, Defendants ask that the Court first reconsider that ruling and grant Defendants summary judgment on those grounds for the reasons previously set forth in Defendants' summary judgment briefing. The Court should reach the same conclusion in the unlikely event the Court previously overlooked Defendants' step-1 arguments for summary judgment and determines the need to decide them for the first time now.

Among other arguments made by Defendants at step 1, the law is settled that Plaintiffs must prove that Defendants' Policy—although indisputably consistent with what the law requires of public-housing providers—is "artificial, arbitrary, and unnecessary" *Inclusive Communities*, 576 U.S. at 543; Dkt. 277 at 5-6 & nn.3-4 (discussing cases). But, no reasonable jury could reach

that conclusion on this record, as Defendants' prior briefing demonstrates. Dkt. 277 at 4-7. This argument, on its own, requires granting summary judgment in Defendants' favor.

Separately, as noted, *Inclusive Communities* also makes clear that where "federal law substantially limits [a defendant's] discretion" in choosing a housing policy or practice, courts should reject FHA disparate impact challenges to that policy because the "FHA does not put … private developers in a double bind of liability." 576 U.S. at 542. The federal anti-harboring statute constitutes just such a law here and avoiding criminal liability under that statute, as a matter of law, substantially limited Defendants' discretion in adopting their Policy. Whether the anti-harboring statute creates the specter or possibility of criminal prosecution is a legal question for the Court, not the jury, to decide. *See United States v. Murphy*, 35 F.3d 143, 145 (4th Cir. 1994) ("Interpreting a statute is a legal issue."). It is also a question the Court already decided when it concluded that Defendants could "have truly feared liability" under the anti-harboring statute and therefore there was "no question" one in Defendants' position could "properly and sensibly" inquire into the immigration status of a lessee and his or adult co-habitants. Dkt. 190 at 16-17.

In its only reference to the anti-harboring statute in the Summary Judgment Order, the Court found that there are "disputes of fact regarding whether the Policy further defendants' interest in avoiding liability under the anti-harboring statute[.]" Dkt. 283. But this does not address the step-1 argument under the statute and it misapplies the step-3 burden under *Inclusive Communities* because it suggests that there are disputes of fact as to Defendants' motivation such that the parties should proceed to trial on step 3. At step 3, once a valid interest is identified (and

the Court already found that avoidance of criminal liability is a valid interest),[3] *Plaintiffs* bear the burden of proving that Defendant's valid interest "could be served by another practice that has a less discriminatory effect." *Inclusive Communities*, 576 U.S. at 527. Defendants' motivations are *not* part of the step-3 inquiry or the step-1 inquiry in a disparate-impact case. Rather, at step 3, Plaintiffs must present an alternative practice that could serve Defendants' valid interest in avoiding criminal liability under the anti-harboring statute. *Id.* ***Plaintiffs have never identified any alternative practice that could serve this interest because there simply isn't one***.

Finally, Plaintiffs' statistical evidence is plainly unreliable. There is substantial record evidence—including statistical evidence—that refutes Plaintiffs' contention that it has satisfied its step-1 prima facie burden as a matter of law and, at a minimum, requires a trial to resolve factual disputes. Dkt. 248 at 15-22.

Accordingly, in addition to the clarification relief requested above, if the Court concludes that it has rejected Defendants' step-1 arguments for summary judgment, or determines the need to resolve those grounds for the first time now, it should grant summary judgment in Defendants' favor on one or more of those grounds. The Court has the authority to grant this relief and it should do so rather than proceed to trial on a record containing reversible error.

---

[3] This Court previously found that avoiding criminal liability under the anti-harboring statute is a valid interest. (Dkt. 190 at 16-17) ("[T]here is no question, given § 1324's imposition of liability for 'reckless disregard of the fact that [an] alien has come to, entered, or remains in the United States in violation of law,' that a lessor could properly and sensibly inquire into the immigration status of a lessee and his adult co-habitants."). The Court's determination in its recent Summary Judgment Order—that the issue whether avoiding such liability is a valid interest presents a fact question—cannot be reconciled with its previous finding—a finding that was not challenged by Plaintiffs on appeal and not addressed by the Fourth Circuit.

### III. If The Court Granted Plaintiffs Summary Judgment At Step 1, Defendants Request The Court Reconsider Its Ruling, Which Has No Basis In The Record Or Controlling Law.

As noted, it is unclear to Defendants whether the Court has determined that Plaintiffs established a prima facie case at step 1 *as a matter of law*. The Summary Judgment Order suggests that the only issues remaining for trial relate to steps 2 and 3. If the Court has ruled that Plaintiffs satisfied step 1 as a matter of law, that would be plain error. Defendants therefore seek clarification as to whether the Court so ruled, and if it did, reconsideration of that decision.

Under *Inclusive Communities*, at step 1, a plaintiff must "produce statistical evidence" of a disparate impact. 576 U.S. at 543 ("A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact."). Without that evidence, a disparate-impact plaintiff's claim fails because such a plaintiff cannot meet her step-1 burden. To that end, Plaintiffs identified a statistical expert, Professor William A.V. Clark. Dkt. 248-1. In response, Defendants argued that Professor Clark's statistical conclusions were completely unreliable. Dkt. 248 at 17-22. Defendants also identified a countering statistical expert, Dr. Daniel H. Weinberg, who disputed Professor Clark's conclusions and found them to be completely unreliable. Dkt. 248-3. While Defendants believe that the failure of Plaintiffs to demonstrate the required statistical impact is clear, at a minimum there is a factual dispute regarding this step-1 issue that cannot be resolved on summary judgment. Simply put, there is no basis in the record for the Court to accept the opinions of Professor Clark and to reject the countering opinions of Dr. Weinberg at summary judgment.

Additionally, the Court cannot rule as a matter of law that Defendants' Policy is "artificial, arbitrary and unreasonable." As noted, the Court has acknowledged that, at a

minimum, avoiding criminal liability under the anti-harboring statute is a proper basis for the Policy. And, Defendants have proffered extensive evidence and testimony—including the opinion of an expert, George Caruso—showing that the Policy is necessary to conduct criminal background checks and credit checks. Plaintiffs have no countering expert to Mr. Caruso.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that this Court clarify and/or reconsider its Summary Judgment Order and grant Defendants summary judgment.

Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, WAPLES PROJECT LIMITED PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of August, 2020, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/ Michael S. Dingman
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*