**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

ROSY GIRON DE REYES, *et al.*,

      Plaintiffs,

v.

WAPLES MOBILE HOME PARK
LIMITED PARTNERSHIP, *et al.*,

      Defendants.

Civil No.:  1:16cv563-TSE-TCB

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO CLARIFY AND/OR RECONSIDER THE
COURT'S AUGUST 19, 2020 SUMMARY JUDGMENT ORDER**

Defendants filed their Motion to Clarify and/or Reconsider for one principal reason—they don't know whether or how this Court decided Defendants' motion for summary judgment as to "step 1" of the legal standard governing Plaintiffs' Fair Housing Act (FHA) disparate-impact claim under *Texas Dep't of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015). With a trial in this case looming, the answer is deeply consequential—and Plaintiffs do not claim otherwise. Rather, they accuse Defendants of a "willful misunderstanding" of the U.S. Court of Appeals for the Fourth Circuit's decision in this case two years ago. That is the height of hypocrisy because it is Plaintiffs who keep peddling a "willful misunderstanding" of the Fourth Circuit's ruling—which, the record makes abundantly clear, manifestly did ***not*** decide, as a matter of law, that Plaintiffs' evidence established step 1 of their burden of proof on disparate impact. Indeed, Plaintiffs' counsel conceded as much to this Court at the November 2019 oral argument on Defendants' summary-judgment motion, but now take the opposite and patently unsupportable positon; inviting this Court to commit error.

US_ACTIVE-155374872

It goes without saying that if partial summary judgment on step 1 has been granted in Plaintiffs' favor and against Defendants, some court—this one or the Fourth Circuit—must actually have decided that. If this Court already did, *sub silentio*, then it should say so expressly. If it did not, it should say that expressly, too. Fundamental fairness to the parties dictates as much. What is indisputably clear is that the Fourth Circuit did **not** decide that. Plaintiffs' contrary position is just plain wrong and, if adopted, will embed a serious, reversible error right in the heart of this case.[1] Defendants maintain that the Fourth Circuit could not have granted partial summary judgment to Plaintiffs on step 1 and that, since no court has ruled on Defendants' step-1 arguments, this Court should grant summary judgment in Defendants' favor those arguments. At a minimum, the Court should leave step-1 issues for trial. But if this Court did grant partial summary judgment to Plaintiffs on step 1, Defendants just ask that the Court specifically say so in writing and state its reasons why.

## ARGUMENT

### I.    The Fourth Circuit Did Not Decide That Plaintiffs Were Entitled To Partial Summary Judgment As To Step 1.

As noted, Plaintiffs' response boils down to their assertion that the Fourth Circuit supposedly decided that, as a matter of law, Plaintiffs had met their step-1 burden at summary judgment. Dkt. 288 at 3, 5-6. That is clearly wrong and would send this case to trial already beset

---

[1] For example, the parties have competing statistical experts at step 1: Plaintiffs' statistical expert, Professor Clark, opines as to statistics purportedly supporting a conclusion of disparate impact; Defendants' statistical expert, Dr. Weinberg, opines that Professor Clark's opinions are unreliable. Neither this court nor the Fourth Circuit has held that Professor Clark's opinions should be accepted and Dr. Weinberg's opinions disregarded as a matter of law—or even considered this issue. Plaintiffs stated in their opening brief to the Fourth Circuit that "[d]isputes as to the validity of expert methodology are precisely the sort of factual questions the District Court should [decide]." Pls.' Br. at 31, *Reyes et al. v. Waples Mobile Home Park L.P., et al.*, Case No. 17-1723 (4th Cir. Oct. 16, 2017) (Dkt. 26). Now the Plaintiffs disingenuously assert that this issue somehow has been decided and in their favor.

with reversible error. But if this Court has ruled in Plaintiffs' favor as to step 1, then this Court should say so now and why—because no court has said so yet.

