1                      **UNITED STATES DISTRICT COURT**

                **FOR THE EASTERN DISTRICT OF VIRGINIA**

2                         **ALEXANDRIA DIVISION**

3

4    ROSY GIRON DE REYES,        )

     et al,                   )

                          )    Civil 16-563

5           Plaintiffs,       )

                          )

6      v.                     )

                          )    Alexandria, Virginia

7    WAPLES MOBILE HOME PARK   )    September 23, 2020

     LIMITED PARTNERSHIP,      )

8      et al,                   )

          Defendants.       )

9    _____  )

10

11               **TRANSCRIPT OF MOTION HEARING**

                      **VIA ZOOM**

12           **BEFORE THE HONORABLE T. S. ELLIS**

              **UNITED STATES DISTRICT JUDGE**

13

14

15              <u>**APPEARANCES**</u>:

16    For the Plaintiffs:    Simon Yehuda Sandoval-Moshenberg

                        Gianna Puccinelli

17                         Nady Peralta

                        Matthew Traupman

18

19    For the Defendants:    Michael Sterling Dingman

                        Grayson Hanes

20                         Justin deBettencourt

                        Grayson Hanes

21

22

23    Court Reporter:   PATRICIA A. KANESHIRO-MILLER, RMR, CRR

24

25    Proceedings reported by stenotype shorthand.

     Transcript produced by computer-aided transcription.

2

```
1                      P R O C E E D I N G S
2                         (4:06 p.m.)
3          THE DEPUTY CLERK:  The Court calls Civil Case Number
4     2016-CV-563, Rosy Giron De Reyes, et al., versus Waples
5     Mobile Home Park Limited Partnership, et al.
6          May I have appearances please, first for the
7     plaintiff.
8          MR. SANDOVAL-MOSHENBERG:  Good afternoon, Your Honor.
9     This is Simon Sandoval-Moshenberg from the Legal Aid Justice
10    Center.  Also here is Nady Peralta from the Legal Aid Justice
11    Center, pro hac vice counsel Gianna Puccinelli and Matthew
12    Traupman from the law firm Quinn Emanuel.
13         Ms. Puccinelli will be arguing the motion this
14    afternoon, and then I will be handling the pretrial.
15         THE COURT:  Would you spell her name, please, for the
16    court reporter.
17         MR. SANDOVAL-MOSHENBERG:  Yes, Your Honor.  It is
18    P-U-C-C-I-N-E-L-L-I.
19         THE COURT:  Good afternoon to all of you, especially
20    Ms. Puccinelli, since she will be arguing.
21         Who is on, on behalf of the defendants?
22         MR. DINGMAN:  Good morning, Your Honor.  Michael
23    Dingman, Justin deBettencourt, and Grayson Hanes are on for
24    the defendants.  And I will be arguing for the defendants
25    this afternoon.
```

3

1          THE COURT:  All right.  Sir, your name again, please?

2     And spell it.

3          MR. DINGMAN:  It is Michael Dingman, D-I-N-G-M-A-N.

4          THE COURT:  All right.  Thank you.

5          I'll give you an outline here.  But I ask that when

6     you speak, make clear at the outset your name so that the

7     court reporter can properly attribute your remarks.

8          Now, the way we're going to do this -- this is a

9     motion for clarification -- I'm going to say a few words

10    about what I understand to be the request for clarification,

11    and then I will hear first from you, Mr. Dingman, because

12    you're the movant, and then we'll hear from Ms. Puccinelli.

13    After that, I will take a brief recess to consider your

14    arguments and then tell you what I intend to do after that.

15         Let me give you a brief summary here.  This case now

16    started about four years ago.  Eight current and former

17    Latino residents of Waples Mobile Home Park brought this Fair

18    Housing Act lawsuit against the owners and operators of the

19    park, challenging the defendant's policy requiring all adults

20    seeking to live at the park to provide documentation

21    evidencing legal status in the United States at the time of

22    application or lease renewal.  The policy has changed a bit

23    over time.  It requires both lessee and non-lessee applicants

24    to provide an original U.S. Social Security card or

25    combination of documents together to provide evidence of

4

1    legal status in the United States.

2        Now, there was a decision on defendants' motion to

3    dismiss and the parties' cross motions for summary judgment,

4    and the plaintiff appealed to the Fourth Circuit.

5        Let me be a little more specific about that.

6    Defendants originally moved to dismiss count one, arguing

7    that the complaint failed to state a claim under the FHA.

8    And on September 1st of 2016, I issued an order denying

9    defendants' motion to dismiss count one.  And in a memorandum

10    opinion accompanying that order, I said that count one

11    withstood a motion to dismiss under disparate treatment

12    theory but the disparate impact theory could not serve as a

13    stand-alone theory in a case where plaintiffs could use the

14    theory to show defendants' apparently neutral policy was, in

15    fact, pretext, and that opinion was published.

16        Both parties then moved for summary judgment on count

17    one.  Defendants based their motion for summary judgment on

18    the disparate treatment theory; whereas, plaintiffs addressed

19    the disparate impact theory.

20        At oral argument and by order issued shortly

21    thereafter, the parties were informed that the disparate

22    impact theory would not be considered as a stand-alone theory

23    on summary judgment because the theory had been previously

24    rejected.

25        An order issued on April 18th granting the

1    defendants' motion for summary judgment on count one under

2    the disparate treatment theory, and that was appealed.

3            On appeal the Fourth Circuit vacated the judgment of

4    the District Court and remanded for consideration of the

5    cross-motions for summary judgment under the plaintiffs'

6    disparate impact theory of liability in a manner as the

7    Fourth Circuit said consistent with this opinion.  In

8    reaching this conclusion, the Fourth Circuit first determined

9    that the overarching question on appeal was whether the

10   District Court erred in granting Waples's motion for summary

11   judgment because it did not consider plaintiffs' disparate

12   impact theory of liability at this stage.  And then the

13   Fourth Circuit said it deemed it necessary to evaluate both

14   whether the District Court erred in functionally dismissing

15   plaintiffs' disparate impact theory at the motion to dismiss

16   stage and whether the District Court erred in granting

17   Waples's motion for summary judgment on the FHA claim because

18   it did not consider plaintiffs' disparate impact theory of

19   liability at this stage.

20           So, then, the Fourth Circuit outlined a three-step

21   burden-shifting framework for analyzing the disparate impact

22   claims.  At the first step, the plaintiffs had to demonstrate

23   a robust causal connection between defendants' challenged

24   policy and the disparate impact on the protected class.  And

25   then there was discussion about that at the Fourth Circuit.

6

1    I'm not going to reiterate that here.  But the Fourth Circuit

2    made clear what the first, second, and third steps were.  And

3    at the first step, the Fourth Circuit found that the

4    plaintiffs had satisfied the robust causality requirement

5    because plaintiffs plausibly alleged that the specific

6    practice causes a disproportionate number of Latinos to face

7    eviction from the park compared to the number of non-Latinos

8    who face eviction based on that policy.

9         And so I'm not going to go through the portions of

10   the Fourth Circuit's opinion that make that clear.  But then

11   after the Fourth Circuit's remand, the defendants -- not the

12   plaintiffs -- but the defendants filed a motion for summary

13   judgment, and they argued that summary judgment was

14   appropriate on steps one, two, and three at the three-step

15   test.  And the plaintiffs filed an opposition arguing that it

16   is impermissible to litigate step one on summary judgment

17   because the Fourth Circuit determined that the plaintiffs

18   satisfied their burden at that step.

19        A hearing on the defendants' motion for summary

20   judgment was held in November of 2018, and an order issued

21   stating that the task on remand was to consider steps two and

22   three on summary judgment.  The parties were instructed to

23   submit supplemental briefing to address whether the order had

24   identified the correct issues on remand.  The parties

25   complied.

7

1              And then, on August 19, 2020 -- which is the order

2      that is at issue today -- I issued an order denying

3      defendants' motion for summary judgment.  This order

4      concluded that there were genuine issues of material fact as

5      to steps two and three and did not expressly address step

6      one.

7              Defendant thereafter filed a motion for

8      reconsideration, seeking clarification and consideration of

9      the August 19th order.  And essentially the defendants asked

10     for clarification on whether the August 19th order decided

11     defendants' step one argument, which step one issues remain

12     for trial; whether prior findings of fact will be treated as

13     undisputed for purposes of any trial; and whether undisputed

14     material facts presented in the defendants' motion for

15     summary judgment are deemed admitted.

16             Well, obviously, what the defendants are asking for

17     goes well beyond reconsideration.  It's really sort of about

18     having the pretrial.  But in any event, I do understand that

19     is what the defendants want, as they put it, to be clarified.

20     As I just pointed out, that's not asking to clarify the

21     order; it's asking for the Court to do some pretrial work

22     that wasn't presented in that order.

23             In any event, that's what we're here for today, to

24     determine whether the August 19th order really requires the

25     clarification that the defendants are seeking.

8

1          Now, what we're going to do is this:  I'm going to

2     give the defendants, Mr. Dingman, an opportunity to tell me

3     why he thinks there should be a motion for reconsideration;

4     and then I'll have Ms. Puccinelli respond; and then I will

5     take a recess to consider your arguments.

6          It's very difficult to ask questions during counsel's

7     argument during a telephonic argument because you don't hear

8     when I might interrupt, as I would.  So you'll have

9     essentially an unfettered opportunity.  I will save

10    questions, if I have any, for a period after the recess if I

11    think it's necessary.

12         All right.  Mr. Dingman, you may go first.  And

13    remember, please, identify yourself before you begin your

14    argument.  You'll have roughly 20 minutes.  If you need

15    longer, of course I'm going to give it to you, but I would

16    like for you to be as succinct and direct as possible.

17         Mr. Dingman.

18         MR. DINGMAN:  Thank you, Your Honor.

19         This is Michael Dingman for the defendants.

20         And as you pointed out, Your Honor, we're here on

21    defendants' motion for reconsideration and clarification of

22    the Court's ruling on defendants' motion for summary

23    judgment.  And there are two parts to that motion.  One is

24    asking the Court to reconsider the decision that's set forth

25    in that order, and also seeking clarification of whether and

1    to what extent the Court addressed the step one arguments

2    that were raised by the defendants in their summary judgment

3    motion.

4         With respect to step one of the analysis, I'd like to

5    walk the Court through the arguments that were presented at

6    summary -- in defendants' summary judgment motion and why we

7    believe that the Court should grant summary judgment based on

8    those arguments or, in the alternative, clarify whether it's

9    denied summary judgment as to step one and what issues would

10   remain for determination at trial with respect to step one of

11   the analysis.

12        In defendants' motion for summary judgment,

13   defendants argue that the anti-harboring statute, which is

14   found at 8 U.S.C. 1324, required the dismissal of this case

15   at summary judgment because it demonstrates that the policy

16   is not arbitrary, artificial, or unnecessary.  And it also

17   demonstrates that there is little choice for the defendants

18   but to implement the policy to avoid the potential criminal

19   liability that flows from the anti-harboring statute, as

20   discussed by the Fourth Circuit in *United States v. Aguilar*.

21        Turning to the first argument, Your Honor, it is

22   clear from *Inclusive Communities* that the Supreme Court

23   required a demonstration that the policy being challenged is

24   shown to be arbitrary, artificial, and unnecessary.  The

25   Supreme Court said the following:  "Private policies are not

contrary to the disparate impact requirement unless they are artificial, arbitrary, and unnecessary barriers."

Following that decision, the Eighth Circuit, in *Ellis v. City of Minneapolis*, said the following: "Under *Inclusive Communities*, a plaintiff must, at the very least, point to an artificial, arbitrary, and unnecessary policy causing the problematic disparity."

In our motion for summary judgment, the defendants pointed out the impact of the anti-harboring statute and the decision in *U.S. v. Aguilar* as a basis for this policy and demonstrating that it's not arbitrary, artificial, and unnecessary. We have talked quite a bit in this case about the *Aguilar* matter. It is the only Fourth Circuit decision regarding criminal liability that we're aware of with respect to the anti-harboring statute. In that case, *Aguilar* was convicted of violating that statute because the Fourth Circuit found that she acted with reckless disregard because she was aware of facts and circumstances indicating that individuals she was renting to were undocumented. And the Court found that she took no steps to ascertain the status of her tenants. Because of those two issues, she was found criminally liable under the anti-harboring statute.

It is undisputed here that Waples are aware of circumstances demonstrating that illegal aliens are residing at the park. Plaintiffs make that very allegation

11

1    themselves.  Based on *United States v. Aguilar*, Waples cannot

2    ignore and do nothing what it already has knowledge of with

3    respect to the possibility that illegal aliens are residing

4    at the park.  And so it has a policy that is very

5    straightforward.  Anyone who wants to reside at the park

6    simply must provide proof that they're in the United States

7    legally.  That's all they have to do.  And that would protect

8    Waples and the defendants from possible criminal prosecution

9    under the anti-harboring statute.

10           When this Court considered this issue previously in

11   summary judgment, the Court held the following:

12           "There is no question, given Section 1324's

13   imposition of liability for reckless disregard of the fact

14   that an alien has come to, entered or remains in the United

15   States in violation of law that a lessor could properly and

16   sensibly inquire into the immigration status of the lessee

17   and his adult cohabitants."

18           That finding by the Court was not challenged on

19   appeal.  It's the law in the case.  So this Court itself has

20   already determined that the anti-harboring statute provides a

21   significant basis for this policy, which demonstrates that

22   the policy is not arbitrary, artificial, or unnecessary.

23   Therefore, the plaintiffs fail at the step one stage.

24           Additionally, in *Inclusive Communities*, the Supreme

25   Court stated that a defendant cannot be found liable under

12

```
1    the Fair Housing Act for disparate impact if the federal

2    government has effectively tied the hands of the defendant

3    and they have no meaningful choice.

4         What the Supreme Court stated is, it will not place

5    someone like the defendants in a, quote, double bind of

6    liability.  In this instance, criminal liability.

7         The policy is necessary to comply with the

8    requirements of the anti-harboring statute, as interpreted by

9    the Fourth Circuit.  Therefore, defendants cannot be found

10   liable at the step-one stage for complying with what the

11   federal government has imposed.  That is clear from the

12   decision in *Inclusive Communities*.

13        Carrying forward with the anti-harboring statute,

14   Your Honor, it also demonstrates that defendants are entitled

15   to summary judgment at steps two and three.  Step two, of

16   course, requires the defendants to demonstrate that they have

17   a valid interest in that policy.  Again, this Court has

18   already found --

19        THE COURT:  Excuse me.  Can I --

20        MR. DINGMAN:  Yes, sir.

21        THE COURT:  I didn't want to interrupt, but I thought

22   we were focusing on step one, that was the remand.  Am I

23   correct?

24        MR. DINGMAN:  Well, the summary judgment focused on

25   steps one, two, and three.
```

1          THE COURT:  Well, I was wrong about that.  I'm sorry.

2     The Fourth Circuit decided that the causation requirement was

3     adequately met.  I don't recall that the Fourth Circuit said

4     anything, as you point out, about the anti-harboring statute.

