# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, <br><br> Defendants. | Civil No.: 1:16-cv-563 (TSE) (TCB) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF IVAN YACUB, ESQ.**

## INTRODUCTION

Plaintiffs identified Mr. Ivan Yacub, Esq., an immigration attorney, as an expert witness. According to his declaration, which outlined the opinions he would provide at trial, Mr. Yacub would provide opinions regarding (1) Individual Taxpayer Identification Numbers ("ITINs"), specifically how to obtain them, and (2) whether U.S. Visas and I-94 documents were good evidence of legal presence—Mr. Yacub opined that they were not. Neither of these opinions are relevant and would waste valuable trial time.

Plaintiffs alleged in their Complaint that Defendants' Policy required (1) an 'original social security card' or, if unavailable, an 'original Passport, original U.S. Visa, and original Arrival/Departure Form (I-94 or I-94W).'" Through Mr. Yacub, Plaintiffs intend to present evidence that a U.S. Visa and an I-94 form are not good evidence of legal presence. However, Plaintiffs' allegations mischaracterize Defendants' Policy. Defendants' Policy permits tenants and occupants to provide any document proving legal presence, not just visas and I-94 forms. Defendants' employees, including Defendant's corporate designee, consistently and repeatedly testified that this is Defendants' Policy. Likewise, Defendants' internal documents demonstrate that Defendants' Policy accepts any document providing proof of legal presence. Accordingly, Mr. Yacub's opinions regarding visas and I-94 forms, and whether they are good evidence of legal presence, are based on a mischaracterization of Defendants' Policy and are irrelevant.

Mr. Yacub's remaining opinions regarding ITINs, specifically how to obtain an ITIN, are rendered irrelevant by the parties' Joint Stipulation of Uncontested Facts, (Dkt. 180), which was re-adopted by the parties. (Dkt. 313.) There is no dispute between the parties on how a person obtains an ITIN. *See* Dkt. 180 at Facts 15 & 16. Mr. Yacub's opinions regarding ITINs are therefore irrelevant and would waste the Court's and the jury's time at trial.

This Court therefore should exclude Mr. Yacub as a witness pursuant to Rules 401 and 403 of the Federal Rules of Evidence.

## BACKGROUND

On Plaintiffs' pretrial disclosures, Plaintiff identified Ivan Yacub, Esq. as a witness they may call. Dkt. 312 at 3. During discovery, Plaintiffs identified Mr. Yacub, an immigration attorney, as an expert witness. His declaration is attached as **Exhibit 1** and the declaration identifies the opinions that Mr. Yacub may provide at trial should he be called as a witness. He provides opinions on two topics: ITINs, Exhibit 1 ¶¶ 4-9, and U.S. Visas and I-94s and whether they are good evidence of legal presence, *id.* ¶¶ 10-25. The crux of his opinions regarding ITINS is the following:

> To get an ITIN, an individual must fill out an application (form W-7) and attach a federal income tax return and either original or certified copies of identification documents. "Identification documents" can include a foreign passport, and in fact, a foreign passport is the only stand-alone document that the IRS accepts to prove both foreign status and identity … In issuing an ITIN, the IRIS does not accept a photocopy of a foreign passport; rather, it requires the applicant to either submit the actual passport, or bring the passport to a designated office for inspection.

*Id.* ¶ 8. He also offers opinions regarding U.S. Visas and I-94 documents, *id.* ¶¶ 10-23. He then states that he has reviewed various documents allegedly stating the policies of the defendants in this case. *Id.* ¶ 24. The crux of his opinions regarding visas and I-94 documents is that "[t]he documents that defendants have at various times purported to require are not good evidence of legal presence." *Id.* ¶ 25. He states that, specifically, visas and I-94s not good indicators of a person's legal presence in the United States. *Id.*

Plaintiffs presumably identified Mr. Yacub to testify regarding steps 2 and 3 of three-step burden-shifting standard articulated in *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015). *Inclusive Communities* held that step 2 is satisfied if a "valid interest" is served by the policy and cautioned courts not to substitute their judgment

for that of a private housing provider. The Court reasoned that "[a]n important and appropriate means of ensuring that disparate-impact liability is properly limited is to give housing authorities and private developers *leeway* to state and explain the *valid interest* served by their policies." *Inclusive Communities*, 576 U.S. at 541 (emphasis added). The step-3 issues—as framed by the Plaintiffs in their Complaint—are whether ITINs and foreign passports provide the same reliability and function as the documents requested by the Policy.[1] *See* Complaint ¶¶ 31-33. Plaintiffs alleged that Defendants' Policy requires "either (1) an 'original social security card' or, if unavailable, an 'original Passport, original U.S. Visa, and original Arrival/Departure Form (I-94 or I-94W).'" *Id*. ¶ 26.

Plaintiffs presumably identified Mr. Yacub to provide testimony in support of their allegation that Defendants do not have a valid interest for the Policy at step 2, *see id*. ¶ 32, or that, at step 3, a policy which requires only ITINs and foreign passports is a policy that can achieve those interests with a less discriminatory effect. *Id*. ¶ 31 ("As a form of identification, the ITIN is as reliable and precise as a Social Security number.").

On February 2, 2017, the parties agreed to a Joint Stipulation of Uncontested Facts (Dkt. 180), which they adopted readopted on December 4, 2020. (Dkt. 313.) In pertinent part, the parties agreed to Uncontested Facts 15 and 16, which are the following:

15. A person can acquire an Individual Taxpayer Identification Number ("ITIN") if a person sends to the IRS: a completed Form W-7 with a valid passport and a copy of a tax return.

