**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, <br><br> Defendants. | Civil No.: 1:16-cv-563 (TSE) (TCB) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF LEASE MATERIALS AND PURPORTED "EVICTION" CORRESPONDENCE**

## INTRODUCTION

Plaintiffs should be prohibited from introducing any evidence or argument relating to (1) Plaintiffs' lease materials and related documents; (2) purported "eviction"[1] related correspondence; and (3) related testimony. These documents (and related testimony) are not relevant given the undisputed facts and because the only claim that remains for trial is Plaintiffs' *disparate impact* Fair Housing Act ("FHA") claim, which is not an intentional discrimination claim.

Leasing documents and purported "eviction" correspondence are not relevant given the undisputed facts. There is no dispute that the female Plaintiffs lived with the male Plaintiffs at the Park, that the male Plaintiffs were able to and did enter into leases for the Park, that the female Plaintiffs are not legally present in the United States, that the female Plaintiffs could not comply with Defendants' Policy because they are illegally present in the United States, that Defendants enforced their Policy as to Plaintiffs, and the Plaintiffs subsequently vacated the Park.

Prior to their appeal, Plaintiffs agreed to dismiss their claims for alleged violations of Virginia's Manufactured Home Lot Rental Act ("MHLRA") (Count III) and their breach of contract claims for alleged violations of their leases (Count V). And, Plaintiffs did not appeal the dismissal of their disparate treatment FHA claim or their intentional discrimination claim pursuant to 42 U.S.C. § 1981 (Count IV). As they have unequivocally admitted, Plaintiffs are not proceeding to trial on a disparate treatment FHA claim. Accordingly, the documents and related testimony that are the subject of this motion are not relevant. Moreover, for many documents, the documents and related testimony are not only irrelevant but present a danger of unfair prejudice and jury confusion, especially given that there are no allegations of intentional discrimination at issue.

---

[1] Plaintiffs were not evicted from Waples Mobile Home Park (the "Park").

As for the many lease documents that Plaintiffs are attempting to introduce as evidence, as noted above, there is no dispute between the parties on the underlying facts. In fact, this Court already found these facts to be undisputed upon the summary judgment record. Accordingly, Plaintiffs' lease materials—such as their leases and related addenda—are simply irrelevant to Plaintiffs' disparate impact claim and would waste this Court's and the jury's time at trial.

As for the purported "eviction" related correspondence, as noted, Plaintiffs were not evicted from the Park. Setting Plaintiffs' nomenclature of the category of these documents aside, this correspondence is likewise irrelevant given the undisputed facts and will waste the Court's and the jury's time. In addition, the danger of unfair prejudice and jury confusion that would result from the introduction of these documents into evidence substantially outweighs any probative value of these documents. Plaintiffs are only proceeding to trial on a disparate impact claim and not an intentional discrimination claim. Purported "eviction" correspondence will likely confuse or mislead the jury by introducing an implication of intentional discrimination against Plaintiffs.

Accordingly, pursuant to FED. R. EVID. 403, Defendants move to exclude (1) Plaintiffs' lease materials and related documents; (2) purported "eviction" related correspondence; and (3) any testimony related thereto. Such documents are unnecessary and irrelevant, and in many cases present a danger of unfair prejudice and confusion of issues that far outweighs any probative value of the documents and related testimony.

## **BACKGROUND**

On April 18, 2017, this Court dismissed Plaintiffs' FHA claim (Count I), their claim for violation of Virginia's Fair Housing Law (Count II), and their intentional discrimination claim

- 3 -

pursuant to 42 U.S.C. § 1981 (Count IV).[2] Dkt. 191. Prior to their appeal, Plaintiffs agreed to dismiss, with prejudice, their claims for alleged violations of the MHLRA (Count III) and their breach of contract claims for alleged violations of their leases (Count V). Dkt. 197. Plaintiffs' Count III was based on allegations that month-to-month leases violated the MHLRA. Compl. ¶ 126. Plaintiffs' Count IV was based on allegations of intentional discrimination—that is Plaintiffs alleged that Defendants intentionally discriminated against Plaintiffs through their acts, policies and procedures. *Id*. ¶ 136. Count V was based on allegations that Defendants breached Plaintiffs' lease contracts by failing to renew the leases on the same terms. *Id.* ¶ 141.

