# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, <br><br> Defendants. | Civil No.: 1:16-cv-563 (TSE) (TCB) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF DAMAGES**

**INTRODUCTION**

Plaintiffs are only proceeding to trial on allegations of unintentional discrimination. All of Plaintiffs' intentional discrimination claims have been dismissed. Plaintiffs' counsel has unequivocally stated that Plaintiffs are proceeding to trial *only* on Plaintiffs' disparate impact claim under the Fair Housing Act ("FHA"). Accordingly, Plaintiffs should not be permitted to present evidence or argument on their claims for compensatory or punitive damages. Claims of unintentional discrimination do not support either such, and in regards to damages, Congress has evinced an intent to treat disparate impact discrimination claims differently than disparate treatment claims, which necessarily involve allegations of intentional discrimination.

Alternatively, should this Court permit Plaintiffs to present evidence at trial in support of their claims for compensatory and punitive damages, this Court should bifurcate the issues of liability and damages at trial to avoid prejudice to Defendants. Plaintiffs' expected testimony and other such evidence relating to these damages claims will likely be emotionally charged and lead to the jury improperly confusing issues of liability and damages. Moreover, such testimony and other such evidence is irrelevant to Plaintiffs' disparate impact claim under the burden shifting standard articulated in *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) as the underlying facts regarding Plaintiffs' leases at the Park are largely undisputed. In addition, bifurcation is in the interests of judicial economy because should a jury find that Defendants did not violate the FHA, the Court will have avoided needless testimony regarding damages. Even if a jury finds that Defendants did violate the FHA (they should not), bifurcation will avoid the needless confusion of issues of liability and damages.

## BACKGROUND

On April 18, 2017, this Court dismissed Plaintiffs' FHA claim (Count I), their claim for violation of Virginia's Fair Housing Law (Count II), and their intentional discrimination claim pursuant to 42 U.S.C. § 1981 (Count IV).[1] Dkt. 191. Prior to their appeal, Plaintiffs agreed to dismiss, with prejudice, their claims for alleged violations of Virginia's Manufactured Home Lot Rental Act (Count III) and their breach of contract claims for alleged violations of their leases (Count V). Dkt. 197. Plaintiffs' Count III was based on allegations that month-to-month leases violated the Manufactured Home Lot Rental Act. Compl. ¶ 126. Plaintiffs' Count IV was based on allegations of intentional discrimination—that is Plaintiffs alleged that Defendants' intentionally discriminated against Plaintiffs through their acts, policies and procedures. *Id.* ¶ 136. Count V was based on allegations that Defendants breached Plaintiffs' lease contracts by failing to renew the leases on the same terms. *Id.* ¶ 141. Plaintiffs seek equitable relief, Compl. at 30, compensatory and punitive damages, *id.* at 31, as well as attorneys' fees, *id.*

Plaintiffs' sole issue on appeal was therefore whether this Court "err[ed] in concluding, as a matter of law, that the Families were unable to state an FHA disparate impact claim because the Policy was not a 'remnant[] of the country's tragic and regrettable history of state-sanctioned intentional discrimination?'" Pls.' Brief to the Fourth Circuit (Dkt. 26), Case No. 17-1723. In a 2-1 decision, the Fourth Circuit reversed this Court's dismissal of Plaintiffs' disparate impact claim at the motion to dismiss stage and remanded the case "to allow [this Court] to consider the cross-motions for summary judgment under Plaintiffs' disparate-impact theory of liability in a manner

---

[1] The Court also denied Plaintiffs' cross-motion for summary judgment and held that the matter should proceed to trial on Plaintiffs' claim for alleged violation of Virginia's MHLRA (Count III) and Plaintiffs' breach of contract claim for alleged violations of their leases (Count V). Dkt. 191. Plaintiffs had originally filed a six-count Complaint, but Count VI had been previously dismissed with prejudice on July 22, 2016. Dkt. 34.

