# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, <br><br> Defendants. | Civil No.: 1:16-cv-563 (TSE) (TCB) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING THE MEANING OF THE FEDERAL ANTI-HARBORING STATUTE, 8 U.S.C. § 1324 OR THE U.S. COURT OF APPEALS FOR THE FOURTH CIRCUIT'S DECISION IN *UNITED STATES V. AGUILAR*, 477 F. App'x 1000 (4th Cir. 2012)**

## INTRODUCTION AND BACKGROUND [1]

Defendants respectfully move to exclude any evidence or argument before the jury at trial regarding the meaning of the anti-harboring provision of the federal Immigration Reform and Control Act of 1986, 8 U.S.C. § 1324, or the decision of the U.S. Court of Appeals for the Fourth Circuit construing that provision in *United States v. Aguilar*, 477 F. App'x 477 (2012). These are questions of law solely for the Court to determine and to instruct the jury on in deciding whether Plaintiffs and Defendants have met their respective burdens of proof on Plaintiffs' remaining claim for disparate-impact discrimination under the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.* ("FHA").

After nearly five years of litigation, including an appeal to the Fourth Circuit, Plaintiffs maintain a single claim in this case against Defendants—that Defendants' leasing policy at the Waples Mobile Home Park in Fairfax, Virginia (the "Park"), which requires all adult occupants of a mobile home to provide a Social Security card or other proof of legal residency in the United States (the "Policy"), violates the FHA under a theory of unintentional disparate-impact discrimination. As part of their prima face case, at "step 1," Plaintiffs must present evidence that Defendants' Policy is an "artificial, arbitrary, and unnecessary barrier[]" to housing. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 543 (2015) ("Governmental or private policies are not contrary to the disparate-impact requirement unless they are "artificial, arbitrary, and unnecessary barriers."). The burden then shifts to Defendants— "step 2"—to articulate a "valid interest served by their policies." *Id.* at 541 ("[Defendants] must be allowed to maintain a policy if they can prove it is necessary to achieve valid interest.").

---

[1] Insofar as it is relevant, Defendants incorporate by reference the background discussion set forth in its other contemporaneously filed motions in limine.

Following Plaintiffs' appeal to the Fourth Circuit, on remand Defendants moved for summary judgment on Plaintiffs' disparate-impact claim. Defendants argued, among other things, that they were entitled to summary judgment based on the IRCA's anti-harboring provision and Defendants' reasonable belief that—absent the Policy and given the Fourth Circuit's decision in *Aguilar*—they could be found criminally liable under that provision for extending housing to undocumented immigrants at its Fairfax mobile-home park. Dkt. 248 at 10-13, 23-24; Dkt. 265 at 6-8, 12-13; Dkt. 277 at 7-10.

The Court denied Defendants' renewed motion for summary judgment. Dkt. 283. The Court did not address Defendants' arguments that, given the anti-harboring provision and the threat of criminal liability Defendants faced for renting mobile homes to undocumented immigrants, their discretion in adopting a leasing policy was "substantially limited" under *Inclusive Communities*, thereby defeating Plaintiffs' disparate-impact claim at "step 1" of the burden-shifting framework. The Court also did not address Defendants' argument that Plaintiffs could not, as a matter of law, show that Defendants' Policy is "artificial, arbitrary, and unnecessary" as required by *Inclusive Communities* because the Policy helps Defendants avoid criminal liability under the anti-harboring provision, as construed by the Fourth Circuit in *Aguilar*. With respect to whether, at step 2 of that framework, Defendants had a "valid interest" in the Policy of avoiding criminal liability under the anti-harboring provision, the Court found that that presented a genuine issue of material fact for the jury to decide at trial. Dkt. 283 at 2.

Defendants moved for clarification of the Court's summary-judgment ruling. Dkts. 284, 285. At the hearing on Defendants' motion for clarification, the Court observed that "juries don't decide" issues such as the meaning of the anti-harboring statute or whether Defendants could be "put in jail for violating" that statute by renting to undocumented immigrants without the Policy

in place. Mot. for Clarification H'rg Tr. (Sept. 23, 2020) at 29:16-23 (attached hereto as **Exhibit 1**). The Court ultimately denied Defendants' motion for clarification, reiterating that whether the Policy served a "valid interest" in avoiding criminal liability under the anti-harboring provision is an issue for the jury to decide. Dkt. 298.

