UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*,<br><br>*Plaintiffs*,<br><br>vs.<br><br>WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*,<br><br>*Defendants*. | Civ. No. 1:16-cv-00563 (LO/TCB) |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF IVAN YACUB, ESQ.

Plaintiffs, by counsel, hereby submit the following Memorandum of Law in opposition to Defendants' Motion *in Limine* to Exclude the Testimony of Ivan Yacub, Esq. (Dkt. No. 325), and respectfully represent as follows:

#### Background

For well over a decade, Defendants have maintained a policy ("the Policy") of requiring that lessees and occupants at the Waples Mobile Home Park ("the Park") provide certain documentation related to their legal immigration status. The specific immigration documentation requirements remained constant for most of the Plaintiffs' tenancies at the Park. *Compare, e.g.*, Ex. 1, dated 5/18/2006 ("If applicant does not have a Social Security Number (SSN), he/she must submit their original Passport, original Visa <u>and</u> original I-94 or I-94W Arrival/Departure Form" (emphasis in original)) *with* Ex. 2, dated 3/31/2016 ("Applicants who do not have a Social Security Number, must provide their original Passport, original US Visa and original Arrival/Departure Form (I-94 or I-94W)").

1

One key factual dispute in this case hinges on whether, as Plaintiffs contend, Defendants willfully ignored their own Policy in allowing Plaintiffs and other tenants lacking those immigration documents to move into the Park, *see, e.g.*, Dkt. No. 142 at p.8 ¶¶ 20-21 and exhibits cited therein; or whether, as Defendants contend, the policy was strictly enforced all along and Plaintiffs and many of their neighbors deceived their landlords in order to move into the Park, *see, e.g.*, Dkt. No. 98 at pp. 5-6 and exhibits cited therein.

In any event, by the beginning of 2016, Defendants had determined to enforce their Policy against the Plaintiffs, raised each Plaintiff's rent by $100 per month as a penalty for failing to abide by the Policy, and issued them eviction letters under the Policy then in effect.[1] *See, e.g.*, Dkt. No. 4-3 (dated Jan. 18, 2016); Ex. 3 (same); Ex. 4 (dated Jan. 27, 2016); Ex. 5 (dated Feb. 4, 2016); Dkt. No. 4-7 (dated March 2, 2016). *See also* Dkt. No. 142 at ¶¶ 14-17, and exhibits cited therein. Those rent increases and eviction notices gave rise to this lawsuit. *See* Dkt. No. 1.

Only after Plaintiffs and other tenants in the Park retained counsel and began challenging the Policy[2] did Defendants change the required list of documentation: "Applicants who are not

---

[1] Indeed, on March 11, 2016, Defendants threatened an additional $300 per month rent increase as a further consequence of failing to meet the demands of the Policy. *See* Dkt. No. 4-4. They backed down only when Plaintiffs filed a Motion for Temporary Restraining Order, *see* Dkt. Nos. 3, 18.

[2] *See, e.g.*, Antonio Olivo, "Without Social Security numbers, illegal immigrants face eviction," The Washington Post (Feb. 10, 2016), *available at* https://www.washingtonpost.com/local/virginia-news/without-social-security-numbers-illegal-immigrants-face-eviction/2016/02/10/2fcd64c2-ca9d-11e5-a7b2-5a2f824b02c9_story.html ("The owners of a Northern Virginia mobile-home park are trying to evict about 15 residents who don't have Social Security numbers and are in the country illegally, an effort that attorneys for the families say violates federal and state fair housing laws. . . . Lawyers with the Legal Aid Justice Center are fighting the eviction proceedings in Fairfax County's General District Court, arguing that Waples Mobile Home Park is discriminating against the residents by refusing to accept as proof of identity tax identification numbers that the Internal Revenue Service provides to non-

U.S. citizens, must also provide immigration documentation to prove legal presence in the United States." Ex. 6, dated 4/22/2016. Insofar as Defendants' Motion *in Limine* implies that this April 22, 2016 iteration was the iteration of the Policy that drove Plaintiffs from their homes, see Dkt. No. 326 at pp. 6-7, this is incorrect.

