UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, <br><br> *Defendants*. | Civ. No. 1:16-cv-00563 (LO/TCB) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE
LEASE MATERIALS AND PURPORTED EVICTION CORRESPONDENCE**

Plaintiffs, by counsel, hereby submit the following Memorandum of Law in opposition to Defendants' Motion *in Limine* to Exclude Lease Materials and Eviction Correspondence (Dkt. No. 329), and respectfully represent as follows:

**Background**

This litigation is centered on Defendants' policy of requiring lessees and occupants to provide certain documentation, purportedly as proof of lawful presence in the United States (the "Policy"). This Policy has existed in one form or another for years, but was only suddenly enforced against the Plaintiffs starting in 2016, years after they began to reside in the mobile home park, when Defendants for the first time refused to renew Plaintiffs' annual leases unless they provided the immigration documents required therein. The sudden enforcement of this Policy has adversely impacted the Latino community at a rate that is disproportionate to other communities, thus necessitating this action under the Fair Housing Act.

"[A]n FHA disparate-impact claim should be analyzed under a three-step, burden-shifting framework. Under the first step, the plaintiff must demonstrate a robust causal connection

1

between the defendant's challenged policy and the disparate impact on the protected class. Under the second step, the defendant has the burden of persuasion to state and explain the valid interest served by their policies. Under the third step of the framework, and in order to establish liability, the plaintiff has the burden to prove that the defendant's asserted interests could be served by another practice that has a less discriminatory effect." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 424 (4th Cir. 2018) (internal citations omitted). In this case, it is the Plaintiffs' burden at Step One to establish the relationship between the parties, identify the Defendants' Policy in issue, show how the Policy disparately impacts Latinos, and—critically to this motion—establish proximate cause, i.e. that the Policy is responsible for forcing them from their homes. Defendants object to the admission of the Plaintiffs' lease applications, lease agreements (including addenda thereto), and ledgers. However, these documents are essential to show the parties' agreements, the contours of the Policy as it changed over time, its impact on the Plaintiffs, and the lack of any other reason for Defendants to deny lease renewals to the Plaintiffs. Defendants also object to the admission of eviction-related correspondence, which is necessary to show causality (i.e., that Defendants' Policy is what caused injury to the Plaintiffs) and standing (i.e., that the Plaintiffs suffered a cognizable injury sufficient to give rise to standing). Therefore, the lease-related documents, the eviction-related correspondence, and the outside documents are directly relevant because they are necessary elements of the Plaintiffs' burden of proof.

This is a landlord-tenant case in which the landlord has moved to exclude from evidence all documents that gave rise to the tenancy as a matter of contract, all evidence that the tenancy was satisfactory to both parties in all respects other than the Policy, and all documents that had

the legal effect of terminating the tenancy. Such motion would leave the jury without the ability to learn what actually happened to the Plaintiffs, and should be denied.

## Argument

The lease applications and agreements (including addenda), renewal letters, inspection reports, ledgers, and eviction correspondence are relevant because they constitute the nucleus of operative facts that give rise to this action and are necessary evidence for the Plaintiffs to meet their burden of proof. The evidence does not unfairly prejudice Defendants because they do not encourage a decision improperly based on emotion rather than intellect; instead they provide evidence required to support the Plaintiffs' claims. Additionally, the documents do not risk confusing the jury, as they are useful to prove the facts giving rise to this claim; indeed, a jury would be more confused *without* evidence of the Policy, its effect on Plaintiffs as a matter of causality, and the absence of any other basis for Defendants' attempts to drive the Plaintiffs out. Finally, as detailed below, there are a number of exhibits which, despite the present Motion, have been included on Defendants' own exhibit list as "will introduce" exhibits. Because Defendant has conceded admissibility by disclosing the intention to introduce these exhibits, they should not be excluded.

Defendants make much of the summary judgment record, arguing that the exhibits are irrelevant because the facts proven by these exhibits are undisputed. Dkt. 329 at 7. Even if all of the facts substantiated by the exhibits at issue were undisputed, those facts would still need to be presented to a jury through evidence. But that is not the case here, where the "undisputed record" Defendants refer to came from an order that was vacated by the Fourth Circuit. Now that this matter is going to trial, the jury must determine whether Plaintiffs have met their burden, and

3

these exhibits are relevant to that analysis as explained below.

