**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

ROSY GIRON DE REYES, *et al.*,

       *Plaintiffs*,

  vs.

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, *et al.*,

       *Defendants*.

Civ. No. 1:16-cv-00563 (LO/TCB)

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE OF DAMAGES**

Plaintiffs, by counsel, hereby submit the following Memorandum of Law in opposition to Defendants' Motion *in Limine* to Exclude Evidence of Damages (Dkt. No. 337), and respectfully represent as follows:

**Background**

Because compensatory and punitive damages may be awarded in disparate impact claims under the Fair Housing Act ("FHA"), 42 U.S.C. § 3613(c)(1), Defendants' principal argument in their Motion *in Limine* to Exclude Evidence of Damages, Dkt. No. 337, is without merit. Defendants rely on interpretations of Title VII of the Civil Rights Act of 1964 to argue that damages are unavailable in such claims, but in doing so ignore the definitive consensus under the FHA itself.

This case is about the disparate impact that Defendants' policy ("the Policy") had on Plaintiffs, as Latino residents of the Waples Mobile Home Park ("the Park"). By the beginning of 2016, Defendants began to enforce the Policy against the Plaintiffs, which required them to provide certain documentation related to their legal status. *See*, *e.g.*, Dkt. No. 4-3; Dkt. No. 4-7.

1

As a result, Plaintiffs paid increased rent,[1] faced eviction proceedings,[2] and eventually found no other choice but to move out of the Park.[3] Plaintiffs and their children experienced stress, loss of employment, educational disruption, and emotional distress as a result of this forced relocation.[4]

Defendants contend that Plaintiffs' evidence and argument regarding damages should be excluded from trial because damages are not available for disparate impact claims under the FHA. But that isn't true; damages are available for FHA disparate impact claims, and courts routinely award them. In the alternative, Defendants contend that the trial for liability and damages should be bifurcated. There is no support for that contention, either: Defendants have presented only vague contentions that they face prejudice, and thus fail to meet their burden to show bifurcation is necessary. What is more, bifurcation would needlessly inconvenience both the parties and the Court, separate dependent issues, and further tax the Court's limited resources.

For these reasons, the Motion *in Limine* should be denied.

## Argument

**I.    Because compensatory and punitive damages are available in disparate impact claims, evidence and argument regarding both types of damages should not be excluded from trial.**

### A.    Under the FHA, actual damages are available in disparate impact cases.

Actual damages are available in disparate impact cases under the FHA, including compensatory damages for out-of-pocket losses, as well as non-monetary injuries such as

---

[1] *See, e.g.*, Ex. 1 (Moya Yrapura Dep. Tr.) 56:5-14 (increased rent at Park).
[2] *See, e.g.*, Ex. 2 GIRON00000698 (Eviction Letter to Jose Reyes (2/4/2016)).
[3] *See, e.g.*, Ex. 3 (Amaya Iraheta Dep. Tr.) 35:13-36:9 (stating that, if Plaintiff could not live in the Park because of the Policy, whole family was forced to move).
[4] *See, e.g.*, Ex. 4 (Rivas Abarca Dep. Tr.) 132:16-133:16 (stress, lost employment, higher rent in new residence).

emotional distress and reputational harm. *See* 42 U.S.C. § 3613(c)(1); *F.A.A. v. Cooper*, 566 U.S. 284, 292 (2012) (citing *Steele v. Title Realty Co.*, 478 F.2d 380, 384 (10th Cir. 1973) ("emotional distress and humiliation")); *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34 (2nd Cir. 2015) (sustaining jury verdict including damages for actual costs and reputational harm); *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 544 (6th Cir. 2014) (awarding compensatory damages for being forced to move from home); *Banai v. U.S. Dep't of Hous. & Urban Dev. ex rel. Times*, 102 F.3d 1203, 1207 (11th Cir. 1997) ("anger, embarrassment, and emotional distress"); *R.I. Com'n for Human Rights v. Graul*, 120 F. Supp. 3d 110, 131 (D. R.I. 2015) ("emotional distress"); *Rivera v. Inc. Vill. of Farmingdale*, 29 F. Supp. 3d 121, 134 (E.D.N.Y. 2013) (denying motion *in limine* to exclude photographic evidence of community activity because relevant to damages for emotional distress and "loss of enjoyment of life" in disparate impact and disparate treatment claims).[5]

Defendants' arguments are based on (1) a novel reading of *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542 (2015), and (2) cases arising under Title VII of the Civil Rights Act of 1964. Both arguments fail.

