UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, <br><br> *Defendants*. | Civ. No. 1:16-cv-00563 (LO/TCB) |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE ARGUMENT QUESTIONING WHETHER VALID INTERESTS FOR THE POLICY WERE IN PLACE AT THE TIME OF THE POLICY'S ADOPTION**

Plaintiffs, by counsel, hereby submit the following Memorandum of Law in opposition to Defendants' Motion *in Limine* to Exclude Argument Questioning Whether Valid Interests for the Policy Were in Place at the Time of the Policy's Adoption (ECF No. 342, the "Motion").

**INTRODUCTION**

In seeking to exclude argument questioning whether Defendants' claimed "valid interests"—*i.e.*, (1) to confirm lease applicants' identities, (2) to perform credit and criminal background checks, (3) to minimize loss from eviction, (4) to avoid potential criminal liability for harboring illegal aliens under the Immigration Reform and Control Act, 8 U.S.C. § 1324, and (5) to underwrite leases, *see, e.g.,* Dkt. No. 248 at 2—motivated the adoption for the Policy, Defendants seek to conceal from the jury that these purported interests are not "business necessities," as required by step two of the *Inclusive Communities* disparate impact analysis, but are instead *post hoc* justifications crafted for this litigation. The case law, however, is clear that a key consideration in determining whether a purported interest rises to the level of a "business necessity" as envisioned by step two is whether the interest actually motivated the creation of the

1

policy at issue in the first place. This, in turn, impacts the "business necessities" that Plaintiffs' alternative to the Policy must satisfy under step three. Thus, the question of whether Defendants' purported interests motivated the adoption of the Policy is far from irrelevant to this case; indeed, it is central to it.

Moreover, the risk of any prejudice from such evidence is not substantially outweighed by its probative value. Plaintiffs do not intend to use this evidence to show that the Policy was improperly motivated; indeed, they have moved *in limine* to exclude evidence of Defendants' relationship with the Latino community at large, *see* Dkt. No. 332 at 17-19. The only impact of such evidence would be to narrow the number of "business necessities" that the jury must consider at steps two and three which, although obviously prejudicial to Defendants' case, is not *unfairly prejudicial* and is highly probative of Plaintiffs' case. As such, evidence and argument regarding whether Defendants' purported interests for the Policy were in place at the time of the Policy's adoption are not only relevant to, but highly probative of, whether Defendants have satisfied their burden under step two of the *Inclusive Communities* analysis. Defendants' Motion therefore should be denied.

## BACKGROUND

In order to satisfy step two of the *Inclusive Communities* analysis, the Fourth Circuit held that "the defendant has the burden of persuasion to state and explain the valid interest served by the policies. . . . (. . . this step is analogous to Title VII's business necessity standard)." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 424 (4th Cir. 2018), *cert. denied sub nom. Waples Mobile Home Park Ltd. P'ship v. de Reyes*, 139 S. Ct. 2026, 204 L. Ed. 2d 218 (2019) (citations omitted). To explore Defendants' theories as to how they met this requirement, Plaintiffs issued written discovery requests on this topic, including by serving an interrogatory seeking that

Defendants "[d]escribe all policies and practices, including the Policy at issue in this action, used for leasing, or renewing leases to, Lots at the Park since 2006, and, in doing so . . . include the reasons for creating, developing, modifying, and enforcing each policy or practice." Ex. 1 (Defendants' Objectives and Responses to Plaintiffs' Interrogatories) at 1. Defendants responded that "[t]he reasons for creating the policy are to confirm the identity of the applicant(s) and any adult occupants, to perform credit checks, minimize identity fraud, and to eventually perform criminal background checks, and minimize loss from eviction." *Id.* at 2. At Plaintiffs' deposition of Mark Jones, Defendants' corporate representative, Mr. Jones also testified that the Policy was required by the federal anti-harboring statute, 8 U.S.C. § 1324. *See* Dkt. No. 138, Ex. 21 (Rule 30(b)(6) Dep. Tr.) at 139:6-140:21.

Nevertheless, during their depositions, Defendants' witnesses largely disclaimed knowledge for the reasons the Policy was implemented:

- Albert Dwoskin, Defendants' President and CEO, testified that it had been fifteen to twenty years since he was involved in developing Defendants' rental policies, and admitted that he was only familiar with the policies at issue by virtue of the litigation. *See* Dkt. No. 138, Ex. 25 (Dwoskin Dep. Tr.) at 50:12-52:5. Other than that, he refused to testify to the reasons underlying the Policy, incorrectly claiming that he had already testified to same. *Id.* at 78:19-84:13. In doing so, he claimed to rely on counsel's improper instruction not to answer due to the question's cumulative nature. *See* Dkt. No. 332, Ex. 1 (Dwoskin Tr.) at 80:23-84:13.

