# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

ROSY GIRON DE REYES, *et al.*,

          Plaintiffs,

v.

WAPLES MOBILE HOME PARK
LIMITED PARTNERSHIP, *et al.*,

          Defendants.

Civil No.:  1:16-cv-563 (LO) (TCB)

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO AMEND EXHIBIT LIST AND WITNESS LIST

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 4

LEGAL STANDARD .......................................................................................... 7

I.      FED R. CIV. P. 6(b)(1)(B)........................................................................ 7

II.     FED. R. CIV. P. 37(c) ............................................................................... 8

III.    FED R. EVID. 1006 ................................................................................... 9

ARGUMENT ..................................................................................................... 10

I.      PLAINTIFFS CANNOT DEMONSTRATE EXCUSABLE NEGLECT UNDER
        RULE 6(b)(1)(B) ...................................................................................... 10

        A.      Plaintiffs Present No Reason For Their Six-Month Delay In Seeking to
                Supplement Their Disclosures ................................................... 11

        B.      Plaintiffs' Motion is Not Filed in Good Faith ............................ 12

        C.      Defendants Face Substantial Prejudice ...................................... 14

        D.      Length of Delay and Its Impact On Judicial Proceedings ............ 16

II.     RULE 37(c) DOES NOT APPLY, NONETHELESS, PLAINTIFFS' LATE
        DISCLOSURE IS NOT SUBSTANTIALLY JUSTIFIED OR HARMLESS ................. 16

III.    THE PURPORTED SUMMARY CHART IS NOT ADMISSIBLE UNDER FED
        R. EVID. 1006 ....................................................................................... 22

CONCLUSION ................................................................................................. 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Campbell v. U.S.*,
No. 3:10-CV-363, 2011 WL 588344 (E.D. Va. Feb. 8, 2011), *aff'd*, 470 F.
App'x 153 (4th Cir. 2012), *and aff'd*, 470 F. App'x 153 (4th Cir. 2012)........................20, 21

*Colony Apartments v. Abacus Project Mgmt.*,
197 F. App'x 217 (4th Cir. 2006) ................................................................. *passim*

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
847 F. Supp. 2d 843 (E.D. Va. 2012) ...............................................................18

*Harvick v. Oak Hammock Pres. Cmty. Owners Ass'n Inc.*,
No. 614CV937ORL40GJK, 2016 WL 362434 (M.D. Fla. Jan. 29, 2016) .......................13, 21

*Jade Trading, LLC v. United States*,
67 Fed. Cl. 608 (2005) ...................................................................9, 22

*Perez v. City of Batavia*,
No. 98 C 8226, 2004 WL 2967153 (N.D. Ill. Nov. 23, 2004)................................21

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993)..................................................................7

*Rodriguez v. Bexar Cty., Tex.*,
385 F.3d 853 (5th Cir. 2004) ...............................................................15

*Samsung Elecs. Co. v. Nvidia Corp.*,
314 F.R.D. 190 (E.D. Va. 2016) ................................................................19, 20

*Southern States Rack And Fixture, Inc. v. Sherwin-Williams Co.*,
318 F.3d 592 (4th Cir. 2003) ...........................................................3, 4, 8, 17, 20

*Thompson v. E. I. DuPont de Nemours & Co.*,
76 F.3d 530 (4th Cir. 1996) ..................................................................7

*United States v. Grajales-Montoya*,
117 F.3d 356 (8th Cir. 1997) .................................................................10, 19, 23

*United States v. Janati*,
374 F.3d 263 (4th Cir. 2004) .............................................................9, 10, 22, 23

*United States v. Oloyede*,
933 F.3d 302, 310 (4th Cir. 2019), *cert. denied sub nom.*, 140 S. Ct. 1212
(2020), 140 S. Ct. 1213 (2020), and 140 S. Ct. 2554 (2020).................................9, 10, 22, 23

*United States v. Simmons*,
No. 18-4875, 2021 WL 2176575 (4th Cir. May 28, 2021) .................................................9, 22

*Wilkins v. Montgomery*,
751 F.3d 214 (4th Cir. 2014) ...........................................................................................9, 17

*Zaklit v. Global Linguist Solutions, LLC*,
2014 WL 4925780 (E.D. Va. Sept. 30, 2014) .........................................................................20

**Rules**

Fed. R. Civ. P. 6(b)(1)(B) .............................................................................................6, 10

Fed. R. Civ. P. 37(c) ...........................................................................................3, 7, 8, 10, 16

Fed. R. Evid. 1006 .......................................................................................4, 8, 9, 22, 23

**Other Authorities**

https://www.census.gov/topics/population/genealogy/data/2000_surnames.html ........................17

https://www.census.gov/topics/population/genealogy/data/2010_surnames.html ........................17

"Technical Documentation: Demographic Aspects of Surnames – 2020 Census"
*available at*
https://www.census.gov/topics/population/genealogy/data/2010_surnames.html .........................................................................................................15

# INTRODUCTION

Plaintiffs' Motion to Amend Exhibit List and Witness List ("Motion") is not about Plaintiffs' failure to identify a U.S. Census document on Plaintiffs' exhibit list. It is about Plaintiff's failure to designate an affirmative expert—back in 2016, well before discovery closed—to provide a surname analysis of certain lists of tenants at Defendants' Park that Plaintiffs claim identify tenants allegedly affected by Defendants' Policy.[1] The Motion is Plaintiffs' belated attempt to correct this foundational problem with their case when they were confronted with Defendants' Motion *in Limine* to Exclude Evidence of the Ethnicity of Individuals at the Park Allegedly Affected by the Policy ("Motion *in Limine*") (Dkts. 322, 323). As stated in that Motion *in Limine*, a surname analysis—the comparison of surnames to data to determine the *likelihood* that the surname belongs to an individual of a certain race or ethnicity—requires specialized knowledge that would require expert testimony pursuant to Rule 702. (Dkt. 323 at 10-12.) Plaintiffs even concede as much. They identified a purported statistical expert who purports to provide such an analysis based on specialized "techniques"—but only for a list of all tenants at Defendants' Park, not on any lists of tenants purportedly affected by Defendants' Policy. **Exhibit 1** at 5 (Professor Clark's Report).

