# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No.:  1:16-cv-563 (LO) (TCB) |
| WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, | |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING THE
MEANING OF THE FEDERAL ANTI-HARBORING STATUTE, 8 U.S.C. § 1324 OR
THE U.S. COURT OF APPEALS FOR THE FOURTH CIRCUIT'S DECISION IN
*UNITED STATES V. AGUILAR*, 477 F. App'x 1000 (4th Cir. 2012)**

**INTRODUCTION**

In their response to Defendants' motion *in limine* (Dkts. 343, 344), Plaintiffs concede the relief Defendants seek: that Plaintiffs be precluded from offering evidence or argument at trial before a jury regarding the meaning of the anti-harboring provision of the federal Immigration Reform and Control Act of 1986, 8 U.S.C. § 1324, or the decision of the U.S. Court of Appeals for the Fourth Circuit construing that provision in *United States v. Aguilar*, 477 F. App'x 477 (2012). This Court, not a jury, must decide the scope of potential liability faced by Defendants under the anti-harboring statute and *Aguilar* for renting mobile homes at their mobile home park in Fairfax County with—and without—their Policy.

Despite having conceded the relief Defendants request, Plaintiffs nonetheless contend that the anti-harboring statute and the *Aguilar* decisions themselves are not relevant at all to any of the *Inclusive Communities* burden-shifting issues that remain in the case.[1] With respect to "step 1," Plaintiffs repeat their mistaken claim that the Fourth Circuit and this Court already have rejected Defendants' arguments that, given the anti-harboring statute and *Aguilar*, Defendants' Policy was not "artificial, arbitrary, and unnecessary" as *Inclusive Communities* requires, and the statute and *Aguilar* "substantially limit[ed]" Defendant's discretion in formulating the Policy. Plainly, as we have set forth elsewhere, neither court has done so. Dkt. 379 at 3-10.

Plaintiffs then go so far as to assert that the anti-harboring statute and *Aguilar* are not relevant at all because they do not "apply" to this case. They contend that renting to undocumented immigrants, "without more," does not violate the anti-harboring statute. But that is wrong in every respect. It rests on a misinterpretation of *Aguilar*; it ignores the record, which contains evidence

---

[1] *Texas Dep't of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015).

- 2 -

showing that a failure to ask for proof of legal status could in fact constitute recklessness in violation of the anti-harboring statute; and, most fundamentally, it misunderstands the relevance of the statute and the *Aguilar* ruling.

Indeed, this Court already has explained the relevance of the statute and *Aguilar*—that is, that given *Aguilar*'s reckless-disregard standard, there is "no question" that a lessor such as Defendants "could properly and sensibly inquire into the immigration status of a lessee and his adult co-habitants" in seeking to avoid criminal liability under the anti-harboring statute. Dkt. 190 at 16-17; *see also id.* at 22 ("as federal law makes clear, such an inquiry [into legal status] is not only lawful, but sometimes necessary for prudent behavior"). And that is the point—the anti-harboring statute and *Aguilar*, together with the record evidence and Plaintiffs' own allegations, establish a clearly "valid interest" served by Defendants' Policy. The statute and *Aguilar* therefore quite clearly are directly relevant to this case, Plaintiffs' assertions notwithstanding.

## ARGUMENT

### I. PLAINTIFFS CONCEDE THAT THEY SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE OR ARGUMENT AT TRIAL REGARDING THE MEANING OF THE ANTI-HARBORING STATUTE AND *AGUILAR*

Little more than the heading here is needed. Defendants' motion seeks to preclude Plaintiffs from presenting evidence or argument at trial regarding the meaning of the anti-harboring statute and *Aguilar*, and Plaintiffs do not oppose that relief. Accordingly, the Court should grant the motion.

### II. THE ANTI-HARBORING STATUTE AND *AGUILAR* ARE PLAINLY RELEVANT TO THE *INCLUSIVE COMMUNITIES* BURDEN-SHIFTING ISSUES REMAINING IN THIS CASE

As noted, however, after conceding the relief Defendants seek—and even stating expressly that the Court "should instead instruct the jury on" the meaning of the anti-harboring statute and *Aguilar*—Plaintiffs proceed to make the squarely contradictory argument that the statute and

*Aguilar* simply "are not relevant to the *Inclusive Communities* burden-shifting framework" that must be applied to resolve their claim. Plaintiffs plainly are mistaken.

      **A.    The Anti-Harboring Statute And *Aguilar* Are Directly Relevant To Resolving Step-1 Issues Under *Inclusive Communities*.**

On step 1, Plaintiffs claim Defendants misstate the governing law under *Inclusive Communities* because the Fourth Circuit, in this case, rejected Defendants' position. That is wrong as a matter of law and fact.

