# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*,<br><br>        Plaintiffs,<br>v.<br><br>WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*,<br><br>        Defendants. | Civil No.: 1:16-cv-563 (LO) (TCB) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE ARGUMENT QUESTIONING WHETHER VALID INTERESTS FOR THE POLICY WERE IN PLACE AT THE TIME OF THE POLICY'S ADOPTION**

# INTRODUCTION

In their motion to exclude evidence or argument that the "valid interests" served by Defendants' Policy did not motivate the adoption of the Policy—and thus cannot meet step 2 of the *Inclusive Communities*[1] standard—Defendants argued that neither motive nor a "time-of-adoption" analysis have any place at the step-2 "valid interests" stage. Dkt. 342.

In their response (Dkt. 364), Plaintiffs rely on a series of legal assertions that misstate the controlling law. They first contend that Defendants must show a "business necessity" for its Policy at step 2, but neither the statute nor the Supreme Court's decision in *Inclusive Communities* require that—and even if they did, a showing of business necessity does not require or turn on a defendant's subjective motive at the time it adopted a policy. Plaintiffs also cite two district court decisions suggesting that so-called "post hoc" reasons for a policy or practice cannot be "valid interests," but neither of these non-binding rulings is on point. And Plaintiffs' citation to pre-*Inclusive Communities* "guidance" from the Department of Housing and Urban Development (HUD) provides no support because that guidance is not consistent with the Fair Housing Act's ("FHA") text or *Inclusive Communities* and nowhere does the guidance provide for a subjective-motive standard.

At the same time, Plaintiffs ignore a glaring fact—a subjective-motive standard for evaluating step 2 is directly at odds with the disparate-impact theory itself, which has nothing to do with intent or motive, or with the statutory elements of proof required. And their contention that there is nothing confusing or unfairly prejudicial about evidence or argument of motive in this disparate-impact case—where Plaintiffs have abandoned their intentional discrimination claim—

---

[1] *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015).

to warrant exclusion under Federal Rule of Evidence 403 does not withstand even minimal scrutiny.[2]

The Court accordingly should grant Defendants' motion, Dkt. 340.

## ARGUMENT

**I. EVIDENCE RELATING TO WHETHER DEFENDANTS ACTUALLY WERE MOTIVATED BY A VALID INTEREST AT THE TIME THEY ADOPTED THE POLICY IS IRRELEVANT AT STEP 2 OF THE *INCLUSIVE COMMUNITIES* STANDARD.**

**A. There Is No Basis For Injecting A Subjective-Motive/Time-Of-Adoption Inquiry At Step 2 Of The *Inclusive Communities* Standard.**

As an initial matter, in their response, Plaintiffs do not point to anything in the text of the FHA indicating that a defendant's subjective motivation at the time it adopted an allegedly discriminatory policy or practice plays any role in determining whether the defendant has met its step-2 burden in a disparate-impact case. Nor do Plaintiffs suggest that *Inclusive Communities* calls for a subjective-motive/time-of-adoption inquiry in assessing a defendant's step-2 burden. This is for good reason, as neither the text of FHA § 3604 nor *Inclusive Communities* gives any indication that subjective motivation at the time of a policy's adoption is relevant.

To the contrary, as Defendants explained in their motion, *Inclusive Communities* clearly provides that at step 2, a defendant's burden is simply to articulate a "valid interest served by their policies." 576 U.S. at 541. As the Supreme Court explained, "[a]n important and appropriate means of ensuring that disparate-impact liability is properly limited is to give [defendants] leeway to state

---

[2] Plaintiffs also claim that Defendants' witnesses "largely disclaimed knowledge for the reasons the Policy was implemented." Opp. at 3-4. But Plaintiffs misrepresent Defendants' witnesses' testimony based on selective snippets. Defendants' witnesses testified repeatedly and consistently as to the valid interests served by the Policy. *See* Dkt. 379 at 17-19 (Defendants' Opposition to Plaintiffs' omnibus Motion *in Limine*).

and explain the valid interest served by the policies." *Id.* What motivated the defendant to adopt the policy at issue is irrelevant to this analysis.

