**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

ROSY GIRON DE REYES, *et al.*,

        *Plaintiffs*,

    vs.

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, *et al.*,

        *Defendants*.

Civ. No. 1:16-cv-00563 (LO/TCB)

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO AMEND EXHIBIT LIST AND WITNESS LIST**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ............................................................................................................1

ARGUMENT ...................................................................................................................4

I.     THIS MOTION IS GOVERNED BY RULE 37. ................................................4

II.    THE "HARMLESSNESS" FACTORS UNDER RULE 37(C)(1) ARE EASILY SATISFIED ....................................................................................................6

    (1)    The surprise to the party against whom the evidence would be offered ..................6

    (2)    The ability of that party to cure the surprise & (3) the extent to which allowing the evidence would disrupt the trial. ........................................................8

    (4)    The importance of the evidence. ..............................................................10

III.    THE COURT SHOULD ALLOW A SUMMARY EXHIBIT UNDER FEDERAL RULE OF EVIDENCE 1006. ................................................................12

CONCLUSION ..............................................................................................................13

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Benjamin v. Sparks*,
    986 F.3d 332 (4th Cir. 2021) ........................................................................... 5

*Bresler v. Wilmington Tr. Co.*,
    855 F.3d 178 (4th Cir. 2017) ........................................................................... 5

*Colony Apartments v. Abacus Project Mgmt., Inc.*,
    197 F. App'x 217 (4th Cir. 2006) ................................................................... 5

*E.E.O.C. v. E.I. DuPont de Nemours & Co.*,
    2004 WL 2347559 (E.D. La. Oct. 18, 2004) ............................................... 8

*Foodbuy, LLC v. Gregory Packaging, Inc.*,
    987 F.3d 102 (4th Cir. 2021) ........................................................................... 5

*Hill v. Coggins*,
    867 F.3d 499 (4th Cir. 2017) ................................................... 3, 5, 6, 7, 8

*Hoyle v. Freightliner, LLC*,
    650 F.3d 321 (4th Cir. 2011) ........................................................................... 5

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ........................................................................................... 4

*Morton v. Mancari*,
    417 U.S. 535 (1974) ........................................................................................... 4

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
    507 U.S. 380 (1993) ........................................................................................... 5

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012) ........................................................................................... 5

*Rambus, Inc. v. Infineon Tech. AG*,
    145 F. Supp. 2d 721 (E.D. Va. 2001) ....................................................... 8, 9

*Rodriguez v. Bexar Cty.*,
    385 F.3d 853 (5th Cir. 2004) ....................................................................... 11

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
    318 F.3d 592 (4th Cir. 2003) ................................................................ 3, 5, 6

*Wilkins v. Montgomery*,
   751 F.3d 214 (4th Cir. 2014) ............................................................... 5

*Williams v. Long*,
   585 F. Supp. 2d 679 (D. Md. 2008) ..................................................... 8

## **Rules and Regulations**

Fed. R. Civ. P. 6 ...................................................................................... 4, 5

Fed. R. Civ. P. 6(b)(1)(B) ......................................................................... 4

Fed. R. Civ. P. 26 .................................................................................... 4, 6

Fed. R. Civ. P. 26(a) .................................................................................. 4

Fed. R. Civ. P. 26(a)(3) ................................................................... 2, 3, 4, 6

Fed. R. Civ. P. 37 ............................................................................ 3, 4, 5, 6

Fed. R. Civ. P. 37(c)(1) ...................................................................... 3, 4, 5

Fed. R. Civ. P. 37(c)(1) .............................................................................. 2

Fed. R. Evid. 803(8) .................................................................................. 8

Fed. R. Evid. 902(5) .................................................................................. 8

Fed. R. Evid. 1006 .......................................................................... 3, 9, 10, 13

## Introduction

For a decade, Defendants maintained a Policy requiring all of their lessees to produce certain legal immigration documents, yet also had a regular practice of declining to enforce this policy against all occupants as long as one lessee on each lease could comply. In 2015 Defendants decided to do an abrupt about-face, and enforce the Policy against *all* of their tenants. By then, of course, large numbers of undocumented immigrants had moved into the Park, and this new change in practices would require them to be evicted. The overwhelming majority of families who could not comply with the newly enforced Policy were Latino. Dkt. 142, Ex. 26 at 161:10-165:5; Ex. 41. The Policy, and specifically the decision to enforce the Policy in 2015, therefore did in fact have a disparate impact on Latinos. (This is not seriously disputed by Defendants; their main argument is that the disparate impact is justifiable.)

