**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, | |
| Plaintiff, | |
| v. | Civil No.: 1:16cv563-LO-TCB |
| WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, | |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF IVAN YACUB, ESQ.**

**INTRODUCTION**

In their Opposition (Dkt. 361) ("Opp."), Plaintiffs double-down on their mischaracterization of Defendants' Policy in an effort to argue that Mr. Yacub's testimony is relevant, will not confuse issues at trial, and is not unfairly prejudicial. Plaintiffs do so because Mr. Yacub's testimony regarding immigration law and immigration documents is *only* relevant if Plaintiffs mischaracterize Defendants' Policy as accepting *only* I-94 documents and U.S. Visas. This is not Defendants' Policy and thus Plaintiffs' argument is premised on a false narrative.

As Defendants' witnesses consistently testified, and as their documents dating back to 2011 show, the Policy required applicants to be legally present in the United States and permitted applicants to provide any document issued by the U.S. Government proving legal presence. In fact, the most recent resident information guide that Defendants issued *prior* to the filing of Plaintiffs' lawsuit stated that this was the Policy. In response, Plaintiffs do not present any evidence that Defendants *only* accepted I-94s and U.S. Visas or that the female Plaintiffs could have provided other immigration documents proving legal presence but *not* I-94s and U.S. Visas.

Importantly, as Plaintiffs admit, the female Plaintiffs could not have complied with Defendants' Policy even under Plaintiffs' mischaracterization of Defendants' Policy. In fact, the entire basis for Plaintiffs' disparate impact claim is that undocumented immigrants could not comply with Defendants' Policy because they cannot produce *any* documents from the U.S. Government demonstrating legal presence. Mr. Yacub's testimony regarding the complexities of specific immigration documents and whether they are good indicators of legal presence is therefore not relevant and will simply confuse the issues at trial. And, such immaterial testimony is the crux of Mr. Yacub's proposed testimony.

Moreover, in mischaracterizing Defendants' Policy, Plaintiffs recite allegations relating to month-to-month leases or rent increases that relate only to counts that Plaintiffs have agreed to dismiss or their dismissed intentional discrimination claims.[1] Plaintiffs clearly attempt to characterize these allegations as improper in order to elicit sympathy and distract from their mischaracterization of Defendants' Policy.

As to ITINs, Plaintiffs also concede that a portion of Mr. Yacub's testimony regarding ITINS, paragraph 8 of his declaration, is duplicative of stipulated facts. Instead, Plaintiffs only insist that Mr. Yacub should be permitted to provide the proposed testimony contained in paragraphs 7 and 9 of his declaration, Dkt. 326-1. Defendants do not oppose Plaintiffs' request to permit Mr. Yacub to testify regarding the background of ITINs as described in paragraph 7 of his declaration. Paragraph 9 of his declaration, however, contains testimony regarding the identity requirements of *other institutions* that is entirely irrelevant to steps 2 and 3 of the *Inclusive Communities*' framework—the only steps of that framework to which Plaintiffs contend Mr. Yacub's testimony is relevant.[2] Such testimony is also improper under Rule 403 as it would unduly prejudice Defendants—a jury could mistakenly conclude that Defendants' Policy was somehow improper under the Fair Housing Act if it did not match the policies of completely unrelated (and non-housing) institutions such as the banks, schools or police departments discussed by Mr. Yacub. *See* Dkt. 326-1 ¶ 9.

Finally, Plaintiffs insist that paragraphs 28 and 29 of Mr. Yacub's declaration contain relevant testimony, but whether or not Mr. Yacub has anecdotal knowledge of other mixed-status

---

[1] Plaintiffs never appealed the dismissal of their intentional discrimination claims, whether their disparate treatment claim in Count I or their 42 U.S.C. § 1981 claim in Count IV. *See* Dkt. 190 (dismissing these claims). These claims have been abandoned.

[2] *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015).

married couples in Northern Virginia or has met other undocumented people who are on distinct leases with different housing providers is entirely irrelevant at steps 2 and 3 of the *Inclusive Communities* framework.[3] Different housing providers' policies are not at issue or relevant to Plaintiffs' disparate impact claim. Such testimony is not only irrelevant but would be plainly used—as Plaintiffs imply—to improperly prejudice the jury against Defendants through an admitted attempt to paint Defendants' Policy as an "outlier". Even then, this improper suggestion would be based *only* on Mr. Yacub's anecdotal testimony.

