# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, <br><br> Defendants. | Civil No.: 1:16-cv-563 (LO) (TCB) |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF LEASE MATERIALS AND PURPORTED "EVICTION" CORRESPONDENCE

## INTRODUCTION

It is undisputed that Plaintiffs only allege a claim of disparate impact under the Fair Housing Act ("FHA"); there are no allegations of intentional discrimination set for trial. The facts underlying Plaintiffs' FHA disparate impact claim are largely undisputed. There is no dispute that the female Plaintiffs lived with the male Plaintiffs at Defendants' Park; that the male Plaintiffs were able to and did enter into leases for the Park; that the female Plaintiffs are not legally present in the United States; that the female Plaintiffs could not comply with Defendants' Policy because they are illegally present in the United States; that Defendants enforced their Policy as to Plaintiffs; and the Plaintiffs subsequently vacated the Park. Plaintiffs do not contest that these basic underlying facts are undisputed. Yet, even though these underlying facts are undisputed, Plaintiffs have identified numerous lease-related exhibits ostensibly to prove these basic, undisputed facts.

As a reason therefore, Plaintiffs assert that this is a "landlord-tenant case" and that these documents are necessary to prove the basic landlord-tenant relationship; but that is not true. This is a FHA *disparate impact* case with largely undisputed facts. There are no allegations of intentional discrimination set for trial. The *Inclusive Communities*' framework, therefore, will exclusively govern the adjudication of Plaintiffs' claim.[1] Given the undisputed facts and that framework, any trial on Plaintiffs' disparate impact claim should be relatively narrow. Instead, Plaintiffs propose to needlessly lengthen the trial with the introduction of lease-related documents. In doing so, Plaintiffs point to purported factual disputes as another justification for the introduction of these documents. But these purported factual disputes are unrelated and irrelevant to the adjudication of Plaintiffs' disparate impact claim.

---

[1] *Texas Dep't of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015).

- 2 -

In sum, given these undisputed facts, the introduction of these lease materials and purported eviction correspondence will only serve only to needlessly lengthen what should otherwise be a narrow trial, confuse the issues before the jury, and/or unfairly prejudice Defendants.

## ARGUMENT

### I. PLAINTIFFS' LEASE MATERIALS (EXS. 8 – 36, 38 – 60, 66 – 68) SHOULD BE EXCLUDED

Plaintiffs' leases and related documents, such as lease addenda or renewal letters, should be excluded because these exhibits and related testimony are irrelevant, unnecessary, and will waste the Court's and the jury's time at trial. The parties agree that the male Plaintiffs had leases at the Park, the female Plaintiffs lived with their husbands at the Park, and the female Plaintiffs could not comply with the Policy because they entered the United States illegally.

In response, Plaintiffs' primary argument centers on Plaintiff Saravia Cruz's 2012 lease application. Opp. at 4. Plaintiffs argue that this document is relevant and admissible because it shows that his wife was listed on the application and thus the document relates to Defendants' assertion that they were "tricked" into entering leases with the male Plaintiffs. Plaintiffs, however, misrepresent Defendants' position. Further, any dispute about whether the female Plaintiffs were listed on their husbands' lease applications does not relate to Plaintiffs' *disparate impact* claim nor do Plaintiffs explain how such a dispute relates to that claim.[2]

Plaintiffs' misrepresent Defendants' position. For example, Plaintiffs cite to Defendants' motion for summary judgment prior to the appeal, Dkt. 98 at pg. 20. There, Defendants discussed Plaintiffs' now-dismissed disparate *treatment* claim and how Plaintiffs could not demonstrate

---

[2] Plaintiffs also carefully display only the top of the subject application. As previously discussed by Defendants, this application is unsigned and not completed. The actual *signed and completed application*—that Mr. Saravia testified was the application he submitted—does not list his wife as an occupant. *See* Dkt. 150 at 29.

