IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, <br><br> Defendants. | Civil No.: 1:16-cv-563 (PTG/WBP) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF IVAN YACUB, ESQ.**

**INTRODUCTION**

Plaintiffs identified Mr. Ivan Yacub, Esq., an immigration attorney, as an expert witness. According to his declaration, which outlined the opinions he would provide at trial, Mr. Yacub would provide opinions regarding (1) Individual Taxpayer Identification Numbers ("ITINs"), specifically how to obtain them, and (2) whether U.S. Visas and I-94 documents are good evidence of legal presence—Mr. Yacub opined that they were not. Neither of these opinions are relevant and would waste valuable trial time. Mr. Yacub's opinions regarding ITINs are not needed because the parties have stipulated to the process for obtaining an ITIN. (Dkts. 180, 313.) And, Mr. Yacub's opinions on whether U.S. Visas and I-94 documents are good evidence of legal presence can only be relevant if Court accepts Plaintiffs' mischaracterization of Defendants' Policy—that the Policy only permitted those documents and those documents alone—to be used to show legal presence. As detailed below, however, this mischaracterization flies in the face of undisputed testimony and documents establishing that Defendants would accept any document proving legal presence, not just visas and I-94 forms.

Mr. Yacub's remaining testimony is that certain unspecified "other institutions", such as banks or schools, accept foreign passports as proof of identity and some of his past unspecified clients have used ITINs to obtain credit accounts on unknown dates. Mr. Yacub also proffers testimony that can be distilled into the proposition that he knows other undocumented persons who have signed leases with other unspecified housing providers at unspecified times. But the policies and practices of other unnamed institutions at some unspecified time have no bearing on the valid interests proffered by Defendants for their Policy. Nor does Mr. Yacub lay any adequate foundation for the policies and practices at these other unnamed institutions or housing providers. Instead, Plaintiffs hope to use this testimony to unduly prejudice Defendants by attempting to paint

Defendants' Policy as purported outlier without Mr. Yacub ever naming or identifying the institutions or providers, or even the clients, he describes in general terms in this proffered testimony. Plaintiffs' invitation to inject such error into this proceeding should be rejected.

Accordingly, as set forth in more detail below, this Court should exclude Mr. Yacub as a witness pursuant to Rules 401 and 403 of the Federal Rules of Evidence.

## BACKGROUND

On Plaintiffs' pretrial disclosures, Plaintiff identified Ivan Yacub, Esq. as a witness they may call. Dkt. 312 at 3. During discovery, Plaintiffs identified Mr. Yacub, an immigration attorney, as an expert witness. His declaration is attached as **Exhibit 1** and the declaration identifies the opinions that Mr. Yacub may provide at trial should he be called as a witness. He generally provides opinions on two topics: ITINs, Exhibit 1 ¶¶ 4-9, and U.S. Visas and I-94s and whether they are good evidence of legal presence, *id.* ¶¶ 10-25. The crux of his opinions regarding ITINS is the following:

> To get an ITIN, an individual must fill out an application (form W-7) and attach a federal income tax return and either original or certified copies of identification documents. "Identification documents" can include a foreign passport, and in fact, a foreign passport is the only stand-alone document that the IRS accepts to prove both foreign status and identity … In issuing an ITIN, the IRIS does not accept a photocopy of a foreign passport; rather, it requires the applicant to either submit the actual passport, or bring the passport to a designated office for inspection.

*Id*. ¶ 8. He also offers opinions regarding U.S. Visas and I-94 documents, *id.* ¶¶ 10-23. He then states that he has reviewed various documents allegedly stating the policies of the defendants in this case. *Id*. ¶ 24. The crux of his opinions regarding visas and I-94 documents is that "[t]he documents that defendants have at various times purported to require are not good evidence of legal presence." *Id*. ¶ 25. He states that, specifically, visas and I-94s not good indicators of a person's legal presence in the United States. *Id.*

Mr. Yacub's declaration also proffers supposed knowledge that unspecified "other institutions", such as banks or schools, accept foreign passports as proof of identity and his past unspecified clients have used ITINs to obtain credit accounts. *Id.* ¶ 9 ("From my experience as an immigration attorney, I know that many other institutions aside from the IRS also accept foreign passports as proof of identity, including but not limited to banks, schools, and local police departments. Over the years I have had plenty of clients who used their ITINs to obtain credit accounts, including even mortgages.").

