IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, <br><br> Defendants. | Civil No.:  1:16-cv-563 (PTG/WBP) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE ARGUMENT QUESTIONING WHETHER VALID INTERESTS FOR THE POLICY WERE IN PLACE AT THE TIME OF THE POLICY'S ADOPTION**

# INTRODUCTION

Plaintiffs have argued in prior briefs that Defendants' asserted reasons for the Policy are "post hoc justifications." It is evident that Plaintiffs intend to present evidence and argue at trial that Defendants' reasons for the Policy did not motivate the adoption of the Policy and thus are "post hoc justifications" that cannot constitute "valid interests" supporting the Policy.

However, these arguments are not relevant to Plaintiffs' disparate impact claim—the only claim remaining for trial. There is nothing in the text of the Fair Housing Act ("FHA") or in *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.* 576 U.S. 519 (2015) indicating that a defendant's subjective motivation at the time it adopted an allegedly discriminatory policy or practice plays any role in determining whether the defendant has met its step-2 burden in a disparate-impact case. After Plaintiffs prove a prima facie case of disparate impact discrimination, under step 2 of the three-step burden-shifting framework articulated by the Supreme Court in *Inclusive Communities*, Defendants must be given "leeway to state and explain the *valid interest served by the policies.*" 576 U.S. 519, 541 (2015) (emphasis added). At this step, *Inclusive Communities* does not require that the adoption of a policy be *motivated* by a valid interest at the time of its adoption—merely that the policy serve a "valid interest." That is consistent with disparate-impact liability more generally, which—unlike intentional disparate treatment liability—has nothing to do with the defendant's motive or state of mind. Accordingly, any argument or evidence that Defendants' reasons for the Policy are post hoc justifications are not relevant pursuant to FED. R. EVID. 401.

In addition, any probative value of these arguments (there is none) is substantially outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury. Plaintiffs' arguments regarding purported post hoc justifications are an improper attempt to

confuse the issues and improperly suggest to the jury that Defendants' valid interests served by the Policy were somehow improperly motivated. If Plaintiffs are permitted to make such arguments, the jury could improperly assume that an otherwise valid interest must motivate the adoption of a Policy to be valid even though that is not Defendants' step 2 burden. Moreover, the presentation of such evidence would lead to confusion between Plaintiffs' dismissed disparate treatment claim and the disparate impact claim that Plaintiffs are presenting at trial. Accordingly, not only is such an argument irrelevant, but FED. R. EVID. 403 prohibits Plaintiffs from making such an argument or offering evidence in support of such an argument.

## LEGAL STANDARD

While the Federal Rules of Evidence do not specifically provide for motions in limine, their use has evolved under the federal courts' inherent authority to manage trials. *United States v. Verges*, No. 1:13cr222 (JCC), 2014 WL 559573, *2 (E.D. Va. Feb. 12, 2014) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider. *Id*. (citing *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)). Such motions serve important gatekeeping functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to the jury. *Id*. (citing *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

## ARGUMENT

Plaintiffs have argued in their opposition to Defendants' Motion for Summary Judgment filed after the first appeal and remand that Defendants' valid interests served by the Policy are post hoc justifications for the Policy. Dkt. 260 at 21. Defendants anticipate that Plaintiffs will continue such arguments at trial and attempt to cross-examine Defendants' witnesses about whether the

interests served by the Policy motivated the adoption of the Policy. Defendants anticipate that Plaintiffs will advance this argument to improperly influence the jury to discredit Defendants' interests for the Policy. Moreover, such argument will likely attempt to suggest to the jury an improper motive in the adoption of the Policy. But, this Court dismissed Plaintiffs' claim for disparate treatment (Dkt. 190), which decision was not appealed. Any argument that the reasons for the Policy are post hoc justifications and any evidence in support of that argument are plainly irrelevant to Plaintiffs' disparate impact claim—the only claim set for trial. Moreover, the probative value of these arguments, and any evidence in support, are substantially outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury.

Pursuant to FED. R. EVID. 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pursuant to FED. R. EVID. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

In order to prove their disparate impact claim, Plaintiffs must present a prima facie case of disparate impact by presenting evidence of a policy with a robust causal connection to a disparate impact. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542 (2015) ("A robust causality requirement ensures that '[r]acial imbalance ... does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create.") (citation omitted). In addition, as part of their prima face case, Plaintiffs must present evidence that Defendants' Policy is not an "artificial, arbitrary, and unnecessary barrier[]" to achieve a valid interest. *Id*. at 543

("Governmental or private policies are not contrary to the disparate-impact requirement unless they are "artificial, arbitrary, and unnecessary barriers."). The burden then shifts to Defendants to be given "leeway" to articulate a "valid interest served by their policies." *Id*. at 541 ("[Defendants] must be allowed to maintain a policy if they can prove it is necessary to achieve valid interest."). At this step, the Supreme Court cautioned that "[a]n important and appropriate means of ensuring that disparate-impact liability is properly limited is to give [defendants] leeway to state and explain the valid interest served by the policies." *Id.* Thereafter, the burden shifts back to Plaintiffs to prove that a less discriminatory policy exists that would serve the defendant's interest or interests. *Id*. at 527-28.

