**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, <br><br>         Plaintiffs, <br><br>v. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, <br><br>         Defendants. | Civil No.:  1:16-cv-563 (PTG/WBP) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF THE ETHNICITY OF INDIVIDUALS AT THE PARK ALLEGEDLY AFFECTED BY THE POLICY**

## INTRODUCTION

Plaintiffs have indicated that they intend to present evidence at trial regarding the ethnicity of individuals at Waples Mobile Home Park (the "Park") that they claim were affected by the Policy. Specifically, Plaintiffs have claimed throughout this case—albeit improperly—that "91.7% of the individuals actually affected by [Defendants] Policy are Latino." However, the evidence supposedly supporting this claim comes *only* from a "surname analysis" allegedly performed by Plaintiffs' former counsel, Mr. Archith Ramkumar. Dkt. 157-9 ("Ramkumar Declaration"). According to this Declaration, Mr. Ramkumar purportedly compared names of individuals on certain lists of Defendants to unspecified "U.S. Census Data" in order to conclude that the individuals allegedly affected by the Policy were likely to be Hispanic/Latino[1] based on their surnames. This evidence is inadmissible for a number of reasons. Mr. Ramkumar was never identified as an expert witness and is not identified as a witness in Plaintiffs' pretrial disclosures nor could he be identified as a witness because he was Plaintiffs' former counsel. Indeed, his status as former counsel prohibited Defendants from cross-examining Mr. Ramkumar on this purported surname analysis and his conclusions.[2] Moreover, Mr. Ramkumar is not qualified as an expert witness to present opinions regarding a "surname analysis" (his Declaration does not state any qualifications that would qualify him as an expert in performing surname analyses) and a surname analysis—and any resulting opinions—is clearly the province of expert testimony. Accordingly, this proposed evidence is inadmissible. Plaintiffs therefore should be precluded from presenting this evidence at trial and precluded from referring to such evidence in argument at trial.

---

[1] For the purposes of this motion, these terms are used interchangeably.
[2] As detailed below, Plaintiffs improperly submitted Mr. Ramkumar's Declaration for the first time as an exhibit to their reply supporting their cross-motion for summary judgment—a brief which was filed before their first appeal to the Fourth Circuit.

Separately, pursuant to FED. R. EVID. 403, Plaintiffs should not be permitted to introduce into evidence alleged lists of individuals at the Park allegedly affected by the Policy because the probative value of such lists is outweighed by the danger of unfair prejudice. For example, on Plaintiffs' pretrial exhibit list, they have identified a list of tenants who are missing documents required by Defendants' policies and rules, including the Policy at issue. However, as noted above, Plaintiffs have not identified *any* expert witness to opine as to the likelihood that certain individuals on this list and others are in fact Latino based solely on their names. Without such testimony identifying who is Latino on these lists, the probative value of such lists is far outweighed by the danger of unfair prejudice. These lists, by themselves, will not show which individuals are Latino, and Plaintiffs have no testimony, expert or otherwise, to provide that link. The introduction of these lists into evidence would operate only to improperly suggest to the jury that a certain name represents a Latino individual when Plaintiffs have no evidence that that is the case. A jury could see the lists and assume improperly that a certain surname on the list represents a Latino individual, but that very well may not be the case (such as if a non-Latina woman married a Latino man and took his surname). Thus, if the lists were reviewed by the jury, the jury could reach improper conclusions as to who is Latino. Rule 403 operates squarely to defend against such unfair prejudice.

After this motion in *limine* was originally filed on January 11, 2021 (Dkt. 322-23), Plaintiffs realized that Mr. Ramkumar's Declaration was inadmissible, and they had not designated an expert to provide *any* surname analysis on certain lists of individuals produced by Defendants during discovery. So, when it came time to file an opposition to that motion on June 4, 2021, in a desperate attempt to cure Plaintiffs' failure to designate an expert on the surname analysis originally provided by Mr. Ramkumar, Plaintiffs filed a motion to amend their trial exhibit and

