# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| ROSY GIRON DE REYES, ET AL., | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) Case No: 1:16CV563 (PTG/WBP) |
| | ) |
| WAPLES MOBILE HOME PARK | ) |
| LIMITED PARTNERSHIP, ET AL., | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTIONS *IN LIMINE***

Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A.J. Dwoskin & Associates, Inc. (collectively, "Defendants"), pursuant to L. Civ. R. 7(F)(1) and this Court's Order of March 11, 2024 (ECF No. 451), respond to the motions *in limine* (ECF No. 454) filed by Plaintiffs Rosy Giron de Reyes, Jose Dagoberto Reyes, Felix Alexis Bolanos, Ruth Rivas, Yovana Jaldin Solis, Eseban Ruben Moya Yrapura, Rosa Elena Amaya, and Herbert David Saravia Cruz (collectively, "Plaintiffs").

**INTRODUCTION**

Plaintiffs seek damages for past discrimination, and an injunction for prospective discrimination, for Defendants' alleged violation of 42 U.S.C. § 3604(a) of the Fair Housing Act. Plaintiffs are not asserting a claim for disparate *treatment*; instead, they claim only disparate *impact*—an FHA claim recognized by the United States Supreme Court in *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015). "Under the *Inclusive Communities* framework, the plaintiff bears the initial burden of establishing a prima facie case of disparate impact. . . . If satisfied, the burden shifts to the defendant to show that the discriminatory

policy was necessary to achieve a legitimate nondiscriminatory interest. . . . If the defendant does so, the burden shifts back to the plaintiff to show that the interest could be served through less discriminatory means. . . ." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 275 (4th Cir. 2024) ("*Reyes II*") (internal citations omitted). A brief discussion of each of these three steps provides important context for Plaintiffs' motions *in limine*.

I.   **Plaintiffs Cannot Meet Their Step One Burden.**

Plaintiffs "must begin" their Step One burden "by identifying the specific practice that is challenged." *Reyes v. Waples Mobile Home Park Lid. P'ship*, 903 F.3d 415, 425 (4th Cir. 2018) ("*Reyes I*") (brackets omitted); *Nat'l Fair Hous. Alliance v. Bank of Am., N.A.*, 401 F. Supp. 3d 619, 632 (D. Md. 2019) ("Disparate impact liability requires the identification of a specific . . . *practice* that caused racially disparate results.") (emphasis in original) (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 915 (4th Cir. 2015)). According to Plaintiffs, Defendants required Park residents without social security numbers to provide "their original Passport, original US Visa and original Arrival/Departure Form (I-94 or I-94W)." ECF No. 138-3 at 3. Defendants, on the other hand, testified at deposition that they allowed residents without SSNs to provide documents from the broader "Yardi Screening" list. C. Easton Dep. at 25 (12/2/16). This is a factual dispute for the jury to decide.

Even if Plaintiffs can prove that Defendants engaged in the specific practice being challenged, that is not enough for Step One. Plaintiffs also must prove that the challenged practice disproportionately impacted "Latino tenants at the Park" as compared to "non-Latino tenants at the Park."[1] *Reyes I*, 903 F.3d at 429 n.8; *Greengael, LC v. Board of Supervisors of Culpeper Cnty.*,

---

[1] Relying on *Reyes I*, Plaintiffs imply that they have already obtained judgment as to Step One. ECF No. 455 at 4. That is false. In its 2018 decision, the Fourth Circuit held that Judge Ellis "erred in functionally dismissing Plaintiffs' disparate-impact theory *at the motion to dismiss stage*," *Reyes I*, 903 F.3d at 423 (emphasis added), and that "Plaintiffs

2

No. 3:07CV5, 2007 WL 2301570, at *3 (W.D. Va. Aug. 7, 2007) ("Crucial to the showing of discriminatory effect is the definition of the relevant comparison group."). On this point, Plaintiffs have substantial holes in their evidence.

