UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ, <br><br>*Plaintiffs*, <br><br>vs. <br><br>WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC., <br><br>*Defendants*. | Civ. No. 1:16-cv-00563 (PTG/WBP) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE ARGUMENT QUESTIONING WHETHER VALID INTERESTS FOR THE POLICY WERE IN PLACE AT THE TIME OF THE POLICY'S ADOPTION**

Plaintiffs Rosy Giron de Reyes, Jose Dagoberto Reyes, Felix Alexis Bolaños, Ruth Rivas, Yovana Jaldin Solis, Esteban Ruben Moya Yrapura, Rosa Elena Amaya, and Herbert David Saravia Cruz ("Plaintiffs"), by counsel, submit the following memorandum of law in opposition to Defendants' Motion *in Limine* to Exclude Arguments Questioning Whether Valid Interests for the Policy Were in Place at the Time of the Policy's Adoption (ECF 458), and respectfully represent as follows:

**INTRODUCTION**

Defendants' motion is a mirror image of a motion *in limine* submitted by Plaintiffs: Defendants argue that the actual reasons motivating a challenged policy "are not relevant to a disparate impact claim," ECF 459 at 5; Plaintiffs argue that Defendants must present evidence of

1

their actual motivations to meet their burden to show "business necessity" at Step Two of the burden-shifting framework established by *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 527, 541-42 (2015) ("*Inclusive Communities*"), ECF 455 at 7-11.

Defendants' position is wrong: the Fourth Circuit made clear *in this case* that Step Two requires Defendants to prove the actual, contemporaneous reasons for their policy. *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 277 (4th Cir. 2024) ("*Reyes II*") (at Step Two, defendants must show a "'legitimate' interest" that "cannot be a phony"; "[o]therwise defendants could manufacture business necessity based on speculative, or even imagined" reasons).

## BACKGROUND

In its first ruling in this case, the Fourth Circuit vacated Judge Ellis's decision holding that the Plaintiffs had failed to meet their burden at Step One of the *Inclusive Communities* burden-shifting framework. Judge Ellis had ruled that the Plaintiffs failed at Step One "because the undisputed factual record confirms that the Policy burdens the female plaintiffs not because they are Hispanic, but rather because they entered the country illegally." 251 F.Supp.3d 1006, 1016 (E.D. Va. 2017). That holding, according the Fourth Circuit, was a "grievous error" that "threaten[ed] to eviscerate disparate-impact claims altogether." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 429-30 (4th Cir. 2018) ("*Reyes I*"). In fact, the Plaintiffs had "satisfied step one . . . by demonstrating that Waples' Policy . . . caused a disproportionate number of Latinos to face eviction from the Park compared to the number of non-Latinos who faced eviction based on the Policy." *Id.* at 428-29. Because the Plaintiffs had established a *prima facie* case of disparate impact, the Fourth Circuit remanded to this Court to consider Steps Two and Three of the *Inclusive Communities* framework. *Id.* at 433.

2

On remand, Defendants had filed a new motion for summary judgment arguing (among other things) that it could not be held liable under the FHA because there was a Step Two "business necessity" for the Policy: avoiding criminal liability under the federal "anti-harboring" statute, 8 U.S.C. § 1324(a)(1)(A). ECF 248 at 22-24. That statute prohibits "conceal[ing], harbor[ing], or shield[ing] from detection" a so-called "alien," while "knowing or in reckless disregard of the fact" that the person entered or remained in the U.S. in violation of law. 8 U.S.C. § 1324(a)(1)(A). Judge Ellis denied the motion, and a subsequent motion for reconsideration, ruling that there were genuine disputes of material fact as to Step Two and Step Three. ECF 283 at 2; 298 at 3-4.

