UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES; JOSE DAGOBERTO REYES; FELIX ALEXIS BOLANOS; RUTH RIVAS; YOVANA JALDIN SOLIS; ESTEBAN RUBEN MOYA YRAPURA; ROSA ELENA AMAYA; and HERBERT DAVID SARAVIA CRUZ,<br><br>*Plaintiffs*,<br><br>vs.<br><br>WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP; WAPLES PROJECT LIMITED PARTNERSHIP; and A.J. DWOSKIN & ASSOCIATES, INC.,<br><br>*Defendants*. | Case No. 1:16-cv-00563 (PTG/WBP) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE OF DAMAGES**

Plaintiffs Rosy Giron de Reyes, Jose Dagoberto Reyes, Felix Alexis Bolaños, Ruth Rivas, Yovana Jaldin Solis, Esteban Ruben Moya Yrapura, Rosa Elena Amaya, and Herbert David Saravia Cruz ("Plaintiffs"), by counsel, submit the following memorandum of law in opposition to Defendants' Motion *in Limine* to Exclude Evidence of Damages (ECF 460), and respectfully request as follows:

**BACKGROUND**

This case is about the disparate impact that Defendants' policy ("the Policy") had on Plaintiffs, as Latino residents of the Waples Mobile Home Park ("the Park"). By June 2015, Defendants began to enforce the Policy against the Plaintiffs, which required them to provide

1

certain documentation related to their legal immigration status.[1] As a result, Plaintiffs paid increased rent,[2] faced eviction,[3] and eventually had no other choice but to move out of the Park.[4] Plaintiffs and their children experienced stress, loss of employment, educational disruption, and emotional distress as a result of this forced relocation.[5]

## ARGUMENT

Defendants contend that Plaintiffs' evidence and argument regarding damages should be excluded from trial because damages are not available for disparate impact claims under the Fair Housing Act ("FHA" or the "Act"). That isn't true. The Act specifically states that a "court may award to the plaintiff actual and punitive damages," 42 U.S.C. § 3613(c)(1), and courts routinely award damages in FHA disparate impact cases. Defendants' arguments about damages are not even properly presented through a motion *in limine*, as Defendants offer no evidentiary grounds for exclusion. In the alternative, Defendants contend that the trial for liability and damages should be bifurcated. There is no support for that argument, either. Defendants have presented only vague assertions that they face prejudice, and thus fail to meet their burden to show bifurcation is necessary. What is more, bifurcation would needlessly inconvenience both the parties and the Court, separate dependent issues, and further tax the Court's limited resources.

---

[1] *See, e.g.*, ECF 402, Ex. 4 (Renewal Letter for Jose Reyes); ECF 138, Ex. 26 (Giambanco Dep. Tr.) at 50:11-14; 51:25-52:8.

[2] *See, e.g.*, ECF 363, Ex. 1 (Moya Yrapura Dep. Tr.) at 56:5-14 (increased rent at Park).

[3] *See, e.g.*, ECF 363, Ex. 2 (Eviction Letter to Jose Reyes (2/4/2016)).

[4] *See, e.g.*, ECF 363, Ex. 3 (Amaya Iraheta Dep. Tr.) at 35:13-36:9 (stating that, if Plaintiff could not live in the Park because of the Policy, whole family was forced to move).

[5] *See, e.g.*, ECF 363, Ex. 4 (Rivas Abarca Dep. Tr.) at 132:16-133:16 (stress, lost employment, higher rent in new residence).

I.  **DAMAGES ARE AVAILABLE IN FHA DISPARATE IMPACT CLAIMS.**

    A.  **Actual Damages Are Available.**

Actual damages are available in disparate impact cases under the FHA, including compensatory damages for out-of-pocket losses, as well as non-monetary injuries such as emotional distress and reputational harm. The statutory language is clear: "if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages." 42 U.S.C. § 3613(c)(1). And courts have routinely awarded actual damages in cases of disparate impact. *See, e.g.*, *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34 (2nd Cir. 2015) (sustaining jury verdict including damages for actual costs and reputational harm in FHA disparate impact case); *Park View Heights Corp. v. City of Black Jack*, 605 F.2d 1033, 1035 (8th Cir. 1979) (resulting in consent judgment for $450,000 after finding of discriminatory effect); *R.I. Comm'n for Human Rights v. Graul*, 120 F. Supp. 3d 110, 131 (D.R.I. 2015) ("emotional distress" damages); *Rivera v. Inc. Vill. of Farmingdale*, 29 F. Supp. 3d 121, 134 (E.D.N.Y. 2013) (denying motion *in limine* to exclude photographic evidence of community activity because relevant to damages for emotional distress and "loss of enjoyment of life" in disparate impact and disparate treatment claims).[6]

Defendants' arguments to the contrary are based on (1) a remedies statute that applies to employment discrimination actions, which has markedly different language from the FHA, and (2) a novel reading of *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015). Both arguments fail.

