# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

|  |  |
|---|---|
| ROSY GIRON DE REYES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, <br><br> Defendants. | Civil No.:  1:16-cv-563 (TSE) (TCB) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF DAMAGES**

## INTRODUCTION

Plaintiffs only present a disparate impact claim without any allegations of intentional discrimination or racial animus. Both *Inclusive Communities*[1] and Title VII, which was relied on by the Supreme Court in first recognizing disparate impact claims under the Fair Housing Act ("FHA"), demonstrate that based on these allegations, Plaintiff should not be permitted to present evidence in support of their claim for actual and punitive damages. In fact, Title VII demonstrates that Congress spoke with a clear intent to prohibit compensatory and punitive damages in disparate impact claims.

In response, Plaintiffs mischaracterize Defendants' argument on *Inclusive Communities* and ignore that there, after first recognizing FHA disparate impact claims, the Supreme Court cautioned that "remedial orders" in disparate-impact cases "must be consistent with the Constitution" and "should concentrate on the elimination of the offending practice." Plaintiffs also argue that the text of the FHA provides for such damages; but they ignore that disparate impact claims are not provided for in text of the FHA. Instead, the Supreme Court first recognized such claims in 2015 through its opinion in *Inclusive Communities*.

Just as Title VII provided an instructive guide for the Supreme Court when it first recognized such claims, Title VII is instructive on Congress' intent to treat disparate impact claims differently in the context of damages available. Plaintiffs, however, ask the Court to ignore this clear statement of intent even though *Inclusive Communities* heavily relied on the text of Title VII and Title VII jurisprudence to first recognize disparate impact FHA claims. Plaintiffs also cite only out-of-circuit cases awarding actual damages to disparate impact plaintiffs, and even then, only

---

[1] *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015).

two out-of-circuit cases following *Inclusive Communities* in support of their position. These two cases, however, do not reach nearly as far as Plaintiffs suggest. For example, in one such case which Plaintiffs cite to for the proposition that actual and punitive damages are available on disparate impact FHA claims, the city-plaintiff was pursing both a disparate treatment and disparate impact theory of liability. By contrast, the Fourth Circuit has affirmed a district court's decision to deny an award of general damages on a disparate impact claim where no racial animus was found. In any event, even if this Court disagrees with Defendants, it should exercise its discretion, as provided by the FHA, to preclude Plaintiffs from presenting evidence in support of their actual and punitive damages claim.

Plaintiffs also claim that they are entitled to present evidence in support of their punitive damages claim, but they do not cite any specific allegations, or even any record evidence, that would support such an award. Plaintiffs also claim that a motion in limine is not the appropriate procedural vehicle for resolving the instant dispute but courts in the Fourth Circuit have done exactly that.

Finally, Plaintiffs assert that in the alternative, bifurcation is not appropriate and necessary because Defendants do not face any prejudice, but at the same time, Plaintiffs state that they will elicit emotionally charged testimony regarding the emotional distress suffered by Plaintiffs *and their children*. This emotionally charged testimony will compromise any finding on liability if damages are not bifurcated into a separate phase. By contrast, Plaintiffs make only conclusory allegations of inconvenience except for the minimal inconvenience of having to call Plaintiffs as witnesses twice. The trial will not be lengthened; any damages phase will be short because Plaintiffs' testimony will be short; and bifurcation will help streamline the issues to be decided and result in an efficient trial.

# ARGUMENT

I. **PLAINTIFFS SHOULD NOT BE PERMITTED TO PRESENT EVIDENCE OR ARGUMENT IN SUPPORT OF THEIR CLAIMS FOR COMPENSATORY OR PUNITIVE DAMAGES BECAUSE THEY ARE PROCEEDING TO TRIAL ONLY ON A DISPARATE IMPACT CLAIM**

