**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| ROSY GIRON DE REYES, *et al.*, | |
| Plaintiff, | |
| v. | Civil No.:  1:16cv563-LO-TCB |
| WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, *et al.*, | |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF THE ETHNICITY OF**
**INDIVIDUALS AT THE PARK ALLEGEDLY AFFECTED BY THE POLICY**

## INTRODUCTION

Plaintiffs do not dispute that the evidence of the ethnicity of individuals allegedly affected by Defendants' Policy comes *only* from Mr. Ramkumar's declaration (Dkt. 157-9). Nor do Plaintiffs dispute that they injected Mr. Ramkumar's inadmissible testimony into these proceedings prior to the appeal. Instead, they argue that Mr. Ramkumar's declaration contains purported summary charts, which are admissible under Fed. R. Evid. 1006, and not expert testimony as Defendants have asserted. This Court, however, need only review the report of *Plaintiffs'* statistical expert, Professor Clark, to determine that Plaintiffs' claims are not credible. Professor Clark provided an estimate that 60% of the residents of Defendants' Park were Latino based on a "surname analysis"—his words, not Defendants'. According to Professor Clark, to reach this estimate, he compared names on a list to Census data using a specialized "approach" and "techniques" as described in a Census working paper. It is therefore evident from Plaintiffs' own expert that a surname analysis—the comparison of surnames to Census data to determine the statistical likelihood that the individual is of a certain ethnicity—is the province of expert testimony. And, that is exactly what Mr. Ramkumar did.

It is not only Professor Clark's report that informs this conclusion; the cases Defendants previously cited also support this conclusion. They hold that the comparison of surnames to statistical data to determine the statistical likelihood that the surname belongs to an individual of a certain race or ethnicity is the province of expert testimony. Plaintiffs' attempts to distinguish these cases are unavailing.

Even under Plaintiffs' faulty Rule 1006 theory, the charts contained in Mr. Ramkumar's declaration are not admissible for many reasons. They are not listed on Plaintiffs' pretrial exhibit list and Plaintiffs have not even moved to supplement their exhibit list with the specific charts

contained on Mr. Ramkumar's declaration.[1] The analysis of Plaintiffs' Rule 1006 theory can stop right there. Even setting that flaw aside, the purported summary charts are not admissible because the underlying Census document is not admissible—that document contains a methodology and conclusions that are the province of expert testimony. In fact, the purported summary charts are not summaries at all. They do not accurately serve as surrogates for the Census document or Defendants' documents. They are selective, skewed charts that take only certain names from over 100,000 lines on the Census document—names that match up to names on certain of Defendants' lists. These skewed charts are thus written argument from counsel not properly admitted under Rule 1006. And, a witness who creates a summary chart must be available for examination, but Mr. Ramkumar was never made available for examination nor could he have been as he was former counsel for Plaintiffs.

If there was any doubt about how tenuous Plaintiffs' position is, in conjunction with their opposition to the instant motion, Plaintiffs moved to supplement their exhibit and witness lists, which were filed more than six months ago with a *new* purported summary chart and the Census document and even a new witness who created that new purported summary chart. (Dkts. 372, 373.)  But that cynical motion should be rejected, as Plaintiffs should not be permitted to supplement their pre-trial disclosures in the face of the instant motion (and after Defendants filed their motions in limine) to cure their failure to provide expert testimony on the surname analyses at issue.[2] Even still, the supplementation of Plaintiffs' pretrial disclosures will not save Plaintiffs' argument. Expert testimony is required on a surname analysis. A jury cannot compare surnames

---

[1]     Instead, Plaintiffs' counsel's paralegal created a *new* chart and Plaintiffs have moved to supplement their pretrial exhibit list with that new chart and the Census document containing data on the likelihood that a surname belongs to a certain ethnicity. *Compare* Dkt. 373-3 *with* Dkt. 157-9.

[2]     Defendants incorporate by reference their opposition to that motion (Dkt. 391.)

to data that assigns a certain statistical likelihood of an ethnicity to that surname and reach their own statistical conclusion as to the ethnicity of that specific individual.

