**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

ROSY GIRON DE REYES; JOSE
DAGOBERTO REYES; FELIX ALEXIS
BOLANOS; RUTH RIVAS; YOVANA
JALDIN SOLIS; ESTEBAN RUBEN MOYA
YRAPURA; ROSA ELENA AMAYA; and
HERBERT DAVID SARAVIA CRUZ,

       *Plaintiffs*,

    vs.

WAPLES MOBILE HOME PARK LIMITED
PARTNERSHIP; WAPLES PROJECT
LIMITED PARTNERSHIP; and A.J.
DWOSKIN & ASSOCIATES, INC.,

       *Defendants*.

Case No. 1:16-cv-00563 (PTG/WBP)

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTIONS *IN LIMINE*

Plaintiffs Rosy Giron de Reyes, Jose Dagoberto Reyes, Felix Alexis Bolaños, Ruth Rivas, Yovana Jaldin Solis, Esteban Ruben Moya Yrapura, Rosa Elena Amaya, and Herbert David Saravia Cruz ("Plaintiffs") submit the following reply memorandum of law in support of their motions *in limine* (ECF 454), in accordance with the Court's March 11, 2024 Order (ECF 451).

## INTRODUCTION

Defendants' Response to Plaintiffs' Motions *in Limine* ("Defendants' Response") (ECF 474) provides no good reason to deny any of Plaintiffs' four motions *in limine*. More than half of Defendants' Response does not even address Plaintiffs' evidentiary motions; instead, it makes inapposite and improper arguments about why Defendants believe they should win at trial. Even if these arguments were germane to motions *in limine* briefing (they are not), the arguments only underscore why Plaintiffs' evidentiary motions should be granted and Defendants' motions denied.

When Defendants finally get to Plaintiffs' motions on page six of their ten-page brief, they do not credibly contest any of the motions; rather, Defendants present cursory and erroneous arguments that provide no valid basis for admitting the evidence Plaintiffs seek to exclude.

## ARGUMENT

### I.    THE FIRST HALF OF DEFENDANTS' RESPONSE IS NONRESPONSIVE AND SHOULD BE DISREGARDED.

The first half of Defendants' Response fails to address Plaintiffs' motions *in limine* whatsoever. ECF 474 at 1-6. It does not oppose or even mention Plaintiffs' evidentiary motions. Nor does it say anything about the evidence at issue in Plaintiffs' motions or the Federal Rules of Evidence. Instead, Defendants purport to "provide[] important context for Plaintiffs' motions" by arguing why they should prevail at trial under the three-part burden-shifting framework approved for disparate impact claims in *Texas Dept. of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) ("*Inclusive Communities*"). *See* ECF 474 at 2-4 (brief section titled "Plaintiffs Cannot Meet Their Step One Burden"); *id.* at 4-5 ("Defendants Can Easily Satisfy Their Burden at Step Two"); *id.* at 5-6 ("Plaintiffs Cannot Satisfy Their Step Three Burden"). This is improper merits briefing dressed up as a motions *in limine* response. It should be wholly disregarded.

Merits arguments that say nothing about Plaintiffs' motions *in limine* have no place in an evidentiary response. "The purpose of a motion *in limine* is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *United States v. Verges*, No. 1:13cr222 (JCC), 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). "In light of their limited purpose, motions *in limine* should not be used to resolve factual disputes." *Ihnken v. Jenkins*, Civ. No. CCB-11-3508, 2015 WL 590562, at *1 (D. Md. Feb. 11, 2015) (internal quotations omitted). The Court's role at the motions

2

*in limine* stage "is not to weigh in on the merits, or to assess whether expert opinions are correct, incorrect, or adequately supported by the evidence." *Vertellus Holdings LLC v. W.R. Grace & Co. Conn.*, Civ. No. SAG-18-3298, 2022 WL 2805939, at *6 (D. Md. July 18, 2022). Sneaking in merits arguments "*in limine* clothing shortly before trial, after the deadline for orderly filing of summary judgment motions has passed"—as Defendants have done here—"is a practice strongly to be discouraged." *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987).

