IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES, ET AL., | ) |
| *Plaintiffs*, | ) |
| v. | ) Case No: 1:16CV563 (PTG/WBP) |
| WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, ET AL., | ) |
| *Defendants*. | ) |

### DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION
### TO EXCLUDE THE OPINIONS OF WILLIAM A.V. CLARK, PH.D

Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A.J. Dwoskin & Associates, Inc. (collectively, "Defendants"), pursuant to L. Civ. R. 7(F)(1), file this brief in support of their motion to exclude the opinions of William A.V. Clark, Ph.D, who is the purported demographics expert of Plaintiffs Rosy Giron de Reyes, Jose Dagoberto Reyes, Felix Alexis Bolanos, Ruth Rivas, Yovana Jaldin Solis, Esteban Ruben Moya Yrapura, Rosa Elena Amaya, and Herbert David Saravia Cruz (collectively, "Plaintiffs").

### ARGUMENT

Dr. Clark's opinions are irrelevant and unreliable under Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and one of his opinions fails to meet the disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B). Even if Dr. Clark's opinions have some probative value (they do not), his testimony will confuse the issues and mislead the jury, rendering his opinions inadmissible. Because of these deficiencies, the Court should exercise its gatekeeping function to exclude Dr. Clark's opinions.

## I. Dr. Clark's Opinions Are Irrelevant.

The Court should exclude Dr. Clark's opinions because they are irrelevant. Under Fed. R. Evid. 702(a), an expert witness can testify to an opinion only if it "will help the trier of fact to understand the evidence or to determine a fact in issue[.]" The Supreme Court has explained that "[t]his condition goes primarily to relevance," and that "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (quotation marks omitted). "Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021); *see also* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Dr. Clark's opinions are irrelevant because he analyzed the wrong comparison groups. The Fourth Circuit has already defined the correct comparison groups as: "Latinos that are subject to the Policy—i.e., Latino tenants *at the Park*—[versus] non-Latinos that are subject to the Policy—i.e., non-Latino tenants *at the Park*." *Reyes v. Waples Mobile Home Park LP*, 903 F.3d 415, 429 n.8 (4th Cir. 2018) ("*Reyes I*") (emphasis added). Dr. Clark did not compare these two groups. Instead, he compared the undocumented Latinos in a census tract to the total non-Latinos is a census tract. ECF 294-1 at 4-5. Dr. Clark's comparison groups are wrong on two levels.

A. First, Dr. Clark's comparison groups include populations beyond the Park. In *Reyes I*, the Fourth Circuit was clear that the comparison groups must include only Latinos and non-Latinos who resided "at the Park." 903 F.3d at 429 n.8. This focus on the specific housing project at issue is consistent with the Fourth Circuit's prior decision in *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 985 (4th Cir. 1984), in which black residents in one building of a three-building apartment complex—known as "The Point"—sued for disparate impact under the FHA. In *Betsey*, the district court entered judgment for the landlord by relying on "statistics" of "the percentage of

2

blacks at The Point," "the percentage of black renters in the election district in which The Point is located as well as in Montgomery County as a whole," and "blacks in the local community." *Id.* at 986-87.

The Fourth Circuit reversed. *Id.* at 989. It held that statistics relating to "the rest of the 'local community'" and "the rest of The Point" were "irrelevant" to the "correct inquiry," which it defined and explained as follows:

> The correct inquiry is whether the policy in question had a disproportionate impact on the minorities in the total group to which the policy was applied. In this case, the all-adult conversion policy was applied to the residents in Building Three. "Bottom line" considerations of the number and percentage of minorities in the rest of the complex or the community are of little comfort to those minority families evicted from Building Three.
>
> Defendants argue that plaintiffs have in some way arbitrarily designated the tenants of Building Three as the relevant group on which to assess the impact of the conversion policy. We disagree. The conversion policy affects only the occupants of Building Three. Thus, we see no merit in the argument that the effects of the conversion should be judged with reference to The Point as a whole.

*Id.* at 987-88.

Dr. Clark has done exactly what the Fourth Circuit said not to do in *Betsey*. He considered statistics of the local community, the census tract, the county, and even the state to analyze disparate impact. Dr. Clark conspicuously says that "[t]he *relevant* geographical units . . . for an analysis of disparate impact are the Commonwealth of Virginia, Fairfax County, Fairfax City and Tract 4406." ECF 294-1 at 3 (emphasis added). But that contradicts the Fourth Circuit's holding that these larger geographic areas and populations are "*irrelevant*." *Betsey*, 736 F.2d at 987 (emphasis added). Because Dr. Clark compared populations beyond the Park, his opinions are not relevant to the comparison groups in this case, as defined by the Fourth Circuit in *Reyes I*.

