IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES, ET AL., | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) Case No: 1:16CV563 (PTG/WBP) |
| WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, ET AL., | ) ) ) ) |
| *Defendants*. | ) ) ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
TO EXCLUDE THE OPINIONS OF WILLIAM A.V. CLARK, PH.D.**

Defendants Waples Mobile Home Park Limited Partnership, Waples Project Limited Partnership, and A.J. Dwoskin & Associates, Inc. (collectively, "Waples"), pursuant to L. Civ. R. 7(F)(1), file this reply in support of their motion to exclude the opinions of William A.V. Clark, Ph.D., who is the purported demographics expert of Plaintiffs Rosy Giron de Reyes, Jose Dagoberto Reyes, Felix Alexis Bolanos, Ruth Rivas, Yovana Jaldin Solis, Esteban Ruben Moya Yrapura, Rosa Elena Amaya, and Herbert David Saravia Cruz (collectively, "Plaintiffs").

**ARGUMENT**

**I.     Plaintiffs and Dr. Clark Disregard the Fourth Circuit's Mandate About the Proper Comparison Groups.**

The Fourth Circuit mandated that Plaintiffs "***must compare***" Latinos and non-Latinos who were "tenants," who were "at the Park," and who were "subject to the Policy." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 429 n.8 (4th Cir. 2018) ("*Reyes I*") (emphasis added). Incredibly, Plaintiffs argue that this mandate allowed Dr. Clark to compare Latinos and non-Latinos who were ***not*** "tenants," who were ***not*** "at the Park," and who were ***not*** "subject to

the Policy." This opposite interpretation of the Fourth Circuit's mandate is reason alone to exclude Dr. Clark's opinions.[1]

To be clear, this Court's determination of the proper comparison groups must begin and end with footnote 8 of *Reyes I*, which is the law of this case and allows no room for interpretation. *See* ECF 212 (remanding for further proceedings "consistent with the court's decision" in *Reyes I*); *see also United States v. Alston*, 722 F.3d 603, 606 (4th Cir. 2013) ("The 'mandate rule' is a specific application of the law of the case doctrine that prohibits a lower court from reconsidering on remand issues laid to rest by a mandate of the higher court."). Even so, the other cases cited by Plaintiffs further demonstrate the error in Dr. Clark's comparison groups.

Plaintiffs rely on footnote 3 of *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 987 n.3 (4th Cir. 1984), in which the Fourth Circuit articulated two types of disparate-impact claims: "The first, as in this instance, occurs when a decision has a greater adverse impact on one race than another. The second concerns the effect of a decision on the entire community involved. For example, if a policy perpetuates segregation and thereby prevents interracial association[.]" *Betsey*, 736 F.2d at 987 n.3. The Fourth Circuit recognized that the "way in which a discriminatory effect may be proved" depends on which of these two types of claims is being made. *Id.*

Plaintiffs' claim—that Waples' policy had a greater adverse impact on one race than another, ECF 1 §§ 114-15—falls into *Betsey's* first category of claims. Plaintiffs are not claiming

---

[1] To some extent, Dr. Clark's failure to compare the correct groups was excusable at the time he issued his report in 2016 because the Fourth Circuit did not decide the correct comparison groups until two years later. What is not excusable, however, is Dr. Clark's failure to supplement his report in the *six years* since the Fourth Circuit's decision. *See* Fed. R. Civ. P. 26(e) (requiring supplementation of expert disclosures where, as here, "the party learns that in some material respect the disclosure or response is incomplete"). Equally inexcusable is Plaintiffs' insistence on telling this Court that the proper comparison groups are anything other than what the Fourth Circuit identified them to be. *Compare Reyes I*, 903 F.3d at 429 n.8 ("[W]e must compare whether Latinos that are subject to the Policy—i.e., Latino tenants at the Park—are disproportionately impacted by the Policy as compared to non-Latinos that are subject to the Policy—i.e., non-Latino tenants at the Park."), *with* ECF 302 at 1 ("This case is about the disparate impact Defendants' policy has on the availability of housing to the Latino population as compared to the non-Latino population *in the relevant area of Fairfax County*.") (emphasis added).

