IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSY GIRON DE REYES, et al., <br><br> Plaintiff, <br><br> v. <br><br> WAPLES MOBILE HOME PARK LIMITED PARTNERSHIP, et al., <br><br> Defendants. | Case No.: 1:16CV563 (PTG/WBP) |

**DEFENDANTS' SUR-SUR-REPLY IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS OF WILLIAM A.V. CLARK**

Plaintiffs admit that, "[i]n *Reyes I*, the Fourth Circuit made clear that 'we must compare whether Latinos that are subject to the policy—i.e., Latino tenants at the Park—are disproportionately impacted by the Policy as compared to non-Latinos that are subject to the Policy—i.e., non-Latino tenants at the Park." ECF No. 532 at 1 ("Supp. Br.") (quoting 903 F.3d 415, 429 n.8); *see also id.* at 2 (recognizing that "the Fourth Circuit clarified that the comparison must focus on tenants in the Park"). Yet Plaintiffs also concede (at 1, 4) that their putative demographics expert Dr. William A.V. Clark did not do that comparison; instead, he expanded the relevant geographic area beyond the Park (mainly, to Fairfax County). This discrepancy between the law and Plaintiffs' Step One evidence poses an impossible task for the jury, who will be instructed based on *Reyes I*'s comparison groups and *Betsey*'s holding that broader community-wide statistics are "irrelevant." There is simply no way for the jury to square its instructions with Clark's opinions, and asking them to do so would be misleading and confusing, while also being highly prejudicial to Defendants. Given the absence of any disagreement about the law versus what Clark actually did, the Court should exclude Clark's opinions under Rules 401, 403, and 702 of the Federal Rules of Evidence.

**1.** Plaintiffs first suggest (at 2-3) *Reyes I* already held that statewide demographic statistics "satisf[y] step one of the *Inclusive Communities* framework." But setting aside that Plaintiffs now are relying on county-level (not statewide) statistics,[1] *Reyes I* held only that Plaintiffs' allegations rendered their claim plausible enough to warrant discovery (including into the demographics of the tenants at the Park). *Reyes I* did not also hold that Plaintiffs could carry their burden at trial based on a "geographic proxy area" of their choosing, as Plaintiffs suggest (at 2).[2] Instead, at trial, it is Plaintiffs' burden to prove (not plead) the disproportionate impact they alleged in *Reyes I*—to proffer evidence sufficient for a jury to assess the impact of the policy on the tenants at the Park. *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019) (explaining that the law-of-the-case doctrine "poses no bar to the assessment of past holdings based on a different procedural posture when, as is the case in the progression from review of a motion to dismiss to a motion for summary judgment, that later review expands the court's inquiry based on development of actual facts underlying a plaintiff's claim"; granting summary judgment despite prior appeal holding that the complaint stated a claim).

Plaintiffs also strain (at 3) to distinguish *Betsey v. Turtle Creek Associates*, 736 F.2d 983 (4th Cir. 1984). Plaintiffs concede (*id.*) that, like *Reyes I*, "*Betsey* identified the question to be answered" as "whether there is a disparate impact *among those subject to the policy*," but they deny (*id.*) that *Betsey* "say[s] anything about the acceptable *mode of proof* for answering that question." Plaintiffs thus assert (*id.*) that, "because Park residents did not self-report their immigration status," the Court should allow Plaintiffs to rely on "proxy evidence." Aside from *Betsey's* unequivocal holding that

---

[1] Clark's own purported findings that 60% of the Park's residents are Hispanic, yet a mere 8.4% of Virginia's residents are Hispanic, *see* Clark Rep. at 3, severely undermine Plaintiffs' claim that statewide demographics are appropriate proxies for Park demographics.

[2] Nor did Plaintiffs' other case (at 2), *Connecticut Fair Hous. Ctr. v. CoreLogic Rental Prop. Solutions, LLC*, 478 F. Supp. 3d 259 (D. Conn. 2020), which Defendants have addressed elsewhere. *See* ECF No. 500 at 3.

evidence of the "impact of the policy on [the protected class] in the local community" is "irrelevant," the Court should reject Plaintiffs' argument for multiple reasons.