### A.    Legal Principles Governing The Interpretation Of Appellate Mandates

To determine the scope of the Fourth Circuit's mandate in this case, this Court must look to "the specific language used in the context of the entire opinion[.]" *United States v. Campbell*, 168 F.3d 263, 267-268 (6th Cir. 1999); *Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 906 F. Supp. 997, 1003 (D.S.C. 1995) (Shedd, J.) ("The [appellate] opinion must be read as a whole … and 'in light of the facts of the case under discussion.'") (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)) (other citations omitted). A "careful reading of the reviewing court's opinion" is required "to determine what issues were actually decided by the mandate." *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004) (citation omitted). "'Different sections of an opinion should be read as consistent with each other,' … and 'parts thereof should not be read out of context.'" *Shakespeare*, 906 F. Supp. at 1003 (citations omitted).

In interpreting the scope of appellate rulings, several additional background principles must be heeded. One is that courts of appeals do not decide issues the parties do not present to them. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation. … '[I]n both civil and criminal cases, in the first instance and on appeal …, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'") (citation omitted); *Abdul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 290 (4th Cir. 2018) ("This court makes 'no habit of venturing beyond the confines of the case on appeal to address arguments the parties have deemed unworthy of orderly mention.'") (citation omitted).

Another is that rulings on the sufficiency of *allegations* and the propriety of a *dismissal under Rule 12(b)(6)* do not bind future courts assessing the sufficiency of *evidence* and the propriety of *summary judgment under Rule 56*. The Fourth Circuit could not be clearer on this point—the mandate rule or law-of-the-case doctrine "poses no bar to the assessment of past holdings based on a *different procedural posture* when, as is the case in the progression from review of a motion to dismiss to a motion for summary judgment, that later review expands the court's inquiry based on development of actual facts underlying a plaintiff's claims." *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019) (affirming grant of summary judgment for defendants and rejecting argument that summary judgment was precluded by court of appeals' prior ruling that complaint's allegations withstood Rule 12(b)(6) challenge) (emphasis added); *Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 329-30 (3d Cir. 2016) (similar and noting the "fundamental distinction between a motion to dismiss under Rule 12(b)(6) and a motion for summary judgment under Rule 56").

Yet another guiding precept on interpreting mandates is that courts of appeals ordinarily do not grant summary judgment in an appellant's favor when deciding whether a lower court erred in dismissing appellant's claims and granting summary judgment to the appellee— especially where the appellant does not even ask for that relief, *i.e.*, a grant of summary judgment for her, on appeal. *Lawson v. Union Cnty. Clerk of Court*, 828 F.3d 239, 256 (4th Cir. 2016), *as amended* (July 8, 2016) (rejecting "dissent['s] propos[al] that we not only reach an undeveloped issue …, but that we take a leap further and grant summary judgment to a party"—the plaintiff— who did not "request[] that relief on appeal").

**B.**    **Plaintiffs Did Not Appeal This Court's Denial Of Their Motion For Summary Judgment And The Fourth Circuit Did Not Address It.**

Applying these settled principles to the record here leads to only one conclusion: that the Fourth Circuit did *not* conclude that Plaintiffs—the appellants in the prior appeal whose cross-motion for summary judgment this Court had denied, a ruling Plaintiff did not appeal—nonetheless were entitled to partial summary judgment on step 1 of their claim.

**Pre-appeal proceedings in this Court.** Prior to the Fourth Circuit proceedings, this Court dismissed Plaintiffs' disparate-impact claim on the pleadings, and then relied on that ruling to deny Plaintiffs' subsequent cross-motion for summary judgment on step 1. Dkt. 56 at 16-19 (dismissing disparate-impact claim at the pleadings stage); Dkt. 190 at 8 n.8 (relying on the Court's previous ruling at the pleadings stage). This Court did not analyze Plaintiffs' step-1 summary judgment argument on its merits—it simply said that it had already decided at the Rule 12(b)(6) stage that Plaintiffs had failed to plead facts to meet their step-1 burden.  Dkt. 190 at 8 n.8.