5          Did you argue it in the Fourth Circuit?

6          MR. DINGMAN:  This is Michael Dingman, Your Honor,

7     for the record.

8          The Fourth Circuit makes no mention of the

9     anti-harboring statute anywhere in its opinion.

10          THE COURT:  I didn't ask you that.  I asked you:  Did

11     you argue the anti-harboring act in the Fourth Circuit?

12          MR. DINGMAN:  We argued that the Court was correct at

13     the motion to dismiss stage based on the anti-harboring

14     statute --

15          THE COURT:  Let me --

16          MR. DINGMAN:  I'm sorry?

17          THE COURT:  Let me ask you specifically:  Did you

18     argue that step one could not be satisfied because the

19     anti-harboring statute provided a justification for their

20     asking for that proof?

21          MR. DINGMAN:  That was one of the arguments

22     presented, yes.

23          THE COURT:  And that's in your brief in the Fourth

24     Circuit?

25          MR. DINGMAN:  We raised the anti-harboring statute in

14

1     our briefs to the Fourth Circuit.

2          THE COURT:  And did you argue it orally?

3          MR. DINGMAN:  I don't recall that issue coming up at

4     oral argument.

5          THE COURT:  But you say -- and I think you're

6     correct -- that the anti-harboring statute is not mentioned

7     in the Fourth Circuit's opinion.

8          MR. DINGMAN:  That's correct.

9          THE COURT:  All right.  Finish your argument, please.

10         MR. DINGMAN:  Thank you, Your Honor.

11         Before I do that, I want to address one other

12    issue -- and maybe I misunderstood the Court's statement --

13    but the Fourth Circuit -- and we'll get to this in more

14    detail -- did not determine that the plaintiffs have

15    satisfied step one based on any evidence.  The Fourth Circuit

16    determined that they had alleged sufficient allegations in

17    their complaint to survive a motion to dismiss.  That's as

18    far as the Fourth Circuit went in its decision.  I will come

19    back to that in more detail.

20         Returning to the anti-harboring statute and *Aguilar*

21    argument -- now, we will come back to step one argument -- I

22    just wanted to carry through the anti-harboring statute

23    argument, Your Honor, to steps two and three because we

24    believe the Court should also reconsider the denial of

25    summary judgment as to steps two and three.  Again, the Court

1    has already found that avoiding criminal liability under the

2    anti-harboring statute is valid interest.  So that satisfied

3    step two.  In step three, the burden now shifts to the

4    plaintiffs to demonstrate that there is some other policy

5    that can satisfy that same concern.  And all that they have

6    offered -- and this is in the Court's order -- is to say that

7    only lessees should be required to provide proof of legal

8    residency, not adult cohabitants.  But that is contrary to

9    the anti-harboring statute.  There is no distinction between

10    knowing that a lessee or somebody residing with a lessee may

11    be in the United States illegally from a criminal point of

12    view.  If either is the case, then Waples is subject to

13    criminal prosecution, and that is why, I believe, the Court

14    referred in its prior decision that it's sensible to inquire

15    into the immigration status of both lessees and adult

16    cohabitants.  Therefore, the undisputed facts demonstrate

17    that steps two and three also require summary judgment in

18    favor of the defendants.

19         Additionally, Your Honor, we argued at the step one

20    stage that the statistical basis for step one predicated upon

21    the opinions of Professor Clark also require the grant of

22    summary judgment because his opinions are unreliable.  And

23    the basis for that argument, Your Honor, is quite simple.

24    Professor Clark's opinions are based on a statistical

25    analysis for which he determined no margin of error, and he

1    agrees, and it is a basic statistical concept that the

2    reliability of any statistical analysis is determined by the

3    margin of error.  What Professor Clark did is used statistics

4    from the Center for Migration Studies to estimate the number

5    of illegal aliens in the census tract in which the park is

6    located.

7         CMS, however, does not provide a margin of error

8    below its estimates at the national level.  Professor Clark

9    did nothing to determine the margin of error for his estimate

10   of the illegal aliens at the census tract level which has a

11   population of a little over 3,000 people.  What he did,

12   instead, was apply the margin of error for the American

13   Community Study, which is done by the Census Bureau, of the

14   entire Hispanic population, not the legal population.  And

15   Professor Clark admitted himself that the illegal population

16   is much more difficult to track and to estimate because of

17   the obvious reason they don't want to be tracked.  He applied

18   that margin of error from the ACS study to all Hispanics

19   through his estimate of the illegal aliens in the census

20   tract with no modification.  So there is no margin of error

21   determined by Professor Clark.  Without a margin of error,

22   there is no basis to determine the reliability of his

23   opinions.  Because the plaintiffs fail to show the

24   statistical requirements at step one, summary judgment should

25   be granted in favor of the defendants.

1          The last issue I want to cover on summary judgment as

2    far as the substantive arguments, Your Honor -- and then I

3    will deal with the Fourth Circuit's decision -- is also a

4    step two and step three analysis.  The defendants have

5    proffered that one of the other reasons for the policy, in

6    addition to avoiding criminal prosecution, is to conduct a

7    criminal background check of people who will live at the

8    park.  We have an expert, George Caruso, who is unopposed,

9    who opined that this is a reasonable and standard policy.

10   That satisfies step two.  In response, the plaintiffs say the

11   same thing they said with respect to the anti-harboring

12   statute, which is, well, you can do a criminal background

13   check on the lessees only.  Well, that is clearly not

14   sufficient because there will be any number of adults living

15   at the park for whom no criminal background check would be

16   performed.  So that also requires that this Court grant

17   summary judgment to the defendants.

18          Now, in response, Your Honor, one of the primary

19   arguments made by the plaintiffs is that the Fourth Circuit

20   granted them partial summary judgment as to step one, which

21   would mean that without ever mentioning the anti-harboring

22   statute, the Fourth Circuit would have rejected the arguments

23   made by the defendants and that the Fourth Circuit would have

24   determined that Professor Clark's opinion is correct and

25   defendants' expert, Dr. Weinberg's, are wrong, though there's

18

1    no mention in the Fourth Circuit's decision about the

2    anti-harboring statute, about Professor Clark, or about

3    Professor Weinberg.  And the plaintiffs have represented to

4    this Court on numerous occasions that there are fact issues

5    to be tried at the step one stage, in particular with respect

6    to the dispute between Professor Clark and Professor

7    Weinberg.  They said that to the Fourth Circuit, and then

8    they said that to you in their opposition to the motion for

9    summary judgment, where they actually cite cases to say that

10   an expert dispute must be decided by the trier of fact.  But

11   now they argue to this Court that the statistical factual

12   dispute was somehow resolved by the Fourth Circuit.  There is

13   absolutely no basis for that argument in the Fourth Circuit's

14   opinion.

15        What is clear from the Fourth Circuit's opinion is

16   that it granted the relief that was requested by the

17   plaintiffs.  The plaintiffs did not appeal the Court's denial

18   of their cross motion for summary judgment.  The plaintiffs

19   did not request that they be granted partial summary

20   judgment.  They appealed the dismissal of the disparate

21   impact claim at the motion to dismiss stage.  That is

22   precisely what they said in their briefs to the Fourth

23   Circuit, and that is precisely what the Fourth Circuit stated

24   it was going to decide, as Your Honor quoted in your opening

25   statements.  And when you look at the Fourth Circuit's

1    opinion, it is clear beyond any argument that they did not

2    take the step without ever saying the words "partial summary

3    judgment" and decided substantive fact issues in this case.

4    When they talked about their decision, this is what they

5    state, and this starts at page 148 of their case:

6         "In their complaint, plaintiffs allege that this

7    particular policy violates the FHA because it is

8    disproportionately ousting Hispanic or Latino families from

9    their homes and denying them one of the only affordable

10   housing options in Fairfax County, Virginia."  It refers to

11   joint appendix page 27, which is the complaint.

12        The Court then says, in their complaint, "Plaintiffs

13   provided statistical evidence that Latinos constitute 64.6

14   percent of the total undocumented population," and the Court

15   goes on to quote the rest of those statistics from the

16   complaint.

17        The Court then says the following:

18        "At the motion to dismiss stage, we must accept all

19   well-pled facts as true and draw all reasonable inferences in

20   favor of the plaintiff.  Therefore, accepting these

21   statistics as true, we conclude that the plaintiffs

22   sufficiently alleged a prima facie case of disparate impact,"

23   hard stop.

24        They cite to the case of *Nemet Chevrolet* for the

25   proposition that you draw all facts and inferences in favor

20

1    of the plaintiffs, which is the same case cited by the

2    plaintiffs in their brief when they asked the Court to

3    reverse the dismissal, the disparate impact case at the

4    motion to dismiss stage.

5            So they precisely ask for that relief.  The Fourth

6    Circuit precisely said that's the relief that it's providing.

7            The plaintiffs, nonetheless, argue that the Fourth

8    Circuit, without ever saying so, took the extraordinary step

9    of granting partial summary judgment never requested by the

10   plaintiffs.

11           In the cases that we cite, Your Honor, the Fourth

12   Circuit makes clear that that's extraordinary.

13           And if they're going to take that step, they're going

14   to say so.

15           Here, there is nowhere in the opinion they even hint

16   that they're deciding summary judgment issues.

17           In their papers, the plaintiffs refer to quotes from

18   the Fourth Circuit, as we stated, that are out of context.

19           And one of the key issues that we have raised, Your

20   Honor, on this issue is the Fourth Circuit's passing

21   reference to "other evidence."  And here's what the Court

22   said:

23           "We know that plaintiff submitted additional stronger

24   statistical evidence in support of their cross motion for

25   summary judgment on the disparate impact theory of liability,

1    which may have been sufficient on its own for the District

2    Court to consider this alternative theory of liability

3    regardless of whether the District Court had determined that

4    the evidence submitted at the motion to dismiss stage was

5    insufficient to satisfy step one's robust causality

6    requirement."

7         What's notable here, Your Honor, is the Fourth

8    Circuit doesn't even identify what evidence it is referring

9    to.  It does not state that that evidence is sufficient to

10   satisfy step one.  It does not state that it is granting

11   partial summary judgment as to step one.  And it does not

12   direct the District Court to grant summary judgment as to

13   step one.  If that was the Court's intent, it would have said

14   so.

15        THE COURT:  I don't read it as saying that.  I read

16   it as saying that I should consider steps two and three as to

17   whether summary judgment should be granted as to that, and I

18   decided no.  It seems to me quite clear that with respect to

19   step one, what the Court is telling me is that that, too,

20   fails at summary judgment for the defendants and all three go

21   to trial.

22        What is your view about that, Mr. Dingman?

23        MR. DINGMAN:  The Fourth Circuit made no decision on

24   summary judgment at all.  And it certainly made no decision

25   as to whether defendants' step one summary judgment arguments

1    were satisfactory or not.  In order to come to that

2    conclusion, the Court would have had to have considered the

3    anti-harboring statute arguments, which are nowhere mentioned

4    in its opinions, and it would have had to consider the

5    arguments with respect to Professor Clark and the reliability

6    of his statistical analysis.

7         THE COURT:  Let me interrupt you just a moment,

8    Mr. Dingman.

9         I hear what you're saying, and I want you to finish,

10   and I'm going to consider it carefully.  But the Fourth

11   Circuit made unmistakably clear that summary judgment on step

12   one, which I had granted, should be vacated.  And you're

13   telling me, well, they didn't consider this, they didn't

14   consider that, but you ignore, Mr. Dingman, that I don't sit

15   to discipline the Fourth Circuit, I don't sit to correct the

16   Fourth Circuit; I sit to obey the clear mandate.  I don't

17   have authority beyond the mandate.  Do I?

18        MR. DINGMAN:  No, sir.  And the Fourth Circuit made

19   very clear that the reason it reversed the Court's grant of

20   defendants' motion for summary judgment is the Court did not

21   consider at all the disparate impact arguments because the

22   Court had determined those were dismissed at the motion to

23   dismiss stage.  So I think the mandate to the Fourth Circuit

24   is quite clear.  It reversed for the Court to consider those

25   very arguments at the motion for summary judgment stage

1    because the Court did not consider them previously.  And

2    that's exactly what the Fourth Circuit held.

3            And they state in their opinion --

4            THE COURT:  Anything further?

5            MR. DINGMAN:  I just want to state this quote from

6    the Fourth Circuit's opinion, Your Honor.  It says, "We must

7    determine whether the District Court erred in functionally

8    dismissing plaintiffs' disparate impact theory at the motion

9    to dismiss stage.  Then, we must determine whether the

10   District Court erred in granting Waples's motion for summary

11   judgment on the FHA claim because it did not consider

12   plaintiffs' disparate impact theory of liability at this

13   stage."

14           It could not be more clear that what the Fourth

15   Circuit said was the Court never took up the disparate impact

16   arguments on the cross motions for summary judgment, and it

17   must now do so, and that's why we have asked the Court to

18   consider all of the arguments, including the step one

19   arguments.

20           THE COURT:  All right.  Thank you.

21           Now, Ms. Puccinelli, I will hear from you now.

22           MS. PUCCINELLI:  Yes, Your Honor.

23           This is Gianna Puccinelli for the plaintiffs.

24           I think we can keep things relatively brief, as the

25   standards governing motions for reconsideration do not permit

the Court to reconsider issues that it already considered and decided in the course of its prior ruling, the decision being reconsidered.  And that is evident from defendants' own cases, and I'm specifically looking at the *Carlson* case cited in the reply brief filed by defendants, which explicitly states that there are three grounds for amending an earlier final judgment:  to accommodate an intervening change in controlling law, to account for new evidence not available at trial, and to correct a clear error of law or prevent manifest injustice.  And defendants have not argued that any of those circumstances are present here.  As Mr. Dingman acknowledged, he simply rehashed his entire summary judgment argument just now.  There are no new arguments being made. There is no new law being identified.  There's no new evidence.  Indeed, he admitted that all of the arguments that he made regarding step one were made before the Fourth Circuit and disregarded by the Fourth Circuit in its ruling. And this standard is just as applicable to Rule 54 motions for reconsideration as it is Rule 59 motions for reconsideration.