16. In issuing an ITIN, the IRS does not accept a photocopy of a foreign passport; rather, it requires the applicant either to submit the actual passport, or bring the passport to a designated office for inspection. No in-person interview is required of the applicant.

---

[1] Plaintiffs are bound by these allegations. *See Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998).

## LEGAL STANDARD

While the Federal Rules of Evidence do not specifically provide for motions in limine, their use has evolved under the federal courts' inherent authority to manage trials. *United States v. Verges*, No. 1:13cr222 (JCC), 2014 WL 559573, *2 (E.D. Va. Feb. 12, 2014) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider. *Id.* (citing *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)). Such motions serve important gatekeeping functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to the jury. *Id.* (citing *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

## ARGUMENT

Mr. Yacub should be excluded as a witness because his opinions are not relevant and would waste the Court's and the jury's time at trial. Pursuant to FED. R. EVID. 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Even if evidence is relevant, pursuant to FED. R. EVID. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Mr. Yacub provides opinions in two areas: (1) the process to obtain ITINs, Exhibit 1 ¶ 8, and (2) whether visas and I-94 documents are good evidence of legal presence, *id.* ¶ 25. Mr. Yacub's opinions regarding the process to obtain an ITIN is rendered irrelevant given the parties' stipulation of uncontested facts regarding ITINs. Dkt. 180 at Facts 15 & 16. The parties stipulated

facts 15 and 16 provide the same information that Mr. Yacub would provide in his opinion regarding ITINs.

In addition, Mr. Yacub's opinions regarding whether visas and I-94s are good evidence of legal presence are not relevant because Defendants' Policy does not only require a passport, a visa and an I-94 as Plaintiffs allege. Plaintiffs have continually mischaracterized Defendants' Policy as such. Rather, Defendants' Policy requires proof of legal status through various documents, not just visa and I-94s as Plaintiffs alleged in their Complaint. Defendants' Resident Selection and Occupancy Standards, Dkt. 151 at Exs. 9-10, which apply to the Park, *id.* at Ex. 20 (Jones Decl.), identify a number of other documents that are proof of legal residency including a permanent resident card, temporary resident card and employment authorization card. *See* Dkt. 151, Ex. 9 at 8 (outlining documents accepted); Dkt. 151, Ex. 10 at 11 (outlining documents accepted). Both of these documents contain a detailed list of "visa classifications" and identify "verification document required." Dkt. 151, Ex. 9 at 9; Dkt. 151, Ex. 10 at 12. Additionally, the Consumer Report & CoreLogic SafeRent and Training Manual also identifies various documents that will be accepted to establish legal residence and includes samples of such documents. Dkt. 151, Ex. 11 at 50-59 (listing documents proving legal presence); *id.* at 62-66 (listing different visa types).

The Consumer Reports & Core Logic SafeRent and Training Manual dated January 24, 2011 (Dkt. 138, Ex. 43 and Dkt. 151, Ex. 11), states on page 21 that if an applicant cannot demonstrate legal status "the application must be disapproved." The Resident Selection and Occupancy Standards dated February 19, 2013 states on page 7 that "all applicants must be legally eligible to live in the U.S."[2] Dkt. 151, Ex. 9 at 7. The Resident Selection and Occupancy Standards

---

[2] In his declaration, Mr. Jones states that these standards applied to the Park. Dkt. 151, Ex. 20.

dated May 8, 2015 states at page 9 that "all applicants must be legally eligible to live in the U.S." Dkt. 151, Ex. 10 at 9.

Consistent with these documents, Mark Jones, the designee for the Defendants, testified that the Defendants would accept any documents issued by the United States government showing legal presence in the United States. Dkt. 151, Ex. 6 at 87-88; 224:16-20. Josephine Giambanco, the manager for the Park, also testified that the Defendants accept any document demonstrating legal presence in the United States. Dkt. 151, Ex. 7 at 29:24-31:20; 63:18-64:5. Carolina Easton, the quality control manager for A.J. Dwoskin & Associates, Inc., *repeatedly* testified that Defendants would accept any document demonstrating legal presence in the United States. Dkt. 151, Ex. 8 at 30:21-32:7; 47:9-14; 57:18-21; 96:5-12; 125:3-11. The April 22, 2016 Future Resident and Information Guide for the Park, states that "[a]pplicants who are not U.S. citizens must also provide immigration documentation to prove legal presence in the United States." Pls.' Tr. Ex. 85 at 2 (attached hereto as **Exhibit 2**). Plaintiffs' allegation that the Defendants only accept a limited number of documents, such as requiring U.S. Visas and I-94s to establish legal presence is flat wrong.

Mr. Yacub's opinions regarding whether Visas and I-94s are good evidence of legal presence are simply not relevant and will waste the Court's and the jury's time at trial. These opinions are only relevant if Plaintiffs' mischaracterization of Defendants' Policy is accepted, which it should not be. Because Mr. Yacub's opinions regarding ITINs are rendered irrelevant in light of the undisputed facts and his opinions regarding visas and I-94s are premised on a mischaracterization of Defendants' Policy, Mr. Yacub should be excluded as a witness. His opinions will not help make a fact more or less probable that it would be without his testimony.

Instead, his opinions will waste the Court's and the jury's time at trial. Accordingly, Mr. Yacub's testimony should be excluded pursuant to Rules 401 and 403 of the Federal Rules of Evidence.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court to grant their Motion *in Limine* and enter an Order: (1) excluding the testimony of Ivan Yacub, Esq.; and (2) for such other relief as is just and proper.

Dated:  Jan. 11, 2021                              Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT LIMITED
PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of January, 2021, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*