Plaintiffs' sole issue on appeal was therefore whether this Court "err[ed] in concluding, as a matter of law, that the Families were unable to state an FHA disparate impact claim because the Policy was not a 'remnant[] of the country's tragic and regrettable history of state-sanctioned intentional discrimination?'" Pls.' Brief to the Fourth Circuit (Dkt. 26), Case No. 17-1723. In a 2-1 decision, the Fourth Circuit reversed this Court's dismissal of Plaintiffs' disparate impact claim at the motion to dismiss stage and remanded the case "to allow [this Court] to consider the cross-motions for summary judgment under Plaintiffs' disparate-impact theory of liability in a manner consistent with this opinion." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 433 (4th Cir. 2018). Importantly, the Fourth Circuit noted that Plaintiffs did not argue that their FHA claim should have survived summary judgment based on a disparate treatment theory. *Reyes*, 903 F.3d at 422 ("Plaintiffs do not argue that the FHA claim should have survived the motion for summary judgment under a disparate-treatment theory of liability and, thus, we decline to address

---

[2] At the same time, the Court also denied Plaintiffs' cross-motion for summary judgment and held that the matter should proceed to trial on Plaintiffs' claim for alleged violation of the MHLRA (Count III) and Plaintiffs' breach of contract claim for alleged violations of their leases (Count V). Dkt. 191. Plaintiffs had originally filed a six-count Complaint, but Count VI had been previously dismissed with prejudice on July 22, 2016. Dkt. 34.

this theory of liability for Plaintiffs' FHA claim."). In fact, as Plaintiffs told the Fourth Circuit—despite what they previously told this Court—Plaintiffs "did not allege that Waples violated the FHA by intentionally discriminating against Latino individuals." Pls.' Brief (Dkt. 26), Case No. 17-1723. And, at a Sept. 23, 2020 hearing on Defendants' Motion to Clarify and/or Reconsider the Court's August 19, 2020 Summary Judgment Order (Dkt. 284), Plaintiffs' counsel unequivocally stated that "Plaintiffs contend that we should only be proceeding to trial on the disparate impact theory of the Fair Housing Act claim." **Exhibit 1** at 26:2-4 (Sept. 23, 2020 Transcript). Accordingly, there are no allegations of intentional discrimination remaining.

With only their disparate impact FHA claim set for trial, Plaintiffs have identified 64 trial exhibits relating to Plaintiffs' leases, including Plaintiffs' lease applications, Plaintiffs' leases, the Park's rules and regulations attached and made part of the leases, utility addendums attached to the leases, renewal letters, and home inspection reports by Defendants. **Exhibit 2** (Dkt. 321[3] at Pls.' Exs. 8-72).[4] Plaintiffs also identified resident ledgers for the male Plaintiffs. **Exhibit 3** (Dkt. 321 at Pls.' Exs. 98-101). Plaintiffs have also identified 15 exhibits related to purported "eviction" related correspondence. **Exhibit 4** (Dkt. 321 at Pls.' Exs. 151-166). These exhibits, and testimony related thereto, are irrelevant given the undisputed facts and that Plaintiffs are proceeding to trial on only a disparate impact claim. Moreover, many of these documents pose a danger of unfair

---

[3] Plaintiffs' pretrial exhibit list (Dkt. 312-1) is not numbered, but the actual exhibits that Plaintiffs exchanged with Defendants are numbered. The numbering used in Defendants' Objections to Plaintiffs' exhibits (Dkt. 321) reflect the numbering used by Plaintiffs on their actual exhibits exchanged with Defendants' counsel.

[4] Within these exhibits, Plaintiffs also identified a lease agreement between Mr. Bolaños and his wife at a separate mobile home park, (Pls.' Ex. 37), a background check for Mrs. Reyes (Pls.' Ex. 61), screening reports for the male Plaintiffs (Pls.' Exs. 62-65), and a handwritten note from Mr. Moya (Pls.' Ex. 71).

prejudice and confusion of issues that substantially outweigh any probative value of these documents.

## LEGAL STANDARD

While the Federal Rules of Evidence do not specifically provide for motions in limine, their use has evolved under the federal courts' inherent authority to manage trials. *United States v. Verges*, No. 1:13cr222 (JCC), 2014 WL 559573, *2 (E.D. Va. Feb. 12, 2014) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider. *Id*. (citing *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)). Such motions serve important gatekeeping functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to the jury. *Id*. (citing *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