consistent with this opinion." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 433 (4th Cir. 2018). Importantly, the Fourth Circuit noted that Plaintiffs did not argue that their FHA claim should have survived summary judgment based on a disparate treatment theory. *Reyes*, 903 F.3d at 422 ("Plaintiffs do not argue that the FHA claim should have survived the motion for summary judgment under a disparate-treatment theory of liability and, thus, we decline to address this theory of liability for Plaintiffs' FHA claim."). In fact, as Plaintiffs told the Fourth Circuit—despite what they previously told this Court—Plaintiffs "did not allege that Waples violated the FHA by intentionally discriminating against Latino individuals." Pls.' Brief (Dkt. 26), Case No. 17-1723. And, at a Sept. 23, 2020 hearing on Defendants' Motion to Clarify and/or Reconsider the Court's August 19, 2020 Summary Judgment Order (Dkt. 284), Plaintiffs' counsel unequivocally stated that "Plaintiffs contend that we should only be proceeding to trial on the disparate impact theory of the Fair Housing Act claim." **Exhibit 1** at 26:2-4 (Sept. 23, 2020 Transcript). Accordingly, there are no allegations of intentional discrimination remaining.

## LEGAL STANDARD

While the Federal Rules of Evidence do not specifically provide for motions in limine, their use has evolved under the federal courts' inherent authority to manage trials. *United States v. Verges*, No. 1:13cr222 (JCC), 2014 WL 559573, *2 (E.D. Va. Feb. 12, 2014) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider. *Id*. (citing *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)). Such motions serve important gatekeeping functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to

the jury. *Id.* (citing *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

## ARGUMENT

I. **PLAINTIFFS SHOULD NOT BE PERMITTED TO PRESENT EVIDENCE OR ARGUMENT IN SUPPORT OF THEIR CLAIMS FOR COMPENSATORY OR PUNITIVE DAMAGES BECAUSE THEY ARE PROCEEDING TO TRIAL ONLY ON A DISPARATE IMPACT CLAIM.**

Plaintiffs should not be permitted to present evidence or argument in support of their claims for compensatory or punitive damages. In *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015), the Supreme Court, for the first time, recognized that disparate impact claims are cognizable under the Fair Housing Act ("FHA") even though the statutory text of the FHA does not explicitly provide for disparate impact claims. Fundamental to the Supreme Court reaching this conclusion was that the Supreme Court had recognized that disparate impact claims were cognizable under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 ("ADEA"). *Id.* at 530 (noting that it was "necessary to consider" Title VII and the ADEA in order to answer whether disparate impact claims are prohibited under the FHA). Relying on its prior decisions interpreting Title VII and the ADEA, the Supreme Court concluded that these decisions "provide[] strong support for the conclusion that the FHA encompasses disparate-impact claims." *Id.* at 530-34 (citing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971) and *Smith v. City of Jackson*, 544 U.S. 228 (2005)).

In recognizing disparate impact claims as cognizable under the FHA, at the same time, the Supreme Court in *Inclusive Communities* established substantial limitations to FHA disparate impact claims. Here, again, the Supreme Court looked to Title VII as a guide. Relying on *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653 (1989), a Title VII case, the Supreme Court in *Inclusive Communities* established a "robust causality" requirement. *Id.* at 542. In addition, the

Supreme Court relied on *Griggs*, 401 U.S. at 431, a Title VII case, the Supreme Court held FHA disparate impact suits cannot be maintained unless the policy or policies at issue are "artificial, arbitrary, and unnecessary barriers." *Inclusive Communities,* 576 U.S. at 543 (describing the "artificial, arbitrary, and unnecessary barriers" language as a cautionary "safeguard[]" that disparate impact suits must incorporate as "standard[] for proceeding with a [FHA] disparate-impact suit[]").

As to possible damages awarded in response to disparate impact suits, the Supreme Court cautioned that after a finding of liability under the FHA, a court's orders "must be" carefully limited so as to be "remedial" and "consistent with the Constitution.". *Id*. at 544 ("Remedial orders in disparate-impact cases should concentrate on the elimination of the offending practice that 'arbitrar [ily] ... operate[s] invidiously to discriminate on the basis of rac[e].'") (citing *Griggs*, 401. U.S. at 431). Again, in reaching this conclusion, the Supreme Court relied on Title VII principles by citing to its Title VII opinion in *Griggs*.