## LEGAL STANDARD

While the Federal Rules of Evidence do not specifically provide for motions in limine, their use has evolved under the federal courts' inherent authority to manage trials. *United States v. Verges*, No. 1:13cr222 (JCC), 2014 WL 559573, *2 (E.D. Va. Feb. 12, 2014) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider. *Id.* (citing *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)). Such motions serve important gatekeeping functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to the jury. *Id.* (citing *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

## ARGUMENT

Defendants move to exclude evidence or argument before the jury at trial regarding the meaning of the anti-harboring provision of the IRCA and the Fourth Circuit's decision construing the anti-harboring provision in *Aguilar*. Simply put, these issues are within the exclusive province of the Court to determine in instructing the jury on the elements of Plaintiffs' and Defendants' burdens of proof on Plaintiffs' disparate-impact claim and Defendants' defenses to that claim.

"'[T]here is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who

of course is the judge.'" *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (quoting *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (internal citations omitted)). Thus, "[u]nder our system it is the responsibility—and the duty—of the court to state to the jury the meaning and applicability of the appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law." *United States v. Wilson*, 133 F.3d 251, 265 (4th Cir. 1997) (citing *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986) (citations omitted)).

The "jury must be instructed on the law by the court and ***not*** by the witnesses. . . ." *Wilson*, 133 F.3d at 265-66 (emphasis added); *see also United States v. Farinella*, 558 F.3d 695, 700 (7th Cir. 2009) ("[T]he law (unless foreign) that a jury applies is the law given to it by the judge in his instructions, not the legal opinion offered by a witness") (citing *United States v. Chube II*, 538 F.3d 693, 701 (7th Cir. 2008); *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008)). In particular, "[d]istrict judges, rather than witnesses, must explain to juries the meaning of statutes and regulations." *Farinella*, 558 F.3d at 695 (citing *Bammerlin v. Navistar Int'l Transportation Corp.*, 30 F.3d 898, 901 (7th Cir. 1994)); *see also Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) ("It is black-letter law that 'it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.' … [P]urely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge.") (citations omitted). The same holds true for judicial precedents.

As discussed above, the meaning and scope of the federal anti-harboring provision, and how the Fourth Circuit construed that provision in *Aguilar*, are central to several dispositive issues remaining in this case, and they fall squarely within these settled rules. It is the Court's exclusive

function to instruct the jury on these pure legal issues so that the jury, in light of those instructions, may then determine whether Plaintiffs and Defendants have met their respective burdens of proof under *Inclusive Communities* that relate to the anti-harboring provision.

For example, in order to determine whether Defendants' Policy is not "artificial, arbitrary, and unnecessary," as Defendants contend, because it helps Defendants avoid criminal liability under the anti-harboring provision, the jury needs to know what the anti-harboring provision prohibits and how the Fourth Circuit has interpreted it in analogous contexts. The same is true in deciding whether, under *Inclusive Communities*, the anti-harboring provision "substantially limits" Defendants' discretion in formulating policies relating to leasing to undocumented immigrants where, as here, Defendants know that their Park is located in a region where there are high numbers of undocumented immigrants, and undocumented immigrants are attracted to the more affordable housing options available at the Park. Likewise, in assessing whether avoiding liability under the anti-harboring provision is a "valid interest," the jury will need to know the scope of the provision and the types of conduct that could violate it within the geographic confines of the Fourth Circuit where the Park is located.

In this case, like any other, the meaning of statutes and judicial precedents rests solely within the province of the Court, not the jury. Accordingly, the Court should not permit any evidence or argument at trial relating to the meaning of the anti-harboring provision and the Fourth Circuit's ruling in *Aguilar*.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court to grant their Motion *in Limine* and enter an Order excluding Plaintiffs from offering evidence or argument at trial regarding the meaning of the anti-harboring provision of the federal Immigration Reform and

Control Act of 1986, 8 U.S.C. § 1324, or the decision of the U.S. Court of Appeals for the Fourth Circuit construing that provision in *United States v. Aguilar*, 477 F. App'x 477 (2012), and for such other relief as is just and proper.

Dated:  Jan. 11, 2021                     Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, WAPLES PROJECT LIMITED PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of January, 2021, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*