To be clear, the female Plaintiffs could not have satisfied either iteration of the Policy: they lacked both the specific immigration documentation set forth in the Policy prior to April 22, 2016, and also any other "immigration documentation to prove legal presence in the United States" as required by the Policy in effect starting April 22, 2016. But the version of the Policy that caused injury to the Plaintiffs and gives rise to their claim to damages is the Policy in effect prior to April 22, 2016. This case must be tried based on the facts as they were at the time, and the jury will be called upon to determine whether Defendants' specific Policy that <u>was</u> applied to Plaintiffs violated the Fair Housing Act.

Because the Policy makes reference to Social Security cards, US visas, and I-94/I-94W forms—and because Plaintiff's proposed alternative under Step 3 of *Inclusive Communities* makes reference to the Individual Taxpayer Identification Number (ITIN)—Plaintiffs proffered an experienced Northern Virginia immigration lawyer, Ivan Yacub, Esq., as an expert witness to explain those various documents to a jury consisting of U.S. citizens who may not be familiar with them: what they are, what they mean, how they are obtained, who has them, what they evidence with respect to the legal immigration status of their bearer, what other legal documents might evidence the same things, and even what they look like. *See* Dkt. No. 326-1. Although Defendants chose not to depose Mr. Yacub, they filed a Motion *in Limine* challenging his

---

U.S. citizens working in the country."). *See also* Ex. 7, Deposition Transcript of A.J. Dwoskin, at 96:14-20.

testimony as irrelevant and a waste of time, *see* Dkt. No. 325. Defendants do not challenge Mr. Yacub's qualifications as an expert under *Daubert*, nor the methods he used to arrive at his expert conclusions; their objection to his testimony goes solely to relevance under Rule 401 and waste of time under Rule 403.

## Argument

     Mr. Yacub's testimony is relevant and helpful to the jury because he can explain in plain language the meaning of the various hyper-technical immigration documents referenced in Defendants' Policy, whether those documents are an accurate proxy for lawful presence in the United States, the difference between having a Social Security number or an ITIN, and the meaning of the various immigration statuses at issue in this case such as Temporary Protected Status which three of the four male Plaintiffs have.

     As to ITINs, aside from the application process (which is the sole focus of Defendants' Motion *in Limine*), Mr. Yacub can explain to the jury what an ITIN is and what it is for, who would need an ITIN as opposed to a Social Security number, which business entities in the community generally accept ITINs from immigrants without legal immigration status, and even what it looks like.

     Finally, Mr. Yacub can describe his experience working with the immigrant community in Northern Virginia with regards to mixed-status families and undocumented immigrants on leases as lessees—a part of Mr. Yacub's expert declaration which Defendants do not challenge at all in their Motion *in Limine*, and so should be deemed unopposed.

     All of these areas of testimony, which combined should take up no more than half an hour of trial time, are directly relevant to Steps 2 and 3 of the *Inclusive Communities* standard. Such issues are "beyond the realm of common experience and [] require the special skill and

knowledge of an expert witness." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000). Since Defendants raised no objections to his testimony other than relevance and waste of time, the Motion *in Limine* should be denied.

### I.     Mr. Yacub's testimony on issues related to legal immigration status is relevant.

"There are significant complexities involved in enforcing federal immigration law, including the determination whether a person is removable." *Arizona v. United States*, 567 U.S. 387, 409 (2012). One of the many complexities that routinely bedevils state and local governments and private actors is the large number of different immigration categories available to noncitizens who are not lawful permanent residents, but nonetheless *are* lawfully present in the United States in the eyes of the federal government.[3] "Indeed, the federal government permits several categories of persons who may not be technically lawfully present in the United States to work and presumably live here." *Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 530-31 (M.D. Pa. 2007), *aff'd in part, vacated in part*, 620 F.3d 170 (3d Cir. 2010), *cert. granted,*

---

[3] A non-exhaustive list of such categories includes Temporary Protected Status, 8 U.S.C. § 1254a; Deferred Action for Childhood Arrivals (DACA), *see* https://www.uscis.gov/humanitarian/humanitarian-parole/consideration-of-deferred-action-for-childhood-arrivals-daca; various categories of deferred action other than DACA, *see* 8 C.F.R. § 274a.12(c)(14); Special Immigrant Juvenile Status, 8 U.S.C. § 1101(a)(27)(J); and humanitarian parole, *see* 8 C.F.R. § 212.5.