## I. LEASE MATERIALS ARE RELEVANT AND ADMISSIBLE.[1]

Defendants object to the admission of Plaintiffs' lease applications as irrelevant. However, these documents are relevant to show the information that the parties had furnished to one another before entering into a lease agreement. For example, as seen below, the 2012 lease application of Plaintiff Herbert David Saravia Cruz unambiguously shows that his wife, Plaintiff Rosa Amaya, was listed as his spouse; this is fatal to Defendants' hotly disputed factual contention that they were tricked into entering into leases with the male Plaintiffs only and did not know that the female Plaintiffs would also be living in the mobile homes. Dkt. 98-20. *See, e.g.*, Repl. Mem. in Support of Defs' Mot. for Sum. J., Dkt. 150 at 30.

[lease application form image]

The applications together with the lease agreements—of which there are multiple versions, because the Plaintiffs lived at the mobile home park for several years each—are also relevant because they are the basis of the landlord-tenant relationship which gives rise to Defendants' duties under the FHA. Further, despite Defendants' objections, each lease and utility

---

[1] For ease of reference, this Memorandum uses the same numbering conventions as Defendants' Objections to Plaintiffs' Trial Exhibits (Dkt. 321). "Lease Materials" refers to Plaintiffs' Exhibits 8-72.

4

addendum, as the name implies, is part of its corresponding lease, and is evidence of the further agreed terms of the parties.

Defendants also object to the relevance of numerous iterations of their occupant and leaseholder application forms. These documents are relevant to define the Policy (for example, the 2016 inspection report and lease nonrenewal letter to Mr. Bolaños explains that "due to unauthorized occupants living in your home you will be going on month-to-month until further notice", and points to both the lease and the mobile home park rules as the basis for that Policy), and to show how the Policy was meant to meet Defendants' stated business necessities. Ex. 1 (Plfs' Exh. 156).

One of the Plaintiffs' allegations is that the Policy was enforced suddenly after the Plaintiffs had already been living on the property for several years. Dkt. 1 at ¶¶ 67; 81-83; 92-93; 103-05. Despite Defendants' argument to the contrary, the resident ledgers are relevant, because they show how long the Plaintiffs had been living at the property before the Policy was enforced (realized by the sudden charge of a month-to-month fee in addition to rent). Ex. 2 (Plfs' Exhs. 98-101). Further, the ledgers, which show that the Plaintiffs kept current on rent, are evidence that the Plaintiffs gave the Defendants no other reason to evict them, other than their failure to comply with the Policy, and were otherwise model tenants. The lack of other cause for eviction is relevant to Steps Two and Three of the FHA analysis. Defendants have argued that the Policy is necessary to prevent loss from eviction. *See* Dkt. 150 at 7, 10, 25-26. The records of payment in Plaintiffs' Exhibits 98-101 undermine that argument. Taken together with the lack of evidence showing any other noncompliance, the ledgers show that the Plaintiffs were model tenants— information that is highly relevant to the jury in assessing the Defendants' purported business

necessities at Step Two. Finally, the ledgers are also relevant to calculation of the Plaintiffs' damages.

Of course, Plaintiffs have no intention of burdening (and boring) the jury by introducing *all* of these hundreds of pages of documents, some of which are repetitive. But Defendants have not argued in their Motion *in Limine* that the evidence is needlessly cumulative. (Should it become needlessly cumulative at trial, the Court can easily handle that in the moment.) Rather, Defendants have sought to exclude all of the documents as categorically inadmissible, thus leaving the Plaintiffs without critical evidence that form the basis of their claim and elements of their burden of proof. Such motion should be denied.

## II. EVICTION CORRESPONDENCE IS RELEVANT AND ADMISSIBLE.[2]

Defendants object to the admission of eviction correspondence (including notices of nonrenewal, inspection reports, notice of month-to-month premium, and written responses to the Plaintiffs' efforts to comply with the Policy) as irrelevant. Again, these documents are directly relevant to show how the Policy was defined, applied, and presented to the Plaintiffs. They are the documents that constitute the actions complained of in this lawsuit, and as such their relevance is unquestionable. Without them, no Plaintiff could describe why they left the Park without explaining, "I received a letter that said . . ."—thus immediately drawing an objection under the Best Evidence rule.