(1)    Defendants attempt to extrapolate from the "robust causality" standard set out in *Inclusive Communities* to limit the remedies available under the FHA. Defendants' Memorandum ("Def. Mem.") Dkt. No. 338 at 5-6, 9 (citing robust causality requirement as grounds that "*Inclusive Communities* established substantial limitations to FHA disparate impact claims"). Yet, courts ruling after *Inclusive Communities* have continued to hold that

---

[5] Defendants cite to *Smith v. Town of Clarkton*, as an example of the denial of damages in a disparate impact case. 682 F.2d 1055, 1059 (4th Cir. 1982). But in that case the Court did not discuss the general availability of damages in disparate impact cases; instead, it merely affirmed the trial court's discretion to fashion an appropriate remedy.

compensatory damages, including for emotional distress, are available in disparate impact claims. *See, e.g.*, *Anderson Grp.*, 805 F.3d 34 (awarding damages for actual costs and reputational harm); *R.I. Com'n for Human Rights*, 120 F. Supp. 3d at 131 ("emotional distress"); *City of Philadelphia v. Wells Fargo & Co.*, No. 17-2203, 2018 WL 424451 at *5 (E.D. Pa. Jan. 16, 2018) (finding non-economic injuries generally cognizable under FHA, especially when plaintiff spent resources to combat noneconomic harm).

In fact, the robust causality requirement has nothing to do with damages at all. Instead, it addresses questions of <u>causation</u> – the robust causality requirement protects Defendants from liability for racial disparities they did not cause, it does not limit remedies once they are found liable. *See Inclusive Communities*, 576 U.S. at 542 (robust causality requirement is a "safeguard at the prima facie stage" for "demonstrating a causal connection" between defendant's conduct and effects). Defendants then rely on the Court's reasoning that after a finding of liability, remedies should "concentrate on the elimination of the offending practice." Def. Mem. at 6; *Inclusive Communities*, 576 U.S. at 544-45. However, with this statement, the Court specifically cautioned against the imposition of racial quotas as relief, but made no cautionary statement on damages. *Inclusive Communities*, 576 U.S. at 544-45. In fact, in disparate impact claims, damages remedies are often recognized as viable alternatives to injunctive relief in order to eliminate the offense. *See, e.g.*, *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 386 (3rd Cir. 2011) (considering compensation to obtain housing after relocation a potential remedy); *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 87 (2nd Cir. 2000) (finding standing on disparate impact claim seeking no injunctive relief, only compensatory relief for paying for housing "made unavailable"), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Hispanics United of DuPage Cty. v. Vill. of*

*Addison*, 988 F. Supp. 1130 (N.D. Ill. 1997) (upholding disparate impact settlement including compensation for property value loss after displacement, relocation benefits, and damage fund of $100,000 for damages not directly related to residence loss).

(2)    Next, Defendants rely on Title VII to argue that the FHA should be interpreted to preclude damages in disparate impact claims. Def. Mem. at 5-7. But the FHA and Title VII, which governs employment discrimination claims, expressly diverge with respect to damages. While the text of Title VII explicitly disallows damages in disparate impact cases, the FHA does not: instead, the FHA states that actual damages are available upon a finding of any "discriminatory housing practice." *Compare* 42 U.S.C. § 3613(c)(1) ("if the court finds that a discriminatory housing practice has occurred . . . the court may award to the plaintiff actual and punitive damages") *with* 42 U.S.C. § 1981a(a)(1) ("in an action . . . against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) . . . [plaintiff] may recover compensatory and punitive damages").

Furthermore, the FHA shows no Congressional intent to limit remedies; in fact, the actions of Congress indicate the opposite. There is a general presumption that a "full panoply" of remedies is available under a certain cause of action, unless Congress has expressly indicated a contrary intent. *Pandazides v. Va. Bd. of Educ.*, 13 F.2d 823, 830 (4th Cir. 1994) citing *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 65-66 (1992). When Congress amended the FHA in 1988, it was well aware of the consensus in the courts recognizing disparate impact claims, and "made a considered judgment to retain the relevant statutory text," which allowed damages for such claims. *Inclusive Communities*, 576 U.S. at 536 ("By [1988], all nine Courts of Appeals to have addressed the question had concluded the Fair Housing Act encompassed disparate-impact

claims") (citing cases). Soon after in 1991, Congress explicitly barred punitive and compensatory damages in employment discrimination cases involving disparate impact, 42 U.S.C. § 1981a(a)(1), but took no such action with respect to the Fair Housing Act. [6]

Indisputably, compensatory damages are available for disparate impact claims under the FHA. They are widely awarded for precisely the injuries experienced by Plaintiffs. Thus, it is the jury's role to weigh the evidence and determine the compensatory damages and equitable relief appropriate to remedy any discriminatory housing practices.