- Carolina Easton, Defendants' former Quality Control Manager, similarly disclaimed knowledge of the reasons behind the Policy, stating that she was not involved in creating it. *See* Dkt. No. 332, Ex. 2 (Easton Dep. Tr.) at 30:10-16; *see also id.* at 178:25-179:8.

- Peter Williams, Defendants' former Director of Commercial Leasing and General Manager, testified that he was unware of the reasons the Policy was created. *See* Dkt. No. 332, Ex. 3 (Williams Dep. Tr.) at 53:4-9. Instead, he testified to what he understood to be three "guiding principles": verifying identity, conducting criminal background checks, and lease underwriting. *Id.* at 52:6-53:5.

- Josephine Giambanco, Defendants' former property manager, testified that she had no understanding of the reasons behind the Policy, and instead just "follow[ed] [the Policy] to the best of [her] knowledge." Dkt. No. 332, Ex. 4 (Giambanco Dep. Tr.) at 57:15-25.

3

While Mr. Jones was able to testify to the reasons for the Policy that Defendants identified in their interrogatory response, *see* Dkt. No. 138, Ex. 21 (Rule 30(b)(6) Dep. Tr.) at 139:6-140:21, even he admitted that his knowledge was limited. Specifically, Mr. Jones testified that his understanding of Defendants' potential liability under the anti-harboring provision was largely based on his conversations with litigation counsel. *See* Ex. 5 (Rule 30(b)(6) Dep. Tr.) at 227:18-228:5. He also testified that there was "nothing specific" that he believed would subject Defendants to criminal liability for leasing to undocumented immigrants. Dkt. No. 138, Ex. 21 at 138:18-139:5.

Most tellingly, none of Defendants' witnesses were able to testify as to the reasons that motivated the Policy's adoption in the first place.

## ARGUMENT

### I. WHETHER THE PURPORTED "INTERESTS" UNDERLYING THE POLICY MOTIVATED ITS ADOPTION IS RELEVANT TO THIS CASE

Defendants' first argument, that whether Defendants' purported business interests prompted them to adopt the Policy is irrelevant, is plainly misplaced. As noted above, to satisfy their burden under step two of the *Inclusive Communities* framework, Defendants must "explain the valid interest served by the policies. . . . (. . . this step is analogous to Title VII's business necessity standard)." *Reyes*, 903 F.3d at 424 (citations omitted). The Fourth Circuit has held that the "business necessity" standard is a "*different and more difficult*" standard than the step two of the disparate treatment framework, which requires a defendant to show a legitimate, non-discriminatory reason for the challenged practice. *Betsey v. Turtle Creek Assocs.,* 736 F.2d 983, 988 (4th Cir. 1984) (emphasis added). It therefore comes as no surprise that courts have found that "[a] reason is not 'legitimate' or 'valid' if it was not present at the time [of] a rule's adoption, but rather is a *post hoc* rationalization for a discriminatory policy, or when the justification is

4

otherwise arbitrary." *Treece v. Perrier Condominium Owners Ass'n, Inc.,* 2020 WL 759567, at *18 (E.D. La. Feb. 14, 2020). *See also Fair Hous. Ctr. of Wash. v. Breier-Scheetz Props., LLC*, 2017 WL 2022462, at *4 (W.D. Wash. May 11, 2017) (finding that purported business interest was "[nothing] more than an arbitrary, *post-hoc* justification for a discriminatory policy," and thus did not satisfy step two of *Inclusive Communities* framework).

This interpretation also aligns with the United States Department of Housing and Urban Development's ("HUD") guidance on this issue. Notably, Defendants' Motion does not present any case law to the contrary. Regarding step two of the disparate impact analysis, the HUD regulations state that a legally sufficient justification for a challenged policy or practice (1) "exists where the challenged practice [ ] is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the [defendant]"; and (2) "*must be supported by evidence* and may not be hypothetical or speculative." 24 C.F.R. §100.500(a)(1), (b)(2) (emphasis added). In interpreting this provision, HUD has explained that "whether an interest is 'legitimate' is judged on the basis of objective facts establishing that the proffered justification is genuine, *and not fabricated or pretextual*." *Implementation of the Fair Housing Act's Discriminatory Effects Standard,* 78 F.R. 11460-01, 2013 WL 550406 (Feb. 15, 2013) (emphasis added). Both the interpretations by federal courts and by HUD ensure that step two of the analysis does not swallow step one by allowing *any* potential business interest, whether it actually motivated the creation of a challenged policy or not, to overcome a plaintiffs' showing of a *prima facie* case of disparate impact.