Instead of identifying an expert to provide a surname analysis on such lists, Plaintiffs instead chose to rely on an improper and inadmissible declaration from former counsel, Mr. Ramkumar, who purported to opine about *his* surname analysis even though he was counsel at the time, not a witness, and he had no qualifications to provide any such analysis. (*See* Dkt. 323.) In doing so, Plaintiffs injected improper and inadmissible opinion evidence from counsel into these proceedings. And, at the time Plaintiffs submitted Mr. Ramkumar's declaration, Plaintiffs had no

---

[1]    Plaintiffs' Motion is not a motion to amend. It is a motion to *supplement* their prior disclosures with new exhibits and a new witness.

concerns in relying on his inadmissible declaration in prior briefing or during the appeal to the Fourth Circuit. Even after remand, Plaintiffs apparently had no concerns about his inadmissible declaration. On December 4, 2020, more than six months ago, Plaintiffs filed their trial exhibit lists and trial witness lists pursuant to a Court-ordered deadline and never identified any Census document or purported summaries of that document as trial exhibits (or any witness who created any such summary—clearly no purported summaries had even been created at that time).

On January 11, 2020, the parties filed their motions *in limine* pursuant to this Court's Order. Defendants moved to exclude any evidence about the ethnicity of tenants at the Park allegedly affected by the Policy because such evidence stems *only* from Mr. Ramkumar's inadmissible and improper Declaration. (Dkts. 322-323.) Because Mr. Ramkumar was Judge Ellis's former law clerk, Judge Ellis recused himself from the case and motion *in limine* deadlines were suspended (Dkt. 356.) Even after the motions *in limine* were filed and after Jude Ellis re-assigned this case, Plaintiffs remained unconcerned about their pre-trial disclosures and Mr. Ramkumar's proposed testimony. The motion *in limine* schedule was then re-set on May 27, 2021 and oppositions were due on June 4, 2021. Only on June 4, 2021, after Plaintiffs confronted Defendants' Motion *in Limine*, did Plaintiffs apparently realize the problem they faced by relying on Mr. Ramkumar's inadmissible declaration. *Plainly concerned* about Defendants' Motion *in Limine* (Dkts. 322, 323), Plaintiffs now attempt to salvage their failure to designate an affirmative expert back in 2016 to provide a surname analysis of lists of tenants allegedly affected by the Policy by filing the instant motion and claiming in opposition to Defendants' Motion *in Limine* that they can introduce the Census document by itself without any accompanying surname analysis. (Dkt. 360 at 1-2.) Further complicating Plaintiffs' position was their then-realized failure to identify any Census document as a trial exhibit. Thus, the instant motion resulted *after* Defendants filed their pre-trial disclosures

and *after* Plaintiffs had the benefit of reading Defendants' Motions *in Limine*. This is an improper manipulation of the adversarial process in this litigation and it should not be countenanced.

Plaintiffs attempt to support their Motion by applying an improper standard from Rule 37(c). There has not been any late disclosure of information yet. Rather, because Plaintiffs are moving to supplement their previously-filed exhibit and witness lists *after* the Court-ordered deadline for those pre-trial disclosures has passed, the standard to evaluate their request is one of "excusable neglect" under Fed. R. Civ. P. 6(b). *Colony Apartments v. Abacus Project Mgmt.*, 197 F. App'x 217, 223 (4th Cir. 2006) (applying the excusable neglect standard to a late-filed request to supplement expert disclosures in response to a motion to strike). Excusable neglect, however, is not easily demonstrated, nor was it intended to be. The most important factor for a district court to consider is reviewing that standard is the reason for the delay. *Id.* Correcting counsel's prior mistakes due to the concern of a motion to strike, or in this case—a motion *in limine*, simply is not excusable neglect. *Id.*

Even if the Rule 37(c) exclusion analysis applies to Plaintiffs' Motion (it does not), the Court should consider the totality of the circumstances in determining whether Plaintiffs have met their burden; it need not rigidly tick through each of the factors set forth in *Southern States Rack And Fixture, Inc. v. Sherwin-Williams Co.* to determine whether a proponent of later-disclosed information has met their burden of showing that the late disclosure is "substantially justified" or "harmless." 318 F.3d 592 (4th Cir. 2003). The totality of the circumstances here demonstrates that Plaintiffs' Motion is a transparent attempt to avoid the relief requested in Defendants' Motion *in Limine* challenging Mr. Ramkumar's declaration. Plaintiffs have not met *their* burden of

demonstrating that their proposed late disclosure is "substantially justified" or "harmless".[2] Nonetheless, even if the Court ticked through each of the *Southern States* factors, those factors demonstrate that Plaintiffs should not be permitted to supplement their exhibit list and witness list six months after those lists were filed and after Plaintiffs had the benefit of reviewing Defendants' motions *in limine*.

Moreover, the purported summary chart which cherry-picks 22 lines from over 100,000 lines of data in the underlying Census document is not admissible pursuant to Fed. R. Evid. 1006 for many reasons. The underlying Census document is not admissible; therefore any purported summary chart based on that document is not admissible. In addition, the purported summary chart does not act as a surrogate for the underlying Census document; it instead selectively chooses only 22 lines from over 100,000 lines in the underlying document; thus, it is written argument from counsel plainly designed to replace counsel's failure to designate any expert to provide a surname analysis of the lists of tenants at issue. Finally, Plaintiffs never identified this chart or any witness who purportedly created this chart during the discovery period in 2016 and Defendants have a right to cross-examine at a deposition any witness who purportedly created such a chart. But, this chart, and counsel's employee who created this chart, were never disclosed during discovery (likely because the chart was not created back in 2016). Plaintiffs now propose to re-open discovery so that Defendants can depose counsel's employee *so that Plaintiffs can cure their mistake.* This proposal should be rejected. In all aspects, Plaintiffs' Motion should be denied by this Court.

## BACKGROUND

On September 25, 2020, this Court entered an Order which required the parties to file their Fed. R. Civ. P. 26(a)(3) pre-trial disclosures containing their exhibit lists and witness lists on

---

[2]   Plaintiffs concede that the late disclosure is not substantially justified only that it is harmless.