On the law, even if, as Plaintiffs contend, the Fourth Circuit had "rejected Defendants' arguments that disparate impact plaintiffs … needed to show that (1) the policy at issue was not 'artificial, arbitrary, and unnecessary'; and (2) federal and state law does not 'substantially limit' a defendant's discretion in formulating said policy" (Dkt. 365 at 2)—and the Fourth Circuit did no such thing—that ruling would be plainly erroneous. Indeed, there is no question these requirements come straight from *Inclusive Communities*. 576 U.S. at 543 (holding that if "federal law substantially limits" a disparate-impact defendant's discretion in regards to the policy, it should result in dismissal, and that "[g]overnmental or private policies are not contrary to the disparate-impact requirement unless they are 'artificial, arbitrary, and unnecessary barriers'"); *see also Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 907 (5th Cir. 2019) (same); *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1112 (8th Cir. 2017) (affirming dismissal of disparate-impact claim where plaintiffs failed to "allege facts plausibly demonstrating that the housing-code standards complained of are arbitrary and unnecessary"); *Cobb Cty. v. Bank of Am. Corp.*, 183 F. Supp. 3d 1332, 1347 (N.D. Ga. 2016) (same). And no court—other than the Supreme Court itself—can disregard *Inclusive Communities*' holding in this regard. *See Payne v. Taslimi*, No. 18-7030, 2021 U.S. App. LEXIS 15972, at *3 (4th Cir. May 27, 2021) ("In looking up to the Supreme Court,

we may not weigh the same factors used by the Supreme Court to evaluate its own precedents in deciding whether to follow their guidance. We must simply apply their commands.").

On the facts, as Defendants have argued previously, the record conclusively refutes Plaintiffs' proposed interpretation of the Fourth Circuit's prior ruling in this case. As an initial matter, this Court should not presume that the Fourth Circuit would so plainly misconstrue a binding Supreme Court precedent in the way Plaintiffs suggest, let alone effectively ignore that precedent's clear holdings and Defendants' arguments based on those holdings. And, as set forth more fully elsewhere, that is especially true where the Fourth Circuit never even addressed the anti-harboring statute or the "artificial, arbitrary, and unnecessary" standard at all. Dkt. 379 at 5-8.

Indeed, Plaintiffs have *repeatedly* admitted to this Court that summary judgment has not be granted in their favor on Step 1. *See* Dkt. 298 n. 4; Mot. for Clarification H'rg Tr. (Sept. 23, 2020) at 26:5-9 (Dkt. 379-1); Renewed Mot. for Summ. J. H'rg Tr. (Nov. 8, 2019) at 26:6-9 (Dkt. 277-1). Nor has this Court ruled on those arguments following remand—or found that the Fourth Circuit has ruled on those arguments—as Defendants have more fully described elsewhere. (Dkt. 379 at 8-10.) In fact, at the hearing on Defendants' motion for clarification, the Court itself observed that it thought it "indisputable … that the anti-harboring statute really played no role in the Fourth Circuit's analysis." *Id.* at 29:23-25. The Court also noted the fundamental problem with asking a jury to interpret the scope of the anti-harboring statute. Ex. 1 at 29:21-23 ("Yes, but my problem there,… is that juries don't decide that sort of thing; judges do."). The Court denied Defendants' motion, stating that whether the Policy served a "valid interest" in avoiding criminal liability under the anti-harboring statute is an issue for the jury, but the Court never addressed how a jury could be asked to interpret a federal statute or *Aguilar*. *See* Dkt. 298. The Court ultimately

found that "plaintiffs 'have satisfied their burden under step one' by presenting evidence sufficient to defeat defendants' motion for summary judgment." *Id.* at 3. However, the Court noted, "Plaintiffs do not contend that the Fourth Circuit granted summary judgment on step one to plaintiffs, such that the jury need not be instructed on step one[,]" and the Court found that "plaintiffs appear to be correct" in this concession. *Id.* at 3 n.4.[2]

Therefore, no court—not this one or the Fourth Circuit—has granted either party summary judgment on step 1, decided the effect of the anti-harboring statute at any step of the burden-shifting analysis, or resolved as a matter of law whether Plaintiffs can show that the Policy is "artificial, arbitrary, and unnecessary." All of these issues, as this Court itself has acknowledged, remain to be tried before and decided by the jury in this case.

### B. The Anti-Harboring Statute And *Aguilar* Are Directly Relevant To Resolving Step-2 Issues Under *Inclusive Communities*.