This follows from Title VII disparate-impact jurisprudence, which, as *Inclusive Communities* indicates, informs the proper interpretation of the FHA. 576 U.S. at 530-33 (examining Title VII and the concept of disparate impact under *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)). Thus, in *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975), the Court stressed that Title VII "is not concerned with the employer's 'good intent or absence of discriminatory intent' for 'Congress directed the thrust of the Act to the consequences of employment practices, not simply the motivation.'" *Id.* at 422 (citing *Griggs*, 401 U.S. at 432); *see also Smith v. City of Jackson*, 544 U.S. 228, 235 (2005) (observing that Title VII "focuses on the effects of the action … rather than the motivation for the action…."); *Inclusive Cmtys.*, 576 at 533 (highlighting "rather than the motivation" language in *Smith*). Yet Plaintiffs do not acknowledge this—even as they attempt to use an analogy to Title VII to support their use of time-of-adoption state-of-mind evidence. Dkt. 364 at 4.

Additionally, that a defendant's subjective motive at the time of a policy's adoption is irrelevant at step 2 aligns with *Inclusive Communities*' plain directives that courts not intrude on housing providers' decisions regarding housing but, rather, give "leeway" to a defendant to articulate valid interests sufficient to meet the step-2 burden. Excluding such evidence also avoids redundancy and confusion with disparate-*treatment* liability, which FHA § 3604 already proscribes, and which does require and focus on a defendant's intent behind an allegedly discriminatory policy or practice. *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 1002 (1988)

(Blackmun, J., concurring) ("The violation alleged in a disparate-treatment challenge focuses exclusively on the intent of the employer.").[3]

Beyond this, Plaintiffs' position would impermissibly confine housing providers to defending policies or practices strictly on grounds they were subjectively aware of when they adopted their policy—even if later, at the time the policy allegedly harmed a plaintiff, those providers had developed or learned of additional valid, non-discriminatory reasons for maintaining their policies. Indeed, this is at odds with the disparate-impact cause of action, which requires plaintiffs to prove that a policy proximately caused them harm—an inquiry that has nothing to do with whether the policy was unlawful at the time of its adoption. *See Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1306 (2017) (holding that "proximate cause under the FHA requires 'some direct relation between the injury asserted and the injurious conduct alleged'") (citation omitted). If the relevant time period is when the policy at issue caused plaintiffs' alleged injury—and it is—allowing proof of subjective motive at the time of a policy's ***adoption*** to potentially establish liability would be incongruous with that, and wrong.

### B. Plaintiffs' Cited Authorities Provide No Support For Injecting a "Subjective-Motive" Inquiry Into Step 2 Of The *Inclusive Communities* Disparate-Impact Standard.

Plaintiffs barely even mention *Inclusive Communities* in their response, let alone discuss in any depth the Supreme Court's treatment of step 2 of the disparate-impact standard in FHA cases. This is unsurprising as their argument is at odds with *Inclusive Communities*. Nor do they

---

[3] Plaintiffs have even conceded that subjective intent is not relevant to their disparate impact claim. In their omnibus Motion *in Limine*, Plaintiffs argued that Defendants should not be permitted to present certain evidence because subjective intent is not relevant. Dkt. 332 at 19. Now, Plaintiffs seek to have it both ways—Defendants should not be permitted to present evidence of their subjective motivation, but Plaintiffs should be permitted to present evidence on the same topic.

address the plain incompatibility of requiring proof of subjective state of mind at the time of a policy's adoption with the disparate-impact theory itself.