These are the facts that Defendants seek to hide from the jury through a motion *in limine* that would exclude all evidence of ethnicity – including the names of those Park residents actually subject to eviction under the Policy. Dkt. 323. Their argument in support of that motion is that the jury should not be allowed to view those names – which include names like ███████ ████████████████████████████████████, Dkt. 373-3, because "the jury will reach improper assumptions about [such] Latino-sounding names," to wit, the "assumption" that the individuals using those Latino-sounding names are Latino. Dkt. 323 at 13.

There is an easy solution to that perceived problem: a publicly available document produced by the U.S. Census Bureau that describes the ethnicity actually reported by people with specific names. *See* Ex. 1 (explanatory document), *available at* https://www2.census.gov/topics/genealogy/2010surnames/surnames.pdf. In fact, that solution was used first by Defendants, as part of their summary judgment motion, to show that it was

1

"likely" that a person with a given surname was not Latino. Their memorandum states:

> In fact, there is evidence that Defendants required non-Latino undocumented immigrants to comply with the Policy. *See* Ex. 34 (Aug. 16, 2016 letter to ███████ ████).

In an accompanying footnote, they described that evidence:

> According to U.S. Census data, the name "████████████] is likely the name of a person of Asian or Pacific Island descent. *See* File B: Surnames Occurring 100 or more times *available at* http://www.census.gov/topics/population/genealogy/data/2000_surnames.html.

Dkt. 98 at 16 and n.4. Plaintiffs then used an updated version of the same material in their reply, for the same purpose – to show that eleven of twelve people who were subject to eviction under the Policy *were* Latino. Dkt. 157 at 7. The Court of Appeals found that Census data to be compelling, additional evidence: although Plaintiffs met their burden at Step One through the population-level evidence presented by their expert, the Court found this evidence of the Policy's actual effects on actual people to be "stronger." *Reyes*, 903 F.3d at 428-29, 433 n.11.[1]

Plaintiffs' counsel mistakenly failed to list that "easy solution" on pretrial disclosures. Accordingly, once this was brought to counsel's attention, Plaintiffs filed this motion to seek leave under Federal Rule of Civil Procedure 37(c)(1) to add the current version of the Census document (hereafter, "2010 Census Document") or, in the alternative, a summary of the relevant portions of that document, to "Plaintiffs' Rule 26(a)(3) Pretrial Disclosures," Dkt. 312.

---

[1] Defendants cited directly to the Census document in their summary judgment papers, but because Plaintiffs were referring to twelve names (rather than one), Plaintiffs' counsel created a chart summarizing the relevant content of the updated Census document. Dkt. 157-9. Defendants raise much clatter about the chart as an improper "surname analysis," Dkt. 323 at 2-5, 7, 11, but they never point to an error in the chart, or describe any "analysis" used to create it. It's simply an accurate list of names drawn from two exhibits, and numbers from the U.S. Census Bureau.

As it turns out, though, Defendants don't really want to solve their perceived problem – very likely because the evidence confirms the "assumptions" that they fear: that someone named ████████ is very likely to be Latino (93.86%), as is someone named ████████ (94.2%), someone named ████████ (91.29%), someone named ████ (87.88%), and so on. Dkt. 373-3. Instead, they seek to avoid the solution at all costs – working themselves into high dudgeon as they accuse Plaintiffs' counsel of "gamesmanship" and of not acting in "good faith," Dkt. 391 at 17-18. If only Plaintiffs' counsel were smart enough to "game" out such a strategy, in which leaving an exhibit out of our Rule 26(a)(3) disclosures, and then being forced to file a motion under Rule 37(c)(1) seeking leave to use that document at trial, all turns into an advantage in the end. Sadly, we are not that smart. We are also not perfect: in creating a list of several hundred exhibits, we missed one, so we are left with this motion.[2]

Part I shows that the proper standard for addressing this motion is the test for motions under Rule 37(c)(1), as set out in numerous reported Fourth Circuit cases, including *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) and *Hill v. Coggins*, 867 F.3d 499, 507 (4th Cir. 2017). Part II addresses the "harmlessness" factors under Rule 37, which are easily satisfied. Part III shows that the summary exhibit offered under Rule 1006 should be used for the convenience of the court, the jury, and the parties.