As detailed below, pursuant to Rules 401 and 403, Mr. Yacub's testimony should be excluded.[4]

## ARGUMENT

### I. PLAINTIFFS' ARGUMENTS FOR THE RELEVANCE OF MR. YACUB'S TESTIMONY ARE BASED ON A MISCHARACTERIZATION OF DEFENDANTS' POLICY

The crux of Mr. Yacub's proposed testimony regarding immigration statuses and specific immigration documents is that U.S. Visas and I-94s are not good indicators of legal presence. Dkt. 326-1 ¶ 25. Plaintiffs admit as much. Opp. at 3 (stating that "[b]ecause the Policy makes reference to Social Security cards, US visas and I-94/I-94W forms…Plaintiffs proffered… Ivan Yacub, Esq., as an expert witness to explain those various documents to a jury[.]"); Opp. at 6-7 (noting that Mr. Yacub will testify that Visas and I-94 forms are "poor proxies for legal presence").

However, this testimony is not relevant and will lead to a confusion of issues because it is based on a mischaracterization of Defendants' Policy. As stated in Defendants' Motion (Dkt. 326),

---

[3] To the extent that Plaintiffs claim this testimony is unchallenged, now that Plaintiffs have raised the issue of whether these paragraphs contain admissible testimony, Defendants are free to rebut these arguments. *Infra* Section III.

[4] Despite Plaintiffs' claim to the contrary, Defendants moved to exclude Mr. Yacub's testimony pursuant to both Rules 401 *and* 403. Dkt. 326 at 3.

- 3 -

Defendants' witnesses have consistently testified that Defendants would accept any document issued by the U.S. Government showing legal presence in the United States. Dkt. 326 at 7. Moreover, Defendants' documents—dating back to 2011—show that the Policy was that all applicants must be legally eligible to live in the United States, not that all applicants must produce *only* an I-94 and a U.S. Visa to live at Defendants' Park. *Id*. at 6 (citing Consumer Reports & Core Logic SafeRent and Training Manual dated January 24, 2011 at page 21 and The Resident Selection and Occupancy Standards dated February 19, 2013 at page 7). To the extent that prior future resident and information guides did not accurately state Defendants' Policy, the last future resident and information guide issued by Defendants prior to Plaintiffs filing suit made clear that Defendants would accept any documentation proving legal presence. Dkt. 326-2 (April 22, 2016 Future Resident and Information Guide for the Park).[5] Plaintiffs nonetheless ignore these facts and continue to maintain that this was not the version of the Policy in place prior to 2016 because *only* under Plaintiffs' mischaracterization of Defendants' Policy can Mr. Yacub's proposed testimony regarding U.S. Visas, I-94s and the complexities of immigration documents be relevant.

In the face of these facts, Plaintiffs do not present *any* evidence that Defendants *only* accepted I-94s and U.S. Visas or that the female Plaintiffs could have provided other immigration documents proving legal presence but *not* I-94s and U.S. Visas (Plaintiffs admit they cannot). Plaintiffs' proposed reasoning for the relevance of Mr. Yacub's testimony—that the Policy only required certain immigration documents but not others—is thus premised on a false narrative and *one that is not applicable to the Plaintiffs*. Contrary to Plaintiffs' claims, there is no dispute that a tenant could have provided any U.S. Government document showing legal presence or whether *the female Plaintiffs* could present any U.S. Government documents showing legal presence. A

---

[5] Plaintiffs' Complaint was not filed until over a month later on May 23, 2016.

jury need not understand the complexities of various immigration documents as Plaintiffs argue, because under Defendants' Policy, Defendants would have accepted *any* document issued by the U.S. Government showing legal presence. Plaintiffs' false narrative should be rejected.