- 3 -

pretext. That citation does not demonstrate any argument about Defendants being "tricked" as Plaintiffs represent. Plaintiffs also cite to Defendants' reply in support of that motion, Dkt. 150 at 30, which addressed Plaintiffs' now-dismissed breach of contract claim and claim under Virginia's Manufactured Home Lot Rental Act. There, Defendants argued that Plaintiffs could not pursue *those* claims because the male plaintiffs did not list their wives on lease applications. Dkt. 150 at 29. But this cited contention did not arise in the context of Plaintiffs' disparate impact claim in that briefing because it *simply is not relevant* to Plaintiffs' disparate impact claim.

Further, as noted above, any dispute about whether the male Plaintiffs' wives were listed on the lease applications does not relate to their disparate impact claim or the *Inclusive Communities* framework—it relates to Plaintiffs' now-dismissed contract and statutory claims. In fact, besides their conclusory assertion that it does, Plaintiffs do not explain how this "hotly disputed factual contention" relates to the *Inclusive Communities* framework. The introduction of this one lease application (the other lease applications, which Plaintiffs remain silent on, do not list any spouses on them) therefore will only serve to confuse the issues before the jury.

Plaintiffs also argue that the leases and the lease applications demonstrate a landlord-tenant relationship between the parties, Opp. at 4, but this relationship is not disputed. Plaintiffs argue that lengthy addenda to the leases are evidence of "further agreed terms of the parties", but Plaintiffs never explain how these "further agreed terms", such as agreed terms regarding utilities or other such terms, are relevant *in any way* to Plaintiffs' disparate impact claim. Opp. at 5. The parties' relationship is undisputed.

Plaintiffs argue that leaseholder application forms, and a 2016 inspection report and lease nonrenewal letter, are necessary to define the Policy. Opp. at 5. But there is no dispute over the existence of the Policy requiring all applicants and occupants to be legally present and whether the

female Plaintiffs could comply with the Policy (they could not). The entire basis of Plaintiffs' claim is that undocumented immigrants cannot provide U.S. Government documents showing proof of legal status as required by the Policy. Given these undisputed facts, Plaintiffs proffer the introduction of many documents that will needlessly prolong the trial.

As to the male Plaintiffs' resident ledgers, Plaintiffs argue they show that the male Plaintiffs had been living at the Park for several years prior to the time the Policy was enforced. Opp. at 5. This, however, is not a disputed fact. Moreover, Plaintiffs' argument regarding the admissibility of these ledgers demonstrates that Plaintiffs seek to introduce these documents for an improper purpose. Opp. at. 5. Plaintiffs state that these documents are admissible as evidence that Plaintiffs were model tenants and that the Policy was the only reason the Plaintiffs had to leave Defendants' Park. However, there is no dispute that Plaintiffs' failure to comply with the Policy was the reason Plaintiffs left the Park. Whether or not Plaintiffs gave Defendants "no other reason to evict them" or Plaintiffs "were model tenants" is simply not relevant to Plaintiffs' disparate impact claim. Instead, such arguments demonstrate an improper attempt by Plaintiffs to appeal to the jury's emotion and imply intentional discrimination.[3]

In sum, Plaintiffs' trial exhibits 8 – 36, 38 – 60, 66 – 68 should be excluded because they— and testimony related thereto—will only cause undue delay, waste trial time, and result in the needless introduction of cumulative evidence. For the same reasons, the male Plaintiffs' resident

---

[3] Plaintiffs also claim that the ledgers show a record of payment that disputes one reason for the Policy—that is necessary for lease underwriting. Opp. at 5. But, the Policy is applied to the entire Park not just to Plaintiffs, and Plaintiffs challenge the entire Policy—not just its application to Plaintiffs. Whether or not *Plaintiffs* paid their rent does not invalidate the underwriting risk that Defendants face from leasing to undocumented tenants. Indeed, this Court previously found Plaintiffs' argument to be unpersuasive holding that "there is no doubt that a lessor faces substantially greater financial risk if an occupant were deported (or threatened with deportation) and her husband understandably decided to abandon the lease to continue living with his wife." Dkt. 190 at 16.

ledgers should be excluded. This Court should not expend valuable resources at trial—and waste the jury's time—hearing testimony and reviewing exhibits which relate to undisputed facts and thus are irrelevant to Plaintiffs' disparate impact claim—the only claim to be resolved at trial.