Finally, in paragraphs 28 and 29 of his declaration, Mr. Yacub proffers general anecdotal opinions that unspecified and unnamed undocumented persons have signed leases with unknown housing providers at unknown points in time. *Id.* ¶ 28 ("In my law practice, I have met countless mixed-status married coupled in Northern Virginia who are both on leases as lessees. I know this because in preparing spousal petitions, I have occasion to look at the leases of married couples who are my clients."); *id.* ¶ 29 ("In my law practice, I have met countless undocumented people who are on leases as lessees. I know this because in in preparing various types of applications for legal status (including but not limited to DACA), I have to help my clients prove their physical presence in the United States, and providing my clients' leases is one of the best ways to do this.").

Plaintiffs presumably identified Mr. Yacub to testify regarding steps 2 and 3 of three-step burden-shifting standard articulated in *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015). *Inclusive Communities* held that step 2 is satisfied if a "valid interest" is served by the policy and cautioned courts not to substitute their judgment for that of a private housing provider. The Court reasoned that "[a]n important and appropriate means of ensuring that disparate-impact liability is properly limited is to give housing authorities and private developers *leeway* to state and explain the *valid interest* served by their policies."

*Inclusive Communities*, 576 U.S. at 541 (emphasis added). The step-3 issues—as framed by the Plaintiffs in their Complaint—are whether ITINs and foreign passports provide the same reliability and function as the documents requested by the Policy.[1] *See* Complaint ¶ 31 ("As a form of identification, the ITIN is as reliable and precise as a Social Security number."). Plaintiffs alleged that Defendants' Policy requires "either (1) an 'original social security card' or, if unavailable, an 'original Passport, original U.S. Visa, and original Arrival/Departure Form (I-94 or I-94W).'" *Id.* ¶ 26.

## LEGAL STANDARD

While the Federal Rules of Evidence do not specifically provide for motions in limine, their use has evolved under the federal courts' inherent authority to manage trials. *United States v. Verges*, No. 1:13cr222 (JCC), 2014 WL 559573, *2 (E.D. Va. Feb. 12, 2014) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider. *Id.* (citing *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)). Such motions serve important gatekeeping functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to the jury. *Id.* (citing *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

---

[1] Plaintiffs are bound by these allegations. *See Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998).

## ARGUMENT

### I. MR. YACUB'S PROPOSED TESTIMONY REGARDING IMMIGRATION STATUS AND ITINS IS NOT RELEVANT

Mr. Yacub's proposed testimony centers on two areas: (1) the process to obtain ITINs, Exhibit 1 ¶ 8, and (2) whether visas and I-94 documents are good evidence of legal presence, *id.* ¶ 25. Both opinions are not relevant and/or would waste the Court's and the jury's time at trial. Pursuant to FED. R. EVID. 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Even if evidence is relevant, pursuant to FED. R. EVID. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

*First*, Mr. Yacub's opinions regarding the process to obtain an ITIN are rendered irrelevant given the parties' stipulation of uncontested facts regarding ITINs. On February 2, 2017, the parties agreed to a Joint Stipulation of Uncontested Facts (Dkt. 180), which they adopted readopted on December 4, 2020. (Dkt. 313.) In pertinent part, the parties agreed to Uncontested Facts 15 and 16, which are the following:

15. A person can acquire an Individual Taxpayer Identification Number ("ITIN") if a person sends to the IRS: a completed Form W-7 with a valid passport and a copy of a tax return.

16. In issuing an ITIN, the IRS does not accept a photocopy of a foreign passport; rather, it requires the applicant either to submit the actual passport, or bring the passport to a designated office for inspection. No in-person interview is required of the applicant.

The parties stipulated Facts 15 and 16 provide the same information that Mr. Yacub would provide in his opinion regarding ITINs. Accordingly, Mr. Yacub's opinions as to this process are not relevant and would waste the Court's and the jury's time.