Arguments as to whether reasons for the Policy are post hoc justifications or whether reasons motivated the Policy are not relevant to a disparate impact claim. As *Inclusive Communities* explains, the relevant text of the FHA, like that of Title VII and the ADEA, "refers to the consequences of an action rather than the actor's intent." 576 U.S. at 534 (citation omitted); *id.* at 533 (Title VII and the ADEA "'focus[ ] on the effects of the action on the employee rather than the motivation for the action of the employer'") (citation omitted). That focus on effect, rather than intent, is the principal distinction between disparate-impact and disparate-treatment suits, where a defendant's motive is central. *See Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 1002 (1988) (Blackmun, J., concurring) (disparate treatment "focuses exclusively on the intent of the employer"); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 422 (1975) (noting that Title VII "is not concerned with the employer's 'good intent or absence of discriminatory intent' for 'Congress directed the thrust of the Act to the consequences of employment practices, not simply the motivation.'" (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971)); *see also Smith v. City of Jackson*, 544 U.S. 228, 235 (2005) (observing that Title VII "focuses on the effects of the action

… rather than the motivation for the action…."); *Inclusive Communities*, 576 at 533 (highlighting "rather than the motivation" language in *Smith*).

In an FHA disparate impact claim, at step 2, Defendants must be given "leeway to state and explain the valid interest served by the policies." *Inclusive Communities*, 576 U.S. at 541. The Supreme Court cautioned that this leeway was "[a]n important and appropriate means of ensuring that disparate-impact liability is properly limited[.]" *Id.* This mandated "leeway" requires that housing providers be permitted to develop valid interests for policies that arise over the course of time, not constrained by what they may have known or thought at a particular moment in time or the vagaries of whether they can document as much. And it keeps disparate-impact liability limited to policies that "are 'artificial, arbitrary, and unnecessary barriers[,]'" as *Inclusive Communities* requires. 576 U.S. at 543 (citation omitted).

And, "[a]lthough the Supreme Court in *Inclusive Communities* used the phrase 'business necessity' to describe this step of the analysis," the Fourth Circuit recently adopted the Ninth Circuit's view on this step—that the term "[business necessity] is somewhat of a misnomer . . . the defendant need not demonstrate that the challenged policy is 'essential or indispensable' to its business—*only that the policy 'serves, in a significant way,' its legitimate interests*." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 277 (4th Cir. 2024) (citing *Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 967 (9th Cir. 2021)) (emphasis added). At step 2, *Inclusive Communities* did not state that Defendants have a burden of demonstrating that the Policy was motivated by the valid interest. Instead, the policy must simply serve, in a significant way, a defendant's valid or legitimate interests. This makes logical sense. Otherwise valid interests served by a housing provider's policy are no less valid because they were not purportedly the reasons that motivated the adoption of the policy initially. To

conclude otherwise would require the courts to strike down policies that in fact serve a valid interest. And, it would also impose a recordkeeping requirement that exists nowhere in the Fair Housing Act—one that would require a housing provider to exhaustively detail the reasons for implementing policies years or decades prior to a challenge to a policy.

Here, Defendants have asserted several interests served by the Policy which were left unaffected by the Fourth Circuit's recent opinion addressing only Defendant's anti-harboring statute defense: (1) confirming lease applicant identities, (2) to perform credit and criminal background checks, (3) to minimize loss from eviction, and (4) to underwrite leases. Dkt. 248 at 22-23. Unable to dispute the validity of the reasons, Plaintiffs improperly contend that these reasons are post hoc justifications. Dkt. 260 at 21.