3

witness lists (Dkt. 372-73), which were filed six months prior, to attempt to add a (1) Census Bureau document listing names and conclusions about a *percentage* likelihood that a certain name belongs to someone of a certain ethnicity; (2) a selective chart created by Plaintiffs' *counsel* that cherry-picks certain names from that Census document; (3) counsel's paralegal who created that chart as witness. Dkts. 372-73. Of course, Plaintiffs never produced these documents or identified this witness during discovery because this motion was pure gamesmanship designed to cure Plaintiffs' failure to identify any expert to provide any surname analysis on the individuals on Defendants' lists. Even filing this motion was an implicit admission as to the inadmissibility of Mr. Ramkumar's Declaration and the conclusions therein. Then, Plaintiffs' opposition to Defendants' prior motion *in limine* addressing Mr. Ramkumar's Declaration (filed on the same date as that motion to amend) essentially argued that Mr. Ramkumar's Declaration could be ignored as surname analyses need not be provided by an expert, and the jury could simply view the Census document and counsel's chart cherry-picking the names on Defendants' lists from that Census document to reach their own conclusions about the percentage likelihood of the ethnicity of the persons on those lists. Dkt. 360.

There are number of significant problems with Plaintiffs' cynical attempt to amend their exhibit and witness lists six months after the fact as Defendants set forth in their prior papers dealing with this issue (Dkt. 391, 395), but chief among them, Plaintiffs cannot escape the fact that the surname analyses they now want to put forth through a Census document and their own counsel-created chart of certain names on that Census document is the province of expert testimony. Plaintiffs even admit as much—their statistical expert Professor Clark opines in his expert report that he performed a surname analysis pursuant to a specific methodology on a list of residents at the Park in order to determine that 60% of the residents are likely to be Latino. He just

4

never examined the lists of individuals that Mr. Ramkumar apparently did because no such surname analysis appears in Professor Clark's report. And, even setting aside this clear concession by Plaintiffs that surname analyses are in fact the province of expert testimony, multiple courts have held that surname analyses are the province of expert testimony and even noted the serious reliability problems with such surname analyses.

Plaintiffs should not be permitted to offer any surname analyses on these lists produced by Defendants because they have no expert to do so and Plaintiffs' motion to amend is a cynical end-run around Plaintiffs' obvious failure to designate an expert on this topic that should be rejected. Accordingly, as set forth in more detail below, Plaintiffs should not be permitted to present evidence at trial regarding the ethnicity of individuals at the Park that they claim were affected by the Policy.

## **BACKGROUND**

Plaintiffs intend to present evidence and to claim that certain individuals on a list of tenants allegedly affected by the Policy are Latino based on their surnames. Plaintiffs intend to do so to claim that a majority of individuals at the Park who are affected by the Policy are Latino. But, this evidence has been—and is—inadmissible.

The first and only discussion of this alleged evidence—that 91.7% of the individuals allegedly affected by the Policy are Latino—comes from Plaintiffs' January 17, 2017 Reply in support of their Cross-Motion for Summary Judgment, Dkt. 157 at 7. There, based only on a "surname analysis" performed by Plaintiffs' former counsel, Mr. Archith Ramkumar, Plaintiffs argued that that 91.7% of the individuals affected by Defendants' Policy are Latino allegedly based on a file review that listed 12 individuals in the Park who were not in compliance with Defendants' policies. Dkt. 157 at 7 (citing Dkt. 157-9). Plaintiffs argued that 11 of the 12 individuals were

5

Latino based on Mr. Ramkumar's "surname analysis" and thus 91.7% of the individuals affected are Latino. Dkt. 157 at 7 (citing Dkt. 157-9 ("Ramkumar Declaration")). In addition, in that same brief, Plaintiffs—relying again on Mr. Ramkumar's Declaration and the surname analysis within— argued that 16 of 19 individuals on a separate list showing tenants that were "missing something from their file" were Latino. Dkt. 157 at 7 (citing Dkt. 138-41 (list of tenants), Dkt. 157-9 (Ramkumar Declaration), and Dkt. 138-26 (Giambanco Dep. Tr.)).