To begin, Plaintiffs' purported demographics expert, William Clark, Ph.D., never analyzed the number of "Latino tenants at the Park," as required by the Fourth Circuit. Although Dr. Clark assumed that 60% of the Park's tenants were Latino, that assumption came from counsel and is not grounded in any independent expert analysis. Moreover, Dr. Clark's assumed percentage does not indicate the absolute number of "Latino tenants at the Park," which is needed to determine whether "the challenged practice had a *significant* disproportionate impact." *Williams v. 5300 Columbia Pike Corp.*, 891 F. Supp. 1169, 1178 (E.D. Va. 1995) (emphasis in original).

Next, Dr. Clark fails to analyze the number of the assumed 60% of Latinos who were subject to Defendants' allegedly discriminatory practice. That information could have easily been obtained by simply asking Defendants, through interrogatories or depositions, how many Latinos they subjected to the challenged practice. But Plaintiffs did not do that. And without that evidence, Dr. Clark's opinions are insufficient to satisfy Step One.

Finally, Dr. Clark provides no analysis about the relevant comparison group of "non-Latino tenants at the Park," as required by the Fourth Circuit. At most, Dr. Clark says there are 2,337 non-Latino residents in Census Tract 4406, which is a geographic portion of Fairfax County that encompasses the Park. But that geographic area, which includes population beyond the Park, "is irrelevant to a *prima facie* showing of racially discriminatory impact." *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 987 (4th Cir. 1984) (italics in original). Putting that aside, Dr. Clark does

---

*sufficiently allege* a prima facie case of disparate impact," *id.* at 428 (emphasis added). The Fourth Circuit did not award Plaintiffs judgment as a matter of law on Step One. ECF No. 212.

3

not identify the percentage of non-Latinos within the Census Tract who were subjected to Defendants' allegedly discriminatory practice (let alone the absolute number). It is thus unclear which two groups of people Plaintiffs would have the jury compare.[2]

For these reasons, among others, Plaintiffs cannot satisfy their Step One burden.

## II. Defendants Can Easily Satisfy Their Burden at Step Two.

Assuming Plaintiffs can prove a significant disparate impact on Latinos at the Park versus non-Latinos at the Park, the burden shifts to Defendants to prove that the practice "was necessary to achieve a legitimate nondiscriminatory interest." *Reyes II*, 91 F.4th at 275. Here, the undisputed evidence is that Defendants required residents without SSNs to provide documentation from Yardi's screening list, so that their names, birth dates, and addresses could be used to obtain accurate criminal background checks.

Defendants' witnesses testified to this point at their depositions. For instance, Defendants' property manager at the time, Josephine Giambanco, testified as follows:

> Q. So you've talked about this list of documents that is required per A.J. Dwoskin's policy. Is it your understanding that those documents are required to conduct criminal background and credit checks?
>
> A. My understanding is that that's our policy. That's our policy. That's what is needed and that's what we ask for.
>
> Q. But you understand that it's the company's policy that you want to run both a credit check and a criminal background check on every applicant, right?
>
> A. That's the company's policy and that's what we do.
>
> Q. And so those documents are required to do the credit and criminal background checks because they're a part of Yardi?

---

[2] In addition to the analytical problems with Dr. Clark's "opinions" as they relate to Plaintiffs' damages claim, his opinions are more than seven years old and thus provide no support for Plaintiffs' forward-looking injunction claim. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 162 (2010) ("Accordingly, a permanent injunction is not now needed to guard against any present or imminent risk of likely irreparable harm.").

4

A. Because they're a part of the company's policy.

J. Giambanco Dep. at 62 (12/1/16). Defendants' owner, Albert Dwoskin, and their then-CFO, Mark Jones, further testified that Defendants implemented a criminal background check policy at or around the time of the alleged discrimination, after learning that a criminal was living in another park they owned.[3] A. Dwoskin Dep. at 65-66 (12/8/16); M. Jones Dep. at 43-44 (11/22/16). Additionally, Defendants' quality control manager at the time, Carolina Easton, testified that specific documents were required to ensure the "accuracy" of the criminal background checks. C. Easton Dep. at 60, 172-73, 179 (12/2/16).