But Judge O'Grady (after the case was reassigned, ECF 356) *sua sponte* ordered the parties to file supplemental briefing on several issues, including (i) "whether avoiding the risk of criminal liability under [the anti-harboring statute] is a valid interest at Step Two of *Inclusive Communities*," and (ii) "whether Defendants' motive for implementing the [Policy] is relevant to Defendants' Step Two burden." ECF 413 at 2. Following that briefing, Judge O'Grady granted summary judgment to Defendants. ECF 440. The Court ruled that "implementing a policy to avoid increased criminal liability under the anti-harboring statute is a valid and necessary interest that satisfies the second step of the burden shifting framework." *Id.* at 15. In addition, the Court ruled that it was "unimportant whether the Defendants can provide evidence that they possessed the valid interest at the time the Defendants adopted the challenged policy." *Id.* at 14.

The Fourth Circuit reversed again in another published decision. *Reyes II*, 91 F.4th 270. The Fourth Circuit identified two independent holdings supporting reversal. First, "the district court's ruling rested upon a basic misapprehension of the [anti-harboring] statute." *Id.* at 273. Second, the court held that "[p]roof schemes depend on record evidence," and the "record here is simply too thin to support a business necessity defense," because Defendants' actions in enforcing

3

the policy were inconsistent with their assertion that they were motivated by a concern with harboring. *Id.* at 279-80. The Fourth Circuit remanded again for "further proceedings consistent with [its] decision." *Id*. at 280.

## **ARGUMENT**

Defendants' position is that "[a]rguments as to whether reasons for the Policy are post hoc justifications or whether reasons motivated the Policy are not relevant to a disparate impact claim." ECF 459 at 5. The Fourth Circuit rejected that position, making clear that Step Two requires Defendants to prove the actual, contemporaneous reasons for their Policy. *Reyes II*, 91 F.4th at 277, 279-80.

The Fourth Circuit's ruling in *Reyes II* was based on two independent grounds. First, this Court's second summary judgment decision "rested on a basic misapprehension of the [anti-harboring] statute." 91 F.4th at 273. Second – and independently – "the record was insufficient to establish [Defendants'] proposed [Step Two] defense." *Id.* at 273, 279-80. The record mattered because Step Two requires Defendants to prove a "'legitimate' interest," which "cannot be a phony." *Id.* at 277 (quoting *Inclusive Communities*, 576 U.S. at 527). "Otherwise defendants could manufacture business necessity based on speculative, or even imagined," grounds. *Id*.

Applying that holding, the Fourth Circuit decided that Defendants failed to meet their Step Two burden because the evidence did not show that they were, in fact, motivated by concerns with their proffered Step Two defense of complying with the anti-harboring statute. The court observed:

> Having a Policy on the books that required verification of the legal status of all adult tenants in residence, but disregarding its enforcement for years, calls into question Waples's contention that it was concerned about avoiding harboring liability.

*Id.* at 279. And further,

> If Waples was truly concerned about being prosecuted for housing undocumented immigrants, its expected course would be to remove such tenants from the Park as quickly as possible. But Waples did not evict a single person who failed to comply with the Policy

4

> from the Park. Instead, Waples increased the rent payments that noncompliant tenants were charged every month. . . . If Waples were at risk for prosecution under the anti-harboring statute, it would have a difficult time explaining to a prosecutor why, instead of evicting known undocumented immigrants, it opted to implement a surcharge instead.

*Id.* at 279-80. The court concluded by emphasizing the central place of record evidence at Step Two:

> On a record this thin, Waples cannot have met its burden to establish that the Policy served a legitimate interest. *Proof schemes depend on record evidence and the record here falls short of anything approaching business necessity*. For this reason too, the district court erred in granting summary judgment to Waples.

*Id.* at 280 (emphasis supplied).