---

[6] Defendants' main citation under the FHA itself for their contention that damages are unavailable in disparate impact cases is *Smith v. Town of Clarkton*, 682 F.2d 1055, 1059 (4th Cir. 1982). But in that case the Court did not discuss the general availability of actual or punitive damages in disparate impact cases; instead, it merely affirmed the trial court's discretion to fashion an appropriate remedy based on the facts of that case.

(1) Defendants rely on interpretations of Title VII, the Americans with Disabilities Act (ADA), and the Rehabilitation Act of 1973 (Rehab Act) to argue that the FHA should be construed to preclude damages in disparate impact claims. ECF 461 at 6-8. But these three statutes expressly diverge from the FHA with respect to damages. While the text of the remedies statute that applies to Title VII, ADA, and Rehab Act employment discrimination actions explicitly bars damages in disparate impact cases, the FHA explicitly authorizes *both* actual and punitive damages upon a finding of any "discriminatory housing practice." *Compare* 42 U.S.C. § 1981a(a)(1) (applicable to Title VII, ADA, and Rehab Act) ("in an action . . . against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) . . . [plaintiff] may recover compensatory and punitive damages"), *with* 42 U.S.C. § 3613(c)(1) (FHA) ("if the court finds that a discriminatory housing practice has occurred . . . the court may award to the plaintiff actual and punitive damages").

Furthermore, the FHA shows no Congressional intent to limit remedies; in fact, the actions of Congress indicate the opposite. There is a general presumption that a "full panoply" of remedies is available under a certain cause of action, unless Congress has expressly indicated a contrary intent. *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 830 (4th Cir. 1994) (citing *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 65-66 (1992)). When Congress amended the FHA in 1988, it was well aware of the consensus in the courts recognizing disparate impact claims, and "made a considered judgment to retain the relevant statutory text," which allowed damages for such claims. *Inclusive Communities*, 576 U.S. at 536 ("By [1988], all nine Courts of Appeals to have addressed the question had concluded the Fair Housing Act encompassed disparate-impact claims") (citing cases). In 1991, Congress explicitly barred punitive and compensatory damages in Title VII, ADA, and Rehab Act employment discrimination cases involving disparate impact, 42 U.S.C. §

4

1981a(a)(1), but took no such action with respect to the FHA—leaving the express authorization of actual and punitive damages for any "discriminatory housing practice" intact.

(2) Defendants attempt to extrapolate from the "robust causality" standard set out in *Inclusive Communities* to argue that the Supreme Court placed new limits on the remedies available under the FHA. ECF 461 at 6-7, 11 (citing robust causality requirement as grounds that "*Inclusive Communities* established substantial limitations to FHA disparate impact claims"). Yet, courts ruling after *Inclusive Communities* have continued to hold that compensatory damages, including for emotional distress, are available in disparate impact claims. *See*, *e.g.*, *Anderson Grp.*, 805 F.3d 34 (awarding damages for actual costs and reputational harm); *R.I. Comm'n for Human Rights*, 120 F. Supp. 3d at 131 ("emotional distress"); *Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Solutions, LLC*, 478 F. Supp. 3d 259, 316-317 (D. Conn. 2020) (ordering damages claims for "frustration of mission" and "diversion of resources" to proceed to trial; no distinction between mixed disparate impact and treatment claims); *City of Philadelphia v. Wells Fargo & Co.*, No. 17-2203, 2018 WL 424451 at *5 (E.D. Pa. Jan. 16, 2018) (finding non-economic injuries generally cognizable under FHA, especially when plaintiff spent resources to combat noneconomic harm).