   A. **Compensatory Damages Should Not Be Available On Plaintiffs' Disparate Impact Allegations**

Plaintiffs argue that Defendants improperly attempt to extrapolate from the "robust causality" standard set out in *Inclusive Communities* to limit the remedies available under the FHA. Opp. at 5-6 (Dkt. 477). Plaintiffs, however, mischaracterize Defendants' argument on *Inclusive Communities* in their attempt to set up a straw man. As detailed in Defendants' memorandum supporting its motion (Dkt. 461 at 6-7), in *Inclusive Communities*, the Supreme Court first recognized disparate impact claims under the FHA, but due to its concerns about abusive disparate impact claims, the Supreme Court established and applied "cautionary standards" to FHA disparate impact claims. Part of those cautionary standards were to establish "adequate safeguards" to "properly limit[]" disparate impact liability. *Inclusive Cmtys.*, 576 U.S. at 540-43. What Plaintiffs miss is that the Court *also* applied cautionary standards beyond simply liability concerns, but also to any disparate impact remedial orders. The Court cautioned that "remedial orders" in disparate-impact cases "must be consistent with the Constitution" and "should concentrate on the elimination of the offending practice that 'arbitrar[ily] . . . operate[s] invidiously to discriminate on the basis of rac[e].'" *Id*. at 544. Plaintiffs argue that this cautionary safeguard operates *only* to guard against the imposition of racial quotas in remedial orders. Opp. at 5. Plaintiffs, however, provide an improperly narrow construction of *Inclusive Communities*' language. The Court was concerned not only about remedial orders which would improperly embrace racial quotas but also instructed that remedial orders "concentrate on the elimination of the offending practice". Defendants,

- 4 -

therefore, do not offer a "novel reading" of *Inclusive Communities* but one based upon the precise text of that opinion.

Plaintiffs also direct this Court to out-of-circuit cases awarding actual damages to disparate impact plaintiffs but only cite two out-of-circuit cases that were decided after *Inclusive Communities*. Opp. at 3. Neither case reaches as far as Plaintiffs represent. In *Anderson Grp.* and *Graul*, the availability of actual damages under a disparate impact claim was not challenged. *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015) (noting the issues for appeal); *R.I. Comm'n for Human Rights v. Graul*, 120 F. Supp. 3d 110, 132 (D.R.I. 2015) (noting that plaintiffs' motion for partial summary judgment extended to liability only).

In contrast to these out-of-circuit cases, the Fourth Circuit has affirmed a district court's decision to deny an award of general damages on a disparate impact claim where no racial animus was found. *Smith v. Town of Clarkton, N. C.*, 682 F.2d 1055, 1059 (4th Cir. 1982) (noting that the "[t]he trial court found no personal racial animus on the part of the defendants as individuals, and [thus] denied an award of general damages to Smith."); *see Tsombanidis v. City of W. Haven*, 180 F. Supp. 2d 262, 299 (D. Conn. 2001). Here, there are no allegations set for trial that involve racial animus or intent to discriminate based on race. Therefore, both *Inclusive Communities* and Fourth Circuit precedent instruct against the availability of actual damages in a disparate impact claim.

### B. Congress Has Evinced An Intent To Treat Damages Differently In Disparate Impact Claims

In addition, 42 U.S.C. § 1981a(a)(1) provides a clear statement of Congressional intent to prohibit compensatory and punitive damages in disparate impact claims—claims which do not involve improper motive or an intent to discriminate. In response, Plaintiffs argue that Title VII should not guide the types of damages available in FHA disparate impact claims even though the Supreme Court's reliance on Title VII jurisprudence in *Inclusive Communities* led to its

recognition of disparate impact claims under the FHA in the first instance. *Inclusive Cmtys.*, 576 U.S. at 533 ("The cases interpreting Title VII and the ADEA provide essential background and instruction in the case now before the Court.").

Plaintiffs assert that Title VII's guidance—that compensatory and punitive damages are not available in disparate impact claims—should be ignored because the text of the FHA diverges with the FHA on the availability of actual damages. Opp. at 4. This textual analysis is flawed, however, because the text of the FHA does not provide for disparate impact suits. It was not until 2015, in *Inclusive Communities*, that the Supreme Court first recognized disparate impact claims as viable under the FHA. In reaching that conclusion, the Court relied heavily on the "similarity in text and structure" of Title VII and the Age Discrimination in Employment Act of 1967, and the Court found instructive that it had previously found that those statutes impose disparate impact liability. *Inclusive Cmtys.*, 576 U.S. at 534. This is precisely why the statement of Congressional intent in § 1981a(a)(1) should guide the damages available, or more precisely—not available, to a disparate impact FHA plaintiff.