If the surname analysis contained in Mr. Ramkumar's declaration is excluded (it should be), then Plaintiffs do not have *any* evidence that certain persons on lists produced by Defendants are Hispanic/Latino.[3] The lists themselves do not identify tenants as Latino or as any other ethnicity. There exists a substantial danger of unfair prejudice if a jury reviews these lists and concludes that persons with Spanish surnames are in fact Latino when Plaintiffs lack *any* such evidence. By contrast, the lists have little probative value except to show that the Defendants enforced the Policy—but Defendants do not dispute that the Policy exists and that they enforced it. Plaintiffs themselves can provide that testimony. As Plaintiffs openly admit, lacking evidence of other tenants' ethnicities, they seek to cross-examine Defendants' witnesses or elicit testimony from Plaintiffs themselves on the names on these lists by asking who *appeared* to be Latino or who spoke Spanish. That testimony will improperly suggest who is Latino, and Rule 403 operates precisely to guard against this type of unfair prejudice.  The lists therefore should be excluded if Mr. Ramkumar's declaration is excluded.

## **ARGUMENT**

### I.   **MR. RAMKUMAR'S DECLARATION CONTAINS A SURNAME ANALYSIS, NOT PURPORTED SUMMARY CHARTS**

#### A.     **MR. RAMKUMAR'S DECLARATION CONTAINS EXPERT TESTIMONY**

Plaintiffs argue that Mr. Ramkumar's "charts" are just summary charts of names on Defendants' documents combined with public census data; therefore, these charts are not opinion testimony that must be offered by an expert witness. Opp. at 11 (Dkt. 478). Instead, Plaintiffs assert

---

[3]      For the purposes of this motion, these terms are used interchangeably.

that these charts are purported summary charts that are admissible under Federal Rule of Evidence 1006. *Id.* This argument falls short in multiple ways.

First, these charts are not simply "summary" charts as they provide a *statistical conclusion* as to the statistical likelihood that a certain name belongs to a Latino individual even though Plaintiffs present no evidence that the names on Defendants' documents actually belong to Latino individuals. Mr. Ramkumar's declaration contains the charts, which make the comparison between the names on Defendants' documents and the names on Census data to assign the likelihood that the name belongs to a person of Latino ethnicity *from* the Census data *to* the actual person listed on Defendants' documents. This is exactly what a surname analysis is and the resulting *statistical* conclusions—that the surnames on Defendants' lists would belong to Latino individuals according to a *statistical* percentage—is precisely the type of opinion evidence that must be offered by an expert.

The expert report offered by Plaintiffs' own expert, Professor Clark, completely undermines Plaintiffs' argument and demonstrates that Plaintiffs' position—that Mr. Ramkumar's declaration merely contains summary charts—is simply not credible. On page 5 of Professor Clark's report, he estimated the residents of the Park to be 60 percent Hispanic/Latino based on a "surname analysis". He stated that he arrived at this estimate through his "surname analysis" which involved his "evaluat[ion] [of] the names on [a resident list provided by counsel] against the Census list of Hispanic Surnames." Professor Clark stated that this surname analysis was based on a specialized "approach and techniques" that are discussed in a certain Census technical working paper. But Professor Clark never performed the same surname analysis on any lists of tenants purportedly affected by the Policy. Now, Plaintiffs, incredibly, tell this Court that although they believed (and continue to believe) that such a surname analysis is the province of Professor Clark's

expert testimony, it is not actually the province of expert testimony when Mr. Ramkumar presented the exact same analysis on different lists. Defendants struggle to see how Plaintiffs can present this position to the Court in good faith.