Defendants manifestly attempt improper and nonresponsive merits arguments in the first half of the Response, as they principally argue that "*Plaintiffs* have substantial holes in their evidence." ECF 474 at 3 (emphasis added); *see generally id.* at 2-5. But of course an opposition to Plaintiffs' motions *in limine* (which motions address *Defendants'* evidence) should address the admissibility of *Defendants'* evidence, not the sufficiency or quality of Plaintiffs' evidence. And as for Defendants' evidence, the opposition should address evidence at issue in Plaintiffs' evidentiary motions. The first half of Defendants' Response fails to address any at-issue evidence.

As to Step One, Defendants argue about the evidence to be presented at trial by Plaintiffs' demographics expert, UCLA professor William Clark. ECF 474 at 2-4. Defendants omit that the Court already denied Defendants' motion to strike Dr. Clark's opinions and testimony, *see* ECF 311, and no party filed a motion *in limine* relating to Dr. Clark. In addition, despite harping on the purported "holes" in Plaintiffs' evidence, Defendants fail to mention altogether Plaintiffs' additional Step One evidence that the Fourth Circuit noted was even "stronger statistical evidence"

3

than that presented by Dr. Clark. *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 433 n.11 (4th Cir. 2018) ("*Reyes I*").[1]

As to Step Two, Defendants falsely assert that it is "undisputed" that Defendants enforced their discriminatory Policy "so that [tenants and prospective tenants'] names, birth dates, and addresses could be used to obtain accurate criminal background checks." ECF 474 at 4-5. In fact, Defendants' reasons for enforcing the Policy are and have always been disputed. But so long as Defendants' witnesses have personal knowledge, ECF 455 at 11, their testimony about criminal background checks is not a subject of Plaintiffs' motions in *limine*.

As to Step Three, Defendants argue that Plaintiffs "cannot meet this burden" of showing "an alternative means by which Defendants could have verified the female Plaintiffs' names, birth dates, and addresses with equal accuracy and confidence." ECF 474 at 5. But Defendants leave out that they have filed their own motions *in limine* to exclude this very evidence. *See* ECF 456 (Defendants' motion to exclude the testimony and opinions of Plaintiffs' immigration law expert Ivan Yacub, who will testify about the widespread use of Individual Taxpayer Identification Numbers in background checks for undocumented individuals); ECF 465 (Defendants' motion to exclude lease materials, including Plaintiffs' documentary and testimonial evidence of having obtained successful background checks through less discriminatory means).

Because the first half of Defendants' Response is manifestly not an "[o]pposition[] to any motion *in limine*," ECF 451 at 1, it violates the Court's Scheduling Order and thus should not be considered. But if the Court does consider Defendants' improper arguments, they only underscore

---

[1] Defendants are clearly aware of this evidence, because they filed a motion *in limine* to exclude it. *See* Defs.' Mot. *in Limine* to Exclude Evidence of the Ethnicity of Individuals at the Park Allegedly Affected by the Policy (ECF 462).

why *Defendants*' own motions *in limine* to exclude highly relevant evidence should be denied.

These arguments have no bearing on Plaintiffs' motions.

**II.    DEFENDANTS' ARGUMENTS FOR DENYING
       PLAINTIFFS' MOTIONS *IN LIMINE* FAIL.**

When Defendants finally get around to opposing Plaintiffs' four motions *in limine* in the

latter half of their brief (ECF 474 at 6-10), their limited arguments fail.

**A.    The Court Should Preclude Defendants from Introducing Evidence of
       "Business Necessity" at Step Two Unless the Evidence Relates to the Actual,
       Contemporaneous Reasons for the Policy.**

To meet their Step Two burden, Defendants must produce admissible evidence of their

actual, contemporaneous reasons for enforcing the Policy against the Plaintiffs, and may not rely

on speculation or rationales created after the Policy was enforced. *See* ECF 455 at 7-11. Defendants

take issue with that point in two ways: first, by arguing that it is not a proper subject for a motion

*in limine*, and second, by arguing that they need not produce "'contemporaneous' evidence." ECF

474 at 6-8. Neither argument has merit.