B.   Second, Dr. Clark's Latino comparison group is incorrectly isolated to the "undocumented" population. In *Reyes I*, the majority and dissent were sharply divided on this

3

exact issue. In line with Dr. Clark, the dissent urged that the relevant comparison groups should be limited to the "undocumented" populations. *Reyes I*, 903 F.3d at 434 (Keenan, J., dissenting). But the majority expressly rejected that view, and instead held that the comparison groups must include *both* documented *and* undocumented persons:

> The dissent implies that we should only consider whether Latino tenants who were undocumented immigrants were disproportionately impacted by the Policy as compared to non-Latino tenants who were undocumented immigrants. . . . We disagree. Plaintiffs alleged that the Policy requiring that *each occupant* provide certain documentation created a disproportionate impact on Latino occupants in the Park. Based on Plaintiffs' challenge to this Policy, then, we must compare whether Latinos that are subject to the Policy—i.e., Latino tenants at the Park—are disproportionately impacted by the Policy as compared to non-Latinos that are subject to the Policy—i.e., non-Latino tenants at the Park.

*Id.* at 429 n.8 (emphasis in original). Dr. Clark's exclusive analysis of the *undocumented* Latinos, rather than the *total* Latino population, renders his opinions irrelevant.

\*\*\*

In sum, Dr. Clark should have compared the impact of Waples' alleged policy on the *total* Latino tenants *at the Park* versus the *total* non-Latino tenants *at the Park*. *Reyes I*, 903 F.3d at 429 n.8. Instead, he erroneously compared the *undocumented* Latinos *outside the Park* to the non-Latinos *outside the Park*. ECF 294-1 at 5. Because Dr. Clark analyzed the wrong comparison groups, his opinions are not relevant and must be excluded.

**II.     Dr. Clark's Opinions Are Inadmissible Under Fed. R. Evid. 403.**

Because Dr. Clark analyzed the wrong comparison groups, his opinions have *no* probative value to the jury's determination of disparate impact. We will assume, however, that Plaintiffs can identify another issue to which Dr. Clark's analysis may lend some probative value. Whatever that probative value might be, it is substantially outweighed by the risk of misleading the jury and confusing the issues. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues, [or] misleading

4

the jury . . . ."). In the Fourth Circuit, "the district court ha[s] a duty" to exclude such evidence. *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 716 (4th Cir. 2021).

The statistical component of the disparate impact analysis is complex and not intuitive to a lay jury. If Dr. Clark testifies about the percentages of certain populations and their likelihood of being impacted by the policy at issue, the jury will probably believe that his statistics apply to the correct comparison groups. But that would be misleading because Dr. Clark's statistics do *not* apply to the correct comparison groups. Even if the jury is instructed on this point, there is still a substantial risk that they will be confused as to why Dr. Clark is testifying about statistics that do not apply to the disparate impact analysis. The Court should exercise its "broad discretion" to exclude Dr. Clark's opinions so as to eliminate the substantial risk of misleading the jury and confusing the issues. *In re C.R. Bard, Inc., MDL No. 2187, Pelvic Repair sys. Prods. Liab. Litig.*, 810 F.3d 913, 920 (4th Cir. 2016).

### III.     Dr. Clark's Opinions Are Unreliable.

Dr. Clark's opinions should also be excluded because they are unreliable. Under Fed. R. Evid. 702(c)-(d), an expert's opinion testimony must be "the product of reliable principles and methods" and must "reflect[] a reliable application of the principles and methods to the facts of the case." As the Supreme Court has instructed, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *see also Kumho Tire*, 526 U.S. at 147 (extending Fed. R. Evid. 702's "reliability standard to *all* scientific, technical, or other specialized matters") (emphasis added) (quotation marks omitted). Where expert testimony "fails to qualify as reliable," it "must be excluded." *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 22 F. Supp. 3d 585, 587 (E.D. Va. 2013).

Dr. Clark's opinions are unreliable because he did not properly calculate the margin of error. Dr. Clark opines that undocumented Latinos are "7 times more likely" than other groups "to be adversely affected by the policy." ECF 294-1 at 5. But this opinion is only as reliable as the applicable error rate, which the Court "ordinarily should consider." *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 594); *see also* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "rate of error" as "[t]he probable size of the sampling error in an estimate"). Dr. Clark applied a 26% error rate. What makes that error rate unreliable is Dr. Clark's failure to increase the error rate when applied to a different, smaller population of only undocumented Latinos.

Dr. Clark took his margin of error directly from the Census Bureau, which calculated the 26% error rate for its estimate of *all* Latinos in the census tract. ECF 294-3 at 1. That population includes 957 people. ECF 294-1 at 4. By contrast, the *undocumented* Latinos represent a smaller subset of the total Latino population. According to Dr. Clark, the subset of *undocumented* Latinos is comprised of only 301 people. *Id.* Rather than recalculating the error rate for the smaller population, Dr. Clark simply applied the 26% error rate that the Census Bureau had calculated for the total population.