2

that Waples perpetuated segregation under *Betsey's* second category of claims; nor could they, given Dr. Clark's opinion that 60% of the Park's residents were Latino. ECF 294-1 at 5. Because the claim in this case is the same as the claim in *Betsey*, the relevant proof must also be the same. And in *Betsey*, 736 F.2d at 987, the Fourth Circuit held that statistics of populations beyond the affected housing project are "irrelevant" to claims like this one.

Plaintiffs also mistakenly cite *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015), in which (unlike this case) the plaintiffs' claim fell into *Betsey's* second category. In *Inclusive Communities*, "ICP alleged the Department has caused continued segregated housing patterns" in the Dallas community, which required statistical proof about the community writ large. *Inclusive Communities*, 576 U.S. at 526. In this case, by contrast, Plaintiffs' claim focuses on a policy's impact on a discrete set of individuals at the Park—not the broader Fairfax or Virginia communities. For these types of claims, the Fourth Circuit emphasized that plaintiffs are required to prove "that a given policy had a discriminatory impact on them as *individuals*," not "the minority group as a whole." *Betsey*, 736 F.2d at 987 (emphasis in original).

Finally, Plaintiffs rely on *Connecticut Fair Hous. Ctr. v. CoreLogic Rental Prop. Solutions, LLC*, 478 F. Supp. 3d 259, 292-93 (D. Conn. 2020), in which the district court said that "national or state general statistics are appropriate where actual applicant data is not available." That sweeping pronouncement of law is plainly erroneous. If that rule applied here, a mere 8.4% of the Park's residents would be Hispanic, because that was the statewide percentage of Hispanics according to Dr. Clark. ECF 294-1 at 1. Yet Dr. Clark opines that "residents of the Park are estimated to be 60 percent Hispanic." *Id.* at 5. This vast discrepancy between the statewide statistics and the estimate of the housing project's population demonstrates the error in *CoreLogic's* proposed rule of law.

3

But even accepting *CoreLogic's* rule, it would not apply here because Plaintiffs argue that the actual data was available to them. According to Plaintiffs, there are "two lists" that "track tenants who were unable to meet Defendants' policies." ECF 373 at 2. Plaintiffs also claim to know whether the listed tenants are Hispanic. ECF 373-3; *see also* ECF 302 at 11 ("Dr. Clark's analysis is supported by the direct evidence provided by Plaintiff: 60 percent of the residents of the Park are Latino . . . , and 91.7% of the individuals actually affected by the policy are Latino."). Assuming all that to be true, then *CoreLogic's* proposed rule has no applicability to this case.

## II. Plaintiffs Falsely Claim That Dr. Clark Included Documented Persons in His Comparison Groups.

Plaintiffs do not dispute the Fourth Circuit majority's mandate (over the dissent of Judge Keenan) that the comparison groups must include documented persons.[2] Instead, Plaintiffs tell the Court that Dr. Clark complied with that requirement, and they find it "baffling" that Waples argues otherwise. ECF 496 at 8-9.

Plaintiffs cannot be genuinely baffled by Waples' argument. Dr. Clark identifies his comparison groups as: (i) "the *undocumented* [Hispanic] population in Fairfax County and Census Tract 4406"; and (ii) "other groups at the County and the Census tract level." ECF 294-1 at 5 (emphasis added). By "other groups," Dr. Clark testified that he meant "the *undocumented* non-Hispanic population."[3] W. Clark Dep. Tr. at 70 (12/22/16) (emphasis added), attached as **Exhibit**

---

[2] In the earlier proceedings, Waples advocated for Judge Keenan's comparison groups, *see Reyes I*, 903 F.3d at 434 (Keenan, J., dissenting), which would have isolated Hispanic ethnicity as the sole variable in the comparative analysis. But Waples (and Judge Keenan) lost that debate. Instead, the Fourth Circuit majority (Judge Floyd and Judge Wynn) allowed for two variables—Hispanic ethnicity *and* legal status—in the comparative analysis. Although Waples continues to believe that Hispanic ethnicity should be isolated as the sole variable between the comparison groups, *see, e.g.*, *Loose v. Gen. Dynamics Corp.*, 1:19CV471 (AJT/IDD), 2019 WL 6119713, at *11 n.18 (E.D. Va. Nov. 18, 2019) (rejecting statistical evidence of discrimination that did not "control for any other variables"), the majority's view is, nonetheless, the controlling law of this case.