*First*, it rests on the premise that a resident's self-reported immigration status determines whether that resident is "subject to the policy." But Plaintiffs and their other expert witness have consistently taken the *opposite* position. *E.g.*, ECF No. 475 at 7 ("As Mr. Yacub describes in his expert declaration, the immigration status documents required by the Policy . . . are *exceptionally poor proxies* for legal presence in the United States."); Response to RFA 16 (denying request to admit that plaintiff's spouse "cannot comply with the Policy because she is in the United States illegally," and asserting that "the absence of [the documents required by the Policy] is *not a proxy or indicator* for 'in the United States illegally.'"),³ attached as Exhibit 1. In fact, in their own summary judgment briefing, Plaintiffs claimed it was an uncontested fact that "[t]he documents required from applicants without SSNs 'are not good evidence of legal presence.'" ECF 138 at 9 (quoting Yacub); *id.* at 2 ("the documents the Policy requires from applicants without Social Security cards are poor indicators of legal presence"). Plaintiffs (and their two experts) cannot have it both ways: if Plaintiffs and Yacub are correct that there is an "exceptional[]" disconnect between a resident's immigration status and the Policy, then Plaintiffs and Clark cannot also be correct that a resident's illegal status is a perfect equivalent for "impacted by the Policy."

*Second*, the argument further rests on the premise that Plaintiffs do not have the data that their theory requires. But this, too, is contrary to Plaintiffs' own statements. According to Plaintiffs, there are "two lists" that "track tenants who were unable to meet Defendants' policies." ECF 373 at 2. Plaintiffs also claim to know whether the listed tenants are Hispanic. ECF 373-3; *see also* ECF 302

---

³ *See Braun v. Village of Palantine*, 2020 WL 1888914, at *1 (N.D. Ill. Apr. 16, 2020) (a denial to Rule 36 request for admission "secures a party's answer on a particular fact such that it cannot later change that answer at trial").

at 11 ("Dr. Clark's analysis is supported by the direct evidence provided by Plaintiff: 60 percent of the residents of the Park are Latino . . . , and 91.7% of the individuals actually affected by the policy are Latino."). During the motion-in-limine hearing, Plaintiffs persuaded the Court that they must be allowed to introduce this purported identification of the actual "tenants unable to meet defendants' policies." Tr. at 78:11; *id.* at 135:1-9 (referring to "defendants' list of folks who were affected by the . . . policy"). Once again, Plaintiffs cannot have it both ways: they cannot simultaneously claim to have the data to address the impact of the Policy on tenants at the Park (and convince the Court to allow such evidence at trial), while declining to use the actual Park data as *Betsey* and *Reyes I* require.

*Third*, neither evidence nor authority supports Plaintiffs' bare assertion (at 2-3) that Clark's county-level analysis "is evidence that a similar distribution occurs within the Park itself under *Reyes I*."[4] If Plaintiffs do not have the data they need to assess "whether the policy in question had a disproportionate impact on the minorities in the total group to which the policy was applied," *Betsey*, 736 F.2d at 987, that is their failure to prove the claim *Reyes I* allowed to proceed—not a reason to admit inapposite expert analysis. And if Plaintiffs mean to suggest that the jury might bridge the gap between Clark's opinions and Plaintiffs' burden by speculating about the demographics of the tenants at the Park, that is a reason to exclude his testimony, not to admit it. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281, 289 (4th Cir. 2021) (explaining that, "to the extent an expert makes inferences based on the facts presented to him, the court must ensure that those inferences were

---

[4] Clark testified that he "did not do that analysis" to verify a similar demographic distribution among the various geographic areas referenced in his report. Clark Dep. Tr. at 67:3-67:6. For example, he relied on the PUMA (population of 160,000) statistics for undocumented aliens to opine as to the percentage of undocumented aliens for the census tract that includes the Park (population of 3,300). While admitting demographic variation in the PUMA, Clark testified that he did no analysis to compare the demographics of the PUMA and the census tract. If he did not verify that the larger geographic areas shared the same demographics as the census tract (which he did not), then he could not possibly have verified that the Park shared the same demographics as any of the larger areas from which it was supposedly extrapolated.

derived using scientific or other valid methods" and not speculation, and holding that district court abused its discretion by admitting "vague *ipse dixit*" testimony that left jury "to speculate a guess") (quotation marks omitted).