**Plaintiffs' opening brief on appeal.** In their opening brief on appeal from this Court's ruling, Plaintiffs challenged the Court's step-1 *dismissal* ruling, but they did not appeal this Court's denial of their cross-motion for summary judgment—or make any arguments in their appellate briefing that the Fourth Circuit should grant them summary judgment, on step 1 or any other issue. Plaintiffs' opening appellate brief confirms as much. Plaintiffs did not request the Fourth Circuit grant them summary judgment, but instead framed the issue for the Fourth Circuit as whether their disparate impact claim should have been "rebuffed" at the motion-to-dismiss stage (as the following screenshot from Plaintiffs' opening brief confirms):

### STATEMENT OF THE ISSUE

The FHA makes it unlawful to "refuse to sell . . . or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). And FHA liability attaches to practices having a "discriminatory effect where it actually or predictably results in a disparate impact." 24 C.F.R. § 100.500(a). The Families accordingly challenged the Policy on the basis that it disproportionately impacted Latino individuals, but their disparate impact claim was rebuffed at the motion-to-dismiss stage when the District Court deemed the Families "inappropriate" disparate impact plaintiffs, as the challenged practice—the Policy—did not reflect "historical, state-sanctioned intentional discrimination." JA164.

Did the District Court err in concluding, as a matter of law, that

Plaintiffs also argued to the Fourth Circuit, not that they be awarded judgment on step 1, but that the dismissal of their disparate impact claim at the motion-to-dismiss stage was in error and that their claim be re-instated and the case remanded:

### IV.  VACATUR AND REMAND IS WARRANTED.

Though the District Court's disposition of the FHA disparate impact claim at the motion-to-dismiss stage was ambiguous—evidenced by both parties' summary judgment briefing—it ultimately clarified that the FHA disparate impact claim was "disposed of . . . at the motion-to-dismiss stage." JA1149. Because this ruling was the byproduct of legal error, the pertinent question for this Court is whether, applying the proper legal standard, the Families have *stated a prima facie claim*

for disparate impact liability with "all reasonable inferences" drawn in their favor. *Nemet Chevrolet*, 591 F.2d at 253.

This question must be emphatically answered in the affirmative. The Complaint put forth two different approved statistical comparisons showing a disparate impact on Latino individuals at the state level. *See* Statement of the Case, § B.1, *supra*. Though the District Court expressed unwarranted skepticism at these statistics, *see id.*, such statistics can readily demonstrate that "the challenged practice actually or predictably results in a disparate impact." Criminal History Guidance at 3.[6] And this disparity was tethered to Waples' implementation of the Policy. *See* Statement of the Case, § B.1, *supra*. The Families accordingly satisfied the robust causality requirement and certainly cleared the motion-to-dismiss bar in showing that the Policy "actually or predictably results in a disparate impact" on Latino individuals. 24 C.F.R. § 100.500(c).

---

[6]   Indeed, HUD went a step further and even ratified the use of *national* statistics to make out a disparate impact claim if statistics at a lower geographic level are "not readily available" and there is "no reason to believe they would differ markedly from the national statistics." *Id.*

Since the District Court prematurely and improperly dismissed the FHA disparate impact claim, this Court should reinstate that claim and vacate and remand for further proceedings.  This case is not readily amenable to disposition in its current posture, because the legal errors committed below affected not just the Families' ability to bring and prove their FHA disparate impact claim—which has yet to be evaluated on the merits—but also severely reduced Waples' burden.  In response

**Defendants' response brief on appeal.** In their response appellate brief, Defendants argued that this Court correctly dismissed Plaintiffs' disparate-impact claim on the pleadings. Defs.' Br. at "Summary of the Argument", *Reyes et al. v. Waples Mobile Home Park L.P., et al.*, Case No. 17-1723, 2017 WL 6462650, at *14-15 (4th Cir. Dec. 15, 2017) (Dkt. 50). They also argued that Fourth Circuit should affirm this Court's grant of summary judgment in their favor on the alternate ground that the undisputed facts relating to steps 2 and 3 entitled Defendants to judgment. *Id.* at *16.