Plaintiffs would direct the Court to the case *Integrated Direct Marketing, LLC, v. May*, 2016 WL 7334278. That is an Eastern District of Virginia case, which, applying Rule 54, states:

"Nevertheless, when a request for reconsideration

1    raises no new arguments but merely requests the District

2    Court to reconsider a legal issue or to change its mind,

3    relief is not authorized.  And that case cites *Pritchard v.*

4    *Wal-Mart Stores, Inc.* which is a federal Fourth Circuit case

5    from 2001.

6          THE COURT:  Let me, Ms. Puccinelli, ask you a brief

7    question.

8          MS. PUCCINELLI:  Yes.

9          THE COURT:  Is it the position of the plaintiffs that

10    this case should proceed to trial on count one, so disparate

11    impact and disparate treatment, because there are facts at

12    issue, disputed facts at issue on all of that?

13          MS. PUCCINELLI:  Your Honor, we contend that we're

14    only proceeding to trial on issues --

15          THE COURT:  All right, wait.  Can you start by saying

16    yes or no?

17          MS. PUCCINELLI:  Your Honor --

18          THE COURT:  Do you want me to re-ask the question?

19          Let me ask the question again.  Is it the plaintiffs'

20    position that this case should now proceed to trial because

21    summary judgment has been granted -- or has been denied with

22    respect to count -- steps two and three, and you think that

23    summary judgment also in effect has been denied for step one,

24    so the case should now proceed to trial on count one, that

25    is, disparate impact and disparate treatment, as the Fourth

1    Circuit suggested?  Is that the plaintiffs' position?

2         MS. PUCCINELLI:  No, Your Honor.  Plaintiffs contend

3    that we should only be proceeding to trial on the disparate

4    impact theory of the Fair Housing Act claim.

5         THE COURT:  All right.  And as to that, it's the

6    position of the plaintiffs that it should proceed to trial on

7    all three steps of the analysis as identified by the Fourth

8    Circuit?

9         MS. PUCCINELLI:  That is correct, Your Honor.

10        THE COURT:  All right.  Now, with respect to the

11   arguments that I have heard, you might reiterate, just to

12   refresh my recollection, what is the plaintiffs' position on

13   the effect, if any, of the anti-harboring statute on the

14   plaintiffs' claim in this case?

15        MS. PUCCINELLI:  Your Honor, plaintiffs' position is

16   that the anti-harboring statute has no place in the analysis

17   on step one.  The Fourth Circuit's -- the Fourth Circuit's

18   opinion clearly states, under the first step, the plaintiff

19   must demonstrate a robust causal connection between the

20   defendants' challenged policy and the disparate impact on the

21   protected class.  And it goes -- the Fourth Circuit goes on

22   to identify how plaintiffs have done that.  And that's either

23   through statistical evidence or other evidence that

24   specifically links the policy at issue with a

25   disproportionate impact on the protected class.  And

1    plaintiffs have shown that through evidence produced by

2    defendants themselves and through the testimony of their

3    expert, Professor Clark.

4         And as a quick note, Your Honor may have seen that

5    defendants filed a *Daubert* motion on Professor Clark,

6    implicitly acknowledging that those issues are more

7    appropriately resolved, not in the context of summary

8    judgment, but in the context of pretrial motions like the one

9    that they filed.

10        THE COURT:  Yes, I understand all of that.  But what

11   I was asking you, Ms. Puccinelli, is:  What, if any, goal

12   does the anti-harboring statute play in the analysis of

13   plaintiffs' disparate impact claim?

14        MS. PUCCINELLI:  Your Honor, plaintiffs believe that

15   the defendants appropriately argued that issue in the context

16   of step two of the argument.  While we obviously disagree

17   that that is an interest that satisfies step two, we

18   acknowledge that there is a dispute of fact as to that point,

19   and it is appropriately relegated to the step two analysis.

20        THE COURT:  And what is the factual issue that you

21   think is presented for the jury to decide involving the

22   anti-harboring statute?

23        MS. PUCCINELLI:  Well, Your Honor, the primary issue

24   is that plaintiffs believe that defendants have not shown

25   that the anti-harboring statute actually applied to them, nor

1    have they established that they actually considered the

2    anti-harboring statute in developing the policy.  We have

3    evidence from defendants' 30(b)(6) witness that states that

4    they had no idea what the anti-harboring statute was when

5    they were developing the policy.

6         So I submit those are the disputes of fact to be

7    resolved with respect to the anti-harboring statute at step

8    two.

9         THE COURT:  All right.  I think that's a little

10   helpful but not entirely, Ms. Puccinelli.  Let me ask you

11   again:  What is it that a jury will have to decide at the

12   trial of this case with respect to the anti-harboring

13   statute?

14        MS. PUCCINELLI:  They will have to decide whether

15   the -- whether the anti-harboring statute is a sufficiently

16   compelling interest such that it may -- it justifies the

17   policy and is a neutral application of the policy.

18        THE COURT:  All right.  That's a helpful answer.

19   What instructions --

20        MS. PUCCINELLI:  We got there eventually, Judge.

21        THE COURT:  Well, what instructions do you anticipate

22   would be given to the jury about how they evaluate whether

23   the defendants' reliance on the anti-harboring statute should

24   be given any weight?

25        MS. PUCCINELLI:  Your Honor, they should be

1    instructed to consider whether defendants actually relied on

2    the anti-harboring statute as a justification for creating

3    the policy and applying it in this case to our plaintiffs.

4    In other words, whether it is pretextual --

5              THE COURT:  Why couldn't they have --

6              MS. PUCCINELLI:  Sorry, Your Honor.

7              THE COURT:  Well, all right.  It's puzzling to me, if

8    there is any basis for the application of the anti-harboring

9    statute -- there may not be -- I will go back and look at

10   what I have written -- but I'm not sure that if they didn't

11   rely on the anti-harboring statute and it really came up in

12   the course of the litigation rather than in their formulation

13   of the policy, why couldn't they still say, look, that is

14   still a consideration, we didn't realize we'd be put in jail

15   but now we do.

16             MS. PUCCINELLI:  Well, Your Honor, that turns to a

17   question of whether, under the application of that law, that

18   they would validly be, as you said, put in jail for violating

19   the anti-harboring statute.

20             But I do think --

21             THE COURT:  Yes, but my problem there,

22   Ms. Puccinelli, is that juries don't decide that sort of

23   thing; judges do.  I think you will agree, as I think is

24   indisputable, that the anti-harboring statute really played

25   no role in the Fourth Circuit's analysis.

30

1          MS. PUCCINELLI:  Your Honor, they do -- the Fourth

2    Circuit does note that the anti-harboring statute was one of

3    the justifications cited by defendants in the context of step

4    two, but they do not mention it in the context of any other

5    place.  Basically, in their factual summation.

6          THE COURT:  It seems that one could draw the

7    inference there that the Fourth Circuit was really suggesting

8    that it should all go to the jury.  Is that your view,

9    Ms. Puccinelli?

10          MS. PUCCINELLI:  Yes, Your Honor.  We do believe that

11    all of these issues should go to the jury.  It is our

12    position that the Fourth Circuit's opinion is that plaintiffs

13    have presented sufficient evidence to defeat summary judgment

14    as to step one, and it therefore remanded to Your Honor

15    considerations of steps two and three, which Your Honor

16    correctly denied summary judgment on sending everything to

17    the jury.

18          THE COURT:  And in that decision that it issued I

19    think it was August 19th, didn't I deal with the

20    anti-harboring statute?

21          MS. PUCCINELLI:  Your Honor did mention the

22    anti-harboring statute.  I believe Your Honor noted that

23    there is a dispute of fact as to step two regarding the

24    anti-harboring statute.

25          THE COURT:  All right.  And then you would argue that

1    I already decided that and motion for reconsideration isn't

2    appropriate.  That's what you've already said.

3          MS. PUCCINELLI:  Yes, Your Honor.

4          THE COURT:  All right.  Let me give Mr. Dingman a

5    very brief opportunity to respond to all that he's heard,

6    assuming, Ms. Puccinelli, that you have nothing further to

7    add at this point.

8          MS. PUCCINELLI:  Your Honor, just very briefly.  I

9    wanted to direct Your Honor to -- I believe Your Honor has

10   already appropriately considered this, but scope of the

11   Fourth Circuit's mandate on pages 432 to 433, which states

12   that plaintiffs have established a prima facie case of

13   disparate impact and then remands the case to Your Honor for

14   consideration as to the remaining two steps.

15         THE COURT:  But you've already conceded I think

16   correctly, Ms. Puccinelli, that step one should go to the

17   jury, too.

18         MS. PUCCINELLI:  Correct.  I'm merely pointing that

19   out to state that the Fourth Circuit considered step one on

20   summary judgment and found summary judgment was inappropriate

21   as to that step.

22         THE COURT:  All right.

23         MS. PUCCINELLI:  And coupled with --

24         THE COURT:  Now --

25         MS. PUCCINELLI:  -- Your Honor's --

1          THE COURT:  Say it again.

2          MS. PUCCINELLI:  -- opinion, all of the steps go to

3     the jury.

4          THE COURT:  All right.  Now, Mr. Dingman, let me give

5     you a brief, let's say, 10 minutes, to respond in any way

6     that you wish, and then I will take a recess in the matter.

7          You may proceed, Mr. Dingman.

8          MR. DINGMAN:  Thank you, Your Honor.

9          Let me address the first issue first that was raised

10    by the plaintiffs, which is the authority of the Court to

11    reconsider based on Rule 54(b), and as we cited in our

12    briefs, the Fourth Circuit has held that that is a much more

13    flexible procedure than reconsideration of final judgments,

14    which are the cases that are relied upon by the plaintiffs in

15    Rule 59(e).  So this interlocutory order such as we have

16    here, the Court has flexibility to reconsider and modify its

17    order.  I think there's no question about that.

18         So the issue that I think has been framed for Your

19    Honor is, at step one, in the anti-harboring statute, you

20    asked plaintiffs' counsel:  What is for the jury to decide?

21    And the answer that was provided were two things.  Does the

22    anti-harboring statute apply?  That's a purely legal

23    question.  The jury cannot decide whether the anti-harboring

24    statute, as interpreted by *United States v. Aguilar*, could

25    apply to the defendants.  This Court has to make that

1    decision, and I would submit it already has in holding

2    previously that the defendants were right to consider the

3    anti-harboring statute with respect to this policy.

4            The second issue raised was --

5            THE COURT:  I think I said it was a consideration; I

6    didn't think I said that it determined the result.  And by

7    the way, I didn't say -- I think I said as to step two, not

8    as to step one, but go ahead.

9            MR. DINGMAN:  Just so the record is clear, Your

10   Honor -- I don't want to mislead anyone -- that statement

11   that I have quoted was with respect to the Court's denial of

12   granting of the summary judgment motion with respect to

13   disparate treatment because the Court didn't consider

14   disparate impact.  But nonetheless, the Court did say that

15   there is no question that given the anti-harboring statute's

16   imposition of liability that a lessor could properly and

17   sensibly inquire into immigration status.

18           In any event, that is a legal issue.  The jury cannot

19   decide that legal issue.

20           The only other basis for supposedly allowing that

21   step one argument to proceed to a jury is whether the

22   plaintiffs had this in mind at the time the policy was

23   enacted.  The plaintiffs have cited no caselaw that suggests

24   that whether disparate impact claim has been stated turns on

25   whether the issues were all discussed or thought about at the

34

1   time the policy was enacted.  Disparate treatment was

2   dismissed, it was not appealed, and plaintiffs have told you

3   again today it's not going forward, so the motivations and

4   those types of issues are no longer relevant.  All that is

5   relevant is whether the anti-harboring statute provides a

6   basis for this policy.  And that has to be determined as a

7   matter of law.  If it does, then the Court has to conclude

8   that it is not arbitrary, artificial, or unnecessary.  And

9   we'd suggest the Court would also have to conclude that the

10  hands of the defendants are tied because they need to comply

11  with the requirements of the anti-harboring statute.  Again,

12  that is not an issue for a jury to decide.  There is no fact

13  issue for the jury.  These are all legal questions.

14          And I would end with one thing, Your Honor.  The

15  suggestion, again, from the plaintiffs that the Fourth

16  Circuit took up the step one issues has no basis in the

17  record.  There is no discussion by the Fourth Circuit of the

18  anti-harboring statute.  There is no discussion as to whether

19  the arbitrary, artificial, and unnecessary requirement has

20  been met as a matter of fact as opposed to a matter of

21  pleading.  And that's the difference here.  The fact that the

22  Court allowed this case to proceed past the motion to dismiss

23  stage does not mean it has to proceed past the motion for

24  summary judgment stage.  And the Court could not be clearer

25  in saying we remand for reconsideration of the cross motions

1   for summary judgment.  These issues were not decided by the

2   Fourth Circuit, and the impact of the anti-harboring statute

3   is a legal matter that this Court must decide, and as we have

4   argued, it should decide in favor of the defendants on

5   summary judgment because that is an obvious basis and a very

6   legitimate reason for the policy.

7         THE COURT:  All right.  Thank you, Mr. Dingman.

8         Let me give Ms. Puccinelli a very, very brief

9   opportunity to respond directly to what you just said.

10        MR. PUCCINELLI:  Certainly, Your Honor.

11        Plaintiffs would just argue that defendants

12   briefed -- extensively briefed the issue of whether the

13   anti-harboring statute plays any role into the step one

14   analysis before the Fourth Circuit.  The Fourth Circuit

15   disregarded those arguments in reaching its opinion, and

16   defendants should not be entitled to a second bite at the

17   apple as to these arguments before Your Honor when the Fourth

18   Circuit disregarded them.

19        THE COURT:  All right.  Thank you.  I'm going to

20   recess this matter now.  It will be about a 10- or 15-minute

21   recess, and I will tell you how I intend to proceed after

22   that.

23        All right.  Tanya, put me on mute, please.

24        THE DEPUTY CLERK:  Yes, Judge.

25        (Recess)

36

1              THE COURT:  All right.  This is Judge Ellis.  I am

2     going to take this matter under advisement.