## ARGUMENT

Defendants move to exclude evidence related to Plaintiffs' lease materials and purported "eviction" related correspondence as irrelevant. Moreover, many documents pose a danger of unfair prejudice and confusion of issues. Plaintiffs have identified 64 trial exhibits relating to Plaintiffs' leases, including Plaintiffs' lease applications, Plaintiffs' leases, the Park's rules and regulations attached and made part of the leases, utility addendums attached to the leases, renewal letters, and home inspection reports by Defendants. **Exhibit 2** (Dkt. 321 at Pls.' Exs. 8-72). Plaintiffs also identified resident ledgers for the male Plaintiffs as trial exhibits. **Exhibit 3** (Dkt. 321 at Pls.' Exs. 98-101). Plaintiffs have also identified 15 trial exhibits related to purported "eviction" related correspondence. **Exhibit 4** (Pls.' Exs. 151-166). These documents and any

testimony related thereto are irrelevant and present a danger of unfair prejudice and confusion of issues in light of the undisputed facts.

Pursuant to FED. R. EVID. 403, this Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

In the parties' cross-motions for summary judgment (Dkts. 97, 137), the parties set forth statements and counter-statements of proposed undisputed facts in their supporting memorandums and replies (Dkts. 98, 138, 151, 157). In considering these cross-motions and the summary judgment record and ultimately granting Defendants' motion for summary judgment before Plaintiffs' appeal, this Court noted many undisputed material facts. Dkt. 190 at 2-6. Of these, the following are relevant to this motion:

- Each plaintiff is an adult Latino of Salvadorian or Bolivian national origin who currently resides in Virginia. None of the plaintiffs is a United States citizen.

- The female plaintiffs entered the United States illegally and thus are unlawfully present in the country.

- The four male plaintiffs were able to enter leases at the Park. Their wives, the four female plaintiffs, were not signatories on the leases.

- The lease application forms required the male plaintiffs to list all adult occupants of the male plaintiffs' mobile homes.

- Nevertheless, the female plaintiffs lived with their husbands in the Park, which is located within the Eastern District of Virginia.

Dkt. 190 at 2-3. In addition, the Court found that "[b]ecause the female plaintiffs entered the United States illegally, they cannot satisfy the Policy." *Id*. at 4. Moreover, the parties have stipulated that the Plaintiffs lived at the Park, Dkts. 180, 313, and the female Plaintiffs lived with their husbands at the Park. Dkt. 180 at I(A)(6). In light of these undisputed facts, the following should be

excluded: (1) Plaintiffs' lease materials; (2) purported "eviction" correspondence; and (3) any testimony related thereto.

## I. PLAINTIFFS' LEASE MATERIALS SHOULD BE EXCLUDED

Plaintiffs' leases and related documents, such as lease addendums or renewal letters, should be excluded because these exhibits and related testimony are irrelevant, unnecessary, and will waste the Court's and the jury's time at trial. As the Court already found, there is no dispute between the parties on the aforementioned facts. The parties agree that the male Plaintiffs had leases at the Park, the female Plaintiffs lived with their husbands at the Park, and the female Plaintiffs could not comply with the Policy because they entered the United States illegally. Accordingly, Plaintiffs' trial exhibits relating to Plaintiffs' applications to live at the Park, their leases at the Park, their lease addendums, signed Park rules, and renewal letters are irrelevant and unnecessary. Therefore Plaintiffs' trial exhibits 8 – 36, 38 – 60, 66 – 68 within the attached Exhibit 2 should be excluded because they—and testimony related thereto—will only cause undue delay, waste trial time, and result the needless introduction of cumulative evidence. For the same reasons, the male Plaintiffs' resident ledgers in the attached Exhibit 3 should be excluded. This Court should not expend valuable resources at trial—and waste the jury's time—hearing testimony and reviewing exhibits which relate to undisputed facts and thus are irrelevant to Plaintiffs' disparate impact claim—the only claim to be resolved at trial.

Within Plaintiffs' lease materials (Exhibit 2) (Pls.' Exs. 8-72), Plaintiffs also seek to introduce a lease agreement between Mr. Bolaños and his wife and a separate mobile home park in Northern Virginia as well as the rules for that park. (Exhibit 2) (Pls.' Exs. 37 and 55). Plaintiffs also seek to introduce a criminal background check for Mrs. Reyes, *id*. at Ex. 61; resident screening

reports and Core Logic reports[5] for the male Plaintiffs, *id*. at Exs. 62-65; mobile home inspection reports for Mr. Saravia Cruz, Mr. Bolaños, and Mr. Moya, *id*. at Exs. 69, 70, 72; and a handwritten note from Mr. Moya regarding the renewal of his lease, *id*. at Ex. 71. These documents are either irrelevant and/or present a serious danger of unfair prejudice to Defendants and confusion of the issues and thus should be excluded.