In the Title VII context, "[c]ompensatory and punitive damages are not available for [disparate impact] claims." *Pollard v. Wawa Food Mkt*., 366 F. Supp. 2d 247, 253 (E.D. Pa. 2005) (citing 42 U.S.C. § 1981a(b)); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir. 1998) ("[C]ompensatory and punitive damages are not available in disparate impact [Title VII] claims"); *Johnson v. AK Steel Corp*., No. 1:07-CV-291, 2008 WL 11352633, at *1 (S.D. Ohio July 10, 2008) ("Since plaintiff in this case is proceeding to trial solely on a theory of disparate impact discrimination, she is entitled to only equitable relief on her Title VII claim.").

Similarly, in suits under Title II of the Americans with Disabilities Act or Section 504 of the Rehabilitation Act of 1973, "compensatory damages are available only upon proof of intentional discrimination or disparate treatment, rather than mere disparate impact." *Paulone v.*

*City of Frederick*, 787 F. Supp. 2d 360, 373 (D. Md. 2011) (citing *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 829-30 & n.9 (4th Cir. 1994) (noting that in the Civil Rights Act of 1991, specifically 42 U.S.C. § 1981a(b)(1), Congress made an explicit distinction by providing for compensatory and punitive damages for unlawful intentional discrimination but not a practice that is unlawful because of its disparate impact).

The damages available under FHA disparate impact suits should not differ from those available under disparate impact suits filed pursuant to Title VII, Title II or Section 504 of the Rehabilitation Act. Congress has evinced an understandable intent to treat intentional discrimination different from disparate impact discrimination with regards to damages. *See Pandazides*, 13 F.3d at 829-30 & n.9. Accordingly, it would be a bizarre result to hold that compensatory damages are available under a *FHA* disparate impact claim but not in a disparate impact claim filed pursuant to Title VII, Title II or Section 504 of the Rehabilitation Act, especially when the Supreme Court relied on Title VII in first recognizing disparate impact claims as cognizable under the FHA.

The statutory text of Section 3613 of the FHA does not compel a contrary result. *See* 42 U.S.C. § 3613. When the Fair Housing Act Amendments ("FHAA") were passed in 1988, the Supreme Court had yet to recognize disparate impact liability as a cognizable claim under the FHA. It would not do so for another twenty-seven years. It was not until three years later, in 1991, that Congress passed the Civil Rights Act of 1991 which evinced Congress's intent to treat disparate impact claims differently in the context of damages. Accordingly, it would have been bizarre for the FHAA to address the availability of compensatory or punitive damages under disparate impact claims when the text of the FHA never provided for disparate impact claims and when Congress had yet to pass the Civil Rights Act of 1991, which specifically limited damages

in cases of disparate impact. This is especially so because although Section 3613 of the FHA does provide for an award of "actual and punitive damages" as well as equitable relief should liability be found, the text of the FHA explicitly consigns such an award to the Court's discretion. 42 U.S.C. § 3613 ("the court *may award* to the plaintiff…") (emphasis added). Courts have exercised this discretion to prohibit awards of compensatory damages in the disparate impact context. *Smith v. Town of Clarkton, N. C.*, 682 F.2d 1055, 1059 (4th Cir. 1982) (noting that the "[t]he trial court found no personal racial animus on the part of the defendants as individuals, and [thus] denied an award of general damages to Smith."); *Tsombanidis v. City of W. Haven*, 180 F. Supp. 2d 262, 299 (D. Conn. 2001) ("The primary consideration that distinguishes the relief to be awarded to plaintiffs against the Fire District, from that awarded against the City, is the fact that this Court has made no finding of intentional discrimination by the Fire District. Accordingly, the Court holds that plaintiffs are not entitled to an award of compensatory damages against the Fire District."), *aff'd in part, rev'd in part sub nom. Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565 (2d Cir. 2003), *superseded by statute as stated in Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581 (2d Cir. 2016).[2]

Here, Plaintiffs' counsel unequivocally stated that "[Plaintiffs] should only be proceeding to trial on the disparate impact theory of the Fair Housing Act claim." **Exhibit 1** at 26:2-4 (Sept. 23, 2020 Transcript). In any event, as noted by the Fourth Circuit, Plaintiffs failed to raise the argument that the FHA claim should have survived summary judgment under a disparate-treatment theory and thus have waived that issue upon remand. *Reyes*, 903 F.3d at 422 ("Plaintiffs do not argue that the FHA claim should have survived the motion for summary judgment under a

---

[2] Upon appeal, the Second Circuit in *Tsombanidis* found that plaintiffs did not establish a disparate impact claim. 352 F.3d at 578.