All of the above-listed immigration categories are accessible to individuals who entered the United States without inspection, *see, e.g.*, 8 U.S.C. § 1158(a)(1) (asylum); 8 U.S.C. § 1254a(c)(2)(A). Indeed, even certain individuals already ordered deported may nonetheless be lawfully present in the United States under, for example, Temporary Protected Status; an Order of Supervision, *see* 8 U.S.C. § 1231(a)(3); or withholding of removal, *see* 8 U.S.C. § 1231(b)(3).

These categories are not rare: for example, USCIS estimates 9,390 DACA recipients in Virginia, *see* https://www.uscis.gov/sites/default/files/document/reports/DACA_Population_Receipts_since_Injunction_Jun_30_2020.pdf; and nationwide more than 600,000 noncitizens remain awaiting adjudication of their asylum petitions before the immigration courts, *see* https://www.justice.gov/eoir/page/file/1106366/download, all of whom are lawfully present in the United States pursuant to 8 U.S.C. § 1182(a)(9)(B)(iii)(II).

*judgment vacated sub nom. City of Hazleton, Pa. v. Lozano*, 563 U.S. 1030 (2011), *and aff'd in part, rev'd in part*, 724 F.3d 297 (3d Cir. 2013).

Determining whether an individual is lawfully present in the United States is so complex that the Fifth Circuit invalidated a municipal ordinance similar to Defendants' current Policy because it "[did] not specify which of many federal immigration classifications [city] officials would use to resolve whether a non-citizen was 'lawfully present.'" *Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524, 533 (5th Cir. 2013). Even the federal government's SAVE program for electronic immigration status verification[4] "can provide only a non-citizen's specific immigration status; it 'does not answer lawful presence or not.'" *Id.*

Of course, the jury cannot be expected to know or understand these complexities. The average juror (who must be a U.S. citizen, *see* 28 U.S.C. § 1865(b)(1), and thus may have no personal familiarity with the immigration process) would likely expect the question of determining immigration status to be a simple exercise of "show me your papers"; and could incorrectly believe that in case of ambiguity as to a particular tenant's lawful presence, Defendants could call upon the assistance of the Department of Homeland Security to clarify the matter.[5]

As Mr. Yacub describes in his expert declaration, *see* Dkt. No. 326-1 at ¶¶ 13-15, 20-22, 25-26, the immigration status documents required by the Policy in effect at the time Plaintiffs received punitive rent increases and eviction notices from the Defendants—namely, "original US

---

[4] SAVE access is available only to "federal, state, and local benefit-granting agencies[.]" *See* https://www.uscis.gov/save. Defendants would not have any means of accessing SAVE to determine an individual's immigration status, much less their lawful presence.

[5] To the extent that the jury might wonder why the male Plaintiffs did not solve the whole problem by simply petitioning for lawful immigration status for their wives, Mr. Yacub's testimony can also explain that. Dkt. No. 326-1 at ¶ 27.

6

Visa and original Arrival/Departure Form (I-94 or I-94W)"—are exceptionally poor proxies for legal presence in the United States.  The Policy would effectively deny housing even to lawfully present immigrants who entered without inspection (and thus lack a US Visa and I-94/I-94W) yet subsequently obtained permission to remain in the United States (for example by means of a pending asylum application), yet do not have a Social Security number (for example because pending asylum applicants must wait a significant amount of time before applying for a work permit, *see* 8 C.F.R. § 208.7(a)(1)(ii); and with limited exceptions a noncitizen needs a work permit before applying for a Social Security card, *see* https://www.ssa.gov/pubs/EN-05-10107.pdf).  Such testimony is directly relevant to the jury's evaluation of Defendants' burden under Step 2 of the *Inclusive Communities* standard to show that the Policy is "necessary to achieve a valid interest," *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 541 (2015); and to Plaintiffs' burden under Step 3 of identifying an alternate practice that satisfies Defendants' interests with a less discriminatory effect, *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 424 (4th Cir. 2018).  But without Mr. Yacub's testimony, the jury would be too befuddled by the complexities of immigration documentation to understand the meaning and foreseeable practical impact of the Policy.