Defendants argue that the notices of violation, nonrenewal, and month-to-month premium are only relevant to the dismissed MHLRA claim. Dkt. 329 at 12. However, the notices of nonrenewal which informed the Plaintiffs they could no longer reside at the park pursuant to that Policy are relevant documents because they are the vehicle by which the discriminatory Policy is

---

[2] "Eviction Correspondence" refers to Plaintiffs' Exhibits 151-166.

effected. Likewise, the inspection reports in question are evidence of the reasons the Plaintiffs were no longer permitted to remain at the park, and are relevant not only to show the basis of the Plaintiffs' claim at Step One, but also at Step Three to rebut Defendants' business necessity argument. For example, the violation letters to Mr. Moya and Mr. Saravia-Cruz base Defendants' unwillingness to renew their leases solely on "unauthorized occupants living in [the] home." Ex. 3 (Plfs' Exhs. 151 and 152). As with the ledgers, the violation notices are relevant to Steps Two and Three because if the Policy itself is the only basis for the discriminatory actions toward the Plaintiffs, it undermines Defendants' arguments that the Policy serves a business necessity.

The rent increase notices are evidence of an additional injury inflicted on the Plaintiffs by the Policy, as the FHA also prohibits discriminatory acts shy of eviction. Additionally, all of these notices are relevant to show the jury the circumstances surrounding the Plaintiffs' departure from the mobile home park. Defendants insist that the Plaintiffs were not evicted, *see, e.g.*, Dkt. 329 at 3; but the notices show that the Plaintiffs were under direct threat of forcible displacement, and moved out of the Park only to avoid that displacement. Without the notices, the jury will not understand just how imminent that threat was, had the Plaintiffs not left.

The notices of month-to-month premium are relevant to Steps Two and Three, as well. Defendants maintain that the Policy protects them from liability under the anti-harboring statute. Dkt. 150 at 25-26. However, evidence of the leniency of consequence for violating this policy— a monthly fee of $100, which Defendants later attempted to raise to $300, Ex. 4 (Plfs' Exh. 153)—undermines Defendants' alleged concern for any criminal liability under a federal statute. This is information the jury will need in assessing Defendants' business necessity.

7

Finally, notices of month-to-month premium—together with ledgers—are directly relevant evidence of the Plaintiffs' damages. It is worth noting as well that some of the Plaintiffs' damages were caused by how precipitously they had to leave, as shown by the various notices.

Contrary to the Defendants' assertions, this evidence does not present a risk of unfair prejudice. Any prejudice caused by Defendants' notices to the Plaintiffs is substantially outweighed by the probative value of those notices, because without them, the jury is left without proof of the dispute. As previously stated, the only statement of stipulated facts governing this matter was that filed in February 2017 (Dkt. 180), which makes no mention of how the Policy at issue was enforced against the Plaintiffs. These exhibits are not so prejudicial as to be unfair, and will provide the jury with the information they need to make findings of fact, and so should not be excluded.

A landlord sent rent increase and eviction notices to its tenants, and the tenants filed a lawsuit contending those rent increase and eviction notices violate federal law. The landlord now seeks to exclude those very notices from evidence. The motion should be denied.

## III. OUTSIDE DOCUMENTS ARE RELEVANT AND ADMISSIBLE.[3]

Outside documents are relevant and necessary to show that there are other measures used in other mobile home parks which would serve the Defendants' business necessity. At Step Three, the Plaintiffs bear the burden of showing that there are alternative, less discriminatory means of achieving Defendants' legitimate business interests. Thus, the Plaintiffs' communications with Defendants, communications with the Defendants on the Plaintiffs' behalf, and documents relating to other properties' policies as to tenant identification are relevant to meet the burden at Step Three.

---

[3] "Outside Documents" refers to Plaintiffs' Exhibits 37, 61-65, 71, 159, and 163.

8

Defendants argue that these documents are unfairly prejudicial because "these documents are meant to imply that Defendants' Policy is somehow improper." Dkt. 329 at 13. Rather than implying, this lawsuit explicitly alleges that the Policy is improper because it disparately impacts the Latino population, and these outside documents are relevant to meet the Plaintiffs' burden of proof as detailed below.