B. Punitive damages are also available in disparate impact cases under the FHA.

Unlike Title VII, the FHA does not restrict punitive damages to intentional discrimination cases. 42 U.S.C. § 3613(c)(1); *see*, *e.g.*, *Fair Hous. Ctr. of Wash. v. Brier-Scheetz Props., LLC*, 743 Fed. App'x 116, 118 (9th Cir. 2018) (affirming, post-*Inclusive Communities*, award of punitive damages for FHA disparate impact claim). A jury may evaluate the appropriateness of punitive damages in civil rights cases in two instances: cases of intent, or when the defendant's conduct "involves reckless or callous indifference to the federally protected rights of others."

---

[6] Defendants also look to Title II of the Americans with Disabilities Act or Section 504 of the Rehabilitation Act of 1973 to argue that damages are not available in disparate impact suits. Def. Mem. at 6-7. However, this comparison is even more attenuated. The Fourth Circuit has held that a full array of damages is available for intentional violations of Section 504, but based this conclusion on Title IX jurisprudence and the nearly identical operative language of Title IX and Section 504. *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 829-30, 831 (4th Cir. 1994). In *Pandazides*, the Fourth Circuit used the Title VII distinction between intentional and disparate impact cases not to limit damages, but to clarify that intentional discrimination and disparate treatment cases are the same under Section 504. *Id.* at n.9. Finally, Defendants cite to *Paulone v. City of Frederick*, which actually supports the availability of damages here. In *Paulone*, the Court found that damages could be available in reasonable accommodations cases under Title II or Section 504, even if the defendants were not motivated by intent but by indifference. 787 F. Supp. 2d 360, 373 (D. Md. 2011). The reasoning that damages are available under Title II or Section 504 where there is no intent to discriminate supports, rather than undermines, the availability of damages in FHA disparate impact claims.

*Smith v. Wade*, 461 U.S. 30, 56 (1983); *Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402, 449 (E.D. Va. 2011) (applying *Smith* standard to FHA case), *aff'd in part, vacated in part sub nom. Matarese v. Archstone Cmty., LLC*, 468 F. App'x 283 (4th Cir. 2012); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (applying *Smith* standard to FHA cases).

In the context of housing discrimination, reckless indifference does not require egregious conduct, but refers to the defendant's knowledge that the conduct may be violating federal law. *See Alexander v. Riga*, 208 F.3d 419, 431 (3rd Cir. 2000) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)). Knowledge justifying punitive damages includes discrimination in the face of a "perceived risk" that the conduct will violate federal law. *Kolstad*, 527 U.S. at 536; *see United States v. Scott*, 809 F. Supp. 1404 (D. Kan. 1992) (awarding punitive damages when defendants had knowledge of the FHA and continued to pursue related state court claims). A defendant can become aware of the potential violation of federal rights over time. Continuing to enforce a policy despite "several wake-up calls" about its disparate impact, including an expert opinion and a court ruling, constitutes reckless indifference. *Fair Hous. Ctr. of Wash.*, 743 Fed. App'x at 118; *see also Alexander*, 208 F.3d at 431 (inferring recklessness from defendant's repeated conduct in violation of plaintiffs' rights, and misrepresentations to justify conduct).