That none of Defendants' witnesses can articulate the particular business interests that motivated the creation of the Policy is relevant to whether such interests are compelling enough to rise to the level of a business necessity. This is particularly true of Defendants' purported

5

interest in avoiding prosecution under the federal anti-harboring statute, of which Plaintiffs have reason to believe Defendants were not aware until after this litigation was filed. *See supra* at 4 Thus, evidence of whether Defendants' purported business interests influenced them to adopt the Policy is relevant to this case, and Plaintiffs should be permitted to present same to the jury.

## II. THE PROBATIVE VALUE OF THIS EVIDENCE IS NOT SUBSTANTIALLY OUTWEIGHED BY POTENTIAL PREJUDICE

Federal Rule of Evidence 403, the alternative basis on which Defendants seek to exclude evidence of whether Defendants' purported business interests motivated the creation of the Policy, provides, "The court may exclude relevant evidence *if its probative value is substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." (emphasis added). That is simply not the case here. As an initial matter, evidence does not become "unfair[ly] prejudicial" simply because it damages a party's case; instead "unfair prejudice" arises "when 'there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and . . . this risk is disproportionate to the probative value of the offered evidence.'" *PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 124 (4th Cir. 2011) (quoting *United States v. Hammoud*, 381 F.3d 316, 341 (4th Cir.2004)). Contrary to what Defendants have argued, Plaintiffs are more than entitled to argue that the jury should question the validity of Defendants' purported business interests. ECF No. 342 at 6. Such a line of argument is not unfairly prejudicial—it is *Defendants' burden* to demonstrate to the jury that these interests are "sufficiently compelling to justify the challenged practice," *Betsey,* 736 F.2d at 988, and Plaintiffs can, and will, argue that Defendants have not met that burden.

In addition, "the unfair prejudice must *substantially* outweigh the probative value of the evidence." *United States v. Williams*, 445 F.3d 724, 730 (4th Cir.2006) (emphasis in original)

6

(quoting *Hammoud*, 381 F.3d at 341. *See also United States v. Benkahla*, 530 F.3d 300, 310 (4th Cir. 2008). The evidence that Defendants' alleged business interests did not motivate them to adopt the Policy is not inflammatory in any way; there is no statement or implication that the Defendants are racist or have improper animus toward Latinos that might prompt the jury to draw improper conclusions that would be detrimental to this case. Indeed, as noted previously, *see supra* at 2, Plaintiffs have moved *in limine* to exclude evidence of Defendants' relationship with the Latino community at large. *See* Dkt. No. 332 at 17-19. It would make no sense for Plaintiffs to now seek to introduce the very evidence they are affirmatively seeking to exclude. On the flip side, however, it is highly probative of whether Defendants have met their burden under step two. It therefore cannot be said that the risk of unfair prejudice substantially outweighs the evidence's probative value to merit its exclusion under Rule 403.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion *in Limine* to Exclude Argument Questioning Whether Valid Interests for the Policy Were in Place at the Time of the Policy's Adoption.

Respectfully submitted,

_____//s//_____   Dated: June 4, 2021
LEGAL AID JUSTICE CENTER
Simon Sandoval-Moshenberg, VSB #77110
Nady Peralta, VSB #91630
Granville C. Warner, VSB 24957
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454
simon@justice4all.org
nady@justice4all.org
cwarner@justice4all.org

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Kaiyeu Kevin Chu, VSB #85746
Matthew Traupman (pro hac vice)
1300 I Street NW, Suite 900
Washington, District of Columbia 20005
Phone: (202) 538-8000
Fax: (202) 538-8100
kevinchu@quinnemanuel.com
matthewtraupman@quinnemanuel.com

*Counsel for Plaintiffs*

**Certificate of Service**

I hereby certify that on this 4th day of June, 2021, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

_____//s//_____
Simon Sandoval-Moshenberg, VSB #77110
*simon@justice4all.org*
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454