December 4, 2020. (Dkt. 297.) Thereafter, the parties jointly moved the Court to extend the deadline to file their motions *in limine* to January 11, 2020 (Dkt. 306) and this Court entered an Order to that effect. (Dkt. 308.) The parties then filed their exhibit lists and witness lists on December 20, 2020. (Dkt. 312 (Plaintiffs' pre-trial disclosures) and Dkt. 314 (Defendants' pre-trial disclosures)). On December 23, 2020, after the parties jointly petitioned for an extension of time to file objections to the opposing parties' exhibits, the parties filed their objections to the opposing parties' exhibits on that date. (Dkts. 320, 321.) On January 11, 2020, the parties filed their motions *in limine*. Plaintiffs filed an omnibus motion *in limine* (Dkts. 331, 332) and Defendants filed six motions *in limine* on that date (Dkts. 322, 325, 328, 337, 340, 343.) In one of those six motions, Defendant moved to exclude evidence of the ethnicity of individuals at the Park allegedly affected by Defendants' Policy. (Dkts. 322, 323.)

Defendants argued in that motion that evidence of the ethnicity of individuals at the Park allegedly affected by the Policy came *only* from an improper "surname" analysis performed by Plaintiffs' former counsel, Mr. Ramkumar. (Dkt. 323 at 2.)[3] According to Mr. Ramkumar's declaration, which injected an improper and inadmissible surname analysis into these proceedings, Mr. Ramkumar purportedly compared names of individuals on certain lists of Defendants to unspecified "U.S. Census Data" in order to conclude that the individuals allegedly affected by the Policy were likely to be Hispanic/Latino[4] based on their surnames.[5] (Dkt. 157-9). This purported

---

[3]    Defendants incorporate by reference that motion and the memorandum in support (Dkts. 322, 323) as a review of that motion demonstrates why Plaintiffs are attempting to modify their exhibit and witness list at such a late date.

[4]    For the purposes of this motion, these terms are used interchangeably.

[5]    Not only did Plaintiffs inject improper and inadmissible evidence into these proceedings through counsel's improper declaration, but Plaintiffs improperly submitted Mr. Ramkumar's declaration for the first time as an exhibit to their reply supporting their cross-motion for summary judgment—a brief which was filed before their eventual appeal to the Fourth Circuit—thus

surname analysis is plainly inadmissible for a number of reasons. A surname analysis is plainly the province of expert testimony. Mr. Ramkumar was never identified as an expert witness. He is not even identified as a witness in Plaintiffs' pretrial disclosures nor could he be as he was Plaintiffs' former counsel. Indeed, his status as former counsel prohibited Defendants from cross-examining Mr. Ramkumar on this purported surname analysis and his conclusions. Moreover, Mr. Ramkumar is not qualified as an expert witness to present opinions regarding a "surname analysis" (his declaration does not state any qualifications that would qualify him as an expert in performing surname analyses). Plaintiffs even identified an affirmative expert back in 2016 to provide a different surname analysis thus conceding that an expert is required to opine on a surname analysis. *See* **Ex. 1** at 5.[6] As a result, Defendants requested that Plaintiffs be precluded from presenting this evidence at trial and precluded from referring to such evidence in argument at trial. (Dkts. 322, 323.) As a result of this motion, on February 1, 2021, Judge Ellis recused himself from this case because Mr. Ramkumar was his former law clerk. (Dkt. 356.) Thereafter, once the case was re-assigned, the parties agreed to re-schedule the remainder of the briefing for the motions *in limine* (Dkt. 359) and the parties filed their respective oppositions to the opposing parties' motions *in limine* on June 4, 2021. Plaintiffs' opposition to Defendants' Motion *in Limine* (Dkts. 322, 323), referenced the instant Motion to Amend Exhibit List and Witness List. (Dkt. 360 at 4-5.)

---

prohibiting Defendants from addressing the improper evidence. (Dkt. 157 at 7.) Plaintiffs then relied on their improper and inadmissible evidence in their appeal.

[6]    In his report, Professor Clark explains that he reached an estimate based on a "surname analysis" and he states that his estimate was based on a specialized "approach and techniques" as discussed in a certain Census technical working paper. **Ex. 1** at 5.

## LEGAL STANDARD

### I.    FED R. CIV. P. 6(b)(1)(B)

A proactive motion to supplement a disclosure after a Court-ordered deadline passes is reviewed under the standard set forth in Fed. R. Civ. P. 6(b)(1)(B). Rule 6(b)(1)(B) specifies that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend that time... on motion made after the time has expired if the party failed to act because of *excusable neglect.*" Fed. R. Civ. P 6(b)(1)(B) (emphasis added); *Colony Apartments*, 197 F. App'x at 223. Although the decision remains committed to the Court's discretion, "'[e]xcusable neglect' is not easily demonstrated, nor was it intended to be." *Id.* (citing *Thompson v. E. I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996)). "In determining whether a party has shown excusable neglect, a court will consider: (1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Id.* (citing *Thompson*, 76 F.3d at 533). "The most important factor is the third—the reason for the delay." *Id.* (citing *Thompson*, 76 F.3d at 534). And, "[m]erely establishing these elements does not entitle a party to relief" as the decision remains committed to the discretion of the district court. *Id.* (citing *Thompson*, 76 F.3d at 532 n.2). "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect. . . ." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). As the Fourth Circuit has held, mistakes of counsel do not constitute excusable neglect, especially when the desire to correct prior mistakes is based on a concern that an opposing party's motion will be successful. *Colony Apartments*, 197 F. App'x at 223 (affirming decision to not permit supplementation of expert disclosures after the deadline and finding that the mistakes of prior counsel do not constitute excusable neglect when, *inter alia*, the desire to supplement and

- 7 -

correct such mistakes in prior expert disclosures arose because the party was "plainly concerned that [a motion to strike their expert] w[ould] be successful").

## II.    FED. R. CIV. P. 37(c)

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party *is not allowed* to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless* the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c) (emphasis added).[7] "The Rule 37(c) advisory committee notes emphasize that the '*automatic sanction*' of exclusion 'provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence.'" *Southern States*, 318 F.3d at 595 n.2 (emphasis added) (citing Fed. R. Civ. P. 37(c) advisory committee note (1993)). "The alternative sanctions referenced in the rule are primarily intended to apply when a party fails to disclose evidence helpful to an opposing party." *Id*. Here, Plaintiffs failed to disclose evidence helpful to *them*.