Plaintiffs' separate contention—that the anti-harboring statute and *Aguilar* are not relevant to step 2 issues in this case because "merely renting to undocumented immigrants, without more,

---

[2] This Court did not "shut the door on these arguments" in denying Defendants' Motion for Clarification as Plaintiffs' mistakenly claim. Opp. at 3. To make this far-fetched claim, Plaintiffs selectively quote the Court's ruling denying Defendants' Motion for Clarification (Dkt. 298) completely devoid of the context in which the Court's Order was arrived at. Defendants—lacking clarity from the Court as to whether it had granted summary judgment to Plaintiffs at step 1 in the Court's original Order denying their renewed Motion for Summary Judgment (Dkt. 283)—requested the Court to clarify its ruling, and to the extent it *had* granted summary judgment to Plaintiffs on step 1, reconsider its ruling and grant Defendants' summary judgment at that step. (Dkts. 284, 285.) Denying Defendants' motion, the Court stated that it was not appropriate to re-litigate Step 1 because it concluded that the Fourth Circuit found that Plaintiffs had presented sufficient evidence to defeat Defendants' Motion for Summary Judgment at Step 1. (Dkt. 298 at 3.) However, presenting sufficient evidence to defeat a summary judgment motion is very different from granting Plaintiffs summary judgment such that Defendants are precluded from raising their summary judgment arguments at trial. Plaintiffs misrepresent this context in the hopes that the Court will accept their clear misinterpretation of this Court's prior rulings.

does not violate the ICRA anti-harboring provision"—again misses the point and again ignores the controlling law and the record.

First, Plaintiffs rely on "reported appellate decisions" construing the anti-harboring statute from other circuits, not the Fourth Circuit where Defendants' Park is located. Opp. at 3 (Dkt. 365). At the same time, Plaintiffs say nothing about the Fourth Circuit's *Aguilar* ruling and why it is reasonable—if not compulsory—for Defendants to heed the court of appeals' decision in that case by taking steps to ensure they do not knowingly or recklessly allow undocumented immigrants to live at their Park.[3] In *Aguilar*, the Fourth Circuit specifically addressed the application of the anti-harboring statute to a residential landlord. The defendant there was convicted for renting rooms in her home to illegal aliens. She claimed that the district court erred in not instructing the jury that it must be proven that her conduct "tended to substantially facilitate the alien remaining in the United States." 477 F. App'x at 1001-02. The Fourth Circuit affirmed the conviction, finding no plain error in the refusal to instruct the jury that intent to harbor is an element of the crime. The Fourth Circuit explained that "a defendant acts with reckless disregard where she is aware of but consciously ignores facts and circumstances clearly indicating that an individual is an undocumented alien." *Id*. at 1002. And it found that the defendant "recklessly disregarded the risk that [] her tenants w[ere] undocumented" because she "took no steps" to ascertain the status of her tenants. *Id*. at 1003. Yet, Plaintiffs contend that Defendants could take no steps to ascertain the legal residency status of their tenants and instead must err on the side of potential criminal liability.

Second, this isn't, as Plaintiffs suggest, a case involving the mere renting of mobile homes, "without more." Rather, the record contains facts that show Defendants faced a real and tangible

---

[3] Plaintiffs' continued reference to out-of-circuit authorities implicitly acknowledges how *Aguilar* undermines Plaintiffs' position.

prospect of being deemed in violation of the anti-harboring statute unless they took steps to screen out undocumented immigrants. Indeed, *as Plaintiffs allege*, a large percentage of undocumented persons in the relevant geographic area are Latinos. Thus, if Defendants ignored facts such as the inability of a Latino applicant from another country to provide a social security number or proof of legal status, they too could be accused of "reckless disregard" of the fact that applicants could be in the United States illegally and, like Ms. Aguilar, convicted of a crime for taking "no steps to ascertain the status of [their] tenants." *Aguilar*, 477 F. App'x at 1003. And, of course, Plaintiffs now know that the female Plaintiffs are undocumented.

In addition, *as Plaintiffs again have alleged*, undocumented immigrants "cannot obtain traditional home mortgages." Compl. ¶ 55. As a result, making nontraditional, mobile housing available to such immigrants may be seen as an inducement that "substantially facilitate[s] an alien's remaining in the United States illegally" in violation of the anti-harboring statute. *United States v. Tipton*, 518 F.3d 591, 595 (8th Cir. 2008); *see also Aguilar*, 477 F. App'x at 1001-02. It also means that Defendants reasonably must assume—indeed, they know—that many of those seeking housing at the Park are undocumented immigrants, so failing to take steps to determine their legal status in offering housing would be reckless and expose Defendants to potential criminal liability under the statute.