Instead, Plaintiffs point first to the Fourth Circuit's statement in the prior appeal in this case that the step-2 standard "is analogous to Title VII's business necessity standard." Dkt. 364 at 4. But as Plaintiffs acknowledge, the Fourth Circuit also repeated *Inclusive Communities*' statement that Defendants must only "explain the valid interest served by the policies[,]" and the Circuit never mentioned subjective motivations behind a policy or practice at the time of its adoption. *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 424 (4th Cir. 2018). Moreover, nothing about any such "business necessity" standard requires or allows for proof of a defendant's subjective motivation at the time it adopted its policy.[4]

Plaintiffs also rely on the Fourth Circuit's 1984, pre-*Inclusive Communities* decision in *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983 (4th Cir. 1984). Not only does *Betsey* pre-date *Inclusive Communities*, but the court of appeals there rested its holding solely on its determination that the district court erred, at step 1, in concluding that plaintiffs failed as a matter of law to meet their prima facie case of proving discriminatory impact. *Id.* at 988. The Fourth Circuit's subsequent discussion in that case of steps 2 and 3 accordingly was dicta. In any event, the court in *Betsey* made no mention of a defendant's subjective motivation, let alone suggested that it was fair game in an FHA disparate-impact case.

---

[4] In opposition to another of Defendants' motions in *limine*, however, Plaintiffs seemingly abandoned their contention that the step-2 standard is one of "business necessity," asserting that the step-2 standard is one that simply examines a defendant's "valid interests". Dkt. 361 at 7 ("Such testimony is directly relevant to the jury's evaluation of Defendants' burden under Step 2 of the *Inclusive Communities* standard to show that the Policy is 'necessary to achieve a valid interest[.]'") (citing *Inclusive Communities*, 576 U.S. at 541).

Lacking any controlling precedent to support their novel contention, Plaintiffs turn to out-of-circuit district court decisions and HUD "guidance" on the contours of disparate-impact defendants' burden at step 2. But this is unavailing, too. As for the district court rulings, *Treece v. Perrier Condominium Owners Ass'n, Inc.*, 2020 WL 759567 (E.D. La. Feb. 14, 2020) and *Fair Housing Ctr. of Wash. v. Breier-Scheetz Props., LLC*, 2017 WL 2022462 (W.D. Wash. May 12, 2017), neither one rooted their discussion of so-called "post hoc justifications" in *Inclusive Communities*. Moreover, in *Treece*, the court's reference to post hoc rationalizations was dicta because the court did not actually evaluate whether the proffered justifications were post hoc rationalizations. Instead, the court considered the justifications on their merits, ultimately holding that the record was insufficient to grant summary judgment to either party on the issue. *See Treece*, 2020 WL 759567, at *18-21. And in *Fair Housing Center*, the court rejected a justification because defendants offered " no evidence" indicating that the justification was legitimate (2017 WL 2022462, at *4)—a far cry from this case, where the justifications proffered by Defendants, including compliance with the anti-harboring statute, are supported by substantial, objective evidence, including the *Aguilar* decision, the substantial number of undocumented Latinos living in Fairfax County, and the tendency of undocumented immigrants to seek mobile-home housing such as that offered in Defendants' Park.

As for the 2013 HUD guidance Plaintiffs cite, it predates *Inclusive Communities* by two years and says nothing about subjective motive or the relevance of state-of-mind and time-of-adoption evidence to a disparate-impact defendant's step-2 burden. That stands to reason since, as noted, the statutory text by which HUD is bound does not mention this. And even if HUD's guidance had expressly endorsed the relevance of motive/time-of-adoption evidence at step 2, that would squarely conflict with *Inclusive Communities*, which is the controlling rule of decision when

- 7 -

it comes to the FHA's burden-shifting framework in disparate-impact cases. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 n.8 (4th Cir. 2006) (noting that this Court is, "of course, bound to follow the Supreme Court"); *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 631 (2012) (rejecting HUD's interpretation of federal statute that went "'beyond the meaning that the statute can bear'") (quoting *MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 229 (1994)).[5]

Indeed, if anything, the HUD guidance *supports* the relief Defendants seek here. HUD made clear that review of a defendant's justifications at step 2 "is ***not*** subjective" and that "[w]hether an interest is 'legitimate' is judged on the basis of ***objective*** facts[.]"[6] What HUD aimed at was ensuring that a defendant provide objective evidence, not just "speculation, hypothesis, generalization, stereotype, or fear." Defendants rely on none of those things—they have, as noted, adduced ample objective evidence of their valid interests and why the Policy is needed to achieve them.