---

[2] This motion to amend is related to Defendants' motion *in limine* to exclude evidence of ethnicity, Dkt. 323, but the motion *in limine* goes further than just excluding the 2010 Census Document: Defendants seek to exclude "any evidence or argument as to the ethnicity of tenants or individuals at the Park who were allegedly affected by the Policy," and every exhibit that lists

## Argument

## I.     THIS MOTION IS GOVERNED BY RULE 37.

Defendants argue that this motion should be considered under Rule 6(b)(1)(B), rather than under Rule 37(c)(1). That argument is wrong, because Rule 37(c)(1) addresses the specific situation presented here: where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e)." One of the categories of information "required by Rule 26(a)" is the "pretrial disclosures" required by Rule 26(a)(3), including "each document or other exhibit . . . the party expects to offer" at trial. Plaintiffs filed their "Rule 26(a)(3) Pretrial Disclosures," including the required list of "document[s] or other exhibit[s]" required by Rule 26, Dkt. 312, pursuant to the Court's order to file "Rule 26(a)(3) disclosures." Dkt. 292. This motion is required because Plaintiffs mistakenly failed to list an exhibit on their "Rule 26(a)(3) Pretrial Disclosures."

Rule 6(b)(1)(B) – which is captioned "In General" – addresses situations where no other more specific rule exists. "[I]t is a commonplace of statutory construction that the specific governs the general," *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 384 (1992), so the specifically applicable provisions of Rule 37 must be used instead of the general provisions of Rule 6. *See also Morton v. Mancari*, 417 U.S. 535, 550–51 (1974) ("[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general"); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (same).

Defendants have managed to find one fifteen-year-old case in which the Fourth Circuit applied Rule 6, rather than Rule 37, to an analogous situation. *Colony Apartments v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 219 (4th Cir. 2006). But it is only one case, and it is not reported (and therefore not to be considered as precedent), and it was issued as a *per curiam*

opinion. In contrast, there are at least seven reported Fourth Circuit decisions (including several issued this year) applying Rule 37(c)(1) to a party's failure to disclose material required by Rule 26. *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 117 and n.13 (4th Cir. 2021); *Benjamin v. Sparks*, 986 F.3d 332, 343-44 (4th Cir. 2021); *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017); *Hill v. Coggins*, 867 F.3d 499, 507-8 (4th Cir. 2017); *Wilkins v. Montgomery*, 751 F.3d 214, 221-22 (4th Cir. 2014); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011); *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). There are many more unreported decisions.

Moreover, the difference between Rule 6 and Rule 37 may not have mattered in the case cited by Defendants, because it doesn't always matter. The "substantial justification" standard described in Rule 37(c)(1) is very similar to the "excusable neglect" standard under Rule 6(b)(1)(B). *Compare Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (considerations under "excusable neglect" include "reason for the delay") and *Southern States*, 318 F.3d at 597 (considerations under Rule 37's "substantial justification" standard include "the nondisclosing party's explanation for its failure to disclose the evidence").

But "substantial justification" is only one of two available grounds for relief under Rule 37(c)(1). That rule also provides relief when a party's failure to disclose is "harmless." When a party seeks relief on the "harmlessness" ground, as Plaintiffs do here, the explanation for the error becomes irrelevant, and the test looks instead to the effects on the opposing party. *Hill*, 867 F.3d at 508 (nondisclosing party's explanation "sheds little light on the harmlessness exception"); *Southern States*, 318 F.3d at 597 ("explanation for the nondisclosure—relates primarily to the substantial justification exception"). Accordingly, all of Defendants' arguments attacking Plaintiffs for their failure to list this exhibit on Rule 26 disclosures are beside the point.

Dkt. 391 at 10-13, 22. The question under Rule 37's "harmlessness" analysis is not whether Plaintiffs' failure to list the exhibit was justified; Plaintiffs don't claim that it was. Rather, the question is whether that mistake harmed Defendants.

Nevertheless, since Defendants have accused Plaintiffs' counsel of "gamesmanship" and of not acting in "good faith," *id.* at 14, 22, we feel compelled to respond. Those allegations imply that Plaintiffs' counsel acted intentionally – that counsel left this exhibit off the Rule 26(a)(3) disclosures on purpose, to gain some edge. This is bizarre: what edge could possibly be gained from intentionally omitting an exhibit, long after the close of discovery? And what rational lawyer would take that risk, since an omitted exhibit is unusable absent leave of court? If there is a "game" strategy here, Plaintiffs' counsel are not smart enough to figure it out.

## II.    THE "HARMLESSNESS" FACTORS UNDER RULE 37(C)(1) ARE EASILY SATISFIED.

Plaintiffs easily satisfy the four "harmlessness" factors set out in *Southern States*:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence.