In their opposition Plaintiffs also discuss at length unrelated allegations, such as allegations relating to month-to-month leases or rent increases, that relate only to counts that Plaintiffs agreed to dismiss back in 2017—Counts III and V (Dkts. 196-197).[6] Apparently fond of these unrelated allegations, Plaintiffs spend most of their opposition discussing them even though they relate only to dismissed claims = and do not relate to their disparate-impact Fair Housing Act claim—the only remaining claim set for trial.

Plaintiffs also suggest that Mr. Yacub's testimony relates to a factual dispute of whether the Policy was strictly enforced all along. Opp. at 2. But Mr. Yacub's testimony regarding various immigration documents or ITINs is not relevant to any such dispute. In any event, whether or not the Policy was always strictly enforced is not relevant to Plaintiffs' disparate impact claim—the only remaining claim in this case. Such an allegation goes to discriminatory intent, which as Plaintiffs have admitted in their omnibus motion *in limine*, is not relevant because it "is not an element under disparate impact theory." Dkt. 332 at 19.

Plaintiffs also argue that Mr. Yacub's testimony will help the jury understand why unlawfully present noncitizens are presumably not at a greater risk of eviction, but Plaintiffs cannot direct this Court to any specific proposed testimony from Mr. Yacub. *See* Opp. at 8 (failing to cite to any part of Mr. Yacub's declaration). Accordingly, Plaintiffs' argument should be disregarded

---

[6] On May 16, 2017, Plaintiffs agreed to dismiss Count III which alleged that month-to-month increases violated a Virginia statute and Count V which alleged that the month-to-month leases breached their lease contracts. (Dkts. 196-197.) The claims were then dismissed on May 17, 2017. (*Id.*)

as Mr. Yacub can only testify to what was identified in his disclosure, which in this case was his declaration.

Finally, Mr. Yacub's testimony does not resemble the testimony in *Collins v. Cottrell Contracting Corp.*, 733 F. Supp. 2d 690, 702 (E.D.N.C. 2010). In *Collins*, there was no testimony regarding immigration law or immigration documents. Instead, *Collins* involved testimony regarding marine safety regulations, and thus the facts presented there are completely inapposite. Moreover, in citing *Collins*, Plaintiffs cite to the principle that an expert cannot "testify to the jury as to what the law means," or "usurp the province of the court[.]" Opp.at 8. Mr. Yacub's proposed testimony plainly will violate these principles. Mr. Yacub, as a lawyer clothed with the importance of a purported expert, will testify to exactly what Plaintiffs say he will not—he will testify, as a lawyer-expert, to what immigration law means and requires by testifying as to the purported "complexities" of immigration law and therefore usurp the province of the Court.

Lawyers, however, should not be permitted to testify as expert witnesses in order to testify to what the law means or requires.[7] *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986) (affirming the exclusion of testimony by lawyer-expert witness which included legal conclusions), *disapproved on other grounds in Pinter v. Dahl*, 486 U.S. 622 (1988); *NTP, Inc. v. Research in Motion, Ltd.*, No. 3:01CV767, 2003 U.S. Dist. LEXIS 14338, at *22 (E.D. Va. May 23, 2003) (noting that "the Fourth Circuit has held that attorneys cannot testify as expert witnesses regarding their opinion as to the meaning and applicability of the law.") (citing *Adalman*, *supra*).

---

[7] Moreover, expert testimony should be carefully scrutinized by the Court in its role as gatekeeper given the potential for such testimony to mislead. *See Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 456 (E.D. Va. 2017) ("[G]iven the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded.") (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)).

In sum, Mr. Yacub's proposed testimony regarding immigration law and immigration documents should be excluded.

## II. PLAINTIFFS CONCEDE THAT MR. YACUB'S TESTIMONY REGARDING ITINS IN PARAGRAPH 8 IS IRRELEVANT AND PARAGRAPH 9 OF HIS TESTIMONY IS NOT RELEVANT AND UNDULY PREJUDICIAL

Plaintiffs concede that Mr. Yacub's proposed testimony in paragraph 8 of his declaration is entirely duplicative of the stipulated facts between the parties. They offer no rebuttal regarding that testimony. Opp. at 8. Plaintiffs instead argue only that they should be permitted to present the testimony contained in paragraphs 7 and 9 of Mr. Yacub's declaration.[8] Defendants do not oppose Mr. Yacub presenting the testimony in paragraph 7 of his declaration for background purposes. However, paragraph 9 of Mr. Yacub's declaration contains testimony that should be excluded under Rules 401 and 403.