## II. PURPORTED "EVICTION" RELATED CORRESPONDENCE SHOULD BE EXCLUDED

Purported "eviction" related correspondence (Pls.' Exs. 151-166),[4] is not relevant to Plaintiffs' disparate impact claim given that the facts underlying Plaintiffs' disparate impact claim are largely undisputed and only a disparate impact FHA claim for unintentional discrimination remains in this case. Even though the Policy's existence and its enforcement on Plaintiffs is not disputed, Plaintiffs nonetheless insist on parading evidence of the enforcement of the Policy in front of the jury only to imply that there are intentional acts of discrimination at issue when no such allegations remain in this case. Furthermore, the introduction of such evidence will needlessly lengthen the trial and confuse the issues before the jury.

In response, Plaintiffs claim that these documents are necessary to show how the Policy was applied to Plaintiffs, but there is no dispute that the Policy was applied to Plaintiffs and that the female Plaintiffs could not comply with the Policy. Opp. at 6. Specifically, Plaintiffs claim that the notices of nonrenewal are relevant because they are "the vehicle" by which the Policy was enforced, Opp. at 6-7, but, again, there is no dispute about the enforcement of the Policy on Plaintiffs or whether the female Plaintiffs could comply with the Policy. Plaintiffs also claim that

---

[4] Within Pls.' Exs. 151-166 are separate "outside documents" as styled by Plaintiffs, which are discussed below. *Infra* Section III. For example, Pls.' Ex. 158 also contains Mrs. Reyes ITIN, a Virginia social services application for background search, a Virginia State Police background search, and Mrs. Reyes' passport; Pls.' Ex. 159 is the VOICE letter; Pls.' Ex. 160 is a letter from State Senator Petersen to M. Dean; Pls.' Exs. 161-162 are audio files; and Pls.' Ex. 163 is an email to Plaintiffs' counsel. Plaintiffs do not present argument in regards to the content of Pls.' Ex. 158 except in regards to Mrs. Reyes' Virginia police background search within that document. The remainder of these exhibits are discussed below in Section III.

- 6 -

inspection reports "are evidence of the reasons the Plaintiffs were no longer permitted to remain at the park", Opp. at 7, but it is undisputed that the Plaintiffs could not remain at the Park because the female Plaintiffs could not comply with the Policy.

Plaintiffs also claim that the inspection reports, violation notices and resident ledgers for the male Plaintiffs are relevant to Steps 2 and 3 of the *Inclusive Communities* framework because if the Policy "is the only basis" for the actions towards Plaintiffs, it undermines Defendants' arguments that the Policy serves a business necessity.[5] Opp. at 7. But, here, Plaintiffs admit that they intend to imply another "basis" for the actions towards Plaintiffs—they intend to imply acts of intentional discrimination even though no such allegations remain in this case. In any event, the inspection reports and violation notices show enforcement of the Policy, which again is not disputed. The resident ledgers for the male Plaintiffs also do not relate to whether Defendants lacked a valid interest for the Policy but only demonstrate that the male Plaintiffs, who were legally present, could comply with the Policy. These again are not disputed facts.

---

[5] Here, Plaintiffs, yet again, misstate step 2 of that framework. In *Inclusive Communities*, at step 2, a defendant has the burden to "state and explain the *valid interest served by their policies*." 576 U.S. at 541 (emphasis added); *accord Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 424 (4th Cir. 2018). While the Supreme Court stated that this standard was analogous to the "business necessity" standard in the Title VII framework, the Supreme Court intentionally chose the different "valid interest" language because the Title VII framework "may not transfer exactly to the fair-housing context." *Inclusive Communities*, 576 U.S. at 541.