*Second*, Mr. Yacub's opinions regarding whether visas and I-94s are good evidence of legal presence are not relevant because Defendants' Policy does not only require a passport, a visa and an I-94 as Plaintiffs allege. Plaintiffs have continually mischaracterized Defendants' Policy as such in order to argue that these opinions are relevant. However, Defendants' Policy requires proof of legal status through various documents, not just visa and I-94s as Plaintiffs alleged in their Complaint.

Defendants' documents—dating back to 2011—show that the Policy was that all applicants must be legally eligible to live in the United States, not that all applicants must produce *only* an I-94 and a U.S. Visa to live at Defendants' Park. Defendants' Resident Selection and Occupancy Standards, Dkt. 151 at Exs. 9-10, which apply to the Park, *id.* at Ex. 20 (Jones Decl.), identify a number of other documents that are proof of legal residency including a permanent resident card, temporary resident card and employment authorization card.  Dkt. 151, Ex. 9 at 8 (outlining documents accepted); Dkt. 151, Ex. 10 at 11 (outlining documents accepted). Both of these documents contain a detailed list of "visa classifications" and identify "verification document required."  Dkt. 151, Ex. 9 at 9; Dkt. 151, Ex. 10 at 12.  Additionally, the Consumer Report & CoreLogic SafeRent and Training Manual also identifies various documents that will be accepted to establish legal residence and includes samples of such documents.  Dkt. 151, Ex. 11 at 50-59 (listing documents proving legal presence); *id.* at 62-66 (listing different visa types). The Consumer Reports & Core Logic SafeRent and Training Manual dated January 24, 2011 (Dkt. 138, Ex. 43 and Dkt. 151, Ex. 11), states on page 21 that if an applicant cannot demonstrate legal status "the application must be disapproved." The Resident Selection and Occupancy Standards dated February 19, 2013 states on page 7 that "all applicants must be legally eligible to live in the

U.S."[2] Dkt. 151, Ex. 9 at 7. The Resident Selection and Occupancy Standards dated May 8, 2015 states at page 9 that "all applicants must be legally eligible to live in the U.S." Dkt. 151, Ex. 10 at 9.

Defendants' witnesses have also consistently testified that Defendants would accept any document issued by the U.S. Government showing legal presence in the United States. Mark Jones, the designee for the Defendants, testified that the Defendants would accept any documents issued by the United States government showing legal presence in the United States. Dkt. 151, Ex. 6 at 87-88; 224:16-20. Josephine Giambanco, the manager for the Park, also testified that the Defendants accept any document demonstrating legal presence in the United States. Dkt. 151, Ex. 7 at 29:24-31:20; 63:18-64:5. Carolina Easton, the quality control manager for A.J. Dwoskin & Associates, Inc., *repeatedly* testified that Defendants would accept any document demonstrating legal presence in the United States. Dkt. 151, Ex. 8 at 30:21-32:7; 47:9-14; 57:18-21; 96:5-12; 125:3-11. The April 22, 2016 Future Resident and Information Guide for the Park, states that "[a]pplicants who are not U.S. citizens must also provide immigration documentation to prove legal presence in the United States." Pls.' Tr. Ex. 85 at 2 (attached hereto as **Exhibit 2**). Plaintiffs' allegation that the Defendants only accept a limited number of documents, such as requiring U.S. Visas and I-94s to establish legal presence is flat wrong.

Moreover, this false narrative should be rejected because it is undisputed that the female Plaintiffs could not have provided other immigration documents proving legal presence just *not* I-94s and U.S. Visas (Plaintiffs admit they cannot). Accordingly, any proposed argument for the relevance of such testimony—that the Policy only required certain immigration documents but not others—is thus premised on a false narrative and *one that is not applicable to the Plaintiffs*.

---

[2] In his declaration, Mr. Jones states that these standards applied to the Park. Dkt. 151, Ex. 20.

Thus, Mr. Yacub's opinions as to whether Visas and I-94s are good evidence of legal presence are only relevant if Plaintiffs' mischaracterization of Defendants' Policy is accepted, which it should not be. Accordingly, because Mr. Yacub's opinions regarding ITINs are rendered irrelevant in light of the undisputed facts and his opinions regarding visas and I-94s are premised on a mischaracterization of Defendants' Policy, these opinions should be excluded pursuant to Rules 401 and 403 of the Federal Rules of Evidence.