As stated above, this argument is irrelevant to the *Inclusive Communities* burden-shifting framework. Moreover, not only is this argument irrelevant, but this argument is factually baseless as this Court previously found. *See* Dkt. 138 at 21 (claiming justifications for Policy were post-hoc) and (Dkt. 190 at 15-17) (arguments were specifically rejected by this Court). Defendants' Policy and the reasons for it were set forth in documents predating this lawsuit despite Plaintiffs' false claim to the contrary. The Consumer Reports & Core Logic SafeRent and Training Manual dated January 24, 2011[1] ("CoreLogic Manual"), (Dkt. 138, Ex. 43 and Dkt. 151, Ex. 11), states on page 21 that if an applicant cannot demonstrate legal status "the application must be disapproved." The Resident Selection and Occupancy Standards dated February 19, 2013 states on page 7 that "all applicants must be legally eligible to live in the U.S."[2] Dkt. 151, Ex. 9 at 7. The Resident Selection and Occupancy Standards dated May 8, 2015 states at page 9 that "all applicants must

---

[1] The Complaint was filed on May 23, 2016. (Dkt. 1.)

[2] In his declaration, Mr. Jones states that these standards applied to the Park. (Dkt. 151, Ex. 20.)

be legally eligible to live in the U.S." Dkt. 151, Ex. 10 at 9. Mark Jones, Defendants' corporate designee, testified as to the Policy's reasons. Dkt. 151, Ex. 6 at 134-36; 139-41. Plaintiffs' conclusory claim that Defendants' legitimate reasons for the Policy are post-hoc justifications is simply belied by the evidence.

By arguing that Defendants' interests for the Policy did not motivate the Policy or by arguing that Defendants' interests are post hoc justifications for the Policy, Plaintiffs hope to improperly influence the jury to have it discredit the valid interests served by the Policy and to suggest to the jury a discriminatory intent in the enforcement of the Policy even though Plaintiffs' disparate treatment claim has been dismissed. FED. R. EVID. 403 operates squarely to defend against such unfair prejudice that would result if Plaintiffs introduce subjective motivation evidence that creates confusion between their disparate impact claim and disparate-*treatment* liability, which FHA § 3604 already proscribes, and which does require and focus on a defendant's intent behind an allegedly discriminatory policy or practice. *Watson*, 487 U.S. at 1002 (Blackmun, J., concurring) ("The violation alleged in a disparate-treatment challenge focuses exclusively on the intent of the employer.").[3] There is no probative value in making these arguments, but a real and substantial danger of unfair prejudice, confusion of the issues and misleading the jury. As discussed above, it is not a relevant inquiry at step 2 of the *Inclusive Communities* burden-shifting scheme as to whether the valid interests motivated the Policy. But, if Plaintiffs' arguments regarding post hoc justifications are permitted, the jury could believe that the motivations for

---

[3] Notably, Plaintiffs have even conceded that subjective intent is not relevant to their disparate impact claim. In their prior omnibus Motion *in Limine* filed before their latest appeal, Plaintiffs argued that Defendants should not be permitted to present certain evidence *because subjective intent is not relevant*. Dkt. 332 at 19. In doing so, Plaintiffs seek to have it both ways—Defendants should not be permitted to present evidence of their subjective motivation, but Plaintiffs should be permitted to present evidence on the same topic.

adoption of the Policy are relevant to its decision.

Consequently, Plaintiffs should not be permitted to argue that Defendants' Policy was not motivated by the valid interests served by the Policy or that the valid interests served by the Policy are post hoc justifications. Nor should Plaintiffs be permitted to offer evidence in support of such arguments.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court to grant their Motion *in Limine* and enter an Order: (1) excluding argument and evidence that Defendants' Policy was not motivated by the valid interests served by the Policy or that the valid interests served by the Policy are post hoc justifications; and (2) for such other relief as is just and proper.

Dated:  April 10, 2024                                Respectfully submitted,


WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT LIMITED
PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Michael S. Dingman (VSB No. 30031)
Brooks H. Spears (VSB No. 86391)
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102
(703) 712-5462
(703) 712-5073
mdingman@mcguirewoods.com
bspears@mcguirewoods.com

Grayson P. Hanes (VSB  No. 06614)
Odin Feldman Pittleman, P.C.

1775 Wiehle Avenue
Suite 400
Reston, VA 20190
(703) 218-2100
grayson.hanes@ofplaw.com

Justin deBettencourt (VSB No. 83806)
Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
jdebettencourt@reedsmith.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of April, 2024, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Michael S. Dingman (VSB No. 30031)
Brooks H. Spears (VSB No. 86391)
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102
(703) 712-5462
(703) 712-5073
mdingman@mcguirewoods.com
bspears@mcguirewoods.com

Grayson P. Hanes (VSB No. 06614)
Odin Feldman Pittleman, P.C.
1775 Wiehle Avenue
Suite 400
Reston, VA 20190
(703) 218-2100
grayson.hanes@ofplaw.com

Justin deBettencourt (VSB No. 83806)
Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
jdebettencourt@reedsmith.com

*Counsel for Defendants*