These claims—that 11 out of 12 of the individuals affected by Defendants' Policy are Latino or that 16 out of 19 individuals missing something from their file are Latino—are based *only* on their former counsel's surname analysis. Dkt. 157 at 7 (citing Dkt. 157-9). Mr. Ramkumar compared the names of individuals on two lists of Park tenants, Dkts. 138-1 and 138-41, to a U.S. Census Bureau list of frequently occurring surnames from the 2010 Census. Dkt. 157-9. Mr. Ramkumar asserts that he reviewed unspecified "official U.S. Census Data"[3] and compared that data to the names on the lists. *Id*. ¶ 3. According to Mr. Ramkumar, "official U.S. Census Data" purportedly attached percentages of likelihood that a certain surname would belong to a Hispanic individual. *Id.*

Because these allegations were made improperly for the first time in a reply, Defendants did not have an opportunity to respond. Nor could Defendants examine Mr. Ramkumar regarding these claims because he was Plaintiffs' counsel. Thereafter, this Court granted summary judgment in favor of Defendants and stated that it had already dismissed Plaintiffs' disparate-impact FHA claim at the motion-to-dismiss stage. Dkt. 190 at 8 n.8. Plaintiffs appealed this ruling, and in their opening appellate brief to the Fourth Circuit, Plaintiffs continued to rely on these claims made for

---

[3] Although Mr. Ramkumar cites a Census Bureau surname list in his Declaration, Defendants were never able to examine Mr. Ramkumar to determine exactly what data he reviewed.

the first time in Plaintiffs' Reply—that 11 out of 12 individuals on a list had Latino surnames. Plaintiffs-Appellants' Br. at 10, 66 (Dkt. 26) (Oct. 16, 2017 Fourth Circuit). Plaintiffs' claim as to who is Latino on these lists is based solely on Mr. Ramkumar's inadmissible Declaration.

As to the underlying lists themselves, Plaintiffs have identified certain lists of individuals at the Park on their pretrial exhibit list that they intend or may present as evidence at trial. However, none of these lists identify the ethnicity of the names of persons on the lists. These include the lists purportedly reviewed by Mr. Ramkumar. For example, there are lists of individuals missing documentation required by the Park's rules and policies, including Defendants' Policy at issue.[4] **Exhibit 1** (Dkt. 321 at Pls.' Exs. 104, 140, 141, 142, 149). Plaintiffs' Exhibit 123 are emails attaching a file review document, which is an excel file with a list of tenants at the Park whose leases could not be renewed. **Exhibit 2** (Dkt. 321 at Pls.' Ex. 123). There are other lists of tenants that Plaintiffs have identified. For example, there is a move out report that lists certain tenants, **Exhibit 3** (Dkt. 321 at Pls.' Ex. 105); a list of tenants who received a background check, **Exhibit 4** (Pls.' Ex. 107); and a list of Waples tenants, **Exhibit 5** (Dkt. 321 at Pls.' Ex. 110). Plaintiffs also identified audit lists that do not directly list tenants but instead list unit codes, but these audit lists can, at times, mention tenant names in association with unit codes. For example, there are critical action plans for file compliance review that list unit numbers but sometimes mention names in the issue description column, **Exhibit 6** (Dkt. 321 at Pls.' Exs. 114, 137, 145, 146); and an audit which lists unit numbers but sometimes mentions names in the "Action Taken" column, **Exhibit 7** (Dkt. 321 at Pls.' Ex. 136).

---

[4] Plaintiffs' pretrial exhibit list (Dkt. 312-1) is not numbered, but the actual exhibits that Plaintiffs exchanged with Defendants are numbered. The numbering used in Defendants' Objections to Plaintiffs' exhibits (Dkt. 321) reflect the numbering used by Plaintiffs on their actual exhibits exchanged with Defendants' counsel.

None of these lists identify the ethnicity of the individuals on the lists. Plaintiffs should not be permitted to introduce these lists into evidence in order to suggest that names which appear on these lists are in fact associated with Latino individuals. Plaintiffs do not have any expert testimony to identify such names as possibly belonging to Latino individuals. Absent such expert testimony, the introduction of these lists into evidence invites the jury to engage in improper speculation that some of the individuals on the lists are in fact Latino based on names that *appear* to be Latino names. Such a suggestion would be unduly prejudicial.