This is only some of the testimony, which is undisputed,[4] that Defendants will present at trial to satisfy their Step Two burden.

## III. Plaintiffs Cannot Satisfy Their Step Three Burden.

If the jury finds that Defendants had a legitimate business interest, "the burden shifts back to the plaintiff[s] to show that the interest could be served through less discriminatory means." *Reyes II*, 91 F.4th at 275. Plaintiffs cannot meet this burden. Although Plaintiffs have identified an attorney, Ivan Yacub, as a purported immigration law expert, Mr. Yacub offers no alternative means by which Defendants could have verified the female Plaintiffs' names, birth dates, and addresses with equal accuracy and confidence when compared to the Yardi documents. Because Plaintiffs have not identified a less discriminatory means, they cannot succeed at Step Three.

---

[3] Plaintiffs concede that Defendants implemented the challenged policy in 2015. ECF No. 455 at 2.

[4] Plaintiffs falsely allege that Defendants "knowingly allowed the female Plaintiffs to live at the Park for years without submitting one of the specified forms of identification." ECF No. 455 at 2. Even if this were true, it is unclear how this is a fact "of consequence in determining the action," so as to make it relevant. Fed. R. Evid. 401(b). Regardless of relevance, the undisputed evidence is that Defendants did not know the female Plaintiffs were living at the Park because their husbands intentionally refused to identify their wives on the lease applications. *See, e.g.*, R. Rivas Dep. at 54 (11/1/16) ("Q. Did [your husband] put your name down on that application? A. No, he did not."); R. de Reyes Dep. at 32-33 (11/1/16) ("Q. Are you aware that your husband did not identify you as an occupant in his application to reside at the park? A. Yes.").

5

In the context of this three-step legal framework, Plaintiffs' arguments about the relevant evidence fail.

## ARGUMENT

### I. Plaintiffs Misstate Defendants' Step Two Burden.

Plaintiffs erroneously argue that, in *Reyes II*, the Fourth Circuit "ma[de] clear that Step Two requires Defendants to prove the *actual, contemporaneous* reasons for their Policy." ECF No. 455 at 7 (emphasis added) (citing *Reyes II*, 91 F.4th at 277, 279-80). Based on that mischaracterization, Plaintiffs "request an order requiring Defendants to present evidence regarding the actual motivations for the Policy." ECF No. 455 at 7-8. The Court should deny Plaintiffs' request.

#### A. A motion *in limine* is not the proper vehicle for requesting rulings about what the substantive law requires.

Through the guise of a motion *in limine*, Plaintiffs ask the Court to make a significant legal ruling as to whether Step Two requires Defendants to present *contemporaneous* evidence of their justification for the challenged practice. That substantive issue of law should not be decided through a motion *in limine*. *See, e.g.*, *Felder v. Charles H. Hill Contractors, Inc.*, No. 12-2102, 2013 WL 12033162, at *2 (W.D. Tenn. Oct. 24, 2013) (denying motion *in limine* that "raises a substantive legal issue . . . rather than an evidentiary issue"); *Solano v. A Navas Party Prod., Inc.*, No. 09-22847, 2010 WL 11505479, at *1 (S.D. Fla. July 12, 2010) ("[T]he Court will not rule on proposed jury instructions under the guise of a ruling on a motion in limine."); *Natural Res. Defense Council v. Rodgers*, No. CIV-S-88-1658, 2005 WL 1388671, at *1 n.2 (E.D. Cal. June 9, 2005) ("Motions in limine address evidentiary questions and are inappropriate devices for resolving substantive issues."). On this basis alone, the Court should deny Plaintiffs' "request

[for] an order requiring Defendants to present evidence regarding the actual motivations for the Policy." ECF No. 455 at 7-8.