The Fourth Circuit's holding that Defendants must demonstrate an *actual, contemporaneous* justification for the Policy at Step Two follows from the Supreme Court's holding in *Inclusive Communities*, and from long-established regulations issued by the Department of Housing and Urban Development (HUD). The Supreme Court held that Step Two requires defendants to "[p]rove the challenged practice is necessary to achieve one or more substantial, *legitimate*, nondiscriminatory interests." 576 U.S. at 527 (emphasis added). In that regard, the Court aligned its analysis with HUD's 2013 Disparate Impact Rule, 24 C.F.R. § 100.500(c)(2), and the regulatory text accompanying that Rule, 576 U.S at 527-28, 541, 542. *See also Reyes I*, 903 F.3d at 424 n.4 ("The HUD regulation is similar to the framework the Supreme Court ultimately adopted in *Inclusive Communities*[.]"). Under the HUD regulation, a defendant seeking to justify a discriminatory policy at Step Two must prove "[a] legally sufficient justification" that is "supported by evidence" and is not "hypothetical or speculative." 24 C.F.R. § 100.500(B)(2) (2013). A Step Two justification must be "genuine and not false," 78 Fed. Reg. at 11470, not

5

"fabricated or pretextual," *id.* at 11471 – or, in the words of the Fourth Circuit, not "a phony," *Reyes II*, 91 F.4th at 277.[1]

As a result, Defendants cannot concoct justifications for their policies after the fact; to be legally sufficient, the justification must have been an actual, contemporaneous motivation for the policy at the time of the enforcement. *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mt. Holly*, 658 F.3d 375, 385 (3d Cir. 2011) ("*Mt. Holly Gardens*") ("[Step Two] simply results in a more searching inquiry into defendant's motivations—precisely the sort of inquiry required to ensure that the [defendant] does not deprive people of housing 'because of race'"); *Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 513 (9th Cir. 2016) (same (citing *Mt. Holly Gardens*, 658 F.3d at 385)).[2]

In practice, this means that Defendants must produce admissible evidence of their actual reasons for enforcing the Policy against the Plaintiff families if they are to meet their Step Two burden. Justifications developed after the fact (like their anti-harboring claim) are not relevant and

---

[1] Defendants argue that requiring evidence of actual motivation is inconsistent with disparate impact liability, which "focus[es] on effect, rather than intent." ECF 459 at 5-6. But the focus on effect applies at Step One, where plaintiffs must establish "a robust causal connection between the defendant's challenged policy and the disparate impact on the protected class." *Reyes I*, 903 F.3d at 424. At Step Two, defendants must provide evidence of their *actual motivation*, and may not "manufacture business necessity based on speculative, or even imagined, liability." *Reyes II*, 91 F.4th at 277.

[2] *See also Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 988 (4th Cir. 1984) ("[W]hen confronted with a showing of discriminatory impact, defendants must prove a business necessity sufficiently compelling to justify the challenged practice."); *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 617 (2d Cir. 2016) (at Step Two, "the defendant or respondent may rebut the prima facie case by proving that the 'challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the respondent or defendant.'" (quoting 24 C.F.R. § 100.500(c)(1)–(2) (2013)); *Reinhart v. Lincoln Cnty.*, 482 F.3d 1225, 1229 (10th Cir. 2007) ("Once plaintiffs establish a prima facie case of disparate impact, the burden shifts to the defendant to produce evidence of a genuine business need for the challenged practice." (internal quotations omitted)).

should be excluded under Federal Rules of Evidence 401 and 402. And testimony from witnesses who lack knowledge of the reasons for the Policy must also be excluded at Step Two under Federal Rule of Evidence 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). *See, e.g., Treece v. Perrier Condo. Owners Ass'n, Inc.*, 2020 WL 759567, at *18 (E.D. La. Feb. 14, 2020) ("A reason is not 'legitimate' or 'valid' if it was not present at the time [of] a rule's adoption, but rather is a *post hoc* rationalization for a discriminatory policy, or when the justification is otherwise arbitrary."); *Fair Hous. Ctr. of Wash. v. Breier-Scheetz Props., LLC*, 2017 WL 2022462, at *4 (W.D. Wash. May 11, 2017) ("defendants have offered no evidence that would allow the Court to conclude that defendants' concern about fairness is anything more than an arbitrary, *post-hoc* justification for a discriminatory policy").[3] Speculation is likewise irrelevant to the Defendants' burden to show their actual motivations. *See* 24 C.F.R. § 100.500(B)(2); *Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 741 (8th Cir. 2005) (affirming district court's decision to "determine[] as a matter of fact that [the defendants'] justifications were pretextual because they were unsupported by evidence").