In fact, the robust causality requirement has nothing to do with damages at all. Instead, it addresses questions of <u>causation</u> – the robust causality requirement protects Defendants from liability for racial disparities they did not cause; it does not limit remedies once they are found liable. *See Inclusive Communities*, 576 U.S. at 542-43 (robust causality requirement is a "safeguard[] at the prima facie stage" for "demonstrating a causal connection" between defendant's conduct and effects). Defendants rely on the Court's reasoning that, after a finding of liability, remedies should "concentrate on the elimination of the offending practice." ECF 461 at 7; *Inclusive Communities*, 576 U.S. at 544-45. However, with this statement, the Court specifically

5

cautioned against the imposition of racial quotas as relief, but made no cautionary statement on damages. *Id.* at 544-45. In fact, in disparate impact claims, damages remedies are often recognized as viable alternatives to injunctive relief in order to eliminate the offense. *See, e.g.*, *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 386 (3rd Cir. 2011) (considering compensation to obtain housing after relocation a potential remedy); *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 87 (2nd Cir. 2000) (finding standing on disparate impact claim based on economic injury of paying for housing "made unavailable"), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Hispanics United of DuPage Cty. v. Vill. of Addison*, 988 F. Supp. 1130 (N.D. Ill. 1997) (upholding disparate impact settlement including compensation for property value loss after displacement, relocation benefits, and damage fund of $100,000 for damages not directly related to residence loss).

Indisputably, compensatory damages are available for disparate impact claims under the FHA. They are widely awarded for precisely the injuries experienced by Plaintiffs. Thus, it is the jury's role to weigh the evidence and determine the compensatory damages and equitable relief appropriate to remedy any discriminatory housing practices.

      **B.**      **Punitive Damages Are Available.**

Unlike the other statutes cited by Defendants, the FHA does not restrict punitive damages to intentional discrimination cases. 42 U.S.C. § 3613(c)(1) ("if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual *and punitive* damages" (emphasis supplied)); *see, e.g.*, *Fair Hous. Ctr. of Wash. v. Brier-Scheetz Prop.'s, LLC,* 743 F. App'x 116, 118 (9th Cir. 2018) (affirming, post-*Inclusive Communities*, award of punitive damages for FHA disparate impact claim); *Butler v. Sundo Capital, LLC,* 559 F. Supp. 3d 452, 462 (W.D. Pa. 2021) (affirming availability of punitive damages for FHA

6

disparate impact claim). In civil rights cases generally, punitive damages are available in cases of intentional discrimination, *or* when the defendant's conduct "involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). That standard has been applied in FHA cases. *Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402, 449 (E.D. Va. 2011) (applying *Smith* standard to FHA case), *aff'd in part, vacated in part sub nom.*, 468 F. App'x 283 (4th Cir. 2012); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (same).

In the context of housing discrimination, reckless indifference does not require egregious conduct, but refers to the defendant's knowledge that the conduct may be violating federal law. *See Alexander v. Riga*, 208 F.3d 419, 431 (3rd Cir. 2000) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)). Knowledge justifying punitive damages includes discrimination in the face of a "perceived risk" that the conduct will violate federal law. *Kolstad*, 527 U.S. at 536; *see United States v. Scott*, 809 F. Supp. 1404, 1407 (D. Kan. 1992) (awarding punitive damages when defendants had knowledge of the FHA and continued to pursue related state court claims). A defendant can become aware of the potential violation of federal rights over time: continuing to enforce a policy despite "several wake-up calls" about its disparate impact, including an expert opinion and a court ruling, constitutes reckless indifference. *Fair Hous. Ctr. of Wash.*, 743 F. App'x at 118 (enforcing policy after district court ruling that policy violated the FHA up to bench trial on damages more than showed discrimination in the face of a "perceived risk"); *see also Alexander*, 208 F.3d at 431 (inferring recklessness from defendant's repeated conduct in violation of plaintiffs' rights, and misrepresentations to justify conduct).

Defendants were on notice that the Policy may violate the FHA long before Plaintiffs even filed this lawsuit. In 2012, before Defendants began enforcing their discriminatory Policy, the U.S.

Department of Housing & Urban Development (HUD)—the federal agency charged with enforcing the FHA—issued a Guidance Document stating that "[p]rocedures to screen potential and existing tenants for citizenship and immigration status may violate the Fair Housing Act's prohibitions on national origin housing discrimination." *See* U.S. Dep't of Housing & Urban Development, *Immigration Status & Housing Discrimination Frequently Asked Questions* (2012), *available at* https://tinyurl.com/2swf6j9p).[7]