Plaintiffs' argument—to ignore Congress's clear intent to treat disparate impact claims differently in terms of damages awarded—suffers further flaws because, in 1988, when Congress passed the FHAA, Congress had not yet decided to treat disparate impact claims differently in the context of the damages available. It was not until Congress passed the Civil Rights Act of 1991 that Congress demonstrated the intent to limit compensatory and punitive damages in claims of disparate impact. 42 U.S.C. § 1981a(a)(1). Plaintiffs argue that Congress's failure to similarly limit the FHA at that time supports their position. Intent, however, should not be read into Congressional inaction. *Kimbrough v. United States*, 552 U.S. 85, 106 (2007) ("Ordinarily, we resist reading congressional intent into congressional inaction.") (citing *Bob Jones Univ. v. United States*, 461

U.S. 574, 600 (1983)); *Zuber v. Allen*, 396 U.S. 168, 185 n.21(1969) ("Congressional inaction frequently betokens unawareness, preoccupation, or paralysis. 'It is at best treacherous to find in Congressional silence alone the adoption of a controlling rule of law.'") (citing *Girouard v. United States*, 328 U.S. 61, 69 (1946)). This is especially so, because by 1991, the Supreme Court had not yet recognized disparate impact claims under the FHA; therefore, it makes no sense that Congress definitively spoke through inaction when the text of the FHA did not provide for such claims and the Supreme Court had yet to recognize such claims as viable under the FHA.

Plaintiffs' attempt to distinguish *Pandazides v. Virginia Bd. Of Educ.*, 13 F.3d 823, 829-30 & n.9 (4th Cir. 1994) also falls short. Opp. at. 4. That case stands for the proposition that in suits under discrimination statutes separate from Title VII—Title II of the ADA or § 504 of the Rehabilitation Act—courts have looked to the statement of Congressional intent under the Civil Rights Act of 1991 to treat disparate impact liability differently in the context of damages available. Moreover, *Pandazides* demonstrates that if Plaintiffs' argument is accepted, disparate impact claims under the FHA would be unique in the availability of actual and punitive damages when compared to disparate impact claims asserted under other comparable discrimination statutes. In fact, Plaintiffs have not cited one comparable discrimination statute that provides for an award of actual and punitive damages upon disparate impact claims.

Because the Supreme Court first recognized the disparate impact theory of liability under the FHA in *Inclusive Communities*, it is appropriate and necessary to thus follow *Inclusive Communities*' reliance on the text of Title VII—and Congress's clear intent to treat damages differently in the disparate impact context as stated in that Act—in holding that actual and punitive damages are not available in a FHA disparate impact claim. *Inclusive Communities* clearly cautioned that even if liability is found on a disparate impact FHA claim, any remedial order

"should concentrate on the elimination of the offending practice." An award of actual and punitive damages upon a disparate impact claim does not concentrate on the elimination of an offending practice and runs directly counter to Congress's intent to prohibit compensatory and punitive damages in such claims.

Nonetheless, even if the Court disagrees with Defendants on the proposition that actual and punitive damages should not be available on a disparate impact FHA claim, this Court should exercise its discretion, as provided by the FHA, to hold that an award of actual and punitive damages is not appropriate upon the allegations and evidence presented by Plaintiffs. 42 U.S.C. § 3613 ("the court may award to the plaintiff…"); *Smith*, 682 F.2d at 1059 (noting that the "[t]he trial court found no personal racial animus on the part of the defendants as individuals, and [thus] denied an award of general damages to Smith."); *Tsombanidis*, 180 F. Supp. 2d at 299 ("The primary consideration that distinguishes the relief to be awarded to plaintiffs against the Fire District, from that awarded against the City, is the fact that this Court has made no finding of intentional discrimination by the Fire District. Accordingly, the Court holds that plaintiffs are not entitled to an award of compensatory damages against the Fire District."). There are no allegations of racial animus or intentional discrimination set for trial. The Court should exercise its discretion to prohibit evidence in support of Plaintiffs' claims for actual and punitive damages.