Not only does Plaintiffs' own expert report completely undermine Plaintiffs' position, but Plaintiffs are wrong on the case law as their attempts to distinguish Defendants' cases fall flat. Plaintiffs claim that Defendants' cases, which found surname analyses to be the province of expert testimony, are distinguishable because, unlike those cases, Plaintiffs never described the creation of Mr. Ramkumar's charts as a "surname analysis" and Mr. Ramkumar never "claimed to do any analysis whatsoever". Opp. at 14. This argument is built on a mischaracterization of what Mr. Ramkumar actually did. Their own expert, Professor Clark, described the *exact comparison process that Mr. Ramkumar performed* as a surname analysis that required a specialized "approach" and "techniques" to perform. This process undertaken by Mr. Ramkumar is also described as a surname analysis by the case law. *United States v. Johnson*, 122 F. Supp. 3d 272, 307 (M.D.N.C. 2015) ("The basic assumption of surname analysis for this case is that individuals with particular surnames 'tend heavily to be Hispanic.'") (noting as part of this surname analysis, the statistical expert took names from forms and compared those names to "probabilities developed by the U.S. Census Bureau that estimated whether a person with a given surname would self-identify as Hispanic.").

Mr. Ramkumar clearly performed a surname analysis, and the cases Defendants cited demonstrate that a surname analysis is the province of expert testimony. The lay witness in *Harvick*, a Fair Housing Act case, attempted to present the exact same conclusions that Plaintiffs attempt to present through Mr. Ramkumar's charts. *Harvick v. Oak Hammock Pres. Cmty. Owners Ass'n Inc.*, No. 614CV937ORL40GJK, 2016 WL 362434, at *3 (M.D. Fla. Jan. 29, 2016). The lay

witness compared names on a list of homeowners to an internet search that showed that twenty-two of the surnames on the list "were of an Asian derivative." *Id*. at *2-3. The Court took issue with the reliability of the internet research performed by the lay witness and also found that the lay witness had no knowledge that the names actually belonged to Asian individuals, but importantly, the Court concluded that the presentation of the witness's analysis—the comparison of names to data (however unreliable) showing that the names were of an Asian derivative—required reliable and qualified expert testimony that must fit into the contours of Federal Rule of Evidence 702. *Id*.

Likewise, in *Perez v. City of Batavia*, plaintiffs' counsel's employee attempted to present a declaration compiling statistics showing that tickets were issued to African-American and Hispanic motorists more frequently in a certain area. *Perez v. City of Batavia*, No. 98 C 8226, 2004 WL 2967153, at *7 (N.D. Ill. Nov. 23, 2004). As part of her declaration, she assigned Hispanic ethnicity to certain names based on a study that showed the likelihood of a person with a "Heavily Hispanic Surname" to be Hispanic was 75%. *Id*. at *8. Although the district court found that there were other serious methodological flaws with the proposed testimony, the district court concluded that the analysis and conclusions that the plaintiffs sought to admit through this declaration, *including the surname analysis*, must meet the requirements of Rule 702. *Id*. at *8-9; *see United States v. Alamosa Cty., Colo.*, 306 F. Supp. 2d 1016, 1022 (D. Colo. 2004) (noting that experts presented testimony regarding surname analysis to identify which voters were likely Hispanic and that the surname analysis had omission and commission error rates).

Here, Plaintiffs do not even attempt to present any expert witness (besides potentially Mr. Ramkumar and they do not argue he can testify), or even any lay witness, to offer testimony on the proposed surname analysis, they instead suggest that they can present a surname analysis by

using only Mr. Ramkumar's charts (charts that were not even identified as trial exhibits). There is no support for such a contention, and Plaintiffs unsurprisingly do not direct Defendants or this Court to any law in support of that claim.