**1.    Both Parties Properly Sought To Resolve This Issue
        Through a Motion *in Limine*.**

Defendants' first argument is puzzling, because they also submitted their own motion *in

limine* to address the same issue. Defendants' Motion *in Limine* to Exclude Argument Questioning

Whether Valid Interests for the Policy Were in Place at the Time of the Policy's Adoption, ECF

458, presents a mirror image of the argument presented here by Plaintiffs. Defendants claim that

"[a]rguments as to whether reasons for the Policy are post hoc justifications or whether reasons

motivated the Policy are not relevant to a disparate impact claim[,]" ECF 459 at 5, and they seek

an order preventing Plaintiffs from "cross-examin[ing] Defendants' witnesses about whether

interests served by the Policy motivated the adoption of the Policy," ECF 459 at 3-4; *see also* ECF

458-1 (proposed order). Plaintiffs argue that "Defendants must produce admissible evidence of

5

their actual reasons for enforcing the Policy against the Plaintiffs to meet their Step Two burden," ECF 455 at 10, and they seek an order declaring that "speculation" and "justifications created after the Policy was enforced against the Plaintiffs" are not admissible, ECF 454-1 at 1 (proposed order). If Defendants' presentation of the issue is appropriate for a motion *in limine*, then Plaintiffs' presentation must be appropriate, too.

In any event, a motion *in limine* is the proper manner to address Defendants' Step Two burden because the focus is on *evidence*: what will be required ("Evidence concerning the reasons for the Policy must have a proper foundation in a witness's actual knowledge," ECF 454-1 at 1), and what will not be allowed ("Evidence involving speculation about the reasons for the Policy, or justifications created after the Policy was enforced against the Plaintiffs, are not admissible," *id.*). *See Verges*, 2014 WL 559573, at *2 ("The purpose of a motion *in limine* is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider."). Given the complexity of the *Inclusive Communities* burden-shifting framework, clarity as to what will be required of Defendants as they present Step Two evidence will "serve [an] important gatekeeping function." *Id.*

Plaintiffs would not oppose addressing Defendants' burden at Step Two through other means – although it is not completely clear what those other means might be (and Defendants do not offer a suggestion). *See Nat. Res. Def. Council v. Rodgers*, No. CIV-S-88-1658 LKK, 2005 WL 1388671, at *1 n.2 (E.D. Cal. June 9, 2005) (addressing motion *in limine* as a motion for partial summary judgment which "causes no problem as the parties have adequately briefed the merits of the two legal questions posed"). Plaintiffs ask only that the issue be resolved as promptly as possible, so the parties can appropriately plan for trial.

2.    Defendants Must Produce Admissible Evidence of
Their Actual Reasons for Enforcing the Policy.

Defendants focus entirely on the word "contemporaneous," ECF 474 at 7-8, but that focus avoids the real point: to meet their Step Two burden, Defendants must produce admissible evidence about what *actually motivated* them to enforce the Policy; they cannot rely on justifications concocted after the fact.

The Fourth Circuit made that point clear by comparing one of Defendants' asserted Step Two justifications – avoiding liability for illegal "harboring" – against the actions they took while applying the Policy to the Plaintiffs. *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 279-80 (4th Cir. 2024) ("*Reyes II*"). That comparison made it patently clear that Defendants were not in fact motivated by a concern with harboring:

> If Waples was truly concerned about being prosecuted for housing undocumented immigrants, its expected course would be to remove such tenants from the Park as quickly as possible. But Waples did not evict a single person who failed to comply with the Policy from the Park. Instead, Waples increased the rent payments that noncompliant tenants were charged every month. That meant that while Waples was representing that it could not house undocumented immigrants without facing criminal penalties, it was knowingly housing such immigrants and charging them a premium to stay.

*Id.* at 279. For that reason,

> [Defendants] cannot have met [their] burden to establish that the Policy served a legitimate interest. Proof schemes depend on record evidence and the record here falls short of anything approaching business necessity.

*Id.* at 280.

In other words, the question to be resolved at Step Two is *not* "Can counsel concoct a justification after the fact that could meet the 'business necessity' standard?" Instead, the question is "Does Defendants' *actual* motivation meet the 'business necessity' standard?" For that reason,

Defendants must present admissible evidence of their *actual reasons* for enforcing the Policy.[2]

### B.    The Court Should Preclude Defendants From Eliciting Evidence Regarding Alleged "Business Necessities" Arising From Inapplicable Statutes.