Dr. Clark's application of the 26% error rate to a smaller population violates Fed. R. Evid. 702(c)-(d). It is beyond dispute that "basic statistical principles mandate that the sampling error derived from the ratings for this narrow demographic category will be higher than the sampling error associated with ratings estimates for the sample as a whole because sampling error increases as sample size decreases." *SI Commc'ns, Inc. v. Nielsen Media Research*, 181 F. Supp. 2d 404, 411 (S.D.N.Y. 2002). Because Dr. Clark's opinions fail to adhere to basic statistical principles, his opinions are unreliable.

6

There is another flaw with his margin of error. Dr. Clark testified that undocumented Latinos are "more difficult" to estimate than documented Latinos, because the undocumented Latinos "prefer not to be measured in census estimations" and are "less willing, less wanting to be measured." ECF 294-2 at 33. This increased difficulty should be reflected in an increased error rate. But it is not. Instead, Dr. Clark applied the same error rate to both the *total* Latino population and the *undocumented* Latino population, despite his admission that the latter population is "more difficult" to estimate. Because Dr. Clark's opinions fail to account for the increased difficulty of estimating the undocumented population, his opinions are unreliable.

## IV.     Dr. Clark Violated the Disclosure Requirements of Fed. R. Civ. P. 26(a)(2)(B).

Finally, Dr. Clark's opinion about the percentage of Latinos in the Park should be excluded because he did not disclose the "basis and reasons" or the "facts or data" supporting that opinion. Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."[1] Fed. R. Civ. P. 37(c)(1).

Dr. Clark relies on a resident list that identifies 141 total names. ECF 294-1 at 5. He claims to have analyzed those 141 names and concluded that 85 of the names (i.e., 60%) are Latino. *Id.* The problem is that Dr. Clark did not disclose the 85 allegedly Latino names in his report. *Id.* Consequently, Waples' rebuttal expert could not refute Dr. Clark's analysis of the 85 names, Waples could not depose Dr. Clark about the 85 names, and Waples cannot prepare to cross-examine Dr. Clark about the 85 names at trial.

---

[1] "The party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017).

This is exactly the unfairness that Fed. R. Civ. P. 26(a)(2)(B) was designed to prevent. *See Gomez v. Haystax Tech., Inc.*, 761 F. App'x 220, 233 (4th Cir. 2019) ("'[T]he rules of expert disclosure are designed to allow an opponent to examine an expert opinion for flaws and to develop counter-testimony thorough that party's own experts.'") (quoting *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 598 (4th Cir. 2003)) (emphasis omitted); *Campbell v. United States*, 470 F. App'x 153, 157 (4th Cir. 2012) ("As this court has previously emphasized, 'A party that fails to provide expert disclosures unfairly inhibits its opponent's ability to properly prepare . . . .'") (quoting *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005)) (brackets omitted).

Without any explanation of the specific names that he analyzed, Dr. Clark expects the Court and the jury to accept his mere say-so that 60% of the residents were Latino. But this is a classic case of *ipse dixit*. Where, as here, "there is simply too great an analytical gap between the data [i.e., the 85 unidentified names] and the opinion offered [i.e., that 60% of the residents were Latino]," the Court should exclude the expert's testimony. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Because Dr. Clark failed to disclose the 85 names that he believes are Latino, he should not be allowed to opine that 60% of the Park residents were Latino.

## CONCLUSION

For the reasons discussed, the Court should grant Defendants' motion and exclude Dr. Clark's opinions.

| | |
|---|---|
| Dated: June 11, 2024 | Respectfully submitted,<br>**Waples Mobile Home Park Limited Partnership**<br>**Waples Project Limited Partnership**<br>**A.J. Dwoskin & Associates, Inc.**<br>*By Counsel*<br><br>*/s/ Michael S. Dingman*<br>Michael S. Dingman<br>Brooks H. Spears<br>MCGUIREWOODS LLP<br>1750 Tysons Boulevard, Suite 1800<br>Tysons, VA 22102<br>Phone: (703) 712-5000<br>Fax: (703) 712-5050<br>mdingman@mcguirewoods.com<br>bspears@mcguirewoods.com<br><br>Grayson P. Hanes<br>ODIN, FELDMAN & PITTLEMAN, P.C.<br>1775 Wiehle Avenue, Suite 400<br>Reston, VA 20190<br>Phone: (703) 218-2195<br>Fax: (703) 218-2160<br>grayson.hanes@ofplaw.com |

**CERTIFICATE OF SERVICE**

I certify that, on June 11, 2024, I caused the foregoing document to be filed via the Court's CM/ECF system, which will send notice to all counsel of record.

*/s/ Michael S. Dingman*
Michael S. Dingman