[3] Dr. Clark's deposition transcript is littered with testimony that he estimated only the *undocumented* population. *See, e.g.*, W. Clark Dep. Tr. at 39 ("I was concerned with making a point estimate, the best estimate I could of the *undocumented* population in the census tract, which I did.") (emphasis added); *id.* at 40 ("I reliably used the ACS report for all Hispanics to estimate the *undocumented* Hispanic population.") (emphasis added); *id.* at 43 ("I

1. These comparison groups amounted to approximately 31%, ECF 294-1 at 5 ("*Undocumented* immigrants constitute 30.7 percent of the Hispanic population in Fairfax County and 31.4 percent in Sensus Tract 4406.") (emphasis added), and 4.6% ("*Undocumented* immigrants are only 4.6 percent of the non-Hispanic population in Fairfax County.") (emphasis added). Dr. Clark then divided these numbers to conclude that "Latinos are nearly 7 times more likely to be *undocumented* than other groups [i.e., *undocumented* non-Hispanics]." ECF 294-1 at 5 (emphasis added).

To use Plaintiffs' word, it is "baffling" that Dr. Clark did not include documented persons in his comparison groups after the Fourth Circuit required him to do so. It is also "baffling" that Plaintiffs would falsely tell this Court that he did. What is not "baffling," however, is Waples' argument that Dr. Clark's opinions are irrelevant because he analyzed the wrong comparison groups. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 263 (4th Cir. 2005) (affirming exclusion of statistical expert in disparate-impact case because "[t]he analysis was based on comparisons that were not relevant to Miss Anderson's claims").

### III. Plaintiffs Fail to Articulate Any Probative Value That Dr. Clark's Incorrect Comparison Groups Might Otherwise Have.

Incorporating prior arguments, Plaintiffs say that the probative value of Dr. Clark's opinions is that they "prove the extent of the disparate impact on the park's Latino tenants." ECF 302 at 13. If that were true, Waples would obviously have no challenge under Fed. R. Evid. 403.

---

used a reliable margin of error that was provided by the ACS for all Hispanics within that tract and applied it to my estimate of the *undocumented*.") (emphasis added); *id.* at 46 ("I used [the ACS MOE] to apply to my *undocumented* estimate . . . .") (emphasis added); *id.* ("Q. And you attempted to estimate a sub-group of *undocumented* Hispanics, correct? A. Yes.") (emphasis added); *id.* at 48 ("That's what I did in this case and provided a point estimate that about 300 Hispanics in that tract are *undocumented*.") (emphasis added); *id.* at 62 ("Unfortunately, because many Hispanics are in fact *undocumented*, it has the impact of being a disparate outcome because there are many – there are very few whites that are *undocumented*.") (emphasis added); *id.* at 63 ("So the fact that most *undocumented* immigrants are Hispanic means that it's a disparate impact if you apply a – that particular policy.") (emphasis added); *id.* ("Q. So your testimony is the disparate impact is due to the fact that there's a larger group of Hispanics in the *undocumented* population than some other race or ethnic group? A. I believe the report says that, yes.") (emphasis added); *id.* at 64 ("I used the CMS data from the PUMA to estimate what the *undocumented* population is in the tract[.]") (emphasis added).

5

But it is not true. As discussed above and in the opening brief, Dr. Clark compared the wrong groups, in violation of the Fourth Circuit's mandate. Consequently, his opinions do not prove *anything*, let alone "the extent of the disparate impact on the park's Latino tenants." And because Plaintiffs fail to articulate any other probative value, *see generally* ECF 496, Dr. Clark's opinions are entirely outweighed by the risk of confusing the proper comparison groups and misleading the jury about that issue. *Herold v. Hajoca Corp.*, 864 F.2d 317, 322 (4th Cir. 1988) ("It was reasonable to conclude that such region-wide statistics would be of limited probative value in determining whether discrimination took place in one particular branch. Furthermore, the court had to take precautions to ensure against juror confusion. Fed. R. Evid. 403. The district judge could reasonably have concluded that the confusion the statistics might cause for the jury would outweigh their probative value.").