*Fourth*, besides being "irrelevant" under *Betsey*, 736 F.2d at 987, Fed. R. Evid. 401, and Fed. R. Evid. 702, Clark's community-wide statistics should also be excluded under Fed. R. Evid. 403. Plaintiffs' repeatedly claim that Clark's statistics have some probative value, which they say is sufficient to satisfy their Step One burden of proof. The assertion that Clark's opinions have any probative value is not true, however, given the Fourth Circuit's comparison groups as stated in *Reyes I*. But even assuming Clark's speculative opinions have some probative value, any such value is substantially outweighed by the dangers of unfair prejudice and confusing and misleading the jury. On the one hand, the jury will be instructed to compare Latinos "at the Park" versus non-Latinos "at the Park." *Reyes I*, 903 F.3d at 429 n.8. On the other hand, the jury will be presented almost exclusively with evidence about Latinos and non-Latinos who are *not* "at the Park." This incongruence will undoubtedly confuse and mislead the jury about their charge. Moreover, it will unfairly prejudice Defendants by allowing Plaintiffs to skirt their burden of proof while asking the jury to speculate based on an expert's admitted conjecture.

**2.** During the hearing on this motion, Plaintiffs conceded that "it's certainly [their] burden at Step 1 to show a disparate impact," and noted with concern that "not having access to Professor Clark would certainly be quite difficult in presenting [their] case." Tr. at 132:22-24, 133:9-11; *see also id.* at 120:22-24 (recognizing that "it would be a substantial issue for us to prepare for trial without a Step 1 expert on disparate impact"). Plaintiffs are correct on both points: *Reyes I* held that proof of causation in a case like this one requires "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion [complained of] because of their membership

in a protected group." 903 F.3d at 425 (quotation marks omitted); *see EEOC v. Freeman*, 961 F. Supp. 2d 783, 799 (D. Md. 2013) (in Title VII case, explaining that "[p]roof of disparate impact requires reliable and accurate statistical analysis performed by a qualified expert"; excluding expert opinion and granting summary judgment because, "[w]ith neither national statistics nor expert analysis to support its allegations of disparate impact, the EEOC's case cannot survive"), *aff'd*, 778 F.3d 463 (4th Cir. 2015).

This disconnect between Dr. Clark's opinions and Plaintiffs' conceded burden to present a "comparison" that "must focus on tenants in the Park" (Supp. Br. at 2) is of Plaintiffs' own making. Plaintiffs have had many years to prepare and serve a supplemental report conforming to *Reyes I*. Yet Plaintiffs have never sought leave to do so—even facing this motion—and there would be no basis to grant such a request at this late juncture. Nine years after this case was filed, six years after *Reyes I*, and with trial fast approaching, Plaintiffs cannot fault Defendants or the Court for their expert's failure to conduct the "comparison" the Fourth Circuit held "must" be done. *See Sharpe v. United States*, 230 F.R.D. 452, 462 (E.D. Va. 2005) (denying oral request to amend or supplement expert reports where, "[d]espite being put on notice that her [reports] were inadequate, the plaintiff elected to rely on these disclosures until the court's concern was evident"; excluding expert testimony on essential element and awarding summary judgment); *see also In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 648 (4th Cir. 2018) (affirming district court's exclusion of expert testimony and, after orders to show cause did not yield other evidence on essential element, entry of summary judgment).

## CONCLUSION

The Court should exclude Dr. Clark's opinions.

Dated: February 3, 2025

Respectfully submitted,
**Waples Mobile Home Park Limited Partnership**
**Waples Project Limited Partnership**
**A.J. Dwoskin & Associates, Inc.**
*By Counsel*

*/s/ Michael S. Dingman*
Michael S. Dingman
Brooks H. Spears
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5050
mdingman@mcguirewoods.com
bspears@mcguirewoods.com

Grayson P. Hanes
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
Phone: (703) 218-2195
Fax: (703) 218-2160
grayson.hanes@ofplaw.com

## CERTIFICATE OF SERVICE

I certify that, on February 3, 2025, I caused the foregoing document to be filed via the Court's CM/ECF system, which will send notice to all counsel of record.

*/s/ Michael S. Dingman*
Michael S. Dingman