**Plaintiffs' reply brief on appeal.** Plaintiffs' reply appellate brief, like their opening brief, confirms that their appeal was limited to the Court's dismissal ruling:

> neither the law nor the facts support.  Next, Waples attempts to mask the District Court's errors by accusing the Families of "distort[ing]" the District Court's ruling by bringing the plain text of the decisions below to the attention of this Court.  Appellee Br. at 14.  However, no amount of misdirection can hide the singular truth that requires vacatur and remand: the Families straightforwardly alleged a disparate impact claim under the Fair Housing Act ("FHA") by showing, through specific statistical evidence, that Waples' Policy requiring all prospective and

II.    THE FAMILIES HAVE MET THE ROBUST CAUSALITY STANDARD

A.    THE FAMILIES STATED A DISPARATE IMPACT CLAIM BY IDENTIFYING A SPECIFIC POLICY SUPPORTED BY STATISTICS SHOWING A DISPARATE IMPACT

The core concern animating the robust causality requirement in *Inclusive Communities* is to ensure that statistical disparities are tethered to tangible, specific policies.  Opening Br. at 32-34.  Once a policy is identified, however, and proof of a disproportionate impact based on the same policy is shown through statistical evidence, an FHA disparate impact claim is stated.  Since both elements are present in the Families' Complaint, JA32-35, JA39-40, the Families met their burden at the motion-to-dismiss stage, including satisfaction of the causation standard.

This Court should especially refrain from accepting Waples' unsupported invitation to sift through the factual record because Waples has not only turned a blind eye to the correct legal standard, which by itself, compels vacatur and remand, but has also ignored the numerous factual disputes that must be resolved in favor of the Families, and should be adjudicated by the District Court, applying the proper legal standard. Waples' attempt to dissect Professor Clark's analysis finding a disparate impact stemming from the Policy at both the county and the tract levels, Appellee Br. at 53-55, only reinforces this point. Disputes as to the validity of expert methodology are precisely the sort of factual questions that the District Court should

30

Nor should this Court affirm based on any "constitutional concerns." Appellee Br. at 35-37. Waples' discussion grossly overstates the relief the Families are seeking, which is not an imposition of "liability," as Waples claims, Appellee Br. at 37, but rather simply a holding that the Families state an FHA disparate impact claim. Landlords like Waples are not required to explicitly take race into account based on such a result; instead, they must simply, as mandated by the applicable regulations and precedent, put forth a business necessity to be evaluated by a neutral decision-maker to justify the challenged practice that cannot be accomplished by less discriminatory means. *See* 24 C.F.R. 100.500(c). No part of this regime is

Plaintiffs then concluded their reply appellate brief by asking the Fourth Circuit to "vacate the District Court's grant of summary judgment on the Families' FHA claim and remand for further proceedings". Pls.' Reply Br. at "Conclusion", *Reyes et al. v. Waples Mobile Home Park L.P., et al.*, Case No. 17-1723, 2018 WL 747814, at *33 (4th Cir. Jan. 29, 2018) (Dkt. 68). Nowhere did Plaintiffs ask the Fourth Circuit to grant them summary judgment or direct this Court to do so.

Given Plaintiffs' appellate briefing, it should come as no surprise that the Fourth Circuit's opinion does not discuss or consider any of the ***evidence*** offered by the parties below on step 1— such as the reliability of Professor Clark's statistical analysis—much less decide that Plaintiffs were entitled to summary judgment. Instead, the Fourth Circuit:

(i)     explained that "[o]n appeal, Plaintiffs contend that the district court erred in granting Waples' motion for summary judgment on the FHA claim" and "argue that the district court erred in concluding that their FHA claim could not continue past the motion to dismiss stage under a disparate-impact theory of liability and thus erred in failing to substantively address this theory in considering the cross-motions for summary judgment" (*Reyes v. Waples Mobile Home Park L.P.*, 903 F.3d 415, 422 (4th Cir. 2018));