3              I want to thank the parties, Mr. Dingman and

4     Ms. Puccinelli.  Your arguments have been very helpful.  It's

5     clarified some things for me.  I think, really, the motion

6     for clarification goes well beyond the motion for

7     clarification.  I'll get to the *Daubert* issues at the

8     appropriate time.  This isn't the appropriate time.  And I'll

9     issue an order there.  I'm going to take the matter under

10    advisement.

11             Let me tell you this:  I don't know precisely what

12    I'm going to rule on the motion for reconsideration.  I have

13    some idea, but I would rather wait until I reflect on your

14    arguments some additional time.  But after I do so, if, as

15    may well be the case, there is a trial, the pandemic has

16    halted trials in the Eastern District of Virginia in civil

17    cases until at least the new year.  I have trials going on in

18    criminal cases starting in October, and we won't finish those

19    until we get to the first of the year, and even then we may

20    not.  So I can't predict with any certainty how soon this

21    matter is going to come to trial, assuming it does go to

22    trial.  I mention that because I think you're entitled to

23    know that, to take into consideration what you may want to

24    do.  It is always, of course, open to the parties to find a

25    reasonable, sensible, commercial resolution of this case, and

37

 1    I urge you to do so.  And if you need the assistance of a

 2    magistrate judge to do that, I would be glad to ensure that

 3    that was made available to you for purposes of a settlement

 4    conference.  But I don't order that, and I don't do it unless

 5    both parties want to give it a try because I don't want to

 6    waste the magistrate judge's time or your time in a vain

 7    effort to try to get something like that done.  If it has to

 8    be tried, we will of course try it.  But what I'm saying to

 9    you is it may be some time before we can get to it.

10         Now, we have motions in limine, and my order will

11    also -- a separate order probably -- will also schedule those

12    so that you can make plans about it.  I think there was a

13    date set for motions in limine.  Am I right, Mr. Dingman,

14    Ms. Puccinelli?

15         MR. SANDOVAL-MOSHENBERG:  Your Honor, this is Simon

16    Sandoval-Moshenberg for the plaintiffs.  Your Honor has set

17    dates for the pretrial submissions and for the objections

18    thereto but not for motions in limine yet.

19         Your Honor, if I may, plaintiffs would request that

20    this matter be set for a jury trial with the understanding

21    that it's well out in the future -- obviously, the criminal

22    trials take precedence, we understand that completely -- and

23    with the understanding that it may not go forward at the date

24    set, but our preference would be to get a trial on the

25    calendar now if it's possible.

1          THE COURT:  You can't do that because I don't know my

2     calendar for the new year.  So the answer is no, not yet.

3          MR. SANDOVAL-MOSHENBERG:  I understand, Your Honor.

4     Thank you.

5          With regards to the motions in limine, Your Honor,

6     Your Honor has set a schedule such that objections to the

7     witness and exhibit lists are due on the 9th of November.  We

8     would suggest that motions in limine be due, say, two or

9     three weeks after that time, Your Honor.

10         THE COURT:  All right.  Well, I'll have to look at my

11    schedule.  I don't think you all can quite

12    appreciate -- although perhaps you can because the pandemic

13    affects your scheduling of things, as well -- but I can't

14    predict with certainty right now that far ahead, so what I

15    will do is that when I issue an order on the motion for

16    reconsideration, I'll consider setting a hearing date and be

17    clear when motions in limine -- and I'll worry about a trial

18    date just as soon as I can, as soon as it appears that I'm

19    able to do it, but as you know, we have not had any criminal

20    trials in the Eastern District of Virginia for months.  And

21    they have backed up.  And they take precedence.  And I'm

22    going to have to deal with that, and I'm sure you all

23    understand that.

24         Thank you very much for your arguments.  Again, they

25    have been very helpful.

1          Stay well.

2          The Court stands in recess.

3              (Proceedings adjourned at 5:17 p.m.)

4

5

6                    * * * * *

7

8       CERTIFICATE OF OFFICIAL COURT REPORTER

9

10         I, Patricia A. Kaneshiro-Miller, certify that the

11   foregoing is a correct transcript from the record of

12   proceedings in the above-entitled matter.

13

14

15   /s/ Patricia A. Kaneshiro-Miller          October 1, 2020
     ----------------------------------        ---------------------
16   PATRICIA A. KANESHIRO-MILLER                   DATE

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 39:15

## 1

**1** [1] - 39:15
**10** [2] - 32:5, 35:20
**1324** [1] - 9:14
**1324's** [1] - 11:12
**148** [1] - 19:5
**15-minute** [1] - 35:20
**16-563** [1] - 1:4
**18th** [1] - 4:25
**19** [1] - 7:1
**19th** [4] - 7:9, 7:10, 7:24, 30:19
**1st** [1] - 4:8

## 2

**20** [1] - 8:14
**2001** [1] - 25:5
**2016** [2] - 4:8, 24:22
**2016-CV-563** [1] - 2:4
**2018** [1] - 6:20
**2020** [3] - 1:7, 7:1, 39:15
**23** [1] - 1:7
**27** [1] - 19:11

## 3

**3,000** [1] - 16:11
**30(b)(6** [1] - 28:3

## 4

**432** [1] - 31:11
**433** [1] - 31:11
**4:06** [1] - 2:2

## 5

**54** [2] - 24:18, 24:24
**54(b** [1] - 32:11
**59** [1] - 24:19
**59(e)** [1] - 32:15
**5:17** [1] - 39:3

## 6

**64.6** [1] - 19:13

## 7

**7334278** [1] - 24:22

## 8

**8** [1] - 9:14

## 9

**9th** [1] - 38:7

## A

**able** [1] - 38:19
**above-entitled** [1] - 39:12
**absolutely** [1] - 18:13
**accept** [1] - 19:18
**accepting** [1] - 19:20
**accommodate** [1] - 24:7
**accompanying** [1] - 4:10
**account** [1] - 24:8
**acknowledge** [1] - 27:18
**acknowledged** [1] - 24:12
**acknowledging** [1] - 27:6
**ACS** [1] - 16:18
**act** [1] - 13:11
**Act** [3] - 3:18, 12:1, 26:4
**acted** [1] - 10:17
**add** [1] - 31:7
**addition** [1] - 17:6
**additional** [2] - 20:23, 36:14
**additionally** [2] - 11:24, 15:19
**address** [4] - 6:23, 7:5, 14:11, 32:9
**addressed** [2] - 4:18, 9:1
**adequately** [1] - 13:3
**adjourned** [1] - 39:3
**admitted** [3] - 7:15, 16:15, 24:15
**adult** [3] - 11:17, 15:8, 15:15
**adults** [2] - 3:19, 17:14
**advisement** [2] - 36:2, 36:10
**affects** [1] - 38:13
**affordable** [1] - 19:9
**afternoon** [4] - 2:8, 2:14, 2:19, 2:25
**ago** [1] - 3:16
**agree** [1] - 29:23
**agrees** [1] - 16:1
**Aguilar** [7] - 9:20, 10:10, 10:13, 10:15, 11:1, 14:20, 32:24
**ahead** [2] - 33:8, 38:14
**Aid** [2] - 2:9, 2:10
**aided** [1] - 1:25
**al** [4] - 1:4, 1:8, 2:4, 2:5
**ALEXANDRIA** [1] - 1:2
**Alexandria** [1] - 1:6
**alien** [1] - 11:14
**aliens** [5] - 10:24, 11:3, 16:5, 16:10, 16:19
**allegation** [1] - 10:25
**allegations** [1] - 14:16
**allege** [1] - 19:6
**alleged** [3] - 6:5, 14:16, 19:22
**allowed** [1] - 34:22
**allowing** [1] - 33:20
**alone** [2] - 4:13, 4:22
**alternative** [2] - 9:8, 21:2
**amending** [1] - 24:6

**American** [1] - 16:12
**analysis** [12] - 9:4, 9:11, 15:25, 16:2, 17:4, 22:6, 26:7, 26:16, 27:12, 27:19, 29:25, 35:14
**analyzing** [1] - 5:21
**answer** [3] - 28:18, 32:21, 38:2
**anti** [54] - 9:13, 9:19, 10:9, 10:15, 10:22, 11:9, 11:20, 12:8, 12:13, 13:4, 13:9, 13:11, 13:13, 13:19, 13:25, 14:6, 14:20, 14:22, 15:2, 15:9, 17:11, 17:21, 18:2, 22:3, 26:13, 26:16, 27:12, 27:22, 27:25, 28:2, 28:4, 28:7, 28:12, 28:15, 28:23, 29:2, 29:8, 29:11, 29:19, 29:24, 30:2, 30:20, 30:22, 30:24, 32:19, 32:22, 32:23, 33:3, 33:15, 34:5, 34:11, 34:18, 35:2, 35:13
**anti-harboring** [54] - 9:13, 9:19, 10:9, 10:15, 10:22, 11:9, 11:20, 12:8, 12:13, 13:4, 13:9, 13:11, 13:13, 13:19, 13:25, 14:6, 14:20, 14:22, 15:2, 15:9, 17:11, 17:21, 18:2, 22:3, 26:13, 26:16, 27:12, 27:22, 27:25, 28:2, 28:4, 28:7, 28:12, 28:15, 28:23, 29:2, 29:8, 29:11, 29:19, 29:24, 30:2, 30:20, 30:22, 30:24, 32:19, 32:22, 32:23, 33:3, 33:15, 34:5, 34:11, 34:18, 35:2, 35:13
**anticipate** [1] - 28:21
**appeal** [4] - 5:3, 5:9, 11:19, 18:17
**appealed** [4] - 4:4, 5:2, 18:20, 34:2
**APPEARANCES** [1] - 1:15
**appearances** [1] - 2:6
**appendix** [1] - 19:11
**apple** [1] - 35:17
**applicable** [1] - 24:18
**applicants** [1] - 3:23
**application** [4] - 3:22, 28:17, 29:8, 29:17
**applied** [2] - 16:17, 27:25
**apply** [3] - 16:12, 32:22, 32:25
**applying** [2] - 24:23, 29:3
**appreciate** [1] - 38:12
**appropriate** [4] - 6:14, 31:2, 36:8
**appropriately** [4] - 27:7, 27:15, 27:19, 31:10
**April** [1] - 4:25
**arbitrary** [8] - 9:16, 9:24, 10:2, 10:6, 10:11, 11:22, 34:8, 34:19
**argue** [9] - 9:13, 13:5, 13:11, 13:18, 14:2, 18:11, 20:7, 30:25, 35:11
**argued** [6] - 6:13, 13:12, 15:19, 24:10, 27:15, 35:4
**arguing** [5] - 2:13, 2:20, 2:24, 4:6, 6:15
**argument** [17] - 4:20, 7:11, 8:7, 8:14, 9:21, 14:4, 14:9, 14:21, 14:23, 15:23, 18:13, 19:1, 24:13, 27:16, 33:21
**arguments** [26] - 3:14, 8:5, 9:1, 9:5, 9:8, 13:21, 17:2, 17:19, 17:22, 21:25, 22:3, 22:5, 22:21, 22:25, 23:16, 23:18, 23:19, 24:13, 24:15, 25:1, 26:11, 35:15, 35:17, 36:4, 36:14, 38:24

**artificial** [8] - 9:16, 9:24, 10:2, 10:6, 10:11, 11:22, 34:8, 34:19
**ascertain** [1] - 10:20
**assistance** [1] - 37:1
**assuming** [2] - 31:6, 36:21
**attribute** [1] - 3:7
**August** [5] - 7:1, 7:9, 7:10, 7:24, 30:19
**authority** [2] - 22:17, 32:10
**authorized** [1] - 25:3
**available** [2] - 24:8, 37:3
**avoid** [1] - 9:18
**avoiding** [2] - 15:1, 17:6
**aware** [3] - 10:14, 10:18, 10:23

## B

**backed** [1] - 38:21
**background** [3] - 17:7, 17:12, 17:15
**barriers** [1] - 10:2
**based** [8] - 4:17, 6:8, 9:7, 11:1, 13:13, 14:15, 15:24, 32:11
**basic** [1] - 16:1
**basis** [11] - 10:10, 11:21, 15:20, 15:23, 16:22, 18:13, 29:8, 33:20, 34:6, 34:16, 35:5
**BEFORE** [1] - 1:12
**begin** [1] - 8:13
**behalf** [1] - 2:21
**below** [1] - 16:8
**between** [4] - 5:23, 15:9, 18:6, 26:19
**beyond** [4] - 7:17, 19:1, 22:17, 36:6
**bind** [1] - 12:5
**bit** [2] - 3:22, 10:12
**bite** [1] - 35:16
**brief** [10] - 3:13, 3:15, 13:23, 20:2, 23:24, 24:5, 25:6, 31:5, 32:5, 35:8
**briefed** [2] - 35:12
**briefing** [1] - 6:23
**briefly** [1] - 31:8
**briefs** [3] - 14:1, 18:22, 32:12
**brought** [1] - 3:17
**burden** [3] - 5:21, 6:18, 15:3
**burden-shifting** [1] - 5:21
**Bureau** [1] - 16:13