Mr. Bolaños and his wife's lease agreement with a completely distinct mobile home park in Northern Virginia, and the rules for that park have no relevance to Plaintiffs' disparate impact claim. Exhibit 2 (Pls.' Exs. 37 and 55). In order to prove their disparate impact claim, Plaintiffs must present a prima facie case of disparate impact by presenting evidence of a policy with a robust causal connection to a disparate impact. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542 (2015) ("A robust causality requirement ensures that '[r]acial imbalance ... does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create.") (citation omitted). In addition, as part of their prima face case, Plaintiffs must present evidence that Defendants' Policy is not an "artificial, arbitrary, and unnecessary barrier[]" to achieve a valid interest. *Id*. at 543 ("Governmental or private policies are not contrary to the disparate-impact requirement unless they are "artificial, arbitrary, and unnecessary barriers."). The burden then shifts to Defendants to be given "leeway" to articulate a "valid interest served by their policies." *Id*. at 541 ("[Defendants] must be allowed to maintain a policy if they can prove it is necessary to achieve valid interest."). Thereafter, the burden shifts back to Plaintiffs to prove that a less discriminatory policy exists that would serve the defendant's interest or interests. *Id*. at 527-28. Mr. Bolaños and his wife's lease agreement with a separate mobile home park and the rules for

---

[5] These are lease underwriting reports.

- 9 -

that park are not relevant to Plaintiffs' prima facie case or their rebuttal case. And, whether or not a separate mobile home park may permit undocumented immigrants to live at their park has no bearing on whether Defendants' interests served by their Policy are valid.

Mrs. Reyes' background check is likewise not relevant to Plaintiffs' disparate impact claim. Exhibit 2 (Pls.' Ex. 61). One interest served by Defendants' Policy is to ensure that a background check is run on the correct identity. The separate background check provided for Mrs. Reyes provides no information about what documents were required to verify identity. Nor have Plaintiffs identified any witness to authenticate the background check or explain the identity verification process for that background check. It is an inadmissible document irrelevant to Plaintiffs' claims. In addition, the resident screening reports and Core Logic reports for the male Plaintiffs have no relevance to Plaintiffs' disparate impact claim. *Id*. at Exs. 62-65. It is undisputed that Defendants leased to the male Plaintiffs. The underwriting decisions for the male Plaintiffs are therefore not relevant to Plaintiffs' claim. Rather, Plaintiffs' disparate impact claim is based on Defendants' Policy, which prohibits the undocumented female Plaintiffs from living at the Park because they cannot provide the documents required by the Policy. Also, the mobile home inspection reports for Plaintiffs' homes at the Park, *id.* at Exs. 69, 70, 72, and Mr. Moya's handwritten note, *id.* at Ex. 71, have no relevance to Plaintiffs' disparate impact claim. Again, it is undisputed that the female Plaintiffs lived with their husbands at the Park and it is undisputed that the female Plaintiffs could not comply with the Policy. Therefore, inspection reports of Plaintiffs' mobile homes have no bearing on Plaintiffs' claims. As discussed above, *supra* at Background, the only claim to be resolved at trial is Plaintiffs' disparate impact claim. There are no allegations of intentional discrimination to be adjudicated at trial—all such allegations have been dismissed. Evidence of inspections of Plaintiffs' homes could only be introduced to

engender—improperly—sympathy for Plaintiffs and not for any relevance to Plaintiffs' *disparate impact* claim, which does not involve any allegations of intentional discrimination. The introduction of such evidence could also improperly suggest that Defendants engaged in intentional discriminatory actions against the Plaintiffs. Thus, these documents present a substantial danger of unfair prejudice and confusion of issues. For the same reasons, Mr. Moya's handwritten note attempting to renew his lease is simply not relevant to Plaintiffs' claim and presents a substantial danger of unfair prejudice and confusion of issues. There is no dispute that Mr. Moya's wife could not comply with the Policy and there are no allegations of intentional discrimination against Mr. Moya or his wife set for trial.

Accordingly, the exhibits attached as Exhibits 2 and 3, and related testimony, should be excluded.