disparate-treatment theory of liability and, thus, we decline to address this theory of liability for Plaintiffs' FHA claim.").[3] Accordingly, Plaintiffs are not proceeding to trial on any allegations of intentional discrimination. The only allegations set for trial are those of unintentional discrimination—the basis of Plaintiffs' disparate impact claim. Plaintiffs should not be permitted to present evidence or argument in support of their claim for compensatory or punitive damages because such damages should not be awarded to Plaintiffs on their disparate impact claim.[4] As the Supreme Court stated in *Inclusive Communities*, any order should be "remedial" and "concentrate on the elimination of the offending practice." *Inclusive Communities*, 576 U.S. at 544. At a minimum, this Court should exercise its discretion to preclude any evidence in support of Plaintiffs' claims for compensatory or punitive damages given that Plaintiffs are proceeding to

---

[3] "A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012).

[4] Specifically, as to punitive damages under the FHA, this Court has stated that "[t]he standard for punitive damages used in employment discrimination and 42 U.S.C. § 1983 civil rights cases has been applied in FHA cases." *Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402, 449 (E.D. Va. 2011) (citing *Quigley v. Winter*, 598 F.3d 938, 952 (8th Cir. 2010)), *aff'd in part, vacated in part sub nom. Matarese v. Archstone Communities, LLC*, 468 F. App'x 283 (4th Cir. 2012). "Punitive damages may be awarded in a civil rights case where the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally-protected rights of others." *Matarese*, 795 F. Supp. 2d at 449 (citing cases). In the Title VII context, the Fourth Circuit has stated that punitive damages are an "extraordinary remedy". *Ward v. AutoZoners, LLC*, 958 F.3d 254, 269 (4th Cir. 2020) (citing *U.S. Equal Employment Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 150-51 (4th Cir. 2017) for the proposition that "[p]unitive damages are allowed in a Title VII action only under limited circumstances" that present "a high standard to meet"). As Plaintiffs are proceeding to trial only on a disparate impact claim and not allegations of intentional discrimination, there are no allegations in this case that would support a punitive damages award under this standard. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538 (1999) ("Most often, however, eligibility for punitive awards is characterized in terms of a defendant's motive or intent."). Accordingly, Plaintiffs should not be permitted to present evidence or argument in support of their punitive damages claim.

trial only on a disparate impact claim. Accordingly, Plaintiffs should not be permitted to present evidence in support of their claims for compensatory or punitive damages.

**II. IN THE ALTERNATIVE, SHOULD THIS COURT PERMIT PLAINTIFFS TO PRESENT EVIDENCE OF COMPENSATORY AND PUNITIVE DAMAGES, TRIAL SHOULD BE BIFURCATED BETWEEN ISSUES OF LIABILITY AND DAMAGES**

Although Defendants contend that Plaintiffs are not entitled to compensatory or punitive damages, if the Court permits Plaintiffs to present evidence in support of those claims, especially Plaintiffs' claim for punitive damages, the Court should bifurcate the issues of liability and damages at trial to avoid prejudice to Defendants. The Federal Rules of Civil Procedure permit the trial courts to have separate trials of separate issues in a case "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Courts have long recognized the benefits of bifurcating the issues of liability and damages into separate trials. *See, e.g., Ellison v. Rock Hill Printing & Finishing Co.*, 64 F.R.D. 415, 418 (D.S.C. 1974) ("The federal trial courts have increasingly realized the benefits of bifurcated trials."); *see* Fed. R. Civ. P. 42, 1966 Amendment ("While separation of issues for trial is not to be routinely ordered, it is important that it be encouraged where experience has demonstrated its worth."). The decision whether to bifurcate is committed to the sound discretion of the trial court. *Bowie v. Sorrell*, 209 F.2d 49 (4th Cir. 1953).

Bifurcation of liability and damages in a discrimination claim is appropriate under Rule 42. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 172 (6th Cir. 1993) ("[S]eparation of the issues of liability and damages may be an appropriate exercise of discretion under Rule 42(b)."), *abrogated by Hertz Corp. v. Friend*, 559 U.S. 77 (2010); *Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc.*, 867 F. Supp. 686, 690 (N.D. Ill. 1994) (bifurcating issues of liability and damages on age discrimination claim).