Mr. Yacub's testimony is also relevant to helping the jury understand the meaning and foreseeable practical impact of the current Policy, which does not specify particular immigration documentation but still requires a Social Security number.  As Mr. Yacub explains in his expert declaration, certain individuals legally present in the United States nonetheless cannot obtain a Social Security number.  Dkt. No. 326-1 at ¶¶ 4, 21.  Again, the average juror would have no way of knowing this.

Finally, as to the policy in effect today, Mr. Yacub's testimony will help the jury understand it is a good fit for one of Defendants' stated business necessities, namely "to minimize loss from eviction," *see, e.g.*, Dkt. No. 342 at p.5.  Insofar as this rests on a presumption that unlawfully present noncitizens are at greater risk of eviction, Mr. Yacub's testimony can provide the jury with valuable context.

In this sense, Mr. Yacub's testimony resembles that approved by the court in *Collins v. Cottrell Contracting Corp.*, 733 F. Supp. 2d 690, 702 (E.D.N.C. 2010), in that Mr. Yacub will "assist the jury in navigating the complex waters of [immigration] regulation, but they will not be bound by his opinions."  Mr. Yacub will not "testify to the jury as to what the law means," or "usurp the province of the court[.]"  *Id.*, *citing Adalman v. Baker, Watts & Co.*, 807 F.2d 359 (4th Cir. 1986).  The testimony is relevant and not a waste of time, and is admissible under Rules 401 and 403.

**II.     Mr. Yacub's testimony on ITINs is relevant and not repetitive of stipulated facts.**

In moving to exclude Mr. Yacub's testimony regarding ITIN numbers, Defendants rest entirely on the fact that the process for obtaining an ITIN number has been stipulated by the parties.  *See* Dkt. No. 326 at p.4, *quoting* Dkt. No. 180.  But Mr. Yacub also describes what an ITIN is, Dkt. No. 326-1 at ¶7; what it looks like, *id.*; what the federal government uses it for, *id.*; and what other institutions in the community accept ITINs and/or foreign passports as proof of identify, *id.* at ¶9.  Since the average juror may not have even heard of an ITIN, such testimony will provide important context that the jury needs to evaluate Plaintiffs' proposed alternative policy on Step 3 of the *Inclusive Communities* standard.  The testimony is relevant and not a waste of time, and should be allowed under Rules 401 and 403.

8

### III. Mr. Yacub's testimony on undocumented immigrants as lessees in Northern Virginia is unchallenged and relevant.

Finally, Mr. Yacub's expert opinion states:

> In my law practice, I have met countless mixed-status married couples in Northern Virginia who are both on leases as lessees. I know this because in preparing spousal petitions, I have occasion to look at the leases of married couples who are my clients.
>
> In my law practice, I have met countless undocumented people who are on leases as lessees. I know this because in preparing various types of applications for legal status (including but not limited to DACA), I have to help my clients prove their physical presence in the United States, and providing my clients' leases is one of the best ways to do this.

Dkt. No. 326-1 at ¶¶ 28-29. Defendants' Motion *in Limine* did not state any objection to the introduction of this testimony by Mr. Yacub, and so it should be deemed unopposed. Such testimony is furthermore highly relevant to Steps 2 and 3 of the *Inclusive Communities* standard, and also generally to the jury's understanding of whether the Policy at issue in this litigation is industry standard or rather an outlier in the community.

## Conclusion

For the foregoing reasons, Defendants' Motion in Limine (Dkt. No. 325) should be denied.

Respectfully submitted,                    Date:   June 4, 2021


_____//s//_____
LEGAL AID JUSTICE CENTER
Simon Sandoval-Moshenberg, VSB #77110
*simon@justice4all.org*
Nady Peralta, VSB #91630
*nady@justice4all.org*
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kaiyeu Kevin Chu, VSB #85746
*kevinchu@quinnemanuel.com*
Matthew Traumpan (pro hac vice)
*matthewtraupman@quinnemanuel.com*
1300 I Street NW, Suite 900
Washington, District of Columbia 20005
Phone: (202) 538-8000
Fax: (202) 538-8100

*Counsel for Plaintiffs*

## Certificate of Service

I hereby certify that on this 4th day of June, 2021, I caused the foregoing, along with all attachments thereto, to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing (NEF) to all counsel of record.

_____//s//_____
Simon Sandoval-Moshenberg (VSB No. 77110)
*simon@justice4all.org*
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5605
Fax: (703) 778-3454