### A.   *Outside Correspondence Is Relevant under Step Two to Rebut Defendants' Alleged Business Necessity.*

Defendants object to the admission of Exhibit 159, a letter and attachments written on behalf of tenants (including the Plaintiffs) by an organization called VOICE. Dkt. 142-49. In the document, VOICE responds to the concern that tenants without a social security number are able to provide alternative forms of identification. The letter lays out a number of options for background checks through the county and through resident screening software. This document is offered not for the truth of the matter therein, but rather to show that Defendants were on notice that their Policy may be unlawful, and that there were other means of carrying out identity and background screenings, which was a stated reason for the Policy. Dkt. 150 at 26-27. This gave Defendants notice and opportunity to investigate the legality of the Policy, which they chose not to do.

Likewise, Defendants argue that an email to Plaintiffs' counsel from a third party is not relevant. Dkt. 329 at 13. To the contrary, the email—from a close friend of the Defendants' owner Albert Dwoskin, stating "Couple and two kids facing eviction Dec 22. But fortunately I am friend with landlord / owner. . . .  Landlord feeling new INS pressure to enforce citizenship rules," Ex. 5 (Plfs' Exh. 163) at 1—could ultimately be admissible as impeachment evidence, with the friend called as an impeachment witness on rebuttal, should Mr. Dwoskin testify at trial (as he is expected to do) that the Policy was enforced uniformly throughout its existence.

9

Finally, Defendants object to the lease and Rules and Regulations of Plaintiff Felix Bolaños and his wife Ruth Rivas at another mobile home park as irrelevant. Ex. 6 (Plfs' Exh. 37 and 55). To the contrary, these documents are relevant evidence on Step Three of the burden-shifting analysis, as they show that Plaintiffs' proffered alternative is not just a hypothetical, but actually in use by other mobile home park landlords in the same county; and are also relevant evidence of the damages Mr. Bolaños and Ms. Rivas suffered when they were forced out of their home by the Policy, and into a much more expensive mobile home park.

**B.** *Evidence of Criminal Background Checks, Screening Reports, and CoreLogic Reports are Relevant under Step Three to show Less Discriminatory Alternatives.*

Despite Defendants' objections, the criminal background check for Mrs. Reyes, Ex. 7 at 1-2 (Plfs' Exh. 61), resident screening reports (Dkt. 142-12 through 142-14), and Core Logic reports for the male Plaintiffs (Dkt. 142-15) are relevant and should be admitted because they respond directly to the Plaintiffs' burden at Step Three to show that there are less discriminatory alternatives to Defendants' Policy. Defendant alleges that the Policy allows them to perform needed credit, identity, and criminal background checks. Dkt. 150 at 26-27. Ms. Reyes' background check, the screening report, and the CoreLogic reports show alternative and reliable means for Defendants to obtain that information without causing a discriminatory effect. Absent this evidence, the jury would have no means of evaluating whether this is even possible and how effective it can be.

Plaintiffs' Exhibit 61, Ex. 7 at 1-2, is a criminal background check executed by Virginia State Police on Plaintiff Rosy Giron de Reyes via her Salvadoran passport. It contains identifying information (including Ms. Reyes's full name, birthdate, and gender) and her criminal history (which comes up blank).

Plaintiffs' Exhibits 62-64, Ex. 7 at 3-26, are resident screening reports run by Defendants on Plaintiffs Mr. Moya, Mr. Reyes, and Mr. Saravia-Cruz. The reports notes each applicant's income and the rent-to-income ratio. Each report includes a credit screening through Equifax showing the applicant's full credit history, including any former names, former addresses, and all bank accounts. For each former address, the reports also show landlord and dates of residence. Finally, the reports include a criminal background check across various jurisdictions. The screening report notes that the criteria for approval is decided by the landlord, and the male Plaintiffs' applications were all approved based on Defendants' criteria. Dkt. 142-12 through 142-14. Plaintiffs' Exhibit 65, Ex. 7 at 27-34, is a collection of the additional screenings performed by CoreLogic on the male Plaintiffs, reflecting the approval of each applicant. Dkt. 142-15.

These exhibits are relevant and necessary at Steps Two and Three. Defendants have argued that the Policy is necessary to obtain criminal, credit, and identity checks. However, the leaseholder in each of the four Plaintiff families was the husband. For each male Plaintiff, the Defendants were in fact able to confirm his identity, obtain a detailed credit and criminal history, and make an informed lease decision. Further, Exhibit 61 shows that identity and criminal background checks can be effectively performed using a foreign passport, and that other local landlords are able to do so. Thus, these exhibits are critical evidence for the jury that there are less discriminatory alternative means of achieving Defendants' alleged business necessities.