Defendants were aware of the perceived risk that the Policy violated the FHA long before trial.[7] Notably, Defendants' principal argument against liability – their contention that their

---

[7] *See*, *e.g.*, Dkt. No. 1 (Complaint); *See also* Antonio Olivo, "Without Social Security numbers, illegal immigrants face eviction," The Washington Post (Feb. 10, 2016), *available at* https://www.washingtonpost.com/local/virginia-news/without-social-security-numbers-illegal-immigrants-face-eviction/2016/02/10/2fcd64c2-ca9d-11e5-a7b2-5a2f824b02c9_story.html ("The owners of a Northern Virginia mobile-home park are trying to evict about 15 residents who don't have Social Security numbers and are in the country illegally, an effort that attorneys for the families say violates federal and state fair housing laws. . . . Lawyers with the Legal Aid Justice Center are fighting the eviction proceedings in Fairfax County's General District Court, arguing that Waples Mobile Home Park is discriminating against the residents by refusing to accept as

alleged compliance with the anti-harboring statute, 8 U.S.C. § 1324, is a legitimate business justification on step 2 of the disparate impact standard – was briefed and presented to the Fourth Circuit. Dkt. No. 98 at 19. Should the anti-harboring statute have provided a defense to the disparate impact claim, the Fourth Circuit would surely have so held. Defendants' argument concerning that statute did not require fact development on remand; the argument is based entirely on the Fourth Circuit's unpublished opinion in *United States v. Aguilar*, 477 F. App'x 1000 (4th Cir. 2012). Certainly the appellate court would not have sent the case back and forced this Court and the parties to go through a trial if the anti-harboring statute barred Plaintiffs' claims. Accordingly, Defendants' conduct meets the standard for punitive damages because they have persisted in enforcing the Policy for many years, despite knowing that their conduct may be violating Plaintiffs' federally protected rights to fair housing.

At issue for trial is the legitimacy of Defendants' business justification for the Policy. Defendants assert that the Policy is necessary to serve several valid interests, including identity verification, to conduct criminal background checks, to avoid eviction loss, and to avoid liability under the anti-harboring statute. Dkt. No. 283 at 1. The jury may find, as Plaintiffs contend, that Defendants' Policy did not serve a legitimate business necessity or that the purported business interests were post-hoc justifications for the Policy. *Id.* at 2. It is then the jury's role to determine whether Defendants' enforcement of the Policy showed the requisite knowledge under the punitive damages standard, and award punitive damages if appropriate.

C.  Defendants raise matters of law that would have been proper on summary judgment but are counter to the purpose of a motion *in limine*.

---

proof of identity tax identification numbers that the Internal Revenue Service provides to non-U.S. citizens working in the country.").

A motion *in limine* is intended "to allow a court to rule on <u>*evidentiary*</u> issues in advance of trial." *United States v. Verges*, 2014 WL 559573 at *2 (E.D. Va. Feb. 12, 2014) (emphasis supplied). The availability of damages under a particular statute is not an "evidentiary issue"; instead, it is a matter of law proper for summary judgment. *See*, *e.g.*, *McLean v. City of Alexandria*, 106 F. Supp. 3d 736, 743-44 (E.D. Va. 2015) (finding nominal damages available as matter of law on summary judgment under 1983 claim for First Amendment violation); *Volette v. Watson*, 937 F. Supp. 2d 706, 715 (E.D. Va. 2013) (finding damages unavailable on summary judgment because of Eleventh Amendment sovereign immunity); *Kittrell v. RRR, LLC*, 280 F. Supp. 2d 517 (E.D. Va. 2003) (striking, on summary judgment, plaintiff's attempt to recover statutory and actual damages from both defendants under the Consumer Leasing Act, based on Congressional intent). Defendants' argument here rests solely on the availability of damages in disparate impact claims as a matter of law, not on their admissibility as a matter of evidence. In fact, Defendants cite no evidentiary rule as grounds for exclusion. *See* Dkt. No. 338.

Defendants have already had several opportunities to raise summary judgment issues, including in response to the Court's April 7, 2020, order directing the parties to conduct supplemental briefing and address whether any remaining questions are "jury issues or questions for the court to resolve on summary judgment." Dkt. No. 273 at 5. Defendants filed extensive additional briefing, stating that "there are multiple issues that remain for this Court to decide," but they did not dispute the availability of damages as a matter of law. Dkt. No. 276 at 1.[8] They should not be permitted to raise the issue now.

---

[8] In addition, Defendants filed a Motion to Clarify and/or Reconsider the August 19, 2020 Order denying Defendants' Motion for Summary Judgment, which was also denied. Dkt. No. 298.