In determining when a failure to disclose is "substantially justified" or "harmless", the Fourth Circuit has identified five factors to guide the Court in its exercise of its discretion: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *Southern States*, 318 F.3d at 597 (holding that expert's recently formed opinion was not admissible at trial). The Fourth Circuit has explained that a district court is not required to tick through each factor; instead, a district court has broad discretion to consider the totality of the

---

[7]    Plaintiffs distort Rule 37 by arguing that a party "can be barred" from using information not timely disclosed. Pls.' Mem. Supp. Mot. at 3 ("Mem") (Dkt. 373). Rather, a party who fails to timely disclose information as required by Rule 26(a) *is barred* from using that information at trial *unless* that party can meet *their* burden of showing that the failure was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c).

circumstances in deciding whether a party has met its burden to show that the disclosure was "substantially justified" or "harmless." *Wilkins v. Montgomery,* 751 F.3d 214, 222 (4th Cir. 2014) (affirming decision to exclude expert whose opinions were not timely disclosed). Importantly, the burden of proving that the disclosure was "substantially justified" or "harmless" "lies with the nondisclosing party[.]" *Id.*

## III.    FED R. EVID. 1006

Fed R. Evid. 1006 provides that a "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. "The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court." *Id*. The records from which the summaries are made, however, must be admissible and those records must be made available to the opposing party for examination or copying. *Jade Trading, LLC v. United States*, 67 Fed. Cl. 608, 613-14 (2005) (citation omitted); *United States v. Simmons*, No. 18-4875, 2021 WL 2176575, at *11 (4th Cir. May 28, 2021) ("Rule 1006 permits summary charts to be admitted into evidence "as a surrogate for underlying voluminous records *that would otherwise be admissible into evidence*.") (emphasis added). The summary evidence must accurately summarize or reflect the underlying document(s). *Jade Trading*, 67 Fed. Cl. at 613-14; *United States v. Janati*, 374 F.3d 263, 272-73 (4th Cir. 2004) ("To comply with this Rule, therefore, a chart summarizing evidence must be an *accurate* compilation of the voluminous records sought to be summarized.").

A summary chart must "serve '*as a surrogate* for underlying voluminous records that would otherwise be admissible into evidence,' thereby 'reduc[ing] the volume of written documents that are introduced into evidence.'" *United States v. Oloyede*, 933 F.3d 302, 310 (4th Cir. 2019), *cert. denied sub nom.*, 140 S. Ct. 1212 (2020), 140 S. Ct. 1213 (2020), and 140 S. Ct.

2554 (2020) (citing *Janati*, 374 F.3d at 272). The selective presentation of a chart of certain entries from voluminous underlying records is not proper under Rule 1006. *Oloyede*, 933 F.3d at 310. And, a selective chart prepared by counsel, as was the chart at issue here, is not properly admitted under Rule 1006 because it is written argument. *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997) ("We therefore believe that Fed .R. Evid. 1006 does not allow for the admission of a summary such as the one contested by Mrs. Deluca, that is, one that was prepared by a lawyer trying the case and that restates and distills other properly admitted exhibits. In fact, we believe that such a summary is a written argument."). Finally, under Rule 1006, any purported summary, must "have been prepared by a witness available for cross-examination, not by the lawyers trying the case." *Id.*

## ARGUMENT

### I.    PLAINTIFFS CANNOT DEMONSTRATE EXCUSABLE NEGLECT UNDER RULE 6(b)(1)(B)

Plaintiffs filed a proactive motion to supplement their pre-trial disclosures which were due on December 4, 2020 *after* that date. Accordingly, the excusable neglect standard of Rule 6(b)(1)(B) is implicated, not the "substantially justified" or "harmless" standard set forth in Rule 37(c). *See Colony Apartments*, 197 F. App'x at 223. Indeed, there has been no late disclosure of any document yet. Instead, Plaintiffs are requesting the Court's permission to supplement their pre-trial disclosures six months after the Court-ordered date on which they were due. In *Colony Apartments*, a party moved to supplement its expert disclosures after the date required to submit those disclosures, and under those comparable circumstances, the Fourth Circuit reviewed that motion under the "excusable neglect" standard set forth in Rule 6(b)(1)(B). This standard is not easily demonstrated, and an application of the four factors set forth in *Colony Apartments*

demonstrate that Plaintiffs have not surpassed the high bar of excusable neglect. 197 F. App'x at 223.

### A.    Plaintiffs Present No Reason For Their Six-Month Delay In Seeking to Supplement Their Disclosures

The reason for delay is the "*most important factor*" in whether a party has shown excusable neglect. *Colony Apartments*, 197 F. App'x at 223 (emphasis added). In the face of a motion to strike, a desire to correct a prior mistake in a disclosure to improve a party's case is simply not "excusable neglect." *Id.* In *Colony Apartments*, the Fourth Circuit concluded that the mistake of counsel, in that case prior counsel, did not "constitute excusable neglect." *Id.* There, a party attempted to supplement its expert disclosures well after the deadline had passed. *Id.* The district court found that the party's motion requesting to supplement its expert disclosures after the deadline had passed resulted from the party's desire to "improve its case and attempt to correct what it perceives as the mistakes of prior counsel." *Id.* Moreover, the district court found that the party, "'plainly concerned that the Motion to Strike [their expert] will be successful,' sought to 'address[] the Defendant's stated concerns about the adequacy of expert designations previously provide by [the party's] former counsel.'" *Id.* Noting this, the Fourth Circuit agreed with the district court in concluding that the failings of prior counsel do not constitute excusable neglect. *Id.*

Here, the facts are analogous. Plaintiffs' attempt to amend their witness list and exhibit list results from an admitted mistake from Plaintiffs' current counsel. But, the mistake was not a simple oversight. It involved Plaintiffs' counsel failing to (1) identify the Census document on Plaintiffs' exhibit list; (2) create a purported summary chart of that document;[8] (3) identify that purported summary chart on Plaintiffs' exhibit list; and (4) identify the witness who created the summary

---

[8]    It is likely that this purported summary chart was created by counsel's paralegal at counsel's direction well after the December 4, 2020 date for pre-trial disclosures.

chart on Plaintiffs' witness list—all on disclosures filed over six months ago. In addition, Plaintiffs never made that witness available for any deposition.[9] It is hard to believe that these failures were a simple mistake as Plaintiffs represent, especially because Plaintiffs admit they knew about this Census document from their own prior briefing and the importance that Plaintiffs now claim attaches to these new disclosures.