Plaintiffs ignore this evidence and assert that Defendants "have submitted no evidence" that would support a violation of the anti-harboring statute under the out-of-circuit cases they cite or *Aguilar*. Opp. at 4. Not only is this wrong—it asks and purports to answer the wrong question. Defendants need not conclusively prove that, absent the Policy, their conduct in fact violated the anti-harboring statute in order to show that the Policy is necessary to Defendants' undeniably valid interest in avoiding criminal liability under the statute. Nor do the Court or a jury in this case have

- 8 -

to conclude as much in order to find that Defendants have met their step-2 valid interest burden. Rather, the question is whether the Policy serves the valid interest in avoiding liability under the anti-harboring statute by negating any showing that Defendants recklessly disregarded the legal status of those who lived, or wished to live, at the Park. Without question, the Policy does just that.

Plaintiffs also claim that mistakes of law cannot constitute business necessities at step 2 of the *Inclusive Communities* framework. Opp. at 4 n.2. Here, Plaintiffs, yet again, misstate step 2 of that framework. In *Inclusive Communities*, at step 2, a defendant has the burden to "state and explain the *valid interest served by their policies*." 576 U.S. at 541 (emphasis added); *accord Reyes*, 903 F.3d at 424. While the Supreme Court stated that this standard was analogous to the "business necessity" standard in the Title VII framework, the Supreme Court intentionally chose the different "valid interest" language because the Title VII framework "may not transfer exactly to the fair-housing context." *Inclusive Communities*, 576 U.S. at 541. Moreover, as discussed, applying the Policy in order to avoid potential criminal liability under the anti-harboring statute and *Aguilar* is hardly a mistake of law as Plaintiffs incorrectly claim. Opp. at 4 n.2 (citing *R. I. Com'n for Human Rights v. Graul*, 120 F. Supp. 3d 110, 127-128 (D. R.I. 2015)). Rather, as this Court has concluded, given the reckless disregard standard in § 1324, there is "*no question*" a lessor "could properly and sensibly inquire into the immigration status of a lessee and his adult co-habitants." Dkt. 190 at 16-17. *Graul* is totally inapposite because there, the district court struck an expert's opinion, found that the opinion was factually wrong, and concluded that the expert's interpretation of the Rhode Island housing and maintenance code was not plausible. *Id*. at 127. Here, *as this Court already found*, it is not only plausible that there is potential criminal liability, but that given the risk of potential criminal liability under the anti-harboring statute, the Policy is "lawful," "necessary," and "prudent[.]" Dkt. 190 at 16, 22.

Indeed, Plaintiffs' argument flies in the face of this Court's own findings and conclusions of law in this case—findings and conclusions that have been left undisturbed on appeal. This Court already concluded that, given the reckless-disregard standard in § 1324, there is "*no question*" that a lessor could "properly and sensibly" inquire into immigration status of a lessee and his adult co-habitants). Dkt. 190 at 16 (emphasis added); *id*. at 22 ("[A]s federal law makes clear, such an inquiry [into legal status] is not only lawful, but sometimes necessary for prudent behavior.") (citing § 1324 and dismissing Plaintiffs' § 1981 claim, which was not appealed)).

In the end, Plaintiffs' position is that Defendants must err on the side of potential criminal liability if they wish to avoid disparate-impact liability under the FHA. But as the Supreme Court made abundantly clear in *Inclusive Communities*, the FHA should not be interpreted to "put housing authorities and private developers in a double bind of liability[.]" 576 U.S. at 542. So too here. The Court should reject Plaintiffs' argument that the anti-harboring statute and *Aguilar* are not relevant.[4]

## **CONCLUSION**

Defendants hereby request that this Court grant the instant motion as unopposed and for such other relief as is just and proper.

---

[4] Plaintiffs, citing to their omnibus Motion *in Limine*, also suggest that Defendants' witnesses cannot lay an adequate foundation to show that the anti-harboring statute "motivated" the creation or the enforcement of the Policy. Opp. at 3 n.1 As stated in Defendants' opposition to that motion (Dkt. 379 at 16-19), Plaintiffs' argument is meritless because *Inclusive Communities* does not require that a defendant state and explain valid interests that "motivated the creation or enforcement" of a policy only that a defendant "state and explain the valid interest served by their policies." 576 U.S. at 541; *see also* Defs.' Reply Supp. Mot. *in Limine* to Exclude Argument Questioning Whether Valid Interests for the Policy Were in Place at the Time of the Policy's Adoption. Plaintiffs' argument to the contrary writes words into *Inclusive Communities* that cannot be found in that opinion. Moreover, Plaintiffs' infirm attack on the foundation for yet-to-be-heard testimony at trial is not only premature but relies on a distortion of Defendants' witnesses' deposition testimony. Dkt. 379 at 16-19.

Dated: June 28, 2021    Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT LIMITED
PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June, 2021, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*