## II. ALLOWING EVIDENCE OF DEFENDANTS' SUBJECTIVE MOTIVE AT THE TIME THEY ADOPTED THE POLICY WOULD UNDULY CONFUSE THE JURY IN THIS CASE AND UNFAIRLY PREJUDICE DEFENDANTS

Even if the evidence of Defendants' subjective motive at the time they adopted the Policy has minimal probative value—and it lacks even that—permitting that evidence would create a serious risk of confusing the jury and unfairly prejudicing the Defendants.

---

[5] Additionally, the HUD guidance is just that—non-binding guidance on what HUD believes is the proper interpretation of FHA disparate-impact liability, as opposed to a rule or regulation produced after notice-and-comment rulemaking. As such, it is not entitled to *Chevron* deference. *See Precon Dev. Corp., Inc. v. U.S.A.C.O.E*, 633 F.3d 278, 290 n.10 (4th Cir. 2011) (declining *Chevron* deference to Army Corps of Engineering's interpretation of "navigable waters" in informal and "non-binding" Corps guidance document because the Corps had not adopted the interpretation "through notice-and-comment rulemaking").

[6] *Implementation of the Fair Housing Act's Discriminatory Effects Standard*, 78 FR 11460-01, 2013 WL 550406 (February 15, 2013).

First, as discussed, the validity of a defendant's interest behind a given policy is an objective inquiry that looks to whether there are valid interests served by the policy. Allowing evidence purporting to show that Defendants did not have a particular interest in mind when they adopted the Policy could lead a jury to find Defendants fail to meet their step-2 burden and therefore are liable for disparate-impact discrimination—even if the interest, such as avoiding criminal liability, unquestionably is valid, and even if the Policy unquestionably serves that interest.

Second, this is not an intentional discrimination case, as Plaintiffs themselves have acknowledged. And intentional discrimination under the FHA requires different elements of proof than disparate-impact discrimination under the statute. Allowing Plaintiffs to introduce evidence of intent or motive in this disparate-impact case would confuse the jury, however, and could lead it to find disparate-impact liability based on evidence that has no bearing on it: Defendants' subjective state of mind. That confusion, and the possibility that it could result in a jury finding of liability, is precisely what Rule 403 is designed to guard against.

Third, apart from step 2, there remain step-1 issues under *Inclusive Communities* that have nothing to do with subjective motive at the time of the Policy's adoption. One is whether the tangible threat of anti-harboring statute criminal liability for knowingly or recklessly renting mobile homes to undocumented immigrants (and allowing other undocumented immigrants to live in those homes) "substantially limits" Defendants' "discretion" in formulating its leasing policies, thus defeating Plaintiffs' claim under *Inclusive Communities*. *See* 576 U.S. at 543. Another is whether, given that threat, as well as the established federal policy requiring proof of legal status to obtain public-housing assistance, *see* 42 U.S.C. § 1436a; 24 C.F.R. §§ 5.508-5.512, and the other interests served by the Policy, Plaintiffs can meet their burden to show that Defendants'

Policy is "artificial, arbitrary, and unnecessary." *See Inclusive Cmtys.*, 576 U.S. at 521, 540. Here again, *Inclusive Communities* does not tie these issues to a defendant's state of mind at the time it adopted its policy. But if Plaintiffs are allowed to introduce evidence of Defendants' subjective motive at the time of the Policy's adoption, that would severely prejudice Defendants by creating the real prospect that a jury would reject Defendants' arguments on these step-1 issues on the erroneous basis that Defendants were not actually motivated by these interests when they adopted the Policy.

## CONCLUSION

Defendants hereby request that this Court grant the instant motion and for such other relief as is just and proper.

Dated:  June 28, 2021   Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, WAPLES PROJECT LIMITED PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of June, 2021, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*