318 F.3d at 597.

### *(1)    The surprise to the party against whom the evidence would be offered*

As we showed in our opening memorandum, Defendants cannot reasonably claim surprise, because Plaintiffs first referred to the 2010 Census Document over four years ago, as part of summary judgment briefing. Dkt. 157 at 7; 157-9. *See Hill*, 867 F.3d at 507 (expert's additional statement was included in a summary judgment declaration, which "undermines [the] claim of unfair surprise"). Defendants also referred to an earlier version of the document in their own summary judgment papers, for the same purpose: to demonstrate that a particular surname is "likely" to be used by someone of a particular ethnic background. Dkt. 98 at 16 and n.4. And the

Court of Appeals specifically highlighted evidence from the 2010 Census Document in its 2018 decision. *Reyes*, 903 F.3d at 433 n.11 ("Most notably, Plaintiffs submitted evidence that Latinos comprised 91.7% of those unable to comply with the Policy").

Defendants offer three responses. First, they claim "surprise" because the Census document that Defendants relied on – which was based on data from the 2000 census, Dkt. 98 at 16 n.4 – was not exactly the same as the 2010 Census Document which the Plaintiffs offer. Dkt. 391 at 17 n.12. It's hard to fathom how that constitutes "surprise," because the 2010 document is just an updated version of the 2000 document. But even if Plaintiffs' use of the 2010 document was once a surprise, that surprise faded long ago: Plaintiffs first used the 2010 document over four years ago, Dkt. 157 at 7; 157-9, and the Court of Appeals relied on it almost three years ago, *Reyes*, 903 F.3d at 433 n.11.

Second, Defendants argue that the 2010 Census Document is "unquestionably hearsay," and that "Plaintiffs do not even argue that the Census document is admissible under a hearsay objection." Dkt. 391 at 18 n.13. Again, it is hard to see how that constitutes "surprise." In any event, the argument is wrong. Plaintiffs' opposition to Defendants' motion *in limine* seeking to exclude evidence of ethnicity pointed out that the Census Document:

> is self-authenticating under Federal Rule of Evidence 902(5) ("publication purporting to be issued by a public authority"), and admissible under Federal Rule of Evidence 803(8) (public records). *E.E.O.C. v. E.I. DuPont de Nemours & Co.*, 2004 WL 2347559, at *1-2 (E.D. La. Oct. 18, 2004) (Census Bureau table authenticated under Rules 901(a) and 902(5), and admissible under Rule 803(8)); *Williams v. Long*, 585 F. Supp. 2d 679, 688 (D. Md. 2008) (quoting *EEOC v. DuPont* with respect to authentication).

Dkt. 360 at 8.

Third, Defendants argue that they would have challenged the 2010 Census Document through a motion *in limine* if it had been included on Plaintiffs' exhibit list. Dkt. 391 at 18. Once

again, that isn't evidence of surprise. And in any event, Defendants have thoroughly challenged all aspects of the document through opposition to this motion, and through their motion *in limine* to exclude evidence of ethnicity, which presents extensive arguments about the use of the 2010 Census Document. Dkt. 323 at 7-11. An additional motion *in limine* could not add anything.

   (2)   *The ability of that party to cure the surprise & (3) the extent to which allowing the evidence would disrupt the trial.*

Defendants discuss these two factors together, but in the end they don't provide evidence of either – either that they are unable to cure their alleged surprise, or that adding the 2010 Census Document would disrupt the trial. Since Defendants could not have been surprised by use of the 2010 Census Document, there is no surprise to "cure." Dkt. 373 at 5. And use of the Document would not disrupt the trial because it would not add new theories, or otherwise "substantially change" the "character of the case." *Hill*, 867 F.3d at 508 (additional evidence did not disrupt trial because it did not "'interject an additional, and considerably complex, legal theory' into the case, nor did it 'substantially change the character of the case and render obsolete much of the parties' trial preparation,'" quoting *Rambus, Inc. v. Infineon Tech. AG*, 145 F. Supp. 2d 721, 730 (E.D. Va. 2001)).

Instead, Defendants claim that additional proceedings will be required: that, if the 2010 Census Document is allowed, they should be allowed to "file objections," "depose the new witness," and "file any new motion *in limine*." Dkt. 391 at 18; 15-16, 19. Certainly the Court could allow those things, and there is plenty of time before trial to accomplish all of them.[3] But

---

[3] Defendants appear to complain about the extra delay created after the Court suspended the proceedings in February. Dkt. 391 at 20; Dkt. 356 at 2 ("It is further ORDERED that all deadlines, including the current briefing deadlines for the parties' motions *in limine* are SUSPENDED pending further order of the newly assigned district judge."). Plaintiffs are not

none of those tasks would be productive; instead, it seems as though Defendants are concocting a list so they can appear put-upon.