Mr. Yacub's knowledge of whether unspecified "other institutions", such as banks or schools, accept foreign passports as proof of identity and his knowledge of his clients using ITINs to obtain credit accounts is entirely irrelevant to steps 2 and 3 of the *Inclusive Communities*' framework. *See* Dkt. 326-1 ¶ 9. At step 2, Defendants are to be given "*leeway* to state and explain the *valid interest* served by their policies." *Inclusive Communities*, 576 U.S. at 541 (emphasis added).[9] At step 3, Plaintiffs have to prove that these valid interests can be served by another

---

[8] The proposed testimony regarding ITINs is located at paragraphs 4-9 of Mr. Yacub's declaration. Dkt. 326-1. In their Opposition, Plaintiffs do not argue that Mr. Yacub should present the testimony in paragraphs 5-6. Opp. at 8. Plaintiffs assert that the testimony in paragraph 4 is only relevant to explain why certain individuals who are legally present cannot obtain a Social Security number; but this information is not relevant to Plaintiffs' disparate impact claim. Such individuals *could* comply with Defendants' Policy because they are legally present and thus could present documents showing proof of legal status. And, in any event, such testimony is not relevant because it is inapplicable to the female Plaintiffs, who are not legally present.

[9] Plaintiffs have seemingly abandoned their contention that the step-2 standard is one of "business necessity," asserting that the step-2 standard is one that simply examines a defendant's "valid interests". Opp. at 7.

practice that has a less discriminatory effect. *Id*. at 527. The step-3 issues—as framed by the Plaintiffs in their Complaint[10]—are whether ITINs and foreign passports provide the same reliability and function as the documents requested by the Policy. Complaint ¶¶ 31-33.[11]

Other institutions' requirements for proof of identity is not relevant to the valid interests for Defendants' Policy. The other institutions that are discussed by Mr. Yacub are even not subject to the Fair Housing Act. For instance, banks, schools, and local police departments do not provide housing and do not have the same concerns of lease underwriting or potential criminal liability under the federal anti-harboring statute and *U.S. v. Aguilar*, 477 Fed. App'x 1000 (4th Cir. 2012). This proposed testimony will therefore confuse the issues in front of the jury and subvert the inquiry under *Inclusive Communities* into one where Defendants' interests are only valid if they match with the policies used by other unspecified non-housing institutions. Plaintiffs clearly proffer this testimony to unfairly malign Defendants' Policy by tainting it as an "outlier", as they admit, even though other institutions' policies and requirements do not bear on Defendants' valid interests or whether those interests can be served by a practice with a less discriminatory effect. This testimony should be excluded because it is not relevant, it will confuse the issues for the jury and, it presents a substantial danger of unfair prejudice to Defendants.

---

[10] Plaintiffs are bound by these allegations. *See Bender v. Suburban Hosp., Inc*., 159 F.3d 186, 192 (4th Cir. 1998).

[11] Plaintiffs have conceded that Defendants have met their step 2 burden in regards to the Policy as applied to lessees and that they have no rebuttal at step 3 in regards to lessees. (Dkt. 274 at 5-6.) In response to Defendants' renewed motion for summary judgment following remand, Plaintiffs argued that as to their step 3 burden, Defendants could collect proof of legal presence from leaseholders but not occupants. (*Id.*)

### III. MR. YACUB'S TESTIMONY REGARDING OTHER LEASES IS NOT RELEVANT AND IS UNDULY PREJUDICIAL

Plaintiffs argue that Mr. Yacub's proposed testimony in paragraphs 28 and 29 of his declaration is relevant to steps 2 and 3 of the *Inclusive Communities*' framework but also "generally to the jury's understanding of whether the Policy at issue in this litigation is an industry standard or rather an outlier in the community." Opp. at 9. However, Plaintiffs never explain how this proposed testimony is relevant at steps 2 and 3 and never explain how the jury's understanding of whether the Policy is an industry standard is relevant to the *Inclusive Communities*' framework.[12] *See id.*