In opposition to another of Defendants' motions in *limine*, however, Plaintiffs seemingly abandoned their contention that the step-2 standard is one of "business necessity," asserting that the step-2 standard is one that simply examines a defendant's "valid interests". Dkt. 361 at 7 ("Such testimony is directly relevant to the jury's evaluation of Defendants' burden under Step 2 of the *Inclusive Communities* standard to show that the Policy is 'necessary to achieve a valid interest[.]'") (citing *Inclusive Communities*, 576 U.S. at 541).

Plaintiffs also assert that rent increase notices show that Plaintiffs were threatened by the Policy, Opp. at 7; but again, there is no dispute that the Policy was applied to Plaintiffs and that Plaintiffs vacated the Park as a result.[6]

Plaintiffs argue that notices of month-to-month premiums demonstrate that Defendants were not concerned about liability under the anti-harboring statute; but these notices do no such thing. They demonstrate only that Defendants were attempting to give Plaintiffs time to comply with the Policy.[7] Plaintiffs seek to introduce these documents only to suggest intentional discrimination by Defendants.

However, Plaintiffs' disparate treatment and intentional discrimination claims have been dismissed as have their other claims for breach of their leases or their claim that Defendants allegedly violated Virginia's Manufactured Home Lot Rental Act through the imposition of month-to-month leases. Therefore, letters to the Plaintiffs documenting Defendants' enforcement of the Policy or letters regarding month-to-month leases may have been relevant to these now-dismissed claims but they are not relevant to Plaintiffs' only remaining claim set for trial—their disparate impact claim.

It is evident that Plaintiffs hope that the introduction of these documents into evidence (with related testimony) will imply intentional discrimination against Plaintiffs even though there

---

[6] Plaintiffs also claim that rent increase notices, ledgers, and notices of month-to-month premiums are relevant to Plaintiffs' damage claims, Opp. at 7-8, but Defendants have separately argued that Plaintiffs are not entitled to actual damages, and that in the alternative, any damages phase of the trial should be bifurcated. Dkts. 337, 338.

[7] As this Court has previously noted, "[i]n this respect, plaintiffs contend that defendants should have immediately evicted plaintiffs. But plaintiffs seek to have it both ways: they contend that defendants invidiously discriminated by choosing the *less* drastic option (changing the plaintiffs' rent terms in lieu of immediate eviction), and that defendants should have avoided liability under the anti-harboring statute by risking liability under [Virginia's Manufactured Home Lot Rental Act]." Dkt. 190 at 16.

are no intentional discrimination claims or allegations set for trial. There is no dispute between the parties that the Policy was enforced on Plaintiffs. Accordingly, the exclusion of these documents will not leave Plaintiffs without "proof of the dispute" as Plaintiffs claim. Opp. at 8. Rather the facts underlying the dispute are largely undisputed. Plaintiffs' attempt to needlessly lengthen this trial with the introduction of these exhibits operates only to confuse the issues in front of the jury and unfairly prejudice Defendants at trial. These documents should be excluded.

### III. PLAINTIFFS CONCEDE THAT CERTAIN "OUTSIDE DOCUMENTS" ARE NOT ADMISSIBLE, BUT THE REMAINING "OUTSIDE DOCUMENTS" THAT PLAINTIFFS CONTEST ARE LIKEWISE NOT ADMISSIBLE

Plaintiffs claim that the VOICE letter, which is plainly hearsay, is not being offered for the truth of the matter asserted, but at the same time, Plaintiffs assert that they will introduce that letter to prove the very truth of the content of the letter—that VOICE conducted research and found alternative methods to conduct background checks. Opp. at 9 (citing Pls.' Ex. 159). Plaintiffs also argue that the letter is evidence that Defendants were on notice that their Policy was unlawful, but this letter was written on Aug. 12, 2016 *after* the Complaint was filed on May 23, 2016. *Id.* Defendants were already on notice according to Plaintiffs' theory. In any event, such claims of "notice" only bear on Plaintiffs' claim for punitive damages and Defendants have separately moved to exclude any evidence in support of Plaintiffs' actual or punitive damages claim, or in the alternative, for bifurcation of any presentation of damages. Dkt. 337, 338.