## II. MR. YACUB'S TESTIMONY REGARDING UNSPECIFIED OTHER INSTITUTIONS IS IRRELEVANT

Mr. Yacub's supposed knowledge of whether unspecified "other institutions", such as banks or schools, accept foreign passports as proof of identity and his knowledge of his past unspecified clients using ITINs to obtain credit accounts is entirely irrelevant to steps 2 and 3 of the *Inclusive Communities*' framework. In paragraph 9 of his declaration, Mr. Yacub states that "[f]rom my experience as an immigration attorney, I know that many other institutions aside from the IRS also accept foreign passports as proof of identity, including but not limited to banks, schools, and local polices departments. Over the years I have had plenty of clients who used their ITINs to obtain credit accounts, including even mortgages."

There are a number of problems with permitting Mr. Yacub to offer this proposed testimony. First and foremost, it is not relevant to Plaintiffs' disparate impact claim. At step 2, Defendants are to be given "*leeway* to state and explain the *valid interest* served by their policies." *Inclusive Communities*, 576 U.S. at 541 (emphasis added). At step 3, Plaintiffs have to prove that these valid interests can be served by another practice that has a less discriminatory effect. *Id*. at 527. The step-3 issues—as framed by the Plaintiffs in their Complaint[3]—are whether ITINs and

---

[3] As noted, Plaintiffs are bound by these allegations. *See Bender*, 159 F.3d at 192.

foreign passports provide the same reliability and function as the documents requested by the Policy. Complaint ¶¶ 31-33.[4]

Other institutions' requirements for proof of identity are not relevant to the valid interests for Defendants' Policy. The other institutions that are discussed by Mr. Yacub are even not subject to the Fair Housing Act. For instance, banks, schools, and local police departments do not provide housing and do not have the same concerns of lease underwriting. This proposed testimony will therefore confuse the issues in front of the jury and subvert the inquiry under *Inclusive Communities* into one where Defendants' interests are only valid if they match with the policies used by other unspecified non-housing institutions. Moreover, Mr. Yacub does not even specify or name the institutions he claims would accept ITINs nor does Mr. Yacub purport to have any knowledge of the underlying policies or practices in place at these institutions. He does not specify when these institutions accepted ITINs or foreign passports, what other documents, if any were required, which of his clients used their ITINs and so forth. This is not "expert" testimony but instead is Plaintiffs' attempt to introduce anecdotal testimony under the guise of opinions from a purported lawyer expert—one offering purported opinions on other institutions' policies without any foundation to offer such opinions. Plaintiffs clearly proffer this testimony to unfairly malign Defendants' Policy by tainting it as an "outlier," even though other institutions' policies and requirements do not bear on Defendants' valid interests or whether those interests can be served by a practice with a less discriminatory effect. This testimony should be excluded because it is not

---

[4] Plaintiffs have previously conceded that Defendants have met their step 2 burden in regard to the Policy as applied to lessees and that they have no rebuttal at step 3 in regard to lessees. (Dkt. 274 at 5-6.) In response to Defendants' renewed motion for summary judgment following remand, Plaintiffs argued that as to their step 3 burden, Defendants could collect proof of legal presence from leaseholders but not occupants. (*Id.*) This is a notable concession because Plaintiffs are in fact conceding that the Policy *does not violate the FHA as applied to leaseholders.*

relevant, it will confuse the issues for the jury and, it presents a substantial danger of unfair prejudice to Defendants.