## LEGAL STANDARD

While the Federal Rules of Evidence do not specifically provide for motions in limine, their use has evolved under the federal courts' inherent authority to manage trials. *United States v. Verges*, No. 1:13cr222 (JCC), 2014 WL 559573, *2 (E.D. Va. Feb. 12, 2014) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider. *Id*. (citing *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)). Such motions serve important gatekeeping functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to the jury. *Id*. (citing *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

## ARGUMENT

Plaintiffs should not be permitted to present argument or evidence of how many Latinos at the Park are allegedly affected by the Policy because such evidence is patently inadmissible. Plaintiffs attempt to present this evidence in the absence of expert testimony and by relying on an inadmissible declaration from Mr. Ramkumar who purportedly performed a "surname analysis".

This attempt should be rejected. A surname analysis is the province of expert testimony under Rule 702. Mr. Ramkumar was not identified as an expert, is not an expert in any event as to a surname analysis, and Plaintiffs did not identify any expert on a surname analysis of individuals allegedly affected by the Policy. Further, Mr. Ramkumar was not identified by Plaintiffs as a witness, and as former counsel, Mr. Ramkumar cannot testify for Plaintiffs.

Plaintiffs themselves have conceded that a surname analysis is the province of expert testimony. Plaintiffs' only statistical expert, Professor Clark, states that he performed a surname analysis pursuant to a specific methodology on a list of residents at the Park in order to determine that 60% of the residents are likely to be Latino. Dkt. 294-1 at 5. Professor Clark, however, never states in his reports that he performed any surname analysis on lists of residents affected by any of Defendants' policies. *See id.*; Dkt. 294-3. Plaintiffs thus have no expert through whom they could present a surname analysis of individuals allegedly affected by the Policy—a predicate for any argument or evidence of lists purporting to show a certain impact on Latinos at the Park. Plaintiffs therefore should not be permitted to argue or present evidence at trial that certain tenants or individuals at the Park affected by the Policy are likely to be Latino.

Moreover, because Plaintiffs will not be able to introduce any evidence that the individuals on these lists are in fact Latino, the probative of value of introducing these lists into evidence is substantially outweighed by the danger of unfair prejudice. The lists do not identify who is Latino and introducing these lists into evidence will likely lead to a jury improperly assuming that certain individuals on the lists are in fact Latino based on improper assumptions about the surnames. Rule 403 therefore requires the exclusion of these lists because the probative value of the lists is substantially outweighed by the danger of unfair prejudice.

9

I. **ANY SURNAME ANALYSIS OF INDIVIDUALS PURPORTEDLY AFFECTED BY THE POLICY IS INADMISSIBLE**

The evidence that Plaintiffs intend on presenting—that certain individuals on a list are likely to be Latino based on a "surname analysis"—must be based on expert testimony pursuant to Rules 701 and 702. Plaintiffs, however, have not identified *any* expert to provide this opinion. Plaintiffs have identified two experts: Professor William A.V. Clark, a Professor of Geography and Statistics and Ivan Yacub, an immigration attorney. Neither expert states in any report that they analyzed the surnames of tenants on any list of tenants allegedly affected by the Policy and concluded that certain tenants were likely to be Latino based on a comparison of their surnames to U.S. Census Bureau data. Instead, this analysis was *only* performed by Plaintiffs' former counsel, Mr. Ramkumar who was not identified as an expert witness, or even a fact witness, and who is not qualified to testify as an expert witnesses on surname analyses. And, in any event, Plaintiffs did not list Mr. Ramkumar as a witness on their pretrial disclosures. *See* Dkt. 312 (Plaintiffs' Pretrial Disclosures).

Rule 701 permits lay witnesses to "offer an opinion on the basis of relevant historical or narrative facts that the witness has perceived." *MCI Telecomms. Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990) (quoting *Teen–Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3d Cir. 1980)). This rule, however, generally does "not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) (concluding that district court erred in admitting expert testimony by lay witness) (citing *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979)); FED. R. EVID. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding

10

the witness's testimony or to determining a fact in issue; *and* (c) *not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702.") (emphasis added). "A critical distinction between Rule 701 and Rule 702 testimony is that an expert witness 'must possess some specialized knowledge or skill or education that is not in the possession of the jurors.'" *Certain Underwriters*, 232 F.3d at 203. (citing Redden & Saltzburg, Federal Rules of Evidence Manual 225 (1975)). This distinction is critical because "[u]nlike a lay witness under Rule 701, an expert can answer hypothetical questions and offer opinions not based on first-hand knowledge because his opinions presumably 'will have a reliable basis in the knowledge and experience of his discipline.'" *Id*. (citing *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 592 (1993)).