**B.      The law does not limit Defendants to *contemporaneous* evidence at Step Two.**

It is unclear what Plaintiffs mean by demanding "contemporaneous" evidence of Defendants' justification for the challenged practice. What is clear, however, is that not one of the cases they cite—including *Reyes II*—uses that word. Plaintiffs have simply made up the "contemporaneous" requirement, which they now ask this Court to impose as a prima facie element of Defendants' Step Two burden. The Court should deny that request.

To support their argument, Plaintiffs seize on the Fourth Circuit's use of the word "phony" in *Reyes II*. There, the Fourth Circuit contradistinguished a "legitimate" Step Two justification from a "phony" justification. *Reyes II*, 91 F.4th at 277 (quotation marks omitted). By "phony," the court meant that the justification cannot be "speculative" or "imagined." *Id.* Instead, a justification overcomes the phoniness hurdle if it rises to the level of a "plausible concern." *Id.*

Critically, the Fourth Circuit removed the "threshold" plausibility question from the jury's consideration, and instead decided it as a matter of law. *Id.* at 277-80. To do this, it examined the underlying factual basis for one of Defendants' proffered justifications—namely, verifying the legal status of Park residents. The Fourth Circuit ultimately determined that the proffered justification was not plausible, by which it meant that Defendants' alleged interest in verifying legal status was not "legitimate." *Id.* at 280. Nowhere did the Fourth Circuit instruct that a showing of legitimacy, or plausibility, requires "contemporaneous" evidence.[5] *See generally id.*

---

[5] Plaintiffs' reliance on *Mt. Holly Gardens Citizens in Action, Inc. v. T'shp of Mount Holly*, 658 F.3d 375 (3d Cir. 2011), is equally misplaced. In that case, the Third Circuit explained that the FHA allows for an "inquiry into the defendant's motivations" for the challenged practice. *Mt. Holly*, 658 F.3d at 385. This unremarkable characterization of Step Two merely recognizes that a defendant must offer some motivation for justifying the challenged practice; the Third Circuit did not require "contemporaneous" evidence of that justification. The same is true for the other cases cited by Plaintiffs. ECF No. 455 at 10-11.

7

The Fourth Circuit's decision in *Reyes II* must be read in harmony with *Inclusive Communities*. There, the Supreme Court emphasized that private developers, like Defendants, do not face a high burden at Step Two. Defendants are required to show nothing more than a "legitimate rationale," *Inclusive Communities*, 576 U.S. at 524, and must be afforded "leeway to state and explain the valid interest served," *id.* at 541. So long as a defendant's proffered justification is "reasonable," the jury cannot "second-guess" it. *Id.* This Court, therefore, must decide as a matter of law whether Defendants' proffered justification—verifying the female Plaintiffs' identities with a high degree of confidence so as to ensure accurate criminal background reports—is "legitimate" and "plausible," on the one hand, or "artificial, arbitrary, and unnecessary," on the other hand. *Id.* at 543.

In making that determination, the Court should consider the trial testimony of Defendants' witnesses. Consistent with their depositions, *see supra*, Defendants' trial witnesses will testify that they required residents without SSNs to provide certain documents in order to verify identities and obtain accurate criminal background reports. That testimony is competent to prove the plausibility of Defendants' justification, regardless of whether it is bolstered by any contemporaneous exhibits. But even if contemporaneous exhibits are required, Defendants will present such evidence at trial. *See, e.g.*, WAPLES00001503, E-mail from P. Williams to A. Dwoskin (6/19/15) ("As you asked, we instituted a policy of completing criminal background checks on all renewal adult residents. . . . We will be verifying all criminal background checks on the next batch of renewals, and adding these to our audits.").