Defendants argue that it should not be required to produce evidence of "the reasons that motivated the adoption of the policy initially" because that could be burdensome to track over many years, and because the reasons might change over time. ECF 459 at 6-7. But the relevant point in time is not necessarily when a policy is *adopted*. As this case demonstrates, policies may

---

[3] *See also Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 646–47 & n.2 (4th Cir. 2002) (when asked to justify an employment decision, an employer may not provide post-hoc rationalizations and claim that they are the actual criteria on which the decision was based); *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir. 2001) ("a factfinder could infer from the late appearance of Sears's current justification that it is a post-hoc rationale, not a legitimate explanation for Sears's decision not to hire Santana").

7

exist without being enforced. *See* ECF 142 at 5-6, ¶¶ 3, 8-11. The relevant point is the time of *enforcement*: why did Defendants begin to *enforce* the Policy against the Plaintiffs in 2015, and compel them to leave the Park thereafter? *See* ECF 454-1 (Plaintiffs' proposed order, which would bar "justifications created after the Policy was *enforced*"). That is a minimal burden and consistent with *Reyes II* and years of precedent.[4]

Finally, Defendants assert that it has presented evidence regarding the motivations for enforcing the Policy against Plaintiffs. ECF 459 at 7-8 ("Mark Jones, Defendants' corporate designee, testified as to the Policy's reasons."). To the extent that is true, Defendants may present that evidence to the jury. What they cannot do is present a "phony" reason for enforcing their Policy against the Plaintiffs, *Reyes II,* 91 F.4th at 277; or "manufacture business necessity based on speculative, or even imagined," reasons, *id.*; or otherwise make things up, *id.* at 280 ("[p]roof schemes depend on record evidence").

## CONCLUSION

For the foregoing reasons, Defendants' Motion *in Limine* to Exclude Arguments Questioning Whether Valid Interests for the Policy Were in Place at the Time of the Policy's Adoption (ECF 458) should be denied.

---

[4] In rejecting similar burden arguments from housing providers when issuing its 2013 Disparate Impact Rule, HUD stated that "HUD and courts have reviewed justifications proffered by covered entities for many years[,]" and a defendant "must be able to prove with evidence the substantial, legitimate, nondiscriminatory interest supporting the challenged practice and the necessity of the challenged practice to achieve that interest." 78 Fed. Reg. 11460, 11471 (Feb. 15, 2013).

| | |
|---|---|
| Dated: May 1, 2024 | Respectfully Submitted, |
| | */s/ Granville C. Warner* |
| ZUCKERMAN SPAEDER LLP | LEGAL AID JUSTICE CENTER |
| Nicholas M. DiCarlo (admitted *pro hac vice*) | Granville C. Warner, VSB #24957 |
| 1800 M Street NW, Suite 1000 | Nady Peralta, VSB #91630 |
| Washington, DC 20036 | Larisa D. Zehr, VSB #96032 |
| 202.778.1800 | 6402 Arlington Blvd., Suite 1130 |
| ndicarlo@zuckerman.com | Falls Church, VA 22042 |
| | 703.778.3450 |
| Cyril V. Smith (admitted *pro hac vice*) | cwarner@justice4all.org |
| 100 East Pratt Street, Suite 2440 | nady@justice4all.org |
| Baltimore, MD 21202-1031 | larisa@justice4all.org |
| 410.332.0444 | |
| csmith@zuckerman.com | |
| | *Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of May, 2024, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

                                          */s/ Granville C. Warner*
                                          Granville C. Warner, VSB #24957