At the latest, Defendants were aware of the risk that the Policy violated the FHA eight years ago, when Plaintiffs filed suit.[8] Defendants then continued to enforce the Policy despite several wake-up calls from the Fourth Circuit that the Policy may violate the FHA. In the first appeal, the Fourth Circuit held that Plaintiffs had "satisfied step one" of the *Inclusive Communities* disparate-impact standard "by demonstrating that Waples' Policy . . . caused a disproportionate number of Latinos to face eviction from the Park compared to the number of non-Latinos who faced eviction based on the Policy." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 428-29 (4th Cir. 2018). In the second appeal, the Fourth Circuit held that Defendants' leading

---

[7] Defendants were aware of this HUD Guidance Document, as they introduced it to support an argument they made in the Fourth Circuit. *See* Brief of Defendants-Appellees at 30 & n.9, *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270 (4th Cir. 2024) (Case No. 22-1660) (ECF 40). The fact that the HUD Guidance Document was issued in 2012, and what it said, are judicially noticeable facts under Federal Rule of Evidence 201. The Guidance Document itself is admissible under Federal Rules of Evidence 801 (opposing party's statement) and 803(8) (public record).

[8] *See, e.g.,* ECF 1 (Complaint); *see also* Antonio Olivo, "Without Social Security Numbers, Illegal Immigrants Face Eviction," *The Washington Post* (Feb. 10, 2016), *available at* https://www.washingtonpost.com/local/virginia-news/without-social-security-numbers-illegal-immigrants-face-eviction/2016/02/10/2fcd64c2-ca9d-11e5-a7b2-5a2f824b02c9_story.html ("The owners of a Northern Virginia mobile-home park are trying to evict about 15 residents who don't have Social Security numbers and are in the country illegally, an effort that attorneys for the families say violates federal and state fair housing laws. . . . Lawyers with the Legal Aid Justice Center are fighting the eviction proceedings in Fairfax County's General District Court, arguing that Waples Mobile Home Park is discriminating against the residents by refusing to accept as proof of identity tax identification numbers that the Internal Revenue Service provides to non-U.S. citizens working in the country.").

"business necessity" defense at Step Two of the disparate-impact framework—related to the "anti-harboring" statute—was an invalid and "phony" defense. *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 276-80 (4th Cir. 2024).

At issue for trial is the legitimacy of Defendants' other business justifications for the Policy and whether Plaintiffs' proposed less discriminatory alternative policy addresses the same interests. The jury may find, as Plaintiffs contend, that Defendants' Policy did not serve a legitimate business necessity or that the purported business interests were post-hoc justifications for the Policy—they are in fact "phony," as the Fourth Circuit held with respect to the rejected "anti-harboring" defense. *Id*. at 277, 279. It is then the jury's role to determine whether Defendants' enforcement of the Policy showed the requisite knowledge under the punitive damages standard, and award punitive damages if appropriate.

## II. **DEFFENDANTS' ARGUMENTS ABOUT DAMAGES ARE NOT PROPERLY PRESENTED THROUGH A MOTION *IN LIMINE*.**

A motion *in limine* is intended "to allow a court to rule on *evidentiary* issues in advance of trial." *United States v. Verges*, No. 1:13cr222 (JCC), 2014 WL 559573 at *2 (E.D. Va. Feb. 12, 2014) (emphasis supplied). The availability of damages under a particular statute is not an "evidentiary issue"; instead, it is a matter of law proper for summary judgment. *See, e.g.*, *McLean v. City of Alexandria*, 106 F. Supp. 3d 736, 743-44 (E.D. Va. 2015) (finding nominal damages available as matter of law on summary judgment under Section 1983 claim for First Amendment violation); *Volette v. Watson*, 937 F. Supp. 2d 706, 715 (E.D. Va. 2013) (finding damages unavailable on summary judgment because of Eleventh Amendment sovereign immunity); *Kittrell v. RRR, LLC*, 280 F. Supp. 2d 517, 520-22 (E.D. Va. 2003) (striking, on summary judgment, plaintiff's attempt to recover statutory and actual damages from both defendants under the Consumer Leasing Act, based on Congressional intent). Defendants' argument here rests solely on

the availability of damages in disparate impact claims as a matter of law, not on their admissibility as a matter of evidence. In fact, Defendants cite no evidentiary rule as grounds for exclusion. *See* ECF 461.

Defendants have already had several opportunities to raise summary judgment issues, including in response to the Court's April 7, 2020 order directing the parties to conduct supplemental briefing and address whether any remaining questions are "jury issues or questions for the court to resolve on summary judgment." ECF 273 at 5. Defendants filed extensive additional briefing, stating that "there are multiple issues that remain for this Court to decide," but they did not dispute the availability of damages as a matter of law. ECF 276 at 1. Defendants should not be permitted to raise the issue now.