### C. Punitive Damages Are Not Available On Plaintiffs' Allegations

Plaintiffs separately assert that they should be permitted to present evidence at trial on their claim for punitive damages. However, there are no allegations in this case that would permit an award of punitive damages. Plaintiffs concede that they are only proceeding to trial on their disparate impact claim, which does not involve claims involving intentional discrimination. Plaintiffs' intentional discrimination claims have been dismissed. Because only a disparate impact

claim remains in this case, Plaintiffs concede that they are not entitled to punitive damages based on allegations of motive or intent. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538 (1999) ("Most often, however, eligibility for punitive awards is characterized in terms of a defendant's motive or intent."). Instead, Plaintiffs argue that they should be permitted to present evidence on punitive damages because this case "involves reckless or callous indifference to the federally protected rights of others." Opp. at 6. Plaintiffs, however, do not direct this Court to a single case in the Fourth Circuit where punitive damages have been awarded in an FHA disparate impact claim on those grounds and only two out-of-circuit cases awarding punitive damages on an FHA disparate impact claim which involved completely distinct facts. *Id.*[2]

Plaintiffs also do not direct this Court to *any* allegations relating to their disparate impact claim that would support an award of punitive damages on those grounds. They do not direct this Court to *any* evidence that would come close to meeting that standard. Plaintiffs only cite to a Washington Post article in defense of their pursuit of punitive damages on these grounds, but this article is inadmissible hearsay that does not make or support any allegation that Defendants acted with reckless or callous indifference to federally-protected rights. Plaintiffs otherwise only make

---

[2] In *Matarese*, the disparate impact claim had been previously dismissed at the summary judgment stage. *Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402, 430 n.13 (E.D. Va. 2011). In *Fair Hous. Ctr. of Wash. v. Breier-Scheetz Props., LLC*, the challenged policy involved a one-person-per studio policy which a landlord maintained after the Seattle Office of Civil Rights found the policy violated fair housing laws. 743 F. App'x 116, 118 (9th Cir. 2018). Even then, a judge vigorously dissented against the award of punitive damages. 743 F. App'x at 120 ("None of the district court's findings in this case come close to evincing the 'reckless or callous indifference' required to award punitive damages under the FHA."). In *Butler v. Sundo Captial, LLC*, 559 F. Supp. 3d 452, 462 (W.D. Pa. 2021), the court merely denied a motion to dismiss the punitive damages at the pleading stage and cited cases for the proposition that punitive damages are "better resolved on a developed record." For that reason, the court in *Butler* denied the motion to dismiss "without prejudice to Defendants raising these arguments again at summary judgment." *Id.* at 464.

the conclusory, unsupported assertion that Defendants persisted in enforcing the Policy for many years despite knowing the conduct may violate Plaintiffs' federally protected rights. This conclusory assertion should be disregarded.

In sum, Plaintiffs insist that at trial the jury will determine if Defendants' conduct meets the reckless indifference standard, but prior to trial, Plaintiffs do not make any allegations or present any evidence that would support a punitive damages award on those grounds. Plaintiffs, therefore, should not be permitted to present any evidence in support of a punitive damages claim.

### D. A Motion *in Limine* Is Appropriate For Determining the Availability of Damages

Plaintiffs also argue that the availability of a certain type of damages is not an evidentiary issue appropriate for resolution by a motion *in limine*. Opp. at 9-10. Plaintiffs, however, do not cite a single case for that proposition. Instead, all of the cases they cite, notably introduced with a "*See*" signal, stand for the proposition that the availability of damages *can* be resolved by a motion for summary judgment. Contrary to Plaintiffs' argument, courts in the Fourth Circuit have found that motions *in limine* are appropriate procedural vehicles to resolve the availability of certain categories of damages. *Webb v. Appalachian Power Co.*, Civil Action No. 2:09-cv-0813, 2010 U.S. Dist. LEXIS 128069, at *7 (S.D. W. Va. Dec. 3, 2010) (granting motion *in limine* and excluding evidence of punitive damages because "plaintiff has shown no right to recover punitive damages in this case."); *Baclawski v. Mt. Real Estate Capital LLC*, No. 3:15-CV-417-DCK, 2017 U.S. Dist. LEXIS 178985, at *6 (W.D.N.C. Oct. 27, 2017) (granting motion *in limine* and excluding evidence and arguments related to punitive damages because punitive damages were not available under the FLSA); *McComas v. Miller*, No. 3:13-14953, 2014 U.S. Dist. LEXIS 157609, at *20 (S.D. W. Va. Nov. 7, 2014) ("[T]he Court agrees with Defendant that there does not appear to be sufficient factual or legal support for punitive damages.") (granting motion *in*