Plaintiffs also attempt to dismiss the cases cited by Defendants which explain the serious problems with using surname data to conclude that a person with a specific surname is actually Hispanic. Opp. at 14. Plaintiffs again argue these cases are inapposite because Mr. Ramkumar did not actually perform a surname analysis. As noted above, however, that is exactly what Mr. Ramkumar did when he assigned the Census percentage statistics to the names on lists produced by Defendants. The cases cited by Defendants explain that such comparisons have serious reliability problems because non-Hispanic individuals can be mistakenly identified as Hispanic if they have a high-likelihood Spanish surname, and Hispanic individuals can be mistakenly identified as non-Hispanic if they lack a Spanish surname. One example demonstrates the problem with Mr. Ramkumar's surname analysis: a non-Hispanic woman can marry a Hispanic man and adopt his Spanish surname. If such an individual showed up on lists produced by Defendants, Mr. Ramkumar's comparison could conclude that this woman was statistically likely to be Hispanic based on Census data even though she was not actually Hispanic. Errors such as these are precisely why multiple courts have found "Spanish surname analysis" to be highly problematic. *E.g.*, *Rodriguez v. Bexar Cty., Tex.*, 385 F.3d 853, 867 (5th Cir. 2004). Accordingly, at a minimum, expert testimony is required on any surname analysis—the credibility of which Courts have clearly called in question.

Mr. Ramkumar, however, is not an expert qualified to present testimony regarding surname analyses and he is not available to be examined on his charts. Plaintiffs query what the examination of Mr. Ramkumar would be. Among other inquiries, Defendants could have examined Mr.

Ramkumar on his qualifications to provide a surname analysis, the methodology used by the
Census Bureau to assign percentages of Hispanic ethnicity to each surname, if there were any error
rates in the Census Bureau's methodology, if he had any personal knowledge of whether the
individuals on Defendants' lists were actually Hispanic, and what error rate he would assume
applied, if any, when he applied the Census Bureau's percentages to the names on Defendants'
documents. Mr. Ramkumar is not available to be examined and Plaintiffs do not present any expert
to be examined on those topics. They simply hope the jury can perform the surname analysis using
the Census document (which was not identified as a trial exhibit) and Defendants' lists by using
Mr. Ramkumar's charts, which were not even identified as trial exhibits. Plaintiffs' clear attempt
to evade the requirements of Fed. R. Evid. 702 should be rejected.

## B. MR. RAMKUMAR'S DECLARATION DOES NOT CONTAIN CHARTS ADMISSIBLE UNDER RULE 1006

Plaintiffs also argue that the creation of summary charts do not require an expert. Opp. at.
13-14. This argument rests on a faulty premise. As sated above, Mr. Ramkumar's purported
summary charts present a surname analysis; they are not summary charts. And, the cases Plaintiffs
cite in support of this argument do not involve surname analyses presented as purported summary
charts. Opp. at 13 (citing *United States v. Milkiewicz*, 470 F.3d 390, 401 (1st Cir. 2006) and *Colon-
Fontanez v. Municipality of San Juan*, 660 F.3d 17, 30 (1st Cir. 2011)). Setting aside the fact that
Mr. Ramkumar's charts comprise expert testimony, these charts are *not* summary charts admissible
under Rule 1006 as Plaintiffs claim. But the Court need not reach such an analysis because Mr.
Ramkumar's charts were never listed on Plaintiffs' pre-trial exhibit list in their pretrial disclosures.
*See* Dkt. 312. Nor was the Census document. *Id.* Accordingly, Mr. Ramkumar's charts are not
admissible as exhibits regardless of whether Plaintiffs contend they are admissible as purported
summary charts.

Nonetheless, even if these charts were listed as exhibits (they were not), for these purported charts to be admissible, the underlying Census document must be admissible and it is not. *Jade Trading, LLC v. United States*, 67 Fed. Cl. 608, 613-14 (2005) (citation omitted); *United States v. Simmons*, No. 18-4875, 2021 WL 2176575, at *11 (4th Cir. May 28, 2021) ("Rule 1006 permits summary charts to be admitted into evidence "as a surrogate for underlying voluminous records *that would otherwise be admissible into evidence*.") (emphasis added). The underlying Census document cannot be used to determine the likelihood that the names on certain lists belong to individuals of Hispanic/Latino ethnicity.[4] As stated above, expert testimony is required on surname analyses. Moreover, these purported summary charts do not accurately summarize the contents of the Census document. *Jade Trading*, 67 Fed. Cl. at 613-14; *United States v. Janati*, 374 F.3d 263, 272-73 (4th Cir. 2004) ("To comply with this Rule, therefore, a chart summarizing evidence must be an *accurate* compilation of the voluminous records sought to be summarized."). A summary chart is supposed to serve as a "surrogate" for the Census document. *United States v. Oloyede*, 933 F.3d 302, 310 (4th Cir. 2019), *cert. denied sub nom.*, 140 S. Ct. 1212 (2020), 140 S. Ct. 1213 (2020), and 140 S. Ct. 2554 (2020) (citing *Janati*, 374 F.3d at 272).