Defendants state that they no longer are "relying on the anti-harboring statute, the PRWORA, or any mistake of law as a justification for" their discriminatory Policy, and thus Plaintiffs' motion to exclude evidence and arguments on those subjects is "moot." ECF 474 at 8-9. Notwithstanding Defendants' new representations in their Response, Plaintiffs request that the Court grant their unopposed motion. While Plaintiffs appreciate that Defendants finally purport to abandon these long-held defenses, the anti-harboring argument in particular has consumed years of litigation.[3] Given Defendants' dogged adherence to these faulty defenses over the years, Plaintiffs request the clarity and finality of this Court granting their unopposed motion and jury instruction as proposed.

---

[2] Defendants assert here (ECF 474 at 8) and in their mirror-image motion *in limine* (ECF 459 at 7-8) that they will present evidence of Defendants' actual motivations for the Policy. So long as the proffered evidence has "a proper foundation in a witness's actual knowledge," ECF 454-1 at 1 (Plaintiffs' proposed order) and is otherwise proper, Plaintiffs would not object. However, the document Defendants cited in this recent filing (WAPLES00001503) does not connect the background check to the Policy of requiring evidence of immigration status; it merely states that Defendants decided to begin criminal screening of adult residents.

[3] Defendants pressed the defense—which the Fourth Circuit has now explicitly rejected and even suggested was "a phony" in *Reyes II*, 91 F.4th at 277-79—after the Fourth Circuit implicitly rejected it in *Reyes I, see* ECF 260 at 17-20. Judge Ellis denied Defendants' motion for summary judgment, ECF 283, and then denied their motion for reconsideration, where Defendants specifically requested a ruling on their anti-harboring argument, ECF 285 at 8-9; ECF 298 at 3-4. Nevertheless, the argument was resurrected before Judge O'Grady, and he erroneously awarded summary judgment after supplemental briefing devoted to the defense, *see* ECF 413 at 2; ECF 440 at 11-15. Even as Defendants now assure Plaintiffs they are "not relying on the anti-harboring statute, the PRWORA, or any mistake of law," they are pursuing their second petition for a writ of certiorari to the U.S. Supreme Court (their first, after *Reyes I*, was denied).

**C.      Evidence of Defendants' Relationship With or Views Toward Immigrants and the Latino Community Should Be Excluded.**

Defendants admit that they are offering evidence of Defendants' lack of prejudice, FHA trainings, and Spanish-language advertisements only for the purpose of disproving discriminatory intent. ECF 474 at 9. In so doing, Defendants ignore the fact that a lack of animus "does not redeem" policies that have a discriminatory effect. *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971). Stated differently: disproving discriminatory intent does not make it "more or less probable" that the Policy had a discriminatory impact, so evidence of discriminatory intent should be excluded pursuant to Federal Rule of Evidence 401 (evidence is relevant if "it has the tendency to make a fact more or less probable").

Defendants again misconstrue the disparate impact burden-shifting framework by arguing that, if they cannot meet their burden on Step Two, the jury will be compelled to infer that they have acted with racial animus. This inference does not follow. While the FHA does prohibit intentional discrimination, the statute is also intended to prohibit policies that "arbitrarily creat[e] discriminatory effects." *Inclusive Communities*, 576 U.S. at 540. On Step Two, all that the jury will decide is whether Defendants have proven that the Policy "serve[d], in a significant way" their purported business justifications. *Reyes II*, 91 F.4th at 277 (quoting *Sw. Fair Housing Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 967 (9th Cir. 2021)). If the jury determines that Defendants failed to prove their Policy significantly served a valid business justification, then it will conclude that Defendants' Policy caused an unlawful disparate impact against Latinos. Because evidence of racial animus (or the lack thereof) has no bearing on whether the Policy served any of the stated justifications, it should not be admitted.[4]

---

[4] To the extent it would be appropriate to clarify that discriminatory intent will not be an issue in this case, it should be resolved during the process of proposing jury instructions.