### IV. Plaintiffs Fail to Explain Why Dr. Clark's Error Rate for a Population of 957 Is the Same as for a Population of 301 That He Admits Is "More Difficult" to Estimate.

Rather than addressing Waples' arguments about Dr. Clark's error rate, Plaintiffs "refer to arguments in [their] prior opposition." ECF 496 at 6 (citing ECF 302). But those arguments do not address Waples' two points: (i) that basic statistical principles require Dr. Clark's error rate to increase as his population size decreases; and (ii) that Dr. Clark admits the undocumented population is "more difficult" to estimate, which means that the error rate for his estimate of the undocumented population must be higher than the Census Bureau's error rate for the documented population. By relying exclusively on their prior brief, which is not responsive to these two specific points, Plaintiffs have effectively chosen not to oppose Waples' current arguments. This alone is grounds for the Court to grant Waples' motion. *See, e.g.*, *Ruddy v. Bluestream Prof'l Svcs., LLC*, No. 1:18CV1480, 2020 WL 10356233, at *1 (E.D. Va. July 15, 2020) (granting motion to exclude expert testimony because the other party did "not oppose" it).

### V. Plaintiffs Fail to Justify Dr. Clark's Non-Disclosure of the 85 Names That He Believes Are Hispanic.

Plaintiffs admit that Dr. Clark did not disclose the 85 names that he believes are Hispanic. ECF 496 at 10. But rather than advocating for an exception to automatic exclusion under the factors of *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596-97 (4th Cir. 2003), Plaintiffs instead seek to "improperly shift the burden of proof away from [themselves] on the exclusion issue."

They begin with the glib contention that "Defendants had the opportunity to ask Prof. Clark" about his undisclosed names at deposition. ECF 496 at 10. That argument is a non-starter. *Samsung Elec. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 196 (E.D. Va. 2016) ("[A] deposition is insufficient to cure a failure to disclose materials that ought to have been included in the expert report because disclosure in the right form (complete) and at the right time (with the expert report, before the expert's deposition) is critical to an opposing party's ability to engage in meaningful expert discovery (critical analysis of the expert's report, and taking of a targeted deposition).").

Plaintiffs then ask the Court to ignore Dr. Clark's failure to disclose because Waples can "ask Prof. Clark about the names at trial." ECF 492 at 10. Again, this argument gets them nowhere. *Gomez v. Haystax Tech., Inc.*, 761 F. App'x 220, 232-33 (4th Cir. 2019) (explaining that "the ability to simply cross-examine an expert concerning a new opinion at trial is not the ability to cure" a failure to disclose).

Next, Plaintiffs say that Waples' "own expert could re-create the analysis using the information Prof. Clark provided." ECF 496 at 10. But they fail to explain how Waples' expert, Dr. Weinberg, could have simply looked at the full list of 141 names and divined which of those names Dr. Clark believes to be Hispanic. Even if that were doable (it is obviously not), the argument turns Fed. R. Civ. P. 26(a)(2)(B) on its head. *Reed v. Binder*, 165 F.R.D. 424, 430

7

(D.N.J. 1996) ("Nothing causes greater prejudice than to have to guess how and why an adversarial expert reached his or her conclusion.").

Recognizing Dr. Clark's non-disclosure, Plaintiffs blithely suggest that it does not matter "whether [the Hispanic population at the Park] was 50% or 60% . . . or 70%." ECF 496 at 10. Like their other arguments, this one is also a non-starter. *Walls v. Ford Motor Co.*, No. 1:20CV98, 2022 WL 3282585, at *16 (W.D.N.C. Aug. 11, 2022) ("Defendants argue that the precise number, whether it is 200 or 100 . . . it doesn't really matter . . . . The Court finds that mathematical precision does matter. 'The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony.'") (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 231 (4th Cir. 2017)) (quotation marks omitted).