(ii)    identified the issue before the court as whether this Court properly "dismissed Plaintiffs' disparate-impact theory at the Rule 12(b)(6) stage" (*Reyes*, 903 F.3d at 422; *see also id.* at 423 ("First, we must determine whether the district court erred in functionally dismissing Plaintiffs' disparate-impact theory at the motion to dismiss stage. Then, we must determine whether the district court erred in granting Waples' motion for summary judgment on the FHA claim because it did not consider Plaintiffs' disparate-impact theory of liability at this stage.");

(iii)   accepted Plaintiffs' allegations of "statistics as true" under the familiar 12(b)(6) standard (*id.* at 428);

(iv)    concluded that "plaintiffs sufficiently alleged a prima facie case of disparate impact" (*id.* at 428) "and that the district court therefore erred in concluding otherwise" (*id.* at 429)—i.e., erred in concluding that plaintiffs had not alleged facts sufficient to defeat a motion to dismiss at step; and

(v)     "vacate[d] the district court's grant of Waples' motion for summary judgment on the FHA claim and remand[ed] to allow the district court to consider the cross-motions for summary judgment under Plaintiffs' disparate-impact theory of

liability in a manner consistent with this opinion" (*id.* at 433)—but did ***not*** reverse with instructions that this Court enter judgment for Plaintiffs on step 1.

The Fourth Circuit repeatedly states that this Court "did not consider" the cross-motions for summary judgment with respect to Plaintiffs' disparate impact claim—including step-1—and the Fourth Circuit never states that it is taking up those motions (which the Plaintiffs specifically asked the Fourth Circuit not to do). In light of the Fourth Circuit's opinion, then, it made perfect sense when Plaintiffs' counsel—during argument before this Court last November on Defendants' renewed motion for summary judgment following the Fourth Circuit's decision— clearly conceded that the Fourth Circuit "didn't rule on summary judgment" or "remand and say, okay, it's all over on disparate impact." Dkt. 277-1. Yet Plaintiffs refuse to acknowledge this concession now and the concessions in their own briefs which make it abundantly clear that the focus of the appeal was solely the dismissal of the disparate impact claim at the motion to dismiss stage.

Reinforcing the point further is that in the rare instances where the Fourth Circuit has both vacated summary judgment for the prevailing party below and then awarded judgment as a matter of law to the non-prevailing party below, it explicitly says so. *Sharp Electronics Corp. v. Deutsche Financial Services Corporation*, 216 F.3d 388 (4th Cir. 2000), illustrates the point. There, the district court granted summary judgment in favor of Sharp and against Deutsche Financial on Sharp's breach of contract claim. The court of appeals found "that Deutsche Financial was not contractually obligated to finance the $1.3 million worth of merchandise, which formed the basis for Sharp's" contract claim. *Id.* at 398. It then found that, based on "the undisputed facts of record, Deutsche Financial is entitled to judgment as a matter of law[,]" and stated not only that it was "vacat[ing] the district court's judgment" for Sharp—but that it was also "remand[ing] with instructions to enter judgment in favor of Deutsche Financial." *Id.*; *see*

*also Nat'l Coalition for Students with Disabilities Educ. & Legal Defense Fund v. Allen*, 152 F.3d 283, 293 (4th Cir. 1998) (specifically directing the district court, on remand, "to grant partial summary judgment for NCSD"—whose summary judgment motion had been denied by the district court—but only because "NCSD asserts that the district court erred in denying its motion for partial summary judgment" and because, the Fourth Circuit specifically held, the record was "undisputed" on particular key facts that supported that outcome and the opposing party did "not suggest any issue of material fact that would preclude summary judgment"). As noted, the Fourth Circuit said nothing remotely along these lines in its decision in this case.[2]