## C

**calendar** [2] - 37:25, 38:2
**cannot** [5] - 11:1, 11:25, 12:9, 32:23, 33:18
**card** [1] - 3:24
**carefully** [1] - 22:10
**Carlson** [1] - 24:4
**carry** [1] - 14:22
**carrying** [1] - 12:13
**Caruso** [1] - 17:8
**Case** [1] - 2:3
**case** [29] - 3:15, 4:13, 9:14, 10:12, 10:15, 11:19, 15:12, 19:3, 19:5, 19:22, 19:24, 20:1, 20:3, 24:4, 24:21, 24:23,
25:3, 25:4, 25:10, 25:20, 25:24, 26:14, 28:12, 29:3, 31:12, 31:13, 34:22, 36:15, 36:25
**caselaw** [1] - 33:23
**cases** [6] - 18:9, 20:11, 24:4, 32:14, 36:17, 36:18
**causal** [2] - 5:23, 26:19
**causality** [2] - 6:4, 21:5
**causation** [1] - 13:2
**causes** [1] - 6:6
**causing** [1] - 10:6
**census** [3] - 16:5, 16:10, 16:19
**Census** [1] - 16:13
**Center** [3] - 2:10, 2:11, 16:4
**certainly** [2] - 21:24, 35:10
**certainty** [2] - 36:20, 38:14
**CERTIFICATE** [1] - 39:8
**certify** [1] - 39:10
**challenged** [4] - 5:23, 9:23, 11:18, 26:20
**challenging** [1] - 3:19
**change** [2] - 24:7, 25:2
**changed** [1] - 3:22
**check** [3] - 17:7, 17:13, 17:15
**Chevrolet** [1] - 19:24
**choice** [2] - 9:17, 12:3
**Circuit** [61] - 4:4, 5:3, 5:7, 5:8, 5:13, 5:20, 5:25, 6:1, 6:3, 6:17, 9:20, 10:3, 10:13, 10:17, 12:9, 13:2, 13:3, 13:5, 13:8, 13:11, 13:24, 14:1, 14:13, 14:15, 14:18, 17:19, 17:22, 17:23, 18:7, 18:12, 18:23, 20:6, 20:8, 20:12, 20:18, 21:8, 21:23, 22:11, 22:15, 22:16, 22:18, 22:23, 23:2, 23:15, 24:17, 25:4, 26:1, 26:8, 26:21, 30:2, 30:7, 31:19, 32:12, 34:16, 34:17, 35:2, 35:14, 35:18
**Circuit's** [15] - 6:10, 6:11, 14:7, 17:3, 18:1, 18:13, 18:15, 18:25, 20:20, 23:6, 26:17, 29:25, 30:12, 31:11
**circumstances** [3] - 10:18, 10:24, 24:11
**cite** [3] - 18:9, 19:24, 20:11
**cited** [5] - 20:1, 24:4, 30:3, 32:11, 33:23
**cites** [1] - 25:3
**city** [1] - 10:4
**civil** [1] - 36:16
**Civil** [2] - 1:4, 2:3
**claim** [8] - 4:7, 5:17, 18:21, 23:11, 26:4, 26:14, 27:13, 33:24
**claims** [1] - 5:22
**clarification** [9] - 3:9, 3:10, 7:8, 7:10, 7:25, 8:21, 8:25, 36:6, 36:7
**clarified** [2] - 7:19, 36:5
**clarify** [2] - 7:20, 9:8
**Clark** [10] - 15:21, 16:3, 16:8, 16:15, 16:21, 18:2, 18:6, 22:5, 27:3, 27:5
**Clark's** [2] - 15:24, 17:24
**class** [3] - 5:24, 26:21, 26:25
**clear** [17] - 3:6, 6:2, 6:10, 9:22, 12:11,
18:15, 19:1, 20:12, 21:18, 22:11, 22:16, 22:19, 22:24, 23:14, 24:9, 33:9, 38:17
**clearer** [1] - 34:24
**clearly** [2] - 17:13, 26:18
**CLERK** [2] - 2:3, 35:24
**CMS** [1] - 16:7
**cohabitants** [3] - 11:17, 15:8, 15:16
**combination** [1] - 3:25
**coming** [1] - 14:3
**commercial** [1] - 36:25
**Communities** [4] - 9:22, 10:5, 11:24, 12:12
**Community** [1] - 16:13
**compared** [1] - 6:7
**compelling** [1] - 28:16
**complaint** [4] - 4:7, 14:17, 19:6, 19:11, 19:12, 19:16
**completely** [1] - 37:22
**complied** [1] - 6:25
**comply** [2] - 12:7, 34:10
**complying** [1] - 12:10
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**conceded** [1] - 31:15
**concept** [1] - 16:1
**concern** [1] - 15:5
**conclude** [3] - 19:21, 34:7, 34:9
**concluded** [1] - 7:4
**conclusion** [2] - 5:8, 22:2
**conduct** [1] - 17:6
**conference** [1] - 37:4
**connection** [2] - 5:23, 26:19
**consider** [20] - 3:13, 5:11, 5:18, 6:21, 8:5, 21:2, 21:16, 22:4, 22:10, 22:13, 22:14, 22:21, 22:24, 23:1, 23:11, 23:18, 29:1, 33:2, 33:13, 38:16
**consideration** [6] - 5:4, 7:8, 29:14, 31:14, 33:5, 36:23
**considerations** [1] - 30:15
**considered** [7] - 4:22, 11:10, 22:2, 24:1, 28:1, 31:10, 31:19
**consistent** [1] - 5:7
**constitute** [1] - 19:13
**contend** [2] - 25:13, 26:2
**context** [6] - 20:18, 27:7, 27:8, 27:15, 30:3, 30:4
**contrary** [2] - 10:1, 15:8
**controlling** [1] - 24:8
**convicted** [1] - 10:16
**correct** [11] - 6:24, 12:23, 13:12, 14:6, 14:8, 17:24, 22:15, 24:9, 26:9, 31:18, 39:11
**correctly** [2] - 30:16, 31:16
**counsel** [2] - 2:11, 32:20
**counsel's** [1] - 8:6
**count** [8] - 4:6, 4:9, 4:10, 4:16, 5:1, 25:10, 25:22, 25:24
**County** [1] - 19:10
**coupled** [1] - 31:23

**course** [6] - 8:15, 12:16, 24:2, 29:12, 36:24, 37:8
**COURT** [49] - 1:1, 2:15, 2:19, 3:1, 3:4, 12:19, 12:21, 13:1, 13:10, 13:15, 13:17, 13:23, 14:2, 14:5, 14:9, 21:15, 22:7, 23:4, 23:20, 25:6, 25:9, 25:15, 25:18, 26:5, 26:10, 27:10, 27:20, 28:9, 28:18, 28:21, 29:5, 29:7, 29:21, 30:6, 30:18, 30:25, 31:4, 31:15, 31:22, 31:24, 32:1, 32:4, 33:5, 35:7, 35:19, 36:1, 38:1, 38:10, 39:8
**court** [2] - 2:16, 3:7
**Court** [60] - 1:22, 2:3, 5:4, 5:10, 5:14, 5:16, 7:21, 8:24, 9:1, 9:5, 9:7, 9:22, 9:25, 10:20, 11:10, 11:11, 11:18, 11:19, 11:25, 12:4, 12:17, 13:12, 14:24, 14:25, 15:13, 17:16, 18:4, 18:11, 19:12, 19:14, 19:17, 20:2, 20:21, 21:2, 21:3, 21:12, 21:19, 22:2, 22:20, 22:22, 22:24, 23:1, 23:7, 23:10, 23:15, 23:17, 24:1, 24:21, 25:2, 32:10, 32:16, 32:25, 33:13, 33:14, 34:7, 34:9, 34:22, 34:24, 35:3, 39:2
**Court's** [7] - 8:22, 14:12, 15:6, 18:17, 21:13, 22:19, 33:11
**cover** [1] - 17:1
**creating** [1] - 29:2
**criminal** [14] - 9:18, 10:14, 11:8, 12:6, 15:1, 15:11, 15:13, 17:6, 17:7, 17:12, 17:15, 36:18, 37:21, 38:19
**criminally** [1] - 10:22
**cross** [6] - 4:3, 5:5, 18:18, 20:24, 23:16, 34:25
**cross-motions** [1] - 5:5
**CRR** [1] - 1:22
**current** [1] - 3:16

# D

**D-I-N-G-M-A-N** [1] - 3:3
**date** [4] - 37:13, 37:23, 38:16, 38:18
**DATE** [1] - 39:16
**dates** [1] - 37:17
**Daubert** [2] - 27:5, 36:7
**DE** [1] - 1:3
**De** [1] - 2:4
**deal** [3] - 17:3, 30:19, 38:22
**deBettencourt** [2] - 1:20, 2:23
**decide** [5] - 18:24, 27:21, 28:11, 28:14, 29:22, 32:20, 32:23, 33:19, 34:12, 35:3, 35:4
**decided** [8] - 7:10, 13:2, 18:10, 19:3, 21:18, 24:2, 31:1, 35:1
**deciding** [1] - 20:16
**decision** [16] - 4:2, 8:24, 10:3, 10:10, 10:13, 12:12, 14:18, 15:14, 17:3, 18:1, 19:4, 21:23, 21:24, 24:2, 30:18, 33:1
**deemed** [2] - 5:13, 7:15
**defeat** [1] - 30:13
**defendant** [3] - 7:7, 11:25, 12:2
**defendant's** [1] - 3:19

**Defendants** [2] - 1:8, 1:19
**defendants** [42] - 2:21, 2:24, 4:6, 4:17, 6:11, 6:12, 7:9, 7:16, 7:19, 7:25, 8:2, 8:19, 9:2, 9:13, 9:17, 10:8, 11:8, 12:5, 12:9, 12:14, 12:16, 15:18, 16:25, 17:4, 17:17, 17:23, 21:20, 24:5, 24:10, 27:2, 27:5, 27:15, 27:24, 29:1, 30:3, 32:25, 33:2, 34:10, 35:4, 35:11, 35:16
**defendants'** [20] - 4:2, 4:9, 4:14, 5:1, 5:23, 6:19, 7:3, 7:11, 7:14, 8:21, 8:22, 9:6, 9:12, 17:25, 21:25, 22:20, 24:3, 26:20, 28:3, 28:23
**demonstrate** [5] - 5:22, 12:16, 15:4, 15:16, 26:19
**demonstrates** [4] - 9:15, 9:17, 11:21, 12:14
**demonstrating** [2] - 10:11, 10:24
**demonstration** [1] - 9:23
**denial** [3] - 14:24, 18:17, 33:11
**denied** [4] - 9:9, 25:21, 25:23, 30:16
**denying** [3] - 4:8, 7:2, 19:9
**DEPUTY** [2] - 2:3, 35:24
**detail** [2] - 14:14, 14:19
**determination** [1] - 9:10
**determine** [6] - 7:24, 14:14, 16:9, 16:22, 23:7, 23:9
**determined** [12] - 5:8, 6:17, 11:20, 14:16, 15:25, 16:2, 16:21, 17:24, 21:3, 22:22, 33:6, 34:6
**developing** [2] - 28:2, 28:5
**difference** [1] - 34:21
**difficult** [2] - 8:6, 16:16
**DINGMAN** [18] - 2:22, 3:3, 8:18, 12:20, 12:24, 13:6, 13:12, 13:16, 13:21, 13:25, 14:3, 14:8, 14:10, 21:23, 22:18, 23:5, 32:8, 33:9
**Dingman** [19] - 1:19, 2:23, 3:3, 3:11, 8:2, 8:12, 8:17, 8:19, 13:6, 21:22, 22:8, 22:14, 24:11, 31:4, 32:4, 32:7, 35:7, 36:3, 37:13
**direct** [4] - 8:16, 21:12, 24:21, 31:9
**Direct** [1] - 24:22
**directly** [1] - 35:9
**disagree** [1] - 27:16
**discipline** [1] - 22:15
**discussed** [2] - 9:20, 33:25
**discussion** [3] - 5:25, 34:17, 34:18
**dismiss** [14] - 4:3, 4:6, 4:9, 4:11, 5:15, 13:13, 14:17, 18:21, 19:18, 20:4, 21:4, 22:23, 23:9, 34:22
**dismissal** [3] - 9:14, 18:20, 20:3
**dismissed** [2] - 22:22, 34:2
**dismissing** [2] - 5:14, 23:8
**disparate** [34] - 4:11, 4:12, 4:18, 4:19, 4:21, 5:2, 5:6, 5:11, 5:15, 5:18, 5:21, 5:24, 10:1, 12:1, 18:20, 19:22, 20:25, 22:21, 23:8, 23:12, 23:15, 25:10, 25:11, 25:25, 26:3, 26:20, 27:13, 31:13, 33:13, 33:14, 33:24, 34:1
**disparity** [1] - 10:7

**disproportionate** [2] - 6:6, 26:25
**disproportionately** [1] - 19:8
**dispute** [5] - 18:6, 18:10, 18:12, 27:18, 30:23
**disputed** [1] - 25:12
**disputes** [1] - 28:6
**disregard** [2] - 10:17, 11:13
**disregarded** [3] - 24:17, 35:15, 35:18
**distinction** [1] - 15:9
**DISTRICT** [3] - 1:1, 1:1, 1:12
**District** [13] - 5:4, 5:10, 5:14, 5:16, 21:1, 21:3, 21:12, 23:7, 23:10, 24:23, 25:1, 36:16, 38:20
**DIVISION** [1] - 1:2
**documentation** [1] - 3:20
**documents** [1] - 3:25
**done** [3] - 16:13, 26:22, 37:7
**double** [1] - 12:5
**Dr** [1] - 17:25
**draw** [3] - 19:19, 19:25, 30:6
**due** [2] - 38:7, 38:8
**during** [2] - 8:6, 8:7

# E

**Eastern** [3] - 24:23, 36:16, 38:20
**EASTERN** [1] - 1:1
**effect** [2] - 25:23, 26:13
**effectively** [1] - 12:2
**effort** [1] - 37:7
**eight** [1] - 3:16
**Eighth** [1] - 10:3
**either** [2] - 15:12, 26:22
**ELLIS** [1] - 1:12
**Ellis** [2] - 10:3, 36:1
**Emanuel** [1] - 2:12
**enacted** [2] - 33:23, 34:1
**end** [1] - 34:14
**ensure** [1] - 37:2
**entered** [1] - 11:14
**entire** [2] - 16:14, 24:12
**entirely** [1] - 28:10
**entitled** [4] - 12:14, 35:16, 36:22, 39:12
**erred** [5] - 5:10, 5:14, 5:16, 23:7, 23:10
**error** [9] - 15:25, 16:3, 16:7, 16:9, 16:12, 16:18, 16:20, 16:21, 24:9
**especially** [1] - 2:19
**essentially** [2] - 7:9, 8:9
**established** [2] - 28:1, 31:12
**estimate** [4] - 16:4, 16:9, 16:16, 16:19
**estimates** [1] - 16:8
**et** [4] - 1:4, 1:8, 2:4, 2:5
**evaluate** [2] - 5:13, 28:22
**event** [3] - 7:18, 7:23, 33:18
**eventually** [1] - 28:20
**eviction** [2] - 6:7, 6:8
**evidence** [15] - 3:25, 14:15, 19:13, 20:21, 20:24, 21:4, 21:8, 21:9, 24:8,

43

24:15, 26:23, 27:1, 28:3, 30:13
**evidencing** [1] - 3:21
**evident** [1] - 24:3
**exactly** [1] - 23:2
**excuse** [1] - 12:19
**exhibit** [1] - 38:7
**expert** [4] - 17:8, 17:25, 18:10, 27:3
**explicitly** [1] - 24:5
**expressly** [1] - 7:5
**extensively** [1] - 35:12
**extent** [1] - 9:1
**extraordinary** [2] - 20:8, 20:12