## II. PURPORTED "EVICTION" RELATED CORRESPONDENCE SHOULD BE EXCLUDED

Plaintiffs also seek to introduce evidence of purported "eviction" related correspondence. Exhibit 4 (Pls.' Exs. 151-166).[6] These exhibits include violation letters from Defendants to the Plaintiffs for having unauthorized occupants, a letter informing residents of a month-to-month surcharge, letters of non-renewals, a 21/30 notice to Mr. Reyes, a 60 day termination notice, and notices of acceptance of rent with reservation. *Id*. at Exs. 151-154, 156-158, 164-166. These exhibits and testimony related thereto are not relevant to Plaintiffs' disparate impact claim. As noted above, it is undisputed that the female Plaintiffs lived with their husbands at the Park, that the female Plaintiffs could not comply with the Policy, and that the Defendants enforced the Policy as to the Plaintiffs.

---

[6] As noted above, the Plaintiffs were never evicted from the Park.

- 11 -

Plaintiffs' disparate treatment and intentional discrimination claims have been dismissed as have their claims for breach of their leases or their claim that Defendants allegedly violated the MHLRA through the imposition of month-to-month leases. Accordingly, in light of these undisputed facts, letters to the Plaintiffs documenting Defendants' enforcement of the Policy or letters regarding month-to-month leases are not relevant to Plaintiffs' only remaining claim set for trial—their disparate impact claim.

In addition, this evidence presents a substantial danger of unfair prejudice. It is evident that Plaintiffs hope that the introduction of these documents into evidence (with related testimony) will engender sympathy for the Plaintiffs by describing Defendants enforcement of the Policy against Plaintiffs. However, there is no dispute that Defendants enforced the Policy against Plaintiffs. And, importantly, there are no intentional discrimination claims remaining in this case. Plaintiffs should not be permitted to introduce evidence to imply that Defendants engaged in intentional discriminatory actions against the Plaintiffs. Accordingly, the danger of unfair prejudice from these documents substantially outweighs any probative value that they might have.

Moreover, the documents within Exhibit 3 also include a letter from an organization called VOICE to Mr. Dwoskin, *id*. at Ex. 159; a letter from a Virginia state senator and member of Virginia's house of delegates to Mr. Dean, general counsel for A.J. Dwoskin & Associates, Inc., *id*. at Ex. 160; audio files recorded by Mr. Bolaños and his wife, *id*. at Exs. 161-162; and an email between Plaintiffs' counsel and a third party that predates the litigation. *id*. at Ex. 163. None of these documents are relevant to Plaintiffs' claims and they likewise present a substantial danger of unfair prejudice to Defendants.

The letter from VOICE to Mr. Dwoskin contains a third-party organization's views on Defendants' Policy and is simply not relevant to Plaintiffs' claims. Likewise, the letter from the

Virginia state senator and delegate contains their views on the propriety of Defendants' Policy and is not relevant to Plaintiffs' disparate impact claim. The audio files recorded by Mr. Bolaños and his wife are recordings made by them during meetings with Park employees about Mr. Bolaños's lease and his compliance with his lease. Bolaños Dep Tr. at 93-103 (**Exhibit 5**). But, as noted above, there is no dispute between the parties that Mr. Bolaños and his wife lived at the Park, that Defendants enforced the Policy as to Mr. Bolaños, and that Mr. Bolaños's wife could not comply with the Policy. Accordingly, these recordings are simply irrelevant, unnecessary, and will waste the Court's and the jury's time. Finally, the Nov. 20, 2015 email with Plaintiffs' counsel and a third-party which predates the litigation has no relevance to Plaintiffs' claims. Plaintiffs' counsel cannot testify as a witness, and the third party listed on the email, Mr. Franzen, is not identified as a witness on Plaintiffs' pre-trial witness list. Dkt. 312.

These documents and related testimony also present a substantial danger of unfair prejudice to Defendants. Lacking any relevance, these documents are meant to imply that Defendants' Policy is somehow improper. For example, if a jury views VOICE's letter or the letter from the Virginia senator or delegate it may credit their views on Defendant's Policy even though their views have no bearing on the elements of Plaintiffs' disparate impact claim. Third party's opinions on Defendants' Policy have no bearing on Plaintiffs' claim especially when those third parties have not been identified as witnesses. Accordingly, these documents and any testimony related thereto should be excluded.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court to grant their Motion *in Limine* and enter an Order: (1) excluding Plaintiffs' trial Exhibits 8-72 (attached hereto as Exhibit 2); (2) excluding Plaintiffs' trial Exhibits 98-101 (attached here to as Exhibit 3); (3)

excluding Plaintiffs' trial Exhibits 151-166 (attached hereto as Exhibit 4); (4) excluding any testimony related to these documents; and (5) for such other relief as is just and proper.

Dated:  Jan. 11, 2021

Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, WAPLES PROJECT LIMITED PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of January, 2021, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*