Here, bifurcation is appropriate to avoid prejudice to Defendants. Plaintiffs' expected testimony regarding their claims for compensatory and punitive damages is likely to be emotionally charged. In support of these claims, Defendants expect Plaintiffs to testify about the effect that moving out of the Park had on Plaintiffs as families in order to support their claim for compensatory and punitive damages. Should a jury hear this emotional testimony, it is more than likely that such testimony could cause the jury to improperly confuse issues of liability and damages and thus lead to undue prejudice for Defendants. Moreover, Plaintiffs' expected testimony regarding their claims for compensatory and punitive damages is not relevant to Plaintiff's FHA disparate impact claim pursuant to the *Inclusive Communities* burden-shifting framework.[5]

In addition, if Plaintiffs are permitted to proceed with their punitive damage claim, evidence pertinent to their claim for punitive damages could improperly prejudice the jury's determination of liability. *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 978, 988 (N.D. Iowa 2007) ("Bifurcation of trial into separate phases to consider punitive damages apart from liability avoids the potential that evidence pertinent to punitive damages, such as the financial status of Defendant, will improperly prejudice the jury's determination of liability.") (bifurcating punitive damages

---

[5] In order to prove their disparate impact claim, Plaintiffs must present a prima facie case of disparate impact by presenting evidence of a policy with a robust causal connection to a disparate impact. *Inclusive Communities*, 576 U.S. at 542 ("A robust causality requirement ensures that '[r]acial imbalance ... does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create.") (citation omitted). In addition, as part of their prima face case, Plaintiffs must present evidence that Defendants' Policy is not an "artificial, arbitrary, and unnecessary barrier[]" to achieve a valid interest. *Id*. at 543 ("Governmental or private policies are not contrary to the disparate-impact requirement unless they are "artificial, arbitrary, and unnecessary barriers."). The burden then shifts to Defendants to articulate a "valid interest served by their policies." *Id*. at 541 ("[Defendants] must be allowed to maintain a policy if they can prove it is necessary to achieve valid interest."). Thereafter, the burden shifts back to Plaintiffs to prove that a less discriminatory policy exists that would serve the defendant's interest or interests. *Id*. at 527-28.

claim from liability on discrimination claim); *N. Dakota Fair Hous. Council, Inc. v. Allen*, 298 F. Supp. 2d 897, 899 (D.N.D. 2004) ("Evidence of the defendants' net worth, although relevant to issues concerning the claim for punitive damages, can have an adverse effect on jury deliberations concerning liability and compensatory damages.") (bifurcating issues of liability and damages on FHA claim).

Plaintiffs may argue that it is burdensome to have two issues litigated separately at trial. However, the burden is negligible. Trial has not yet been scheduled, and given the COVID-19 pandemic, and it is unclear when a trial can be scheduled. When trial is eventually scheduled, the issue of liability can scheduled to be heard first, and the same jury who decides liability can immediately hear the case on damages, if necessary. Moreover, witnesses will not be inconvenienced by a bifurcation of the trial between liability and damages. Plaintiffs' testimony is not relevant to issues of liability as the facts regarding Plaintiffs' leases at the Park are largely undisputed. In any event, the substantial prejudice faced by Defendants should liability and damages be tried together outweigh any concerns regarding the convenience of witnesses. Moreover, judicial economy is best served by bifurcation. In the event that the jury finds Defendants not guilty of violating the FHA, bifurcation will have resulted in substantial savings of time by avoiding the needless presentation of extensive testimony on damages. *Brom*, 867 F. Supp. at 690. Even if the jury finds Defendants guilty of violating the FHA (they should not), deliberations regarding liability will not be sidetracked by extraneous and potentially confusing evidence relating to compensatory and punitive damages. *Id.*

Consequently, if the Court permits Plaintiffs to present evidence in support of their claims for compensatory and punitive damages, the Court should bifurcate the issues of liability and damages at trial.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court to grant their Motion *in Limine* and enter an Order: (1) precluding Plaintiffs from presenting evidence or argument regarding their claim for compensatory or punitive damages; or (2) alternatively, bifurcating trial between liability and damages; and (3) for such other relief as is just and proper.

Dated: Jan. 11, 2021          Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT LIMITED
PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of January, 2021, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*