## IV. DEFENDANTS PURPORT TO OBJECT TO DOCUMENTS THEY INTEND TO PRODUCE AS EXHIBITS.

Defendants have included among their exhibits to this Motion a number of documents which they intend to produce at trial. *See* Defs' Pretrial Disclosures, Dkt. 314-3; Plfs' Pretrial Disclosures, Dkt. 312-1. Because these documents are admissible as explained above, and

because Defendants concede admissibility by listing them as "will introduce" exhibits for trial, Defendants have waived objection to the following exhibits:

|  | Defendants' Exhibit No. (Dkt. 314-3) | Plaintiffs' Exhibit No. (Dkt. 312-1, as numbered in Dkt. 321) |
|---|---|---|
| Reyes Application for Residency | 29 | 09 |
| Reyes Lease, 2013 | 30 | 40 |
| Reyes Lease, 2014 | 31 | 32 |
| Reyes Rules and Regulations | 33 | 51 |
| Bolaños Application for Residency | 53 | 08 |
| Bolaños Lease, 2012 | 54 | 33 |
| Bolaños Lease, 2013 | 55 | 34 |
| Bolaños Lease, 2014 | 56 | 35 |
| Bolaños Lease, 2015 | 57 | 25 |
| Bolaños Rules and Regulations, 2012 | 58 | 56 |
| Bolaños Rules and Regulations, 2014 | 59 | 46 |
| Bolaños Rules and Regulations | 60 | 47 |
| Moya Application for Residency | 85 | 12 |
| Moya Lease, 2011 | 86 | 28 |
| Moya Lease, 2012 | 87 | 38 |
| Moya Lease, 2013 | 88 | 41 |
| Moya Lease, 01/16/2014 | 89 | 39 |
| Moya Lease, 12/04/2014 | 90 | 42 |
| Moya Rules and Regulations, 2011 | 91 | 57 |
| Moya Rules and Regulations, 01/16/2014 | 92 | 58 |
| Moya Rules and Regulations, 12/04/2014 | 93 | 52 |
| Saravia-Cruz Application for Residency | 99 | 13 |
| Saravia-Cruz Lease, 02/09/2012 | 100 | 30 |
| Saravia-Cruz Lease, 11/14/2012 | 101 | 43 |
| Saravia-Cruz Lease, 11/14/2012 | 102 | 43 |
| Saravia-Cruz Lease, 01/28/2014 | 103 | 31 |
| Saravia-Cruz Lease, 01/15/2015 | 104 | 27 |
| Saravia-Cruz Rules and Regulations, 2012 | 105 | 59 |
| Saravia-Cruz Rules and Regulations, 2014 | 106 | 60 |
| Saravia-Cruz Policies, Rules and Regulations, 2015 | 107 | 50 |
| 21/30 Notice to Jose Reyes | 152 | 158 |
| Violation Letter to Mr. Moya | 153 | 151 |
| Violation Letter to Mr. Saravia-Cruz | 154 | 152 |
| Violation Letter to Mr. Bolaños | 155 | 156 |

## **Conclusion**

For the foregoing reasons, Defendants' Motion *in Limine* (Dkt. No. 329) should be denied.

Respectfully submitted,    Date:   June 4, 2021


_____//s//_____
LEGAL AID JUSTICE CENTER
Simon Sandoval-Moshenberg, VSB #77110
*simon@justice4all.org*
Nady Peralta, VSB #91630
*nady@justice4all.org*
Granville Clayton Warner, VSB #24957
*cwarner@justice4all.org*
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kaiyeu Kevin Chu, VSB #85746
*kevinchu@quinnemanuel.com*
Matthew Traumpan (pro hac vice)
*matthewtraupman@quinnemanuel.com*
1300 I Street NW, Suite 900
Washington, District of Columbia 20005
Phone: (202) 538-8000
Fax: (202) 538-8100

*Counsel for Plaintiffs*

## Certificate of Service

I hereby certify that on this 4th day of June, 2021, I caused the foregoing, along with all attachments thereto, to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing (NEF) to all counsel of record.

_____//s//_____
Simon Sandoval-Moshenberg (VSB No. 77110)
*simon@justice4all.org*
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5605
Fax: (703) 778-3454