**II.    Issues of liability and damages should not be bifurcated because bifurcation does not serve efficiency or convenience, enhance judicial economy, or avoid prejudice.**

The basis for Defendants' alternative argument, that the trial on liability and damages should be bifurcated, is Federal Rule of Civil Procedure 42(b), which provides that the trial court may separate issues in a trial for "convenience, to avoid prejudice, or to expedite and economize." Bifurcation is an exception, not the general rule. *See* Fed. R. Civ. P. 42, advisory committee's note to 1966 Amendment. Furthermore, it is the Defendants' burden, as the party moving for bifurcation, to prove that the Court exercising its discretion to bifurcate will promote the above factors. *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 975 (4th Cir. 2020).

In this case, none of the Rule 42(b) factors justifies bifurcation.

First, bifurcation here would cause inefficiency and inconvenience. There are only eight named Plaintiffs (four married couples). Any damages related to Plaintiffs' rent increases, threats of eviction, or forced relocation from the Park are shared by household, further streamlining the issues. Plaintiffs' testimony, not including Spanish-English interpretation, would last less than an hour each, including liability and damages; all told, this trial will last less than a week. Separate trials would be inconvenient for witnesses who would be called multiple times. Sending the jury out to deliberate twice would be more time-consuming for the jurors and for the court. Even if the jury should not find the Defendants liable for violations of the FHA, bifurcation would not save substantial time, because evidence of damages is simple.

Once this jury trial can safely be scheduled in light of the COVID-19 pandemic, efficient resolution of this case will allow the Court to free up judicial resources to deal with the backlog of pending cases. Because the trial may be scheduled when risk of COVID-19 infection is lower

but not eradicated, a consolidated trial will also minimize potential exposure for the parties, witnesses, jurors, and the Court.

Finally, Defendants argue that they face prejudice in two ways: from Plaintiffs' testimony about the Policy's impact, and because evidence relevant to punitive damages could improperly prejudice the jury's finding of liability. Def. Mem. at 11-12. First, Defendants have failed to meet their burden that there is sufficient evidence of prejudice to warrant bifurcation. They state vaguely that Plaintiffs' testimony about moving out of the Park will be "emotional," Dkt. No. 338 at 11, but that testimony will not be out of the ordinary: Plaintiffs will simply describe the impact that Defendants' Policy had on them. Should bifurcation be appropriate on this exceedingly low standard, bifurcation would surely be justified in all cases where damages are at issue. Next, Defendants claim that evidence pertaining to punitive damages could be prejudicial because revealing Defendants' net worth could adversely affect the determination of liability. Dkt. No. 388 at 11. Plaintiffs will not introduce evidence or ask questions regarding Defendants' net worth; accordingly, that will not be an issue.

In addition, even if Defendants could prove prejudice in this case, bifurcation is not appropriate because the evidence about liability and punitive damages are inextricable. *McKiver*, 980 F.3d at 975 (holding bifurcation is exception because evidence of liability and damages typically overlaps substantially; norm is one trial with clear jury instructions on damages standard). For example, Defendants contend that the Policy is justified by legitimate business interests, a key issue for liability. In order to weigh punitive damages, the jury will need to consider whether Defendants' conduct constituted discrimination in the face of a perceived risk that they were violating Plaintiffs' rights. When and why Defendants justified the Policy is directly relevant to their knowledge for purposes of punitive damages. Bifurcation would simply

11

require repetition of the same evidence in two trials, and any potential prejudice would not be avoided.

## Conclusion

For the foregoing reasons, Defendants' Motion *in Limine* (Dkt. No. 337) should be denied.

Respectfully submitted,                    Date:   June 4, 2021


_____//s//_____
LEGAL AID JUSTICE CENTER
Simon Sandoval-Moshenberg, VSB #77110
*simon@justice4all.org*
Nady Peralta, VSB #91630
*nady@justice4all.org*
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kaiyeu Kevin Chu, VSB #85746
*kevinchu@quinnemanuel.com*
Matthew Traupman (pro hac vice)
*matthewtraupman@quinnemanuel.com*
1300 I Street NW, Suite 900
Washington, District of Columbia 20005
Phone: (202) 538-8000
Fax: (202) 538-8100

*Counsel for Plaintiffs*

**<u>Certificate of Service</u>**

I hereby certify that on this 4th day of June, 2021, I caused the foregoing, along with all attachments thereto, to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing (NEF) to all counsel of record.


_____//s//_____
Simon Sandoval-Moshenberg (VSB No. 77110)
*simon@justice4all.org*
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5605
Fax: (703) 778-3454

13