The reality is that Plaintiffs chose to not identify an affirmative expert in 2016 to provide a surname analysis on certain lists *even though* Plaintiffs identified an expert to provide a surname analysis on all the tenants at the Park. **Ex. 1** at 5. That is the "mistake" that Plaintiffs seek to correct. The instant motion thus arises because Plaintiffs are "plainly concerned" that Defendants' Motion *in Limine* will be successful and will prevent Plaintiffs from presenting evidence they deem helpful to their case. Curing counsel's prior strategic and deliberate decisions in how to present their case, however, does not constitute excusable neglect. *See Colony Apartments*, 197 F. App'x at 223.

### B.    Plaintiffs' Motion is Not Filed in Good Faith

As noted above, Plaintiffs' failure to (1) identify the Census document, (2) create and identify a purported summary of that document, and (3) identify a witness who created that chart on Plaintiffs' pretrial disclosures was not a simple oversight. Instead, the instant motion is a concerted effort to avoid Defendants' Motion *in Limine* challenging the surname analysis put forth *only* by Plaintiffs' former counsel. An examination of how the instant motion came about demonstrates Plaintiffs' gamesmanship. First, Plaintiffs certainly had adequate representation. Throughout this case, Plaintiffs have been represented by numerous lawyers. They have had over ten attorneys enter appearances on their behalf—many from the large law firm of Quinn Emanuel.

---

[9]    Plaintiffs' Motion is the first time that Defendants are finding out that Ms. Chavez may be a potential witness in this case.

Second, Plaintiffs also had an extensive amount of time, especially in this Court, to recognize and cure any mistake in their pre-trial disclosures. Plaintiffs' pre-trial disclosures were filed on December 4, 2020—six months prior to the filing of the instant motion. (Dkt. 312). Motions *in limine* were not filed until January 11, 2021—over a month later. Even after Defendants filed their Motion *in Limine* on January 11, 2020 challenging Mr. Ramkumar's declaration, Plaintiffs did not attempt to amend their pre-trial disclosures. Clearly, only in confronting the substance of Defendants' Motion *in Limine* and attempting to prepare an opposition did Plaintiffs realize the problem with defending Mr. Ramkumar's inadmissible declaration and the purported facts presented in that declaration. As stated in Defendants' Motion *in Limine*, a surname analysis requires specialized knowledge that would require expert testimony pursuant to Rule 702. Dkt. 323 at 9-10 (citing, *inter alia*, *Harvick v. Oak Hammock Pres. Cmty. Owners Ass'n Inc.*, No. 614CV937ORL40GJK, 2016 WL 362434, at *3-4 (M.D. Fla. Jan. 29, 2016) (excluding surname analysis performed by plaintiff—a lay witness—in disparate impact FHA claim because he had no personal knowledge of whether individuals were "in fact, of Asian descent" and he was not qualified as an expert and utilizing a reliable scientific method)).

The instant motion thus is Plaintiffs' attempt to salvage their deliberate decision to not identify *any* affirmative expert witness on a surname analysis of certain lists of tenants at the Park allegedly affected by the Policy.[10] But, prior to Plaintiffs having to draft an opposition to Defendants' Motion *in Limine*, Plaintiffs apparently had no qualms about relying on Mr. Ramkumar's improper and inadmissible declaration. (*See* Dkt. 157 at 7 (citing Dkt. 157-9)). In fact, Plaintiffs were content with injecting inadmissible facts through that declaration into the

---

[10]    Plaintiffs were required to identify their affirmative expert witnesses on October 28, 2016 (Dkt. 66) and the discovery period closed on December 9, 2016. (Dkt. 35.)

proceedings (notably in a reply *after* Defendants filed their opposition to Plaintiffs' cross-motion for summary judgment) and then Plaintiffs relied on those inadmissible facts in their appeal. Now, Plaintiffs cite to the Fourth Circuit's discussion of the very inadmissible facts put forth by—and only by—Mr. Ramkumar's declaration as evidence of the importance of those facts as a justification to permit them to amend their exhibit list. This is gamesmanship and not good faith excusable neglect.

### C.    Defendants Face Substantial Prejudice

Plaintiffs argue that the late disclosure—over six months past the filing of their pretrial disclosures—of the Census document, a purported summary chart of that document, and a witness who created that chart—is not prejudicial to Defendants because Defendants utilized an earlier version of that Census document containing data from 10 years prior. Plaintiffs' analysis as to prejudice is superficial. Defendants did not attempt to introduce any Census document as a trial exhibit. Although Defendants knew of and cited to a previous version of that document in prior briefing, Plaintiffs attempt to introduce not just this document, *but* a purported summary of this document, *and* a witness who created the summary chart (and re-open discovery for a deposition of that witness), *well after* Defendants filed their motions *in limine*. Plaintiffs should not be permitted to review Defendants' motions *in limine* and change their case and trial strategy in response by amending their pre-trial disclosures to cure purported mistakes in their case. That is a patently unfair abuse of the adversarial process. And, the Census document as well as the purported summary chart containing only 22 lines of the over 100,000 lines of data in that document *are not admissible*. As stated in Defendants' Motion *in Limine* (Dkt. 323 at 9-11), a surname analysis is the province of expert testimony. The jury cannot perform this comparison themselves by comparing names on lists to the Census document. In fact, many courts have noted the serious reliability problems with surname analyses. (Dkt. 323 at 10-11.) And, not only is the Census

document inadmissible, but as detailed below in Section III, the purported summary is not an accurate surrogate of the Census document. Instead, it cherry-picks selective entries on that document that purportedly match up with names on the lists produced by Defendants. This "summary" chart is, therefore, attorney argument designed to replace counsel's deliberate decision to not identify an expert to opine on this topic. It does not show other names that may appear to belong to a Latino individual but do not have a high likelihood of being associated with a person of Latino ethnicity. Nor can Defendants cross-examine the Census document (or Plaintiffs' purported summary chart) to determine the methodology, and flaws in that methodology, used by the U.S. Census Bureau in reaching its conclusions about a percentage likelihood that a name belongs to someone of a certain ethnicity.[11]

Thus, if Plaintiffs were permitted to add these exhibits and counsel's paralegal as a witness to their pre-trial disclosures at this late date, Defendants would have to file new objections and will be forced to file a new motion *in limine* challenging these late disclosures as inadmissible. But the deadline to file motions *in limine* passed almost six months ago. Plaintiffs therefore are attempting to add exhibits and a witness into the trial without Defendants having an ability to challenge these

---

[11]    For example, the Census document is accompanied by an explanatory document explaining the methodology the Census Bureau used in creating that document. *See* "Technical Documentation: Demographic Aspects of Surnames – 2020 Census"
*available at* https://www.census.gov/topics/population/genealogy/data/2010_surnames.html.