For example, why it would be necessary for Defendants to "file objections" to the 2010 Census Document? *Id.* at 18. They made their objections clear in their motion *in limine* seeking to exclude all evidence of ethnicity, Dkt. 323, and they have added others here, including a hearsay claim, *id*. at 18 n.13.

Similarly, why would a "new motion *in limine*" be required? Again, in the existing motion seeking to exclude evidence of ethnicity they have thoroughly argued their point that the 2010 Census Document is inadmissible. *Id.* at 2, 3, 4, 7, 8, 9, 10, 11, 13. They have repeated those arguments here, Dkt. 391 at 13-15, 19-20, 21, and added others, *id.* at 18 n.13. Plaintiffs disagree with all of those arguments, *see* Dkt. 360 at 6-9, but the point is that the arguments have been ground to a pulp. It is hard to imagine the value of a new motion *in limine.*

It is also hard to see the value of "deposing the new witness" – the paralegal who created the summary chart. Plaintiffs offered the summary chart under Federal Rule of Evidence 1006 solely as a convenience to the Court and parties. The chart isn't necessary, it is merely offered for the convenience of the jury and the Court; Plaintiffs are willing to use the original 2010 Census Document. And the parties should be able to agree to the data on the chart, since it just involves copying names from two of Defendants' documents, and copying numbers from the 2010 Census Document. Dkt. 373-3 ("General Key/Notes"). Given that context, what would one ask the witness that couldn't be determined by comparing the summary chart to the summarized documents? In any event, it is not at all clear that a deposition is appropriate for a sponsoring

─────────────────────────

responsible for that delay, but it doesn't matter: there is still more than enough time before trial commences in March 2022 to accomplish any tasks deemed necessary.

witness under Federal Rule of Evidence 1006. The rule requires only that the underlying documents be made available for inspection, and then produced in court – there is no reference to depositions. And for good reason, as this case demonstrates.[4]

Separately, Defendants complain that if the 2010 Census Document is allowed, they will have to "identify an expert to opine as to the reliability problems with conducting surname analyses." Dkt. 391 at 19, 21. That complaint makes no sense. Defendants themselves relied on the earlier version of the 2010 Census Document in support of their summary judgment motion, Dkt. 98 at 16 and n.4; their concerns with reliability seem to arise only when the data is not favorable. In any event, the 2010 Census Document is not a "surname analysis"; it is a report of data collected by the Census Bureau. An expert discussing the alleged "reliability problems" with "surname analyses" would be entirely beside the point.

(4)    *The importance of the evidence.*

Defendants do not contest the importance of this evidence, and they cannot: as the Fourth Circuit held, it provides "stronger evidence . . . on the disparate impact theory of liability" than the population-level evidence presented by Plaintiffs' expert. *Reyes*, 903 F.3d at 433 n.11.

Instead, Defendants repeat the claim raised in their motion *in limine* to exclude evidence of ethnicity: that the 2010 Census Document "is inadmissible as expert testimony is required on any surname analysis. (*See* Dkt. 323)." Dkt. 391 at 21. We addressed that argument in our opposition to that motion. Dkt. 360 at 7-8. But we highlight three points.

---

[4] Defendants state: "Plaintiffs even acknowledge that Defendants have a right to depose a witness who is being identified as a witness for the first time. Mem. at 8 n.3." Dkt. 391 at 19. That isn't true. Plaintiffs offered a witness to sponsor the summary chart at trial, in the event the parties could not stipulate to the chart before trial. Dkt. 373 at 8 n.3. Plaintiffs wrote nothing about the propriety of deposing a witness about how she copied numbers from one document to another.

First, what Defendants claim is impermissible here – referring to census data to determine ethnicity of specific surnames – is exactly what Defendants did in the support of their motion for summary judgment. Their memorandum states that "there is evidence that Defendants required non-Latino undocumented immigrants to comply with the Policy," and the "evidence" they cite is from the 2000 version of the Census Document. Dkt. 98 at 16 and n.4. That was not a "surname analysis," and it did not require expertise. Defense counsel simply referred to a publicly available data source. Plaintiffs have done the same thing with an updated version of the same data source.