The likely reason why Plaintiffs do not offer this explanation is because this testimony is simply not relevant at steps 2 and 3. Whether or not Mr. Yacub knows other mixed-status married couples in Northern Virginia or met other undocumented people who are on distinct leases with different housing providers is entirely irrelevant at step 2. Other leases from other housing providers who may or may not have similar policies are entirely irrelevant to the inquiry into Defendants' valid interests. For example, if other housing providers want to run the risk of potential criminal liability under the federal anti-harboring statute and *Aguilar* by not having a policy that determines whether their tenants or their occupants are lawfully present in the United

---

[12] Plaintiffs also argue that this testimony is unopposed. But, now that Plaintiffs have raised the issue of the admissibility of this testimony in their opposition, Defendants are free to respond and rebut this argument. *Lismont v. Alexander Binzel Corp.*, No. 2:12-cv-592, 2014 U.S. Dist. LEXIS 189684, at *3 (E.D. Va. May 23, 2014) ("Thus, courts necessarily may consider new arguments in a movant's reply where those arguments address issues raised for the first time in the nonmovant's response."). In addition, the purpose of a motion *in limine* is to allow a court to rule on issues in advance of trial in order to avoid delay and ensure an expeditious trial. *United States v. Verges*, No. 1:13cr222 (JCC), 2014 WL 559573, *2 (E.D. Va. Feb. 12, 2014). Defendants retain their right to challenge the admissibility of any testimony at trial. Accordingly, the Court should rule on the dispute brought to light by Plaintiffs—not deem it unopposed upon a motion *in limine* only to revisit the same dispute later at trial.

States, that has no bearing on whether Defendants have a valid interest in avoiding potential criminal liability under the anti-harboring statute. Nor is this proposed testimony relevant at step 3. Other leases are not relevant to whether Defendants' valid interests can be served by a different Policy. This testimony is only offered to improperly paint Defendants' Policy as an "outlier" and thus it presents a substantial danger of unfair prejudice to Defendants.

In addition, Mr. Yacub's testimony regarding knowing and meeting other undocumented persons on leases is not testimony regarding an "industry standard". *See* Dkt. 326-1 ¶¶ 28-29. It is anecdotal testimony not testimony based in expertise of industry standards.[13] In any event, this testimony implicates other housing providers with their completely distinct policies—testimony that is not relevant to steps 2 and 3.

Plaintiffs evidently hope to improperly influence the jury by offering irrelevant testimony regarding unspecified other leases seen by Mr. Yacub so that the jury believes that Defendants' Policy is an impermissible "outlier." Such testimony would unduly prejudice Defendants and is irrelevant. Pursuant to Rules 401 and 403, this Court should preclude Mr. Yacub from offering the testimony in paragraphs 28 and 29 of his declaration.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court to grant their Motion *in Limine* and enter an Order: (1) excluding the testimony of Ivan Yacub, Esq.; and (2) for such other relief as is just and proper.

---

[13] Mr. Yacub is also not qualified to opine regarding an "industry standard." He has not presented any qualifications or specialized expertise that would permit him to opine regarding leasing policies in relation to an industry standard in the housing industry. *See* Dkt. 326-1.

Dated:  June 28, 2021                    Respectfully submitted,

                                         WAPLES MOBILE HOME PARK LIMITED
                                         PARTNERSHIP, WAPLES PROJECT LIMITED
                                         PARTNERSHIP AND
                                         A. J. DWOSKIN & ASSOCIATES, INC.

                                         /s/
                                         ───────────────────────────────
                                         Grayson P. Hanes (VSB No. 06614)
                                         Michael S. Dingman (VSB No. 30031)
                                         Justin deBettencourt (VSB No. 83806)
                                         REED SMITH LLP
                                         7900 Tysons One Place
                                         Suite 500
                                         McLean, Virginia 22102
                                         (703) 641-4200 (Telephone)
                                         (703) 641-4340 (Facsimile)
                                         ghanes@reedsmith.com
                                         mdingman@reedsmith.com
                                         jdebettencourt@reedsmith.com
                                         *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June, 2021, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*