Nonetheless, because Plaintiffs plainly offer this document for the truth of the matter asserted therein, the jury should not be permitted to see this document and credit the hearsay contained therein as true—that VOICE's "research" regarding other background check options was accurate, especially when Defendants will not be able to cross examine VOICE or any of its representatives on the veracity of these claims. Whether or not VOICE *believed* there are

alternative methods to conduct background checks is irrelevant to the parties' dispute and VOICE's opinions—which are inadmissible and cannot be tested at trial—should not be introduced as evidence of an alternative policy with a less discriminatory effect. In sum, this letter is irrelevant, inadmissible, and presents a substantial danger of unfair prejudice to Defendants.

Plaintiffs also assert an email between Plaintiffs' counsel and a third party that predates the litigation (Pls.' Ex. 163) is relevant but *only* because it could serve as impeachment evidence. In making this argument Plaintiffs therefore concede the email is not relevant or admissible outside of the impeachment context. However, Plaintiffs listed this document on their pretrial disclosures as a document they "will introduce." Dkts. 312, 321. In this case, this document is plainly hearsay and it implicates Plaintiffs' counsel as a potential witness if it was introduced as evidence because counsel is a recipient on the email. Moreover, Mr. Franzen, the other person on the email exchange, is also not listed as a witness on Plaintiffs' pre-trial disclosures. *See* Dkt. 312. Defendants are therefore precluded from examining either of the two persons on the exchange about the veracity of the content therein if it is introduced as an exhibit. Accordingly, this document should be struck as a potential exhibit.

Plaintiffs also assert that Mr. Bolaños and his wife's lease agreement with a completely distinct mobile home park in Northern Virginia, and the rules for that park, are admissible because they demonstrate an alternative to Defendants' Policy at step 3 of the *Inclusive Communities* framework. Opp. at 10. Plaintiffs also argue that this lease is evidence of Mr. Bolaños and his wife's damages. *Id.* As to Plaintiffs' first argument, that this lease agreement and the related rules demonstrate an alternative to the Policy—they simply demonstrate that a completely different mobile home park permitted Mr. Bolaños and his wife sign a lease. These documents do not demonstrate an alternative Policy to Defendants' valid interests, which

involve, *inter alia*, concerns about potential criminal liability under the anti-harboring statute and *United States v. Aguilar*, 477 F. App'x 1000 (4th Cir. 2012). Indeed, this other mobile home park may have completely different policies and a completely different process—or lack thereof—for verifying identity sufficient to conduct criminal background and credit checks. This lease will not help explain that park's screening process or policies or lack thereof. Nor have Plaintiffs identified a witness who can speak to such screening policies or how they are conducted. This lease and the related rules are not relevant to demonstrate an alternative policy with a less discriminatory effect—they do not speak the policies in place at that park. Instead, these exhibits are meant to imply that Defendants' Policy is improper *only because* another park permitted Mr. Bolaños and his wife to sign a lease. This suggestion is improper and unfairly prejudices Defendants.

As to Plaintiffs' second point about the relevance of these documents—that these documents are relevant to Plaintiffs' damages claim—Defendants have separately argued that Plaintiffs are not entitled to actual damages, or that in the alternative, any presentation of damages should be bifurcated. Dkts. 337, 338. At a minimum, even if the Court disagrees with Defendants' position that Plaintiffs should not be permitted to receive actual damages, Plaintiffs' attempt to introduce this document into evidence demonstrates exactly why the damages phase of this trial should be bifurcated to prevent prejudice to Defendants. As noted above, this lease and the related rules have no relevance to the liability inquiry under the *Inclusive Communities*. Instead, even assuming Plaintiffs could pursue actual damages, only the lease rental amount and the lease term could even conceivably be relevant to Plaintiffs' damages claim (the separate park rules could not be relevant to that claim). Thus, even under this damages theory of relevance, introduction of the

entirety of the lease and the related rules would serve only to unfairly prejudice Defendants and confuse the issues before the jury.