### III. MR. YACUB'S TESTIMONY REGARDING OTHER UNSPECIFIED LEASES IS NOT RELEVANT AND IS UNDULY PREJUDICIAL

Mr. Yacub's proposed testimony in paragraphs 28 and 29 of his declaration is not relevant to steps 2 and 3 of the *Inclusive Communities*' framework, and if admitted, such testimony would unduly prejudice Defendants. In paragraph 28 of his declaration, Mr. Yacub states that he has "met countless mixed-status married coupled in Northern Virginia who are both on leases as lessees. I know this because in preparing spousal petitions, I have occasion to look at the leases of married couples who are my clients." In paragraph 29 of his declaration, Mr. Yacub states that "[i]n my law practice, I have met countless undocumented people who are on leases as lessees. I know this because in in preparing various types of applications for legal status (including but not limited to DACA), I have to help my clients prove their physical presence in the United States, and providing my clients' leases is one of the best ways to do this."

This proposed testimony is not relevant. Whether or not Mr. Yacub knows other mixed-status married couples in Northern Virginia or met other undocumented people who are on distinct leases with different housing providers is entirely irrelevant at steps 2 and 3. Other leases from other housing providers who may or may not have similar policies are entirely irrelevant to the inquiry into Defendants' valid interests. Mr. Yacub would not be able to lay any foundation as to any knowledge about the underlying practices or policies at various other housing providers for these "countless" people he has met. Moreover, Mr. Yacub cannot even name a single provider or provide any specific numbers of how many such people he has met. Accordingly, his opinions as to "countless" people he has met through his law practice is simply not relevant to steps two and three of *Inclusive Communities'* burden-shifting scheme as applied to Defendant's Policy. This

testimony is only offered to improperly paint Defendants' Policy as an "outlier" and thus it presents a substantial danger of unfair prejudice to Defendants.

In response to a prior motion *in limine* challenging Mr. Yacub's testimony, Plaintiffs argued that the proposed testimony contained in these paragraphs was relevant "generally to the jury's understanding of whether the Policy at issue in this litigation is industry standard or rather an outlier in the community." Dkt. 361 at 9. However, Mr. Yacub's testimony regarding knowing and meeting other, unnamed and unspecified undocumented persons on leases is not testimony regarding an "industry standard". Exhibit 1 ¶¶ 28-29. Not only is Mr. Yacub not qualified to opine regarding an "industry standard" because he has not presented any qualifications or specialized expertise that would permit him to opine regarding an industry standard in leasing policies, but this proposed testimony is anecdotal testimony, not testimony based in expertise or knowledge of industry standards. In any event, this testimony implicates other housing providers with their completely distinct policies and interests supporting them. Importantly, Mr. Yacub does not proffer whether these other entities have similar policies as Defendants'.

Plaintiffs evidently hope to improperly influence the jury by offering irrelevant testimony regarding unspecified other leases seen by Mr. Yacub so that the jury believes that Defendants' Policy is an impermissible "outlier." Such testimony would unduly prejudice Defendants and is irrelevant. Pursuant to Rules 401 and 403, this Court should preclude Mr. Yacub from offering the testimony in paragraphs 28 and 29 of his declaration.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court to grant their Motion *in Limine* and enter an Order: (1) excluding the testimony of Ivan Yacub, Esq.; and (2) for such other relief as is just and proper.

Dated:  April 10, 2024　　　　　　　Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, WAPLES PROJECT LIMITED PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Michael S. Dingman (VSB No. 30031)
Brooks H. Spears (VSB No. 86391)
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102
(703) 712-5462
(703) 712-5073
mdingman@mcguirewoods.com
bspears@mcguirewoods.com

Grayson P. Hanes (VSB  No. 06614)
Odin Feldman Pittleman, P.C.
1775 Wiehle Avenue
Suite 400
Reston, VA 20190
(703) 218-2100
grayson.hanes@ofplaw.com

Justin deBettencourt (VSB No. 83806)
Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
jdebettencourt@reedsmith.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of April, 2024, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Michael S. Dingman (VSB No. 30031)
Brooks H. Spears (VSB No. 86391)
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102
(703) 712-5462
(703) 712-5073
mdingman@mcguirewoods.com
bspears@mcguirewoods.com

Grayson P. Hanes (VSB No. 06614)
Odin Feldman Pittleman, P.C.
1775 Wiehle Avenue
Suite 400
Reston, VA 20190
(703) 218-2100
grayson.hanes@ofplaw.com

Justin deBettencourt (VSB No. 83806)
Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
jdebettencourt@reedsmith.com

*Counsel for Defendants*