A surname analysis—the comparison of surnames to data to determine the likelihood that the surname belongs to an individual of a certain race or ethnicity—requires specialized knowledge that would require expert testimony pursuant to Rule 702. FED. R. EVID. 701; *Harvick v. Oak Hammock Pres. Cmty. Owners Ass'n Inc.*, No. 614CV937ORL40GJK, 2016 WL 362434, at *3-4 (M.D. Fla. Jan. 29, 2016) (excluding surname analysis performed by plaintiff—a lay witness—in disparate impact FHA claim because he had no personal knowledge of whether individuals were "in fact, of Asian descent" and he was not qualified as an expert and utilizing a reliable scientific method); *Perez v. City of Batavia*, No. 98 C 8226, 2004 WL 2967153, at *10 (N.D. Ill. Nov. 23, 2004) (striking declaration containing surname analysis because the analysis used was unreliable and "[l]ay witnesses are not allowed to present opinions based on scientific, technical or specialized knowledge.") (citing FED. R. EVID. 701); *see United States v. Johnson*, 122 F. Supp. 3d 272, 338–39 (M.D.N.C. 2015) (concluding that expert is qualified to testify on the use of a surname analysis because he had "supervised individuals performing surname analyses[,]" "he has

11

also published on surname analysis[,]" and he was a member of a group that utilizes surname analysis to identify civilian casualties in areas of conflict).

In fact, not only is a surname analysis the province of expert testimony, but numerous district courts, and one court of appeals, have noted serious reliability problems associated with conclusions that individuals are Hispanic or Latino based on a "Spanish-surname analysis". *Rodriguez v. Bexar Cty., Tex.*, 385 F.3d 853, 867 (5th Cir. 2004) ("The use of "Spanish-surname" registration is novel and highly problematic. At least one district court has recently noted the problems associated with 'Spanish-surname analysis' because of its tendency to misidentify Hispanic persons as non-Hispanic and vice-versa.") (noting that "without a strict showing of its probativeness, Spanish-surname data are disfavored"); *United States v. Alamosa Cty., Colo.*, 306 F. Supp. 2d 1016, 1022 (D. Colo. 2004) (noting that surname analysis can result in Hispanic persons misidentified as non-Hispanic and non-Hispanic persons misidentified as Hispanic); *Cisneros v. Pasadena Indep. Sch. Dist.*, No. 4:12-CV-2579, 2014 WL 1668500, at *7 (S.D. Tex. Apr. 25, 2014) ("Errors of omission occur when Hispanic individuals are not counted because they do not have a Spanish surname… Conversely, errors of commission occur when non-Hispanic individuals are mistakenly counted because they have a Spanish surname."); *Faulds v. United States*, No. 11-CV-3037, 2013 WL 5460631, at *19 (C.D. Ill. Oct. 1, 2013) ("Surnames are not a conclusive basis for determining Hispanic or Latino heritage."), *aff'd*, 617 F. App'x 581 (7th Cir. 2015). For these reasons, had Plaintiffs identified an expert witness to offer the opinions contained within Mr. Ramkumar's Declaration, Defendants would have extensively examined that expert on the methodology and the expert's conclusions. Plaintiffs did not do so.