## II. Defendants Are Not Offering the Anti-Harboring Statute or the PRWORA as Justifications at Step Two.

Plaintiffs ask the Court to exclude evidence that Defendants' allegedly discriminatory practice was justified by the anti-harboring statute or the PRWORA. ECF No. 455 at 11-14. In

8

addition, Plaintiffs' proposed order would have the Court exclude evidence of Defendants' "mistakes of law." ECF No. 454-1 at 2. Defendants are not relying on the anti-harboring statute, the PRWORA, or any mistake of law as a justification for the allegedly discriminatory practice. Therefore, Plaintiffs' request to exclude evidence related to these non-justifications is moot.

### III. Plaintiffs Cannot Imply That Defendants Had Discriminatory Intent While Also Preventing Defendants from Countering That Charge.

Plaintiffs would have this Court prevent Defendants from presenting any evidence that disproves discriminatory intent, including Defendants' lack of prejudice, FHA training, and Spanish-language advertisements. Defendants agree that such evidence would be unnecessary if the jury is instructed that Defendants had no discriminatory intent. Yet Plaintiffs will not agree to such an instruction. Rather, Plaintiffs intend to argue that Defendants lacked any justification for requiring certain documents from residents without SSNs, leading the jury to conclude that the only possible explanation is racial animus. Plaintiffs cannot have it both ways. If they wish to leave open the possibility of discriminatory intent, they cannot simultaneously prevent Defendants from presenting contrary evidence. Alternatively, Plaintiffs must agree to a jury instruction that shuts the door on the question of intent.

There is another reason why Defendants' evidence about its lack of racial animus is relevant. Plaintiffs insist on asking for punitive damages, which are "limited to cases in which the defendant has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *United States v. Space Hunters, Inc.*, 429 F.3d 416, 427 (2d Cir. 2005) (quotation marks and brackets omitted). Once again, Plaintiffs cannot have this issue both ways. If Plaintiffs are permitted to put on evidence of Defendants' "intentional discrimination," "malice," and "reckless indifference," then Defendants must be allowed to rebut it.

9

IV. **The Parties Can, and Should, Stipulate That the Female Plaintiffs Violated 8 U.S.C. § 1325 and Have Always Been Unlawfully Present in the United States.**

If the parties stipulate to the jury that the female Plaintiffs improperly entered the country in violation of 8 U.S.C. § 1325, and that they are, and at all times have been, unlawfully present in the country, then Defendants will not ask these questions on cross-examination. Likewise, if the parties stipulate to the jury about the verification processes the female Plaintiffs underwent to obtain ITINs, Defendants will not ask about those processes at trial. Further still, an agreed-upon stipulation about the husbands' processes for obtaining legal status would close the door on that issue for cross-examination. Finally, if Plaintiffs can agree to stipulate that ▬▬▬ ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬, then Defendants will not ask ▬▬▬▬ about those issues at trial. Defendants, however, do not anticipate that Plaintiffs will agree to stipulations on any of these critical issues. Absent such stipulations, Defendants must be allowed to inquire into these issues to show the jury that ITINs are not a reliable means of verifying one's identity.

## CONCLUSION

For the reasons discussed, the Court should deny Plaintiffs' motions *in limine*.

Dated: May 1, 2024

Respectfully submitted by,
**Waples Mobile Home Park Limited Partnership**
**Waples Project Limited Partnership**
**A.J. Dwoskin & Associates, Inc.**
*By Counsel*

*/s/ Michael S. Dingman*
Michael S. Dingman
Brooks H. Spears
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5050
mdingman@mcguirewoods.com
bspears@mcguirewoods.com

Grayson P. Hanes
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
Phone: (703) 218-2195
Fax: (703) 218-2160
grayson.hanes@ofplaw.com

**CERTIFICATE OF SERVICE**

I certify that, on May 1, 2024, I caused the foregoing document to be filed via the Court's CM/ECF system, which will send notice to all counsel of record.

*/s/ Michael S. Dingman*
Michael S. Dingman

11