### III. ISSUES OF LIABILITY AND DAMAGES SHOULD NOT BE BIFURCATED BECAUSE BIFURCATION WOULD NOT SERVE EFFICIENCY OR CONVENIENCE, ENHANCE JUDICIAL ECONOMY, OR AVOID PREJUDICE.

Defendants argue in the alternative that the trial on liability and damages should be bifurcated. Under Federal Rule of Civil Procedure 42(b), a trial court may separate issues in a trial for "convenience, to avoid prejudice, or to expedite and economize." But bifurcation is an exception, not the general rule. *See* Fed. R. Civ. P. 42, advisory committee's note to 1966 Amendment ("separation of issues for trial is not to be routinely ordered"). It is the Defendants' burden, as the party moving for bifurcation, to prove that bifurcation will promote the listed factors. *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 975 (4th Cir. 2020).

In this case, each of the Rule 42(b) factors counsels *against* bifurcation. Bifurcation would cause inefficiency and inconvenience. There are only eight named Plaintiffs (four married couples). Any damages related to Plaintiffs' rent increases, threats of eviction, or forced relocation from the Park are shared by household, further streamlining the issues. Plaintiffs' testimony, not including Spanish-English interpretation, would last less than an hour each, including liability and

10

damages; all told, this trial will last less than a week. Separate trials would be inconvenient for witnesses who would need to be called multiple times in a matter that has already lasted eight years. Sending the jury out to deliberate twice would be more time-consuming for the jurors and for the court. Even if the jury should not find the Defendants liable for violations of the FHA, bifurcation would not save substantial time, because evidence of damages is simple.

Defendants would not be prejudiced by a standard trial. Defendants argue that they face prejudice in two ways: from Plaintiffs' testimony about the Policy's impact, and because evidence relevant to punitive damages could improperly prejudice the jury's finding of liability. ECF 461 at 12-13. Regarding Plaintiffs' testimony about the Policy's impact, Defendants state vaguely that Plaintiffs' testimony about moving out of the Park will be "emotional," *id.* at 12, but no more than their testimony about being forced from their homes when Defendants began to enforce the Policy. Plaintiffs' damages testimony will simply describe the impact of the Policy, which is relevant to both liability and damages. Should bifurcation be appropriate on this exceedingly low standard, bifurcation would be justified in all cases where damages are at issue. Next, Defendants claim that evidence pertaining to punitive damages could be prejudicial because revealing Defendants' net worth could adversely affect the determination of liability. *Id.* at 12. Plaintiffs will not introduce evidence or ask questions regarding Defendants' net worth; accordingly, that will not be an issue.

Even if Defendants could prove prejudice in this case, bifurcation is not appropriate because the evidence about liability and punitive damages is inextricable. *McKiver*, 980 F.3d at 975 (holding bifurcation is exception because evidence of liability and damages typically overlaps substantially; norm is one trial with clear jury instructions on damages standard). For example, Defendants contend that the Policy is justified by legitimate business interests, a key issue for liability. In order to weigh punitive damages, the jury will need to consider whether Defendants'

11

conduct constituted discrimination in the face of a perceived risk that they were violating Plaintiffs' rights. When, whether, and why Defendants had a valid business justification for the Policy is directly relevant to their knowledge for purposes of both liability and punitive damages. Bifurcation would simply require repetition of the same evidence in two trials, and any potential prejudice would not be avoided.

## CONCLUSION

For the foregoing reasons, Defendants' Motion *in Limine* to Exclude Evidence of Damages (ECF 460) should be denied.

Dated: May 1, 2024

ZUCKERMAN SPAEDER LLP
Nicholas M. DiCarlo (admitted *pro hac vice*)
1800 M Street NW, Suite 1000
Washington, DC 20036
202.778.1800
ndicarlo@zuckerman.com

Cyril V. Smith (admitted *pro hac vice*)
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
410.332.0444
csmith@zuckerman.com

Respectfully Submitted,

*/s/ Granville C. Warner*
LEGAL AID JUSTICE CENTER
Granville C. Warner, VSB #24957
Nady Peralta, VSB #91630
Larisa D. Zehr, VSB #96032
6402 Arlington Blvd., Suite 1130
Falls Church, VA 22042
703.778.3450
cwarner@justice4all.org
nady@justice4all.org
larisa@justice4all.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of May, 2024, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.

/s/ *Granville C. Warner*
Granville C. Warner, VSB #24957