*limine* to exclude punitive damages); *see Konkel v. Bob Evans Farms*, 165 F.3d 275, 282 n.5 (4th Cir. 1999) (concluding that the Fourth Circuit need not reach the claim that it was error to grant motion *in limine* excluding punitive damages "because, as is obvious, the facts in this case could not sustain an award for punitive damages" and the plaintiff "has proffered no evidence in this regard.").

This makes sense because the purpose of a motion in limine is to allow a court to rule on issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider. *United States v. Verges*, No. 1:13cr222 (JCC), 2014 WL 559573, *2 (E.D. Va. Feb. 12, 2014) (citing *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)). A ruling on whether plaintiffs can present evidence in support of a certain category of damages in *advance* of trial helps streamline the trial and avoid lengthy argument at trial about the availability of such damages. Plaintiffs' argument that the Court cannot consider these issues upon Defendants' motion is thus unsupported and without merit.

## II. IN THE ALTERNATIVE, BIFURCATION IS NECESSARY TO AVOID PREJUDICE TO DEFENDANTS

If the Court permits Plaintiffs to present evidence on compensatory and punitive damages, bifurcation of liability and damages is necessary to avoid the obvious prejudice to Defendants that will result from the presentation of that expected evidence. Fed. R. Civ. P 42(b) provides this Court with the discretion to order bifurcation of issues within a trial to avoid prejudice. Court have long-since recognized benefits of bifurcated trials, especially to avoid prejudice when punitive damages are sought. *E.g., Ellison v. Rock Hill Printing & Finishing Co.*, 64 F.R.D. 415, 418 (D.S.C. 1974) (noting as early as 1974 that "[t]he federal trial courts have increasingly realized the benefits of bifurcated trials.")*; see, e.g., Parsons v. First Invs. Corp.*, 122 F.3d 525, 529 (8th Cir. 1997) ("'We

realize that the general rule is that where a punitive damage award is the result of passion and prejudice, a new trial is required and that a remittitur is not an appropriate remedy,' because of the concern that the liability finding may have been compromised.").

In response, Plaintiffs argue that the advisory committee notes to Rule 42(b) suggest that bifurcation is the exception to the rule. The advisory committee notes say no such thing. Rather, in 1966, the Advisory Committee noted that at that time (over 50 years ago), while bifurcation was not "routinely ordered, it is *important* that it *be encouraged* where experience has demonstrated its worth." Fed. R. Civ. P. 42(b), 1966 Amendment Advisory Committee Notes (emphasis added). Since 1966, courts have followed that guidance, ordering bifurcated trials especially when punitive damages were claimed so that prejudice to a party could be avoided. *See, e.g., Shugart v. Cent. Rural Elec. Co-op.*, 110 F.3d 1501, 1504 (10th Cir. 1997) (holding that there was no error to bifurcate issue of punitive damages); *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 474 (5th Cir. 1986) (holding that bifurcating trial between punitive and actual damages was proper).

Plaintiffs claim that Defendants do not face prejudice from Plaintiffs' testimony because the testimony "will not be out of the ordinary", whatever that means. Opp. at 11. However, at the same time, Plaintiffs insist they are pursuing their punitive damages claim, and Plaintiffs state that part of their damages claim is their assertion that they, and their children, "experienced stress, loss of employment, educational disruption, and emotional distress." Opp. at 2. It is hard to believe how this proffered testimony regarding emotional distress suffered by Plaintiffs *and their children* will not be emotionally charged. Indeed, Defendants can proffer to the Court that the deposition testimony of Plaintiffs was very emotionally charged. Plaintiffs' argument to the contrary is simply unavailing.

Plaintiffs also mistakenly argue that if bifurcation is granted here, then bifurcation would be justified in all cases. Not so. Bifurcation is appropriate here based on Plaintiffs' pursuit of their punitive damages claim and their anticipated emotionally-charged testimony regarding their emotional distress and their children's emotional distress. Such testimony is likely to compromise any finding on liability.