---

[4]    Plaintiffs claim the Census document is admissible under Fed. R. Evid. 803(8) and 902(5) and cite *E.E.O.C. v. E.I. DuPont de Nemours & Co.*, 2004 WL 2347559, at *1-2 (E.D. La. Oct. 18, 2004) for that proposition. Opp. at 13. *DuPont*, however, is inapposite because the Census table deemed admissible under those rules was being used for the purpose of showing a simple figure—that 733,000 employees who required ambulatory aids were employed in 1997. 2004 WL 2347559, at *1-2. There was no dispute there over whether that table was being used to replace expert testimony or statistical conclusions that require expert testimony. Indeed, Plaintiffs are not arguing that the Census document is admissible to show a simple number, such as the number of Hispanics residing in a certain area. Rather, Plaintiffs are attempting to apply the statistical percentage likelihood that certain surnames belong to Hispanic/Latino individuals from the Census document to match names on lists produced by Defendants. The Census document is inadmissible for those purposes as expert testimony is required to perform that surname analysis.

Here, Mr. Ramkumar's charts do not serve as a "surrogate"; they instead are a cherry-picked selection of names from the underlying Census document; matched up with names on the lists produced by Defendants. The Fourth Circuit has noted that a selective chart such as this is not proper under Rule 1006. *Id.*[5] Also, these charts were prepared by counsel. Therefore, they are inadmissible written argument—designed to replace Plaintiffs' failure to designate any expert on this topic—which is not properly admitted under Rule 1006. *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997) ("We therefore believe that Fed .R. Evid. 1006 does not allow for the admission of a summary such as the one contested by Mrs. Deluca, that is, one that was prepared by a lawyer trying the case and that restates and distills other properly admitted exhibits. In fact, we believe that such a summary is a written argument."). Finally, under Rule 1006, any purported summary, must "have been prepared by a witness available for cross-examination, not by the lawyers trying the case." *Id.* But, here Mr. Ramkumar prepared the charts, not a witness who Defendants could have examined. And, Mr. Ramkumar, as counsel, was not listed as a witness on Plaintiffs' pretrial witness list. Accordingly, Plaintiffs' argument that Mr. Ramkumar's charts are summary charts which are admissible under Rule 1006 is meritless.

## II.    IF MR. RAMKUMAR'S SURNAME ANALYSIS IS EXCLUDED (IT SHOULD), THE CHARTS THEMSELVES SHOULD NOT BE SHOWN TO THE JURY TO IMPLY THAT CERTAIN TENANTS WITH SPANISH SURNAMES ARE ACTUALLY LATINO

If Mr. Ramkumar's surname analysis is excluded (it should be), then Plaintiffs do not have any evidence that certain persons on those lists are Hispanic/Latino. The lists themselves do not

---

[5]    Although the Fourth Circuit held in *Oloyede* that under the circumstances presented there, it was harmless error to have introduced into evidence the selective and skewed purported summary charts because the charts could have been shown to the jury under Rule 611(a), there is no doubt that the Fourth Circuit held there that it is error to introduce into evidence selective and skewed charts that do not act as a surrogate of the underlying documents under Rule 1006. 933 F.3d at 310-11.

identify tenants as Latino or as any other ethnicity. Plaintiffs do not present any expert testimony on a surname analysis of the ethnicity of individuals on lists produced by Defendants. Plaintiffs therefore should not be permitted to present these lists to the jury and argue that the jury can reach their own assumptions about the ethnicity of the names on the lists. There exists a substantial danger of unfair prejudice if a jury reviews a list and concludes that a person or persons with a Spanish surname is in fact Latino when Plaintiffs will not have presented *any* such evidence.