Next, Defendants argue that evidence of FHA training, Spanish-language advertisements, and a general lack of animus are relevant to the punitive damages standard. However, in a disparate impact case, this inquiry does not hinge on the defendant's animus or malice. Instead, it considers a defendant's knowledge that their conduct may be discriminatory. *See Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir. 2000). When a defendant continues to enforce their policy with knowledge that their conduct may be violating federal law, punitive damages may be awarded. For example, courts have found that the failure to discontinue enforcement of a policy following an expert opinion that the policy created a disparate impact and a court ruling that the policy violated the FHA constitutes sufficient evidence to award punitive damages. *Fair Hous. Ctr. of Wash. v. Breier-Scheetz Prop.'s, LLC*, 743 F. App'x 116, 118 (9th Cir. 2018) (unpublished). The specific evidence that Plaintiffs seek to exclude—evidence of FHA training, Spanish-language advertisements, and a general lack of animus—has no bearing on the fact that Defendants continued to enforce the Policy, despite their knowledge of 2012 U.S. Department of Housing & Urban Development (HUD) guidance and two Fourth Circuit rulings showing that the Policy may violate the FHA. *See* ECF 477 at 7-9. Because this evidence is also irrelevant to Plaintiffs' claim for punitive damages, it should be excluded.

### D. Invasive Cross-Examination Into the Plaintiffs' Immigration Statuses Is Irrelevant to Defendants' Asserted Business Justifications for Their Policy and Unfairly Prejudicial to Plaintiffs.

Defendants argue that unless Plaintiffs agree to stipulations that are either untrue or irrelevant, then they will need to engage in the invasive cross-examination regarding Plaintiffs' immigration statuses that is the subject of Plaintiffs' fourth motion *in limine*. ECF 474 at 10. Defendants are right that Plaintiffs "will not agree to stipulations on any of [those] issues," but Defendants' Response fails to address Plaintiffs' arguments for excluding this irrelevant and harassing cross-examination. *Compare id.*, *with* ECF 455 at 18-20.

The female Plaintiffs have already stipulated to their immigration statuses at the time Defendants enforced the Policy against them and have agreed to stipulate to this fact for the purpose of trial. ECF 455 at 18. Plaintiffs agree with Defendants that establishing this fact is necessary, primarily to show that the female Plaintiffs could not comply with the Policy and are members of the protected class that suffered a disparate impact as a result of the Policy. *Id.*

Additional cross-examination of the female Plaintiffs' immigration statuses would provide no further probative value, and even if it did, it would be cumulative and prejudicial under Federal Rule of Evidence 403. Moreover, the female Plaintiffs' immigration statuses do not affect their ability to bring their FHA disparate impact claim,[5] and further questioning on the topic would only serve to embarrass them. *See* ECF 455 at 18-20. Under Federal Rule of Evidence 611(a)(3), the Court can and should prevent this harassing line of cross-examination.

The further stipulations sought by Defendants only illustrate that they would be pursuing cumulative, irrelevant, unfairly prejudicial, and harassing information through additional cross-examination about Plaintiffs' immigration statuses. ECF 474 at 10. First, Defendants suggest that that Plaintiffs should stipulate that the female Plaintiffs "improperly entered the country in violation of 8 U.S.C. § 1325, and that they are, and at all times have been, unlawfully present in the [U.S.]" *Id.* But (a) this is not true, (b) this is not an immigration case, and (c) this is not relevant to whether Plaintiffs could comply with the Policy when it was enforced against them (the female Plaintiffs have stipulated they could not). The only purpose that line of questioning would serve is

---

[5] *See Reyes I*, 903 F.3d at 432 ("Plaintiffs' disparate impact claim is not precluded simply because the female Plaintiffs cannot satisfy the Policy because they are illegal immigrants when they have alleged that the Policy disparately impacts Latinos.").

to inflame the jury's passions and cause Plaintiffs prejudice. *See United States v. Daulton*, 266 F. App'x 381, 385 (6th Cir. 2008) (unpublished).