Interestingly, Plaintiffs concede that the probative value of Dr. Clark's opinion is "relatively small" and "not crucial." ECF 496 at 10. This begs the question why Plaintiffs oppose Waples' motion in the first place. Plaintiffs' concession also means that Dr. Clark's opinion is irrelevant and inadmissible under Fed. R. Evid. 401 & 402. At a minimum, the probative value of Dr. Clark's opinion is admittedly nominal and substantially outweighed by the unfair prejudice to Waples if the unsupported opinion is presented at trial. Fed. R. Evid. 403.

Finally, Plaintiffs tell the Court that exclusion cannot apply here because Waples did not move to exclude in the prior eight years. ECF 496 at 10. Yet again, Plaintiffs' contention inverts the federal rules, under which exclusion applies *automatically* regardless of whether Waples filed a motion or not. *See SSS Enters., Inc. v. Nova Petroleum Realty, LLC*, 533 F. App'x 321, 324 (4th Cir. 2013) ("The federal rules impose an 'automatic sanction' of exclusion of a party's expert witness for failure to adhere to the requirements set forth in Rule 26(a)."); *Scott v. Clarke*, No. 3:12CV36, 2014 WL 5386882, at *2 (W.D. Va. Oct. 22, 2014) ("Given Defendants' failure to

8

comply with Rule 26(a)(2), I must apply the 'automatic sanction' imposed by Rule 37(c)(1) of exclusion of testimony by the Corizon experts at trial[.]"). The timing of Waples' motion, which Waples was not even obligated to file, is simply not relevant to the automatic exclusion analysis under Fed. R. Civ. P. 37(c)(1).

## VI. Plaintiffs Cannot Save Dr. Clark's Inadmissible Opinions by Relying on the Timing of Waples' Motion and the Law-of-the-Case Doctrine.

Recognizing that Dr. Clark's opinions are indefensible on the merits, Plaintiffs implore the Court to disregard the merits issues and instead focus exclusively on procedural technicalities. Even these procedural arguments, however, are unsupported by the law.

As to timing,[4] the general rule is that "[m]otions filed out of time are accepted at the discretion of the trial court[.]" *United States v. Johnson*, 953 F.2d 110, 116 (4th Cir. 1991). But *Daubert* motions, like this one, are different because of "the indispensable nature of district courts' Rule 702 gatekeeping function in all cases in which expert testimony is challenged on relevance and/or reliability grounds." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 284 (4th Cir. 2021). Any "discretion" that the Court might otherwise have "does *not* include the decision to abandon the gatekeeping function." *Nease*, 848 F.3d at 230 (emphasis added). That is why another judge in this district has rejected the same "untimeliness" argument that Plaintiffs make here. *See Anderson v. Sch. Board of Gloucester Cty.*, No. 3:18CV745 (DJN), 2022 WL 2612362, at *3 n.4

---

[4] Plaintiffs suffered no prejudice (and do not claim any prejudice) based on the date Waples filed this motion. They had the full two weeks to file an opposition. And with the filing of this reply, Plaintiffs have nearly three weeks to prepare for the upcoming hearing on July 17. Plaintiffs were also on notice that Waples would be filing this motion, as permitted by the Court. *See* 4/18/24 Hr'g Tr. at 10-11 (ECF 499) (MR. DINGMAN: "I just want to alert the Court that we intend to renew our objections with respect to the reliability of [Dr. Clark's] opinions." THE COURT: "So you don't want me to reconsider that decision?" MR. DINGMAN: "We would like the Court to reconsider that issue prior to trial, yes." THE COURT: "File your motion.").

(E.D. Va. Jan. 10, 2022) ("In light of the *Sardis* ruling, and to ensure that it thoroughly addresses the parties' arguments, the Court will not strike the Opposition for untimeliness.").

Under Plaintiffs' view, the Court should allow Dr. Clark to testify to the jury about his unreliable and irrelevant opinions, so that Waples would be forced to object contemporaneously at trial after the jury has heard the testimony. That, of course, would undermine the Court's gatekeeping function entirely. *Riddick v. Norfolk S. Ry. Co.*, No. 2:21CV297, 2022 WL 1180018, at *2 (E.D. Va. Apr. 20, 2022) ("*Before allowing a jury to hear disputed testimony*, a court must make these inquiries and exercise its gatekeeping function."). The Court should render a *pretrial* decision on Waples' admissibility challenges rather than allowing Dr. Clark's testimony to reach the jury. *See Modern Remodeling, Inc. v. Tripod Holdings, LLC*, No. CCB-19-1397, 2021 WL 5234698, at *6 (D. Md. Nov. 9, 2021) ("To acknowledge this core unreliability and yet leave it to the jury as a question of weight would be to abdicate the court's gatekeeping function.").