In their response to Defendants' Motion to Clarify, Plaintiffs conveniently ignore all of this—the binding legal principles and precedents and the clear record, including their own counsel's admission at the hearing before this Court last November that the Fourth Circuit "didn't rule on summary judgment."[3] Instead, Plaintiffs isolate two sentences from the Fourth Circuit's opinion, divorced from context. The first says that Plaintiffs "submitted sufficient evidence of a prima facie case of disparate impact[.]" But as even Plaintiffs acknowledge, the rest of that sentence is as follows—"the district court should have addressed the FHA claim under the disparate-impact theory of liability at the motion for summary judgment stage." *Reyes*, 903 F.3d at 433. The Fourth Circuit could not have been clearer—it directed ***this Court*** to decide

---

[2] Indeed, if anything, Plaintiffs' failure to contest on appeal the denial of their cross-motion for summary judgment on step 1 bars their contention that this Court should now grant them (or has granted them already) exactly that foregone relief. *See, e.g.*, *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (holding that the mandate "rule forecloses relitigation of issues decided by the district court but foregone on appeal"); *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) ("Where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so.") (citing *Bell*, 5 F.3d at 66).

[3] At the same time, Plaintiffs make a notable admission on page 5 of their response—that "Plaintiffs have shown that the Fourth Circuit held that summary judgment was ***inappropriate as to step one***[.]" (emphasis added).

summary judgment in the first instance. The other sentence Plaintiffs isolate out of context is in a footnote toward the end of the Fourth Circuit's opinion, which does not mention summary judgment or "evidence" but simply says "Plaintiffs have satisfied their burden under step one of the burden-shifting framework to make a prima facie showing of disparate impact." Dkt. 288 at 5. In context, it is clear the Circuit is talking about the sufficiency at step 1 of Plaintiffs' *allegations*—since, as shown above, Plaintiffs did not ask the court of appeals to grant them summary judgment at step 1 or even to review this Court's denial of their motion for summary judgment, and their appellate briefing relies on their complaint—not record evidence. Pls.' Br. at 26-27, *Reyes et al. v. Waples Mobile Home Park L.P., et al.*, Case No. 17-1723 (4th Cir. Oct. 16, 2017) (Dkt. 26) (stating "the Complaint properly pled a prima facie disparate impact claim by alleging each of the requisite elements[,]" and citing to the complaint).

Plaintiffs try to suggest otherwise on page 6 of their response, claiming "the Fourth Circuit found that Plaintiffs had met their burden at step one by producing evidence that Latinos comprised 91.7% of those unable to comply with the Policy and consequently facing eviction, despite comprising only 60% of those subject to the Policy." Dkt. 288 at 6. But what the Fourth Circuit actually said about that evidence was this: "We note that Plaintiffs submitted additional, stronger statistical evidence in support of their cross-motion for summary judgment on the disparate-impact theory of liability, *which may have been sufficient*, on its own, for the district court to consider this alternative theory of liability on the FHA claim, regardless of whether the district court had determined that the evidence submitted at the motion to dismiss stage was insufficient to satisfy step one's robust causality requirement."[4] *Reyes*, 903 F.3d 433 n.11

---

[4] And this supposed additional statistical evidence is hotly contested by the Defendants.

(emphasis added). And that only reinforces the fact that the Fourth Circuit did not issue any ruling on summary judgment for the Plaintiffs.

Interpreting appellate mandates is critically important and misreading them can lead to reversible error. So too here. Read properly in the surrounding context of this case, it is clear that—contrary to the Plaintiffs' contention—the Fourth Circuit did not decide that Plaintiffs were entitled to summary judgment on step 1 of the *Inclusive Communities* standard. That is for this Court to decide in the first instance, and if it has already done so, it should say so and explain the reasons for its decision. *Law v. Medco Research, Inc.*, 113 F.3d 781, 783 (7th Cir. 1997) ("We are left to speculate whether the district judge thought he was following our lead or for some undisclosed reason had decided to strike out on his own… it is a big help to the reviewing court to be told by the district judge how he thought his decision on remand followed from the appellate court's previous ruling on the same issues in the same case."). If the Court has not, Defendants maintain that their step-1 arguments compel this Court to grant summary judgment in their favor. For example, among its many step-1 arguments, Defendants argued that the federal anti-harboring statute, 8 U.S.C. § 1324, severs any causal chain between the Policy and any disparate impact by "substantially limit[ing]" Defendants' discretion and makes clear that the policy is not arbitrary or artificial. Recognizing that these arguments compel judgment in Defendants' favor at step 1, Plaintiffs hope to relegate these arguments to limbo—left undecided by this Court or the Fourth Circuit. At a minimum, if this Court has not decided these step-1 arguments, it should do so before trial so the parties know what issues will and will not be tried.