## F

**face** [2] - 6:6, 6:8
**facie** [2] - 19:22, 31:12
**fact** [13] - 4:15, 7:4, 7:12, 11:13, 18:4, 18:10, 19:3, 27:18, 28:6, 30:23, 34:12, 34:20, 34:21
**facts** [7] - 7:14, 10:18, 15:16, 19:19, 19:25, 25:11, 25:12
**factual** [3] - 18:11, 27:20, 30:5
**fail** [2] - 11:23, 16:23
**failed** [1] - 4:7
**fails** [1] - 21:20
**Fair** [3] - 3:17, 12:1, 26:4
**Fairfax** [1] - 19:10
**families** [1] - 19:8
**far** [3] - 14:18, 17:2, 38:14
**favor** [5] - 15:18, 16:25, 19:20, 19:25, 35:4
**federal** [3] - 12:1, 12:11, 25:4
**few** [1] - 3:9
**FHA** [4] - 4:7, 5:17, 19:7, 23:11
**filed** [6] - 6:12, 6:15, 7:7, 24:5, 27:5, 27:9
**final** [2] - 24:7, 32:13
**findings** [1] - 7:12
**finish** [3] - 14:9, 22:9, 36:18
**firm** [1] - 2:12
**first** [12] - 2:6, 3:11, 5:8, 5:22, 6:2, 6:3, 8:12, 9:21, 26:18, 32:9, 36:19
**flexibility** [1] - 32:16
**flexible** [1] - 32:13
**flows** [1] - 9:19
**focused** [1] - 12:24
**focusing** [1] - 12:22
**following** [5] - 9:25, 10:3, 10:4, 11:11, 19:17
**FOR** [1] - 1:1
**foregoing** [1] - 39:11
**former** [1] - 3:16
**formulation** [1] - 29:12
**forth** [1] - 8:24
**forward** [3] - 12:13, 34:3, 37:23
**four** [1] - 3:16
**Fourth** [75] - 4:4, 5:3, 5:7, 5:8, 5:13, 5:20, 5:25, 6:1, 6:3, 6:10, 6:11, 6:17,

9:20, 10:13, 10:16, 12:9, 13:2, 13:3, 13:5, 13:8, 13:11, 13:23, 14:1, 14:7, 14:13, 14:15, 14:18, 17:3, 17:19, 17:22, 17:23, 18:1, 18:7, 18:12, 18:13, 18:15, 18:22, 18:23, 18:25, 20:5, 20:7, 20:11, 20:18, 20:20, 21:7, 21:23, 22:10, 22:15, 22:16, 22:18, 22:23, 23:2, 23:6, 23:14, 24:16, 24:17, 25:4, 25:25, 26:7, 26:17, 26:21, 29:25, 30:1, 30:7, 30:12, 31:11, 31:19, 32:12, 34:15, 34:17, 35:2, 35:14, 35:17
**framed** [1] - 32:18
**framework** [1] - 5:21
**functionally** [2] - 5:14, 23:7
**future** [1] - 37:21

## G

**genuine** [1] - 7:4
**George** [1] - 17:8
**Gianna** [3] - 1:16, 2:11, 23:23
**Giron** [1] - 2:4
**GIRON** [1] - 1:3
**given** [4] - 11:12, 28:22, 28:24, 33:15
**glad** [1] - 37:2
**goal** [1] - 27:11
**governing** [1] - 23:25
**government** [2] - 12:2, 12:11
**grant** [5] - 9:7, 15:21, 17:16, 21:12, 22:19
**granted** [7] - 16:25, 17:20, 18:16, 18:19, 21:17, 22:12, 25:21
**granting** [4] - 4:25, 5:10, 5:16, 20:9, 21:10, 23:10, 33:12
**Grayson** [3] - 1:19, 1:20, 2:23
**grounds** [1] - 24:6

## H

**hac** [1] - 2:11
**halted** [1] - 36:16
**handling** [1] - 2:14
**hands** [2] - 12:2, 34:10
**Hanes** [3] - 1:19, 1:20, 2:23
**harboring** [54] - 9:13, 9:19, 10:9, 10:15, 10:22, 11:9, 11:20, 12:8, 12:13, 13:4, 13:9, 13:11, 13:13, 13:19, 13:25, 14:6, 14:20, 14:22, 15:2, 15:9, 17:11, 17:21, 18:2, 22:3, 26:13, 26:16, 27:12, 27:22, 27:25, 28:2, 28:4, 28:7, 28:12, 28:15, 28:23, 29:2, 29:8, 29:11, 29:19, 29:24, 30:2, 30:20, 30:22, 30:24, 32:19, 32:22, 32:23, 33:3, 33:15, 34:5, 34:11, 34:18, 35:2, 35:13
**hard** [1] - 19:23
**hear** [5] - 3:11, 3:12, 8:7, 22:9, 23:21
**heard** [2] - 26:11, 31:5
**HEARING** [1] - 1:10
**hearing** [2] - 6:19, 38:16
**held** [4] - 6:20, 11:11, 23:2, 32:12

**helpful** [4] - 28:10, 28:18, 36:4, 38:25
**himself** [1] - 16:15
**hint** [1] - 20:15
**Hispanic** [2] - 16:14, 19:8
**Hispanics** [1] - 16:18
**holding** [1] - 33:1
**Home** [2] - 2:5, 3:17
**HOME** [1] - 1:7
**homes** [1] - 19:9
**Honor** [55] - 2:8, 2:17, 2:22, 8:18, 8:20, 9:21, 12:14, 13:6, 14:10, 14:23, 15:19, 15:23, 17:2, 17:18, 18:24, 20:11, 20:20, 21:7, 23:6, 23:22, 25:13, 25:17, 26:2, 26:9, 26:15, 27:4, 27:14, 27:23, 28:25, 29:6, 29:16, 30:1, 30:10, 30:14, 30:15, 30:21, 30:22, 31:3, 31:8, 31:9, 31:13, 32:8, 32:19, 33:10, 34:14, 35:10, 35:17, 37:15, 37:16, 37:19, 38:3, 38:5, 38:6, 38:9
**Honor's** [1] - 31:25
**HONORABLE** [1] - 1:12
**Housing** [3] - 3:18, 12:1, 26:4
**housing** [1] - 19:10

## I

**idea** [2] - 28:4, 36:13
**identified** [3] - 6:24, 24:14, 26:7
**identify** [3] - 8:13, 21:8, 26:22
**ignore** [2] - 11:2, 22:14
**illegal** [6] - 10:24, 11:3, 16:5, 16:10, 16:15, 16:19
**illegally** [1] - 15:11
**immigration** [3] - 11:16, 15:15, 33:17
**impact** [30] - 4:12, 4:19, 4:22, 5:6, 5:12, 5:15, 5:18, 5:21, 5:24, 10:1, 10:9, 12:1, 18:21, 19:22, 20:3, 20:25, 22:21, 23:8, 23:12, 23:15, 25:11, 25:25, 26:4, 26:20, 26:25, 27:13, 31:13, 33:14, 33:24, 35:2
**impermissible** [1] - 6:16
**implement** [1] - 9:18
**implicitly** [1] - 27:6
**imposed** [1] - 12:11
**imposition** [2] - 11:13, 33:16
**inappropriate** [1] - 31:20
**Inc** [1] - 25:4
**including** [1] - 23:18
**Inclusive** [4] - 9:22, 10:4, 11:24, 12:12
**indeed** [1] - 24:15
**indicating** [1] - 10:18
**indisputable** [1] - 29:24
**individuals** [1] - 10:19
**inference** [1] - 30:7
**inferences** [2] - 19:19, 19:25
**informed** [1] - 4:21
**injustice** [1] - 24:10
**inquire** [3] - 11:16, 15:14, 33:17
**instance** [1] - 12:6
**instead** [1] - 16:12

44

**instructed** [1] - 6:22, 29:1
**instructions** [2] - 28:19, 28:21
**insufficient** [1] - 21:5
**Integrated** [1] - 24:22
**intend** [2] - 3:14, 35:21
**intent** [1] - 21:13
**interest** [4] - 12:17, 15:2, 27:17, 28:16
**interlocutory** [1] - 32:15
**interpreted** [2] - 12:8, 32:24
**interrupt** [3] - 8:8, 12:21, 22:7
**intervening** [1] - 24:7
**involving** [1] - 27:21
**issue** [23] - 7:2, 11:10, 14:3, 14:12, 17:1, 20:20, 25:2, 25:12, 26:24, 27:15, 27:20, 27:23, 32:9, 32:18, 33:4, 33:18, 33:19, 34:12, 34:13, 35:12, 36:9, 38:15
**issued** [6] - 4:8, 4:20, 4:25, 6:20, 7:2, 30:18
**issues** [18] - 6:24, 7:4, 7:11, 9:9, 10:21, 18:4, 19:3, 20:16, 20:19, 24:1, 25:14, 27:6, 30:11, 33:25, 34:4, 34:16, 35:1, 36:7
**itself** [1] - 11:19

## J

**jail** [2] - 29:14, 29:18
**joint** [1] - 19:11
**JUDGE** [1] - 1:12
**Judge** [3] - 28:20, 35:24, 36:1
**judge** [1] - 37:2
**judge's** [1] - 37:6
**judges** [1] - 29:23
**judgment** [65] - 4:3, 4:16, 4:17, 4:23, 5:1, 5:3, 5:5, 5:11, 5:17, 6:13, 6:16, 6:20, 6:22, 7:3, 7:15, 8:23, 9:2, 9:6, 9:7, 9:9, 9:12, 9:15, 10:8, 11:11, 12:15, 12:24, 14:25, 15:17, 15:22, 16:24, 17:1, 17:17, 17:20, 18:9, 18:18, 18:20, 19:3, 20:9, 20:16, 20:25, 21:11, 21:12, 21:17, 21:20, 21:24, 21:25, 22:11, 22:20, 22:25, 23:11, 23:16, 24:7, 24:12, 25:21, 25:23, 27:8, 30:13, 30:16, 31:20, 33:12, 34:24, 35:1, 35:5
**judgments** [1] - 32:13
**juries** [1] - 29:22
**jury** [15] - 27:21, 28:11, 28:22, 30:8, 30:11, 30:17, 31:17, 32:3, 32:20, 32:23, 33:18, 33:21, 34:12, 34:13, 37:20
**Justice** [2] - 2:9, 2:10
**justification** [2] - 13:19, 29:2
**justifications** [1] - 30:3
**justifies** [1] - 28:16
**Justin** [2] - 1:20, 2:23

## K

**Kaneshiro** [2] - 39:10, 39:15
**KANESHIRO** [2] - 1:22, 39:16
**KANESHIRO-MILLER** [2] - 1:22, 39:16

**Kaneshiro-Miller** [2] - 39:10, 39:15
**keep** [1] - 23:24
**key** [1] - 20:19
**knowing** [1] - 15:10
**knowledge** [1] - 11:2

## L

**last** [1] - 17:1
**Latino** [2] - 3:17, 19:8
**Latinos** [3] - 6:6, 6:7, 19:13
**law** [8] - 2:12, 11:15, 11:19, 24:8, 24:9, 24:14, 29:17, 34:7
**lawsuit** [1] - 3:18
**lease** [1] - 3:22
**least** [2] - 10:5, 36:17
**Legal** [2] - 2:9, 2:10
**legal** [10] - 3:21, 4:1, 15:7, 16:14, 25:2, 32:22, 33:18, 33:19, 34:13, 35:3
**legally** [1] - 11:7
**legitimate** [1] - 35:6
**lessee** [3] - 3:23, 11:16, 15:10
**lessees** [3] - 15:7, 15:15, 17:13
**lessor** [2] - 11:15, 33:16
**level** [2] - 16:8, 16:10
**liability** [13] - 5:6, 5:12, 5:19, 9:19, 10:14, 11:13, 12:6, 15:1, 10:25, 21:2, 23:12, 33:16
**liable** [3] - 10:22, 11:25, 12:10
**limine** [6] - 37:10, 37:13, 37:18, 38:5, 38:8, 38:17
**LIMITED** [1] - 1:7
**Limited** [1] - 2:5
**links** [1] - 26:24
**lists** [1] - 38:7
**litigate** [1] - 6:16
**litigation** [1] - 29:12
**live** [2] - 3:20, 17:7
**living** [1] - 17:14
**LLC** [1] - 24:22
**located** [1] - 16:6
**look** [4] - 18:25, 29:9, 29:13, 38:10
**looking** [1] - 24:4

## M

**magistrate** [2] - 37:2, 37:6
**mandate** [4] - 22:16, 22:17, 22:23, 31:11
**manifest** [1] - 24:10
**manner** [1] - 5:6
**margin** [8] - 15:25, 16:3, 16:7, 16:9, 16:12, 16:18, 16:20, 16:21
**Marketing** [1] - 24:22
**Mart** [1] - 25:4
**material** [2] - 7:4, 7:14
**matter** [10] - 10:13, 32:6, 34:7, 34:20, 35:3, 35:20, 36:2, 36:9, 36:21, 37:20, 39:12
**Matthew** [2] - 1:17, 2:11