This document cannot be presented to a jury as it contains highly technical information regarding that methodology, which necessarily requires expert testimony for the jury to understand. Moreover, this methodology is important to understand when evaluating the Census document because numerous district courts, and one Court of Appeals, have noted serious reliability problems associated with conclusions that individuals are Hispanic or Latino based on a "Spanish-surname analysis". (Dkt. 323 at 10-11 (citing, *inter alia*, *Rodriguez v. Bexar Cty., Tex.*, 385 F.3d 853, 867 (5th Cir. 2004) ("The use of "Spanish-surname" registration is novel and highly problematic. At least one district court has recently noted the problems associated with 'Spanish-surname analysis' because of its tendency to misidentify Hispanic persons as non-Hispanic and vice-versa.")).

disclosures through already-filed motions *in limine*. Moreover, discovery would have to be re-opened, even though it closed back in 2016, so that Defendants could depose counsel's employee who created the purported summary chart. Defendants undoubtedly face prejudice.

### D.    Length of Delay and Its Impact On Judicial Proceedings

As noted above, if Plaintiffs are permitted to supplement their exhibit list and witness list, Defendants will need to file new objections to those documents; discovery would have to be re-opened so that Defendants could conduct a deposition of counsel's paralegal as the witness who prepared the purported summary (likely at counsel's direction), and Defendants will likely then need to file a motion in *limine* challenging the admissibility of those documents and the witness who prepared the purported summary. All of this proposed activity will occur well *after* the close of discovery back in December 2016 and *after* Defendants expended a large amount of resources to file their six motions *in limine* in January 2021 and to oppose Plaintiffs' omnibus motion *in limine*. Moreover, if Plaintiffs are permitted to supplement their exhibit and witness list, Plaintiffs will inevitably argue that Defendants' Motion *in Limine* seeking to exclude evidence of the ethnicity of individuals allegedly affected at the Park is now moot. Defendants will have to re-file that Motion *in Limine* to address the newly permitted documents and the witness who prepared the purported summary. To be sure, the trial is not scheduled until March of 2022, but the judicial proceedings with be severely impacted.

## II.    RULE 37(c) DOES NOT APPLY, NONETHELESS, PLAINTIFFS' LATE DISCLOSURE IS NOT SUBSTANTIALLY JUSTIFIED OR HARMLESS

Even if the Rule 37(c) standard for the failure to disclose information and witnesses required by Rule 26(a) applied to Plaintiffs' motion (it does not), Plaintiffs' request to supplement their pre-trial disclosures, after having had the benefit of reviewing Defendants' motions *in limine*, is not harmless, and Plaintiffs concede that their request is not substantially justified. Mem. at 3

n.1.  The starting point for a Rule 37(c) exclusion analysis is that the late-disclosed information and/or witnesses are "not allowed" at trial *unless* the proponent meets *their* burden of showing that the failure to disclose was "substantially justified" or "harmless". Fed. R. Civ. P. 37(c); *Wilkins,* 751 F.3d at 222. Plaintiffs have not met that burden.

Although the five factors set forth in *Southern States* provide this Court with a guide to the Rule 37(c) "substantial justification" or "harmless" inquiry, the Fourth Circuit has explained that a district court is not required to tick through each factor; instead, a district court has broad discretion to consider the totality of the circumstances in deciding whether a party has met its burden to show that the disclosure was harmless. *Wilkins*, 751 F.3d at 222; *Southern States*, 318 F.3d at 595. As described above, the totality of the circumstances demonstrate that the instant motion arises not because of a simple oversight by counsel, but because Plaintiffs chose not to identify an expert to provide a surname analysis of any lists of tenants allegedly affected by the Policy. Nonetheless, even a strict review of the five *Southern States* factors demonstrates that Plaintiffs have not met their burden.

***As to the first factor***, surprise, Defendants were aware of a previous version of the Census document and referred to that previous version of in prior briefing back in 2016; however, not only are there substantial differences in the versions, but Defendants were not aware until now that Plaintiffs would attempt to present the entire Census document—and a purported summary of that document—to the jury as trial exhibits in order to have the jury conduct its own surname analysis despite the serious reliability problems in conducting a surname analysis.[12] (*See* Dkt. 323 at 10-11

---

[12]    Plaintiffs admit that the Census document they attempt to add as an exhibit has 162,255 lines of data. Mem. at 2. Yet, at the same time, they suggest there can be no surprise because Defendants cited to a prior version. In making this argument, Plaintiffs assume there can be no differences between two different versions of a document separated by over 10 years when each

(discussing reliability problems with a surname analysis)). As noted in Defendants' Motion *in Limine* (Dkt. 323 at 8-12), and as set forth above, a surname analysis is the province of expert testimony and there are serious reliability issues with conducting a surname analysis. Had Plaintiffs attempted to list the Census document and any purported summary of that document on their exhibit lists back in December 2020, Defendants would have objected to the admissibility of those documents and likely challenged them in a motion *in limine* as well as discussed those exhibits in their other motions *in limine* where relevant.[13] The surprise to Defendants arises from Plaintiffs' attempt to modify their exhibit list to add a document in lieu of expert testimony *well after* objections to exhibits are filed and after the parties have filed their motions *in limine* and their oppositions thereto.