Second, the fact that Plaintiffs' expert conducted a "surname analysis" for the purposes of his report does not mean – as Defendants claim – that an expert "surname analysis" is the only way to determine the likely ethnicity of a name. *See* Dkt. 391 at 21. In fact, the voting rights cases cited by Defendants in their motion *in limine*, Dkt. 323 at 10-11, express a preference for use of "census data based upon self-identification," *Rodriguez v. Bexar Cty.,* 385 F.3d 853, 866 n.18 (5th Cir. 2004), which is precisely the type of data that is reported in the 2010 Census Document.

Third, Defendants argue that the 2010 Census Document is accompanied by "highly technical information" that "cannot be presented to a jury." Dkt. 391 at 15 n.11. The "highly technical" document they cite to is not that "technical" at all (eight pages of mostly summary charts), and not all that relevant. *See* Ex. 1. More relevant – and very easy to understand – is the data on the chart itself, which show a very high likelihood that the tenants subject to eviction under Defendants' Policy were Latino. Dkt. 373-3.

11

### III.    THE COURT SHOULD ALLOW A SUMMARY EXHIBIT UNDER FEDERAL RULE OF EVIDENCE 1006.

As an alternative to the entire 2010 Census Document, Plaintiffs offer a one-page summary chart that takes the names of individuals identified by Defendants as subject to eviction under the Policy, and lists the relevant data for each name from 2010 Census Document. *Id.* Defendants do not point to any way that the chart is inaccurate, yet they find several reasons to complain about it.

First, they argue that neither the chart nor the 2010 Census Document are admissible, because they require expert testimony. Dkt. 391 at 22. We addressed those arguments above, and in response to their motion *in limine* seeking to exclude evidence of ethnicity. Dkt. 360 at 7-8.

Second, they argue that the chart "does not accurately summarize the contents of the Census document" because it "is a cherry-picked selection of names from the underlying Census document; only the names that purportedly match up with names on the lists produced by Defendants." Dkt. 391 at 22-23. Of course the chart is "a selection of names"; that's the point: to select the pertinent data from the 2010 Census Document so the jurors and the Court don't have to heft around the entire Census Document.[5] The names on the chart accurately reflect the names of those identified by Defendants' documents as being subject to eviction under the Policy, and the numbers accurately reflect the numbers listed on the 2010 Census Document – and Defendants never claim otherwise.

---

[5] Defendants offer another, peculiarly puzzling complaint: that the chart "does not show other names that may appear to belong to a Latino individual but do not have a high likelihood of being associated with a person of Latino ethnicity." Dkt. 391 at 15. Of course, that isn't the purpose of the chart; it isn't designed to mine the 2010 Census Document for names that may not seem Latino, but actually are. Instead, the chart is designed to present data with respect to the names of the tenants who were *actually affected by* Defendants' Policy. Nearly all of those names are highly likely to be used by people who identify themselves as Latino. Dkt. 373-3.

Third, Defendants argue that the summary chart is an inadmissible "written argument – designed to replace Plaintiffs' failure to designate any expert on this topic." *Id.* at 23. That is wrong, too, because there is no "argument" about the chart; it copies data from two lists provided by Defendants, and from the 2010 Census Document. It does fulfill a role that Defendants insist (incorrectly) must be filled by an expert, but that doesn't make it an argument, either: it's just a chart, accurately summarizing "voluminous" data for the convenience of the Court and the parties. Federal Rule of Evidence 1006.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion to Amend Exhibit List and Witness List, Dkt. 373, should be granted.

Respectfully submitted,


_____//s//_____                    Dated: 6/28/2021
LEGAL AID JUSTICE CENTER
Simon Sandoval-Moshenberg, VSB #77110
Nady Peralta, VSB #91630
Granville C. Warner, VSB 24957
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450 Fax:
(703) 778-3454
simon@justice4all.org
nady@justice4all.org
cwarner@justice4all.org

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Kaiyeu Kevin Chu, VSB #85746
Matthew Traupman (pro hac vice)
1300 I Street NW, Suite 900
Washington, District of Columbia 20005
Phone: (202) 538-8000 Fax:
(202) 538-8100
kevinchu@quinnemanuel.com
matthewtraupman@quinnemanuel.com

*Counsel for Plaintiffs*

**Certificate of Service**

I hereby certify that on this 28th day of June, 2021, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

_____//s//_____
Simon Sandoval-Moshenberg, VSB #77110
*simon@justice4all.org* LEGAL
AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Phone: (703) 778-3450
Fax: (703) 778-3454