Finally, Plaintiffs do not contest that the following exhibits are inadmissible and should be excluded: (1) A letter from a Virginia state senator and member of Virginia's house of delegates to Mr. Dean, general counsel for A.J. Dwoskin & Associates, Inc. (Pls.' Ex. 160); and (2) Audio files recorded by Mr. Bolaños and his wife (Pls.' Exs. 161-162). These exhibits should be excluded.

## IV. MRS. REYES' BACKGROUND CHECK IS INADMISSIBLE, AND SCREENING REPORTS AND CORELOGIC REPORTS REGARDING THE MALE PLAINTIFFS ARE NOT RELEVANT TO PLAINTIFFS' CLAIMS AND WOULD WASTE VALUABLE TRIAL TIME

Plaintiffs argue that Mrs. Reyes' background check (Pls.' Ex. 61) is relevant because it shows that identity and criminal background checks can be effectively performed using a foreign passport, and that other local landlords are able to do so. Opp. at 11. The separate background check provided for Mrs. Reyes, however, provides no information about the underlying process used to verify identity or conduct the check. And, it does not demonstrate anything about other landlord's capabilities or processes used to run background checks. Plaintiffs do not argue that the background check provides insight into how the police allegedly used any information provided to verify identity sufficient to conduct that background check. Plaintiffs also have not identified any witness to explain the identity verification process used for that background check. Mrs. Reyes clearly did not conduct that background check and cannot explain that process. This document, therefore, is plainly inadmissible and not relevant given that the results of the check do not explain the underlying process used to verify Mrs. Reyes' identity. As a result, the document is inadmissible and any minimal value to this inadmissible document is substantially outweighed by the danger of unfair prejudice to Defendants.

Plaintiffs also argue that the resident screening reports and the Core Logic reports for the male Plaintiffs are relevant to show that there are less discriminatory alternatives to Defendants' Policy (Pls.' Exs. 62-65). Plaintiffs, however, don't say what that alternative is or how these documents relate to that alternative or even how these documents demonstrate such an alternative.

In any event, these documents do not demonstrate an alternative policy in regards to persons who are not legally present. The male Plaintiffs were legally present in the United States. Defendants were able to verify their identity sufficient to run the necessary screening reports on Plaintiffs and subsequently lease to them. The dispute arises in regards to the undocumented female Plaintiffs who could not satisfy the Policy. These documents, which relate exclusively to the male Plaintiffs, are thus not documents that show a less discriminatory alternative policy. Rather, they demonstrate the male Plaintiffs could comply with the Policy, which is an undisputed fact. Accordingly, these documents are irrelevant to Plaintiffs' claims and will confuse the issues before the jury and waste valuable time at trial.

### V. IF THE REQUESTED EXHIBITS ARE EXCLUDED, DEFENDANTS WILL NOT INTRODUCE THEM AS EXHIBITS

Plaintiffs argue that Defendants concede the admissibility of certain exhibits because they are on Defendants' exhibit list and thus Defendants have waived any objection to them. Opp. at 11-12. However, if they are excluded upon Defendants' motion, Defendants will not be able to introduce them as exhibits. Defendants therefore have not waived any objection to these exhibits.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court to grant their Motion *in Limine* and enter an Order: (1) excluding Plaintiffs' trial Exhibits 8-72; (2) excluding Plaintiffs' trial Exhibits 98-101; (3) excluding Plaintiffs' trial Exhibits 151-166; (4) excluding any testimony related to these documents; and (5) for such other relief as is just and proper.

Dated: June 28, 2021	Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, WAPLES PROJECT LIMITED PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June, 2021, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Grayson P. Hanes (VSB No. 06614)
Michael S. Dingman (VSB No. 30031)
Justin deBettencourt (VSB No. 83806)
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
ghanes@reedsmith.com
mdingman@reedsmith.com
jdebettencourt@reedsmith.com
*Counsel for Defendants*