It is undisputed that Plaintiffs have not identified any expert to provide an opinion that 91.7% of the individuals affected by the Policy are Latino based on their surnames—or that any

12

list of tenants contains Latino individuals based on their surnames.[5] That opinion comes *only* from the declaration of Plaintiffs' former counsel, Mr. Ramkumar. Mr. Ramkumar, as former counsel, is not identified as a potential witness at trial in Plaintiffs' pretrial disclosures. Dkt. 312. Nor can Mr. Ramkumar testify as an expert because his declaration was provided when he was counsel and the Virginia Rules of Professional Conduct prohibit counsel from acting as a witness in the same adversarial proceeding for which they are acting as counsel. *See* Va. Rule of Professional Conduct 3.7.[6] In any event, Mr. Ramkumar is not qualified to provide any expert opinion regarding surname analysis nor does his declaration provide any basis whatsoever for Mr. Ramkumar to be qualified to provide such opinions. Dkt. 157-9. Accordingly, Plaintiffs should not be permitted to present *any* evidence at trial that certain individuals on any list are Latino individuals based on their names or surnames, including any list of tenants purportedly affected by Defendants' Policy. Nor should Plaintiffs be permitted to make any argument referring to such evidence.

## II.     EXCLUSION OF LISTS OF TENANTS IS WARRANTED UNDER RULE 403

Plaintiffs also intend to introduce into evidence certain lists of tenants at the Park, including an alleged list of tenants who allegedly could not comply with Defendants' rules and policies, to improperly suggest that a majority of the tenants on these lists are Latino. For example, Plaintiffs' Exhibit 104 is a list of individuals missing documentation required by the Park's rules and

---

[5] Professor Clark does not provide any such opinions in his reports. *See* Dkt. 294-1 & 294-3. Instead, he only provides an opinion that 60% percent of the Park tenants in general are Latino based on his surname analysis. Dkt. 294-1 at 5.

[6] "Application of the witness-advocate rule is mandatory and may not be waived by the lawyer's client. The rule is not subject to client waiver because the interests served by the rule extend beyond those of a single client. Rather, the witness-advocate rule is a prophylactic rule designed to protect the interests of the client, the adverse party, and the institutional integrity of the legal system as a whole. These interests become imperiled when an advocate testifies because a lawyer's role of arguing causes and a witness's role of reciting facts are fundamentally inconsistent." *Premium Prod., Inc. v. Pro Performance Sports, LLC*, 997 F. Supp. 2d 433, 436 (E.D. Va. 2014) (internal quotations and citations omitted).

policies.[7] **Exhibit 1.** Plaintiffs' Exhibit 123 are emails attaching a file review document, which is an excel file with a list of tenants at the Park whose leases cannot be renewed. **Exhibit 2.** As discussed above, *supra* at "Background", there are other lists attached as **Exhibits 3 – 7**. Plaintiffs intend to introduce these lists to evidently argue that a majority of the tenants at the Park who could not comply with Defendants' Policy are Latino. Plaintiffs, however, have no evidence that will identify these individuals as Latino. These lists therefore must be excluded pursuant to Rule 403.

FED. R. EVID. 403 permits the exclusion of relevant evidence if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes.

As discussed above, Plaintiffs have not identified any expert that will identify the persons on these lists as Latino pursuant to any "surname analysis". The only surname analysis of individuals on any such list was performed only by Plaintiffs' former counsel, Mr. Ramkumar, and is patently inadmissible. Accordingly, Plaintiffs will not be able to identify any individuals on these lists as Latino based on their names. Instead, it is evident that Plaintiffs intend to introduce these lists into evidence to improperly suggest that many individuals on the lists are Latino based on their names. This would be improper because Plaintiffs have no evidence that these names in fact belong to Latino individuals. The danger of unfair prejudice from the introduction of these

---

[7] Plaintiffs' pretrial exhibit list (Dkt. 312-1) is not numbered, but the actual exhibits that Plaintiffs exchanged with Defendants are numbered. The numbering used in Defendants' Objections to Plaintiffs' exhibits (Dkt. 317) reflect the numbering used by Plaintiffs on their actual exhibits.

lists that would therefore result outweighs any probative value of these lists. Accordingly, the trial exhibits attached hereto as **Exhibits 1 – 7**[8] should be excluded pursuant to Rule 403, and Plaintiffs should be precluded from making any argument at trial referencing these lists or whether the individuals on these lists are in fact Latino.