Unconvincingly, Plaintiffs also argue that bifurcation will cause inconvenience to Plaintiffs. Opp. at 10-11. However, other than conclusory assertions of inconvenience, Plaintiffs do not explain the inconvenience that would result to Plaintiffs aside from the minimal inconvenience of being called as witnesses twice. The trial would not be bifurcated into two trials; only separated into two phases. The same jury will hear both phases. If the anticipated testimony of the plaintiffs is as short as Plaintiffs suggest, then the damages portion of the trial will also be extremely short and will not extend the length of the trial because the liability phase will be shortened. Plaintiffs also vaguely mention the inconvenience to other witnesses, but they don't say who or which witnesses will be inconvenienced by being called multiple times. This unsupported claim can be disregarded. A bifurcated damages phase also will not result in an inefficient trial. The trial will not be extended in length, and it will be heard by the same jury. If anything, a bifurcated damages phase will likely streamline the trial by streamlining the issues to be presented to the jury at the liability phase. Plaintiffs also do not dispute that should a jury find that Defendants did not violate the FHA, the Court will have avoided needless testimony regarding damages by separating the damages phase of the trial. Even if a jury finds that Defendants did violate the FHA (they should not), bifurcation will avoid the needless confusion of issues between liability and damages.

Finally, Plaintiffs claim that the evidence about liability and punitive damages are inextricable because the inquiry into "[w]hen, whether, and why Defendants had a valid business justification" is not only relevant to their punitive damages but also relevant at step 2 of the *Inclusive Communities*' framework. Opp. at 12. Plaintiffs misconstrue step 2 of the *Inclusive Communities*' framework. As stated in *Inclusive Communities*, after Plaintiffs prove a prima facie case of disparate impact, under step 2, Defendants must be given "leeway to state and explain the valid interest served by the policies." 576 U.S. at 541. The subjective motivations for the Policy are not relevant—only that the Policy serve valid interests. Otherwise, the FHA and *Inclusive Communities* would impermissibly confine housing providers to defending policies or practices strictly on grounds they were subjectively aware of when they adopted their policy—even if later, at the time the policy allegedly harmed a plaintiff, those providers had developed or learned of additional valid, non-discriminatory reasons for maintaining their policies. Accordingly, Defendants have moved to exclude argument questioning whether valid interests for Defendants' Policy were in place at the time of the Policy's adoption. Dkt. 342. Thus, the evidence to be presented at step 2—the valid interests served by the Policy—is not inextricably tied to Plaintiffs' punitive damages claim. Even if it was (and it is not), the majority of the prejudice that Defendants face from a non-bifurcated trial stems from Plaintiffs' emotionally charged testimony about the impact that the Policy had on them and their children.

In sum, Defendants face a substantial risk of prejudice if the evidence on liability and on Plaintiffs' damages claim is presented in one consolidated trial. By contrast, Plaintiffs face no prejudice from bifurcating the trial into a liability phase and a damages phase besides the minimal inconvenience to Plaintiffs from being called as witnesses twice. Here, bifurcation is necessary and appropriate so that any finding on liability is not compromised.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court to grant their Motion *in Limine* and enter an Order: (1) precluding Plaintiffs from presenting evidence or argument regarding their claim for compensatory or punitive damages; or (2) alternatively, bifurcating trial between liability and damages; and (3) for such other relief as is just and proper.

Dated: May 15, 2024

Respectfully submitted by,
**Waples Mobile Home Park Limited Partnership**
**Waples Project Limited Partnership**
**A.J. Dwoskin & Associates, Inc.**
*By Counsel*

*/s/ Brooks H. Spears*
Michael S. Dingman
Brooks H. Spears
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5050
mdingman@mcguirewoods.com
bspears@mcguirewoods.com

Grayson P. Hanes
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
Phone: (703) 218-2195
Fax: (703) 218-2160
grayson.hanes@ofplaw.com

### CERTIFICATE OF SERVICE

I certify that, on May 15, 2024, I caused the foregoing document to be filed via the Court's CM/ECF system, which will send notice to all counsel of record.

*/s/ Brooks H. Spears*
Brooks H. Spears