In response, Plaintiffs argue that the lists have probative value because the Fourth Circuit assigned it importance. Opp. at 7. But this argument is circular. Plaintiffs improperly injected the evidence of the ethnicity of the tenants allegedly affected by the Policy into the proceedings *through Mr. Ramkumar's inadmissible declaration*. (Dkt 157-9.) Plaintiffs even attached the declaration to a reply leaving Defendants without a chance to respond. (*Id.*) Then, Plaintiffs relied on the inadmissible declaration in the appeal. Now, after the Fourth Circuit cited the inadmissible evidence in dicta[6], Plaintiffs argue the evidence is in fact admissible because the Fourth Circuit discussed the inadmissible evidence that they improperly injected into these proceedings. This is nonsense. Mr. Ramkumar's declaration contains inadmissible expert testimony, and the Fourth Circuit's discussion of inadmissible testimony does not make it admissible.

It is evident that Plaintiffs want to put these lists in front of the jury so that the jury can reach improper conclusions about the ethnicity of the individuals on the lists who have Spanish surnames. But, it was Plaintiffs' burden to present evidence on those individuals' ethnicity, and

---

[6]     The Fourth Circuit was reviewing the dismissal of Plaintiffs' disparate impact claim and in reversing this Court's decision, it reinstated Plaintiffs' disparate impact claim—it did not rule on the parties' summary judgment motions. *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 428 (4th Cir. 2018) ("At the motion to dismiss stage, we must accept all well-pled facts as true and draw all reasonable inferences in favor of the plaintiff. Therefore, accepting these statistics as true, we conclude that Plaintiffs sufficiently alleged a prima facie case of disparate impact.") (citation omitted).

they failed to do so. The minimal probative value of demonstrating the application of the Policy—and Defendants do not dispute the existence of the Policy or its application on tenants—is substantially outweighed by the danger of unfair prejudice to Defendants by having the jury reach improper conclusions about the ethnicity of tenants with Spanish surnames.

Plaintiffs also argue that ethnicity is the basis of this case. That is true. But, Plaintiffs—not Defendants—bear the burden of presenting their case. Plaintiffs bear the burden of providing evidence on the ethnicity of the tenants that they claim are allegedly affected by the Policy. They cannot simply show lists of persons with Spanish surnames and ask the jury to assume they are Latino. Nor can they cross-examine Defendants' employees about who appeared to be Latino or who can speak Spanish in order to improperly suggest to the jury that certain persons are in fact Latino. Having failed to provide evidence on these tenants' ethnicities, these lists must be excluded because their minimal probative value is outweighed by the danger of unfair prejudice to Defendants.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court to grant their Motion and enter an Order:

(1) precluding Plaintiffs from presenting any evidence or argument as to the ethnicity of tenants or individuals at the Park who were allegedly affected by the Policy, including evidence or argument as to the number and/or percentage of individuals who are Latino who were allegedly affected by the Policy;

(2) precluding Plaintiffs from introducing Exhibits 1-7 attached to Defendants' Motion, which include lists of individuals allegedly affected by Defendants' policies;

(4) precluding Plaintiffs from making any argument to the aforementioned categories of

evidence; and

(5) for such other relief as is just and proper.

Dated: May 15, 2024

Respectfully submitted by,
**Waples Mobile Home Park Limited Partnership**
**Waples Project Limited Partnership**
**A.J. Dwoskin & Associates, Inc.**
*By Counsel*

*/s/ Brooks H. Spears*
Michael S. Dingman
Brooks H. Spears
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5050
mdingman@mcguirewoods.com
bspears@mcguirewoods.com

Grayson P. Hanes
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
Phone: (703) 218-2195
Fax: (703) 218-2160
grayson.hanes@ofplaw.com

## CERTIFICATE OF SERVICE

I certify that, on May 15, 2024, I caused the foregoing document to be filed via the Court's

CM/ECF system, which will send notice to all counsel of record.

*/s/ Brooks H. Spears*
Brooks H. Spears