Second, Defendants seek a stipulation "about the verification processes the female Plaintiffs underwent to obtain ITINs [Individual Taxpayer Identification Numbers]." This ignores the fact that the parties have already stipulated to the process for obtaining ITINs, ECF 313 (Joint Stipulation Adopting Parties Prior Joint Stipulation of Uncontested Facts) (citing to ECF 180 at 3 (Joint Stipulation of Uncontested Facts)), *and* Plaintiffs offered an expert to testify as to that technical process, ECF 457-1 (Declaration of Plaintiffs' expert Ivan Yacub, Esq.). Ironically, Defendants have filed their own motion *in limine* to exclude this expert testimony, in part because they say it is cumulative to the existing stipulations regarding the process of obtaining an ITIN. ECF 457 at 6-9. If Defendants wish to probe this topic, they should withdraw their motion *in limine* to ensure that they can cross-examine Plaintiffs' proffered expert on this subject.

Third, Defendants seek an exceptionally irrelevant stipulation—about the male Plaintiffs' "processes for obtaining legal status." The male Plaintiffs have stipulated that they had the relevant documents to comply with the Policy both when they moved into the Park and when they were forced to move out because their wives could not comply with the Policy. ECF 455 at 2.  Questions about their immigration processes have no bearing whatsoever on the case and could only seek to embarrass them and their families.

Finally, if it were not patently clear that Defendants' real goal here is to embarrass the Plaintiffs, Defendants violated the Stipulated Protective Order (ECF 45) by publishing a highly confidential detail about one of the Plaintiffs coming to the United States decades ago as a minor. *See* ECF 480 (requesting that the Court replace the unredacted version of Defendants' Response with redacted version due to confidential information). Defendants use that confidential and highly

12

sensitive detail to suggest that this Plaintiff fraudulently obtained an ITIN, even though the Plaintiff did not. If this Court does not grant Plaintiffs' motion, Defendants would almost certainly try to elicit this harassing, unfairly prejudicial, and irrelevant detail at trial, as well.

Defendants are wrong that they need to cross-examine the Plaintiffs on these subjects "to show the jury that ITINs are not a reliable means of verifying one's identity." ECF 474 at 10. Plaintiffs' immigration statuses and processes have nothing to do with whether ITINs are a reliable means of verifying identities. Moreover, Plaintiffs have limited personal knowledge and no technical knowledge to testify about the reliability of ITINs in verifying identities, which is a subject better suited for a witness with more personal knowledge and/or an expert like Mr. Yacub. *See Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 848 (10th Cir. 1979) ("where the Topic requires special experience, only the testimony of a person of that special experience will be received"); *see also Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) ("A critical distinction between Rule 701 and Rule 702 testimony is that an expert witness must possess some specialized knowledge or skill or education that is not in the possession of the jurors.") (internal citations omitted).

Accordingly, this Court should restrict any cross-examination of Plaintiffs regarding their immigration statuses to only what is necessary to establish whether they had the documents to comply with Defendants' Policy at the time the Policy was enforced against them. The Court should exclude the rest as cumulative, irrelevant, and unfairly prejudicial under Rule 403, and as unduly embarrassing and harassing under Rule 611(a)(3).

**CONCLUSION**

For the foregoing reasons and the reasons provided in Plaintiffs' memorandum of law in support of their motions *in limine* (ECF 455), Plaintiffs respectfully request that the Court grant each of Plaintiffs' motions *in limine* (ECF 454).


Dated: May 15, 2024                                 Respectfully Submitted,


                                                    */s/ Granville C. Warner*
ZUCKERMAN SPAEDER LLP                               LEGAL AID JUSTICE CENTER
Nicholas M. DiCarlo (admitted *pro hac vice*)       Granville C. Warner, VSB #24957
1800 M Street NW, Suite 1000                        Nady Peralta, VSB #91630
Washington, DC 20036                                Larisa D. Zehr, VSB #96032
202.778.1800                                        6402 Arlington Blvd., Suite 1130
ndicarlo@zuckerman.com                              Falls Church, VA 22042
                                                    703.778.3450
Cyril V. Smith (admitted *pro hac vice*)            cwarner@justice4all.org
100 East Pratt Street, Suite 2440                   nady@justice4all.org
Baltimore, MD 21202-1031                            larisa@justice4all.org
410.332.0444
csmith@zuckerman.com


                                                    *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2024 I caused a copy of the foregoing to be served on the

Clerk of Court and all counsel of record via CM/ECF.


Dated: May 15, 2024                          */s/ Granville C. Warner*

                                             Granville C. Warner