Plaintiffs' reliance on the law-of-the-case doctrine is equally misplaced. Judge Ellis did not previously address all the issues raised in Waples' current motion. For instance, he did not address Dr. Clark's erroneous inclusion of broader geographic areas in the comparison groups, *see generally* ECF 311; he did not address Dr. Clark's erroneous exclusion of documented persons from the comparison groups, *see generally id.*; he did not address what probative value, if any, attaches to Dr. Clark's opinions in the event the comparison groups are incorrect, *see generally id.*; he did not address Dr. Clark's admission that the undocumented population is "more difficult" to estimate and the effect of that admission on the error rate, *see generally id.*; and he did not address Dr. Clark's failure to disclose the 85 supposedly Hispanic names in violation of Fed. R. Civ. P. 26(a)(2)(B), *see generally id.*

Even if Judge Ellis decided some of the same issues raised in Waples' current motion, "a district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case." *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment."). "Law of the case," moreover, "does not and cannot limit the power of a court to reconsider an earlier ruling." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). "The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Hicks v. Brennan*, No. 2:16CV89, 2017 4476835, at *9 (E.D. Va. Apr. 27, 2017). Therefore, Judge Ellis' prior Order (which did not even address the majority of Waples' current arguments) is not a bar to excluding Dr. Clark's opinions.

Finally, even as to the one overlapping issue that Judge Ellis did address, his single-sentence rationale is incorrect. As to the margin of error, Waples' argument is simply that Dr. Clark's error rate fails to comply with basic statistical methodology—namely, that "the sampling error derived from the ratings for this narrow demographic category will be higher than the sampling error associate with ratings estimates for the sample as a whole because sampling error increases as sample size decreases." *SI Commc'ns, Inc. v. Nielsen Media Research*, 181 F. Supp. 3d 404, 411 (S.D.N.Y. 2002).

Judge Ellis brushed off this argument based on his own statistical principle that "the sampling error in estimates of the size and geographic location of the undocumented Latino population reasonably tracks the sampling error in estimates of the size and geographic location of the overall Latino population." ECF 311 at 6. The problem is that there is no authority for Judge Ellis' principle, which is contrary to established statistical principles and to Dr. Clark's admission

11

that the smaller, undocumented population is "more difficult" to estimate. Similarly, Judge Ellis provided no authority for his ruling that the error rate for one population can simply be applied to an entirely different population. Nor do the Plaintiffs, now or in their prior brief, point this Court to any objective or industry standard that supports Judge Ellis's rationale or Plaintiffs' contention that Dr. Clark can violate a principle of statistical analysis that he agrees applies. In sum, Waples' challenge to Dr. Clark's error rate presents a question of methodology, which must be decided as part of the Court's gatekeeping function. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) ("In fulfilling its gatekeeping function, a district court must . . . determine whether the methodology underlying the expert witness's testimony is valid.") (quotation marks omitted).

## CONCLUSION

For the reasons discussed, the Court should grant Waples' motion.

Dated: July 1, 2024

Respectfully submitted,
**Waples Mobile Home Park Limited Partnership**
**Waples Project Limited Partnership**
**A.J. Dwoskin & Associates, Inc.**
*By Counsel*

/s/ Michael S. Dingman
Michael S. Dingman
Brooks H. Spears
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5050
mdingman@mcguirewoods.com
bspears@mcguirewoods.com

Grayson P. Hanes
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
Phone: (703) 218-2195
Fax: (703) 218-2160
grayson.hanes@ofplaw.com

## CERTIFICATE OF SERVICE

I certify that, on July 1, 2024, I caused the foregoing document to be filed via the Court's CM/ECF system, which will send notice to all counsel of record.

/s/ Michael S. Dingman
Michael S. Dingman