## II. This Court Is Free To, And Should, Reconsider Its Summary Judgment Order— Including If It Intended To Reject Defendants' Step-1 Arguments.

As for Defendants' motion for reconsideration, Plaintiffs offer just two responses—that Defendants' arguments for reconsideration are not new and that this Court and the Fourth Circuit

- 15 -

have already rejected them. Both are baseless. As for the first, Plaintiffs ignore settled authority cited by Defendants—including from the Fourth Circuit—that directs courts to ensure the correctness of their interlocutory rulings, including through the procedure of a reconsideration motion under **Rule 54(b)**. *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515-16 (4th Cir. 2003). Plaintiffs also cite authority involving motions to reconsider final judgments under **Rule 59(e)**, which are subject to a stricter standard.[5] *See Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) ("Compared to motions to reconsider final judgments pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment") (citing *Am. Canoe Ass'n*, 326 F.3d at 514-15; *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)). Indeed, it would be error to treat Defendants' Rule 54(b) motion for reconsideration as a Rule 59(e) motion. *See Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) (holding same).

As for Plaintiffs' second response, that this Court and the Fourth Circuit have rejected Defendants' arguments, that is simply not clear from the record. Notably, Plaintiffs cite only Defendants' *briefing* in this Court and the Fourth Circuit—not any *decisions* from this Court and the Fourth Circuit—to support their claim. Dkt. 288 at 7 & n.3. They do not cite to any such decisions because there are none. Indeed, it is evident that no such ruling exists because the parties have competing statistical experts on Plaintiffs' *prima facie* burden at step 1. Dkt. 248 at 15-22 (discussing the unreliability of Professor Clark's opinions). Plaintiffs identified Professor Clark to provide statistical opinions of disparate impact. Dkt. 248-1. Defendants identified Dr. Weinberg, who opined that Professor Clark's opinions were unreliable. Dkt. 248-3. No court has ruled *as a matter of law* that Professor Clark's opinions are undisputed, and Dr. Weinberg's

---

[5] Dkt. 288 at 6 (citing *Ousely v. Nordstrom Dep't Stores*, 2002 WL 32362644, at *1 (E.D. Va. July 5, 2002)).

opinions must be disregarded. No court could do so in light of the record without committing reversible error.[6]

Plaintiffs nonetheless invite this Court to find that the Fourth Circuit has already granted summary judgment in Plaintiffs' favor on step 1. But, if the Court does so, Defendants will be precluded from presenting Dr. Weinberg's opinions at any trial. Such a decision would constitute reversible error. At a minimum, if this Court did rule on—and reject—Defendants' step-1 arguments such that Plaintiffs' prima facie step 1 burden remains an issue to be litigated at trial, respectfully, this Court should say so clearly and explain why. Fundamental fairness to the parties demands no less.

## CONCLUSION

For the reasons set forth above and in its motion, Defendants respectfully request that this Court clarify and/or reconsider its Summary Judgment Order and grant Defendants summary judgment.

---

[6] If the Court did so, Defendants request that the Court explain how it resolved the dispute between competing statistical experts at step 1 *as a matter of law*; how it reconciled its decision with its prior ruling that Defendants are rightly concerned with the criminal implications of the anti-harboring statute, Dkt. 190 at 16-17; and how factual disputes remain on whether the Policy is "artificial, arbitrary, and unnecessary" given that Defendants have an unopposed expert, Mr. George Caruso, who opines that the Policy is necessary to conduct criminal background checks and credit checks.

Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT LIMITED
PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of September, 2020, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/ Michael S. Dingman
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia  22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*