**mean** [2] - 17:21, 34:23
**meaningful** [1] - 12:3
**memorandum** [1] - 4:9
**mention** [5] - 13:8, 18:1, 30:4, 30:21, 36:22
**mentioned** [2] - 14:6, 22:3
**mentioning** [1] - 17:21
**merely** [2] - 25:1, 31:18
**met** [2] - 13:3, 34:20
**Michael** [5] - 1:19, 2:22, 3:3, 8:19, 13:6
**might** [2] - 8:8, 26:11
**Migration** [1] - 16:4
**MILLER** [2] - 1:22, 39:16
**Miller** [2] - 39:10, 39:15
**mind** [2] - 25:2, 33:22
**Minneapolis** [1] - 10:4
**minutes** [2] - 8:14, 32:5
**mislead** [1] - 33:10
**misunderstood** [1] - 14:12
**MOBILE** [1] - 1:7
**Mobile** [2] - 2:5, 3:17
**modification** [1] - 16:20
**modify** [1] - 32:16
**moment** [1] - 22:7
**months** [1] - 38:20
**morning** [1] - 2:22
**MOSHENBERG** [4] - 2:8, 2:17, 37:15, 38:3
**Moshenberg** [3] - 1:16, 2:9, 37:16
**motion** [46] - 2:13, 3:9, 4:2, 4:9, 4:11, 4:17, 5:1, 5:10, 5:15, 5:17, 6:12, 6:19, 7:3, 7:7, 7:14, 8:3, 8:21, 8:22, 8:23, 9:3, 9:6, 9:12, 10:8, 13:13, 14:17, 18:8, 18:18, 18:21, 19:18, 20:4, 20:24, 21:4, 22:20, 22:22, 22:25, 23:8, 23:10, 27:5, 31:1, 33:12, 34:22, 34:23, 36:5, 36:6, 36:12, 38:15
**MOTION** [1] - 1:10
**motions** [14] - 4:3, 5:5, 23:16, 23:25, 24:18, 24:19, 27:8, 34:25, 37:10, 37:13, 37:18, 38:5, 38:8, 38:17
**motivations** [1] - 34:3
**movant** [1] - 3:12
**moved** [2] - 4:6, 4:16
**MR** [23] - 2:8, 2:17, 2:22, 3:3, 8:18, 12:20, 12:24, 13:6, 13:12, 13:16, 13:21, 13:25, 14:3, 14:8, 14:10, 21:23, 22:18, 23:5, 32:8, 33:9, 35:10, 37:15, 38:3
**MS** [23] - 23:22, 25:8, 25:13, 25:17, 26:2, 26:9, 26:15, 27:14, 27:23, 28:14, 28:20, 28:25, 29:6, 29:16, 30:1, 30:10, 30:21, 31:3, 31:8, 31:18, 31:23, 31:25, 32:2
**must** [9] - 10:5, 11:6, 18:10, 19:18, 23:6, 23:9, 23:17, 26:19, 35:3
**mute** [1] - 35:23

## N

**Nady** [2] - 1:17, 2:10

**name** [3] - 2:15, 3:1, 3:6
**national** [1] - 16:8
**necessary** [3] - 5:13, 8:11, 12:7
**need** [3] - 8:14, 34:10, 37:1
**Nemet** [1] - 19:24
**neutral** [2] - 4:14, 28:17
**never** [2] - 20:9, 23:15
**nevertheless** [1] - 24:25
**new** [7] - 24:8, 24:13, 24:14, 25:1, 36:17, 38:2
**non** [2] - 3:23, 6:7
**non-Latinos** [1] - 6:7
**non-lessee** [1] - 3:23
**nonetheless** [2] - 20:7, 33:14
**notable** [1] - 21:7
**note** [2] - 27:4, 30:2
**noted** [1] - 30:22
**nothing** [3] - 11:2, 16:9, 31:6
**November** [2] - 6:20, 38:7
**nowhere** [2] - 20:15, 22:3
**number** [4] - 6:6, 6:7, 16:4, 17:14
**Number** [1] - 2:3
**numerous** [1] - 18:4

## O

**obey** [1] - 22:16
**objections** [2] - 37:17, 38:6
**obvious** [2] - 16:17, 35:5
**obviously** [3] - 7:16, 27:16, 37:21
**occasions** [1] - 18:4
**October** [2] - 36:18, 39:15
**OF** [3] - 1:1, 1:10, 39:8
**offered** [1] - 15:6
**OFFICIAL** [1] - 39:8
**one** [57] - 4:6, 4:9, 4:10, 4:17, 5:1, 6:14, 6:16, 7:6, 7:11, 8:23, 9:1, 9:4, 9:9, 9:10, 11:23, 12:10, 12:22, 12:25, 13:18, 13:21, 14:11, 14:15, 14:21, 15:19, 15:20, 16:24, 17:5, 17:18, 17:20, 18:5, 19:9, 20:19, 21:10, 21:11, 21:13, 21:19, 21:25, 22:12, 23:18, 24:16, 25:10, 25:23, 25:24, 26:17, 27:8, 30:2, 30:6, 30:14, 31:16, 31:19, 32:19, 33:8, 33:21, 34:14, 34:16, 35:13
**one's** [1] - 21:5
**open** [1] - 36:24
**opening** [1] - 18:24
**operators** [1] - 3:18
**opined** [1] - 17:9
**opinion** [17] - 4:10, 4:15, 5:7, 6:10, 13:9, 14:7, 17:24, 18:14, 18:15, 19:1, 20:15, 23:3, 23:6, 26:18, 30:12, 32:2, 35:15
**opinions** [5] - 15:21, 15:22, 15:24, 16:23, 22:4
**opportunity** [4] - 8:2, 8:9, 31:5, 35:9
**opposed** [1] - 34:20
**opposition** [2] - 6:15, 18:8
**options** [1] - 19:10

**oral** [2] - 4:20, 14:4
**orally** [1] - 14:2
**order** [24] - 4:8, 4:10, 4:20, 4:25, 6:20, 6:23, 7:1, 7:2, 7:3, 7:9, 7:10, 7:21, 7:22, 7:24, 8:25, 15:6, 22:1, 32:15, 32:17, 36:9, 37:4, 37:10, 37:11, 38:15
**original** [1] - 3:24
**originally** [1] - 4:6
**ousting** [1] - 19:8
**outline** [1] - 3:5
**outlined** [1] - 5:20
**outset** [1] - 3:6
**overarching** [1] - 5:9
**own** [2] - 21:1, 24:3
**owners** [1] - 3:18

## P

**P-U-C-C-I-N-E-L-L-I** [1] - 2:18
**p.m** [2] - 2:2, 39:3
**page** [2] - 19:5, 19:11
**pages** [1] - 31:11
**pandemic** [2] - 36:15, 38:12
**papers** [1] - 20:17
**park** [9] - 3:19, 3:20, 6:7, 10:25, 11:4, 11:5, 16:5, 17:8, 17:15
**Park** [2] - 2:5, 3:17
**PARK** [1] - 1:7
**partial** [5] - 17:20, 18:19, 19:2, 20:9, 21:11
**particular** [2] - 18:5, 19:7
**parties** [7] - 4:16, 4:21, 6:22, 6:24, 36:3, 36:24, 37:5
**parties'** [1] - 4:3
**PARTNERSHIP** [1] - 1:7
**Partnership** [1] - 2:5
**parts** [1] - 8:23
**passing** [1] - 20:20
**past** [2] - 34:22, 34:23
**Patricia** [2] - 39:10, 39:15
**PATRICIA** [2] - 1:22, 39:16
**people** [2] - 16:11, 17:7
**Peralta** [2] - 1:17, 2:10
**percent** [1] - 19:14
**performed** [1] - 17:16
**perhaps** [1] - 38:12
**period** [1] - 8:10
**permit** [1] - 23:25
**place** [3] - 12:4, 26:16, 30:5
**plaintiff** [6] - 2:7, 4:4, 10:5, 19:20, 20:23, 26:18
**Plaintiffs** [1] - 1:5, 1:16, 19:12
**plaintiffs** [47] - 4:13, 4:18, 5:22, 6:4, 6:5, 6:12, 6:15, 6:17, 10:25, 11:23, 14:14, 15:4, 16:23, 17:10, 17:19, 18:3, 18:17, 18:18, 19:6, 19:21, 20:1, 20:2, 20:7, 20:10, 20:17, 23:23, 24:21, 25:9, 26:2, 26:6, 26:22, 27:1, 27:14, 27:24, 29:3, 30:12, 31:12, 32:10, 34:13, 33:22, 33:23, 34:2, 34:15, 35:11, 37:16, 37:19

**plaintiffs'** [13] - 5:5, 5:11, 5:15, 5:18, 23:8, 23:12, 25:19, 26:1, 26:12, 26:14, 26:15, 27:13, 32:20
**plans** [1] - 37:12
**plausibly** [1] - 6:5
**play** [1] - 27:12
**played** [1] - 29:24
**plays** [1] - 35:13
**pleading** [1] - 34:21
**pled** [1] - 19:19
**point** [5] - 10:5, 13:4, 15:11, 27:18, 31:7
**pointed** [3] - 7:20, 8:20, 10:9
**pointing** [1] - 31:18
**policies** [1] - 9:25
**policy** [32] - 3:19, 3:22, 4:14, 5:24, 6:8, 9:15, 9:18, 9:23, 10:6, 10:10, 11:4, 11:21, 11:22, 12:7, 12:17, 15:4, 17:5, 17:9, 19:7, 26:20, 26:24, 28:2, 28:5, 28:17, 29:3, 29:13, 33:3, 33:22, 34:1, 34:6, 35:6
**population** [5] - 16:11, 16:14, 16:15, 19:14
**portions** [1] - 6:9
**position** [7] - 25:9, 25:20, 26:1, 26:6, 26:12, 26:16, 30:12
**possibility** [1] - 11:3
**possible** [3] - 8:16, 11:8, 37:25
**potential** [1] - 9:18
**practice** [1] - 6:6
**precedence** [2] - 37:22, 38:21
**precisely** [5] - 18:22, 18:23, 20:5, 20:6, 36:11
**predicated** [1] - 15:20
**predict** [2] - 36:20, 38:14
**preference** [1] - 37:24
**present** [1] - 24:11
**presented** [6] - 7:14, 7:22, 9:5, 13:22, 27:21, 30:13
**pretext** [1] - 4:15
**pretextual** [1] - 29:4
**pretrial** [5] - 2:14, 7:18, 7:21, 27:8, 37:17
**prevent** [1] - 24:9
**previously** [4] - 4:23, 11:10, 23:1, 33:2
**prima** [2] - 19:22, 31:12
**primary** [2] - 17:18, 27:23
**Pritchard** [1] - 25:3
**private** [1] - 9:25
**pro** [1] - 2:11
**problem** [1] - 29:21
**problematic** [1] - 10:7
**procedure** [1] - 32:13
**proceed** [2] - 25:10, 25:20, 25:24, 26:6, 32:7, 33:21, 34:22, 34:23, 35:21
**proceeding** [2] - 25:14, 26:3
**Proceedings** [1] - 1:24, 39:3
**proceedings** [1] - 39:12
**produced** [2] - 1:25, 27:1

**Professor** [12] - 15:21, 16:3, 16:15, 16:21, 17:24, 18:2, 18:3, 18:6, 22:5, 27:3, 27:5
**professor** [2] - 15:24, 16:8
**proffered** [1] - 17:5
**proof** [3] - 11:6, 13:20, 15:7
**properly** [3] - 3:7, 11:15, 33:16
**proposition** [1] - 19:25
**prosecution** [3] - 11:8, 15:13, 17:6
**protect** [1] - 11:7
**protected** [3] - 5:24, 26:21, 26:25
**provide** [6] - 3:20, 3:24, 3:25, 11:6, 15:7, 16:7
**provided** [3] - 13:19, 19:13, 32:21
**provides** [2] - 11:20, 34:5
**providing** [1] - 20:6
**published** [1] - 4:15
**Puccinelli** [17] - 1:16, 2:11, 2:13, 2:20, 3:12, 8:4, 23:21, 23:23, 25:6, 27:11, 28:10, 29:22, 31:6, 31:16, 35:8, 36:4, 37:14
**PUCCINELLI** [24] - 23:22, 25:8, 25:13, 25:17, 26:2, 26:9, 26:15, 27:14, 27:23, 28:14, 28:20, 28:25, 29:6, 29:16, 30:1, 30:10, 30:21, 31:3, 31:8, 31:18, 31:23, 31:25, 32:2, 35:10
**puccinelli** [1] - 30:9
**purely** [1] - 32:22
**purposes** [2] - 7:13, 37:3
**put** [4] - 7:19, 29:14, 29:18, 35:23
**puzzling** [1] - 29:7

**Q**

**questions** [3] - 8:6, 8:10, 34:13
**quick** [1] - 27:4
**Quinn** [1] - 2:12
**quite** [5] - 10:12, 15:23, 21:18, 22:24, 38:11
**quote** [3] - 12:5, 19:15, 23:5
**quoted** [2] - 18:24, 33:11
**quotes** [1] - 20:17

**R**

**raised** [5] - 9:2, 13:25, 20:19, 32:9, 33:4
**raises** [1] - 25:1
**rather** [2] - 29:12, 36:13
**re** [1] - 25:18
**re-ask** [1] - 25:18
**reaching** [2] - 5:8, 35:15
**read** [2] - 21:15
**realize** [1] - 29:14
**really** [6] - 7:17, 7:24, 29:11, 29:24, 30:7, 36:5
**reason** [3] - 16:17, 22:19, 35:6
**reasonable** [3] - 17:9, 19:19, 36:25
**reasons** [1] - 17:5
**recess** [7] - 3:13, 8:5, 8:10, 32:6,

35:20, 35:21, 39:2
**Recess** [1] - 35:25
**reckless** [2] - 10:17, 11:13
**recollection** [1] - 26:12
**reconsider** [6] - 8:24, 14:24, 24:1, 25:2, 32:11, 32:16
**reconsideration** [13] - 7:8, 7:17, 8:3, 8:21, 23:25, 24:19, 24:20, 24:25, 31:1, 32:13, 34:25, 36:12, 38:16
**reconsidered** [1] - 24:3
**record** [4] - 13:7, 33:9, 34:17, 39:11
**refer** [1] - 20:17
**reference** [1] - 20:21
**referred** [1] - 15:14
**referring** [1] - 21:8
**refers** [1] - 19:10
**reflect** [1] - 36:13
**refresh** [1] - 26:12
**regarding** [3] - 10:14, 24:16, 30:23
**regardless** [1] - 21:3
**regards** [1] - 38:5
**rehashed** [1] - 24:12
**reiterate** [2] - 6:1, 26:11
**rejected** [2] - 4:24, 17:22
**relatively** [1] - 23:24
**relegated** [1] - 27:19
**relevant** [2] - 34:4, 34:5
**reliability** [3] - 16:2, 16:22, 22:5
**reliance** [1] - 28:23
**relied** [2] - 29:1, 32:14
**relief** [4] - 18:16, 20:5, 20:6, 25:3
**rely** [1] - 29:11
**remain** [2] - 7:11, 9:10
**remaining** [1] - 31:14
**remains** [1] - 11:14
**remand** [5] - 6:11, 6:21, 6:24, 12:22, 34:25
**remanded** [2] - 5:4, 30:14
**remands** [1] - 31:13
**remarks** [1] - 3:7
**remember** [1] - 8:13
**renewal** [1] - 3:22
**renting** [1] - 10:19
**reply** [1] - 24:5
**reported** [1] - 1:24
**Reporter** [1] - 1:22
**reporter** [2] - 2:16, 3:7
**REPORTER** [1] - 39:8
**represented** [1] - 18:3
**request** [4] - 3:10, 18:19, 24:25, 37:19
**requested** [2] - 18:16, 20:9
**requests** [1] - 25:1
**require** [2] - 15:17, 15:21
**required** [5] - 9:14, 9:23, 15:7
**requirement** [5] - 6:4, 10:1, 13:2, 21:6, 34:19
**requirements** [3] - 12:8, 16:24, 34:11
**requires** [4] - 3:23, 7:24, 12:16, 17:16
**requiring** [1] - 3:19