**As to the second factor**, ability to cure that surprise, **and the third factor**, the disruption to the proceedings and the trial, if Plaintiffs were permitted to add new exhibits and a witness to their pretrial exhibit and witness lists, at a minimum, Defendants should be permitted to file objections to the new exhibits and the new witness, depose the new witness and file any new motion *in limine.* But Defendants will be forced to undertake this activity well after they expended significant resources briefing their motions *in limine* and opposing Plaintiffs' omnibus motion *in limine.*

---

document contains over 100,000 lines of data. Indeed, there are substantial differences between the two versions. For example, the 2000 version only contains 151,672 lines of data. *Compare* https://www.census.gov/topics/population/genealogy/data/2010_surnames.html *with* https://www.census.gov/topics/population/genealogy/data/2000_surnames.html

[13]    The Census document is unquestionably hearsay, which Plaintiffs now attempt to utilize for the truth of the matter asserted therein. Notably, Plaintiffs do not even argue that the Census document is admissible under a hearsay exception in their moving papers. Having failed to do so, Plaintiffs cannot attempt to make such a new argument for the first time in a reply *after* Defendants filed their opposition to the instant motion. *E.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843, 852 (E.D. Va. 2012). Defendants are not required to chase phantom arguments that Plaintiffs do not make in their opening papers.

*Samsung Elecs. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 198 (E.D. Va. 2016) ("A failure to disclose in the right form, at the right time, impedes discovery at the time of nondisclosure, such that later putting the opposing party on notice does not render the nondisclosure unsurprising or curable.").

Plaintiffs even acknowledge that Defendants have a right to depose a witness who is being identified as a witness for the first time. Mem. at 8 n.3; *see Grajales-Montoya*, 117 F.3d at 361 (any purported summary, must "have been prepared by a witness available for cross-examination, not by the lawyers trying the case"). Moreover, Plaintiffs' request to supplement their exhibit and witness lists would affect the motions *in limine* already filed by Defendants, especially the Motion *in Limine* challenging Mr. Ramkumar's declaration. (Dkts. 322, 323.) In fact, Plaintiffs are attempting to use the relief sought by instant motion as an end-run around that motion. And, to the extent that Plaintiffs are permitted to introduce the Census document and have the jury conduct their own surname analysis without any understanding of the reliability problems associated with such an analysis or the methodology that is used by the Census Bureau in creating that document (they should not be), Defendants should be permitted to identify an expert to opine as to the reliability problems with conducting surname analyses. This cannot happen, however, as discovery closed on December 9, 2016 (Dkt. 35), and the parties are set to go to trial. To be sure, trial is not set until March of next year, but that does not mean discovery should be re-opened along with a new round of motions *in limine*, all at a great cost in terms of time and expense, only because Plaintiffs deliberately chose not to identify an affirmative expert on surname analyses back in 2016.

This case has proceeded far along the path of litigation. Plaintiffs filed their Complaint in 2016. The Court issued scheduling orders, which included various deadlines the Court expected the parties to follow. The Court's decision to dismiss Plaintiffs' disparate-impact Fair Housing Act

claim was appealed and the Fourth Circuit reinstated that claim. Plaintiffs then had a substantial amount of time after remand in 2019, well over a year, to prepare their pre-trial disclosures. On September 25, 2020, the Court entered an order requiring that pre-trial submissions be filed on December 4, 2020. Disclosures were filed on that date and the parties filed their motions *in limine* almost six months ago. The parties have spent many hours and a great deal of money preparing expert testimony and deposing witnesses. "In order to warrant resetting the clock on this case, [Plaintiffs] need[] an exceedingly compelling justification. [They] fail[] to provide one." *Campbell v. United States*, No. 3:10-CV-363, 2011 WL 588344, at *4 (E.D. Va. Feb. 8, 2011), *aff'd*, 470 F. App'x 153 (4th Cir. 2012), and *aff'd*, 470 F. App'x 153 (4th Cir. 2012).

  ***As to the fourth factor***, the importance of the late-disclosed information and witness, the "'[i]mportance of the evidence'" cannot, by itself, save improperly disclosed evidence from being found unjustified or non-harmless. Even if a party's entire case hangs on one expert, such that excluding the expert leads inevitably to summary judgment against that party, then that expert's testimony may be excluded if that expert's testimony was improperly disclosed." *Samsung Elecs.*, 314 F.R.D. at 197 n.6 (citing *Zaklit v. Global Linguist Solutions, LLC*, 2014 WL 4925780 (E.D. Va. Sept. 30, 2014)). Indeed, "this factor must be viewed from the perspective of both parties[.]" *Southern States*, 318 F.3d at 598. If this is important evidence to Plaintiffs' case, it "also points out why it should have been disclosed in a timely manner[,]" not six months after pre-trial disclosures were due and *after* Defendants had filed not only their motions *in limine* but their opposition to Plaintiffs' omnibus motion *in limine*. *Id.* Instead, under the guise of a mistake, Plaintiffs attempt to litigate by ambush with a late-arriving motion—filed after Plaintiffs reviewed

Defendants' motions *in limine*—that attempts to cure Plaintiffs' failure in 2016 to identify an expert to provide a surname analysis.[14]

In any event, the Census document, and the purported summary of that document, are inadmissible as expert testimony is required on any surname analysis. (*See* Dkt. 323.) If presented only with the Census document and the purported summary of that document which cherry-picks the names that Plaintiffs want to include in the summary and not others, the jury would likely reach an improper assumption about Latino-sounding surnames on the lists without any expert testimony on how to understand the methodology used by the U.S. Census Bureau in making conclusions on surname ethnicity or the serious reliability problems with surname analyses. These conclusions would be improper because Plaintiffs have ***no evidence*** that these names in fact belong to Latino individuals. These concerns are precisely why courts have struck surname analyses by lay witnesses. (Dkt. 323 at 9-10 (citing *Harvick*, 2016 WL 362434, at *3-4; *Perez v. City of Batavia*, No. 98 C 8226, 2004 WL 2967153, at *10 (N.D. Ill. Nov. 23, 2004) (striking declaration containing surname analysis because the analysis used was unreliable and "[l]ay witnesses are not allowed to present opinions based on scientific, technical or specialized knowledge.")). Instead of presenting any expert opinion (Plaintiffs concede that expert opinions are required on this subject by having their own purported expert witness opine about a different surname analysis), Plaintiffs would have the jury make their own improper assumptions. Thus, the late-disclosed evidence is not important; it is improper and inadmissible.[15]

---

[14]    As stated herein and in Defendants' Motion *in Limine* (Dkt. 323), the instant motion cannot cure that failure as expert testimony is required for any surname analysis.