### III. PLAINTIFFS' CYNICAL MOTION TO AMEND SEEKING TO CURE PLAINTIFFS' FAILURE TO DESIGNATE AN EXPERT TO PROVIDE SURNAME ANALYSES ON THESE LISTS SHOULD BE REJECTED

As discussed above, Plaintiffs' answer to their failure to designate an expert to provide surname analyses on these lists, and their deliberate choice to instead rely on Mr. Ramkumar's Declaration through summary judgment briefing and their first appeal to the Fourth Circuit, was to file a motion to amend their exhibit and witness lists to attempt to put a Census document and a counsel-created chart based on that document never disclosed in discovery in front of the jury without any required expert testimony. This is pure gamesmanship that this Court should reject for the reasons stated in Defendants' prior papers (Dkt. 391, 395).[9] As stated in those papers, Plaintiffs should not be permitted to supplement their pre-trial disclosures after Defendants filed their motions in limine to cure their failure to provide expert testimony on the surname analyses at issue. Even still, the supplementation of Plaintiffs' pretrial disclosures will not save Plaintiffs' argument. Expert testimony is *required* on a surname analysis *as Plaintiffs concede through Professor Clark's report.* And, concede they must, as courts have held that such analyses are the province of expert testimony—testimony that has reliability concerns. *E.g.*, *Harvick*, 2016 WL 362434, at *3-4 (expert testimony required on such surname analyses); *Alamosa Cty., Colo.*, 306

---

[8] **Exhibit 1** (Dkt. 321 at Pls.' Exs. 104, 140, 141, 142, 149); **Exhibit 2** (Dkt. 321 at Pls.' Ex. 123); **Exhibit 3** (Dkt. 321 at Pls.' Ex. 105); **Exhibit 4** (Pls.' Ex. 107); **Exhibit 5** (Dkt. 321 at Pls.' Ex. 110); **Exhibit 6** (Dkt. 321 at Pls.' Exs. 114, 137, 145, 146); **Exhibit 7** (Dkt. 321 at Pls.' Ex. 136).
[9] Defendants incorporate these filings herein by reference.

F. Supp. 2d at 1022 (noting that surname analysis can result in Hispanic persons misidentified as non-Hispanic and non-Hispanic persons misidentified as Hispanic).

## CONCLUSION

For the aforementioned reasons, Defendants respectfully request the Court to grant their Motion *in Limine* in its entirety and enter an Order:

(1) precluding Plaintiffs from presenting any evidence or argument as to the ethnicity of tenants or individuals at the Park who were allegedly affected by the Policy, including evidence or argument as to the number and/or percentage of individuals who are Latino who were allegedly affected by the Policy;

(2) precluding Plaintiffs from introducing **Exhibits 1-7** attached hereto, which include lists of individuals allegedly affected by Defendants' policies;

(4) precluding Plaintiffs from making any argument to the aforementioned categories of evidence; and

(5) for such other relief as is just and proper.

Dated:  April 10, 2024         Respectfully submitted,

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP, WAPLES PROJECT LIMITED
PARTNERSHIP AND
A. J. DWOSKIN & ASSOCIATES, INC.

/s/
Michael S. Dingman (VSB No. 30031)
Brooks H. Spears (VSB No. 86391)
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102
(703) 712-5462

(703) 712-5073
mdingman@mcguirewoods.com
bspears@mcguirewoods.com

Grayson P. Hanes (VSB  No. 06614)
Odin Feldman Pittleman, P.C.
1775 Wiehle Avenue
Suite 400
Reston, VA 20190
(703) 218-2100
grayson.hanes@ofplaw.com

Justin deBettencourt (VSB No. 83806)
Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
jdebettencourt@reedsmith.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of April, 2024, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/
Michael S. Dingman (VSB No. 30031)
Brooks H. Spears (VSB No. 86391)
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102
(703) 712-5462
(703) 712-5073
mdingman@mcguirewoods.com
bspears@mcguirewoods.com

Grayson P. Hanes (VSB No. 06614)
Odin Feldman Pittleman, P.C.
1775 Wiehle Avenue
Suite 400
Reston, VA 20190
(703) 218-2100
grayson.hanes@ofplaw.com

Justin deBettencourt (VSB No. 83806)
Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, Virginia 22102
(703) 641-4200 (Telephone)
(703) 641-4340 (Facsimile)
jdebettencourt@reedsmith.com

*Counsel for Defendants*