**reside** [1] - 11:5
**residency** [1] - 15:8
**residents** [1] - 3:17
**residing** [3] - 10:24, 11:3, 15:10
**resolution** [1] - 36:25
**resolved** [3] - 18:12, 27:7, 28:7
**respect** [15] - 9:4, 9:10, 10:14, 11:3, 17:11, 18:5, 21:18, 22:5, 25:22, 26:10, 28:7, 28:12, 33:3, 33:11, 33:12
**respond** [4] - 8:4, 31:5, 32:5, 35:9
**response** [2] - 17:10, 17:18
**rest** [1] - 19:15
**result** [1] - 33:6
**returning** [1] - 14:20
**reverse** [1] - 20:3
**reversed** [2] - 22:19, 22:24
**REYES** [1] - 1:3
**Reyes** [1] - 2:4
**RMR** [1] - 1:22
**robust** [4] - 5:23, 6:4, 21:5, 26:19
**role** [2] - 29:25, 35:13
**Rosy** [1] - 2:4
**ROSY** [1] - 1:3
**roughly** [1] - 8:14
**rule** [1] - 36:12
**Rule** [5] - 24:18, 24:19, 24:24, 32:11, 32:15
**ruling** [3] - 8:22, 24:2, 24:17

**S**

**SANDOVAL** [4] - 2:8, 2:17, 37:15, 38:3
**Sandoval** [3] - 1:16, 2:9, 37:16
**SANDOVAL-MOSHENBERG** [4] - 2:8, 2:17, 37:15, 38:3
**Sandoval-Moshenberg** [3] - 1:16, 2:9, 37:16
**satisfactory** [1] - 22:1
**satisfied** [5] - 6:4, 6:18, 13:18, 14:15, 15:2
**satisfies** [2] - 17:10, 27:17
**satisfy** [3] - 15:5, 21:5, 21:10
**save** [1] - 8:9
**schedule** [3] - 37:11, 38:6, 38:11
**scheduling** [1] - 38:13
**scope** [1] - 31:10
**second** [3] - 6:2, 33:4, 35:16
**Section** [1] - 11:12
**Security** [1] - 3:24
**seeking** [4] - 3:20, 7:8, 7:25, 8:25
**sending** [1] - 30:16
**sensible** [2] - 15:14, 36:25
**sensibly** [2] - 11:16, 33:17
**separate** [1] - 37:11
**September** [2] - 1:7, 4:8
**serve** [1] - 4:12
**set** [6] - 8:24, 37:13, 37:16, 37:20, 37:24, 38:6
**setting** [1] - 38:16

**T**

settlement [1] - 37:3
shifting [1] - 5:21
shifts [1] - 15:3
shorthand [1] - 1:24
shortly [1] - 4:20
show [2] - 4:14, 16:23
shown [3] - 9:24, 27:1, 27:24
significant [1] - 11:21
Simon [3] - 1:16, 2:9, 37:15
simple [1] - 15:23
simply [2] - 11:6, 24:12
sit [3] - 22:14, 22:15, 22:16
Social [1] - 3:24
someone [1] - 12:5
soon [3] - 36:20, 38:18
sorry [3] - 13:1, 13:16, 29:6
sort [2] - 7:17, 29:22
specific [2] - 4:5, 6:5
specifically [3] - 13:17, 24:4, 26:24
spell [2] - 2:15, 3:2
stage [18] - 5:12, 5:16, 5:19, 11:23, 12:10, 13:13, 15:20, 18:5, 18:21, 19:18, 20:4, 21:4, 22:23, 22:25, 23:9, 23:13, 34:23, 34:24
stand [2] - 4:13, 4:22
stand-alone [2] - 4:13, 4:22
standard [2] - 17:9, 24:18
standards [1] - 23:25
stands [1] - 39:2
start [1] - 25:15
started [1] - 3:16
starting [1] - 36:18
starts [1] - 19:5
state [7] - 4:7, 19:5, 21:9, 21:10, 23:3, 23:5, 31:19
statement [2] - 14:12, 33:10
statements [1] - 18:25
STATES [2] - 1:1, 1:12
states [5] - 24:6, 24:24, 26:18, 28:3, 31:11
States [8] - 3:21, 4:1, 9:20, 11:1, 11:6, 11:15, 15:11, 32:24
stating [1] - 6:21
statistical [10] - 15:20, 15:24, 16:1, 16:2, 16:24, 18:11, 19:13, 20:24, 22:6, 26:23
statistics [3] - 16:3, 19:15, 19:21
status [6] - 3:21, 4:1, 10:20, 11:16, 15:15, 33:17
statute [53] - 9:13, 9:19, 10:9, 10:15, 10:16, 10:22, 11:9, 11:20, 12:8, 12:13, 13:4, 13:9, 13:14, 13:19, 13:25, 14:6, 14:20, 14:22, 15:2, 15:9, 17:12, 17:22, 18:2, 22:3, 26:13, 26:16, 27:12, 27:22, 27:25, 28:2, 28:4, 28:7, 28:13, 28:15, 28:23, 29:2, 29:9, 29:11, 29:19, 29:24, 30:2, 30:20, 30:22, 30:24, 32:19, 32:22, 32:24, 33:3, 34:5, 34:11, 34:18, 35:2, 35:13

statute's [1] - 33:15
stay [1] - 39:1
stenotype [1] - 1:24
step [61] - 5:20, 5:22, 6:3, 6:14, 6:16, 6:18, 7:5, 7:11, 9:1, 9:4, 9:9, 9:10, 11:23, 12:10, 12:15, 12:22, 13:18, 14:15, 14:21, 15:3, 15:19, 15:20, 16:24, 17:4, 17:10, 17:20, 18:5, 19:2, 20:8, 20:13, 21:5, 21:10, 21:11, 21:13, 21:19, 21:25, 22:11, 23:18, 24:16, 25:23, 26:17, 26:18, 27:16, 27:17, 27:19, 28:7, 30:3, 30:14, 30:23, 31:16, 31:19, 31:21, 32:19, 33:7, 33:8, 33:21, 34:16, 35:13
step-one [1] - 12:10
steps [16] - 6:2, 6:14, 6:21, 7:5, 10:20, 12:15, 12:25, 14:23, 14:25, 15:17, 21:16, 25:22, 26:7, 30:15, 31:14, 32:2
Sterling [1] - 1:19
still [2] - 29:13, 29:14
stop [1] - 19:23
Stores [1] - 25:4
straightforward [1] - 11:5
stronger [1] - 20:23
Studies [1] - 16:4
Study [1] - 16:13
study [1] - 16:18
subject [1] - 15:12
submissions [1] - 37:17
submit [3] - 6:23, 28:6, 33:1
submitted [2] - 20:23, 21:4
substantive [2] - 17:2, 19:3
succinct [1] - 8:16
sufficient [5] - 14:16, 17:14, 21:1, 21:9, 30:13
sufficiently [2] - 19:22, 28:15
suggest [2] - 34:9, 38:8
suggested [1] - 26:1
suggesting [1] - 30:7
suggestion [1] - 34:15
suggests [1] - 33:23
summary [65] - 3:15, 4:3, 4:16, 4:17, 4:23, 5:1, 5:5, 5:10, 5:17, 6:12, 6:13, 6:16, 6:19, 6:22, 7:3, 7:15, 8:22, 9:2, 9:6, 9:7, 9:9, 9:12, 9:15, 10:8, 11:11, 12:15, 12:24, 14:25, 15:17, 15:22, 16:24, 17:1, 17:17, 17:20, 18:9, 18:18, 18:19, 19:2, 20:9, 20:16, 20:25, 21:11, 21:12, 21:17, 21:20, 21:24, 21:25, 22:11, 22:20, 22:25, 23:10, 23:16, 24:12, 25:21, 25:23, 27:7, 30:13, 30:16, 31:20, 33:12, 34:24, 35:1, 35:5
summation [1] - 30:5
supplemental [1] - 6:23
support [1] - 20:24
supposedly [1] - 33:20
Supreme [4] - 9:22, 9:25, 11:24, 12:4
survive [1] - 14:17

Tanya [1] - 35:23
task [1] - 6:21
telephonic [1] - 8:7
tenants [1] - 10:21
test [1] - 6:15
testimony [1] - 27:2
THE [51] - 1:1, 1:12, 2:3, 2:15, 2:19, 3:1, 3:4, 12:19, 12:21, 13:1, 13:10, 13:15, 13:17, 13:23, 14:2, 14:5, 14:9, 21:15, 22:7, 23:4, 23:20, 25:6, 25:9, 25:15, 25:18, 26:5, 26:10, 27:10, 27:20, 28:9, 28:18, 28:21, 29:5, 29:7, 29:21, 30:6, 30:18, 30:25, 31:4, 31:15, 31:22, 31:24, 32:1, 32:4, 33:5, 35:7, 35:19, 35:24, 36:1, 38:1, 38:10
themselves [1] - 11:1, 27:2
theory [19] - 4:12, 4:13, 4:14, 4:18, 4:19, 4:22, 4:23, 5:2, 5:6, 5:12, 5:15, 5:18, 20:25, 21:2, 23:8, 23:12, 26:4
thereafter [4] - 4:21, 7:7
therefore [5] - 11:23, 12:9, 15:16, 19:20, 30:14
thereto [1] - 37:18
thinks [1] - 16:18
third [1] - 6:2
three [19] - 5:20, 6:14, 6:22, 7:5, 12:15, 12:25, 14:23, 14:25, 15:3, 15:17, 17:4, 21:16, 21:20, 24:6, 25:22, 26:7, 30:15, 38:9
three-step [2] - 5:20, 6:14
tied [2] - 12:2, 34:10
today [5] - 7:2, 7:23, 34:3
together [1] - 3:25
took [4] - 10:20, 20:8, 23:15, 34:16
total [1] - 19:14
track [1] - 16:16
tracked [1] - 16:17
tract [3] - 16:5, 16:10, 16:20
Transcript [1] - 1:25
TRANSCRIPT [1] - 1:10
transcript [1] - 39:11
transcription [1] - 1:25
Traupman [2] - 1:17, 2:12
treated [1] - 7:12
treatment [7] - 4:11, 4:18, 5:2, 25:11, 25:25, 33:13, 34:1
trial [18] - 7:12, 7:13, 9:10, 21:21, 24:9, 25:10, 25:14, 25:20, 25:24, 26:3, 26:6, 28:12, 36:15, 36:21, 36:22, 37:20, 37:24, 38:17
trials [4] - 36:16, 36:17, 37:22, 38:20
tried [2] - 18:5, 37:8
trier [1] - 18:10
true [2] - 19:19, 19:21
try [3] - 37:5, 37:7, 37:8
turning [1] - 9:21
turns [2] - 29:16, 33:24

**two** [27] - 6:14, 6:21, 7:5, 8:23, 10:21, 12:15, 12:25, 14:23, 14:25, 15:3, 15:17, 17:4, 17:10, 21:16, 25:22, 27:16, 27:17, 27:19, 28:8, 30:4, 30:15, 30:23, 31:14, 32:21, 33:7, 38:8
**types** [1] - 34:4

## U

**U.S** [2] - 3:24, 10:10
**U.S.C** [1] - 9:14
**under** [13] - 4:7, 4:11, 5:1, 5:5, 10:4, 10:22, 11:9, 11:25, 15:1, 26:16, 29:17, 36:2, 36:9
**undisputed** [4] - 7:13, 10:23, 15:16
**undocumented** [2] - 10:19, 19:14
**unfettered** [1] - 8:9
**UNITED** [2] - 1:1, 1:12
**United** [8] - 3:21, 4:1, 9:20, 11:1, 11:6, 11:14, 15:11, 32:24
**unless** [2] - 10:1, 37:4
**unmistakably** [1] - 22:11
**unnecessary** [8] - 9:16, 9:24, 10:2, 10:6, 10:12, 11:22, 34:8, 34:19
**unopposed** [1] - 17:8
**unreliable** [1] - 15:22
**up** [5] - 14:3, 23:15, 29:11, 34:16, 38:21
**urge** [1] - 37:1

## V

**vacated** [2] - 5:3, 22:12
**vain** [1] - 37:6
**valid** [2] - 12:17, 15:2
**validly** [1] - 29:18
**versus** [1] - 2:4
**VIA** [1] - 1:11
**vice** [1] - 2:11
**view** [3] - 15:12, 21:22, 30:8
**violates** [1] - 19:7
**violating** [2] - 10:16, 29:18
**violation** [1] - 11:15
**VIRGINIA** [1] - 1:1
**Virginia** [5] - 1:6, 19:10, 24:23, 36:16, 38:20

## W

**wait** [2] - 25:15, 36:13
**Wal** [1] - 25:4
**Wal-Mart** [1] - 25:4
**walk** [1] - 9:5
**wants** [1] - 11:5
**Waples** [6] - 2:4, 3:17, 10:23, 11:1, 11:8, 15:12
**WAPLES** [1] - 1:7
**Waples's** [3] - 5:10, 5:17, 23:10
**waste** [1] - 37:6
**weeks** [1] - 38:9

**weight** [1] - 28:24
**Weinberg** [2] - 18:3, 18:7
**Weinberg's** [1] - 17:25
**well-pled** [1] - 19:19
**whereas** [1] - 4:18
**wish** [1] - 32:6
**withstood** [1] - 4:11
**witness** [2] - 28:3, 38:7
**WL** [1] - 24:22
**words** [3] - 3:9, 19:2, 29:4
**worry** [1] - 38:17
**written** [1] - 29:10

## Y

**year** [3] - 36:17, 36:19, 38:2
**years** [1] - 3:16
**Yehuda** [1] - 1:16
**yourself** [1] - 8:13

## Z

**ZOOM** [1] - 1:11