[15]    Plaintiffs argue that trials are searches for the truth. Indeed, they are. The adversarial process aids in that search. Scheduling Orders and related deadlines set by the Court and the Local Rules organize and aid that adversarial process and the failure to enforce those deadlines defeats their purpose. *Campbell*, 2011 WL 588344, at *4 ("The Federal Rules, along with the Local Rules

Finally, *as to the fifth factor*, the factor that Plaintiffs hope to avoid discussing by couching their motion on "harmlessness" grounds, Plaintiffs present absolutely no justification for their late-arriving motion. Counsel's mistake does not provide a justification to amend pre-trial disclosures well after the parties have filed their objections and file numerous motions *in limine*. And, as discussed at length above, the instant motion does not arise because of counsel's mistake. It arises as a result of Plaintiffs' gamesmanship in an attempt to salvage their decision not to identify any expert to provide a surname analysis of certain lists of tenants back in 2016. This gamesmanship should not be countenanced.

## III. THE PURPORTED SUMMARY CHART IS NOT ADMISSIBLE UNDER FED R. EVID. 1006

Finally, Plaintiffs argue that the purported summary of the Census document that counsel's paralegal created is admissible under Rule 1006. Mem. at 7-9. But there are numerous problems with Plaintiffs' argument. First, for the purported summary chart to be admissible, the underlying Census document must be admissible and it is not. *Jade Trading*, 67 Fed. Cl. at 613-14; *Simmons*, 2021 WL 2176575, at *11 ("Rule 1006 permits summary charts to be admitted into evidence "as a surrogate for underlying voluminous records *that would otherwise be admissible into evidence*.") (emphasis added). The underlying Census document cannot be used to determine the likelihood that the names on certain lists belong to individuals of Hispanic/Latino ethnicity. As stated above, expert testimony is required to testify as to surname analyses.

Moreover, the purported summary chart does not accurately summarize the contents of the Census document. *Jade Trading*, 67 Fed. Cl. at 613-14; *Janati*, 374 F.3d at 272-73. A summary chart is supposed to serve as a "surrogate" for the Census document. *Oloyede*, 933 F.3d at 310.

---

and the Court's scheduling order, clearly map the course of pre-trial litigation. Failure to enforce the deadlines they provide defeat their purpose.").

Here, the purported summary chart does not serve as a "surrogate"; it instead is a cherry-picked selection of names from the underlying Census document; only the names that purportedly match up with names on the lists produced by Defendants. The Fourth Circuit has noted that a selective chart such as this is not proper under Rule 1006. *Id*.[16] Moreover, this chart was prepared by counsel. Therefore, this chart is not a summary chart; it is written argument—designed to replace Plaintiffs' failure to designate any expert on this topic. Such written argument is not properly admitted under Rule 1006. *Grajales-Montoya*, 117 F.3d at 361. And, under Rule 1006, any purported summary, must "have been prepared by a witness available for cross-examination, not by the lawyers trying the case." *Id.* Plaintiffs' paralegal must have been made available for cross-examination at a deposition during the discovery period in this case. But, she—and the purported summary chart—were never disclosed during the discovery period so Defendants never had a chance to depose her and determine the content of her testimony prior to trial.[17] Discovery closed over four years ago, Plaintiffs should not be permitted to re-open discovery so that they can

---

[16] Although the Fourth Circuit held in *Oloyede* that under the circumstances presented there, it was harmless error to have introduced into evidence the selective and skewed purported summary charts because the charts could have been shown to the jury under Rule 611(a), there is no doubt that the Fourth Circuit held there that it is error to introduce into evidence selective and skewed charts that do not act as a surrogate of the underlying documents under Rule 1006. 933 F.3d at 310-11.

[17] Separately, Plaintiffs suggest that the purported summary chart is admissible pursuant to Fed. R. Evid. 611(a)(1). Mem. at 8. But, "Rule 1006 summary charts are distinguishable from other charts and summaries that may be presented under Federal Rule of Evidence 611(a) *to facilitate the presentation and comprehension of evidence already in the record*." *Oloyede*, 933 F.3d at 311 (citing *Janati*, 374 F.3d at 272). "Rule 611(a) charts are not evidence themselves; they are used "merely to aid the jury in its understanding of the evidence that has already been admitted," by, for example, "reveal[ing] inferences drawn in a way that would assist the jury." *Id.* (citing *Janati*, 374 F.3d at 272). As noted above, there is no basis under Rule 1006 to add the purported summary chart to Plaintiffs' exhibit list as the underlying Census document is not admissible nor is that document "evidence already in the record." Accordingly, Rule 611 cannot be used as an end-run around Rule 1006 and its requirements.

introduce a new witness and force Defendants to undertake another deposition because of Plaintiffs' counsel's mistake. In sum, the purported summary chart is not admissible under Rule 1006.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court to deny Plaintiffs' Motion to Amend Exhibit List and Witness List and to award Defendants such other relief as is just and proper.

Dated:  June 21, 2021                Respectfully submitted,

                                     WAPLES MOBILE HOME PARK LIMITED
                                     PARTNERSHIP, WAPLES PROJECT LIMITED
                                     PARTNERSHIP AND
                                     A. J. DWOSKIN & ASSOCIATES, INC.

                                     /s/
                                     _____
                                     Grayson P. Hanes (VSB No. 06614)
                                     Michael S. Dingman (VSB No. 30031)
                                     Justin deBettencourt (VSB No. 83806)
                                     REED SMITH LLP
                                     7900 Tysons One Place
                                     Suite 500
                                     McLean, Virginia 22102
                                     (703) 641-4200 (Telephone)
                                     (703) 641-4340 (Facsimile)
                                     ghanes@reedsmith.com
                                     mdingman@reedsmith.com
                                     jdebettencourt@reedsmith.com
                                     *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of June, 2021, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/  
_____  
Grayson P. Hanes (VSB No. 06614)  
Michael S. Dingman (VSB No. 30031)  
Justin deBettencourt (VSB No. 83806)  
REED SMITH LLP  
7900 Tysons One Place  
Suite 500  
McLean, Virginia 22102  
(703) 641-4200 (Telephone)  
(703) 641-4340 (Facsimile)  
ghanes@reedsmith.com  
mdingman@reedsmith.com  
jdebettencourt@reedsmith.com  
*Counsel for Defendants*
